# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| HAROLD R. FEEZLE, ) | |
| SUSAN E. SCHEUFELE, ) | **CASE NO. 4:23-cv-00242-BYP** |
| DAVID J. SCHEUFELE, ROLLERENA ) | |
| AUTO SALES, LLC, and MARILYN ) | JUDGE BENITA Y. PEARSON |
| FIGLEY, on behalf of themselves ) | |
| and all others similarly situated, ) | MAGISTRATE JUDGE AMANDA M. KNAPP |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| NORFOLK SOUTHERN RAILWAY CO., ) | |
| and NORFOLK SOUTHERN CORP., ) | |
| ) | |
| Defendants. ) | |

## MOTION TO APPOINT INTERIM CLASS COUNSEL AND A PLAINTIFFS' LEADERSHIP STRUCTURE AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Fed. R. Civ. P. 23(g)(3), and in response to this Court's March 8, 2023 order (*Feezle* Doc. #20), Plaintiffs in *Feezle* and the other cases related to the February 3, 2023 Norfolk Southern train derailment in East Palestine, Ohio pending before this Court file this motion and memorandum in support regarding appointment of interim class counsel and a plaintiffs' leadership structure. Considering the sprawling and complex nature of this litigation, Plaintiffs believe that appointment of interim class counsel and the leadership structure proposed below will best enable the parties – both plaintiffs *and* defendants – to move forward with this litigation in the most expeditious manner possible.

As of the date of this motion, Plaintiffs are aware of 21 class action cases[1] and one individual that are pending in the Northern District of Ohio, all of which are before this Court.  Although there is not total consensus among plaintiffs' counsel of the makeup of the leadership structure, the two groups seeking leadership appointments agree that appointment of a leadership structure is warranted and appropriate.[2]  The two proposals are discussed below, which for convenience purposes are referred to as the *Feezle* Leadership Group and the *Fisher* Leadership Group.

### TABLE OF CONTENTS

I.     Memorandum of Law and Discussion Regarding
       the Proposed *Feezle* Leadership Group Structure                     Page 2

II.    Memorandum of Law and Discussion Regarding
       the Proposed *Fisher* Leadership Group Structure                     Page 21

III.   Discussion Regarding Leadership Structure
       from Cory Watson Attorneys (*CeramFab* case)                         Page 59

### MEMORANDUM OF LAW AND DISCUSSION REGARDING
### THE PROPOSED *FEEZLE* LEADERSHIP GROUP STRUCTURE

### I.     INTRODUCTION

The *Feezle* case was the first lawsuit filed following the East Palestine derailment.  It was filed on February 7 by Shapero & Roloff and Amato Law Office in consultation with lawyers from Simmons Hanly Conroy.  Jayne Conroy and other members of her firm appeared in the first amended complaint (filed on February 20) after being admitted *pro hac vice*.  The *Erdos* case (4:23-cv-

---

[1] *We the Patriots USA, Inc. v. United States Environmental Protection Agency*, No. 4:23-cv-00382, is another case that has been filed in the Northern District of Ohio, and is pending before Judge Ruiz.  While *We the Patriots* is not plead as a putative class action under Rule 23, it does seek broad relief on behalf of members of the East Palestine area.

[2] Cory Watson is counsel for the plaintiffs in the recently filed non-class case, *CeramFab, Inc., et al. v. Norfolk Southern Corp et al.*; 4:23-cv-00509.  Their position regarding leadership appointment is discussed toward the end of this memorandum.

2

00250) was filed a day after *Feezle*, on February 8, by lawyers from Burg Simpson Eldredge Hersh & Jardine, Grant & Eisenhofer, and Edgar Snyder & Associates.  From the very beginning of this litigation, lawyers from those firms, as well as counsel in *Canterbury* (4:23-cv-00298), began collaborating and coordinating on various matters, particularly with regard to testing and inspection issues.  These firms have worked together in other MDL litigation and not only know each other well, but have observed one another's abilities in complex cases, which helped facilitate that cooperation.  Based on the expansive nature of this litigation and their prior experience, those counsel realized that the cases were likely to be formally consolidated, or at a minimum would need to be coordinated.  Until this Court could get to the point of considering that issue, however, the *Feezle* Litigation Group began working cooperatively to ensure that their respective clients' interests, the putative class members' interests, and the interests of the affected communities as a whole would be protected.

On February 27, 2023 and March 1, 2023, counsel in *Erdos* appeared before this Court on a motion for temporary restraining order regarding evidence at the derailment site.  (*Erdos* Doc. #11.)  As mentioned above, the *Erdos*, *Feezle*, and *Canterbury* counsel[3] coordinated their efforts to avoid the need for similar filings in other cases.  The *Erdos* counsel sought input from others who had filed cases and had experts at the derailment site to collect soil and water samples about the scope of the relief requested and during the process of working out an agreed protocol regarding inspection of

---

[3] As will be explained more fully below, the *Feezle* Leadership Group proposes that Jayne Conroy (*Feezle*), Seth A. Katz (*Erdos*), and Elizabeth Graham (*Erdos*) be appointed as Interim Class Counsel; and that Ms. Conroy, Mr. Katz, Ms. Graham, and Michael Morgan be appointed as Co-Lead Counsel, supported by a Plaintiffs' Executive Committee and Plaintiffs' Steering Committee comprised of counsel representing clients impacted by the derailment and the release of toxic materials, with additional subcommittees focused on specific aspects of the case.

the derailment site. That coordination on inspection and testing has continued as Norfolk Southern has moved forward with repairing damaged track and removing contaminated soil in the area of the derailment. In the few weeks since the derailment occurred, those firms have collectively spent hundreds of thousands of dollars on expert testing and inspection, and have also had lawyers present and working in East Palestine on a constant basis to oversee the sample collection efforts and meet with residents to keep the community informed.

During the *Erdos* TRO hearings, the Court discussed the possibility of consolidating and coordinating the numerous class action cases filed in the Northern District of Ohio. At that time, most of the cases had been assigned to this Court, but some were assigned to other judges. The Court recommended that the *Erdos* counsel discuss with Plaintiffs' counsel in the cases that were assigned to other judges the possibility of filing motions to transfer those cases to this Court. If the related cases were transferred to this Court, the Court could then entertain a motion to consolidate all cases.[4] The Court further suggested that a leadership structure for Plaintiffs' counsel would be advantageous for moving the litigation forward in an expeditious manner. The *Feezle* Leadership Group could not agree more, and has already begun discussions with Defendants regarding the mechanism.

Even prior to the Court's suggestions, the *Feezle* Leadership Group recognized the need for coordination. Counsel for the *Erdos* plaintiffs began facilitating the transmission of waivers of service and monitoring complaint filings. Informal requests to coordinate early discovery requests were made. Ms. Conroy, Ms. Graham and Mr. Katz began discussions about a more formal

---

[4] The motion to transfer issue now appears to be moot, since all of the cases pending in the Northern District of Ohio have either been assigned or transferred to this Court.

coordination on February 15, with the goal of organizing a meeting of plaintiffs' counsel in Cleveland on March 3.  Consistent with the guidance from this Court, they prepared an agenda and circulated it to those plaintiffs' counsel with filed cases and others whom they knew intended to file cases.  Among the matters raised for discussion was whether counsel were in favor of having cases that were initially assigned to other judges transferred to this Court to facilitate consolidation; there was widespread support for those transfers.  There was also widespread (although not completely unequivocal) support for extending the time for Defendants to answer the filed cases in order to accommodate the preparation and filing of a consolidated complaint or set of complaints in order to most efficiently focus the Court's resources.[5]  There also were extended and specific discussions regarding organizing a leadership structure for this case.

The *Feezle* Leadership Group has attempted to build consensus and be as inclusive as possible by incorporating lawyers who have experience in a variety of areas, including class actions in general, environmental class actions in particular, multidistrict litigation, and catastrophic individual injury cases.  They have included not only class action attorneys, but attorneys who represent individuals, businesses and municipalities, as well as lawyers who have significant subject matter expertise in railroad litigation matters.  Indeed, the *Feezle* Leadership Group has also sought to include within its leadership structure representation of *all* potential groups of plaintiffs and class members.  As the Court recognized at the March 1 hearing, this case will require a lot of lawyers

---

[5] Part of the *Fisher* Leadership Group initially indicated they were inclined to extend the responsive pleading deadline in the *Fisher* case (4:23-v-00350), but specifically "reserved the right to change their mind" depending upon developments in the coordination efforts.  As of this filing the *Fisher* plaintiffs have agreed to consolidate their cases.

working together in different roles.  The leadership structure proposed by the *Feezle* Leadership Group accomplishes that very goal.

As mentioned above, there are currently 21 putative class actions and an individual case before this Court.  All present similar issues and the classes as defined overlap in some way.  More cases will undoubtedly be filed, some as putative class actions and others as individual cases.  Although this litigation is not currently a multidistrict litigation under 28 U.S.C. § 1407, from an administration standpoint it shares many similarities with an MDL.  It requires coordination and cooperation from a variety of law firms on the plaintiffs' side of the case.  It will require significant resources both in terms of money and lawyer effort in order to prosecute.  It will undoubtedly involve complex legal issues that will require extensive briefing.  It will also involve a number of experts from a variety of different disciplines:  railroad accident reconstruction; railroad operation and maintenance; different types of environmental testing experts (soil, groundwater, and air); physicians of different specialties; environmental mitigation and damage experts, among many others.  It will be complicated and it will be expensive, and the best method for ensuring that the litigation proceeds quickly and efficiently is to engage a leadership group with a proven track record of helping guide complex cases and working well together and with others.

Consequently, the *Feezle* Leadership Group respectfully requests that this Court (1) appoint Jayne Conroy, Seth A. Katz, and M. Elizabeth Graham as Interim Class Counsel under Fed. R. Civ. P. 23(g)(3); and (2) also appoint a leadership structure that includes Co-Lead Counsel, a Plaintiffs' Executive Committee, a Plaintiffs' Steering Committee, and subcommittees focused on specific aspects of this litigation to work on tasks assigned to them by the co-leads, as more fully described below.  The appointment of interim class counsel is critically important in a case of this nature, as it

is an ongoing event affecting potentially thousands of residents, property owners, and businesses in East Palestine and the surrounding area, all of whom are members of the putative classes that have been proposed.  The proposed *Feezle* leadership structure provides for the interests of all putative class members as well as the interests of individual plaintiffs to be represented by a coordinated group.  Continued coordination with the defendants and their experts is critical, as is the ability to negotiate with a single coordinated voice on matters related to investigation, discovery,[6] and management of the litigation.  The proposed structure will also permit counsel to speak with a singular voice when raising issues with the Court or responding to issues raised by the Court or defendants.  Furthermore, substantial work will be required prior to any motion(s) for class certification, so it makes sense to appoint interim class counsel and a supporting leadership structure to manage those efforts.

## II.     APPOINTMENT OF INTERIM CLASS COUNSEL

### A.     Appointment of Interim Class Counsel under Fed. R. Civ. P. 23(g)(3).

Rule 23(g)(3) of the Federal Rules of Civil Procedure gives a district court discretion to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  *Smith v. Firstenergy Corp.*, Nos. 2:20-cv-03755, 2:20-cv-03987, 2:20-cv-03954, 2021 WL 9032912 at *1 (S.D. Ohio May 13, 2021).  When there are overlapping or duplicative class actions filed, appointment of interim class counsel may be helpful to clarify "responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating

---

[6] While there will be some areas of discovery that will be unique to a particular class action case, or to a particular individual case, the vast majority of discovery topics will be common to all cases:  cause of the derailment, identification of materials that were released, air/soil/groundwater modeling, etc.

settlement."  MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.11 (Federal Judicial Center 2004) ("MCL").

The appointment of interim class counsel will be particularly beneficial here because the events that have unfolded as a result the train derailment are ongoing, and the clean-up efforts are expected to take considerable time.  The pre-certification activities described in the MCL will unquestionably be necessary.  Having coordination and management by court-appointed lead counsel will help promote efficiency, and appointment of interim class counsel will be beneficial for the absent class members to have a central point of contact as they navigate the events that have disrupted their lives and businesses.

