**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** | Case No. 4:23-CV-00242-BYP<br><br>JUDGE BENITA Y. PEARSON |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' MASTER CONSOLIDATED CLASS ACTION COMPLAINT
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND TO STRIKE
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

STATEMENT OF THE ISSUES ......................................................................... 4

BACKGROUND .................................................................................................. 4

LEGAL STANDARD ........................................................................................... 7

ARGUMENT ....................................................................................................... 7

I.     FEDERAL LAW PREEMPTS PLAINTIFFS' NEGLIGENCE, GROSS NEGLIGENCE, NUISANCE, AND STRICT-LIABILITY CLAIMS ................................................................. 7

     A.    The ICCTA Preempts Plaintiffs' Negligence And Gross Negligence Claims Concerning Railroad Transportation (Counts 1, 17) ................................. 8

     B.    The FRSA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning Railroad Safety (Counts 1-6, 17) .......... 10

          1.    Plaintiffs have not plausibly alleged that Norfolk Southern violated a federal standard of care or an internal rule that was created pursuant to federal regulation ................................................................. 12

          2.    Plaintiffs' negligence, gross negligence, nuisance, and strict-liability claims premised on railroad safety are "covered" by FRSA regulations ................................................................................ 14

          3.    The exception for "additional or more stringent" laws under 49 U.S.C. § 20106(a)(2) is inapplicable ................................................................. 18

     C.    The HMTA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning The Transportation Of Hazardous Materials (Counts 1-6, 17) .................................................................. 19

II.     PLAINTIFFS FAIL TO SATISFY THEIR PLEADING BURDEN AS TO ALL THEIR CLAIMS AND REQUEST FOR PUNITIVE DAMAGES .............................................. 22

     A.    Plaintiffs' Negligence And Gross Negligence Claims Fail (Counts 1, 17) .......... 22

          1.    Plaintiffs fail to plead breach or resulting injury ..................................... 22

2. Purported violations of federal regulations do not constitute negligence per se, and plaintiffs fail to plead any regulatory violations ................................................................................. 25

3. Plaintiffs' gross negligence claim fails to plead the requisite *mens rea* ................................................................................. 25

B. Plaintiffs' Strict-Liability Claim Fails (Count 2) ................................. 26

1. Plaintiffs fail to plead conduct constituting an abnormally dangerous activity subject to strict liability ............................... 26

2. Rail transportation of hazardous materials, and conduct incident to such transportation, falls within the common-carrier exception to strict liability ........................................................... 28

C. Plaintiffs' Statutory, Public, And Private Nuisance Claims Fail (Counts 3-6) ........................................................................... 30

1. Plaintiffs fail to plead a particularized injury distinct from the general public as required for a statutory or public nuisance claim .......... 31

2. Plaintiffs fail to plead the elements of private nuisance ............................ 32

D. Plaintiffs' Trespass Claim Fails (Count 7) ....................................... 33

E. Plaintiffs' Trespass-To-Chattels Claim Fails (Count 8) ......................... 35

F. Plaintiffs' Statutory Agricultural Claims Fail (Counts 9-12) .................... 35

G. Plaintiffs' Medical-Monitoring Claims Fail (Counts 13-15) ..................... 36

1. Medical monitoring is not a cause of action under Ohio law .................. 36

2. Plaintiffs have failed to plead the necessary underlying conduct ............ 37

3. Plaintiffs have otherwise failed to plead the elements of medical monitoring ............................................................................ 38

H. Plaintiffs' Spoliation Claim Fails (Count 16) ..................................... 39

I. Plaintiffs' Request For Punitive Damages Fails ................................... 39

CONCLUSION ......................................................................... 40

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Acord v. Colane Co.*,
719 S.E.2d 761 (W.Va. 2011) ........................................................................37

*Actiesselskabet Ingrid v. Central Railroad Co.*,
216 F. 72 (2d Cir. 1914) ...............................................................................30

*Adrian & Blissfield Railroad Co. v. Village of Blissfield*,
550 F.3d 533 (6th Cir. 2008).......................................................................3, 9

*Akron, Canton & Youngstown Railroad Co. v. I.C.C.*,
611 F.2d 1162 (6th Cir. 1979)........................................................................29

*Allegheny General Hospital v. Philip Morris, Inc.*,
228 F.3d 429 (3d Cir. 2000)...........................................................................31

*Alleman v. YRC*,
787 F. Supp. 2d 679 (N.D. Ohio 2011) .........................................................40

*Asp v. Toshiba America Consumer Products, LLC*,
616 F. Supp. 2d 721 (S.D. Ohio 2008) ..........................................................22

*Baatz v. Columbia Gas Transmission, LLC*,
929 F.3d 767 (6th Cir. 2019) .........................................................................33

*Baker v. Chevron U.S.A., Inc.*,
533 F. App'x 509 (6th Cir. 2013)....................................................................33

*Ballard v. National Football League Players Ass'n*,
123 F. Supp. 3d 1161 (E.D. Mo. 2015) .........................................................37

*Banford v. Aldrich Chemical Co.*,
932 N.E.2d 313 (Ohio 2010)..........................................................................32

*BNSF Railway Co. v. Eddy*,
459 P.3d 857 (Mont. 2020) ......................................................................28, 29

*Board of County Commissioners of County of La Plata v. Brown Group Retail,
Inc.*, 598 F. Supp. 2d 1185 (D. Colo. 2009)...................................................28

*Bradford v. Union Pacific Railroad Co.*,
491 F. Supp. 2d 831 (W.D. Ark. 2007) ..........................................................15

*Brown v. County Commissioners of Scioto County*,
 622 N.E.2d 1153 (Ohio Ct. App. 1993) ................................................................ 32

*Burlington Northern & Santa Fe Railway Co. v. Doyle*,
 186 F.3d 790 (7th Cir. 1999) ......................................................................... 16, 17

*CBC Engineers & Associates Ltd. v. Miller Aviation, LLC*,
 880 F. Supp. 2d 883 (S. D. Ohio 2012) ............................................................... 25

*Chambers v. St. Mary's School*,
 697 N.E.2d 198 (Ohio 1998) ............................................................................... 25

*Chance v. BP Chemicals, Inc.*,
 670 N.E.2d 985 (Ohio 1996) ......................................................................... 33, 34

*City of Auburn v. United States*,
 154 F.3d 1025 (9th Cir. 1998) ............................................................................... 8

*Conley v. Caudill*,
 2003 WL 21278885 (Ohio Ct. App. May 30, 2003) ............................................ 35

*CSX Transportation, Inc. v. Easterwood*,
 507 U.S. 658 (1993) ..................................................................................... 10, 11

*CSX Transportation, Inc. v. Public Utility Commission*,
 901 F.2d 497 (6th Cir. 1990) ............................................................................... 17

*Day v. NLO*,
 851 F. Supp. 869 (S.D. Ohio 1994) ..................................................................... 36

*Diehl v. CSX Transportation, Inc.*,
 349 F. Supp. 3d 487 (W.D. Pa. 2018) ................................................................. 10

*Doherty v. Ohio State University*,
 1990 WL 86772 (Ohio Ct. App. June 26, 1990) .................................................. 26

*Drawl v. Cornicelli*,
 706 N.E.2d 849 (Ohio 1997) ............................................................................... 39

*Elmer v. S.H. Bell Co.*,
 127 F. Supp. 3d 812 (N.D. Ohio 2015) ............................................. 31, 36, 37, 38

*Farm Bureau General Insurance Co. v. Schneider National Carriers*,
 552 F. Supp. 3d 750 (S.D. Ohio 2021) ................................................................ 23

*Federal Steel & Wire Corp. v. Ruhlin Construction Co.*,
 543 N.E.2d 769 (Ohio 1989) ............................................................................... 24

*Fisher v. Perron*,
    30 F.4th 289 (6th Cir. 2022) ...................................................................................7

*Flex Homes, Inc. v. Ritz-Craft Corp.*,
    721 F. Supp. 2d 663 (N.D. Ohio 2010) ................................................................40

*Friberg v. Kansas City Southern Railway Co.*,
    267 F.3d 439 (5th Cir. 2001).............................................................................9, 10

*Guckenberg v. Wisconsin Central Ltd.*,
    178 F. Supp. 2d 954 (E.D. Wis. 2001) ..................................................................9

*Hirsch v. CSX Transportation, Inc.*,
    2008 U.S. Dist. LEXIS 124211 (N.D. Ohio Oct. 22, 2008) ..........................27, 28

*Hirsch v. CSX Transportation, Inc.*,
    656 F.3d 359 (6th Cir. 2011)............................................................................36, 38

*Hoffer v. Cooper Wiring Devices, Inc.*,
    2007 WL 1725317 (N.D. Ohio June 13, 2007)....................................................24

*In re Behr Dayton Thermal Products Litigation*,
    2022 WL 3328407 (S.D. Ohio Aug. 11, 2022).................................................26, 28

*In re Derailment Cases*,
    416 F.3d 787 (8th Cir. 2005)............................................................................14, 15

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liability Litigation*,
    455 F. Supp. 2d 709 (N.D. Ohio 2006) ...............................................................37

*Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.*,
    916 F.2d 1174 (7th Cir. 1990).............................................................................29

*Jackson v. Arka Express, Inc.*,
    2022 WL 1136771 (N.D. Ohio Apr. 18, 2022)...................................................25

*Johnson v. CSX Transportation, Inc.*,
    2008 WL 4427211 (W.D. Ky. Sept. 25, 2008) ..................................................29

*Kramer v. Angel's Path, LLC*,
    882 N.E.2d 46 (Ohio 2007).................................................................................31

*Looman v. Montana*,
    2012 WL 5287951 (D. Mont. Aug. 23, 2012) ...................................................27

*Lueke v. Union Oil Co.*,
    2000 WL 1545077 (Ohio Ct. App. Oct. 20, 2000)............................................34

*Mann v. CSX Transportation, Inc.*,
   2009 WL 3766056 (N.D. Ohio Nov. 10, 2009), *aff'd sub nom.*,
   *Hirsch v. CSX Transportation, Inc.*, 656 F.3d 359 (6th Cir. 2011)...................... 36, 38, 39

*Mawa Inc. v. Univar USA Inc.*,
   2016 WL 2910084 (E.D. Pa. May 19, 2016) ................................................................21

*Maynard v. CSX Transportation, Inc.*,
   360 F. Supp. 2d 836 (E.D. Ky. 2004) ........................................................................8, 9

*MCI WorldCom Network Services, Inc. v. W.M. Brode Co.*,
   411 F. Supp. 2d 804 (N.D. Ohio 2006) .......................................................................35

*Mich. Southern Railroad Co. v. City of Kendallville*,
   251 F.3d 1152 (7th Cir. 2001)......................................................................................11

*Mohat v. Hovarth*,
   2013 WL 5450296 (Ohio Ct. App. Sept. 30, 2013) .................................................25, 26

*Nickels v. Grand Trunk Western Railroad, Inc.*,
   560 F.3d 426 (6th Cir. 2009)..................................................................3, 11, 12, 14, 18

*Norfolk Southern Railway Co. v. Shanklin*,
   529 U.S. 344 (2000) ....................................................................................................10

*Parrish v. JCI Jones Chemicals, Inc.*,
   2019 WL 1410880 (D. Haw. Mar. 28, 2019)................................................................21

*Philadelphia Electric Co. v. Hercules, Inc.*,
   762 F.2d 303 (3d Cir. 1985)........................................................................................32

*Pinares v. United Technologies Corp.*,
   2011 WL 240522 (S.D. Fla. Jan. 19, 2011) .............................................................23, 24

*Preston v. Murty*,
   512 N.E.2d 1174 (Ohio 1987).....................................................................................40

*Ramirez v. Akzo Nobel Coatings, Inc.*,
   791 N.E.2d 1031 (Ohio Ct. App. 2003).......................................................................34

*Redland Soccer Club, Inc. v. Department of the Army*,
   696 A.2d 137 (Pa. 1997) .......................................................................................37, 38, 39

*Roth v. Norfalco, LLC*,
   651 F.3d 367 (3d Cir. 2011)......................................................................... 3, 19, 20, 21

