IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: EAST PALESTINE TRAIN DERAILMENT | ) ) ) ) ) ) ) | CASE NO. 4:23-cv-00242-BYP<br><br>JUDGE BENITA Y. PEARSON |

**PROPOSED ORDER FOR DISCOVERY OF ELECTRONICALLY
STORED INFORMATION ("E-DISCOVERY")**

**I.    INTRODUCTION**

The procedures and protocols outlined in this Order (the "Protocol") govern the production of discoverable ESI and hard-copy documents (collectively, "Discoverable Information") by Defendants in the above-captioned action (the "Action"). This Protocol supersedes prior pretrial orders issued in this Action to the extent they are inconsistent with this Protocol's provisions.

**II.    IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI**

Sources of Discoverable Information.  Plaintiffs and Defendants (collectively, the "Parties") agree to meet and confer regarding compilation of a reasonable list of custodians likely to have unique, relevant, and responsive ESI, as well as identification of any other potentially relevant data sources, including custodial, non-custodial, and third-party information.  The Parties reserve the right to meet and confer to discuss supplementing the initial list of custodians.

**III.    PRESERVATION AND COLLECTION**

A.    Not Reasonably Accessible ESI.  The Parties agree that the circumstances of this litigation do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible.  For purposes of this paragraph, the Parties

agree that the following sources of ESI are not reasonably accessible:

1. Data remaining from systems no longer in use as of the date of this Protocol that is unintelligible to and inaccessible by any commercially available systems.

2. ESI stored in volatile and non-volatile memory (including but not limited to Random Access Memory ("RAM"), Read-only Memory ("ROM"), and cache memory) or in temporary or cache files (including but not limited to internet history, web browser cache, and cookie files), wherever located.

3. ESI stored as server, operating system, or network logs.

4. Temporary internet files, history, cache, cookies, and the like.

5. Encrypted ESI/password-protected files, where the key or password cannot be ascertained without extraordinary efforts.

6. ESI affected by ransomware or malware or that otherwise has been corrupted or is otherwise unable to be processed without extraordinary efforts.

7. ESI stored on photocopiers, printers, scanners, and fax machines.

8. Other file types as agreed to by the Parties.

This Protocol does not prevent any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

B. <u>M365 Content</u>.  The Parties agree to meet and confer to discuss the most reasonable means to produce content stored within the M365 environment.

C. <u>Hyperlinked Content</u>.  To the extent it is not readily publicly available, where feasible, hyperlinked content shall be produced as part of a parent-child relationship with any document containing such a hyperlink.

      D.      <u>Hard-Copy Documents</u>.  Hard-copy documents are to be scanned and produced electronically as images in the same order in which they are maintained in the ordinary course of business.  The Parties agree to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same document as a single document and to treat documents that clearly appear to be separate documents as separate documents.  For hard-copy documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable; the Parties agree to meet and confer if the Producing Party believes it would not be reasonably practicable to scan such labels and tabs.  Original document orientation (i.e., portrait v. landscape) should be maintained to the extent practicable.

## IV.      PROCESSING AND FILTERING

      A.      <u>De-NISTing System Files</u>.  ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.[1]

      B.      <u>Time Zones</u>.  To the extent reasonably practicable, ESI should be processed with a consistent time zone within a Producing Party's productions, and the time zone used shall be disclosed to the Requesting Party.  Absent an agreement between a Requesting Party and a Producing Party to the contrary, the default time zone for processing shall be Eastern Standard Time with a daylight savings offset.

      C.      <u>Other Files and File Types Excluded</u>.  Defendants may filter out the following files or file types:

          1.      ESI affected by ransomware or malware or that otherwise has been corrupted or is unable to be processed without extraordinary efforts.

---

[1] The current NIST file list is published by the National Software Reference Library (NSRL) and can be found here: https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl.