**B.      Factors to consider for the appointment of interim class counsel.**

The factors set forth in Rule 23(g)(1) for the appointment of interim class counsel are the same factors a Court must consider when appointing class counsel.  Those factors include:

1)  The work counsel has done in identifying or investigating potential claims in the action;

2)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

3)  counsel's knowledge of the applicable law; and

4)  the resources that counsel will commit to representing the class.

*Troy Stacey Enters. v. Cincinnati Ins. Co.*, 337 F.R.D. 405, 409 (S.D. Ohio 2021) (citing Fed. R. Civ. P. 23(g)(1)(A)).  Additionally, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class and make further orders in connection with the appointment."  *Id.* (citing Fed. R. Civ. P. 23(g)(1)(B)).

As is evident from a review of the filed class action complaints, the counsel seeking appointment as Interim Class Counsel have spent significant time identifying and investigating

8

potential claims and independently investigating the factual underpinnings of the case, and they will continue to do so as evidence develops in the case. Furthermore, the three lawyers and their respective law firms proposed as Interim Class Counsel have already identified and hired experts in a number of disciplines, some of whom were at the derailment site during the inspection times. Indeed, the proposed Interim Class Counsel firms have been on-site, with Norfolk Southern, for the past month, working continuously for the benefit of all plaintiffs in the communities, and have voluntarily established a fund to compensate such experts, with an eye toward sharing this work product among all plaintiffs.

The three proposed Interim Class Counsel have extensive experience in the areas of class actions, complex litigation, toxic torts, and environmental litigation, and each has been appointed to lead complex litigation like this one in the past.[7] Each has led and been part of complex litigation teams that have achieved successful resolutions for the classes they have represented, whether by trial or settlement. They have exhibited the ability to work professionally as advocates with opposing counsel. They have already demonstrated an ability to build consensus among myriad groups with differing interests. And they have already shown a deep commitment to this case.

---

[7] In light of the lawsuit recently filed by Ohio Attorney General Yost related to the derailment, it is also worth noting that Ms. Conroy and Ms. Graham in particular have extensive experience coordinating with state attorneys general. In the opioid litigation, Ms. Conroy negotiated multiple nationwide settlements that required input and agreement from various attorneys general, including those of Ohio and Pennsylvania. And in the New York opioid trial discussed in Ms. Conroy's submission, the court tried the claims of Ms. Conroy's client (Suffolk County) together with the claims of the State of New York, which was represented in that trial by a member of New York Attorney General Letitia James' staff. Ms. Graham's firm currently represents the State of Ohio in partnership with the Attorney General's office in environmental litigation against manufacturers of firefighting foam containing so-called "forever chemicals," and represented Ohio alongside the Attorney General in prior environmental litigation involving PCBs that resulted in a significant settlement for the state.

Finally, the proposed Interim Class Counsel are dedicated to committing substantial economic and legal resources to represent the class. They (as well as the other firms included in the proposed *Feezle* Leadership Group) understand the need for and have agreed to make a substantial capital contribution to help fund this litigation. The proposed Interim Class Counsel understand this litigation will likely take a considerable amount of time and resources and are dedicated to doing the work on behalf of the class, and doing it utilizing a consensus-building and professional approach.

## III.   THE PROPOSED *FEEZLE* LEADERSHIP GROUP STRUCTURE

In addition to appointment of Interim Class Counsel, the *Feezle* Leadership Group also is of the view that it is advisable to appoint a leadership structure that consists of Co-Lead Counsel, a Plaintiffs' Executive Committee, a Plaintiffs' Steering Committee, and Subcommittees to support them. This structure will allow for a coordinated overall approach for all cases that are filed regarding the derailment, encompassing the interests of both the class actions and individual claims.

### A.   Guidance on appointment of a plaintiffs' leadership structure in complex litigation.

In complex cases such as this one, the utility of appointing a leadership structure to coordinate the prosecution of complex litigation is well established. *In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988). The Manual for Complex Litigation recognizes the benefits of appointing a plaintiffs' leadership structure in complex cases:

> Complex litigation often involves numerous parties with common or similar interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

MCL § 10.22.

The *Feezle* Leadership Group proposes a leadership structure consisting of Co-Lead Counsel, an Executive Committee (which will include a Plaintiffs' Liaison Counsel), Plaintiffs' Steering Committee, Community Liaison Counsel, and several Subcommittees such as Discovery, Law and Briefing, Science, and Experts.  *See* MCL at § 10.221.

The *Feezle* Leadership Group's proposed Co-Lead Counsel include three attorneys who represent the putative classes and one who represents individuals and entities who have elected to file cases outside the class action, but is not opposed to the class structure.  The Co-Lead Counsel will work in consultation and cooperation with other counsel, are charged with managing the litigation, case strategy, formulating and presenting positions on procedural and substantive issues throughout the litigation, and ensuring operations of the Executive Committee and Steering Committee are conducted in an efficient and professional manner.  The Executive Committee will work closely with Co-Lead Counsel to assist in implementing a litigation strategy, conducting and managing discovery, and ensuring that deadlines and schedules are met to keep the litigation running efficiently and expeditiously.   The Executive Committee will also ensure that the myriad concerns of all plaintiff groups be heard, while still working towards the common goal of ultimate resolution.  While this case is currently primarily being prosecuted as a putative class action rather than a multidistrict litigation of coordinated individual cases, the overall effort to manage and prosecute the case will be very similar.  In fact, it is expected that numerous individual actions will eventually be filed and their management will be part of the role being undertaken by the proposed leadership.[8]  Like the proposed four Co-Lead Counsel, the Executive Committee is comprised of attorneys representing both class action plaintiffs and plaintiffs who intend to file individual cases.

---

[8] This is why Ms. Conroy, Mr. Katz, and Ms. Graham are seeking appointment both as Interim Class

This litigation requires leaders with experience managing diverse teams of lawyers, from different firms, in different cities, and ensuring that everyone cooperates and shares the workload in an efficient manner. It is very common, for example, for certain lawyers or law firms to focus on specific aspects of litigation (*i.e.*, discovery, experts, legal analysis) and carry out that same role. That provides for a form of "institutional knowledge" that carries over from other litigations. Each case is unique in many respects, but there are also numerous issues that are common to any complex litigation. Also, cases such as this one require tremendous amounts of financial resources to prosecute, so the leaders must ensure that those appointed to leadership positions not only have the legal skills to prosecute the case, but also the financial resources to contribute to the prosecution.

Plaintiffs' Liaison Counsel, working closely with Co-Lead Counsel and the other members of the Executive Committee, will be responsible for administrative aspects of the case, such as communications between the Court-appointed leadership and other counsel, advising counsel of developments in the litigation, and collecting and maintaining common benefit time and expenses.

The Plaintiffs' Steering Committee will support the Executive Committee and Co-Lead Counsel in prosecuting the case. Committee members will assist with discovery, drafting of pleadings, legal research, and development of science and experts to support the asserted claims. Members of the Plaintiffs' Steering Committee will also work closely with Sub-Committee Members to oversee and help carry out a multitude of tasks related to discovery, legal analysis and briefing, review of science and hiring and managing experts. Advances in the management of electronic

---

Counsel under Rule 23 and as Co-Lead Counsel (along with Mr. Morgan) under the Court's inherent authority. That dual appointment will provide the continuity of strategy, leadership, and voice that this litigation needs in order to proceed efficiently.

forms of document production (documents in a variety of formats, e-mails, text messages), for example, have made "e-discovery" a specialty in its own right.

Due to the nature of the community and environmental issues caused by the derailment in East Palestine, and in particular the ongoing nature of those events, the proposed Co-Lead Counsel hold the view that it would be prudent to appoint a Community Liaison Counsel. The attorneys who serve as Plaintiffs' Community Liaison Counsel will work closely with Co-Lead Counsel and the Executive Committee directly as a liaison to the residents and businesses in East Palestine area and surrounding communities. They will focus primarily on day-to-day issues that confront the residents and answering questions about the litigation efforts.

The Subcommittee Members will work under the direction of the Plaintiffs' leadership with respect to the work within such committee. Plaintiffs anticipate the need for subcommittees related to Discovery, Law and Briefing, Experts, and Science. The use of subcommittees has the additional benefit of allowing smaller firms to participate without being required to make a capital contribution to the litigation.

As noted above, the four proposed Co-Lead Counsel have been coordinating on investigation, testing, and other matters since the derailment occurred. They have extensive experience leading litigation of this sort and doing so in a coordinated, consensus-building, and professional manner. The same is true for the other lawyers included in the proposed *Feezle* Leadership Group, many of whom have worked together before. The attorneys on the proposed Plaintiffs' Executive Committee have extensive complex and coordinated litigation experience, and the proposed Plaintiffs' Steering Committee membership reflects a host of diverse legal skills that are well-suited for work on this case. Furthermore, the proposed team of attorneys is knowledgeable

and experienced in the applicable law as it relates to class actions, complex litigation, toxic torts, railroad litigation, regulatory, and environmental law.  Such a diverse group of backgrounds will help develop and advance the claims of not only the named class representatives but the entire class of individuals, property owners, businesses and entities encompassed in the class definitions, as well as the interests of those plaintiffs who file individual claims.  And like the proposed Co-Leads, each of the proposed *Feezle* Leadership Group members have already demonstrated a commitment to this important case and a commitment to work together in a collaborative way to prosecute it.

Members of the *Feezle* Leadership Group have utilized the same or similar leadership structures in numerous other complex cases and believe it represents the best framework for prosecuting a case of this magnitude and importance.  Further, the *Feezle* Leadership Group includes and has the support of the overwhelming majority of counsel who have filed cases, and in particular those from Ohio and Pennsylvania.

**B.     The proposed *Feezle* Leadership Group.**

The proposed members of the *Feezle* Leadership Group are listed below.  Background information on the proposed *Feezle* Leadership Group is included in *Feezle* Omnibus Exhibit 1, which includes correspondence and CVs from the lawyers and firms listed below.

**1.   Plaintiffs' Co-Lead Counsel**

Plaintiffs propose the following for appointment as Co-Lead Counsel:

Jayne Conroy (*Feezle*)
Simmons Hanly Conroy LLC
112 Madison Ave., 7th Floor
New York, NY 10016

Seth A. Katz (*Erdos*)
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112

M. Elizabeth Graham (*Erdos*)
Grant & Eisenhofer, P.A.
123 S. Justinson Street, 6th Floor
Wilmington, DE 19801

Mike Morgan (*Canterbury*)
Morgan & Morgan
20 N Orange Avenue, 16th Floor
Orlando, FL 32801

As described above, each of these lawyers has been involved in the litigation since the very first days after the derailment occurred.  They have retained experts who have conducted extensive testing in and around the derailment site, and they have been engaged with this Court in matters related to evidence preservation and related issues.  Additional detail about their activities and other members of their respective teams is provided in each of their letter/CV exhibits.

### 2. Plaintiffs' Executive Committee

Plaintiffs propose the following for appointment to the Plaintiffs' Executive Committee:[9]

Mark P. Chalos
Lieff Cabraser Heimann & Bernstein, LLP
222 2nd Ave. South, Suite 1640
Nashville, TN 37201

Vincent L. Greene, IV
Motley Rice, LLC
40 Westminster St., 5th Floor
Providence, RI 02903

Christopher A. Seeger
Seeger Weiss, LLP

---

[9] As part of the effort to build consensus and create a leadership group of inclusion, in connection with the March 3 meeting in Cleveland, the *Feezle* Leadership Group offered to include attorney Kristen Johnson from the Hagens, Berman, Sobel & Shapiro firm, and Ron Parry from Strauss Troy in their proposed leadership structure, and also offered to include the other law firms with which both are working.  Ms. Johnson and Mr. Parry attended the March 3 meeting and participated in the discussions mentioned above.  However, they opted instead to propose an alternate leadership structure for their firms and the firms with whom they are working.