*Rushing v. Kansas City Southern Railway Co.*,
   194 F. Supp. 2d 493 (S.D. Miss. 2001) .........................................................................9

*Salerno v. City of Niagara Falls*,
    2020 WL 5814406 (W.D.N.Y. Sept. 30, 2020), *aff'd*, 2021 WL 4592138
    (2d Cir. 2021) .................................................................................... 23, 24

*Sanders v. Norfolk Southern Corp.*,
    2010 WL 297813 (D.S.C. Jan. 20, 2010) ............................................. 18, 22

*Scarbrough v. Coleman Co.*,
    2013 WL 3825248 (D. Colo. July 24, 2013) ......................................... 21, 22

*Self v. Norfolk Southern Corp.*,
    2007 WL 540373 (D.S.C. Feb. 15, 2007) .............................................. 18, 22

*Sheldon v. Kettering Health Network*,
    40 N.E.3d 661 (Ohio Ct. App. 2015) ............................................................ 25

*Smith v. Howard Johnson Co.*,
    615 N.E.2d 1037 (Ohio 1993) ....................................................................... 39

*State ex rel. City of Martinsburg v. Sanders*,
    632 S.E.2d 914 (W.Va. 2006) .................................................................. 38, 39

*State v. O'Brien*,
    2017 WL 3475524 (Ohio Ct. App. Aug. 10, 2017) ...................................... 36

*Steward v. City of Columbus*,
    1998 WL 598433 (Ohio Ct. App. Sept. 10, 1998) ........................................ 26

*Strother v. Hutchinson*,
    423 N.E.2d 467 (Ohio 1981) ......................................................................... 22

*Suchon v. Wisconsin Central Ltd.*,
    2005 WL 568057 (W.D. Wis. Feb. 23, 2005) .............................................. 10

*Timbuk Farms, Inc. v. Hortica Insurance & Employees Benefits*,
    2021 WL 5446416 (Ohio Ct. App. Nov. 15, 2021) ...................................... 34

*Tipton v. CSX Transportation, Inc.*,
    2016 WL 11501426 (E.D. Tenn. July 7, 2016) ........................... 8, 9, 15, 16, 18

*Tipton v. CSX Transportation, Inc.*,
    2017 WL WL 10398182 (E.D. Tenn. Oct. 25, 2017) .................................... 13

*Town of East Troy v. Soo Line Railroad Co.*,
    409 F. Supp. 326 (E.D. Wis. 1976) .............................................................. 29

*Trimbur v. Norfolk Southern Railway Co.*,
    2015 WL 4755205 (S.D. Ohio Aug. 10, 2015) .................. 9, 16, 17, 18, 21, 29

*United States Fire Insurance Co. v. Ohio High School Athletic Ass'n,*
    595 N.E.2d 418 (Ohio Ct. App. 1991)...........................................................................24

*Wamer v. University of Toledo,*
    27 F.4th 461 (6th Cir. 2022) ...................................................................................7, 23

*Wilkins v. Navy Federal Credit Union,*
    2023 WL 239976 (D.N.J. Jan. 18, 2023)......................................................................22

*Williams v. Oeder,*
    659 N.E.2d 379 (Ohio. Ct. App. 1995)........................................................................33

*Windsor-Laurelwood Center Behavioral Medicine v. Waller Landsen Dortch & Davis,*
    2013 WL 12303992 (N.D. Ohio July 24, 2013).....................................................39, 40

*Zimmerman v. Norfolk Southern Corp.,*
    706 F.3d 170 (3d Cir. 2013)............................................................................11, 12, 14

## DOCKETED CASES

*Feezle v. Norfolk Southern Railway Co.,*
    No. 4:23-cv-00242 (N.D. Ohio) ......................................................................................4

*Eisley v. Norfolk Southern Railway Co.,*
    No. 4:23-cv-00250 (N.D. Ohio) ......................................................................................5

*Ibel v. Norfolk Southern Corp.,*
    No. 4:23-cv-00315 (N.D. Ohio) ......................................................................................5

*Battaglia v. Norfolk Southern Railway Co.,*
    No. 4:23-cv-00303 (N.D. Ohio) ......................................................................................5

## STATUTES, RULES, REGULATIONS, AND RESTATEMENTS

49 C.F.R.
§ 171 ................................................................................................ 12, 17, 21
§ 172 ............................................................................................ 13, 17, 20, 21
§ 174 ...................................................................................................... 17, 21
§ 178 ...................................................................................................... 13, 17
§ 179 ...................................................................................................... 17, 21
§ 209 ............................................................................................................ 17
§ 213 .................................................................................................. 12, 14, 17
§ 214 ............................................................................................................ 17
§ 215 .................................................................................................. 14, 15, 17
§ 229 ............................................................................................................ 17
§ 231 ............................................................................................................ 17
§ 232 ............................................................................................................ 17
§ 240 .................................................................................................... 12, 16
§ 242 .................................................................................................... 12, 16
§ 270 ............................................................................................................ 17
§ 271 ............................................................................................................ 17
§ 272 ............................................................................................................ 17
§§ 171-180 .............................................................................................. 7, 21
§§ 200-299 .................................................................................................... 7
§§ 1000-1399 ................................................................................................ 7

49 U.S.C.
§ 1301 ........................................................................................................... 8
§ 5103 ...................................................................................................... 7, 21
§ 5125 ................................................................................................ 19, 20, 21
§ 10501 ................................................................................................. 6, 8, 9
§ 11101 ..................................................................................................... 4, 29
§ 20101 ....................................................................................................... 10
§ 20103 ......................................................................................................... 7
§ 20106 ............................................................................... 11, 12, 13, 14, 18

Ohio Rev. Code
§ 901 .......................................................................................................... 35
§ 959 .......................................................................................................... 36

W.Va. Code
§ 61-3-48a ................................................................................................. 36

*Restatement (Second) of Torts*
§ 217 .......................................................................................................... 35
§ 519 .......................................................................................................... 26
§ 520 ...................................................................................................... 27, 28
§ 521 .......................................................................................................... 28

# OTHER AUTHORITIES

Letter from A. Shaw to Senator M. Cantwell et al. (May 9, 2023),
https://www.commerce.senate.gov/services/files/9ED3E59A-6BE7-41F8-857A-
70794EE5C561. ...................................................................................................... 1, 2

*Norfolk Southern Working Toward Long-Term Funds to Benefit East Palestine*,
NORFOLK SOUTHERN (Mar. 15, 2023),
http://nscorp.mediaroom.com/2023-03-14-Norfolk-Southern-working-toward-long-
term-funds-to-benefit-East-Palestine................................................................................2

Testimony of A. Shaw, *Hearing Before the United States Senate Committee on
Commerce, Science, and Transportation* (Mar. 22, 2023),
https://www.commerce.senate.gov/services/files/6A35F72F-7271-4EAE-A80B-
E4B620B82573. ....................................................................................................................1

U.S. Department of Transportation, FRA Audit Report of Norfolk Southern Railway
Company, FRA Audit Number: 2022-NS Special Audit-01-1 (July 8, 2022),
https://railroads.dot.gov/sites/fra.dot.gov/files/2022-11/Final%20Norfolk%20
Southern%20Audit%20Report%202022%20%28003%29.pdf....................................... 12

Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively, "Norfolk Southern") respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiffs' Master Consolidated Class Action Complaint (Dkt. 31, the "Complaint") under Federal Rule of Civil Procedure 12(b)(6) and to Strike under Federal Rule of Civil Procedure 12(f).

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case arises from a train derailment in East Palestine, Ohio, on February 3, 2023. There was a "resulting fire," and, two days later, "'a drastic temperature change in a rail car'" carrying vinyl chloride risked explosion.  Compl. ¶¶ 112, 125, 133.  The Governor of Ohio promptly issued an evacuation order for anyone living within one mile of the derailment.  *Id.* ¶ 133.  To prevent an explosion, in coordination with federal, state, and local officials, a controlled vent and burn of five cars was performed the following day.  *See id.* ¶¶ 133-138.

The first car to derail did not belong to Norfolk Southern.  Nor did Norfolk Southern construct the wheel bearing that allegedly "overheated" and "caused the train to derail."  Compl. ¶ 122.  And Norfolk Southern, as a common carrier, was required by federal law to transport vinyl chloride, a hazardous chemical with numerous industrial uses.

Nonetheless, without any finding of fault, Norfolk Southern has undertaken efforts to assist the people of East Palestine and the surrounding area, including by providing millions of dollars in financial assistance to residents and businesses.[1]  To date, Norfolk Southern has paid over $16 million directly to residents through its Family Assistance Center.[2]  It also has committed to creating a healthcare fund, a property fund for homeowners who sell their homes,

---

[1]     *See, e.g.*, Compl. ¶ 221 (citing Test. of A. Shaw, *Hearing Before the United States Senate Committee on Commerce, Science, and Transportation* (Mar. 22, 2023)).

[2]     *See, e.g.*, Ltr. from A. Shaw to Senator M. Cantwell et al. (May 9, 2023).

and a water-testing fund for East Palestine and surrounding communities.[3]  And it is remediating the site, under the oversight of the Environmental Protection Agency and the EPA's directives in the Unilateral Administrative Order for Removal Actions, as well as the Ohio EPA.

Norfolk Southern deeply regrets the impact this derailment has had on people and businesses in East Palestine and the surrounding area.  Norfolk Southern is committed to making things right.  At the same time, Norfolk Southern must defend itself against unfounded accusations and legally deficient claims.  That is the case here.  Plaintiffs' Complaint is a misdirected and unsupported attempt to impose legal liability that fails on threshold grounds.

Seeking to represent a putative class "upwards of 500,000 Class Members" (Compl. ¶ 141), Plaintiffs propose classes and subclasses spanning three States and nearly 3,000 square miles encompassed by a 30-mile radius around the derailment.  The sole basis for that multi-state class consisting of half-a-million members is one allegation made on "information and belief": "the smoke and particulate plume from the 'controlled release' eventually traveled a total of 30 miles in each direction." *Id.*  Putting aside at this stage the individualized, class-preclusive issues inherent in Plaintiffs' case—one that proceeds on the theory that a resident within the evacuation zone is similarly situated to a resident 30 miles away—the Complaint fails at the starting gate for two independent reasons.

*First*, Plaintiffs' negligence, gross negligence, nuisance, and strict-liability claims are preempted.  Federal law expansively regulates railroad operations, safety, and transportation of hazardous materials by means of three statutes, each of which contains a broad preemption provision:  the Interstate Commerce Commission Termination Act ("ICCTA"), the Federal

---

[3]      *See also, e.g., id.*; *Norfolk Southern Working Toward Long-Term Funds to Benefit East Palestine*, NORFOLK S. (Mar. 15, 2023); Compl. ¶ 221.

Railroad Safety Act ("FRSA"), and the Hazardous Materials Transportation Act ("HMTA"). Longstanding case law—including cases involving train derailments and subsequent chemical releases—makes clear that those statutes preempt the core of Plaintiffs' case.  Thus, the ICCTA preempts all state laws, including claims like those asserted here, that "'may reasonably be said to have the effect of managing or governing rail transportation.'"  *Adrian & Blissfield R.R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008).  The FRSA preempts state-law claims like Plaintiffs' concerning railroad safety, which are "substantially subsumed" by the far-reaching regulations enacted under that statute.  *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430-431 (6th Cir. 2009).  And the HMTA preempts Plaintiffs' claims "that relate to, or are 'about'" the transportation of hazardous materials—the central feature of the Complaint.  *See Roth v. Norfalco, LLC*, 651 F.3d 367, 374-375 (3d Cir. 2011).

*Second*, Plaintiffs fail to satisfy their pleading burden for all their claims and their request for punitive damages.  Plaintiffs' claims consistently rely on vague and conclusory allegations that Norfolk Southern somehow acted improperly in its statutorily required transportation of hazardous materials and in its efforts to mitigate any potential harm resulting from the derailment; that "smoke and particulate plume" somehow uniformly traveled 30 miles in every direction, despite, for example, varying atmospheric conditions; and that the traveling plume caused unspecified economic loss, property damage, and increased health risk.  That does not satisfy Rule 12(b)(6).  And the pleading deficiencies are especially glaring when viewed against the factual and procedural backdrop of this litigation.  Plaintiffs filed this Complaint more than three months after the incident, amid extensive reporting and public hearings, with the benefit of the coordinated efforts of numerous firms that previously filed 31 complaints.  Yet this Complaint remains strikingly—and fatally—threadbare.  It should be dismissed.