        2.        Temporary internet files, history, cache, cookies, and the like.

        3.        ESI stored as server, operating system, or network logs.

        4.        Files that are zero bytes in size (i.e., do not contain content).

        5.        Other files or file types as agreed to by the Parties.

D.    <u>Embedded Documents</u>.  Embedded documents from ESI (e.g., a spreadsheet embedded within a word processing document) will, to the extent possible, be extracted and treated as child documents and related back to their top-level parent documents (e.g., standalone file, email message, etc.).

E.    <u>Embedded Objects</u>.  Embedded objects within documents or ESI (including but not limited to logos, icons, emoticons, and footers) may be culled, provided they are produced within the document itself.

F.    <u>Deduplication</u>.  The Parties agree that production of documents and ESI globally deduplicated in accordance with the provisions of this ESI Protocol shall constitute production of documents as maintained in the ordinary course of business.  A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions, as follows:

        1.        No Producing Party shall be required to conduct manual review to eliminate duplicates, including but not limited to hard-copy documents that are exact duplicates of electronic versions.

        2.        <u>Electronic Documents that Are Not Email ("EFiles")</u>.  Duplicate non-email ESI (such as Microsoft Word documents) may be identified based upon MD5 or SHA-1 hash values for binary file content.  All ESI bearing an identical value are a duplicate group.  The Producing Party may produce only one document image or native[2] file for duplicate

---

[2] For purposes of this Protocol, "Native Format" or "Native File" means the format in which ESI was used and stored by the Producing Party in its ordinary course of business.

ESI documents within the duplicate group, however, the Producing Party will identify the additional custodian(s) (i.e., "AllCustodians" and "AllFilePaths" metadata fields set forth in Appendix B) for duplicate documents not produced.  The Parties agree to meet and confer to the extent such information cannot be automatically populated with industry standard ESI processing tools.

3. Email.  Duplicate email files may be identified based upon MD5 or SHA-1 hash values based upon the email family, which includes the parent email and all attachments.  Email families bearing an identical value are considered a duplicate group.  The Producing Party may produce only one document image or native file for duplicate ESI documents within the duplicate group; however, in the event that email is collected from a custodial source, the Producing Party will identify each custodian(s) (i.e., "AllCustodians" and "AllFilePaths" metadata fields set forth in Appendix B) from whom the duplicate email was collected.  The Parties agree to meet and confer to the extent such information cannot be automatically populated with industry standard ESI processing tools.

G. Password-Protected or Encrypted Files.  With respect to any password-protected or encrypted documents or ESI that are encountered during processing, the Producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate.

H. The Parties agree to meet and confer in advance of any processing or filtering of ESI, apart from the items listed above, that removes or excludes documents from human review.

V. **IDENTIFYING THE REVIEW POPULATION**

A. Search Methodologies: The Parties recognize and agree that each Party may use one or more search methodologies to cull, review, and produce responsive, not-privileged Discoverable Information.  The Parties therefore agree to cooperate in good faith regarding the disclosure and

5

formulation of appropriate search methodology. The Parties agree to meet and confer regarding any methodologies that remove Discoverable Information from human review and withhold that Discoverable Information from production (e.g., search terms, technology-assisted review, or other culling mechanisms) and the document sources to which they will be applied, prior to the application of any such methodologies to any ESI source that may contain potentially relevant or responsive ESI. After meeting and conferring, the Parties may enter into additional agreements or protocols relating to the search methodologies they will use to satisfy their discovery obligations. If the Parties are unable to agree on search methodologies, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution.

      B.    <u>Email Domains and Senders</u>. The Parties agree to meet and confer about emails from domains and senders typically associated with junk email (e.g., emails related to fantasy football, retailer advertising, or newsletters or alerts from non-industry sources) to the extent a Producing Party wants to exclude such email domains or sender addresses as part of its initial filter of potentially responsive documents. Prior to the application of such filters, the Producing Party shall propose domains and senders to exclude under this paragraph, and the Parties shall work cooperatively on agreed methods for excluding the same.