55 Challenger Road
Ridgefield Park, NJ 07660

Mikal C. Watts
Watts Guerra, LLC
4 Dominion Drive
Bldg. 3, Suite 100
San Antonio, TX 78257

Charles Schaffer
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

James Bilsborrow
Weitz & Luxenberg, PC
700 Broadway
New York, NY 1003

Michelle L. Kranz (**Plaintiffs' Liaison Counsel**)
Zoll & Kranz, LLC
6620 West Central Ave., Suite 100
Toledo, OH 43617

### 3.  Plaintiffs' Steering Committee

Plaintiffs propose the following for appointment to the Plaintiffs' Steering Committee:

Daniel Karon
Karon LLC
700 W. St. Clair Avenue, Suite 200
Cleveland, OH 44113

Roger Denton
Wright & Shulte, LLC
865 S. Dixie Dr.
Vandalia, OH 45377

Neal Shapero
Shapero Roloff Co., LPA
1111 Superior Avenue East, Suite 1310
Cleveland, OH 44114

Brian Kopp

Betros Kopp & Markota
6630 Seville Drive
Youngstown, OH 44406

Alyson Beridon
Herzfeld Suetholz Gastel Leniski and Wall PLLC
US Bank Building
425 Walnut Street, Suite 2315
Cincinnati, OH 45202

Margaret M. Murray
Murray & Murray Co., L.P.A.
111E. Shoreline Drive
Sandusky, OH 44870

Joyce Reichard
Kelley Ferraro LLC
Ernst & Young Tower
950 Main Avenue, suite 1300
Cleveland, OH 44113

Gary A. Corroto
Plakas Mannos
200 Market Avenue North, Suite 300
Canton, OH 44702

Ashlie Case Sletvold (Plaintiffs' Co-Liaison Counsel)
Peiffer Wolf Carr Kane Conway & Wise, LLP
6370 SOM Center Road, Suite 108
Cleveland, OH 44139

Wesley D. Merillat
Charles Boyk Law Offices, LLC
1500 Timberwolf
Holland, OH 43528

Kelly Iverson
Lynch Carpenter LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

Douglas J. Olcott
Edgar Snyder & Associates, LLC
600 Grant Street, 10th Floor

Pittsburgh, PA 15219

Aaron Rihn
Robert Pierce & Associates
707 Grant Street, Suite 125
Pittsburgh, PA 15219

Dena Young
Berger Montague, PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Stephen Basser
Barrack Rodos & Bacine
2001 Market Street, Unit 3300
Philadelphia, PA 19103

Gary Klinger
Milberg Coleman Bryson Phillips Grossman, LLC
221 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

Andrew Schlichter
Schlichter Bogard & Denton LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102

Daniel J. Thornburgh
Aylstock Witkin Kreis Overholtz
17 East Main Street, Suite 200
Pensacola, FL 32502

**4. Plaintiffs propose the following Community Liaison Counsel:**

Nicholas T. Amato (0041277)
Amato Law Office, LPA
420 Broadway Ave.
Wellsville, Ohio 43968

### 5. Subcommittees and Members

The *Feezle* Leadership Group proposes the following appointments to various initial subcommittees, with the understanding that additional subcommittees will be established, and additional members will be added to the subcommittees:

Greg Farkas
Frantz Ward LLP
200 Public Square, Suite 3000
Cleveland, OH 44114

Grant McKay
Law Offices of Grant MacKay
Hoyt Block Building, Suite 110
700 W St. Clair Avenue
Cleveland, OH 44113

Zachary J. Murry
Barkan & Robon, Ltd.
1701 Woodlands Drive
Maumee, OH 43537

Michael O'Shea
Lipson O'Shea Legal Group
Hoyt Block Building, Suite 110
700 W St. Clair Avenue
Cleveland, OH 44113

Patrick Perotti
Dworken & Bernstein, Co., LPA
60 South Park Place
Painesville, OH 44077

Tom Pirtle
Laminack Pirtle & Martines, LLP
5020 Montrose Boulevard, 9th Floor
Houston, TX 77006

Scott Bertram
Bertram & Graf
2345 Grand Boulevard, Suite 1925
Kansas City, MO 64108

## C.    Conclusion and Prayer.

Each of the attorneys seeking a leadership appointment in the *Feezle* group have a demonstrated track record of experience in complex litigation, and in many instances specific subject matter expertise that will be crucial to the prosecution of this case.  This proposed structure, and its composition, will enable the *Feezle* Leadership Group to efficiently manage this litigation with an overall goal of seeking a swift resolution of this matter for the benefit of those affected by the derailment.

Consequently, the *Feezle* Leadership Group respectfully requests that the Court (1) appoint Jayne Conroy, Beth Graham, and Seth A. Katz, as Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), and (2) appoint a Plaintiffs' leadership structure with Jayne Conroy, Beth Graham, Seth A. Katz and Mike Morgan as Co-Lead Counsel and a Plaintiffs' Executive Committee, Plaintiffs' Steering Committee and other subcommittees as described above.

## MEMORANDUM OF LAW AND DISCUSSION REGARDING
## THE PROPOSED *FISHER* LEADERSHIP STRUCTURE[10]

---

[10] At Mr. Berman's request, the *Feezle* Leadership Group assured Mr. Berman that they would include his section of this memorandum unedited once received on March 15, and agreed that the *Feezle* portion of the memorandum would not be edited to respond to or address any issues raised in his proposed leadership structure.

21

## TEAM OHIO'S PROPOSED LEADERSHIP STRUCTURE

### I.      INTRODUCTION

The February 3, 2023 Norfolk Southern train derailment and "controlled release" of toxic vinyl chloride and other chemicals in East Palestine, Ohio, is a uniquely local disaster. Had the train jumped the tracks seconds earlier—before the James Street or Market Street crossings—the main thoroughfares of East Palestine would have gone up in flames. As it was, East Palestine residents were forcibly evacuated from their homes and businesses. They suffered shortness of breath, dizziness, headaches, throat irritation, and skin rashes among other symptoms. Some lost pets. Basketball games were forfeited when the opposing team refused to show. Tenants pled to be released from their leases. Property owners and landlords considered how well Columbiana County's recent 20–25% increase in assessed property values would hold up against photos of their properties strewn with debris from a derailment plainly smoldering in the background.[1]

Families want answers: Is the air in my home safe to breathe? Is my water safe to drink and, if so, will it remain safe in the coming years? What are the long-term health risks to me and my family? Should I let my children chase newts up and down Leslie Run anymore? Will the community pool—which looks down upon Leslie Run, where Norfolk Southern is currently pumping fountains of contaminated water up into the air—even open up this year? Where am I

_____

[1] Team Ohio is proactive in informing community members about important local nuances surrounding this case—knowledge that only local experience can provide. For example, in Ohio there is a re-appraisal of real estate every five years, and this is the year. East Palestine properties were re-appraised before the Norfolk Southern train derailment and are projected to go up 20–25% in valuation. Residents can contest the valuation and Johnson & Johnson and Team Ohio have been working to inform the community about their rights regarding this important issue. Specialized local knowledge and a laser focus on what is in the best interest of this community and the surrounding affected region is the hallmark of Team Ohio.

going to get hay next year if local harvests are deemed unsafe? Will my business survive? My farm? What of the town?

The people of East Palestine are strong and resilient. They will weather this tragedy with dignity. These deeply personal and local questions demand a trusted local team that will act quickly but also stand by East Palestine and surrounding communities long after the litigation ends. By contrast, litigation teams dominated by firms foreign to Ohio might safely retreat elsewhere without risk of bumping into dissatisfied East Palestine residents at the Labor Day fair.

### Local Trust and Train Derailment Expertise

An Ohio-based, Ohio-strong leadership structure will best serve the interests of the class of East Palestine area residents and businesses. News articles abound with East Palestine residents expressing their distrust toward authorities and institutions.[2] The events of that bitterly cold evening not only left an odor in East Palestine, it attracted unfamiliar faces. A litigation team comprised of mostly Ohio-based firms and attorneys deeply rooted in this region will engender trust in the community through the personal dedication of the most qualified, experienced, and respected local attorneys, some of whom have lived in the region their entire lives. Team Ohio is comprised of experienced and knowledgeable Ohio-based and Ohio-connected attorneys working with nationally respected firms who collectively have litigated 14 separate train derailment cases and have already retained and deployed experts in soil, water,

---

[2] *See, e.g.*, https://www.wyso.org/2023-02-28/believe-nothing-you-hear-distrust-reigns-among-east-palestine-residents; https://www.motherjones.com/environment/2023/02/toxic-train-derailment-east-palestine-ohio-norfolk-southern-distrust/.

ash, and air sampling; railroad engineering; railroad operations; bearing failure; and tank car failure.[3]

By way of further fostering community engagement, Team Ohio sees an opportunity to mentor the next generation of regional Ohio leaders and looks forward to helping Ohio law students make a difference in their communities. To that end, Team Ohio anticipates invoking Local Rule 83.6, so qualified law students from regional law schools (e.g., Akron, Cleveland-Marshall, Case Western Reserve, Capital, and/or Ohio State) can participate in court-approved facets of this high-profile litigation in their backyards.

### **Streamlined, Specialized Leadership**

Team Ohio's local focus and streamlined, specialized leadership approach is key. Team Ohio's overall objective is to get the most recovery for the victims with the least expense and in the shortest amount of time. This case needs an efficient and effective team that understands the community.[4]

Team Ohio has specialized knowledge and skill directly applicable to this case, including extensive experience in environmental litigation cases involving air contamination, water contamination, medical monitoring, property damage, and train derailment spills involving vinyl chloride, not just generalized mass tort experience. Team Ohio even has an Ohio-based law firm featuring an established environmental, health and safety practice group comprised of both attorneys and engineers.

---

[3] Team Ohio also retained East Palestine-based environmental consultant Kevin Kosko of K2 Environmental, LLC to manage sample collection and testing.

[4] Given the State of Ohio's complaint filed yesterday, *The State of Ohio, ex rel. Dave Yost, Ohio Attorney General v. Norfolk Southern Corporation*, 4:23-cv-00517 (N.D. Ohio), Team Ohio's historical and ongoing strong working relationship with the Ohio Attorney General's office will be important as this litigation progresses.

Therefore, Hagens Berman Sobol Shapiro, LLP, Strauss Troy Co., LPA, Johnson & Johnson Law Office, Elizabeth A. Bernard, LLC, Goldenberg Schneider, LPA, Markovits Stock DeMarco LLC, Fayard & Honeycutt, APC, and The Bryant Law Center (collectively "Team Ohio") respectfully request that the Court adopt their proposed leadership structure as described below pursuant to Rule 23(g).

The intimate local presence of the Johnson & Johnson and Bernard firms will foster trust in the community and involve counsel who were born, raised, and continue to reside in the affected region. Ohio-based Goldenberg Schneider brings specialized environmental expertise. Ohio-based Markovits Stock DeMarco has extensive experience in environmental class actions and medical monitoring programs in Ohio. Ohio class-action firm Strauss Troy, one of Team Ohio's proposed Co-Lead firms, assembled an unmatched team highly experienced in railroad derailment litigation, with Fayard Honeycutt and The Bryant Law Center – firms that have collectively litigated 14 separate train derailment disasters. Team Ohio's other proposed Co-Lead firm is international litigation powerhouse Hagens Berman, led by partners Kristen A. Johnson, who was born and raised in the area and has since spent 15 years representing plaintiffs in complex civil cases, and Steve Berman, one of the most successful and respected members of the plaintiffs' class action bar. Team Ohio possesses the right combination of local knowledge, leadership, environmental and derailment expertise, experience, trust, and success to serve as Interim Lead Class Counsel and the Executive Committee.

## II.     TEAM OHIO'S PROPOSED STRUCTURE

| Interim Co-Lead | Firm/Attorney |
|---|---|
| Co-Lead | **Hagens Berman**<br>Kristen A. Johnson: grew up in Columbiana and Mahoning Counties, partner in the firm's Boston office, 15 years of experience litigating complex civil cases. |

| | Steve W. Berman: founding partner of one of the most experienced and largest class action firms in the U.S. |
|---|---|
| Co-Lead | **Strauss Troy**<br>Ron Parry: Cincinnati, Ohio-based class action and mass tort attorney with almost 50 years of experience |
| **Executive Committee** | **Firm/Attorney** |
| Community Liaison/ Government Relations | **Johnson & Johnson**<br>**and Elizabeth A. Bernard, LLC**<br>Nils Paul Johnson, Jr.: Canfield, Ohio-based local counsel trusted by community<br>Elizabeth A. Bernard: Canfield, Ohio-based local counsel trusted by community |
| Derailment/NTSB | **Fayard Honeycutt**<br>Calvin C. Fayard, Jr. and D. Blayne Honeycutt: Denham Springs and New Orleans, Louisiana-based firm with experience litigating class/mass action train derailments and environmental toxic tort actions, since the 1982 Livingston train derailment involving vinyl chloride resulting in $39 million settlement ($120 million present day value) and medical/contamination monitoring relief |
| Environmental | **Goldenberg Schneider**<br>Jeffrey Goldenberg: Founding partner of Cincinnati, Ohio-based environmental and class action firm; previously appointed as Co-Lead Class Counsel by this Court to lead prosecution of a nationwide multi-district litigation against Ford |
| Medical Monitoring | **Markovits Stock DeMarco**<br>Terence R. Coates: Managing Partner in Cincinnati, Ohio-based class action firm with significant toxic, environmental contamination, and medical monitoring experience |
| Damages | **The Bryant Law Center**<br>Mark Bryant: Western and Louisville, Kentucky-based firm with significant train derailment and mass tort experience |

The attorneys and firms listed above that comprise Team Ohio have clear and specialized

roles designed to utilize their respective strengths and experiences to best serve the needs of the

community. While a brief summary follows, the qualifications of Team Ohio are discussed in greater detail in Section III. B. 2. below.