## STATEMENT OF THE ISSUES

1.      Whether Plaintiffs' negligence, gross negligence, nuisance, and strict-liability claims are preempted by the ICCTA, FRSA, and HMTA.

2.      Whether all of Plaintiffs' claims and their request for punitive damages are inadequately pleaded.

## BACKGROUND

On February 3, 2023, a Norfolk Southern train derailed in East Palestine, Ohio.  About "38 of the train cars derailed and an additional twenty railcars were damaged," and there was a "resulting fire."  Compl. ¶¶ 112, 125.  Two days later, there was "'a drastic temperature change in a rail car'" carrying vinyl chloride (*id.* ¶ 133), a hazardous substance.  As Plaintiffs admit, Norfolk Southern, a common carrier, was required by federal law to accept hazardous substances for transport.  *Id.* ¶ 62; *see* 49 U.S.C. § 11101(a).

Ohio Governor Mike DeWine issued an evacuation order on the evening of February 5 for anyone living within one mile of the derailment site.  Compl. ¶ 133.  "[T]eams are working to prevent an explosion from happening," the Governor explained.  *Id.*  But there was "the potential of a catastrophic tanker failure which could cause an explosion with the potential of deadly shrapnel traveling up to a mile."  *Id.*  To prevent that, a controlled vent and burn was performed the following day in coordination with government officials.  *See id.* ¶¶ 135-138.

Within days of the derailment, multiple lawsuits were filed in this Court, the first of which was a putative class action.  *See Feezle v. Norfolk S. Ry. Co.*, No. 4:23-cv-00242 (N.D. Ohio).  More than 20 putative class actions followed, in addition to numerous individual complaints.  In the main, those complaints were largely similar, grounded in negligence claims.  But they varied in the putative class area definitions:  some defined by reference to the

evacuation zone (*e.g.*, *Eisley*, No. 4:23-cv-00250); others, a range of 10 to 30 miles out (*e.g.*, *Ibel*, No. 4:23-cv-00315); and still one more, up to 100 miles out (*Battaglia*, No. 4:23-cv-00303). Ultimately, this Court consolidated the cases, appointed interim class counsel, ordered Plaintiffs to file a master consolidated complaint, and established a briefing schedule for any motion in response.  *See* Order at 11-12, 21, Dkt. 28.

In the meantime, there were numerous state and federal hearings on the derailment.  Press reporting was constant.  Investigations and regulatory actions commenced.  And the EPA issued a Unilateral Administrative Order for Removal Actions, under which Norfolk Southern is conducting remediation at the site.

Amid that highly publicized backdrop, Plaintiffs filed their Complaint on May 4.  It is expansive in its class definition and claims, but lacking in non-conclusory factual allegations. Plaintiffs seek to represent at least half-a-million members, proposing classes spanning three States encompassed by a 30-mile radius around the derailment.  Those classes include residents, property owners, employees, and businesses, each with state-based subclasses for Ohio, Pennsylvania, and West Virginia.  *See* Compl. ¶ 194(1)-(4).  Plaintiffs have excluded from their case "any claims of physical manifestation of personal or bodily harm" (*id.* ¶¶ 196, 217), but otherwise seek damages, including punitives, and injunctive relief for various alleged business, income, and agricultural losses, and medical monitoring.  *See, e.g.*, *id.* ¶ 1.

Plaintiffs assert 17 claims total, including negligence, negligence per se, and gross negligence (Counts 1, 17); strict liability (Count 2); statutory, private, and public nuisances (Counts 3-6); and trespasses (Counts 7-8).  Plaintiffs also assert state-law statutory claims (Counts 9-12), claims for medical monitoring (Counts 13-15), and spoliation (Count 16).

All the claims are largely based on the same underlying allegations arising out of the derailment and subsequent controlled vent and burn.  Generally, Plaintiffs assert that Norfolk Southern was negligent in unspecified ways and that Plaintiffs, in turn, were injured in equally unspecified ways.  For example, Plaintiffs assert without elaboration:  Norfolk Southern "negligently, carelessly and/or recklessly breached their duties to Plaintiffs and the Class by, among other things: … [f]ailing to properly inspect their trains and rail cars."  Compl. ¶ 232(a).  Plaintiffs make similar allegations with respect to maintaining, repairing, loading, organizing, and other core aspects of train operations.  *Id.* ¶ 232(b)-(nn).

Plaintiffs' nuisance and trespass claims follow the same model, with unspecified allegations of improper conduct followed by a recitation of the elements of the claims.  For private nuisance:  "Defendants, through the negligent, reckless and/or intentional acts and omissions alleged herein, have contaminated real property located in the 30-mile radius surrounding the East Palestine derailment site."  Compl. ¶ 280.  And for trespass:  "Defendants … intentionally, knowingly, and negligently used, discharged, spread, deposited and/or released … hazardous materials knowing that those toxins would contaminate the real property and drinking water."  *Id.* ¶ 303.  As for medical monitoring, Plaintiffs have disclaimed any physical injuries.  *Id.* ¶¶ 196, 217.  But they assert they are entitled to medical monitoring, as far as 30 miles out from the derailment, based on an asserted "significantly increased risk" of disease.  *Id.* ¶¶ 365, 375, 385.

The core of Plaintiffs' case is grounded in key areas of rail transportation that federal law comprehensively regulates.  The ICCTA established the Surface Transportation Board ("STB"), which has "exclusive" jurisdiction over "transportation by rail carriers," 49 U.S.C. § 10501, and has used that power to enact wide-ranging regulations governing virtually all aspects of rail

operations, *see* 49 C.F.R. §§ 1000-1399.  The FRSA authorizes the Federal Railroad Administration ("FRA") to prescribe regulations related to railroad safety, 49 U.S.C. § 20103(a), which it has done to achieve the statute's goal of national uniformity in rail safety, *see* 49 C.F.R. §§ 200-299.  And the HMTA governs transportation of hazardous materials, like vinyl chloride, including by directing the Secretary of Transportation to issue regulations "for the safe transportation … of hazardous materials," 49 U.S.C. § 5103(b), a directive that the Secretary has followed, *see* 49 C.F.R. §§ 171-180.  Plaintiffs' claims are based on conduct that Norfolk Southern allegedly undertook in this heavily regulated environment.

## LEGAL STANDARD

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Wamer v. University of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022).  "[T]he presumption of truth," however, "is inapplicable to legal conclusions." *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022).  Moreover, mere "'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Wamer*, 27 F.4th at 466.  Under Rule 12(f), a motion to strike functions "to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Eng'rs Local 324 Health Care Plan v. G &W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

## ARGUMENT

### I. FEDERAL LAW PREEMPTS PLAINTIFFS' NEGLIGENCE, GROSS NEGLIGENCE, NUISANCE, AND STRICT-LIABILITY CLAIMS

Federal law expansively regulates railroad operations and the transportation of hazardous materials.  Multiple federal statutes prescribe rules and procedures that railroads must follow, and regulations enacted under those statutes govern railway operations, safety and training, and

infrastructure.  "[T]he Supreme Court repeatedly has recognized the preclusive effect" of this comprehensive regulatory scheme in railway litigation.  *City of Auburn v. United States*, 154 F.3d 1025, 1029 (9th Cir. 1998).  Here, the core of Plaintiffs' case is preempted by the ICCTA, FRSA, and HMTA.

### A.     The ICCTA Preempts Plaintiffs' Negligence And Gross Negligence Claims Concerning Railroad Transportation (Counts 1, 17)

Congress enacted the ICCTA to "significantly reduce state and local regulation of railroads."  *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 839 (E.D. Ky. 2004).  To that end, Congress established the STB, 49 U.S.C. § 1301, in which it vested jurisdiction over broad areas of railway transportation and operations, including:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]

*Id.* § 10501(b).  The ICCTA makes that jurisdiction exclusive by explicitly preempting state laws that purport to regulate rail transportation:  "Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."  *Id.*  State common-law claims qualify as "regulation" for purposes of § 10501(b).  *See Tipton v. CSX Transp., Inc.*, 2016 WL 11501426, at *6-8 (E.D. Tenn. July 7, 2016); *see also, e.g.*, *Maynard*, 360 F. Supp. 2d at 840 ("federal circuit and district courts … have consistently held that the ICCTA preempts state common law claims with respect to railroad operations").

Consistent with Congress's intent to uniformly regulate rail transportation, courts in this Circuit and elsewhere have found a range of state-law claims concerning railroad transportation

preempted by the ICCTA—including those arising from train derailments. *See, e.g., Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) (claims of negligence and negligence per se, bearing on "train speed, length, and scheduling," preempted by ICCTA); *Tipton*, 2016 WL 11501426, at *7-8 (claims related to negligent design, operation, inspection, maintenance, and repair based on train derailment preempted by ICCTA); *Trimbur v. Norfolk S. Ry. Co.*, 2015 WL 4755205, at *5-8 (S.D. Ohio Aug. 10, 2015) (negligence, gross negligence, and negligence per se claims concerning track inspection and maintenance based on train derailment preempted by ICCTA); *Maynard*, 360 F. Supp. 2d at 843 (nuisance claims premised on alleged drainage problems caused by railroad track preempted by ICCTA); *Rushing v. Kan. City S. Ry. Co.*, 194 F. Supp. 2d 493, 499 (S.D. Miss. 2001) (negligence and nuisance claims related to operation of railway preempted by ICCTA); *Guckenberg v. Wis. Cent. Ltd.*, 178 F. Supp. 2d 954, 958 (E.D. Wis. 2001) (nuisance claims premised on alleged noise from railroad's operations preempted by ICCTA).

As the Sixth Circuit has explained, the ICCTA "preempts all 'state laws that may reasonably be said to have the effect of managing or governing rail transportation.'" *Adrian & Blissfield R.R. Co.*, 550 F.3d at 539-540. In particular, a state law is preempted when it has "'the effect of preventing or unreasonably interfering with railroad transportation.'" *Id.* Plaintiffs' negligence and gross negligence claims are premised on allegations that would do just that.

***Routes of rail carriers***: Plaintiffs allege that Norfolk Southern was generally negligent in failing to route the train in a way that would avoid populated areas. Compl. ¶¶ 232(y), 407(o). But the ICCTA vests exclusive jurisdiction over the routes of rail carriers in the STB. *See* 49 U.S.C. § 10501(b)(1) ("The jurisdiction of the [STB] over … the remedies provided in this part with respect to … routes … is exclusive."). As a result, state-law claims that attempt to regulate

routing, as Plaintiffs' negligence and gross negligence claims attempt to do, are preempted.  *See Suchon v. Wis. Cent. Ltd.*, 2005 WL 568057, at *3-4 (W.D. Wis. Feb. 23, 2005) (ICCTA preempted nuisance claims arising from rerouting tracks to create a "bypass track").

     ***Train length, organization, and loading of train cars***:  Plaintiffs generally allege that the derailed train had "too many rail cars" and that Norfolk Southern improperly organized and loaded the train cars.  Compl. ¶¶ 232(p)-(r), 407(f)-(h).  Those allegations again go to activities central to how railroads operate—the composition of the trains themselves.  Plaintiffs' negligence and gross negligence claims premised on these allegations are preempted because they would unreasonably burden railroad transportation by imposing duties on Norfolk Southern's operations, which fall in the exclusive jurisdiction of the STB.  *See Friberg*, 267 F.3d at 444 ("Nothing in the … all-encompassing language of the ICCTA's preemption clause permit[s] the federal statute to be circumvented by allowing liability to accrue under state common law, where that liability arises from a railroad's economic decisions such as those pertaining to train length[.]"); *Diehl v. CSX Transp., Inc.*, 349 F. Supp. 3d 487, 499-500 (W.D. Pa. 2018) ("Plaintiff's allegations that Defendant's train was not organized in a safe manner" to safely distribute the weight of rail cars "clearly involve the operation and construction of rail carrier tracks and facilities, such that they fall within the exclusive jurisdiction of the STB.").