      C.    <u>Email Threading</u>. Due to the importance of the metadata in prior or lesser-included emails contained in whole or in part in a most-inclusive email, and in order to facilitate reasonable evidentiary use of emails, production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No document shall be withheld from production on the basis that it is included in a produced more-inclusive email. The Producing Party may, at its discretion, elect to review only the most inclusive email thread in determining the responsiveness of the prior or lesser-included emails or for any other internal purpose.

VI. **PRODUCTION FORMAT**

A. <u>Rolling Production</u>. The Parties agree to produce documents and data on a rolling basis when practicable. The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of information at issue, the relative accessibility of information, efficiencies in the process of search and review, and the additional processing time required for certain types of ESI.

B. <u>General Production Format</u>. Defendants shall produce Discoverable Information in the format specified in this Section VI and in Appendix A (Additional Production Specifications). Generally, Discoverable Information will be produced in native format, accompanied by document-level text files containing searchable text and metadata load files as described in Appendix A, unless otherwise specified.

C. <u>ESI Only Readable on Proprietary Software</u>. To the extent that Defendants identify responsive documents that are only readable on proprietary software, the Parties shall meet and confer to discuss methods for extracting and producing, or inspection of, such data. If the Parties are unable to agree on a method for such production, the Parties shall submit any dispute to the Court.

D. <u>Structured Databases</u>. To the extent the Plaintiffs request data or information (other than email) that is stored in a structured database or aggregated database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the Defendants will make reasonable and prompt efforts to determine the methods by which such data can be produced, and the Parties agree to meet and confer to address the production and production format of the responsive data, including (1) the nature and scope of the ESI contained in the database, (2) the business purpose for the database, (3) the organization of ESI

7

contained in the database, including any schema, tables, columns and fields, (4) the existence and feasibility of standard and custom reporting and exporting features.  After such conferral, the Parties shall agree on a production format for the structured data at issue.  To the extent the Parties' agreed production format for a given set of structured data is not feasible or causes the Defendants undue burden, the Parties agree to meet and confer to discuss a different form of production.  Nothing in this Protocol will be interpreted to require the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection during either the conferral process or, if necessary, when seeking the Court's intervention.

      E.    <u>Numbering/Endorsement</u>.  The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

      1.    All produced documents will be Bates-numbered as described in this paragraph and as further detailed in Appendix A.  For documents produced in image format, each page will have a unique, sequential Bates number; for other documents (e.g., native files), a single Bates number will be assigned to the document.  A produced document's first or only assigned Bates number will serve as its unique Control ID with which the produced file will be named.

      2.    Where information or materials have been redacted, the Producing Party shall reflect such redaction with a "Redacted" label "burned" onto the document's image in the same area(s) as the redacted information appears.  Failure to comply with this procedure shall not waive any protections. For the avoidance of doubt, this provision is not intended to expand any Party's right to redact material within responsive documents.

      F.    <u>Form of Production/Color</u>.  All files will be produced in native format by default, except for (1) email and (2) non-spreadsheet files that are redacted for privilege, which may be produced as images.  Where a document produced in image format contains color, and that color is

crucial for understanding of the document, such images will be produced in color, without the need for a specific request by the receiving Party, by default. Other images may be produced in black and white.

      G.    <u>Redaction of Confidential Personal Information</u>. Except where relevant to an issue in this Action (including but not limited to claims, defenses, and damages) and not otherwise protected, Defendants may redact any document or metadata field containing Confidential Personal Information. For purposes of this Protocol, Confidential Personal Information does not include an individual's name, but does include an individual's personal contact information (e.g., domains of personal email addresses, personal phone numbers, and residential address), social security number, personal financial information (e.g., bank account numbers, and credit card numbers), and medical or health information (e.g., "Protected Health Information" as defined under the Health Insurance Portability and Accountability Act and its implementing regulations (45 C.F.R. Parts 160-164)). For the avoidance of doubt, an individual's personnel or employment records, including information relating to an individual's compensation by Norfolk Southern, are not Confidential Personal Information in their entirety, but may contain Confidential Personal Information as defined herein, such as Protected Health Information. Documents that are redacted for this purpose must be so marked on the redaction text.