**Executive Committee – Community Liaison/Government Relations**

*Johnson & Johnson.*  Johnson & Johnson is a fourth-generation family law firm that has served families and businesses in Mahoning and Columbiana counties since 1921.

**Nils Paul Johnson, Jr.** has practiced law since 1976, and spent the early part of his career in Columbiana County. Mr. Johnson served as Public Defender for East Palestine and knows the people of the region. As part of his current practice, Mr. Johnson regularly represents people in commercial and individual real estate transactions, assists clients with the formation, purchase, and sale of businesses, helps parents (both wealthy and poor) make arrangements to pass property and possessions on to children, and aids farmers approached for oil and gas drilling, pipeline easements, and solar arrays.

He has litigated land-fill cases and drafted the landfill agreement for Mahoning County with BFI, which has since served as a template for similar agreements across the country. His work in oil and gas and landfills has given him a unique understanding of geology and groundwater hydrology.

Nils is also a past bar association trustee, a former Ohio Supreme Court Bar Examiner, and former member of the Ohio Supreme Court Board of Grievances and Discipline. He has been a frequent lecturer on energy law, ethics, and estate planning. An accomplished artist, Nils paints murals for local communities and recently completed a mural celebrating women's rights for the Supreme Court of Ohio.

**Nils Peter Johnson**, son of Nils Paul Johnson, Jr., grew up in Canfield, Ohio, and is a graduate of Vermont Law School, where he completed course work in environmental

law. His practice extends across Ohio and specializes in real estate, oil and gas law, and succession planning for businesses and families. He serves on the Mahoning County Bar Association's Grievance and Ethics investigatory committee, is an investigator for the State of Ohio's Notary Advisory Board, and is actively engaged with several charitable community causes.

**Elizabeth A. Bernard, LLC.** Elizabeth A. Bernard, LLC is an Ohio law firm founded in Canfield, Ohio, and staffed exclusively by members of this community. In fact, the office's paralegal is an East Palestine resident.

**Elizabeth A. Bernard** started her own practice in 2007 in Canfield. Before that, Ms. Bernard was a partner with the law firm of Harshman and Gervelis. Since 1988, Ms. Bernard has represented thousands of individuals in Mahoning, Trumbull, and Columbiana Counties. Based on her substantial experience representing the residents of these communities, and having been raised and educated in the area, and having raised a family in this area, Ms. Bernard is uniquely qualified and motivated to serve as community liaison.

## Co-Lead Firms

**Hagens Berman Sobol Shapiro, LLP.** Hagens Berman is one of the nation's top class action firms. Since its founding in 1993, Hagens Berman's attorneys have focused their practice on representing plaintiffs in complex class action cases, including numerous environmental matters. Hagens Berman attorneys have extensive trial experience in high-stakes litigation and have held leadership roles in hundreds of complex civil class actions.

**Kristen A. Johnson** is a partner and member of the Firm's Management Committee. Kristen has extensive experience as court-appointed co-lead and liaison

counsel in over a half dozen complex or multidistrict matters, including *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, No. 13-md-2419, (D. Mass.), which resulted in a $189+ million settlement for victims who contracted fungal meningitis or other serious health problems after receiving contaminated pharmaceutical products. Ms. Johnson was born and raised near East Palestine, Ohio, and is the daughter of Nils Paul Johnson, Jr.[5]

**Steve W. Berman,** Hagens Berman's managing partner, successfully represented the State of Ohio in both public nuisance litigation against Big Tobacco resulting in a $260 billion settlement, and in lawsuits against pharmaceutical companies for their roles in the opioid epidemic. Mr. Berman has also represented numerous classes in environmental contamination matters, including the *Exxon Valdez Oil Spill* litigation, one of the worst environmental disasters in United States history, which involved many of the same types of injuries present here – environmental contamination and clean up, health issues, and declining property values. Mr. Berman was also lead trial counsel representing Idaho residents in the *Idaho Grass Burning* litigation, which involved the release of polycyclic aromatic hydrocarbons (PAHs), proven carcinogens, into the air. And Mr. Berman's representation of the plaintiff class in the *Kerr-McGee Radiation* litigation resulted in the creation of an expansive medical monitoring fund.

**Whitney K. Siehl** was born and raised in northern Ohio and is an alumna of The Ohio State University Moritz College of Law. She is well-respected in the Illinois legal

---

[5] In the interest of full disclosure, Ms. Johnson has a five-week trial beginning April 17, 2023. She has been and will continue to play a major role for Team Ohio as this litigation progresses.

community and in May 2023 will be installed as President of the Women's Bar

Association of Illinois, one of the oldest and largest bar associations in the state.

***Strauss Troy.*** Strauss Troy is a full-service law firm dedicated to helping clients through

its expertise, communication, and collaboration. Strauss Troy has a strong record of success and

has earned a reputation for successfully resolving large and complex cases before federal and

state courts. As a leading law firm in the Greater Cincinnati/Northern Kentucky Region, Strauss

Troy is consistently recognized as a U.S. News and World Report Best Law Firm.

**Ron R. Parry** is a partner in the Cincinnati office of the Strauss Troy law firm

and has been actively litigating cases in Ohio, Kentucky and a number of other

jurisdictions for just a few months short of 50 years. Immediately following the

derailment on February 3, 2023, Mr. Parry mobilized the full resources of Strauss Troy to

join forces with the firms of Fayard and Honeycutt and the Bryant Law Firm to

investigate the facts surrounding the derailment. Mr. Parry, in conjunction with these

firms, filed the second derailment case and has retained and been working with experts in

the following fields: (1) Sampling of soil, water, ash, and air; (2) railroad engineering; (3)

railroad operations; (4) bearing failure; and (5) tank car failure.

### Executive Committee – Environmental

***Goldenberg Schneider.*** Goldenberg Schneider is a Cincinnati law firm with a unique

combination of complex litigation experience and environmental, health, and safety expertise

that make it an ideal choice to serve on Team Ohio's Executive Committee.

**Jeffrey Goldenberg** is a founding partner of Goldenberg Schneider and has

extensive experience in muti-million-dollar complex class actions and an M.S. in

Environmental Science. This Court previously appointed Mr. Goldenberg Co-Lead

Counsel in an MDL class action against Ford. *See In Re Ford Motor Co. Spark Plug and Three Valve Engine Products Liability Litigation*, No. 1:12-MD-2316 (N.D. Ohio). Along with Mr. Berman, Mr. Goldenberg also served as Special Counsel representing the State of Ohio against Big Tobacco.

**Executive Committee – Derailment/NTSB**

*Fayard Honeycutt.* Fayard Honeycutt is an extremely experienced and nationally sought-after train derailment firm. In 1982, a strikingly similar catastrophe occurred in the small town of Livingston, Louisiana, when 43 cars of an Illinois Central Railroad train derailed and spilled toxic materials, including vinyl chloride, into the center of town. Nearly 3,000 citizens were forced from their homes. Businesses and governmental entities were closed. The community remained off limits for nearly a month. Many suits were filed and Calvin C. Fayard, Jr. was appointed by the court to organize and spearhead the litigation. The case was "fast tracked" in 1985/1986 and settled for $39 million. The settlement also established a commission to monitor health problems and decontamination of soil and water. Since the Livingston derailment, Fayard Honeycutt has been called in to assist in other derailment incidents in various states and jurisdiction by both attorneys and courts.

> **Calvin C. Fayard, Jr.** and **D. Blayne Honeycutt** have operated as a team when receiving court-sanctioned appointments on numerous class actions and mass tort cases and have learned that as a team, they are more effective and productive in achieving the goals of each particular case. Accordingly, Mr. Fayard and Mr. Honeycutt will act as one if the Court selects Team Ohio to lead this litigation.

**Executive Committee – Medical Monitoring**

*Markovits Stock DeMarco* is an Ohio-based law firm with experience handling complex environmental and class action cases in Ohio and across the United States. MSD is routinely appointed by courts to represent plaintiffs throughout the country and is uniquely qualified to serve as counsel for residents and businesses in East Palestine in pursing medical monitoring claims.

**Terence R. Coates.** For almost 30 years, attorneys at MSD have served as class counsel for a class of former nuclear facility workers from the Fernald nuclear facility in Ross, Ohio, in *Day v. NLO*, No. 1:90-cv-67 (S.D. Ohio). MSD's work as class counsel in *Day* includes overseeing a medical monitoring program containing yearly physicals for surviving class members. It is anticipated that Terence R. Coates and Paul M. De Marco of MSD will remain as class counsel in *Day* overseeing the medical monitoring program for another thirty years at minimum.

**Paul M. De Marco.** In addition, for more than 20 years, Mr. De Marco, a native of Youngstown, Ohio, and graduate of Canfield High School, served as counsel for a class of offsite residents who lived within five miles of the Fernald nuclear facility and whose property, air, and water supply had been contaminated with radioactive substances released from that facility. As class counsel, Mr. De Marco helped handle that class action and craft the resulting class settlement, which included a ground-breaking 20-year medical program for class members.

**Executive Committee – Damages**

*The Bryant Law Center.* BLC has extensive experience representing plaintiffs in train derailment litigation. Mark Bryant, Emily Roark, and David Bryant have the necessary

experience, knowledge, skill, and resources to successfully prosecute train derailment litigation:

BLC also holds numerous leadership positions in pending MDL and mass tort cases.

## III.    ARGUMENT

### A.    Team Ohio is the most efficient leadership group.

Team Ohio presents a specialized and streamlined approach to case leadership that will

best protect the interests of the class members by limiting costs and duplicative work. While

dozens of firms across the country have appeared in this litigation, a bloated, all-inclusive

leadership structure is unnecessary and counterproductive. This is especially true given Hagens

Berman's and Strauss Troy's extensive experience, Johnson & Johnson's and Bernard's local

knowledge, Team Ohio's advanced efforts, and the fact that the cases were all brought by similar

plaintiffs with similar interests and desired outcomes.[6] Moreover, a broad leadership structure

with too many counsel can also lead to unnecessary fees and costs, eliminating the efficiency

associated with leadership appointment.[7] In fact, empirical studies suggest streamlined leadership

teams with only a few committee leaders are most effective.[8]

The Manual for Complex Litigation outlines the importance of assessing competing

proposals for leadership. "Deferring to proposals by counsel without independent examination,

even those that seem to have the concurrence of a majority of those affected, invites problems

down the road if designated counsel turn out to be unwilling or unable to discharge their

---

[6] *See* Manual for Complex Litigation § 10.221 (4th ed.) ("Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making.").

[7] *See id.* ("Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses.").

[8] Susan A. Wheelan, *Group Size, Group Development, and Group Productivity*, 40 Small Grp. Rsch. 247, 247, 257–58 (2009) ("Groups containing 3 to 8 members [are] significantly more productive and more developmentally advanced than groups with 9 members or more," and productivity further increases in groups with 5 to 6 members).

responsibilities satisfactorily or if they incur excessive costs."[9] Here, Team Ohio's proposal includes a streamlined, two-firm co-lead team and a focused committee structure.

But Hagens Berman and Strauss Troy will not go-it-alone. Rather, they will efficiently work with Team Ohio and cooperate with the other plaintiffs and firms involved in this litigation.[10] Accordingly, by appointing Hagens Berman and Strauss Troy as Interim Lead Class Counsel, and the other members of Team Ohio to run the streamlined and focused committees comprising the Executive Committee, the Court can be assured that competent, experienced, and highly qualified counsel will fairly and efficiently represent Plaintiffs and the class members.