## B.    The FRSA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning Railroad Safety (Counts 1-6, 17)

     The FRSA, as Plaintiffs acknowledge, was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101; *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000); Compl. ¶ 237.  The act gives the Secretary of Transportation "broad powers" to prescribe appropriate rules, regulations, orders, and standards for all areas of railroad safety.  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658,

662 (1993). The Secretary has delegated that power to the FRA. *See Mich. S. R.R. Co. v. City of Kendallville*, 251 F.3d 1152, 1154 (7th Cir. 2001).

The FRSA includes an express preemption provision, providing that "[l]aws, regulations, and orders related to railroad safety … shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). To that end, the FRSA limits a State's ability to adopt or enforce laws and regulations related to railroad safety. A State may do so only "until the Secretary of Transportation … prescribes a regulation or issues an order covering the subject matter of the State requirement." *Id*. § 20106(a)(2). After the Secretary prescribes such a regulation, a State's ability to adopt or continue to enforce an "additional or more stringent" law or regulation related to railroad safety is even further limited. *Id.* It may do so only in narrow circumstances when the state law or regulation (1) "is necessary to eliminate or reduce an essentially local safety hazard," (2) "is not incompatible" with a federal law or regulation, and (3) "does not unreasonably burden interstate commerce." *Id.*

In 2007, Congress amended the FRSA to "clarif[y]" that the preemption provision should not be "construed" to preempt certain state-law claims—specifically, those "seeking damages for personal injury, death, or property damage" alleging that a party either (1) failed to comply with a federal standard of care established by a regulation, (2) failed to comply with its own rule "created pursuant to a regulation or order" issued by the Secretary of Transportation, or (3) "failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)." 49 U.S.C. § 20106(b)(1); *see Nickels*, 560 F.3d at 432 (describing 2007 amendment). Following that amendment, courts have described FRSA preemption analysis as a "two-step process." *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 178 (3d Cir. 2013). First, courts ask whether a plaintiff plausibly alleges that a defendant violated either (1) a federal

- 11 -

standard of care or (2) an internal rule that was created pursuant to federal regulation.  *Id.*; *see* 49 U.S.C. § 20106(b)(1)(A)-(B).  If so, the claim avoids preemption.  Second, if a plaintiff makes no such plausible allegations, courts then determine whether any federal regulation "cover[s]" the claim.  *Zimmerman*, 706 F.3d at 178; *see* 49 U.S.C. § 20106(a)(2), (b)(1)(C).  A claim is "covered," and therefore preempted, "if a FRSA regulation substantially subsumes the subject matter of the suit."  *Nickels*, 560 F.3d at 430-31.  Plaintiffs' claims fail both steps.

### 1. Plaintiffs have not plausibly alleged that Norfolk Southern violated a federal standard of care or an internal rule that was created pursuant to federal regulation

As to a federal standard of care, Plaintiffs allege, "upon information and belief," that Norfolk Southern violated "one or more regulations," listing a host of regulations that Norfolk Southern purportedly violated.  Compl. ¶ 237.  They also allege, without elaboration, that Norfolk Southern violated dozens of duties, some of which reflect duties imposed by federal regulations.  *See id.* ¶ 232.  But Plaintiffs make no attempt to explain with plausible factual allegations how Norfolk Southern violated any purported federal regulation or duty imposed by federal regulations.  Such bare pleading does not meet the requirements under Rule 12(b)(6).[4]  In any event, the Complaint notably does not allege that Norfolk Southern violated several regulations covering conduct at the core of their claims, including 49 C.F.R. §§ 213 (Track Safety Standards), 240 (Qualification and Certification of Locomotive Engineers), 242 (Qualification and Certification of Conductors), 243 (Training, Qualification, and Oversight for Safety-Related Railroad Employees), 171 (Hazardous Materials Regulations; General

---

[4]    Plaintiffs' allegations are not simply unsupported; they are undermined by materials Plaintiffs reference in their Complaint.  Plaintiffs have incorporated by reference the FRA's July 2022 Audit Report of Norfolk Southern.  Compl. ¶ 103 n.6.  That report states that an FRA audit conducted from January 2022 through early May 2022 showed that, "in many aspects, NS programs are largely effective and compliant with relevant safety regulations."  U.S. Dep't of Transp., FRA Audit Report of Norfolk Southern Railway Company, FRA Audit Number: 2022-NS Special Audit-01-1, at 4 (July 8, 2022).

Information, Regulations, and Definitions), 172 (Hazardous Materials Table, Special Provisions, Hazardous Materials Communications, Emergency Response Information, Training Requirements, and Security Plans), 178 (Specifications for Packaging).  Thus, Plaintiffs have failed to plead that Norfolk Southern "has failed to comply" with a federal standard of care.  *See* 49 U.S.C. § 20106(b)(1)(A).

Plaintiffs' claims fare no better as to an internal operating rule "created pursuant to a regulation."  49 U.S.C. § 20106(b)(1)(B).  After acknowledging the broad scope of the FRSA (Compl. ¶ 237), Plaintiffs assert the FRSA authorizes railroads to adopt "additional or more stringent requirements" and that Norfolk Southern adopted "a comprehensive set of operating rules which apply to their operations," Operating Rule 140 (which relates to employees inspecting trains), and that Norfolk Southern violated Operating Rule 140 "regarding train inspections."  Compl. ¶ 239.  That is a familiar tactic that courts have rejected.  "[T]he overwhelming majority of federal courts to address this issue have concluded that a railroad operating rule is only created 'pursuant to' federal law if a specific regulation affirmatively mandates adoption of the rule."  *Tipton v. CSX Transp., Inc.*, 2017 WL 10398182, at *21 (E.D. Tenn. Oct. 25, 2017).  Plaintiffs identify no regulation that "affirmatively mandate[d]" that Norfolk Southern adopt Operating Rule 140 or any other set of operating rules.  Instead, Plaintiffs allege that the FRSA merely "authorizes" railroads to adopt such operating rules.  Compl. ¶ 239.  As a result, they have not alleged that Norfolk Southern "failed to comply with its own plan … that it created pursuant to a regulation or order."  49 U.S.C. § 20106(b)(1)(B).

2.      **Plaintiffs' negligence, gross negligence, nuisance, and strict-liability claims premised on railroad safety are "covered" by FRSA regulations**

Because Plaintiffs have not plausibly alleged that Norfolk Southern violated a federal standard of care or an internal rule created pursuant to a federal regulation, their claims of negligence, gross negligence, nuisance, and strict liability concerning railroad safety are preempted if they are "cover[ed]" by FRSA regulations.  *Zimmerman*, 706 F.3d at 178; *see* 49 U.S.C. § 20106(a)(2), (b)(1)(C).  As noted, a state-law claim is "covered … if a FRSA regulation substantially subsumes the subject matter of the suit."  *Nickels*, 560 F.3d at 429.  "[A] regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter."  *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005).  Plaintiffs' negligence, gross negligence, nuisance, and strict-liability claims—premised on allegations imposing duties on Norfolk Southern concerning railroad safety—plainly fall within the "substantially subsumed" standard.

*Inspection*:  Plaintiffs generally allege that Norfolk Southern failed to properly inspect or monitor the rail tracks and cars, including by failing to maintain "vigilant lookout during the operation of its trains and cars."  Compl. ¶¶ 232(a)-(g), (k)-(m), 407(a)-(e).  Claims based on those allegations are substantially subsumed by FRSA regulations, which regulate inspection of rail tracks and cars.  For example, 49 C.F.R. Part 213, titled "Track Safety Standards," details federal standards related to track safety, including "Inspection" of tracks, which is governed by Subpart F.  *See* 49 C.F.R. §§ 213 *et seq.*  That subpart "prescribes the requirements for the frequency and manner of inspecting [the] track to detect deviations from the standards prescribed in this part."  *Id.* § 213.231.  Similarly, 49 C.F.R. Part 215, titled "Railroad Freight Car Safety Standards," prescribes safety standards for railroad cars and covers the field related to inspection of train cars.  *See* 49 C.F.R. § 215.1.  Those standards include provisions related to pre-departure

- 14 -

inspections, periodic inspections, and the inspectors themselves.  *See id.* §§ 215.11 ("Designated Inspectors"), 215.13 ("Pre-Departure Inspection"), 215.15 ("Periodic Inspection").  It further includes a "Pre-departure Inspection Procedure" that railroads must follow when a designated inspector is not on duty.  *See* App. D to 49 C.F.R. Part 215.  In view of this comprehensive federal regulation of track and train-car inspections, courts hold that claims based on inadequate inspections are preempted by the FRSA.  *See, e.g.*, *In re Derailment Cases*, 416 F.3d at 794 (negligence claim based on inadequate inspection of train, brought following derailment and resultant chemical release, preempted by FRSA); *Tipton*, 2016 WL 11501426, at *11 (negligence claim premised on alleged failure to maintain lookout preempted by FRSA); *Bradford v. Union Pac. R.R. Co.*, 491 F. Supp. 2d 831, 839 (W.D. Ark. 2007) (state-law claims based on negligent inspection preempted by FRSA).  Plaintiffs' negligence claims premised on improper inspection or monitoring of tracks or cars are thus preempted.

That case law also applies to preempt Plaintiffs' claims alleging inadequate inspection and monitoring with respect to "wayside detectors" or "hot-box detectors," which "alert operators to equipment failures while the train is in operation."  Compl. ¶¶ 105, 232(l), 407(b).  As noted, Part 215 ("Railroad Freight Car Safety Standards") covers the field related to inspection of train cars.  Hot-box detectors, as Plaintiffs allege, are one means by which Norfolk Southern can inspect trains following a Part 215 pre-departure inspection.  *See id.* ¶ 116.  Yet Part 215, which covers train inspection, does not require use of hot-box detectors.[5]  Therefore, to the extent Plaintiffs' claims are premised on allegations related to hot-box detectors, such claims

---

[5]     By contrast, Part 215 includes regulations related to overheated wheels and defective roller bearings, which cover the same subject matter as Plaintiffs' allegations concerning hot-box detectors.  *See, e.g.*, 49 C.F.R. §§ 215.103(h), 215.115.

are preempted.  *See Tipton*, 2016 WL 11501426, at *11 (negligence claim preempted to the extent premised on allegedly defective hot-box detectors).

> *Training*:  Plaintiffs generally allege that Norfolk Southern was negligent in failing to properly train railroad personnel.  Compl. ¶¶ 232(s)-(x), (aa)-(bb), 407(i)-(n).  Claims premised on those allegations are preempted because federal regulations substantially subsume the subject matter—namely, qualification and training of railroad personnel.  For example, 49 C.F.R. Part 240, titled "Qualification and Certification of Locomotive Engineers," sets the training and certification requirements for engineers and the approval process for such training programs.  49 C.F.R. § 240.1(b).  That part establishes "[c]riteria for consideration of operating rules compliance," *id.* § 240.117, and requirements for training programs, *see id.* § 240.123.  Part 242 sets similar requirements for train conductors.  *See* 49 C.F.R. § 242.1(b); *see also, e.g.*, *id.* § 242.101 (requiring conductor certification program); *id.* § 242.103 (requiring FRA approval of certification program); *id.* § 242.119 (outlining requirements of conductor training).  Finally, Part 243, titled "Training, Qualification, and Oversight for Safety-Related Railroad Employees," establishes comparable requirements concerning other "safety-related" railroad employees.  *See, e.g.*, *id.* § 243.103 (identifying requirement components of training program); *id.* § 243.109 (outlining procedure for approval of training program); *id.* § 243.201 (establishing requirements for safety-related employees).

These regulations substantially subsume Plaintiffs' negligence claims, as premised on allegations related to inadequate training.  *See Trimbur*, 2015 WL 4755205, at *9 ("The FRSA prescribes 'safety standards for the eligibility, training, testing certification and monitoring of all locomotive engineers to whom it applies.'  These regulations substantially subsume the hiring, training and supervision of persons operating a locomotive or train."); *see also Burlington N. &*

*Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 796-797 (7th Cir. 1999) (state laws concerning train-crew qualifications preempted).