      H.    <u>Entire Document Families</u>. A Document Family[3] will be produced together and will be consecutively Bates-numbered, with parent documents followed immediately by all child document(s). Family members that are withheld on the basis of privilege shall be produced as slipsheets indicating the basis of withholding. The Document Family must be identified using the

---

[3] "Document Family" means a group of related documents. A "parent document" is an electronic file that includes, attaches, references, or embeds, at least one other electronic file (a "child document") by means of any kind of attachment or hyperlink. A "Document Family" includes messages (e.g., email or chats) sent in any platform used or controlled by Defendants, including the M365 environment, that point to a file that is stored elsewhere within any platform used or controlled by Defendants, including the M365 environment (e.g., OneDrive or SharePoint).

"BegAttach" and "EndAttach" fields designating the beginning and ending of each Document Family, in accordance with Appendix B.

    I.    <u>Production Delivery</u>.  The Producing Party shall produce document images, native format files, text files, and load files by secure FTP or other secure electronic transfer system or document repository; or by other mutually agreeable method.  For productions delivered via electronic transfer, the Producing Party shall provide a letter containing the information that would otherwise be on the label. Each production shall be accompanied by an index identifying, at a minimum: (1) the date of the production, (2) the custodians with data in the production and/or the structured data sources that are found within the production, (3) the Bates range of documents in the production. To the extent that a production includes any confidential information protected under any applicable protective order filed with the Court, the label or letter for that production shall indicate as much.  All methods of delivery must be encrypted or, if not possible, at least password-protected; the Producing Party will provide a decryption key or password under separate cover at the time of production.

## VII. <u>PRIVILEGE</u>

The Parties agree to meet and confer to address issues related to privilege, including an appropriate non-waiver order under Fed. R. Evid. 502(d), and the timing, content, and format of privilege logs.

## VIII. <u>GENERAL PROVISIONS</u>

    A.    <u>Discoverability and Admissibility</u>.  This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  Nothing in this Protocol shall be construed to affect the admissibility of any document or data.  All objections, including but not limited to the non-discoverability or inadmissibility of any document or data, are

preserved and may be asserted at any time.

  B. <u>Producing Party's Right to Review Own Documents</u>.  This Protocol does not limit a Producing Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

  C. <u>Proportionality</u>.  The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and paper documents in this Action.

  D. <u>Non-Party Documents</u>. A Party that issues a subpoena ("Issuing Party") upon any non-party shall include with the subpoena a copy of this Order and any protective orders agreed to or entered in this Action.  The Issuing Party shall inform the recipient of the subpoena that the Parties in this Action have requested that non-parties produce documents in accordance with the specifications set forth in this Protocol to the extent reasonably feasible.  The Issuing Party shall promptly produce to all other Parties a copy of any documents and ESI (including any metadata) obtained from a non-party in accordance with the Federal Rules of Civil Procedure and subject to all the procedures and protections set forth in any protective orders agreed to or entered in this Action. The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Yahoo, or any social media companies, such as Facebook or Twitter.

  E. <u>Modification</u>.  Any practice or procedure set forth in this Protocol may be modified by written agreement of the Parties.

  F. <u>Dispute Resolution</u>.  The Parties will act in good faith to try and resolve any disputes regarding the issues set forth in this Protocol prior to filing a motion with the Court or otherwise seeking relief.  Regarding all disputes, if the Parties are unable to resolve the dispute

11

after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

AGREED AS TO FORM

Dated: June 26, 2023

Respectfully submitted,

 /s/ *Seth A. Katz*
Seth A. Katz (pro hac vice)
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
303-708-0527 (fax)
skatz@burgsimpson.com

M. Elizabeth Graham (pro hac vice)
GRANT & EISENHOFER, P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
303-622-7100 (fax)
egraham@gelaw.com

Jayne Conroy (pro hac vice)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
212-213-5949 (fax)
jconroy@simmonsfirm.com