**B.     Team Ohio satisfies the factors outlined in Fed. R. Civ. P. 23(g) and is best suited to lead this litigation.**

Pursuant to Rule 23(g), a court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action. Fed. R. Civ. P. 23(g)(3). Rule 23(g)(1)(A) specifically directs the Court to consider the following factors before appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.*

---

[9] Manual for Complex Litigation § 10.224 (4th ed.).

[10] The Team Ohio firms and their attorneys have previously and successfully worked with many of the other attorneys and other firms who filed cases against Norfolk Southern. Team Ohio would certainly work cooperatively with any other firms if the Court so chooses to supplement Team Ohio. *See id.* § 10.222 ("[D]esignated counsel should seek consensus among the attorneys (and any unrepresented parties) when making decisions that may have a critical impact on the litigation. Counsel in leadership positions should keep the other attorneys in the group advised of the progress of the litigation and consult them about decisions significantly affecting their clients. Counsel must use their judgment about limits on this communication; too much communication may defeat the objectives of efficiency and economy, while too little may prejudice the interests of the parties.").

In addition, the Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). And if more than one applicant seeks appointment, "the court must appoint the applicant *best able* to represent the interests of the class." Fed. R. Civ. P. 23(g)(2) (emphasis added).

### 1. Team Ohio's Work Identifying or Investigating Potential Claims

As to the first Rule 23(g) factor, "the work counsel has done in identifying or investigating potential claims in the action," Team Ohio researched, investigated, drafted, and filed several complaints against Norfolk Southern arising out of the derailment and "controlled release," engaged and deployed a team of highly skilled experts, spent several weeks in East Palestine meeting with hundreds of affected citizens and businesses, engaged defense counsel regarding the need to preserve the site and take samples of excavated soil and water, filed a notice of inspection to ensure access to the derailment site, coordinated with defense counsel and other counsel regarding access to the derailment site, and filed a motion for expedited hearing in the *Ibel* matter for the purpose of clarifying the agreements Norfolk Southern was providing to desperate class members at the community derailment resource center.

Team Ohio has expended substantial resources retaining experts in highly relevant fields, including soil, water, ash, and air sampling; railroad engineering; railroad operations; bearing failure; and tank car failure. Collectively, Team Ohio's sampling experts have conducted dozens of tests at the derailment site as well as at clients' properties and other sites of interest. One such retained testing expert is based in East Palestine, knows the local community, and has unique knowledge of the geographic features that will impact the eventual spread of pollutants. For example, this local expert has noted that the ground water hydrology is likely affected by the great number of deep coal mines that underlie the area of the spill. Team Ohio's sample testing is

- 14 -

extensive, ensuring the use of the right labs and tests sensitive enough to pick up all potential contaminants.

On top of these efforts, Team Ohio has engaged in substantial outreach efforts with aggrieved East Palestine community members. The local firms have been fielding constant calls with community members. Ron Parry has spent 10 days in East Palestine interviewing hundreds of affected citizens and businesses. To date, Mr. Parry and Team Ohio have been retained by over 400 clients. Many of Team Ohio's counsel personally visited the wreckage on February 28, 2023, and March 1, 2023. Others personally viewed the contaminated Sulphur Run and Leslie Run creeks and have met with community and religious leaders to get more information about how this disaster has affected the community.

As noted above, Team Ohio has been working with local leadership to inform the community about their rights regarding the increase in real estate valuation that was appraised prior to the Norfolk Southern train derailment. In particular, we are working to educate all community members—whether clients or not— about the property value assessment objection process and how to participate.

Team Ohio's collective work satisfies this factor.

### 2. Team Ohio's Specialized Experience and Knowledge of the Applicable Law

Team Ohio also satisfies the requirement that counsel possess "experience in handling class actions, other complex litigation, and the types of claims asserted in the action" under Fed. R. Civ. P. 23(g)(1)(A)(ii) and the related requirement that counsel have "knowledge of the applicable law" under Fed. R. Civ. P. 23(g)(1)(A)(iii).

Team Ohio's proven track record in significant environmental litigation makes it ideal counsel for the community of East Palestine and the surrounding region. Team Ohio has specialized knowledge and skill directly applicable to this case, including extensive and

unmatched experience in train derailment litigation (including vinyl chloride cases) as well as cases involving air contamination, water contamination, medical monitoring, and property damage. Team Ohio is much more than simply a group of mass tort firms. As discussed in more detail below, Team Ohio has substantial class action trial experience—a rare commodity.

### a.   Hagens Berman's Qualifications

As evidenced by its impressive resume, attached as Exhibit AA, Hagens Berman is one of the nation's top class action firms, with particular experience and prominent recoveries in complex class action litigation. Hagens Berman's victories have earned its legal teams many awards and recognitions. For example, The National Law Journal named Hagens Berman to its "Plaintiffs' Hot List" in 2006–2007, 2009–2013, and 2015, its list of "Top 10 Plaintiffs' Firms in the Country" in 2012–2013 and 2015, and its list of "Elite Trial Lawyers – Mass Tort Category" in 2019. Likewise, Law360 has repeatedly recognized the Firm's successes, granting the Firm its "Most Feared Plaintiffs Firm" award in 2015, its "MVP of the Year Award – Class Action" in 2016–2019, "Practice Group of the Year – Class Action" for 2019 and, for Mr. Berman, "Titan of the Plaintiffs Bar" in 2018 and 2020.

Hagens Berman also has extensive experience in numerous similar environmental matters, and representative cases include:

- ***Exxon Valdez Oil Spill Litigation*** – Hagens Berman represented various classes of claimants, including fisherman and businesses, located in Prince William Sound and other impacted areas who were damaged by one of the worst oil spills in United States history, resulting in a $5 billion judgment awarded by a federal jury, and a $98 million settlement with Alyeska, the oil company consortium that owned the output of the pipeline.

- ***Kerr-McGee Radiation Litigation*** – Hagens Berman brought a class action on behalf of residents of West Chicago, Illinois, who were exposed to radioactive uranium tailings from a rare earth facility operated by Kerr-McGee, resulting in a medical monitoring settlement valued in excess of $5 million.

- ***Idaho Grass Burning Case*** – In 2002, Steve W. Berman was lead trial counsel on behalf of Idaho residents claiming that grass-burning farmers released more than 785 tons of pollutants into the air, including concentrations of polycyclic aromatic hydrocarbons (PAHs), proven carcinogens. Burning the fields annually caused serious health problems, especially to those with respiratory ailments such as cystic fibrosis and asthma. The suit also asserted that Idaho's grass burning policies were far below the standards of other states such as neighboring Washington, where farmers used other techniques to remove grass residue from the fields. The lawsuit settled in 2006 under confidential terms.

- ***Chinook Ferry Litigation*** – Hagens Berman represented a class of property owners challenging Washington State Ferries' high-speed operation of a new generation of fast ferries in an environmentally sensitive area of Puget Sound. The litigation inspired a SEPA study confirming adverse environmental impacts and resulted in a $4.4 million settlement, one of the most favorable class settlements in Washington State.

- ***Grand Canyon Litigation*** – Hagens Berman represented the Sierra Club in a challenge to a Forest Service decision to allow commercial development on the southern edge of the Grand Canyon National Park, successfully obtaining an injunction.

- ***Skagit Valley Flood Litigation*** – Hagens Berman represented farmers, homeowners, and businesses claiming damages as a result of a1990 flood. The case was in litigation for 10 years and involved a jury trial of more than 5 months. Following the entry of 53 verdicts against Skagit County, the trial court entered judgments exceeding $6.3 million. Ultimately, the Washington State Supreme Court reversed this judgment. Despite this reversal, the firm is proud of this representation and believes that the Supreme Court erred.

- ***Dole Bananas Case*** – The firm took on Dole Food Company Inc. in a class action lawsuit claiming that the world's largest fruit and vegetable company lied to consumers about its environmental record and banana-growing practices. The suit alleged that Dole misrepresented its commitment to the environment in selling bananas from a Guatemalan banana plantation that did not comply with proper environmental practices. The suit culminated in 2013 with Dole and non-profit organization Water and Sanitation Health, Inc. collaborating on a water filter project to assist local communities in Guatemala.

- ***Diesel Emissions Litigation*** – Second to none in uncovering emissions-cheating, the firm has dedicated its time and resources to breaking up the dirty diesel ring. After filing the first lawsuit in the country against Volkswagen, Audi, and Porsche as part of the massive Dieselgate scandal in 2015, the firm went on to unmask emissions-cheating devices installed in vehicles made by Fiat Chrysler, Mercedes, and General Motors and continues to investigate diesel cars for excessive, illegal, and environmentally harmful levels of emissions. The firm's efforts have led to

investigations by the EPA, DOJ, and European authorities. Hagens Berman took a leading role on the Plaintiffs' Steering Committee that would finalize a $14.7 billion settlement for owners, the largest settlement in history against an automaker. The firm fought for hundreds of branded franchise dealerships who were blindsided by Volkswagen's Dieselgate scandal, securing a $1.67 billion settlement for dealers. Hagens Berman also reached a $700 million settlement on behalf of owners against Mercedes vehicles affected by Daimler's emissions cheating.

- ***Cane Run Power Plant Coal Ash Case*** – In 2013, Hagens Berman filed a class action lawsuit against Louisville Gas and Electric Company alleging it illegally dumped waste from a coal-fired power plant onto neighboring property and homes where thousands of Kentucky residents live. According to the complaint, Louisville Gas and Electric Company's Cane Run Power Plant is fueled by the burning of coal, which also produces coal combustion byproducts—primarily fly ash and bottom ash—that contain significant quantities of toxic materials, including arsenic, chromium, and lead. The dust spewed by Cane Run contains known carcinogens, posing significant potential health hazards.

Importantly, Hagens Berman is not afraid to take class action cases to trial or appeal to the Supreme Court of the United States. *See, e.g.,  Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141 (2021) (9-0 decision affirming decision to enjoin NCAA rules fixing or limiting education-related compensation and benefits available to student-athletes following a bench trial led by Mr. Berman); *In re Neurontin Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 1629 (D. Mass) (trial team including Ms. Johnson obtained a $142 million RICO jury verdict against Pfizer for fraudulently marketing its drug Neurontin; negotiated a separate $325 million settlement on behalf of a class of health plans); *In Re Fiat Chrysler (FCA) Monostable Electronic Gearshift Litig.*, No. 16-md-02744 (E.D. Mich.) (Mr. Berman tried case on behalf of nationwide class of car owners against manufacturer for dangerous roll away safety defect).

Should the Court appoint the firm as Interim Co-Lead Class Counsel, the Hagens Berman attorneys principally responsible for this litigation will include Partner Kristen A. Johnson, Managing Partner Steve W. Berman, and Associate Whitney K. Siehl. However, Hagens Berman will bring to bear other skilled attorneys as case demands dictate.

*Kristen A. Johnson* is a Partner and member of the Firm's Management Committee, and is located in Hagens Berman's Boston office. Ms. Johnson was born and raised near East Palestine (specifically, in Lisbon, Boardman, and Canfield) and is the daughter of Johnson & Johnson managing partner Nils P. Johnson, Jr. Ms. Johnson has been appointed by courts as co-lead or liaison counsel in a half dozen complex class actions and multidistrict matters across the country. Last year alone her cases in pharmaceutical fraud and antitrust litigation returned almost $1 billion to those injured. Other notable cases include: *In re New England Compounding Pharm., Inc. Prods. Liab. Litig.*, No. 13-md-2419 (D. Mass.) (initially appointed liaison counsel and later co-lead counsel in a case alleging catastrophic failure by a local compounding pharmacy to follow basic safety procedures, resulting in a $189+ million settlement on behalf of victims across the country who contracted fungal meningitis or other serious health problems after receiving contaminated injections); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878 (D. Mass.) (as court-appointed co-lead counsel, Ms. Johnson successfully argued against summary judgment and helped negotiate a proposed global $485 million settlement); *In re Glumetza Antitrust Litig.*, No. 19-cv-05822 (N.D. Cal.) (achieving $453.85 million settlement for the direct purchasers case alleging Lupin agreed to delay launch of a generic form of product in exchange for competitor's promise not to launch a competing generic product); *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.,* No. 18-md-02819 (E.D.N.Y.) (court-appointed interim lead/liaison class counsel for the proposed direct purchaser class, Ms. Johnson helped negotiate a $51.25 million settlement). She was nominated as Trial Lawyer of the Year in 2011 by Public Justice for her work securing a $142 million verdict against Pfizer with the Neurontin trial team and was honored in 2014–2015 as a Boston Rising Star and one of 40 Outstanding Lawyers under 40.