   ***Transportation of hazardous materials***:  Plaintiffs generally allege that Norfolk Southern was negligent in its transportation of allegedly hazardous materials.  *See* Compl. ¶¶ 232(c), (h)-(k), (m)-(o), (s), (y)-(z), (bb)-(mm), 407(m), (p), (r)-(cc).  They also assert a strict-liability claim and nuisance claims based on Norfolk Southern's transportation of allegedly hazardous materials.  *See id.* ¶¶ 244-253, 259, 271, 286, 293.  Allegations concerning the transportation of hazardous materials are substantially subsumed within regulations promulgated under the FRSA (as well as the HMTA, as discussed below).  *See, e.g.*, 49 C.F.R. §§ 209 (Railroad Safety Enforcement Procedures), 213 (Track Safety Standards), 214 (Railroad Workplace Safety), 215 (Railroad Freight Car Safety Standards), 229 (Railroad Locomotive Safety Standards), 231 (Railroad Safety Appliance Standards), 232 (Brake System Safety Standards for Freight and Other Non-Passenger Trains and Equipment; End of Train Devices), 270 (System Safety Program), 271(Risk Reduction Program), 272 (Critical Incident Stress Plans), 171 (Hazardous Materials Regulations; General Information, Regulations, and Definitions), 172 (Hazardous Materials Table, Special Provisions, Hazardous Materials Communications, Emergency Response Information, Training Requirements, and Security Plans), 174 (Carriage by Rail), 178 (Specifications for Packaging), 179 (Specifications for Tank Cars).[6]  Indeed, "there are myriad safety regulations applicable to the transportation of hazardous material." *Trimbur*, 2015 WL 4755205, at *6.  Courts therefore hold that claims concerning the transportation of hazardous material, and the routes guiding that transportation—like Plaintiffs'

---

[6]       Because FRSA preemption applies to all rail-safety regulations promulgated by the Secretary of Transportation, the Sixth Circuit has held that FRSA preemption analysis applies to the HMTA regulations.  *See CSX Transp., Inc. v. Pub. Util. Com'n*, 901 F.2d 497, 502 (6th Cir. 1990); *see also Trimbur*, 2015 WL 4755205, at *5 ("[T]he FRSA preemption analysis applies to the HMTA.").

here—are preempted by the FRSA.  *See, e.g.*, *Trimbur*, 2015 WL 4755205, at *6 (strict-liability claim concerning use and condition of railway tank cars preempted by the FRSA and HMTA); *Sanders v. Norfolk S. Corp.*, 2010 WL 297813, at *4 (D.S.C. Jan. 20, 2010) (strict-liability claim concerning transportation of hazardous materials preempted by FRSA and HMTA); *Self v. Norfolk S. Corp.*, 2007 WL 540373, at *4 (D.S.C. Feb. 15, 2007) (strict-liability claim preempted by FRSA and HMTA).

### 3.  The exception for "additional or more stringent" laws under 49 U.S.C. § 20106(a)(2) is inapplicable

Plaintiffs cannot avoid preemption by means of 49 U.S.C. § 20106(a)(2).  Under that provision, state-law claims can avoid preemption only if (1) they are necessary to eliminate or reduce an essentially local safety hazard, (2) they are not incompatible with a federal regulation, and (3) they do not unreasonably burden interstate commerce.  49 U.S.C. § 20106(a)(2); *see also Nickels*, 560 F.3d at 432.  Plaintiffs have not alleged that their claims meet any of these requirements, let alone all three.  Nor could they.

*First*, the duties Plaintiffs seek to impose upon Norfolk Southern through their generic allegations are not necessary to eliminate or reduce an essentially local safety hazard.  "Local safety hazards must be ones that are 'not capable of being adequately encompassed within uniform national standards' and are 'not statewide in character.'"  *Tipton*, 2016 WL 11501426, at *11.  The risks that the duties purport to minimize here—allegedly, the risk of a train derailing—are not local hazards specific to a particular area.  *Id.* at *12 ("This condition—the possibility of a rail car derailing—is capable of being present at many sites, and thus is not a specific, individual hazard.").  *Second*, as discussed, Plaintiffs' claims are incompatible with the comprehensive regulations promulgated under the FRSA (and the HMTA).  To the extent the generic duties advocated by Plaintiffs concerning inspection, training, and transportation of

hazardous materials were imposed on Norfolk Southern, Norfolk Southern would be required to go beyond the duties imposed by federal regulations.  *See id.* (claims related to negligent inspection preempted by FRSA, including because alleged duties go beyond those required by FRSA).  *Third*, imposing additional, state-specific obligations related to inspection, training, and transportation of hazardous materials on Norfolk Southern irrespective of, and in conflict with, federal regulations would unduly burden interstate commerce.  *Id.* (alleged duties related to wheel bearings and lookouts "have the potential to unreasonably burden interstate commerce").

### C. The HMTA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning The Transportation Of Hazardous Materials (Counts 1-6, 17)

Congress enacted the HMTA to "restructure a national environment in which 'many States and localities had enacted laws and regulations that varied from Federal laws and regulations pertaining to the transportation of hazardous materials, thereby confounding carriers attempting to comply with multiple and conflicting regulatory requirements.'"  *Roth*, 651 F.3d at 377.  To eliminate that variation, Congress established "a uniform, national scheme of regulation regarding the transportation of hazardous materials."  *Id.*  The "linchpin" of that scheme is HMTA's preemption provision, which "displaces an array of state and local law."  *Id.* at 374, 378; *see* 49 U.S.C. § 5125.  That provision preempts state requirements (1) that are "about" any of the following subjects and (2) that are not "substantively the same" as what is required under federal law:

> (A) the designation, description, and classification of hazardous material.
>
> (B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.
>
> (C) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents.

    (D) the written notification, recording, and reporting of the unintentional release
        in transportation of hazardous material and other written hazardous materials
        transportation incident reporting involving State or local emergency
        responders in the initial response to the incident.

    (E) the designing, manufacturing, fabricating, inspecting, marking, maintaining,
        reconditioning, repairing, or testing a package, container, or packaging
        component that is represented, marked, certified, or sold as qualified for use in
        transporting hazardous material in commerce.

49 U.S.C. § 5125(b)(1); *see also, e.g.*, *Roth*, 651 F.3d at 374-379 (plaintiff's tort claims with

respect to design of chemical tank car preempted under HMTA).

    *First*, the HMTA applies to Plaintiffs' negligence, gross negligence, nuisance, and strict-

liability claims as premised on allegations related to the routing and handling of hazardous

materials, the reporting of the unintentional release of such materials, and the inspection and

maintenance of the container used to transport such materials.[7]  Plaintiffs allege, for example,

that Norfolk Southern was negligent by "[a]ccepting and transporting shipments of hazardous

material that had pressure relief devices made of materials that were incompatible with the

lading," "[f]ailing to operate, maintain, inspect and/or repair the railway and railcars in such a

way to ensure their safe and proper operation, particularly when transporting hazardous

materials," "[f]ailing to route railcars carrying hazardous materials in such a way as to avoid

populated areas," "[f]ailing to adequately warn those in danger of exposure to hazardous

chemicals," and failing to respond to the derailment and release of hazardous materials.  Compl.

¶ 232(b), (k), (y), (z), (bb)-(ee); *see also id.* ¶¶ 247-48, 259, 271, 286, 293, 407(m), (p), (r)-(cc).

Those allegations are clearly "about" subjects identified in § 5125(b)(1).  *See* 49 U.S.C.

---

[7]      Plaintiffs allege that Norfolk Southern was carrying, among other things, vinyl chloride and that vinyl
chloride is classified as a hazardous material subject to the HMTA.  *See* Compl. ¶¶ 144-193; *see also* 49 C.F.R.
§ 172.101.

§ 5125(b)(1)(B) ("handling"), (D) ("reporting of the unintentional release"), (E) ("designing, … inspecting, … maintaining" a container).

*Second*, Plaintiffs' claims would impose duties that are not "substantively the same" as requirements under federal law.[8]  A state requirement is "substantively the same" as a federal requirement, and thus immune from preemption, only when it "conforms in every significant respect" to the federal requirement.  *Roth*, 651 F.3d at 377.  Here, HMTA regulations provide requirements concerning transportation of hazardous materials by rail, including specific requirements for Class 2 (Gases) Materials.  *See* 49 C.F.R. §§ 174.200 *et seq*.  They also detail the specifications for tank cars, *id.* § 179, and requirements for providing notice of hazardous material incidents, *id.* §§ 171.15 *et seq*.  They also require rail carriers that transport certain materials to engage in annual route analysis.  *Id.* § 172.820.  Plaintiffs' generic allegations do not allege duties that are the same as the requirements imposed under these HMTA regulations.

Courts regularly find that the HMTA preempts state-law claims like those asserted by Plaintiffs.  *See, e.g.*, *Roth*, 651 F.3d at 374-380 (negligence and strict-liability claims preempted by HMTA); *Parrish v. JCI Jones Chemicals, Inc.*, 2019 WL 1410880, at *2-5 (D. Haw. Mar. 28, 2019) (negligence and strict-liability claims related to transporting hazardous materials preempted by HMTA); *Mawa Inc. v. Univar USA Inc.*, 2016 WL 2910084, at *5-6 (E.D. Pa. May 19, 2016) (negligence claims related to transporting hazardous materials preempted by HMTA); *Trimbur*, 2015 WL 4755205, at *6 (negligence, gross negligence, negligence per se, and strict-liability claims related to inspection and design of cars preempted by HMTA); *Scarbrough v. Coleman Co.*, 2013 WL 3825248, at *3 (D. Colo. July 24, 2013) (failure-to-warn

---

[8]      Under the HMTA, Congress directed the Secretary of Transportation to "prescribe regulations for the safe transportation, including security, of hazardous materials in intrastate, interstate, and foreign commerce."  49 U.S.C. § 5103(b)(1).  Consistent with that directive, the Secretary of Transportation has broadly regulated the transportation of hazardous materials by rail and other modes of transportation.  *See* 49 C.F.R. §§ 171-180.

claims preempted by HMTA); *Sanders*, 2010 WL 297813, at *4 (strict-liability claim concerning transportation of hazardous materials preempted by HMTA and FRSA); *Self*, 2007 WL 540373, at *4 (same).  The same result is warranted here.

## II. PLAINTIFFS FAIL TO SATISFY THEIR PLEADING BURDEN AS TO ALL THEIR CLAIMS AND REQUEST FOR PUNITIVE DAMAGES

For the foregoing reasons, Plaintiffs' negligence, gross negligence, nuisance, and strict liability claims are preempted by federal law.  Independently, all of Plaintiffs' claims and their request for punitive damages fail because Plaintiffs have not satisfied their pleading burden.

### A. Plaintiffs' Negligence And Gross Negligence Claims Fail (Counts 1, 17)

#### 1. Plaintiffs fail to plead breach or resulting injury

A plaintiff claiming negligence must plead facts showing the "existence of a duty, the breach of the duty, and injury resulting proximately therefrom."  *Strother v. Hutchinson*, 423 N.E.2d 467, 469 (Ohio 1981).[9]  Plaintiffs allege that Norfolk Southern was generally negligent (Compl. ¶¶ 229-232), and that such negligence caused unspecified economic losses, heightened health risks, and property damage (*id*. ¶ 240), from smoke that purportedly traveled 30 miles in every direction from the derailment site (*id*. ¶¶ 141, 240).  These allegations are fundamentally lacking.