Michael Morgan (pro hac vice)
MORGAN & MORGAN
20 North Orange Ave., Suite 1600
Orlando, FL 32801
407-420-1414
407-245-3389 (fax)
mmorgan@forthepeople.com

*Plaintiffs Interim Class Counsel and Co-Lead Counsel*

WILMER CUTLER PICKERING HALE AND DORR LLP

ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

DAVINA PUJARI*
CHRISTOPHER A. RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC 20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

MICHELLE LISZT SANDALS*
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
michelle.sandals@wilmerhale.com

* *Pro hac vice*

REDGRAVE LLP

/S/ *MONICA MCCARROLL*
JONATHAN M. REDGRAVE*
MONICA MCCARROLL*
4800 Westfields Boulevard, Suite 250
Chantilly, VA 20151
Tel.: (703) 592-1155
Fax: (703) 230-9859
jredgrave@redgravellp.com
mmccarroll@redgravellp.com

DICKIE, MCCAMEY & CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS
AARON M. PONZO*
PAUL A. ROMAN, JR.*
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

*Counsel for Defendants
Norfolk Southern Corporation and Norfolk Southern Railway Company*

IT IS SO ORDERED.

 

_____     _____
Date                                         The Honorable Benita Y. Pearson
                                                 United States District Judge

## APPENDIX A – ADDITIONAL PRODUCTION SPECIFICATIONS

1. Native Production. Except with regard to Email files, structured data, and redacted documents that are not spreadsheets, all ESI shall be produced in native format. This provision shall not prevent the Parties from later agreement in writing to a production format other than native for certain files or filetypes.

2. <u>Image Formatting</u>. Emails will be produced as static TIFF images.

   a. Where a document produced in image format contains color, and that color is necessary for understanding of the document, such images will be produced in color, without the need for a specific request by the receiving Party, by default. Other images may be produced in black and white.

   b. When imaged, all documents shall include and show field codes.

   c. TIFF images shall be processed and produced in a manner that maintains and displays (i.e., shall force on) all hidden columns or rows, hidden text or worksheets, speaker or presenter notes, and tracked changes and comments (maintained as last saved). If a file ordinarily to be produced as an image under this ESI Protocol cannot be produced in such a manner, the native version shall be produced absent other agreement of the Parties. This provision does not require the production of privileged material and does not alter a Producing Party's ability to withhold or redact privileged information from the types of content listed in this paragraph.

   d. If a document otherwise subject to production in image format under this ESI Protocol cannot be converted to an image without error due to password protection, corruption or some other issue that renders the document unreviewable, the document shall be produced in native format.

3. <u>Metadata</u>. No Party has an obligation to create or manually code metadata that does not exist as part of the original metadata of the document. The Parties agree to meet and confer to the extent such information cannot be automatically populated with industry standard ESI processing tools. The Parties shall provide non-privileged information in the metadata fields attached as Appendix B associated with each document produced in a Concordance-format delimited file with a .DAT file extension. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document. When a document is withheld for attorney-client privilege or work product, all metadata for the withheld document is excluded from the .DAT file.

4. <u>Text Files</u>. Each document produced in image format under this ESI Protocol shall be accompanied by a text file containing the text for that document. Each text file shall be named using the Bates Number of the first page of the corresponding production item and the production load file shall contain a path link to the produced text file in the "TEXTLINK" metadata field described in Appendix B.

    a. <u>Unredacted documents</u>. The text of each unredacted ESI item produced in image format shall be extracted directly from the native file to the extent technically possible. OCR will be used to provide text for the following record types that typically do not have text available to extract: hard-copy documents, .JPG, .JPEG, .TIF, .TIFF, and .PDF.

    b. <u>Redacted documents</u>. To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, and the text of the Producing Party's redaction label. The Producing Party may use OCR of redacted images to provide text for redacted documents.