**Steve W. Berman**, the Founder and Managing Partner of Hagens Berman, has served as lead or co-lead counsel in antitrust, securities, consumer, environmental, product liability, and employment class actions and complex litigation throughout the country. Appointing Mr. Berman in a disputed MDL leadership procedure, one judge remarked:

> But it must be said that the track record of Hagens Berman and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the <u>Toyota Unintended Acceleration Litigation</u> and a substantial number of really outstanding big-ticket results.
>
> It may be worth mentioning that to this Court's recollection it has had no first-hand judicial experience with either of the two finalist firms. . . . But that is not true of its colleagues in this District of more recent vintage, an email inquiry to whom brought in return some high praise of attorney Berman's skills.

*In re Stericycle, Inc., Sterisafe Contract Litig.*, MDL No. 2455, No. 13-cv-5795 (N.D. Ill.) (Mem. Order dated Oct. 11, 2013, Dkt. 56) (footnotes omitted). The *Stericycle* case ultimately settled for $255 million.

Mr. Berman's particular skill in leading complex cases has resulted in *sua sponte* leadership appointments by multiple courts presiding over large cases with equally large recoveries for class members. For example, in *In re Toyota Motor Corp. Unintended Acceleration Marketing Sales Practices and Products Liability Litigation*, No. 10-ML-2151 (C.D. Cal.), Judge James V. Selna *sua sponte* identified and appointed Mr. Berman as a presumptive co-lead counsel upon transfer of the MDL. With Mr. Berman leading settlement negotiations following tenacious efforts to push the case forward, Hagens Berman helped to secure a settlement valued at up to $1.6 billion in benefits for class members, the largest

automotive settlement in history at the time.[11] Similarly, in *In re General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543 (S.D.N.Y.), Judge Jesse Furman *sua sponte* appointed Steve Berman as temporary lead counsel, subsequently reappointing Mr. Berman to serve as co-lead counsel for economic loss cases after receiving written applications from dozens of lawyers and hearing individual presentations by 40 lawyers. The litigation efforts spearheaded by Hagens Berman resulted in a $120 million settlement for class members, which Judge Furman recently granted preliminary approval. Moreover, Mr. Berman was at the forefront of investigating and litigating cases on behalf of the State of Ohio including public nuisance litigation against Big Tobacco resulting in $260 billion settlement among multiple states and in lawsuits against pharmaceutical companies for their role in the opioid epidemic.

*Whitney K. Siehl* is an associate in the firm's Chicago office. Ms. Siehl is originally from northern Ohio and an alumna of The Ohio State University Moritz College of Law. Ms. Siehl has worked on several complex cases, including working with Mr. Berman (in his role as a court appointed co-lead counsel) in *In re USC Student Health Center Litigation*, No. 18-cv-04258 (C.D. Cal.). In that case, the court granted final approval of a $215 million settlement reached with USC and its former full-time gynecologist, Dr. George Tyndall, covering approximately 18,000 USC alumnae. The USC settlement was the largest-ever class resolution of sexual assault claims and first to incorporate equitable relief reforms ensuring institutional change. Ms. Siehl also worked on the environmental matter *City of Sycamore Water Contamination*, No. 20-cv-06476 (N.D. Ill.), alleging the city created a public health crisis through decades of negligence regarding the water system.

---

[11] The *Toyota* settlement has since been eclipsed by the $14.7 billion Volkswagen diesel settlement, in which Steve Berman and Hagens Berman also took a leading role.

Ms. Siehl is also active in the legal community and in May 2023 will be installed as the President of Women's Bar Association of Illinois, one of the oldest and largest bar associations in the state. And in 2017, Ms. Siehl received an Award for Excellence in Pro Bono Service from the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association for her dedication to representing underserved individuals. Ms. Siehl has been recognized as an Illinois Rising Star by Super Lawyers every year since 2019.

### b.  Strauss Troy's Qualifications

Strauss Troy is a full-service law firm dedicated to helping clients through its expertise, communication, and collaboration. Strauss Troy has a strong record of success and has earned a reputation for successfully resolving large and complex cases before federal and state courts. As a leading law firm in the Greater Cincinnati/Northern Kentucky Region, Strauss Troy is consistently recognized as a U.S. News and World Report Best Law Firm.

Ron R. Parry is a partner in the Cincinnati office of the Strauss Troy law firm and has been actively litigating cases in Ohio, Kentucky, and a number of other jurisdictions for just a few months short of 50 years. Immediately following the derailment on February 3, 2023, Mr. Parry mobilized the full resources of Strauss Troy to join forces with the firms of Fayard and Honeycutt of Louisiana and the Bryant Law Firm of Paducah, Kentucky, to investigate the facts surrounding the derailment. Mr. Parry, in conjunction with these firms, filed the second derailment case and have retained and been working with experts in the following fields: (1) sampling of soil, water, ash, and air; (2) railroad engineering; (3) railroad operations; (4) bearing failure; and (5) tank car failure.

Mr. Parry has spent 10 days in East Palestine meeting with the local residents and business owners affected by the derailment. Having met face to face with literally hundreds of residents of East Palestine, Mr. Parry has come to know the concerns in the community, perhaps

better than any other lawyer in this case. Mr. Parry can attest that, almost without exception, the residents of East Palestine and the surrounding region do not trust Norfolk Southern to accurately assess the nature and extent of the damage to the environment. Nor do many of the residents of East Palestine trust the state and federal agencies involved. The residents of East Palestine and surrounding areas want attorneys who will, through qualified independent experts: (1) accurately assess the long-term damage to the environment and (2) objectively establish everything that must be accomplished to fully remediate the damage. Mr. Parry will continue his efforts to gain the trust and confidence of the East Palestine community as this litigation progresses.

Mr. Parry also has exceptional actual trial experience as he has tried to conclusion well over 50 civil and criminal jury trials in federal and state courts including two class action jury trials. Mr. Parry has successfully represented certified classes in dozens of cases, including: (1) purchasers of industrial revenue bonds that defaulted; (2) life insurance purchasers of so-called "vanishing premium" policies; (3) auto insurance damage claimants; and (4) state employees who were underpaid pension benefits.

Notably, Mr. Parry recently represented more than 250 residents of a small town in Iowa who asserted claims against a coal-fired power plant that emitted pollutants, negatively affecting surrounding residential areas. Along with co-counsel, Mr. Parry negotiated a comprehensive uncapped class action settlement that incorporated an applicant-friendly claims process that awarded payments based upon various relevant factors, such as proximity, number of residents in the household, and ownership status.

Mr. Parry will be joined in this litigation by attorney Alexa Wainscott, a talented fellow Strauss Troy attorney who has significant experience as a clerk in the federal courts in Kentucky.

### c.      Johnson & Johnson's Qualifications

Johnson and Johnson has been providing legal advice to the Mahoning Valley for over 100 years. If there is a single thread to unite the tens of thousands of unique engagements undertaken in that history, it is one of property law and succession. For four generations, communities across Eastern Ohio have asked Johnson & Johnson how they might preserve their families' many blessings in spite of life's unfortunately frequent disasters. In all settings—family farms confronting a child's sudden divorce, promising oil and gas development at the expense of tillable acreage, or cooperative economic development despite generational disputes among neighbors—Johnson & Johnson counsels efficiency, perspective, and resolve.

 For these reasons, Johnson & Johnson is uniquely situated to fill the community liaison role: it proceeds from firsthand experience interfacing with members of the broader East Palestine community concerning events with generational implications. *See* Firm Resume attached as Exhibit BB.

### d.      Elizabeth A. Bernard, LLC's Qualifications

Since 1988, Ms. Bernard has represented thousands of individuals in Mahoning, Trumbull, and Columbiana Counties. Based on her substantial experience representing these residents, and having been raised and educated in the area, and having raised a family in this area, Elizabeth Bernard is uniquely qualified and motivated to serve as community liaison.

Ms. Bernard is particularly well-suited for this role because she has designed her professional life of 35 years to promote faith in the system of justice by educating its citizens, giving individuals a voice, and being present in the community. Ms. Bernard has served as an educator, as an adjunct Professor at the University of Akron School of Law, and has served the community at every level of government, including a local zoning commission, the Mahoning County Sheriff Department, the U.S. House of Representatives, Court of Appeals, and the Ohio

Quarter Horse Development Commission. Additionally, Ms. Bernard has served in leadership

roles in the Mahoning Trumbull Trial Lawyers Association, the Ohio Association for Justice, and

the American Association for Justice. While serving on the Board of Governors for the American

Association for Justice, Ms. Bernard was a member of the Key Person Committee and Chair of

the Convention Planning Committee, both outreach roles. Additionally, Ms. Bernard has spent

her free time speaking to community groups, as Chair of the Youngstown Chapter of the

American Civil Liberties Union, and as a Board Member and Youth Advisor for the Northern

Ohio Quarter Horse Association.

### e. Goldenberg Schneider's Qualifications

Goldenberg Schneider, LPA ("GS") is an Ohio law firm whose unmatched combination

of experience and qualifications make it an ideal choice to serve in a leadership capacity for the

benefit of the citizens and businesses of East Palestine and the surroundings areas. For more than

25 years, GS has represented individuals and businesses in two broad legal categories:

environmental health and safety matters and complex litigation. GS's attorneys and engineering

staff have the technical and scientific knowledge and the complex litigation experience to

successfully prosecute this high-stakes litigation. GS has previously served on the Lead

Committee in a class action involving a railcar chemical leak representing a class of affected

property owners and businesses, was appointed Special Counsel to the State of Ohio in the

tobacco Medicaid reimbursement litigation which resulted in one of largest recoveries ever for

the State of Ohio, and offers a unique and substantial environmental health and safety (EHS)

practice group consisting of attorneys and engineers able to provide significant technical support.

This Court is familiar with GS's litigation practice group, having previously appointed

Mr. Goldenberg Co-Lead Class Counsel in the multi-district, class action litigation *In Re Ford*

*Motor Co. Spark Plug and Three Valve Engine Products Liability Litigation*, No. 12-md-2316

(N.D. Ohio). During that case, this Court concluded that Mr. Goldenberg satisfied Fed. R. Civ. P. 23(g)(1)(A)'s standards to be appointed as lead counsel based upon its independent review of his qualifications. *See id.*, ECF Nos. 29, 122. Mr. Goldenberg served as Co-Lead Counsel and ultimately negotiated a nationwide settlement for the benefit of more than two million class members following this Court's denial of Ford's motion for summary judgment. Importantly, GS led the briefing team that successfully defeated Ford's motion for summary judgment.

Additionally, GS has experience in railcar litigation, as the firm served on the Lead Committee in a class action involving a Styrene gas rail car release in Cincinnati. *See In re Styrene Railway Car Litigation*, No. A0507105 (Hamilton C.P.). Tens of thousands of Ohio residents and employees and hundreds of businesses either evacuated their residences or businesses or were otherwise negatively impacted by this toxic styrene release. This case was successfully resolved resulting in a multi-million dollar recovery for the benefit of impacted individuals and businesses.

GS also has a demonstrated track record of successfully handling high-stakes litigation. For instance, Mr. Goldenberg served as special counsel to the Ohio Attorney General in prosecuting Ohio's Medicaid recoupment action against the tobacco industry. This litigation resulted in a recovery to the State of Ohio of more than $9.86 billion. Setting aside the substantial, if not immeasurable non-economic components of this settlement, which curbed youth smoking and addiction, the settlement's financial proceeds are a multiple of twelve times larger than the prior largest Ohio-based settlement.

What sets GS apart for this specific case is the firm's EHS practice group. GS's EHS team consists of four attorneys who are also environmental engineers, three with advanced technical degrees who routinely advise industrial clients about EHS regulatory and compliance

matters, RCRA (hazardous waste) facility assessments and investigations, and superfund cleanups. The fourth possesses significant regulatory knowledge pertaining to the transportation of dangerous goods and hazardous materials via highway, railroad, aircraft, and other vessels.