Plaintiffs fail to allege facts plausibly showing that Norfolk Southern breached any applicable duty of care.  For example, Plaintiffs allege in general terms a range of negligent training practices (Compl. ¶¶ 232(t)-(x)), but fail to allege, with any plausible factual allegations,

---

[9]    For purposes of this motion only, Norfolk Southern assumes, without conceding, that Ohio law applies to Plaintiffs' claims unless the Complaint expressly states that another State's law applies.  *See, e.g.*, *Wilkins v. Navy Fed. Credit Union*, 2023 WL 239976, at *18 n.15 (D.N.J. Jan. 18, 2023) (for purposes of resolving motion to dismiss in putative class action, deferring choice-of-law analysis to later stage); *see also Asp v. Toshiba Am. Consumer Prod., LLC*, 616 F. Supp. 2d 721, 726 (S.D. Ohio 2008) (recognizing that when a party acquiesces to the application of a state's law, a court need not resolve choice-of-law issue on motion to dismiss).

any deficiencies in Norfolk Southern's training, or even how training was at all implicated in the derailment.  *See Farm Bureau Gen. Ins. Co. v. Schneider Nat'l Carriers*, 552 F. Supp. 3d 750, 760-761 (S.D. Ohio 2021) (merely stating that truckers were not trained was insufficient to plead negligent training).  Plaintiffs similarly allege that Norfolk Southern failed "to properly inspect their trains and railcars" (Compl. ¶ 232(a)), but provide no elaboration.  Relying on "'labels and conclusions,'" and "'formulaic recitation of the elements … will not do.'"  *Wamer*, 27 F.4th at 466.

Plaintiffs' causation allegations are similarly deficient.  Their theory relies on an allegation that, "[u]pon information and belief, the smoke and particulate plume from the 'controlled release' eventually traveled a total of 30 miles in each direction from the Derailment Site, contaminating the air, surfaces, soil, and water of upwards of 500,000 Class Members." Compl. ¶ 141.  This does not satisfy Plaintiffs' pleading burden.  Consider *Salerno v. City of Niagara Falls*, 2020 WL 5814406 (W.D.N.Y. Sept. 30, 2020), *aff'd*, 2021 WL 4592138 (2d Cir. 2021), which involved a chemical spill and bare allegations on "'information and belief'" about how the chemicals reached the plaintiffs.  *Id.* at *6.  There, the district court held that, without an allegation about how the chemicals could plausibly reach the plaintiffs' homes, the complaint was too speculative to survive because it left "substantial gaps on key questions of migration, exposure, and causation."  *Id*.  Plaintiffs similarly have left "substantial gaps" here.  They have made no attempt to plausibly allege any connection between the alleged misconduct (such as failing to inspect trains and railcars (Compl. ¶ 232(a))), and the alleged harm (contamination of their properties, including those up to 30 miles away, by means of a plume of smoke, (*id.* ¶ 141)).  Such an attenuated causal chain is missing key allegations to plausibly link Norfolk Southern's purported misconduct with Plaintiffs' alleged harm.  *See Pinares v. United Techs.*

*Corp.*, 2011 WL 240522, at *2 (S.D. Fla. Jan. 19, 2011) (dismissing negligence claim based on contamination where plaintiffs "fail[ed] to allege a causal relationship between any actions by Defendant and Plaintiffs' claimed damages").

Plaintiffs' negligence claims also fail because the Complaint does not adequately plead that Plaintiffs suffered harm.  *See, e.g.*, *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 543 N.E.2d 769, 772 (Ohio 1989) ("an injury proximately resulting" from negligent conduct is required); *U.S. Fire Ins. Co. v. Ohio High Sch. Athletic Ass'n*, 595 N.E.2d 418, 420 (Ohio Ct. App. 1991) ("negligent conduct without injury is not actionable").  Plaintiffs explicitly disavow any "physical manifestation of personal or bodily injury."  Compl. ¶ 196.  The remainder of their injuries include bare assertions of harm, including loss of "goodwill," "annoyance, upset, aggravation, inconvenience," and the like.  *See id.* ¶ 240.  The Complaint merely states, without support, that property and crops were harmed.  *See, e.g.*, *id.* ¶¶ 240, 330.  The Complaint does not specify how or in what ways the property was harmed.  Nor does it explain how, for example, in winter in Northern Ohio, Pennsylvania, and West Virginia, crops were damaged. These bare allegations of "property damage," without factual support of what that damage is, are insufficient.  *See, e.g.*, *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 WL 1725317, at *6 (N.D. Ohio June 13, 2007) (general allegation that faulty product causes property damage insufficient without pleading that plaintiff personally suffered a present injury).

*Salerno* is again instructive.  There, the court granted the defendants' motion to dismiss even where the plaintiffs arguably had pleaded *some* exposure, citing studies that showed some level of contamination on their properties.  *Salerno*, 2020 WL 5814406, at *2.  Here, Plaintiffs have done even less—they simply assert, without elaboration, that a plume traveled 30 miles in every direction (Compl. ¶ 141), somehow necessarily resulting in contamination of air, soil, and

water (*see, e.g.*, *id.* ¶ 42).  That is not enough to plead a claim for negligence.

> **2.      Purported violations of federal regulations do not constitute negligence per se, and plaintiffs fail to plead any regulatory violations**

Plaintiffs' negligence per se claim (also asserted in Count 1) has further deficiencies.

Under Ohio law, purported "violations of federal regulations," like those asserted here, "cannot

serve as a separate claim for negligence per se." *Jackson v. Arka Express, Inc.*, 2022 WL

1136771, at *3 (N.D. Ohio Apr. 18, 2022).  A contrary holding would "'bestow upon

administrative agencies the ability to propose and adopt rules which alter the proof requirements

between litigants'"—a public policy determination that properly belongs with the legislature.

*Id.*; *see also, e.g.*, *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 203 (Ohio 1998) ("violation of

an administrative rule does not constitute negligence per se"); *Sheldon v. Kettering Health

Network*, 40 N.E.3d 661, 674 (Ohio Ct. App. 2015) (violation of HIPAA administrative rules

cannot be the basis for negligence per se).  Moreover, Plaintiffs' allegations only state, "on

information and belief," that Norfolk Southern breached federal regulations—without attempting

to explain which actions breached which regulations, or what the regulations require.  *See*

Compl. ¶ 237.  All Plaintiffs have done is cite a host of regulations that are not tied to any

specific allegation.  That does no more than name the law and is insufficient to plead negligence

per se.

> **3.      Plaintiffs' gross negligence claim fails to plead the requisite *mens rea***

Plaintiffs' gross negligence claim (Count 17) fails for the same reasons as their

negligence claim.  *CBC Eng'rs & Assoc. Ltd. v. Miller Aviation, LLC*, 880 F. Supp. 2d 883, 887-

888 (S. D. Ohio 2012) ("To establish gross negligence, all elements of negligence must exist.").

And it fails for an additional reason:  the Complaint fails to allege facts showing that Norfolk

Southern engaged in "willful and wanton misconduct," *Mohat v. Hovarth*, 2013 WL 5450296, at

*4 (Ohio Ct. App. Sept. 30, 2013), which requires (1) "'an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse'" (willful), and (2) an act "'done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, reputation, or property of others'" (wanton), *Steward v. City of Columbus*, 1998 WL 598433, at *6 (Ohio Ct. App. Sept. 10, 1998). "'Recklessness'" means "'a perverse disregard for a known risk.'" *Id.* The Complaint includes no allegations that approach permitting an inference that Norfolk Southern acted intentionally to cause any alleged harms to Plaintiffs, much less "without justifiable excuse" or "perverse disregard for a known risk."

## B. Plaintiffs' Strict-Liability Claim Fails (Count 2)

Plaintiffs' strict-liability claim should be dismissed for two reasons. *First*, Plaintiffs have failed to plausibly allege that rail transportation of hazardous materials or any other conduct by Norfolk Southern constitutes abnormally dangerous activity subject to strict liability. *Second*, in any event, any such conduct would fall within the common-carrier exception to strict liability.

### 1. Plaintiffs fail to plead conduct constituting an abnormally dangerous activity subject to strict liability

Under a strict-liability theory, an individual who "carries on an abnormally dangerous activity" may be held liable for harm "resulting from the activity," even when they have "exercised the utmost care to prevent the harm." *Restatement (Second) of Torts* § 519; *see also Doherty v. Ohio State Univ.*, 1990 WL 86772, at *3 n.1 (Ohio Ct. App. June 26, 1990). "Under Ohio law, [t]he types of activities that qualify as ultrahazardous/abnormally dangerous is quite limited." *In re Behr Dayton Thermal Prods. Litig.*, 2022 WL 3328407, at *10 (S.D. Ohio Aug. 11, 2022). To determine whether an activity is "abnormally dangerous," courts consider these six factors: (1) the "existence of a high degree of risk of some harm to the person, land, or chattels of others"; (2) the "likelihood that the harm that results from it will be great"; (3) the

- 26 -

"inability to eliminate the risk by" the "exercise of reasonable care"; (4) the "extent to which the activity is not a matter of common usage"; (5) the "inappropriateness of the activity to the place where it is carried on"; and (6) the "extent to which its value to the community is outweighed by its dangerous attributes." *Restatement (Second) of Torts* § 520; *see also Hirsch v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 124211, at *14-15 (N.D. Ohio Oct. 22, 2008) (applying Section 520 to determine whether an activity is "abnormally dangerous" under Ohio law).  Typically, "several" of these factors "will be required for strict liability."  *Restatement (Second) of Torts* § 520 cmt. f.

Plaintiffs have failed to plausibly allege that conduct by Norfolk Southern constitutes abnormally dangerous activity subject to strict liability.  The Complaint offers only the conclusory allegations that Norfolk Southern engaged in such activities (1) "by transporting hazardous substances, including but not limited to vinyl chloride, through a residential community," and (2) "when they dumped the vinyl chloride they were transporting and lit it on fire in a residential community."  Compl. ¶¶ 247-248.  Courts routinely reject similarly conclusory allegations as insufficient.  *See, e.g.*, *Hirsch*, 2008 U.S. Dist. LEXIS 124211, at *15-16 (dismissing strict-liability claim because "Plaintiffs' bare contention that CSXT engaged in an abnormally dangerous activity is merely a conclusory allegation or legal conclusion masquerading as a factual allegation"); *Looman v. Montana*, 2012 WL 5287951, at *4 (D. Mont. Aug. 23, 2012) (dismissing strict-liability claim where plaintiff did "not present any factual information in support of [his] conclusory allegations"), *report and recommendation adopted*, 2012 WL 5287946 (D. Mont. Oct. 24, 2012).  Indeed, a complaint must allege specific facts supporting the relevant strict-liability factors.  *See, e.g.*, *Looman*, 2012 WL 5287951, at *4 (dismissing strict-liability claim where plaintiff "merely recite[d] the elements and factors of a

strict liability theory of recovery"); *Bd. of Cty. Comm'rs of Cty. of La Plata v. Brown Gp. Retail, Inc.*, 598 F. Supp. 2d 1185, 1196 (D. Colo. 2009) ("Although Plaintiff's complaint states that each of the Restatement (Second) of Torts § 520 factors are met, Plaintiff merely recites the factors a court should consider without alleging specific facts in support.").

It is no surprise that Plaintiffs have not alleged that the Section 520 factors are satisfied, let alone allege specific facts in support of those factors. As the district court in *Hirsch* recognized, there is an inherent contradiction in Plaintiffs' negligence and strict-liability claims:

> Plaintiffs' allegations cannot possibly satisfy the strict liability requirement of inability to eliminate risk of harm by exercising reasonable care. Plaintiffs have brought a claim for negligence, necessarily requiring allegations that Defendant is liable because it failed to exercise reasonable care. Plaintiffs cannot allege that Defendant is liable for harm caused by not exercising reasonable care in conducting an activity while also alleging that the risk of harm of that activity cannot be eliminated by exercising reasonable care.

2008 U.S. Dist. LEXIS 124211, at *15.

The Complaint is multiple steps removed from pleading that any conduct by Norfolk Southern constitutes "abnormally dangerous activity" falling within "the very narrow scope of activities for which Ohio imposes strict liability." *In re Behr Dayton*, 2022 WL 3328407, at *11.