5. <u>Bates Numbering</u>.

    a. A Producing Party should use a consistent format for the Bates numbers it uses across its productions.

  b. Bates numbers will be created so as to identify the Producing Party, and each Producing Party shall use a consistent prefix and number padding across their respective productions.

  c. Numerical suffixing is permitted where re-production of documents occurs.

  d. For a document produced in image format, the Bates number will be electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source document.

  e. For a document produced in native format such that "burning" a Bates number onto each page is not possible, the document's Bates number shall be affixed to the document by an alternative means, such as to the file name of the produced native document.  The database record for that file shall include a single-page image branded with this Bates number, any confidentiality designation, and the phrase "Document Produced Natively."  The production load file shall contain a path link to the produced native file as specified in the "NATIVELINK" metadata field described in Appendix B.

  f. Should a Bates number or other designation obscure any information originally appearing on the document, the Producing Party will reproduce such document upon reasonable request.

6. <u>Natives Requiring Redaction</u>. Redacted spreadsheet files, including Microsoft Excel files, will be redacted natively. If a document that otherwise would be produced in native format requires redaction, and such document is not a spreadsheet, it may be produced in image format or as a redacted native, along with the corresponding redacted text.  The Producing Party shall, however, make reasonable efforts to ensure that any such documents that are produced only as images are

formatted so as to be readable. Documents produced in native format with redactions must also be maintained in unredacted form.

## APPENDIX B – METADATA PRODUCTION FIELDS

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| BEGINDOC | First Bates Number associated with document (including prefix) | All |
| ENDDOC | Last Bates Number associated with document (including prefix) | All |
| BEGATTACH | First Bates Number (i.e., BeginDoc) of parent document in the family (including prefix) | All |
| ENDATTACH | Last Bates Number (i.e., EndDoc) of last child in the family (including prefix) | All |
| PAGECOUNT | Number of Bates Numbers associated with document (i.e., BeginDoc to EndDoc) (corresponds to number of pages for documents produced in image format) | All |
| ATTACHMENTCOUNT | Number of attachments; populated for parent email records only | Email |
| CUSTODIAN | Source of document (e.g., individual custodian name, database or archive name, shared area, etc.) | All |
| ALLCUSTODIANS | When global deduplication has been employed, all custodians who are sources of an identical document | All |
| NATIVE TYPE | Type of native file loaded into the system | Email, EFiles |
| FILEEXTENSION | File extension of document | Email, EFiles |
| FILENAME | File name of document | Email, EFiles |
| FILESIZE | Size of the file in bytes | Email, EFiles |
| FILEPATH | File path to native file as it existed in original environment | Email, EFiles |

18

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| ALLFILEPATHS | When global deduplication has been employed, file path to native for sources of an identical document | Email, EFiles |
| DATETIMESENT | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was sent | Email |
| DATETIMERECEIVED | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was received | Email |
| DATETIMECREATED | Date (mm/dd/yyyy) and time (hh:mm:ss format) that non-email data was created | EFiles and Attachments |
| DATELASTMODIFIED | Date (mm/dd/yyyy) and time that (hh:mm:ss format) that non-email data was last modified | EFiles and Attachments |
| AUTHOR | Author field where available | EFiles |
| TO | To field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| FROM | From field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CC | CC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| BCC | BCC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| SUBJECT | Subject line extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CONVERSATION INDEX | Email thread created by the email system | Email |
| DATESTARTED | Start date and time (mm/dd/yyyy hh:mm:ss) for calendar appointments | Email |
| TITLE | Title field where available | EFiles |
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | All |
| REDACTED | Does the document contain redactions (Y/N)? | All |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| REDACTION REASON | Redaction reason designation (will be blank for documents without redactions) | All |
| HASHVALUE | Document-level MD5 or SHA1 hash value | All |
| TIME ZONE | Time zone in which the native file was processed | Email, EFiles |
| NATIVELINK | Path and filename to produced native file format (*see* Paragraph 4(e) in Appendix A) | Email, EFiles |
| TEXTLINK | Link to text file (*see* Paragraph 3 in Appendix A) | All |
| PRODUCTIONVOLUME | Unique identifier for the production in which the document is contained | All |