GS's knowledge, training, and experience with the transportation of hazardous materials will be a significant benefit for this litigation. GS EHS personnel regularly assess and evaluate hazardous material transportation compliance programs including chemical-specific packaging requirements (e.g., railroad tank car requirements), required markings, labeling, placarding, shipping paper, and hazardous materials (hazmat) personnel training. GS EHS personnel also train and certify hazmat personnel and routinely advise clients in response to their hazmat-specific transportation inquiries. The knowledge, training, and experience possessed by GS EHS personnel regarding the transportation of hazardous materials would provide a tremendous asset to the prosecution of this case and help balance the scales against Norfolk Southern.

GS also employs three experienced technical personnel, one a master-degreed chemical engineer who works in the related areas of chemical Process Safety Management (OSHA) and Risk Management Planning (EPA). Another possesses a PhD in environmental sustainability and is also a professional engineer (PE) specializing in chemical safety / product safety and U.S. EPA's Toxic Substance Control Act. GS's EHS attorneys and technical professionals have been involved in every aspect of industrial regulatory compliance, disposal, and cleanup.

Critical to this litigation, GS personnel also have extensive experience in Environmental Health and chemical exposure litigation. For example, GS team members used their medical education and experience to screen and assess individuals who were exposed to toxic chemicals. One such case involved evaluation of acute and chronic responses to Styrene that was released to the air from a chemical plant explosion. Individuals living within a two-mile radius of the plant

were initially interviewed by GS EHS group members. Then, the interview results were used to identify individuals who exhibited the potential for an acute or chronic response. Those individuals were then referred to an environmental medicine physician for an Independent Medical Exam.

GS EHS team members have used similar approaches to document chemical exposures and human health effects arising from soil, groundwater, and surface water contamination. In addition to the Styrene exposure discussed above, GS EHS group members have prior experiences with documented exposures to organic chemicals, including chlorinated solvents like Vinyl Chloride and its products of incomplete combustion (PICs) which include Dioxin. GS EHS team members also participated in another litigation matter involving chronic exposure to Dioxin from a nearby paper mill that used bleach in the manufacturing process. Sodium hypochlorite in the bleach reacts with chemicals in wood to produce Dioxin in extremely low concentrations, i.e. parts per quadrillion (ppq). GS EHS team members tracked the Dioxin from the neighbors' drinking water source back to the paper mill's wastewater discharge. GS EHS Team members also coordinated and evaluated health information from neighbors with documented exposures. *See* Firm Resume attached as Exhibit CC for more information about GS.

### f.     Fayard & Honeycutt's Qualifications

Fayard & Honeycutt has unparalleled derailment experience that will be critical to this litigation. In 1982, a strikingly similar catastrophe occurred in Livingston, Louisiana, when 43 cars of an Illinois Central Railroad train derailed and spilled toxic materials, including vinyl chloride, into the center of town. Many suits were filed and Calvin C. Fayard, Jr. was appointed by the court to organize and spearhead the litigation. Environmental issues included site clean-up, remediation, surveillance, and monitoring the contamination, as well as public health concerns. Psychological studies were conducted to measure the impact of the derailment on

children. Real estate value diminution, depreciation, and stigma concerns were addressed. Discovery was conducted, depositions taken, and the case was ready for a jury trial on June 11, 1984 when the parties reached a settlement providing: compensation to individuals, businesses, and the state, and local governments; appointment of an independent environmental expert reporting directly to the court regarding issues concerning site clean-up, contaminant and removal of spilled substances and debris, and extended monitoring of toxic substances; construction of a town Health Clinic offering medical examinations to its citizens, and the Intergovernmental Commission to oversee the Health Clinic (which still exists); and court hearings to adjudicate stigma, property devaluation and community safety claims.

**Calvin C. Fayard, Jr.** Starting in 1982 with the landmark class action case of *Livingston Parish Police Jury. v. Illinois Central Gulf Railroad,* No. 40,049 (Twenty-First Judicial District Court, Parish of Livingston, State of Louisiana), Mr. Fayard and his firm has spent the last forty+ years building an expertise in complex litigation, specifically mass torts and class actions. He is uniformly recognized by his peers for his organizational expertise, strong character, fair dealing, and forthright negotiating resolution skills. Mr. Fayard has an excellent national reputation for his ability to work harmoniously and effectively with others, particularly in the area of settlement negotiations and resolution of complex litigation. Judges, magistrates, special masters, mediators, and defense and plaintiffs' counsel alike, both locally and nationally, commend him for his patience, foresight, and diplomacy in bringing competing interests together.

Most importantly, Mr. Fayard has been the architect for resolution efforts and negotiated settlements for hundreds of millions of dollars and, equally important, followed through and delivered on the complex terms and conditions of the agreements in order to best

- 29 -

serve the injured parties as a whole. In Louisiana, Mr. Fayard pioneered the use of uniform guidelines for computerization, development, and analyzation of claims data and the employment of impartial special masters to evaluate, allocate, and distribute monies to ensure fair and equitable treatment of all plaintiffs. Attached as Exhibit DD is a detailed listing of complex cases in which Mr. Fayard served as PSC Chair, Member or Liaison.

**D. Blayne Honeycutt** possesses extensive experience and background in toxic tort and mass disaster litigation spanning the past thirty-six years. Specifically, he was lead trial counsel in the Texas Brine Class Action. His experience includes many class/mass action train derailments, a sample of which includes the following:

- *In Re Eunice Train Derailment*, CA No. 00-1267 (W.D. La) (arising from the train derailment, evacuation and release of hazardous substances in Eunice, Louisiana; 17 hazardous tank cars derailed; seven were torn open, two exploded and two more intentionally breached during clean up; class action settled for $65 million).

- *Petska v. Illinois Central Railroad Company, d/b/a Canadian National/Illinois Central Railroad,* No. 04-L-27 (Twentieth Judicial Circuit, Perry County, Ill.) (Class action/Mass joinder for damages arising from train derailment, evacuation and release of hazardous chemicals in Tamaroa, Illinois. Confidential settlement. Member of the PSC, Co-Lead Trial Attorney).

- *Sigman v. CSX Corporation* No. 3:15-cv-013328 (S.D. W. Va.) (represented over 300 plaintiffs in a mass action for damages arising from a trail derailment, fire, release of chemicals, and subsequent evacuation. Lead trial attorney. Confidential settlement).

### g.    Markovits Stock DeMarco

For almost 30 years, attorneys at MSD have served as class counsel for a class of former nuclear facility workers from the Fernald nuclear facility in Ross, Ohio in *Day v. NLO*, No. 1:90-cv-67 (S.D. Ohio). MSD's work as class counsel in *Day* includes overseeing a medical monitoring program containing yearly physicals for surviving class members. Terence R. Coates and Paul M. De Marco of MSD will remain as class counsel in *Day* overseeing the medical

monitoring program for another thirty years at minimum.  Given its attorneys' decades of experience overseeing medical monitoring programs in other Ohio litigation, MSD is a valuable member of Team Ohio's Executive Committee.

In addition to MSD's unique experience of long representing a class of Ohio workers and offsite residents involving long-term medical monitoring programs, MSD continues to serve as the Ohio based counsel for the State of Ohio in its case against Du Pont and other defendants relating to alleged PFOA contamination from the Washington Works facility near Marietta, Ohio. *See State of Ohio, ex rel. Dave Yost Attorney General of Ohio v. E.I. Du Pont de Nemours & Co.,* No. 180T32 (Washington C. P.). MSD also was the Ohio-based counsel for the State of Ohio relating to alleged PCB contamination in Ohio by Monsanto – litigation that resolved last year with an $80 million settlement for the State of Ohio. *See State of Ohio ex. Rel. Dave Yost, Attorney General v. Monsanto Co., Solutia, Inc., & Pharmacia LLC*, No. 1801237 (Hamilton C.P.). Members of MSD were also extensively involved in representing the plaintiffs in the *Cook v. Rockwell International Corp.*, No. 90-cv-00181-JLK (D. Colo.), which resulted in a landmark $375 million settlement in 2017 after 27 years of litigation. The *Cook* case was brought on behalf of certain Colorado property owners whose properties were damaged by nuclear contaminants released by the Rocky Flats nuclear facility.

Moreover, MSD is qualified to participate as a member of the Executive Committee because its attorneys have successfully handled high profile class action cases and because they are frequently appointed as class counsel in Ohio courts. In 2022 alone, MSD was co-lead counsel in several Ohio class action settlements including: *Shy v. Navistar International Corp.*, No. 92-cv-0333-WHR (S.D. Ohio) (class counsel for settlement valued at over $742 million); *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio) ($4.25 million settlement); *Bechtel*

*v. Fitness Equipment Services*, LLC, No. 1:19-cv-726-KLL (S.D. Ohio) ($3.65 million

settlement); *Ryder v. Wells Fargo Bank, N.A.*, No. 1:2019-cv-00638 (S.D. Ohio) (member of

class counsel in a $12 million settlement on behalf of roughly 1,830 class members). MSD has

extensive experience participating in other high-profile class action cases including: *In re Fannie*

*Mae Securities Litigation*, No. 1:04-cv-1639, (D.D.C.) (assisted in representing the Ohio public

pension funds as lead plaintiffs in a Section 10b-5 class action resulting in a $153 million

settlement); *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 4:09-cv-

1967 (N.D. Cal.); *O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015) (served as counsel for

NCAA, Olympic, and NBA legend Oscar Robertson in antitrust claims against the National

Collegiate Athletic Association, Collegiate Licensing Company, and Electronic Arts resulting in

a $40 million settlement and injunction against the NCAA for unreasonably restraining trade in

violation of antitrust law); and *Williams v. Duke Energy*, No. 1:08-cv-0046 (S.D. Ohio) (served

as class counsel in a complex antitrust and RICO class action resulting an $80.875 million

settlement).

Numerous Ohio federal courts have recognized MSD as experienced in handling complex

cases including class actions. *See, e.g., Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022

WL 2125574, at *4 (S.D. Ohio June 13, 2022) ("Class Counsel, the law firm Markovits, Stock &

DeMarco, LLC, are qualified and are known within this District for handling complex including

class action cases such as this one."); *Bechtel v. Fitness Equip. Servs., LLC*, 339 F.R.D. 462, 480

(S.D. Ohio 2021) ("plaintiffs' attorneys have appeared in this Court many times and have

substantial experience litigating class actions and other complex matters"); *see also Miller v.*

*Anderson*, No. 5:2-cv-1743 (N.D. Ohio Aug. 15, 2023) (appointing MSD and its co-counsel as

lead counsel in a complex case involving FirstEnergy because "they are best suited to be named

lead counsel in this matter" out of competing leadership applications from several "highly qualified law forms or combinations of law firms"); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00184-SDM-EPD (S.D. Ohio Dec. 9, 2022) (appointing Terence R. Coates of MSD as interim class counsel); *Migliaccio v. Parker Hannifin* Corp., No. 1:22-cv-00835 (N.D. Ohio July 20, 2022) (appointing Terence R. Coates of MSD as interim class counsel with preliminary approval of class action settlement for a $1.75 non-reversionary common fund being filed on March 10, 2023); *Compound Property Management, LLC v. Build Realty Inc.*, No. 1:19-cv-133, 2023 WL 2140981 (S.D. Ohio Feb. 21, 2023) (class certification order appointing MSD as class counsel for certified claims for Civil RICO and breach of fiduciary duty).

In sum, MSD is an Ohio firm uniquely qualified to serve in a leadership capacity for plaintiffs in this litigation. Attached hereto as Exhibit EE is Markovits, Stock & DeMarco, LLC's firm resume including attorney biographies.

### h.    The Bryant Law Center

BLC has extensive experience representing plaintiffs in train derailment litigation. The following is a partial list of cases in which BLC has shown the necessary experience, knowledge, skill, and resources to successfully prosecute train derailment litigation:

- *Sigman v. CSX Corpl.* No. 3:15-cv-13328 (S.D. W. Va.) (A train derailment resulted in an explosion with flames over 90 feet in the air burning on the river between two towns, leading to the evacuation and sheltering in place of 471 residents for up to two weeks in January 2015. The case was resolved in 2018 when United States District Court Judge Robert Maxell mediated the case on the morning of trial.)