>    **2.      Rail transportation of hazardous materials, and conduct incident to such transportation, falls within the common-carrier exception to strict liability**

Plaintiffs' strict-liability claim fails for another reason. Assuming Plaintiffs had plausibly alleged abnormally dangerous activity, Norfolk Southern cannot be liable for harm that allegedly resulted because it falls within the common-carrier exception. There is good reason for that exception: Common carriers are *required* to engage in certain conduct and thus cannot be liable under a theory of strict liability for harm resulting from such required conduct. *See BNSF Ry. Co. v. Eddy*, 459 P.3d 857, 874 (Mont. 2020) ("[A]n actor is not strictly liable for the activities it engages in pursuant to its duty as … a common carrier."); *Restatement (Second) of Torts § 521*

("The rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor … as a common carrier.").  Such common carriers are potentially liable only under a negligence theory.

As Plaintiffs admit, Norfolk Southern is a "common carrier" that has a public duty to accept "hazardous substances for transportation."  Compl. ¶ 62.  Thus, under federal law, Norfolk Southern may not refuse a reasonable request for transportation.  *See* 49 U.S.C. § 11101(a); *Akron, Canton & Youngstown R.R. Co. v. I.C.C.*, 611 F.2d 1162, 1168-1169 (6th Cir. 1979); *BNSF Ry. Co.*, 459 P.3d at 874; *Trimbur*, 2015 WL 4755205, at *6.  Indeed, "railroads have universally been considered by courts as common carriers entitled to the exception."  *BNSF Ry. Co.*, 459 P.3d at 874.  Under the common-carrier exception, then, Norfolk Southern cannot be strictly liable for its transportation of hazardous materials.  *See Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1180 (7th Cir. 1990) ("[C]ommon carriers are not subject to strict liability for the carriage of materials that make the transportation of them abnormally dangerous, because a common carrier cannot refuse service to a shipper of a lawful commodity."); *Town of East Troy v. Soo Line R.R. Co.*, 409 F. Supp. 326, 330 (E.D. Wis. 1976) (granting motion to strike strict-liability claim against railroad based on derailment and resultant chemical release because "a common carrier is not subject to strict liability for the transportation of goods which it is required by law to undertake").

That exception extends to conduct incident to Norfolk Southern's transportation of such materials.  The district court's decision in *Johnson v. CSX Transportation, Inc.*, 2008 WL 4427211 (W.D. Ky. Sept. 25, 2008), is instructive.  There, the court dismissed a strict-liability claim related to a train derailment that resulted in an explosion, chemical fire, and chemical release.  *See id.* at *1-3.  The court concluded that the common-carrier exception applied to the

railroad company's conduct following the train derailment, including conduct directed to limiting the potential harm caused by the derailment.  *See id.*  In so doing, the court rejected the plaintiff's argument that the exception covered only the transportation of hazardous materials but not the disposal of such materials following the derailment.  *Id.*  It reasoned that "Plaintiff's claim for strict liability depends on his exposure to chemicals that would not have been present absent Defendant's transportation of them."  *Id.* at *3.

That reasoning applies with equal force here.  To the extent Plaintiffs' strict-liability claim is premised on conduct other than the transportation of hazardous materials, including allegedly "dump[ing] the vinyl chloride [Norfolk Southern was] transporting and [lighting] it on fire in a residential community" (Compl. ¶ 248), it is premised on alleged conduct that Norfolk Southern would not have undertaken but for its federally mandated transportation of such materials.  It "would be an extraordinary doctrine" to say that Norfolk Southern "is under legal obligation to transport" hazardous materials and "is an insurer against any damage which may result in the course of transportation, even though it has been guilty of no negligence which occasioned the explosion which caused the injury."  *Actiesselskabet Ingrid v. Cent. R.R. Co.*, 216 F. 72, 78 (2d Cir. 1914).

## C.    Plaintiffs' Statutory, Public, And Private Nuisance Claims Fail (Counts 3-6)

Plaintiffs assert four nuisance claims:  one under Pennsylvania statutory law, one under Ohio statutory law, one common-law private nuisance claim, and one common-law public nuisance claim.  Compl. ¶¶ 254-300.  Each fails.  *First*, Plaintiffs do not allege injuries distinct from the general public, as required to allege their statutory nuisance claims and common-law public nuisance claim.  *Second*, Plaintiffs fail to plead the elements of a private nuisance claim.

1.      **Plaintiffs fail to plead a particularized injury distinct from the general public as required for a statutory or public nuisance claim**

Under Ohio and Pennsylvania law, to plead a statutory or common-law public nuisance claim, Plaintiffs must allege an injury distinct from that of the general public.  *See Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812, 827 (N.D. Ohio 2015); *see also Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 52 (Ohio 2007) (under Ohio Law, "[t]o recover damages under a claim of public nuisance, the plaintiff must establish … that the plaintiff has suffered an injury distinct from that suffered by the public at large"); *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 446 (3d Cir. 2000) (under Pennsylvania law, "a plaintiff must have suffered a harm of greater magnitude and of a different kind than that which the general public suffered").  Plaintiffs fail to do so.

Consistent with the recurring theme, Plaintiffs' allegations of injury are threadbare and conclusory.  Plaintiffs generally allege that Norfolk Southern's conduct exposed their properties and bodies to unsafe levels of contaminants and, as a result, Plaintiffs "suffered injuries that are distinct from the injuries suffered by the public at large."  Compl. ¶¶ 260, 264.  In purported support, Plaintiffs generally allege that "smoke and particulate plume" traveled 30 miles in each direction, *id.* ¶ 141, and "hazardous chemicals and combustion products [were] detected in air, water, soil, and sediment samples taken within a 30-mile radius of the Derailment Site," *id.* ¶ 143.  Putting aside the threadbare nature of that allegation as applied to Plaintiffs' claims, nowhere in the Complaint do Plaintiffs provide any plausible factual allegations that these emissions have injured them or their property in a manner distinct from any member of the general public living within a 30-mile radius of the derailment site.  Absent such a particularized injury, Plaintiffs' allegations are insufficient.  *See Elmer*, 127 F. Supp. 3d at 826-827 (dismissing public nuisance claim under Ohio law based on emission of toxic air contaminants because

plaintiffs failed to plead "that they suffered a distinct injury or harm from those of the general public who live near Defendant's operations"); *see also Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 316 (3d Cir. 1985) (dismissing public nuisance claims under Pennsylvania law where "[t]he public right that was interfered with was the right to 'pure water'").

### 2. Plaintiffs fail to plead the elements of private nuisance

Under Ohio law, a common-law private nuisance is actionable only if a plaintiff alleges that (1) the defendant's conduct constitutes a non-trespassory invasion of the plaintiff's interest in the private use and enjoyment of land; (2) the defendant's invasion is either (a) intentional and unreasonable, or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct; and (3) the defendant's invasion caused the plaintiff to suffer a real, material, and substantial injury.  *See Brown v. County Comm'rs of Scioto Cty.*, 622 N.E.2d 1153, 1158-1159 (Ohio Ct. App. 1993); *Banford v. Aldrich Chem. Co.*, 932 N.E.2d 313, 317-318 (Ohio 2010).

Plaintiffs fail to plead facts showing that Norfolk Southern's alleged invasion of their interest in the use and enjoyment of land was either (1) intentional and unreasonable, or (2) unintentional and caused by negligent, reckless, or abnormally dangerous conduct.  In their Complaint, Plaintiffs offer this conclusory allegation:  Norfolk Southern's "negligent, reckless, and/or intentional acts and omissions were unreasonable and constitute an invasion of [Plaintiffs'] property rights."  Compl. ¶ 284.  Similarly, Plaintiffs generally allege that Norfolk Southern "knew or should have known" that the released contaminants "were hazardous and harmful to real property and human beings" and that the company "was substantially certain that improper transportation, handling, and disposal of these materials would cause injury to Plaintiffs and the Class Members and their property."  *Id.* ¶ 279.  As discussed, Plaintiffs' allegations of negligence and recklessness are fundamentally deficient.  Plaintiffs likewise offer

no facts that could support a claim that Norfolk Southern's conduct was intentional.  Ultimately, the Complaint provides only the bare recitation of the elements of a private nuisance claim.

### D.    Plaintiffs' Trespass Claim Fails (Count 7)

Trespass claims based on airborne particles, as Plaintiffs allege here, are indirect trespasses.  *See Baatz v. Columbia Gas Transmission, LLC*, 929 F.3d 767, 772 n.2 (6th Cir. 2019).  Even though, "[t]raditionally, any tangible invasion of property constituted a trespass and entitled a landowner to at least recover nominal damages, … such a rule is not appropriate where the incursion is the result of airborne particulates." *Williams v. Oeder*, 659 N.E.2d 379, 382 (Ohio. Ct. App. 1995).  Instead, "substantial" damages are required to limit those who can bring a claim to individuals significantly harmed by the emission of airborne particles.  *Id.* at 382-383.

To meet that requirement, Plaintiffs must allege "substantial physical damage" to the property or "substantial interference with their reasonable and foreseeable use" of the property. *Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 523 (6th Cir. 2013); *see also Chance v. BP Chems., Inc.*, 670 N.E.2d 985, 993 (Ohio 1996).  The Complaint pleads neither.

*First*, as to "substantial physical damage," the detection of chemicals on a property does not qualify because it does not rise to the level of "actual damage." *Baker*, 533 F. App'x at 522-23.  Plaintiffs' allegations concerning damage to their property are limited to the bare allegation of "contaminat[ion]" of their property.  *See, e.g.*, Compl. ¶¶ 141, 303.  Not only is that allegation insufficient to allege "substantial physical damage" to property, *Baker*, 533 F. App'x at 522-23 ("[P]laintiffs have to show something more than the 'mere detection' of soil vapors on their properties to establish the physical damage prong of an indirect trespass claim."), but it is also implausible that all of the properties of "upwards of 500,000 Class Members" (Compl. ¶ 141), including those 30 miles away from the derailment, were somehow similarly contaminated by particulate from the smoke plume.  Such vague and undifferentiated allegations concerning

contamination of differently situated properties are insufficient to plausibly allege a claim of physical damage to property.

Equally deficient are Plaintiffs' allegations that the values of their properties have decreased.  *See* Compl. ¶ 309.  Under Ohio law, stigma damages—damages resulting from a diminution in value to one's property because of a public perception that the property may be contaminated—are not recoverable without physical damage to that property.  *See Chance*, 670 N.E.2d at 993 (affirming trial court holding that barred "evidence that environmental stigma … had a negative effect on appellants' property values due to the public perception that there may have been injectate under appellants' properties"); *Ramirez v. Akzo Nobel Coatings, Inc.*, 791 N.E.2d 1031, 1034 (Ohio Ct. App. 2003) ("[P]ure environmental stigma, defined as when the value of real property decreases due solely to public perception or fear of contamination from a neighboring property, does not constitute compensable damages in Ohio.").

*Second*, as to the "substantial interference" prong, the only allegations in the Complaint that could even conceivably underlie an allegation of substantial interference are limited to those related to the evacuation order, which directed individuals living within one mile of the derailment site to evacuate.  *See, e.g.*, Compl. ¶¶ 133-34.  But Ohio courts have held that temporary evacuations do not constitute substantial interference.  *See Lueke v. Union Oil Co.*, 2000 WL 1545077, at *7-8 (Ohio Ct. App. Oct. 20, 2000) (affirming judgment against plaintiff on trespass claim for failure to show substantial damages or interference where plaintiff was not in home for approximately one week); *see also Timbuk Farms, Inc. v. Hortica Ins. & Emps. Benefits*, 2021 WL 5446416, at *10 (Ohio Ct. App. Nov. 15, 2021) (finding no substantial interference where plaintiff used an alternative source of water "[f]or a time").

- 34 -

### E. Plaintiffs' Trespass-To-Chattels Claim Fails (Count 8)

Under Ohio law, "[a] trespass to chattel occurs when one intentionally dispossesses another of their personal property." *Conley v. Caudill*, 2003 WL 21278885, at *2 (Ohio Ct. App. May 30, 2003). To be liable, an individual must "intentionally" commit such a trespass. *Restatement (Second) of Torts* § 217; *see MCI WorldCom Network Servs., Inc. v. W.M. Brode Co.*, 411 F. Supp. 2d 804, 810 (N.D. Ohio 2006) ("Since MCI has produced no evidence that Brode intended the physical contact with the cables, no trespass claim may lie.").