- *Tipton v. CSX Transportation and Union Tank Car Company,* No. 3:15-cv-00311-TAV-CCS (E.D. Tenn.) (Mass tort arising out of a train derailment that resulted in the evacuation of approximately 7,000 residents of Maryville, Tennessee, for the inconvenience from evacuation, business loss, and personal injuries. Mark Bryant was on a trial team against Union Tank Car in which the jury found in favor of the Plaintiffs. Mark Bryant was named to the Plaintiff Management Committee and Emily Roark was named to the Client Relations sub-committee. David Bryant and

Emily Roark were intimately involved with trial preparation, defending Plaintiffs in witness depositions, expert witness depositions regarding causation, client management, and settlement discussions leading to the successful resolution of the case.

- *Smith v. Paducah and Louisville Railroad (CSX)* No. 3:12-cv-00818 (W.D. Ky.) (On December 10, 2012, over 1,000 people were evacuated from their homes or sheltered in place when a CSX train derailed. While repairing the derailed car, it exploded. On October 25, 2016, United States Magistrate Dave Whalin mediated the case and reached a multi-million dollar settlement for the Plaintiffs).

- *Petska v. Canadian National/ Illinois Central Railroad,* No. 2004- L-27  (Circuit Court Perry County, Illinois) (An evacuation and property damage case which was granted class certification. After years of appeals by the railroad, the case was de-certified and BLC along with Fayard and Honeycutt filed 521 individual complaints. Canadian National sought mediation with the prospect of 521 trials arising out of a train derailment resulting in evacuations, business loss, and personal injuries. After two days, an undisclosed settlement was reached for the Plaintiffs).

BLC also holds numerous leadership positions in pending MDL and mass tort cases, as well as resolved MDL and mass tort cases. *See* Firm Resume and Bios attached as Exhibit FF for more information about BLC. Mark Bryant, Emily Roark, and David Bryant have become proficient in federal practice and procedure, document review, brief drafting, case management, client management, trial preparation, and mediation.  Each of these cases has been directed by a small trial team and BLC is directly involved in every area of litigation.

Team Ohio's detailed record of accomplishment in class action cases, success on behalf of plaintiffs in Ohio, and environmental expertise reflects a depth of experience in bringing and succeeding on class actions for similar claims, especially in Ohio, readily satisfying Fed. R. Civ. P. 23(g)(1)(A)(ii)–(iii).

### 3. Team Ohio will efficiently commit all necessary resources.

Team Ohio will devote all necessary resources to shepherd the case to a successful resolution. Hagens Berman and Strauss Troy understand that litigating a putative class action

against a major corporate defendant, represented by skilled defense counsel, will not be a simple

undertaking. However, large and complex cases of this type reflect the norm for these firms. As a

result, Hagens Berman and Strauss Troy, and other members of Team Ohio recognize that they

must advance litigation expenses and risk that those expenditures will be lost if the litigation is

unsuccessful. Hagens Berman is well-capitalized, can fund any litigation, and contribute its own

capital to their cases. Team Ohio is willing and able to devote the necessary resources to this

case and the firms routinely litigate cases against some of the nation's largest and most

prominent companies. These cases often involve extensive discovery, well-heeled defense

counsel, and extensive out-of-pocket expenditures. Just as in those cases, Team Ohio will devote

their financial resources to this case.

## IV.     CONCLUSION

The February 3, 2023 disaster has distracted the East Palestine community from counting

its many, many blessings. But that will again be its custom. It is Team Ohio's calling to bring a

remedy to East Palestine and the surrounding communities and put in the rearview the fiery train

derailment and the unforgettable dark toxic mushroom cloud blooming during the "controlled

release." Community members have placed signs that read: "We are East Palestine. Get ready for

the Greatest Comeback in American history." Team Ohio too is ready, willing, experienced, and

dedicated to being a part of East Palestine's historic comeback.

WHEREFORE, under Federal Rule of Civil Procedure 23(g), Team Ohio respectfully

requests this Court appoint Team Ohio to lead this uniquely local matter.

DATED: March 15, 2023                          Respectfully submitted,


                                               /s/Kristen A. Johnson
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               Kristen A. Johnson (admitted pro hac vice)
                                               1 Faneuil Hall Sq.

5th Floor
Boston, Massachusetts  02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
kristenj@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (admitted pro hac vice)
Sean R. Matt (pro hac vice to be filed)
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Whitney K. Siehl (admitted pro hac vice)
455 N. City Front Plaza Dr., Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
whitneys@hbsslaw.com

STRAUSS TROY
Ron R. Parry
150 E 4th Street #4
Cincinnati, Ohio 45202
Telephone: (513) 621-2120
rrparry@strausstroy.com

JOHNSON & JOHNSON LAW OFFICE
Nils P. Johnson, Jr.(0001404)
Nils Peter Johnson (0091655)
12 West Main Street
Canfield, Ohio 44406
Telephone: (330) 533-1921
NilsPeter@JandJOhio.com

GOLDENBERG SCHNEIDER, LPA
Jeffrey S. Goldenberg (0063771)
Todd Naylor (0068388)
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

tnaylor@gs-legal.com

FAYARD & HONEYCUTT APC
Calvin C. Fayard, Jr. (admitted pro hac vice)
D. Blayne Honeycutt (admitted pro hac vice)
519 Florida Ave SW
Denham Springs, Louisiana 70726
Telephone: (225) 664-0304
dbhoneycutt@fayardlaw.com

MARKOVITS, STOCK & DEMARCO, LLC
Terence R. Coates, Esq.
119 E Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com

THE BRYANT LAW CENTER
Mark Bryant (admitted pro hac vice)
601 Washington Street
Paducah, Kentucky 42003
Telephone: (270) 908-0995
mark.bryant@bryantpsc.com

ELIZABETH A. BERNARD LLC
Elizabeth A. Bernard
4137 Boardman-Canfield Road
Suite 105A
Canfield, Ohio 44406
Telephone: (330) 286-0474
Facsimile: (330) 286-0477

*Counsel for Plaintiffs and Class*

## DISCUSSION REGARDING LEADERSHIP
## STRUCTURE FROM CORY WATSON ATTORNEYS

My name is Jon Conlin of Cory Watson Attorneys ("Cory Watson") in Birmingham, Alabama. Cory Watson currently represents over 400 different individual clients (some already with manifested acute personal injury conditions), 200 different home/property owners, and 25 different businesses (encompassing over 70 separate business property parcels). As opposed to many of the twenty-one presently filed actions seeking class certification for an area spanning tens-of-miles in radius from the Norfolk Southern train derailment site, over 90% of these Cory Watson clients are located either in East Palestine, Ohio proper or a 2.5-mile radius of the derailment site. Some of these clients might ultimately have their claims best served by these classes – should they be certified – but a large group of them will not and never could be. It is on behalf of this second group of Cory Watson clients that I submit this response to the Court's March 8, 2023, Order (the "Order").

Class actions are a useful and efficient mechanism for adjudicating common claims arising from common liability based upon actions or inactions of a defendant. The class approach is appropriate, generally, to many aspects of this Norfolk Southern train derailment, and the Court's Order properly contemplated using its powers under Fed. R. Civ. P 42(a) to establish a Fed. R. Civ. P 23(g) "class counsel organizational structure" (See ECF. 293 at 7). The Court should not, however, force non-class-seeking Plaintiffs to place their claims under the control of a class leadership structure which may ultimately have divergent and irreconcilable conflicts with certain purported class members or individually filed actions. For instance, on March 13, 2023, Cory Watson filed its first lawsuit on behalf of our clients CeramFab. Inc., CeramSource, Inc., and WYG Refractories, LLC ("collectively "Plaintiffs"). (*See CeramFab, Inc., et al. v. Norfolk Southern Corp et al.*; 4:23-cv-00509).

Plaintiffs are businesses that share common ownership and are each located in East Palestine, Ohio, directly adjacent to the railroad, and – particularly as to CeramFab – within feet, not miles, of the site of the actual derailment, chemical spills, fire, and controlled burn-off This extreme proximity is unlike the plaintiffs in many of the filed actions seeking class certification. Furthermore, all three of Plaintiffs' facilities have direct contamination from the spills and fire, have seen substantial and continuing interruptions to their businesses that are unique to their facilities (and not classable), experienced acute illnesses of their employees that prevent them from returning to work, and – as alleged in paragraphs 49-54 and 61 of Plaintiffs' complaint – specifically identified "toxic and hazardous constituents from the derailment and burn have infiltrated the substructures of Plaintiffs' facilities to the extent that a full remediation may be required before they can be fully or safely reopened and/or before employees can return to full activities. Upon information and belief, the full extent of the substructure infiltration is also expected to result in a prolonged or permanent closure of the affected facilities and the loss of any efficiencies which were originally intended by locating the three Plaintiff businesses in immediate proximity of one another." (*Id.* at 9-10, 14).

Despite anticipated arguments by competing attorney class counsel slates to the contrary, it is not anticipated that any class wide resolution would be capable of addressing Plaintiffs' unique claims. And as distinctively situated businesses in the community, with direct proximity to the derailment site, Plaintiffs' claims cannot take a backseat and await resolution of the various class matters at issue in the other twenty-one actions presently on file[11]. Finally, it is not anticipated that this will be the only individual case which is filed involving the Norfolk Southern derailment as

---

[11] As of Plaintiffs' submission of this response to the other counsel collating the various class leadership positions, this is the only action not seeking class certification and Cory Watson is the only firm not directly affiliated with a filed putative class action.

Cory Watson, itself, has several other similarly unique suits which are in the process of being drafted that will imminently be filed. These filings may ultimately result in the need for a streamlined non-class leadership structure – or just cooperation between counsel for individual actions and class counsel related to various aspects of the discovery process – but individual actions should not be placed under the same leadership umbrella with attorneys who have instead chosen to pursue a class action strategy.

Cory Watson's attorneys have a long history of working closely with other firms in complex multi-party litigations and rolling up our sleeves to do the work – at every level. We have extensive experience in individual, mass tort, and class cases and have a great deal of respect for each of the firms identified on the competing class leadership slates. Cory Watson has the manpower, financial resources, and expertise necessary to advance the interests of the various clients we represent and those Plaintiffs' individual cases which will be filed. We will use our experience to coordinate with the class counsel leadership structure this Court organizes and will not create a duplicative or judicially inefficient track that hinders our clients' cases or the broader litigation against Norfolk Southern. For example, Cory Watson has already agreed with certain proposed leadership counsel to the contemplated timeline for Defendants' answers, any Motions to Dismiss, and Oppositions or Replies, thereto.

For these reasons, among others, Plaintiffs respectfully submit that the Court should exclude individually filed actions such as that filed by CeramFab from the Fed. R. Civ. P 23(g) "class counsel organizational structure" currently being developed and either (a) allow Plaintiffs to independently coordinate with other parties or (b) appoint a separate streamlined leadership – involving counsel not affiliated with the class leadership slate or other putative class case filings – to pursue the

interests of those community members, property owners, and business entities with uncommon and atypical claims that instead have chosen to sue Norfolk Southern in their own right.

Dated: March 15, 2023     Respectfully submitted,

         */s/ Jayne Conroy*
         Jayne Conroy (Pro Hac Vice)
         **SIMMONS HANLY CONROY**
         112 Madison Avenue, 7th Floor
         New York, NY 10016
         212-784-6400
         212-213-5949 (Fax)
         jconroy@simmonsfirm.com

         Seth A. Katz (Pro Hac Vice)
         **BURG SIMPSON ELDREDGE**
         **HERSH & JARDINE, P.C.**
         40 Inverness Drive East
         Englewood, CO 80112
         303-792-5595
         303-708-0527 (fax)
         skatz@burgsimpson.com

         M. Elizabeth Graham, Esq. (Pro Hac Vice)
         **GRANT & EISENHOFER, P.A.**
         123 S. Justison Street, 6th Floor
         Wilmington, DE 19801
         302-622-7000
         302-622-7100 (fax)
         egraham@gelaw.com

         Michael Morgan, Esq.*
         **MORGAN & MORGAN**
         20 North Orange Ave., Suite 1600
         Orlando, FL 32801
         407-420-1414
         mmorgan@forthepeople.com

         *pro hac vice pending or forthcoming*

         *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on March 15, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

_/s/  Jayne Conroy_____
Jayne Conroy