Plaintiffs allege, without elaboration, that Norfolk Southern "impair[ed]" and "caused … harm" to Plaintiffs' chattels and "deprived Plaintiffs … of the possession or use of their chattel for a substantial time." Compl. ¶¶ 315-316. They offer no plausible allegations, however, that Norfolk Southern engaged in any such conduct intentionally. Indeed, while the Complaint generally alleges that Norfolk Southern "intentionally" engaged in the controlled release (*id.* ¶ 137), it does not attempt to allege that Norfolk Southern "intentionally" impaired or harmed Plaintiffs' chattels or deprived them of possession of chattels for a substantial period of time. In fact, the Complaint alleges that the '"controlled release' was anything but controlled" (*id.* ¶ 138), and that the spread of the resulting "smoke and particulate plume" was "caused by a temperature and weather inversion over the Derailment Site" (*id.* ¶¶ 139-40). Such allegations, alleging a lack of control over the disbursement of the plume, are inconsistent with any purported intentional interference by Norfolk Southern of Plaintiffs' chattels.

### F. Plaintiffs' Statutory Agricultural Claims Fail (Counts 9-12)

Plaintiffs' claims premised on injury to plants, crops, and animals fail because Plaintiffs have merely recited the elements of those claims. *See* Compl. ¶¶ 325-360. Plaintiffs have not alleged facts showing, for example, that Norfolk Southern destroyed any plants or timber, much less that it did so recklessly. *See* Ohio Rev. Code § 901.51 (prohibiting reckless destruction of

trees and crops); W.Va. Code § 61-3-48a (prohibiting "damag[ing] or carry[ing] away" of trees and crops without written permission from the owner).  Nor have they alleged that Norfolk Southern killed or injured domestic animals, let alone that it did so "maliciously, or willfully." Ohio Rev. Code § 959.02; *State v. O'Brien*, 2017 WL 3475524, at *4 (Ohio Ct. App. Aug. 10, 2017).  Again, Plaintiffs allege only that hazardous chemicals released from the derailment disbursed within a 30-mile radius.  Compl. ¶ 143.  That is far short of the plausible factual allegations necessary.

### G.    Plaintiffs' Medical-Monitoring Claims Fail (Counts 13-15)

Plaintiffs assert three counts of medical monitoring, under Ohio law, Pennsylvania law, and West Virginia law.  *See* Compl. ¶¶ 361-390.  But as Plaintiffs all but concede (Compl. at 81 n.13), medical monitoring is not a standalone claim under Ohio law.  Moreover, Plaintiffs have failed to plausibly allege claims for medical monitoring under any State's law because they have failed to allege underlying conduct by Norfolk Southern, and the threadbare allegations in support of their medical-monitoring claims do not satisfy their pleading burden.

### 1.    Medical monitoring is not a cause of action under Ohio law

Under Ohio law, "medical monitoring is not a cause of action."  *Elmer*, 127 F. Supp. 3d at 825.  It is only a potential remedy *after* a party proves liability for an underlying claim.  *See Mann v. CSX Transp., Inc.*, 2009 WL 3766056, at *6 (N.D. Ohio Nov. 10, 2009) ("Medical monitoring is a purely equitable form of relief which should only be granted with prudence."), *aff'd sub nom., Hirsch v. CSX Transp., Inc.*, 656 F.3d 359 (6th Cir. 2011); *Day v. NLO*, 851 F. Supp. 869, 879-880 (S.D. Ohio 1994) ("'Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort.  It is simply a compensable item of damage when liability is established under traditional tort theories of recovery.'").  Plaintiffs hardly dispute the point.  Compl. at 81 n.13 ("Plaintiffs acknowledge that under Ohio law,

medical monitoring might not be recognized as a stand-[alone] cause of action.").  Because it is not a cause of action under Ohio law, Plaintiffs' medical-monitoring claim under Ohio law should be dismissed.  *See Elmer*, 127 F. Supp. 3d at 825 (dismissing medical-monitoring claim because it is "not an independent cause of action" under Ohio law).

### 2.     Plaintiffs have failed to plead the necessary underlying conduct

Medical-monitoring claims, whether they are standalone claims or forms of relief, require proof of conduct causing the need for medical monitoring.  *See, e.g.*, *Elmer*, 127 F. Supp. 3d at 825 ("medical monitoring may be a 'compensable item of damage when liability is established under traditional tort theories of recovery'"); *Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 696 A.2d 137, 145-46 (Pa. 1997) (plaintiff must prove that their "exposure … to a proven hazardous substance [was] caused by the defendant's negligence" to prevail on a claim for medical monitoring); *Acord v. Colane Co.*, 719 S.E.2d 761, 770 (W.Va. 2011) ("Having found that Ms. Acord failed to present sufficient evidence to prove her tort theories of liability asserted against Colane, she cannot satisfy the third element necessary to sustain a claim for medical monitoring.").  For the reasons explained above, Plaintiffs' negligence, gross negligence, nuisance, and strict-liability claims are preempted by federal law, and, in any event, Plaintiffs have not plausibly alleged any negligent or tortious conduct committed by Norfolk Southern.  Plaintiffs' medical-monitoring claims should fall with those underlying claims.  *See Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1172 (E.D. Mo. 2015) (granting motion to dismiss where claims were "all either preempted or, in the case of their counts for medical monitoring, derivative of preempted claims"); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 455 F. Supp. 2d 709, 720 n.13 (N.D. Ohio 2006) (dismissing claim for medical monitoring where underlying claims were preempted).

### 3.   Plaintiffs have otherwise failed to plead the elements of medical monitoring

Plaintiffs' medical-monitoring claims fail for the additional reason that they have not plausibly alleged the other required elements.  Under Ohio law, Plaintiffs must allege that (1) Norfolk Southern is liable for some negligent or tortious conduct and (2) as a result of that conduct, they have an increased risk of disease that would warrant a reasonable physician to order monitoring.  *See Elmer*, 127 F. Supp. 3d at 825; *Hirsch*, 656 F.3d at 363 ("[N]ot every increased risk of disease warrants increased medical scrutiny. … [F]or the Plaintiffs to prevail, there must be evidence that a reasonable physician would order medical monitoring for them.").

Under Pennsylvania law, Plaintiffs must allege that they experienced (1) exposure greater than normal background levels (2) to a proven hazardous substance (3) caused by Norfolk Southern's negligence; (4) as a proximate result of the exposure, they have a significantly increased risk of contracting a serious latent disease; (5) monitoring procedures exist that make the early detection of the disease possible; (6) the prescribed monitoring regime is different from that which is normally recommended in the absence of exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.  *See Redland Soccer Club, Inc.*, 696 A.2d at 145-146.  The requirements under West Virginia law are similar.  *See State ex rel. City of Martinsburg v. Sanders*, 632 S.E.2d 914, 918 (W.Va. 2006).

Plaintiffs' conclusory allegations related to medical monitoring doom their claim under any State's law.  As to Ohio law, Plaintiffs have not plausibly alleged that a reasonable physician would order medical monitoring based on their alleged exposure.  *See Mann*, 2009 WL 3766056, at *4 ("Even if Plaintiffs could demonstrate a causal relationship between dioxins and cancer, Plaintiffs have failed to establish that they were exposed to dioxins in an amount warranting a reasonable physician to order medical monitoring.").  Nor would it be a reasonable inference to

make, given Plaintiffs' bare allegations of exposure to hazardous chemicals, which are premised upon an allegation, made on information and belief, that the smoke plume traveled 30 miles in every direction.  *See* Compl. ¶ 141.  And in any event Plaintiffs' mere presence in the 30-mile radius of the derailment site does not by itself mean they are entitled to medical monitoring.  *See Mann*, 2009 WL 3766056, at \*4 ("Mere residence in the impact zone is insufficient evidence of contamination and increased risk because it ignores individual variables, most notably, at what level the named Plaintiffs were actually exposed.").  Without plausible allegations of exposure, Plaintiffs likewise cannot allege claims for medical monitoring under Pennsylvania law or West Virginia law.  *See Redland Soccer Club, Inc.*, 696 A.2d at 145-146 (requiring "exposure greater than normal background levels"); *Sanders*, 632 S.E.2d at 918 (requiring "significant exposure").

### H.      Plaintiffs' Spoliation Claim Fails (Count 16)

To plead spoliation, Plaintiffs must allege, among other elements, that Norfolk Southern willfully destroyed evidence to disrupt the Plaintiffs' case.  *See Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).  Willfully means "done voluntarily and intentionally and with the specific intent to do something the law forbids."  *Drawl v. Cornicelli*, 706 N.E.2d 849, 852 (Ohio 1997).  Plaintiffs have not satisfied that burden.  They generally allege that Norfolk Southern failed to stop automatic deletion protocols of the derailed train's cab surveillance video and, as a result, certain video from the night of the incident was lost.  Compl. ¶ 396.  Yet Plaintiffs plead no plausible factual allegations that Norfolk Southern *willfully* deleted video to disrupt Plaintiffs' case.  Their failure to do so dooms this claim.  *See Howard Johnson Co.*, 615 N.E.2d at 1038.

### I.       Plaintiffs' Request For Punitive Damages Fails

Plaintiffs' punitive damages request must be dismissed or, in the alternative, stricken because they have failed to plead that Norfolk Southern acted with actual malice.  *See Windsor-*

*Laurelwood Ctr. Behavioral Med. v. Waller Landsen Dortch & Davis*, 2013 WL 12303992, at *6 (N.D. Ohio July 24, 2013), *report and recommendation adopted by* 2015 WL 1859005 (N.D. Ohio Apr. 22, 2015) (actual malice must be pleaded); *see also Flex Homes, Inc. v. Ritz-Craft Corp.*, 721 F. Supp. 2d 663, 676 (N.D. Ohio 2010) (same).  Ohio recognizes two categories of actual malice:  "first, behavior characterized by hatred, ill will, or a spirit of revenge and, second, extremely reckless behavior revealing a conscious disregard for a great and obvious harm." *Preston v. Murty*, 512 N.E.2d 1174, 1175 (Ohio 1987).  Conscious disregard requires the party possess knowledge of the near certainty that substantial harm will be caused by the alleged tortious behavior.  *See Alleman v. YRC*, 787 F. Supp. 2d 679, 684 (N.D. Ohio 2011).

Plaintiffs have not alleged any conduct that could be construed as showing hatred, ill will, or a spirit of revenge.  Nor have they alleged conduct showing that Norfolk Southern knew of the harm that the derailment could cause.  "In fact, the Complaint does not contain any allegations regarding" Norfolk Southern's "mental state"—let alone any that shows conscious disregard for harm caused by the derailment.  *Flex Homes, Inc.*, 721 F. Supp. 2d at 675 n.10.  Plaintiffs' request for punitive damages therefore fails.

## CONCLUSION

The Court should dismiss Plaintiffs' Master Consolidated Class Action Complaint with prejudice and strike Plaintiffs' request for punitive damages.

Dated: June 2, 2023

WILMER CUTLER PICKERING
   HALE AND DORR LLP

/s/ Alan Schoenfeld
_____
ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

DAVINA PUJARI*
CHRIS RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA  94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC  20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

MICHELLE LISZT SANDALS*
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
michelle.sandals@wilmerhale.com

*Pro hac vice

Respectfully submitted.

DICKIE, MCCAMEY &
   CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS, Ohio Bar No. 96529
AARON PONZO*
PAUL ROMAN*
Two PPG Place, Suite 400
Pittsburgh, PA  15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

*Pro hac vice

*Counsel for Defendants*
*Norfolk Southern Corporation and Norfolk Southern Railway Company*

## <u>CERTIFICATE OF LOCAL RULE 7.1 COMPLIANCE</u>

I certify that this Memorandum adheres to the page limitations set forth in Local Rule

7.1(f) for mass-tort cases because it does not exceed 40 pages in length.  *See* Discovery Plan 1

n.*, Dkt. 62 (May 23, 2023).


*/s/ Alan Schoenfeld*
ALAN SCHOENFELD

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

*/s/ Alan Schoenfeld*
ALAN SCHOENFELD