# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION, YOUNGSTOWN

| | | |
|---|---|---|
| IN RE: EAST PALESTINE TRAIN DERAILMENT | : | CASE NO.: 4:23-cv-00242 |
| | : | |
| | : | JUDGE BENITA Y. PEARSON |
| Steven McKay, et al., | : | |
| | : | |
| Individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| Norfolk Southern Corporation and Norfolk Southern Railway Company, | : | |
| | : | |
| Defendants | : | |
| _____ | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS MASTER CONSOLIDATED CLASS ACTION COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND TO STRIKE UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................. 1

SUMMARY OF THE ARGUMENT ....................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 3

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ........................................................................................................................... 6

    I.     PLAINTIFFS' CLAIMS ARE NOT PREEMPTED ............................................. 6

           A.     Claims Based On Defendants' Post-Derailment Conduct Are Not Preempted. .................................................................................................. 7

           B.     The Court Should Reject Defendants' Preemption Argument Under The FRSA. ............................................................................................ 9

                  1.     The FRSA does not preempt claims based on conduct that is not covered by any regulation. ...................................................... 9

                  2.     The FRSA does not preempt claims based on violations of regulations or internal rules adopted pursuant to regulation ....... 12

           C.     The HMTA Does Not Preempt Plaintiffs' Claims ................................... 16

           D.     Plaintiffs' Claims Are Likewise Not Preempted By The ICCTA ............ 19

    II.    PLAINTIFFS' CAUSES OF ACTION ARE SUFFICIENTLY PLEADED AND, THEREFORE, DEFENDANTS' MOTION TO DISMISS MUST BE DENIED .................................................................................................... 21

           A.     Plaintiffs Have Properly Pleaded Claims For Negligence And Gross Negligence ................................................................................... 21

                  1.     Plaintiffs have adequately pleaded breach of duty and injury. ............................................................................................ 21

                  2.     Plaintiffs' have not pleaded stand-alone negligence per se claims. ........................................................................................... 25

                  3.     Plaintiffs properly alleged a claim for gross negligence. ............. 26

            B.     Plaintiffs Have Properly Stated A Claim For Strict Liability ................. 27

                  1.     Plaintiffs have pleaded sufficient facts to establish that Defendants' conduct constituted abnormally dangerous activity ............................................................................................ 27

                  2.     Plaintiffs may pursue alternative claims for strict liability and negligence. ......................................................................... 28

# TABLE OF CONTENTS
## (continued)

Page

        3.     The common carrier exception does not apply. ........................... 29

C.     Plaintiffs Have Properly Pleaded Statutory, Public, And Private Nuisance Claims ................................................................................ 30

        1.     Plaintiffs adequately allege they suffered particularized injuries .................................................................................... 30

        2.     Plaintiffs properly pleaded a claim for private nuisance. ............ 33

D.     Plaintiffs Have Properly Pleaded Claims For Trespass .......................... 34

E.     Plaintiffs Have Properly Pleaded Claims For Trespass-To-Chattels ....... 35

F.     Plaintiffs Have Properly Pleaded Their Statutory Agricultural Claims ...................................................................................................... 36

G.     Plaintiffs Have Properly Pleaded Claims For Medical Monitoring ......... 36

        1.     Medical monitoring is an element of damages under Ohio law. .................................................................................... 36

        2.     Plaintiffs' allegations support their medical monitoring claims. ................................................................................. 37

H.     Plaintiffs Have Properly Stated a Claim For Spoliation ......................... 39

I.     Plaintiffs Have Properly Pleaded Their Request For Punitive Damages .................................................................................................. 39

CONCLUSION ................................................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abrams v. Nucor Steel Marion, Inc.*,
    694 Fed. Appx. 974 (6th Cir. 2017)..................................................................... 34

*Acord v. Colane Co.*,
    719 S.E.2d 761 (W. Va. 2011)............................................................................. 38

*Adrian & Blissfield R. Co. v. Vill. of Blissfield*,
    550 F.3d 533 (6th Cir. 2008) ............................................................................ 8, 20

*Akron, Canton & Youngstown Railroad Co. v. I.C.C.*,
    611 F.2d 1162 (6th Cir. 1979) ............................................................................ 29

*Anderson v. City of Massillon*,
    983 N.E.2d 266 (Ohio 2012) .......................................................................... 26, 27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................... 22, 25

*Baatz v. Columbia Gas Transmission, LLC*,
    2016 U.S. Dist. LEXIS 200221 (N.D. Ohio Dec. 22, 2016) ................................ 40

*Baker v. John Morrell & Co.*,
    266 F. Supp. 2d 909 (N.D. Iowa 2003)................................................................ 26

*Baptiste v. Bethlehem Landfill Co.*,
    965 F.3d 214 (3d Cir. 2020) .................................................................... 30, 31, 32

*Beck v. Stony Hollow Landfill, Inc.*,
    2017 WL 1551216 (S.D. Ohio May 1, 2017) ...................................................... 33

*Bender v. Comm'r of Soc. Sec.*,
    2012 WL 3913094 (N.D. Ohio Aug. 17, 2012) ................................................... 30

*BNSF Ry. Co. v. Eddy*,
    459 P.3d 857 (Mont. 2020)............................................................................ 29, 30

*Bower v. Westinghouse Elec. Corp.*,
    522 S.E.2d 424 (W. Va. 1999)............................................................................ 37

*Bradford v. Union Pac. R.R. Co.*,
    491 F.Supp.2d 831 (W.D. Ark. 2007) ................................................................. 11

*Bradley v. Am. Smelting & Refining Co.*,
    709 P.2d 782 (Wash. 1985) ................................................................................. 36

*Brown & Williamson Tobacco Corp. v. United States*,
    201 F.2d 819 (6th Cir. 1953) ............................................................................... 6

*Brown v. Cty. Comm'rs of Scioto Cty.*,
    622 N.E.2d 1153 (Ohio Ct. App. 1993).................................................... 30, 31, 33

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Brown v. Whirlpool Corp.*,
   996 F. Supp. 2d 623 (N.D. Ohio 2014) ................................................................ 23

*Byrne v. CSX Transp., Inc.*,
   541 F. App'x 672 (6th Cir. 2013) .......................................................................... 7

*Cahoo v. SAS Analytics, Inc.*,
   912 F.3d 887 (6th Cir. 2019) ......................................................................... 22, 25

*CSX Transportation., Inc. v. Public Utilities Comm. of Ohio*,
   901 F.2d 497 (6th Cir. 1990), *cert. denied* 498 U.S. 1066 (1991) ................... 7, 16

*Darby v. Childvine, Inc.*,
   964 F.3d 440 (6th Cir. 2020) ................................................................................ 38

*Dartron Corp. v. Uniroyal Chem. Co., Inc.*,
   893 F. Supp. 730 (N.D. Ohio 1995) ..................................................................... 27

*Day v. NLO*,
   851 F. Supp. 869 (S.D. Ohio 1994) ...................................................................... 34

*Diehl v. CSX Transportation, Inc.*,
   349 F.Supp.3d 487 (W.D. Pa. 2018) ..................................................................... 11

*Directv, Inc. v. Treesh*,
   487 F.3d 471 (6th Cir. 2007) .................................................................................. 6

*Doherty v. Ohio State Univ.*,
   1990 WL 86772 (Ohio Ct. App. June 26, 1990) .................................................... 28

*East Troy v. Soo Line Railroad Co.*,
   409 F. Supp. 326 (E.D. Wis. 1976) ....................................................................... 30

*Elmer v. S.H. Bell Co.*,
   127 F. Supp.3d 812 (N.D. Ohio 2015) ............................................. 32, 35, 36, 37

*Elmer v. S.H. Bell Co.*,
   No. 4:13-cv-02735 (N.D. Ohio Mar. 30, 2015) .................................................... 32

*Est. of Barney v. PNC Bank, Nat. Ass'n*,
   714 F.3d 920 (6th Cir. 2013) ................................................................................ 14

*Evans–Marshall v. Bd. of Educ.*,
   428 F.3d 223 (6th Cir. 2005) .................................................................................. 6

*Friberg v. Kansas City S. Ry. Co.*,
   267 F.3d 439 (5th Cir. 2001) ................................................................................ 21

Gallivan v. United States,
   943 F.3d 291 (6th Cir. 2019) ......................................................................... 21, 23

*Green v. Begley Co.*,
   2008 WL 4449065 (S.D. Ohio Sept. 29, 2008) .............................................. 33, 35

*Green v. Mason*,
   504 F. Supp. 3d 813 (S.D. Ohio 2020) ................................................................. 38

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Gruenbaum v. Werner Enters., Inc.*,
  2011 WL 563912 (S.D. Ohio Feb. 2, 2011) ............................................................ 25

*Hanford Nuclear Reservation Litig.*,
  534 F.3d 986 (9th Cir. 2008) .............................................................................. 29

*Harasyn v. Normandy Metals*,
  551 N.E. 2d 962 (Ohio 1990) ............................................................................. 35

HDC, LLC v. City of Ann Arbor,
  675 F.3d 608 (6th Cir. 2012) .............................................................................. 24

*In Burlington N. & Santa Fe Ry. Co. v. Doyle*,
  186 F.3d 790 (7th Cir. 1999) .............................................................................. 12

*In re Derailment Cases*,
  416 F.3d 787 (8th Cir. 2005) .............................................................................. 11

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*,
  2015 WL 4092866 (S.D. Ohio July 6, 2015) ......................................................... 27

*Island Park, L.L.C. v. CSX Transportation, Inc.*,
  559 F.3d 96 (2nd Cir. 2009) ............................................................................... 19

Johnson v. City of Shelby,
  574 U.S. 10 (2014) ........................................................................................... 26

*Johnson v. CSX Transportation., Inc.*,
  2008 WL 4427211 (W.D. Ky. Sept. 25, 2008) ....................................................... 30

*Kramer v. Angel's Path, LLC*,
  882 N.E.2d 46 (Ohio Ct. App. 2007) ................................................................... 31

*Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*,
  91 F. Supp. 3d 940 (S.D. Ohio 2015) ................................................................... 34

*Lundeen v. Canadian Pac. Ry. Co.*,
  447 F.3d 606 (8th Cir. 2006) .............................................................................. 13

*Lundeen v. Canadian Pac. Ry. Co.*,
  507 F. Supp. 2d 1006 (D. Minn. Feb. 2, 2007) ..................................................... 13

*Lundeen v. Canadian Pac. Ry. Co.*,
  532 F.3d 682 (8th Cir. 2008) .............................................................................. 13

*Mangan v. Landmark 4 LLC*,
  2013 WL 950560 (N.D. Ohio Mar. 11, 2013) ........................................................ 28

*Maroz v. Arcelormittal Monessen*,
  2015 WL 6070172 (W.D. Pa. Oct. 15, 2015) ........................................................ 34

*Mawa Inc. v. Univar USA Inc.*,
  2016 WL 2910084 (E.D. Pa. May 19, 2016) ......................................................... 18

*Maynard v. CSX Transp., Inc.*,
  360 F. Supp. 2d 836 (E.D. Ky. 2004) .................................................................. 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*MD Mall Assocs., LLC v. CSX Transp., Inc.*,
   715 F.3d 479 (3d Cir. 2013) ........................................................... 9, 11

*Medtronic v. Lohr*,
   518 U.S. 470 (1996) ........................................................................ 13

*Mohat v. Horvath*,
   2013 WL 5450296 (Ohio Ct. App. Sept. 30, 2013) ........................ 26

*Molnar v. City of Green*,
   140 N.E. 3d 1209 (Ohio Ct. App. 2019) ........................................ 40

*Murphy-Fauth v. BNSF Ry. Co.*,
   2018 WL 3601235 (D. Mont. July 27, 2018) ................................. 30

*Norfolk Southern Ry. Co. v. Box*,
   556 F.3d 571 (7th Cir. 2009) ......................................................... 10

*Parrish v. JCI Jones Chems., Inc.*,
   2019 WL 1410880 (D. Haw. Mar. 28, 2019) ................................. 19

*Perrine v. E.I. du Pont*,
   694 S.E. 2d 815 (W. Va. 2010) ...................................................... 34

*Preston v. Murty*,
   512 N.E.2d 1174 (Ohio 1987) ........................................................ 39

*Redland Soccer Club v. Dep't of the Army*,
   696 A.2d 137 (Pa. 1997) ................................................................ 37

*Ricco v. Potter*,
   377 F.3d 599 (6th Cir. 2004) ........................................................... 6

*Rieger v. Giant Eagle, Inc.*,
   138 N.E.3d 1121 (Ohio 2019) ........................................................ 21

*Roth v. Norfalco, LLC*,
   651 F.3d 367 (3rd Cir. 2011) ......................................................... 18

*Rushing v. Kansas City S. Ry. Co.*,
   194 F.Supp.2d 493 (S.D. Miss. 2001) ........................................... 21

*Sanders v. Norfolk S. Ry. Co.*,
   2010 WL 297813 (D. S.C. Jan. 20, 2010) ..................................... 19

*Scarbrough v. Coleman Co.*,
   2013 WL 3825248 (D. Colo. Jul. 24, 2013) .................................. 19

*Schwartz v. Accuratus Corp.*,
   7 F. Supp. 3d 490 (E.D. Pa. 2014), *vacated in part on other grounds*,
   655 F. App'x 111 (3d Cir. 2016) .................................................... 28

*Scottsdale Ins. Co. v. Flowers*,
   513 F.3d 546 (6th Cir. 2008) ......................................................... 30

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Self v. Norfolk S. Ry. Co.*,
    2007 WL 540373 (D. S.C. Feb. 15, 2007) ............................................................... 19

Smith v. Bank of Am., N.A.,
    615 F. App'x 830 (5th Cir. 2015) ......................................................................... 26

*Smith v. CSX Transportation*, Inc.,
    2014 WL 3732622 (N.D. Ohio July 25, 2014) ................................................. 14, 20

*Stevenson v. Union Pac. R.R. Co.,*
    354 F.3d 739 (8th Cir. 2004) ................................................................................ 39

*Thompson Elec. v. Bank One, Akron, N.A.,*
    525 N.E.2d 761 (Ohio 1988) ................................................................................ 26

*Thompson v. McNeill*,
    559 N.E.2d 705 (Ohio 1990) ................................................................................ 27

*Thornburgh v. Ford Motor Co.,*
    2021 WL 1230271 (W.D. Mo. Mar. 31, 2021) ...................................................... 32

*Tipton v. CSX Transportation, Inc.*,
    2016 WL 11501426 (E.D. Tenn. July 7, 2016) .............................................. passim

*Trimbur v. Norfolk S. Ry. Co.,*
    2015 WL 4755205 (S.D. Ohio Aug. 10, 2015) ........................................ 12, 19, 29

*Tyrrell v. Norfolk S. Ry. Co.,*
    248 F.3d 517 (6th Cir. 2001) ...................................................... 7, 13, 19, 20

*United States v. 2007 BMW 335i Convertible*,
    648 F. Supp. 2d 944 (N.D. Ohio 2009) ................................................................ 23

*Villella v. Waikem Motors, Inc.*,
    543 N.E.2d 464 (Ohio 1989) ................................................................................ 39

*Weirton Area Water Bd. v. 3M Co.,*
    2020 WL 7776542 (N.D. W. Va. Dec. 30, 2020) ................................................. 35

*Wiley v. City of Columbus*,
    36 F.4th 661 (6th Cir. 2022) ................................................................................ 26

*Wilson v. Brush Wellman, Inc.,*
    817 N.E.2d 59 (Ohio 2004) .................................................................................. 36

**Statutes**

49 U.S.C. § 20106 .............................................................................................................. 8

49 U.S.C. § 5107(c) .......................................................................................................... 18

49 U.S.C. § 5125(b)(1)(E) ................................................................................................. 8

**Treatises**

Restatement (Second) of Torts §§ 217, 519, 520, 521, 821 (1965) ........................... passim

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Other Authorities**

FRA Safety Advisory 2023-01, 88 Fed. Reg. 13494 (March 3, 2023)........................................ 10

**Regulations**

49 C.F.R. § 172 ................................................................................................................. 18

49 C.F.R. § 173 ................................................................................................................. 18

49 C.F.R. § 174 ........................................................................................................... 16, 18

49 C.F.R. § 179 ...................................................................................................... 16, 17, 18

49 C.F.R. § 180 ................................................................................................................. 18

49 C.F.R. § 215 ........................................................................................................... 14, 15

49 C.F.R. § 217 ................................................................................................................... 9

49 C.F.R. § 229 ................................................................................................................. 15

49 C.F.R. § 232 ................................................................................................................. 15

49 C.F.R. § 240 ................................................................................................................. 15

49 C.F.R. § 242 ................................................................................................................. 15

49 C.F.R. § 271 ................................................................................................................. 15

**STATEMENT OF THE ISSUES TO BE DECIDED**

1.      Whether Defendants fail to meet their burden to establish that Plaintiffs' claims for negligence, gross negligence, nuisance, and strict liability are preempted by the ICCTA, FRSA, and HMTA and, therefore, Defendants' motion to dismiss must be denied.

2.      Whether, when construing the complaint in the light most favorable to Plaintiffs and accepting all allegations as true, Plaintiffs have sufficiently pleaded all their claims and request for punitive damages and, therefore, Defendants' motions to dismiss and to strike must be denied.

**SUMMARY OF THE ARGUMENT**

The Norfolk Southern Defendants'[1] conduct has caused thousands of people and their property to be exposed to ultrahazardous chemicals, including those used as weapons in warfare, after a train operated by Defendants derailed in East Palestine, Ohio, on February 3, 2023. The chair of the National Transportation Board testified this derailment was "100% preventable." Master Consolidated Class Action Complaint ¶ 142 ("Complaint") (Dkt. 31). Following the derailment, Defendants intentionally detonated five vinyl chloride tankers, dumped the vinyl chloride in a trench, and lit it on fire in a residential neighborhood, causing a massive toxic cloud that traveled many miles out from the site. Nevertheless, Defendants have moved to dismiss the Complaint arguing that Plaintiffs have failed to state a single cause of action against them. Defendants' arguments are without merit.

First, Plaintiffs' claims are not preempted by federal law. Congress has made clear that the principal statute Defendants rely on in their preemption argument, the Federal Rail Safety Act (FRSA), does not preempt state law claims when the government has not issued regulations "covering" the subject matter of those claims or when the claims are based on violations of

---

[1] "Defendants" and/or Norfolk Southern" as used herein refer to Norfolk Southern Corporation and Norfolk Southern Railway Company.

regulations. Plaintiffs' claims fall within the scope of these exemptions.

Second, Defendants' arguments regarding the sufficiency of Plaintiffs' pleading of state law causes of action are without merit. Plaintiffs not only pleaded extensive facts that support their negligence and gross negligence claims, but also detail *how* Defendants' failures caused the derailment—far exceeding Plaintiffs' burden at this stage of the litigation. Plaintiffs sufficiently allege they suffered harm because of Defendants' breaches by, among other things, detailing the numerous harms Plaintiffs have suffered, including lost income, property damage, contamination at residences and workplaces, and increased risk of serious and potentially fatal illnesses including cancer and organ damage necessitating ongoing medical monitoring.

Plaintiffs have sufficiently alleged strict liability claims based on Defendants engaging in abnormally dangerous activities, including carelessly transporting over a million pounds of hazardous chemicals and intentionally setting fire to them in a residential neighborhood.

Plaintiffs have also adequately stated claims for statutory, private, and public nuisance under applicable law, detailing Defendants' negligent, careless, and intentional conduct that caused particularized harm to Plaintiffs. Similarly, based largely on the same conduct, Plaintiffs have adequately pleaded claims for trespass, trespass to chattels, and damage to agriculture under applicable common law and statutes.

Plaintiffs have sufficiently pleaded claims for ongoing medical monitoring arising from their exposure to the highly toxic chemicals, including phosgene, released into the homes and workplaces as a result of the derailment and subsequent intentionally set explosions and fire. Consistent with a prevailing current view of Ohio law, Plaintiffs alleged medical monitoring as a remedy under Ohio law, as well as pleading it as a stand-alone cause of action under Pennsylvania and West Virginia law.

Finally, Plaintiffs have adequately alleged a claim for punitive damages, detailing

Defendants' recklessness and conscious disregard for the rights and safety of others pre- and post-derailment.

## **FACTUAL BACKGROUND**

This derailment happened because the Norfolk Southern Defendants prioritized profits over safety. Over the last four years, Defendants increased their profits by reducing the amount they spent to repair, service, and maintain locomotives and freight cars, perform train inspections, and pay engine crews and train crews. Compl. ¶¶ 77-82. They used outdated equipment, including an older, less efficient type of braking system. Compl. ¶ 102. From 2019 through 2022, Norfolk Southern had the highest number of derailments among all carriers across Pennsylvania, Ohio, and West Virginia. Compl. ¶¶ 91-93. In 2022, Defendants were warned by federal officials that they: had defective rail components; faced an increased risk of sudden failure with catastrophic potential; and exposed their crews to increased hazards and injuries from defective equipment left in service. Compl. ¶ 103. Moreover, Defendants were found to have committed several violations, including undercounting and inadequately observing rules failures, and failing to verify the performance of operational tests. *Id.*

Defendants' flagrant disregard for safety and the resulting consequences coincides with their adoption of "Precision Scheduled Railroading (PSR)" in 2019. Compl. ¶ 96. Defendants implemented PSR to increase profits by drastically reducing safety measures. Compl. ¶¶ 97-107. PSR eliminated necessary inspections, maintenance, repair, and safety devices with the intention of increasing operating time. Compl. ¶¶ 98, 101. It eliminated jobs for inspectors, signalmen, maintenance workers, and repair workers. Compl. ¶ 98. These eliminated positions were designed to, among other things, ensure safe operation of trains between locations and to inspect wayside "hotbox" detectors that indicate a train malfunction. Compl. ¶¶ 104, 105. As of February 3, 2023, there were no signalman employed in the area around East Palestine. Compl. ¶ 106.

This profits-over-safety strategy led to this 100% preventable disaster in East Palestine. On February 3, 2023, Defendants' Train 32N, known as "Train 32 Nasty" to rail workers because of its known safety risks, set off on a downhill route to Pennsylvania with a lengthy 149 cars attached. Compl. ¶¶ 101-111. Train 32 N was loaded with approximately 1,600,000 pounds of abnormally dangerous and ultrahazardous chemicals, including vinyl chloride. Compl. ¶ 124. Defendants' hotbox detectors, heat-measuring devices placed along the tracks, recorded high temperatures from a wheel bearing on Train 32N over thirty miles outside of East Palestine. Compl. ¶ 119. About ten miles later, another hotbox detector recorded a significantly higher temperature, and the wheel bearing was already visibly on fire. Compl. ¶ 120. Despite the visible fire and overheated wheel bearing, Train 32N continued barreling toward East Palestine for another twenty miles; finally, after crossing another hotbox detector, the crew received an alarm message to stop and inspect. Compl. ¶¶ 121-122. The engineer applied the dynamic brakes, and the emergency brakes were engaged. But the train equipment malfunctioned, consistent with an overheated wheel bearing, and the train derailed. Compl. ¶ 122.

The derailment of the already-ablaze Train 32N caused a massive inferno that would burn for days. Compl. ¶ 125. By February 4, 2023, approximately 3,500 fish had already been killed by toxic runoff to nearby water streams. Compl. ¶ 131. A few days after the derailment, Defendants became increasingly concerned because the pressure relief devices on one of the cars containing vinyl chloride stopped working, raising fears that the car could explode. Compl. ¶¶ 132-135. Instead of releasing the pressure in that one car, Defendants, with full knowledge of the extremely dangerous nature of vinyl chloride, detonated explosives on all five derailed cars containing vinyl chloride and set the released vinyl chloride on fire. Compl. ¶¶ 136-137. This eruption created byproducts, including hydrogen chloride and phosgene gas. Compl. ¶ 139. (Phosgene was used as a chemical warfare agent during World War I and is banned by the 1925

Geneva Protocol for use in war. Compl. ¶ 186.) A huge, thick plume of toxic smoke shot up from the explosion and spread out over East Palestine and the surrounding area. Compl. ¶¶ 139, 140.

As a result of the derailment and explosion, the people, residents, businesses, pets, wildlife, property, crops, food, water, and air in a thirty-mile radius were exposed to significant and harmful levels of toxins, including vinyl chloride, dioxins, ethylene glycol monobutyl ether, isobutylene, benzene, butyl acrylate, ethylhexyl acrylate, diethylene glycol, hydrogen sulfide, hydrogen cyanide, phosgene, hydrogen chloride. Compl. ¶¶ 143-193. The effect of exposure to these chemicals in humans is disastrous. It can lead to serious and potentially fatal illnesses, such as organ failure, nervous system depression, and cancer. Compl. ¶¶ 143-193.

Plaintiffs' Complaint alleges negligence, gross negligence/willful and wanton conduct, strict liability, statutory nuisance, private nuisance, trespass, trespass to chattels, medical monitoring, spoliation, and violations of several state laws protecting agriculture, the environment, and animals. Compl. ¶¶ 227-408. The Complaint details Defendants' failures leading up to the derailment, including for example allegations regarding appropriate alarm thresholds for wayside detectors, failure to keep a proper lookout while the train is in operation, and violations of federal regulations related to inspections, maintenance, and training. *Id.* The Complaint also details Defendants' actionable conduct after the derailment, such as detonating explosives on derailed hazardous material rail cars and setting fire to the released chemicals. *Id.* Plaintiffs' allegations go beyond mere notice pleading; they include details about condemning reports from workers regarding Train 32N and Defendants' history of safety violations,  video evidence of Train 32N on fire twenty miles from East Palestine, objective data from wayside detectors along the route of Train 32N, distinct explanations of the toxic chemicals released or produced from the derailment, and test results demonstrating the catastrophic impact from the derailment and explosion. Compl. ¶¶ 109-122, 143-193.

Nevertheless, Defendants contend Plaintiffs have failed to allege a single actionable claim and ask the Court to dismiss the Complaint in its entirety. Defendants' motion should be denied for the reasons detailed below.

## LEGAL STANDARD

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir. 2004)). When reviewing a motion to dismiss, the Court construes "the complaint in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff." *Id. (citing Evans–Marshall v. Bd. of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005)). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. *Id.* Defendants also move to strike Plaintiffs' request for punitive damages. A motion to strike should only be granted when "the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

## ARGUMENT

## I.  PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

Defendants incorrectly contend that Plaintiffs' claims are preempted by federal law. Although the Court will have to consider the potentially preemptive effect of three different statutes,[2] the basis for denying Defendants' motion is straightforward. As to the post-derailment conduct, Defendants do not meet their burden of establishing preemption. Defendants fail to address any post-derailment allegations, elide statutory provisions that allegedly cover the post-derailment conduct, and fail to identify any cases preempting allegations of post-derailment

---

[2] The Federal Rail Safety Act (FRSA), the Hazardous Materials Transportation Act (HMTA), and the Interstate Commerce Commission Termination Act (ICCTA).

conduct under any relevant statute. As to the pre-derailment conduct, Defendants' arguments rest on an assortment of errors, including a misapplication of the preemption standards, a tendency to rely on cases that were decided at summary judgment rather than a motion to dismiss, and a failure to credit Plaintiffs' factual allegations as true, as required on a motion to dismiss. The motion should be denied.

When a plaintiff's claim involves matters of railroad safety, courts generally should analyze preemption under the FRSA framework. *CSX Transp., Inc. v. Pub. Utilities Comm. of Ohio*, 901 F.2d 497, 501 (6th Cir. 1990), *cert. denied* 498 U.S. 1066 (1991). Defendants' reliance on the HMTA and the ICCTA is largely misplaced. As discussed below, Congress has made its intent clear with respect to FRSA preemption: the FRSA does not preempt state law claims when the government has not issued regulations "covering" the subject matter of those claims or when the claims are based on violations of regulations. Plaintiffs' claims fall within the scope of these exemptions.

A.    **Claims Based On Defendants' Post-Derailment Conduct Are Not Preempted.**

Defendants argue that the FRSA, ICCTA, and HMTA preempt Plaintiffs' allegation in this case. "Federal preemption is an affirmative defense that requires the defendant . . . to prove . . . [that] "federal preemption applies." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 674 (6th Cir. 2013). There is a presumption "against the supplanting of historic state police powers by the federal government unless preemption is the clear and manifest purpose of Congress." *Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001).

Defendants fail to meet this burden with respect to any of the Complaint's allegations of conduct occurring *after* the derailment. These allegations include Defendants' decision to detonate explosives on all five derailed cars containing vinyl chloride and to set the released vinyl chloride on fire, causing a massive explosion that sent toxic chemicals over East Palestine and the surrounding area. Compl. ¶¶ 139-140; *see also id.* ¶¶ 232 (z-ee, gg-ll) (alleging violations

of duties following the derailment, including , inter alia, Defendants failure to properly dispose of or otherwise eliminate the hazardous material from the derailment site, failure to contain the spread of hazardous materials, and failure to timely evacuate an appropriate geographical area.).

Defendants argue generically that *all* Plaintiffs' allegations are preempted by a combination of the FRSA, ICCTA, or HMTA, but their motion does not specifically address any post-derailment conduct or attempt to explain how any of these allegations could be preempted. This is unsurprising, as these statutes generally address matters of railroad transportation. The FRSA, for example, governs matters "related to railroad safety," 49 U.S.C. § 20106, the ICCTA preempts state laws "that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation," *Adrian & Blissfield R. Co. v. Vill. of Blissfield*, 550 F.3d 533, 539-40 (6th Cir. 2008), while HMTA preemption is limited in relevant part to laws relating to the "designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing" of a package or container used in transporting hazardous materials such as by rail, 49 U.S.C. § 5125(b)(1)(E). None of these statutes reach the post-derailment conduct at issue here so Defendants simply ignore them.

Defendants not only fail to cite any case law preempting post-derailment conduct, but one of their lead cases, *Tipton v. CSX Transportation, Inc*., 2016 WL 11501426 (E.D. Tenn. July 7, 2016), expressly rejected preemption of post-derailment claims. The *Tipton* court held that claims concerning conduct occurring "after derailment" such as the duty to "control, mitigate, and remediate [a] chemical release" are not preempted. 2016 WL 11501426 at *12. The same result follows here.

**B.**     **The Court Should Reject Defendants' Preemption Argument Under The FRSA.**

    **1.**     **The FRSA does not preempt claims based on conduct that is not covered by any regulation.**

Although Congress enacted the FRSA to "promote safety in *every area* of railroad operations" and the Secretary of Transportation is authorized to "prescribe regulations … for *every area* of railroad safety," "the preemptive effect of the [FRSA] reaches only state laws *covered by*" those regulations. *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 489–90 (3d Cir. 2013) (emphasis added, cleaned up). "Because the term 'cover' is a restrictive term, preemption will not apply if the FRSA regulation in question merely touches upon or relates to the subject matter of state law. Rather, pre-emption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law." *Id*. (emphasis added, cleaned up). "Normal State negligence standards apply where there is no Federal action covering the subject matter." 49 C.F.R. § 217.2. Accordingly, to prevail on their preemption defense, Defendants must show that federal regulations "substantially subsume" the subject matter of Plaintiffs' claims. Defendants have not done so.

Defendants have not identified any regulation that covers Plaintiffs' allegations relating to wayside defect detectors. Plaintiffs' claims are based, in part, on allegations that Defendants did not (1) properly place the detectors, (2) implement proper policies to use the detectors with appropriate alarm thresholds and criteria for determining when a potentially dangerous condition exists, or (3) properly maintain and inspect the detectors. *See, e.g.,* Compl. ¶ 232(l). The Complaint alleges these detectors captured the temperature increases and had Defendants promptly stopped the train to inspect the derailment would have been diverted. *See id*. Defendants argue (MTD, p. 15) that those allegations are preempted by Part 215, which includes regulations relating to the inspection of train cars. But the Federal Railroad Administration (FRA) has *specifically acknowledged* that there are no regulations regarding wayside defect detectors.

The FRA recently issued a Safety Advisory to encourage the continued use of wayside detectors to "enhance the mechanical reliability of rolling stock and the safety of railroad operations." FRA Safety Advisory 2023-01, 88 Fed. Reg. 13494 (March 3, 2023). After describing the East Palestine derailment, the FRA acknowledged that "there are no Federal regulations requiring the use of [wayside detectors] for freight trains, or any regulations related to the inspection, calibration, and maintenance of this equipment…" *Id*. at 13495. Because there are no regulations covering the subject matter, Plaintiffs' claims relating to wayside defect detectors are not preempted.

While Defendants ask the Court to follow *Tipton*, 2016 WL 11501426, at *11 (E.D. Tenn. July 7, 2016), that court's reasoning does not support preemption here, and to the extent it can be read to do so, it should be rejected as unpersuasive. In *Tipton*, the plaintiffs alleged that CSX was obligated to install and maintain wayside defect detectors as part of its regulatory obligations with respect to inspection and operation of the train. *See id.* at *10. The *Tipton* court accepted the plaintiffs' allegation to the extent they were seeking to enforce a duty that was covered by existing regulation but held that plaintiffs could not impose *additional* duties as a part of the railroad's system of inspecting rail cars. *See id.* at 11-12. Here, Plaintiffs are not arguing that Defendants were obligated to operate a system of wayside defect detectors as a part of their *existing* regulatory requirements under Part 215. Rather, Plaintiffs allege that once Defendants decided to employ those devices, they were obligated to do so in a reasonably prudent manner. Because no regulation even addresses wayside defect detectors, much less "substantially subsumes" their use, there is no federal law with which Plaintiffs' claims are in conflict. And in the absence of a regulation addressing those devices, Congress made clear that states can fill that gap. *See Norfolk Southern Ry. Co. v. Box*, 556 F.3d 571, 572 (7th Cir. 2009).

Plaintiffs also allege Defendants failed to act properly while the train was in transit and

failed to timely detect the fire on the tank car that led to the derailment. *See* Compl. ¶¶ 232(d, f).

Defendants have not identified any regulations that substantially subsume allegations of errors

during transit. Defendants vaguely cite "track safety standards" (MTD, p. 14) to argue that state

law cannot require railroad employees to maintain a vigilant lookout during transit. But the

regulations Defendants invoke relate to pre-departure matters. Defendants have not cited any

regulations that provide "rules of the road" that would cover Plaintiffs' post-departure allegations

– because there are none. Courts generally have found that allegations like failure to keep a

proper lookout are not preempted. *See, e.g., MD Mall Assocs., LLC*, 715 F.3d at 490 (noting that

courts have found claims including failure to keep a proper lookout are not "substantially

subsumed" by related regulations); *Diehl v. CSX Transportation, Inc.*, 349 F.Supp.3d 487, 504

(W.D. Pa. 2018) (declining to dismiss allegations that defendant violated duty to keep a proper

lookout); *Bradford v. Union Pac. R.R. Co.*, 491 F.Supp.2d 831, 838 (W.D. Ark. 2007)

("[N]egligent operation has not been substantially subsumed by regulations enacted pursuant to

FRSA.") (cited by Defendants at 15).[3] Plaintiffs allege Defendants' employees should have

realized sooner their train had caught fire and Defendants should have had a better system in

place for monitoring malfunctions during transit. *See, e.g.,* Compl. ¶¶ 113-123, 232(d, f). No

federal regulations substantially subsume those allegations.

    For similar reasons, Defendants fail to identify federal regulations that substantially

subsume the following allegations:[4]

- Complaint ¶ 232(s) – Plaintiffs allege that Defendants (1) failed to adequately staff
  positions that plan, prepare, coordinate, and oversee transportation of hazardous

---

[3] Defendants' other cited cases (at 15) do not support preemption here. *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005), involved a pre-inspection claim (at summary judgment and prior to the Clarification Amendment). *See supra* at 5-6 (addressing *Tipton v. CSX Transportation, Inc.,* 2016 WL 11501426 (E.D. Tenn. July 7, 2016)).

[4] Identical allegations are made with respect to Plaintiffs' punitive damage claim in Paragraph 407 of the Complaint. Throughout this brief, Plaintiffs do not repeat those allegations, but they should not be preempted for the same reasons stated herein.

materials by railcar.[5]

- Complaint ¶ 232(x) – Plaintiffs allege that Defendants failed to properly instruct and adequately train its agents, servants, employees, including but not limited to the train engineer and dispatcher, concerning safety and emergency procedures in the event of a possible derailment.[6]

## 2. The FRSA does not preempt claims based on violations of regulations or internal rules adopted pursuant to regulation.

Even if federal regulations have been promulgated that "cover" aspects of Defendants' conduct in this case, claims based on that conduct are not preempted if – as Plaintiffs have alleged – Defendants breached their duties to Plaintiffs by *violating* those regulations. In 2007, Congress amended the FRSA to clarify and limit the scope of its preemptive effect. The "Clarification Amendment" provides in part that "[n]othing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party – (A) has *failed to comply* with the Federal standard of care *established by a regulation or order* issued by the Secretary of Transportation (with respect to railroad safety matters)…(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries." 49 U.S.C. §20106(b) (emphasis added).

The Clarification Amendment was passed after the dismissal of several cases based on preemption following the derailment of a train near Minot, North Dakota. That derailment, like

---

[5] Defendants argue (at 16) that Compl. ¶ 232(s) is substantially covered by regulations concerning training, but this allegation relates to the failure to adequately staff trains, not Defendants' failure to adequately train its employees.

[6] The applicable training regulations do not mention derailments, and there is no general regulation regarding derailments. There is also no regulation that applies to training about derailments. Defendants' cited cases do not support dismissal of the allegation relating to training. In *Trimbur v. Norfolk S. Ry. Co.*, 2015 WL 4755205, at *9 (S.D. Ohio Aug. 10, 2015), the court dismissed a claim at summary judgment based on qualification of the train crew, based on plaintiffs' abandonment of that claim in expert testimony, not preemption. *In Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 796-797 (7th Cir. 1999), the parties did not dispute that FRA "covered" the state statutory provision, and the Court found preemption was warranted in light of the "direct conflict" between the statutes. Here, the cited regulations do not cover the provision.

-12-

the one in East Palestine, caused the release of considerable amounts of toxic substances. *See generally*, *Lundeen v. Canadian Pac. Ry. Co.*, 507 F. Supp. 2d 1006 (D. Minn. Feb. 2, 2007). The plaintiffs' claimed the railroad failed to properly inspect its tracks in violation of federal regulations. The district court initially dismissed the claims based on preemption, but the holding was reversed after Congress passed the Clarification Amendment (which was retroactive to the date of the Minot derailment). *See Lundeen v. Canadian Pac. Ry. Co.*, 447 F.3d 606 (8th Cir. 2006) (*Lundeen I*); *vacated and remanded by Lundeen v. Canadian Pac. Ry. Co.*, 532 F.3d 682, 688 (8th Cir. 2008) (*Lundeen II*). The court of appeals noted that the Clarifying Amendment "reflected Congress's disagreement with the manner in which the courts, including our own in *Lundeen I*, had interpreted § 20106 to preempt state law causes of action whenever a federal regulation covered the same subject matter as the allegations of negligence in a state court lawsuit." *Lundeen II*, 532 F.3d at 688 (8th Cir. 2008).

Thus, as the *Lundeen II* court noted, Congress clearly expressed its intent that claims based on violations of federal regulations are not preempted by the FRSA. And as courts have frequently observed, "[t]he ultimate touchstone of preemptive effect is Congress's purpose." *Tyrrell*, 248 F.3d at 522 (citing *Medtronic v. Lohr*, 518 U.S. 470, 484-485 (1996)). For that reason, courts routinely hold that allegations that a defendant has violated regulations issued under the FRSA or the HMTA are not preempted. Defendants admit (MTD, p. 12) that "Plaintiffs allege…that Norfolk Southern violated 'one or more regulations,' listing a host of regulations that Norfolk Southern purportedly violated," and that "Norfolk Southern violated…duties imposed by federal regulations." Yet, Defendants attempt to sidestep this admission by arguing they did not violate any regulations. But such a factual inquiry is not proper on a motion to dismiss. Plaintiffs' allegations put Defendants on notice of duties they have violated, which is sufficient to overcome a preemption argument on a motion to dismiss.

*See Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

For example, Plaintiffs allege (at ¶¶ 231, 232(a), and 237) that Defendants "negligently… breached their duties to Plaintiffs," by acting inconsistently "with federal regulations and industry practice and procedures," including by failing to properly inspect its trains and railcars in violation of 49 C.F.R. § 215.13(a) (pre-departure inspections), § 215.15 (periodic inspections), § 215.11(a-b) (requiring qualified and knowledgeable inspectors), and § 215 Appendix D.[7] The Complaint elaborates on these allegations extensively, explaining that Defendants reduced "spending to...perform train inspections" as the result of their adoption of precision scheduled railroading ("PSR"), Compl. ¶¶ 82, 95; "eliminate[d] necessary inspections" and "deprioritize[d] rail and railcar inspections," decreasing safety and materially increasing the risk of derailments, *id.* ¶¶ 98, 101, and reduced the number of their employees responsible for conducting inspections, *id.* ¶¶ 105-06. Plaintiffs expect to develop evidence through discovery to further substantiate these and other allegations. Defendants are free to contest the facts at summary judgment or trial, not at the motion to dismiss stage.

Courts routinely hold that allegations invoking federal regulations with less or comparable specificity are sufficient to survive a motion to dismiss on preemption grounds. *See, Smith v. CSX Transportation*, Inc., 2014 WL 3732622, at *3 (N.D. Ohio July 25, 2014) (court denied motion to dismiss based on FRSA preemption arguments because the FRA "has prescribed regulations regarding the inspection of rails, [and] Plaintiffs allege [the defendant] failed to comply with those regulations."); *Diehl*, 349 F. Supp. 3d at 503 (court denied motion to

---

[7] Moreover, Defendants' argument that they are exonerated because they did not own the railcar that derailed or construct the wheel bearing that allegedly overheated is a red herring. Every railroad operator accepting a railcar in service is responsible to inspect the railcar to make sure it complies with all regulations. 49 C.F.R. § 215.13; Rule 1 of the Field Manual of the AAR Interchange Rules ("[e]ach handling line is responsible for the condition of all cars on its line.") The railroad's obligations continue throughout the train's operation. 49 C.F.R. §§ 215.9, 215.115.

dismiss based on FRSA preemption arguments because it would be incorrect to do so "at this [motion to dismiss] stage" because "Plaintiff alleges that Defendant failed to comply with these regulations.")

Similarly, the Court should deny Defendants' motion to preempt Plaintiffs' allegations under the FRSA, which are premised on express violations of FRSA regulations. These allegations include that Defendants breached duties owed to Plaintiffs by violating 49 C.F.R. § 215.115, which prohibits placing in service or continuing in service a train car with an overheated roller bearing, Compl. ¶¶ 232(b), 237; that Defendants violated regulations relating to inspections;[8] Defendants violated regulations relating to training;[9] and allegations that Defendants violated regulations relating to the transportation of hazardous materials.[10]

---

[8] Including (1) Compl. ¶¶ 232(g), 237(a), alleging that Defendants violated 49 C.F.R. § 215.9, in failing to remedy defects and removing cars that are unsafe to run; and (2) Compl. ¶¶ 232(e), 237(a), (c) alleging that Defendants failed to properly calibrate, maintain, test, and operate its train brake systems in violation of 49 C.F.R. § 215, App. D (requiring brake inspections), § 232.103(a-b, d-f, i, l), § 232.105(a-c, g)(requiring effective brake systems and inspections), § 232.111, § 202.203(b)(requiring policies and training on brake operation, testing, and maintenance).

[9] Including: (1) Compl. ¶¶ 232(h-j), 237(d), alleging that Defendants violated 49 C.F.R. § 271 (specifically 49 C.F.R. § 271.5, § 271.101(a), § 271 Appendix A, § 271.103, § 271.105, § 271.107(a), § 271.109(b), and § 271.111(a)) in failing to properly develop and implement risk reduction programs, risk-based hazard management programs, and safety performance evaluation processes; (2) Compl. ¶¶ 232(t-v), alleging that Defendants failed to adequately hire, train, manage, oversee, and supervise their agents, servants, and employees in violation of the federal regulations that apply to the hiring, training, and supervision of engineers, conductors, and safety-related employees. *See* hiring engineers (49 C.F.R. §§ 240.105(b), 240.203(a), 240.209, 240.211(a)), training engineers (§§ 240.123(a-b), testing (§§ 240.125(a-c), 240.127(a-d), 240.303, & 240 Appendix E), and supervising engineers (§§ 240.129(a-e), 240.201(a, d-e), 240.309(a-c)); hiring conductors (49 C.F.R. §§ 242.109(a), 242.119(b-c)), training conductors (§§ 242.119(a, l)), testing for conductors (§§ 242.121(a-c), 242.123(a-d)), and supervision for conductors (§§ 242.215(a-c)); hiring safety-related employees (49 C.F.R. §§ 242.109(a), 242.119(b-c)), training safety-related employees (§§ 242.119(a, l)), testing for safety-related employees (§§ 242.121(a-c), 242.123(a-d)), and supervision for safety-related employees (§§ 242.215(a-c)).

[10] Including: (1) Compl. ¶ 232(k), alleging that Defendants failed to operate, maintain, inspect and/or repair the railway and railcars in such a way to ensure their safe and proper operation, particularly when transporting hazardous materials, in violation of 49 C.F.R. § 215 *et seq.* (freight car standards), 49 C.F.R. § 229 *et seq.* (locomotive safety standards), 49 C.F.R. § 271 *et*

The Court should likewise deny Defendants' motion to dismiss Plaintiffs' allegations based on Defendants' violations of their internal rules adopted pursuant to regulations, as evidence may be developed during this litigation to prove such violations and it would be improper to preclude such claims on a motion to dismiss.[11]

### C.    The HMTA Does Not Preempt Plaintiffs' Claims

Defendants argue for an overly broad application of preemption under the HMTA to Plaintiffs' claims premised on allegations "relating to the routing and handling of hazardous materials, the reporting of the unintentional release of such materials, and the inspection and maintenance of the container used to transport such materials." MTD, p. 10. When a claim involves matters of railroad safety, courts analyze preemption under the FRSA framework, rather than the HMTA, regardless of whether the applicable regulations were issued under the FRSA or the HMTA. In *CSX Transportation., Inc. v. Public Utilities Comm. of Ohio*, 901 F.2d 497, 501 (6th Cir. 1990), *cert. denied* 498 U.S. 1066 (1991), the Sixth Circuit held that the FRSA's

---

*seq.* (risk reduction program), 49 C.F.R. § 174.3 (shipments of hazardous materials by rail must be in conformance with the requirements of this subchapter); (2) Compl. ¶ 232(m) alleging that Defendants failed to ensure proper procedures or systems for timely identifying any malfunctions of the railway and railcars in order to prevent or mitigate derailments while transporting hazardous materials in violation of 49 C.F.R. § 174 *et seq.* (requirements for transportation of hazardous materials by rail, including inspections and tank car regulations), § 179.15 (pressure relief devices), § 215.13 (pre-departure inspections), and § 215.15 (periodic inspections); (3) Compl. ¶ 232(o), alleging that Defendants failed to ensure a proper mechanism for stopping or slowing malfunctioning railcars in a timely manner to avoid a derailment while transporting hazardous material in violation of 49 C.F.R. § 229.29 (air brake syst ems), § 232 (braking systems), and § 174 (transportation of hazardous materials by rail); and (4) Compl. ¶¶ 232 (ff, mm), alleging that Defendants failed to transport and handle hazardous materials in a manner which would not cause Plaintiffs injury or harm, as Plaintiffs were foreseeable victims located within the scope of the risk created by Defendants' conduct; and failed to otherwise reasonably pack, transport, maintain, dispose of, or otherwise handle hazardous materials in violation of 49 C.F.R. § 174 *et seq.* (transportation of hazardous materials by rail).

[11] The sole case on which Defendants rely (MTD, p. 13) to argue Plaintiffs' allegations relating to a violation of internal rules should be dismissed was decided at summary judgment, like every case cited in that opinion. Plaintiffs have put Defendants on notice of their allegedly unlawful conduct, as well as numerous federal regulations they have violated.  As evidenced by the cases cited by Defendants, Plaintiffs need not identify every such internal rule adopted pursuant to the regulations that Defendants have violated at the pleading stage.

preemption provisions, and not those of the HMTA, govern matters of railroad safety. *See also, e.g.*, *Tipton*, 2016 WL 11501426, at *15 (same).

Consequently, as discussed in the previous section, a claim involving railroad safety is not preempted by a regulation issued under the FRSA or the HMTA if the challenged acts or omissions (1) are not "covered" by a regulation, (2) violate a duty established by a federal regulation, or (3) violate the railroad's own internal policies created pursuant to a regulation or order.

First, as explained in Part I.A above, as in *Tipton*, 2016 WL 11501426, at *13, Plaintiffs' claims related to the "[the railroad's] response to the derailment, and mitigation of the damage from the toxic chemical spill and fire" are not preempted because they are not governed by any regulation, whether issued under the FRSA or the HMTA. *Id*. at *14.

Second, the remaining claims Defendants challenge (MTD, p. 20) are exempted from the FRSA's preemption provisions either for the reasons already discussed (*see supra* Part 1.B) or because they claim a violation of a specific duty established by the HMTA regulations (or Defendants' internal rules created pursuant to those regulations). For example, Plaintiffs' allegation in paragraph 232(c) that Defendants were negligent in "[a]ccepting and transporting shipments of hazardous material that had pressure relief devices made of materials that were incompatible with the lading" asserts a breach of the duty set forth in 49 C.F.R. § 179.15(a), which provides that "[e]ach tank must have a pressure relief device, made of materials compatible with the lading, having sufficient flow capacity to prevent pressure build-up in the tank to no more than the flow rating pressure of the pressure relief device in fire conditions as defined in appendix A of the AAR Specifications for Tank Cars (IBR, see § 171.7 of this subchapter)." *See* Compl. ¶ 237(f) (alleging defendants violated Section 179.15(a)). Defendants' violations of specific HMTA regulations are not preempted under the plain language of the FRSA's

Clarification Amendment. The other duties allegedly breached that Defendants contend are preempted are consistent with the FRSA and the HMTA regulations covering inspection, maintenance, and repair of its equipment, including but not limited to the following:

- Defendants' failure to ensure its agents, servants, and employees were properly and adequately instructed and trained while transporting hazardous substances (Compl. ¶¶ 232(w)) is consistent with Defendants' failure to inspect and test for pressure release defects, leakage, valve defects, and "any other condition that makes the tank care unsafe for transportation…" under 49 C.F.R. §§ 173.31(a)(3), (d)(1)(ii), (vi), 173.301(a)(3), 174.9(a)-(b), 180.205(d)(1), 180.205(f), 180, 180.509(b)(1), (4), 180.509(d)(1), (3)-(6), 180.509(e)(1), (4), 180.509(h), (j), (k), 180.511(a), (b), (d), (f), (h), and 180.503 (defining "defects").[12]
- Defendants' failure to ensure proper safety procedures, institute proper procedures and training for response to derailment of rail cars containing hazardous materials, and failure to have an emergency response plan to contain spread of and exposure to hazardous materials (Compl. ¶ 232(n) is consistent with Defendants' obligations to "ensure that only qualified employees perform any inspections and testing. 49 C.F.R. § 179.7(c)," to make its own procedures for inspections, 49 C.F.R. §§ 179.7(a)(2), 179.7(b)(3), and to make "a careful and critical examination of a tank car and its appurtenances performed by qualified personnel following the owner's qualified procedures." 49 C.F.R. § 180.503, and to have an emergency plan for handling fires (49 C.F.R. § 172.602(a)(4-5)), and was required to have a systematic training and testing program to ensure that employees know the HMTA regulations, "accident prevention methods," and how to respond to emergencies. 49 U.S.C. § 5107(c); 49 C.F.R. §§ 172.700(b), 172.704(a)(1)-(3), (c), 173.1(b), 179.7(d)-(e).

Because Plaintiffs' claims merely seek to enforce duties that are established by federal regulations, they are not preempted under either the FRSA or the HMTA.

The cases cited by Defendants are distinguishable. In *Roth v. Norfalco, LLC*, 651 F.3d 367 (3rd Cir. 2011), the plaintiff did not argue the defendant violated any federal regulation, and the parties otherwise agreed that Norfalco complied with HMTA regulations. Similarly, in *Mawa Inc. v. Univar USA Inc.*, 2016 WL 2910084 (E.D. Pa. May 19, 2016), the plaintiff acknowledged his allegations were covered by the HMTA and were not substantively the same as its regulations

---

[12] For tank cars containing hazardous gases, Defendants were obligated to ensure that "[t]he pressure relief device must be capable of preventing rupture of the normally filled cylinder when subjected to a fire test…" 49 C.F.R. § 173.301(f)(1). Because vinyl chloride is flammable, the tank car also needed a tested thermal resistance system that would prevent release. 49 C.F.R. §§ 179.18, 173.31(b)(4), 172.101.

and did not allege violation of any rail safety regulations. The same is true for *Parrish v. JCI Jones Chems., Inc.*, 2019 WL 1410880, at *5 (D. Haw. Mar. 28, 2019) ("Plaintiffs do not allege that Defendant violated any federal law."); *Trimbur v. Norfolk S. Ry. Co.*, 2015 WL 4755205, at n. 6 (S.D. Ohio Aug. 10, 2015) (indicating that there is no allegation that Norfolk Southern violated any regulation). *Scarbrough v. Coleman Co*., 2013 WL 3825248 (D. Colo. Jul. 24, 2013), is inapposite because it did not involve railroad safety or transportation, so the FRSA was not implicated.[13]

### D.     Plaintiffs' Claims Are Likewise Not Preempted By The ICCTA.

The ICCTA gives the Surface Transportation Board (STB) "exclusive" jurisdiction over railroads in certain areas that "preempts the remedies provided under Federal or State law." 49 U.S.C. §10501(b). The language of the ICCTA preemption provision appears to encompass essentially all aspects of railroad operations. But when a claim involves railroad *safety*, the FRSA, not the ICCTA, governs the preemption analysis.

In *Tyrrell*, 248 F.3d 517, 522-23 (6th Cir. 2001), the court held that while the ICCTA may preempt state laws or claims bearing on *other* railroad-related topics, claims dealing with railroad *safety* are governed by the FRSA. *See also Island Park, L.L.C. v. CSX Transportation, Inc.*, 559 F.3d 96, 107 (2nd Cir. 2009) ("Several circuits that have examined the interplay between ICCTA and FRSA have concluded that the federal statutory scheme places principal federal regulatory authority for rail safety with the Federal Railroad Administration ("FRA"), not the STB. We agree. Thus, FRSA provides the appropriate basis for analyzing whether a state law, regulation or order affecting rail safety is pre-empted by federal law."). Because the Ohio regulation at issue in *Tyrrell* related to employee safety, the FRSA governed the preemption

---

[13] Defendants cite two other cases where a court, without any explanation, summarily found preemption. *Self v. Norfolk S. Ry. Co.*, 2007 WL 540373, at *4 (D. S.C. Feb. 15, 2007); *Sanders v. Norfolk S. Ry. Co.*, 2010 WL 297813, at *4 (D. S.C. Jan. 20, 2010). These cases are not persuasive because the reasoning is not apparent.

question rather than the ICCTA, even though the claim involved issues related to track construction. Consequently, the plaintiff's claims were not preempted because no regulation "covered" the subject matter of track spacing. *See Tyrrell*, 248 F.3d at 525. The same conclusion was reached in *Smith*, 2014 WL 3732622 (N.D. Ohio, July 25, 2014), a case involving a derailment of hazardous chemical tank cars in the railroad's yard that necessitated evacuation of the surrounding community. The defendant argued that claims premised on the inspection and installation of tracks in the yard were preempted by the ICCTA. The court held that the "allegations involve railroad safety procedures, which the FRSA – not the ICCTA – was enacted to regulate…. Because those claims relate to rail safety, and do not amount to economic regulation of railroads, the ICCTA does not preempt Plaintiffs' claims." *Id*. at *2.

Defendants have not pointed to any allegations that are unrelated to railroad safety. As the claims have only an incidental effect on rail transportation and are not aimed at regulating railroad operations, they should be analyzed under the FRSA, not ICCTA. As provided in Part I.B above, the allegations in Plaintiffs' Complaint involve claims not covered by, or involve direct violations of, federal regulations. Defendants failed to meet their burden that preemption should be applied.

Defendants cite *Adrian & Blissfield R. Co.,* 550 F.3d 533 (6th Cir. 2008) for the proposition that the ICCTA "preempts all 'state laws that may reasonably be said to have the effect of managing or governing rail transportation.'" But *Adrian* concluded that the claims at issue were *not* preempted. Defendants also neglected to provide the full quotation from the decision, which went on to say that the ICCTA "*permit[s] the continued application of laws having a more remote or incidental effect on rail transportation*." *Id*. at 539 (cleaned up, emphasis added). The cases that have found ICCTA preemption predominantly involve nuisance claims arising out of noise, vibration, or blocked traffic stemming from sidetrack or switching

operation or construction. *See, e.g., Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439 (5th Cir. 2001) (suit by nursery business disrupted when RR extended its side track, resulting in traffic blockages that caused business decline); *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836 (E.D. Ky. 2004) (suit by individuals whose property was blocked by trains on side tracks); *Rushing v. Kansas City S. Ry. Co.*, 194 F.Supp.2d 493 (S.D. Miss. 2001) (nuisance claim alleging excessive noise and vibration from switching yard).[14]

## II.     PLAINTIFFS' CAUSES OF ACTION ARE SUFFICIENTLY PLEADED AND, THEREFORE, DEFENDANTS' MOTION TO DISMISS MUST BE DENIED.

### A.     Plaintiffs Have Properly Pleaded Claims For Negligence And Gross Negligence

#### 1.     Plaintiffs have adequately pleaded breach of duty and injury.

Under Ohio law, a plaintiff need only allege facts showing "the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach" to adequately plead a negligence claim. *Rieger v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019).[15] Plaintiffs' Complaint meets this burden and, therefore, Defendants' motion to dismiss must be denied.

Plaintiffs not only plead extensive facts that support their negligence claims but show *how* Defendants' failures caused the derailment—far exceeding Plaintiffs' burden at this stage of the litigation. *See Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) ("A complaint survives a motion to dismiss under Rule 12(b)(6) by simply alleging facts 'sufficient to state a claim to relief that is plausible on its face.'" (citations omitted)). Defendants improperly focus on

---

[14] *Trimbur* did involve a train derailment, but the court addressed the ICCTA as an afterthought after already concluding that the FRSA preempted relevant claims. In *Tipton*, the court opted to dismiss a narrow portion of the plaintiffs' negligence claim that did not relate solely to "railroad safety procedures," but to the "design and maintenance of the tracks and railroads themselves." 2016 WL 11501426, at *8 (E.D. Tenn. July 7, 2016). Here, Plaintiffs do not allege any similarly generalized obligations but instead allege failures of specific safety procedures.
[15] Because Defendants only challenge the adequacy of Plaintiffs' negligence claims under Ohio law, Plaintiffs do not discuss any other law that may apply.

fewer than 10 isolated paragraphs in Plaintiffs' 408-paragraph complaint, ignoring entirely Plaintiffs' other allegations concerning Defendants' misconduct. *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 895 n.3 (6th Cir. 2019) (when determining the plausibility of claims at the motion to dismiss stage, the complaint must be viewed as a whole). The Complaint extensively supports its failure-to-inspect and failure-to-train allegations, including by, among other things, alleging that Defendants (i) reduced "spending to...perform train inspections" as the result of their adoption of precision scheduled railroading ("PSR"), Compl. ¶¶ 82, 95; (ii) "eliminate[d] necessary inspections" and "deprioritize[d] rail and railcar inspections," decreasing safety and materially increasing the risk of derailments, *id.* ¶¶ 98, 101; (iii) reduced the number of their employees responsible for conducting inspections, *id.* ¶¶ 105-06; (iv) bore responsibility for "train[ing] each employee who transports hazardous materials[,]" but failed to adequately ensure that employees "were properly trained and instructed" regarding the transportation of "hazardous substances" such as vinyl chloride, *id.* ¶¶ 89, 232(w), 232(bb); and (v) failed to train employees regarding "emergency procedures in the event of a possible derailment," "proper procedures" for responding to the "derailment of railcars containing hazardous materials," and "mechanical malfunction[s] of rail cars," *id.* ¶ 232(t)-(bb). At a minimum, these facts amply support the "reasonable inference" that Defendants breached duties owed to Plaintiffs, many of which arise from federal regulations specifically cited in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Plaintiffs' allegations concerning Defendants' numerous other breaches of applicable duties are similarly supported and plausibly alleged, as Defendants concede by ignoring them.[16]

---

[16] *See* Compl. ¶ 232 (identifying 40 ways in which Defendants breached duties to Plaintiffs). "It is a well-established procedural rule in the Sixth Circuit that failure to raise an argument in a motion acts as a waiver of that argument." *United States v. 2007 BMW 335i Convertible*, 648 F.

The Complaint also plausibly and in detail alleges the ways in which Defendants'
breaches of duty *caused* Plaintiffs' harms. In addition to myriad allegations explaining how
Defendants' breaches caused the at-issue derailment, Plaintiffs allege that after the derailment
Defendants performed a "'controlled release'" that led to "a large, fiery explosion that released a
plume of thick black smoke forming a mushroom cloud," which spread "30 miles in each
direction from the Derailment Site."[17] Compl. ¶¶ 135-41. These allegations establish an
unbroken chain of causation between Defendants' breaches and the spread of hazardous
chemicals to Plaintiffs' homes and businesses, which more than satisfies the applicable pleading
standard.[18] *E.g.*, *Gallivan*, 943 F.3d at 293; *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 637-
38 (N.D. Ohio 2014) (denying motion to dismiss negligence claim where the plaintiffs alleged
"airborne emissions from" a plant and "airborne transmission from" a dump site exposed them to
harmful substances and noting that "[n]o further detail is required at this stage of the litigation").

Additionally, Plaintiffs allege they suffered harm because of Defendants' breaches.
Among other things, the Complaint describes and catalogues the numerous harms Plaintiffs have
suffered, including lost income, property damage, contamination at residences and workplaces,
and increased risk of serious and potentially fatal illnesses including cancer and organ damage
necessitating ongoing medical monitoring.[19] Compl. ¶¶ 4-57, 240. Defendants' erroneous

---

Supp. 2d 944, 952 (N.D. Ohio 2009).

[17] While the Complaint alleges the toxic chemicals spread in a 30-mile radius, as the litigation
progresses, Plaintiffs intend to rely on developed facts, evidence, and expert testimony to
establish the direction and scope of the toxic chemical spread.

[18] Unlike the plaintiffs in *Salerno v. City of Niagara Falls*, 2020 WL 5814406, at *6 (W.D.N.Y.
Sept. 30, 2020), Plaintiffs here adequately describe the direction in which the harmful chemicals
and smoke plume traveled *and how and why they traveled there*, leaving no gaps, let alone
"substantial gaps" on "migration, exposure, and causation." *Compare* Compl. ¶¶ 135-41, *with
Salerno*, 2020 WL 5814406, at *18-19.

[19] Plaintiffs need not allege "physical manifestations of personal or bodily injury" to adequately
plead that they have suffered harm. *Hirsch v. CSX Transportation, Inc.*, 2008 U.S. Dist. LEXIS
124211, at *19 (N.D. Ohio Oct. 22, 2008) (Polster, J.) ("[P]hysical injury is not required to
demonstrate damages entitling a plaintiff to medical monitoring relief.").

contention that Plaintiffs must, to survive a motion to dismiss, provide particularized allegations about the manner in which property was harmed (MTD, p. 24) is both entirely unsupported and fundamentally inconsistent with Rule 8(a)'s notice-pleading standard.[20] *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (federal pleading standard does not require "detailed factual allegations" (citation omitted)); *see also Tipton*, 2016 WL 11501426, at *17-18 (in train derailment case, plaintiffs plausibly alleged property damage where they pleaded a possessory interest in real estate).

The denial of a similar motion to dismiss in prior train derailment case in this District, *Hirsch v. CSX Transportation, Inc.*, is instructive. There, plaintiffs brought a putative class action after a train carrying hazardous materials derailed. 2008 U.S. Dist. LEXIS 124211, at *2. Like Plaintiffs here, the *Hirsch* plaintiffs asserted negligence claims and alleged the derailment "was accompanied by a chemical spill, fire, and rail car explosion, allegedly causing toxic substances, toxic fumes, and/or carcinogens . . . to be released into the atmosphere, ground and water." *Id.* at *2-3. The court denied the motion to dismiss the negligence claims, stating:

> Plaintiffs have sufficiently alleged that toxic substances were on the train and were released because of the derailment, they were exposed to these substances because of the derailment, the toxic substances are associated with an increased risk of disease, and because Defendant's conduct caused them to be exposed to these toxic substances they face an increased risk of disease requiring medical monitoring.

*Id.* at *22. The substantially similar negligence allegations here justify the same result.

*Tipton* is also instructive. There, plaintiffs brought negligence claims after "a train derailment and subsequent release of toxic chemicals," alleging that smoke, soot, and fumes from the toxic chemical fire "*may* have settled on their yards or in their homes . . . or . . . may

---

[20] Unlike Plaintiffs here, the plaintiff in *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 WL 1725317 (N.D. Ohio June 13, 2007), on which Defendants rely, failed to allege a present injury. *Id.* at *6.

have gotten trapped in their homes." 2016 WL 11501426, at *1-27 (emphasis added). As a result, the plaintiffs alleged "that they have suffered property damage, inconvenience, fear, anxiety, aggravation, and mental anguish, among other things." *Id.* at *2. The Court summarily denied defendants' motion to dismiss the negligence claim in a single paragraph, finding that the plaintiffs "detail[ed] how both defendants allegedly owed a duty to inspect, maintain, and repair its rail cars and wheel roller bearings, to identify the toxic chemical involved in the derailment, and to control the toxic chemical release." *Id.* at *18. "Plaintiffs then allege how defendants breached those duties, . . . and how such breaches were both a proximate cause and cause in fact of plaintiffs' damages." *Id.* The court, therefore, could "'draw the reasonable inference' that each defendant's negligence was a proximate cause of the train derailment and subsequent chemical spill and fire, which caused plaintiffs property and personal injury damage." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Plaintiffs' Complaint here is similarly, if not more, detailed.

### 2. Plaintiffs' have not pleaded stand-alone negligence per se claims.

Plaintiffs have not pleaded a separate, stand-alone negligence per se claim under Ohio law, but instead captioned Count 1 as "Negligence and Negligence Per Se." Compl. At 50. Plaintiffs detail the duties that Defendants breached, including identifying obligations set forth in some relevant safety regulations. Under Ohio law, "evidence of a violation of the Safety Regulations may be considered by the trier of fact as evidence of negligence." *Gruenbaum v. Werner Enters., Inc.*, 2011 WL 563912, at *4 (S.D. Ohio Feb. 2, 2011); *Jackson v. Arka Express, Inc.*, 2022 WL 1136771, at *3 (N.D. Ohio Apr. 18, 2022).

In addition, Defendants' assertion that Plaintiffs fail "to explain which actions breached which regulations, or what the regulations require" is incorrect. MTD, p. 25. Defendants again narrowly focus on a single paragraph of the Complaint (¶ 237), ignoring numerous allegations that detail the many ways in which Defendants violated federal regulations. *See Cahoo*, 912 F.3d

at 895 n.3; Compl. ¶¶ 69-193, 227-43. Moreover, Plaintiffs need not include the regulatory text in their complaint to satisfy their pleading burden; in fact, "a complaint need not even cite any law in order to pass muster under the liberal pleading standards." *Baker v. John Morrell & Co.*, 266 F. Supp. 2d 909, 922 (N.D. Iowa 2003); *see also Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) ("A complaint need not cite a specific statutory provision or articulate a perfect 'statement of the legal theory supporting the claim asserted.'" (*quoting Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)).

### 3.     <u>Plaintiffs properly alleged a claim for gross negligence.</u>

Defendants incorrectly contend that Plaintiffs failed to allege Defendants acted with the requisite *mens rea* required to establish a claim for gross negligence. First, Plaintiffs clearly alleged Defendants had actual knowledge of the risks their conduct posed to the community and nevertheless acted wantonly and recklessly. *See e.g.,* Compl. ¶¶ 402-407. The Complaint more than sufficiently details Defendants' specific actionable gross misconduct that caused serious and permanent harm to residents of East Palestine and surrounding communities. Compl. ¶¶ 108-143. These allegations comport with Ohio law that defines gross negligence as the "failure to exercise even that care which a careless person would use." *Thompson Elec. v. Bank One, Akron, N.A.*, 525 N.E.2d 761, 768 (Ohio 1988). "Under Ohio law gross negligence is defined as wanton or reckless conduct." *Wiley v. City of Columbus*, 36 F.4th 661, 671 (6th Cir. 2022) (citing *Mohat v. Horvath*, 2013 WL 5450296, at *2 (Ohio Ct. App. Sept. 30, 2013) (affirming a denial of a motion to dismiss; holding "a plaintiff is only required to allege a set of facts, which, if proven, would plausibly allow him to recover")). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012). "Reckless conduct is characterized by the conscious disregard of or indifference to a

known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligence conduct." *Id.* (citing *Thompson v. McNeill*, 559 N.E.2d 705 (Ohio 1990)).

Plaintiffs more than adequately state a claim for gross negligence.

### B.  **Plaintiffs Have Properly Stated A Claim For Strict Liability**

####   1.  **Plaintiffs have pleaded sufficient facts to establish that Defendants' conduct constituted abnormally dangerous activity.**

Plaintiffs allege Defendants were transporting over a million pounds of toxic and hazardous chemicals; specify those chemicals and their specific dangers; note the initial evacuation order for East Palestine and its subsequent expansion to a larger area; and detail Defendants' intentional explosive release and ignition of vinyl chloride that released those hazardous chemicals and their combustion by-products into a residential community. Compl. ¶¶ 108, 123–24, 130, 133–37, 144–93, 245–48 (citing Restatement (Second) of Torts §§ 519 & 520).

Ohio law generally recognizes the use of explosives as an ultrahazardous activity. *Dartron Corp. v. Uniroyal Chem. Co., Inc.*, 893 F. Supp. 730, 739 (N.D. Ohio 1995). "To come within the doctrine, courts have found that the activity must have an immediate, high risk of great physical harm to those in close proximity, which high risk cannot be reduced through the exercise of due care." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 2015 WL 4092866, at *16 (S.D. Ohio July 6, 2015). The initial and later expanded evacuation orders demonstrate there was an immediate and high risk of harm from the "controlled release" of the toxic chemicals.

Notwithstanding Defendants' premature substantive arguments here, whether the evidence establishes that Defendants' actions of (1) carelessly transporting hazardous materials and/or (2) later releasing and burning vinyl chloride constitute abnormally dangerous activities

under applicable law including under § 520 of the Restatement (Second) of Torts is an issue to be decided only after development of the factual evidence. *See Schwartz v. Accuratus Corp.*, 7 F. Supp. 3d 490 (E.D. Pa. 2014), *vacated in part on other grounds*, 655 F. App'x 111 (3d Cir. 2016) (denying defendants' motion to dismiss as development of the factual record was necessary to assess the § 520 factors).

Moreover, contrary to Defendants' argument, Fed. R. Civ. P. 8(a)(2) does not obligate Plaintiffs to plead all six factors of abnormally dangerous activity from the Restatement (Second) of Torts § 520. As explained by the court in *Mangan v. Landmark 4 LLC*, 2013 WL 950560 (N.D. Ohio Mar. 11, 2013), in denying defendant's motion to dismiss:

> The six factors outlined in Section 520 of the Restatement Second of Torts are not elements of a strict liability claim. They are guidelines for the Court to use when determining whether the facts presented on Summary Judgment or at trial establish that the Defendants activities are abnormally dangerous for purposes of the strict liability laws. These factors are not exclusive, are not mandatory, and not required to be pled either with or without specificity.

*Id*. (citing *Doherty v. Ohio State Univ.*, 1990 WL 86772, at *3 (Ohio Ct. App. June 26, 1990).

Defendants' motion to dismiss Plaintiffs' strict liability claim for failure to plead conduct that constitutes abnormally dangerous activity should be denied.

### 2.     Plaintiffs may pursue alternative claims for strict liability and negligence.

Plaintiffs alternatively allege claims for both strict liability and negligence, which is permitted under Fed. R. Civ. P. 8(a)(3). "'Strict liability and negligence are complementary but distinct theories of liability' that Plaintiffs may plead in the alternative." *Mangan*, 2013 WL 950560, at *3 (quoting *Francis Corp. v. Sun Co.*, 1999 WL 1249534, at *1 (Ohio Ct. App. Dec. 23, 1999)). While Plaintiffs may not *obtain recovery* on both distinct theories, they are not precluded from pursuing both theories in the alternative through the course of the litigation. *Id.*

### 3.    The common carrier exception does not apply.

Contrary to Defendants' assertion, the common carrier exception does not require dismissal of Plaintiffs' strict liability claim. First, Ohio has not adopted the common carrier exception in the Restatement (Second) of Torts, § 521.[21] Defendants claim "railroads have universally been considered by courts as common carriers entitled to the exception." MTD, p. 29 (quoting *BNSF Ry. Co. v. Eddy*, 459 P.3d 857, 874 (Mont. 2020)). This quote comes from a case in Montana, not Ohio.[22]

Second, even if this Court finds that Ohio would adopt the common carrier exception, this does not extend to Defendants' actions of releasing and burning vinyl chloride as such actions far exceed the scope of the public duties imposed on Defendants as a common carrier. *Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1006 (9th Cir. 2008) (most courts that have adopted the public policy duty in § 521 "have generally done so only to the extent a defendant was legally required to perform the ultrahazardous activity"). While Defendants may have been required to accept and transport the vinyl chloride as cargo, it voluntarily undertook activities in furtherance of its own purpose; namely to get the derailed cars out of the way to start its trains running through East Palestine again and to earn revenue.[23] Defendants' decision to blast holes in all five vinyl chloride tankers, dump the vinyl chloride in a trench, and light it on fire in a residential neighborhood was not carried out in pursuance of their public duties and, therefore,

---

[21] While Plaintiffs acknowledge that comment a. to the Restatement (Second) of Torts § 519 states that this section should be read together with §§ 520 to 524A, the fact remains that not one Ohio court has explicitly adopted the common carrier exception set forth in § 521.

[22] Defendants cite to the Ohio cases of *Akron, Canton & Youngstown Railroad Co. v. I.C.C.*, 611 F.2d 1162 (6th Cir. 1979) and *Trimbur v. Norfolk Southern Railway*, 2015 WL 4755205 (S.D. Ohio Aug. 10, 2015), yet these cases only hold that railroads are considered common carriers, not that Ohio has adopted the common carrier exception in Restatement (Second) of Torts § 521.

[23] Defendants were operating trains through East Palestine again on February 8, 2023. *See Rail Traffic Resumes, Cleanup Continues in East Palestine*, Trains (Feb. 8, 2023), https://www.trains.com/trn/news-reviews/news-wire/rail-traffic-resumes-cleanup-continues-in-east-palestine/.

do not fall under the common carrier exception. *See BNSF Ry.*, 459 P.3d 857 (the activities of BNSF, other than the transportation of vermiculite, are not protected by the common carrier exception).

Defendants' reliance on *Johnson v. CSX Transportation., Inc.*, 2008 WL 4427211 (W.D. Ky. Sept. 25, 2008), for the proposition that the common carrier exception extends to conduct beyond the transportation of hazardous material is misplaced. First, unlike Ohio, Kentucky courts have explicitly adopted Restatement (Second) of Torts § 521. *Id.* at *2. Second, while the plaintiff in *Johnson* was harmed when he cleaned up contaminated soil from the derailment, Plaintiffs here were harmed by Defendants' subsequent voluntary decision to release and burn vinyl chloride, releasing dangerous and toxic chemicals into the air.[24] *See Murphy-Fauth v. BNSF Ry. Co.*, 2018 WL 3601235, at *2 (D. Mont. July 27, 2018) (the common carrier exception "does not apply when an entity engages in an abnormally dangerous activity for 'its own purpose.'" (citation omitted)).

### C. Plaintiffs Have Properly Pleaded Statutory, Public, And Private Nuisance Claims

#### 1. Plaintiffs adequately allege they suffered particularized injuries.

It is well established under Pennsylvania and Ohio law,[25] as well as the Second Restatement,[26] that when the nuisance causes physical harm to a plaintiff and/or his land or

---

[24] Defendants misstate the holding of *East Troy v. Soo Line Railroad Co.*, 409 F. Supp. 326 (E.D. Wis. 1976). The strict liability claim the court dismissed did <u>not</u> include claims for both the derailment and "resultant chemical release." Plaintiffs' strict liability claim was based only on the transportation of hazardous chemicals. *Id.* at 329-330.

[25] Defendants have not raised any issue with respect to a public nuisance claim under West Virginia law. Such an argument should not be raised in a reply brief and, if so, Plaintiffs request it be stricken or they have the opportunity to respond in a surreply. *See Bender v. Comm'r of Soc. Sec.*, 2012 WL 3913094, at *8 (N.D. Ohio Aug. 17, 2012) ("It is also inappropriate for the undersigned to consider the arguments raised in Plaintiff's reply brief because they have been waived. It is well-established that a party should not raise new arguments in a reply brief." (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

[26] Courts in Pennsylvania and Ohio follow the Second Restatement when considering public nuisance claims. *See Baptiste*, 965 F.3d at 222. *See also*, *Brown*, 622 N.E.2d at 1160.

chattels, it is "of a different kind than that suffered by the public." *Brown v. Cty. Comm'rs of Scioto Cty.*, 622 N.E.2d 1153, 1160 (Ohio Ct. App. 1993) ("When the particular harm involved consists of interference with the use and enjoyment of land, the landowner may recover . . . on the basis of the particular harm to her resulting from the public nuisance . . . ."); *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 220 (3d Cir. 2020) (under Pennsylvania law, the right to use and enjoy one's home and obtain full value of one's property are personal rights that are qualitatively different from the general right to clean air); *see also* Restatement (Second) of Torts, § 821C cmt. D.

Plaintiffs allege harm flowing to them that is distinct from the harms to the general public because Defendants have unreasonably interfered with their personal and property rights. Compl. ¶¶ 2-58, 264, 276, 296. Plaintiffs allege that the particulate plume traveled to and/or hazardous chemicals were found where Plaintiffs live, work, own property, or own a business. *Id.* at ¶¶ 141, 143, 205. As a result, Plaintiffs suffered interferences with their health (by being exposed to unsafe levels of toxic chemicals increasing their risk of disease or illness), suffered interferences with their property (including loss of use and enjoyment, property damage, diminution in value), suffered interferences with their business, and/or suffered pecuniary losses (such as out-of-pocket costs and loss of income). *Id.* at ¶¶ 2-58, 259–60, 271-72, 261, 273, 297.

Defendants ignore these well-pleaded allegations and, instead, argue that because their wrongful conduct harmed many, they should not be liable to any. *See* MTD, p. 31–32. That simply is not the law. Indeed, in *Kramer v. Angel's Path, LLC*, 882 N.E.2d 46, 55 (Ohio Ct. App. 2007), cited by Defendants, the Ohio Court of Appeals rejected such an argument, explaining: "[u]nder this line of reasoning, a person creating a public nuisance could 'escape' liability simply by harming more than one party." *Id.* The Third Circuit has also rejected this argument, stating: "[t]o adopt [the defendant's] novel position would produce the anomalous result of penalizing

small polluters while exempting larger polluters from the same liability." *Baptiste*, 965 F.3d at 227 (applying Pennsylvania law).

Defendants misconstrue "general public" to be limited only to those within the 30-mile radius while excluding everyone outside the class from the analysis. *See* MTD p. 31. Defendants' position is contrary to the law, which allows public nuisance claims to be brought as class actions. *See e.g.*, *Baptiste*, 965 F.3d at 222, 227 (finding that class action plaintiffs stated a public nuisance claim and rejecting defendants' mass nuisance argument); *see also Thornburgh v. Ford Motor Co.*, 2021 WL 1230271 (W.D. Mo. Mar. 31, 2021) (denying defendants' motion to dismiss class action plaintiffs' public nuisance claim, noting that the complaint included specific allegations of harm from the fifteen representatives); *see also* Restatement (Second) of Torts § 821C(2)(c).

Plaintiffs do not seek to hold Defendants liable for their contribution to pollution in an entire state, or the world for that matter. The claims here are limited to those persons harmed because they live in, work in, own a business in, or own property in a specified radius surrounding the crash and subsequent intentional ignition of toxic chemicals. Compl., ¶¶ 2-58, 194. These individuals have been affected differently from those falling outside the proposed classes as the nuisance has caused an interference with rights of their personal health, business, and/or property. *Id.*, ¶¶ 2-58, 194, 264, 276, 296.[27]

---

[27] Defendants' reliance on *Elmer* is misplaced. The *Elmer* plaintiffs did not allege they suffered particular harm distinct from that of the general public. *See Elmer v. S.H. Bell Co.*, 127 F. Supp.3d 812, 827 (N.D. Ohio 2015) ("None of the individual Plaintiffs pled that they suffered a distinct injury or harm from those of the general public . . . ."); *see also generally*, *Elmer v. S.H. Bell Co.*, No. 4:13-cv-02735 (N.D. Ohio Mar. 30, 2015), ECF No. 50 (Second Amended Complaint lacks even a single paragraph indicating that the plaintiffs' harm is distinct from the general public). Here, though, Plaintiffs have specifically alleged that the harm to them is distinct from that of the general public. Compl., ¶¶ 264, 276, 296.

**2.**     **Plaintiffs properly pleaded a claim for private nuisance.**

Actionable private nuisance requires an invasion of the private use and enjoyment of land that is either: (1) intentional and unreasonable; or (2) unintentional but caused by negligent, reckless, or abnormally dangerous conduct. *Brown*, 622 N.E.2d at 1158-59. Plaintiffs' Complaint demonstrates such an invasion and satisfies both alternative standards.

The Complaint contains numerous allegations regarding how Defendants' negligent and reckless behavior led to the derailment, Compl. ¶¶ 90-122, 232-236, and how Defendants' intentional conduct of blasting holes in the vinyl chloride tankers and lighting the vinyl chloride on fire led to a mushroom cloud dispersing toxic chemicals for miles. *Id*. at ¶¶ 134-141. Plaintiffs further allege the spread of toxic and hazardous chemicals into the local water and onto neighboring private lands at great risk to human life. *Id.* at ¶¶ 125-131, 138-193. In short, the "improper transportation, handling, and disposal" of the toxic and hazardous chemicals was "negligent, reckless and/or intentional" and "contaminated real property located in the 30-mile radius surrounding the East Palestine derailment site." *Id.* at ¶¶ 279-282. These allegations far surpass Plaintiffs' obligation to state a claim for private nuisance.

Ohio federal courts have rejected similar dismissal challenges to private nuisance claims. *See, Beck v. Stony Hollow Landfill, Inc.*, 2017 WL 1551216, at *1 (S.D. Ohio May 1, 2017) (court held plaintiffs adequately pleaded their class action private nuisance claims when their complaint alleged the defendant failed to properly construct, maintain, and operate its landfill and "failed to sufficiently collect, capture, and destroy landfill gas" such that noxious odors interfered with neighboring properties.); *Green v. Begley Co.*, 2008 WL 4449065, at *2 (S.D. Ohio Sept. 29, 2008) (court denied defendant's motion to dismiss plaintiff's private nuisance claim as plaintiff alleged defendant's "release of chemicals into the soil and groundwater was both negligent and abnormally dangerous").

### D.    Plaintiffs Have Properly Pleaded Claims For Trespass

Ohio recognizes a claim for indirect trespass based on chemical invasion of real property by either aerial dispersion or groundwater. *Little Hocking Water Ass'n v. E.I. du Pont de Nemours & Co.*, 91 F. Supp. 3d 940, 978-79 (S.D. Ohio 2015).[28] Defendants' motion to dismiss must be denied as Plaintiffs have alleged substantial physical damages or substantial interference with the reasonable and foreseeable use of property.

The Sixth Circuit has explained that "in an Ohio indirect-trespass claim, a plaintiff may establish substantial physical damages to, or interference with, his property by demonstrating that the concentration of an invading contaminant on his property is likely to cause harm to human health." *Abrams v. Nucor Steel Marion, Inc.*, 694 Fed. Appx. 974, 979-980 (6th Cir. 2017).[29] As in *Abrams*, Plaintiffs have alleged dangerous contamination of their groundwater, air, and soil.  Plaintiffs allege that Defendants' "controlled release" and burn of the vinyl chloride, caused a toxic mushroom cloud to disperse dozens of toxic chemicals and combustion by-products traveling miles from the derailment site and "contaminating the air, surfaces, soil and water." Compl. ¶¶ 135-141. Plaintiffs specified the chemicals that invaded the air and surfaces, as well as the potential physical harm caused by such chemicals. Compl. ¶¶ 141-193. Plaintiffs allege that Defendants intentionally, knowingly, and negligently released hazardous chemicals knowing that such toxins would contaminate Plaintiffs' land and water. Compl. ¶ 302-304. And, Defendants' actions interfered with and substantially impaired Plaintiffs' rights to the use and enjoyment of their property, as well as economic and property damages. Compl. ¶ 308-

---

[28] Defendants concede by omission that the Pennsylvania and West Virginia Plaintiffs state a claim. *See Maroz v. Arcelormittal Monessen*, 2015 WL 6070172, at *5 (W.D. Pa. Oct. 15, 2015) (denying motion to dismiss trespass claim based upon defendant's release of noxious odors and air particulates onto plaintiffs' property); *Perrine v. E.I. du Pont*, 694 S.E. 2d 815, 837, 872 (W. Va. 2010) (upholding liability and compensatory damages verdict against du Pont for, inter alia, trespass through release of dust, gases, and fumes onto nearby property.)

[29] *See also, Day v. NLO*, 851 F. Supp. 869, 879 (S.D. Ohio 1994) (Ohio law recognizes that an increased risk of suffering from a disease or illness may be a compensable item of damage.)

309.

Defendants' reliance on summary judgment decisions is misplaced. At the pleading stage, this Court must take Plaintiffs' allegations as true and draw inferences in their favor. Courts routinely decline to dismiss trespass claims with similar damages allegations. *See Elmer*, 127 F. Supp. 3d at 826 ("Plaintiffs allege that . . . they face increased risk of disease and that their property has been contaminated."); *Green*, 2008 WL 4449065, at \*4 ("Plaintiff alleges that . . . these contaminants continue to injure Plaintiff."). As in these cases, "[i]t is premature to rule upon the issue of damages in the context of a motion to dismiss stage as there has been no discovery or development of a record in this case." *Weirton Area Water Bd. v. 3M Co.*, 2020 WL 7776542, at \*8 (N.D. W. Va. Dec. 30, 2020). Plaintiffs have properly alleged a trespass claim and should be permitted to prove their damages after development of the facts and their experts.

### E.        Plaintiffs Have Properly Pleaded Claims For Trespass-To-Chattels

Contrary to Defendants' assertion, Plaintiffs clearly alleged that Defendants' intentional conduct caused a trespass-to-chattels. Conduct is intentional when "the actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result." *Harasyn v. Normandy Metals*, 551 N.E. 2d 962, 964 (Ohio 1990). *See* Restatement (Second) of Torts § 217 cmt. c.

Here, Plaintiffs alleged that Defendants detonated explosive charges on five rail cars containing vinyl chloride. Compl. ¶¶ 136-38. Vinyl chloride is "prone to explode if not … handled with proper methods…." *Id*. ¶¶ 146-47. This created a "large, fiery explosion that released a large plume of thick black smoke forming a mushroom cloud over the entire area." *Id.* ¶ 138. The plume spread out for miles, releasing approximately one million pounds of vinyl chloride into the atmosphere. *Id.* ¶¶ 139-41, 153. Viewing these allegations in the light most favorable to Plaintiffs, it was substantially certain that nearby chattels would suffer damage when Defendants set off bombs on containers that contained massive volumes of highly explosive,

toxic chemicals. *See Bradley v. Am. Smelting & Refining Co.*, 709 P.2d 782, 786 (Wash. 1985) ("It had to know that the solids propelled into the air by the warm gases would settle back to earth somewhere.").

F. **Plaintiffs Have Properly Pleaded Their Statutory Agricultural Claims**

In a single paragraph, Defendants seek to dismiss Counts 9-12 of Plaintiffs' Complaint. Those Counts address Defendants' violations of particular statutes in Ohio (Counts 9 and 12), Pennsylvania (Count 10) and West Virginia (Count 11) related to agricultural property. Defendants make no argument concerning Count 10 and devote a single sentence to Counts 9 and 11 and another sentence to Count 12. The fallacy underlying Defendants' argument as to these four counts is "Plaintiffs allege only that hazardous chemicals released from the derailment disbursed within a 30-mile radius." MTD, p.36. That erroneous statement is belied by the multitude of actual allegations in the Complaint and the actual allegations in Counts 9-12. Compl., ¶¶ 1, 69-193, 325-360, 402-408. There is simply no basis to dismiss Counts 9-12.

G. **Plaintiffs Have Properly Pleaded Claims For Medical Monitoring**

1. **Medical monitoring is an element of damages under Ohio law**.

Plaintiffs concede that the presently prevailing view is that medical monitoring in Ohio is a form of damages for an underlying tort claim. *Wilson v. Brush Wellman, Inc.,* 817 N.E.2d 59, 63 (Ohio 2004); Compl. p. 81, n. 13. Contrary to the Defendants' claims, Plaintiffs have properly pleaded medical monitoring as a form of damage because Plaintiffs pleaded exposure to hazardous materials which caused such an increased risk of disease that a reasonable physician would order medical monitoring. *Elmer,* 127 F. Supp. 3d at 825 ("[I]f the Plaintiffs can establish liability and an increased risk of disease, they may be entitled to medical monitoring as a remedy." (alteration and citation omitted)). To provide that monitoring, Plaintiffs have requested quantifiable costs of a monitoring program, and/or injunctive relief in the form of a court-established medical monitoring program. Compl. ¶¶ 216, 218, 224, 226.

As an element of damage, any substantive consideration of Plaintiffs' medical monitoring allegations is premature.[30]

### 2.   Plaintiffs' allegations support their medical monitoring claims.

Despite Plaintiffs' clarity in pleading medical monitoring in Ohio as an element of damages, Defendants claim that Plaintiffs have "not plausibly alleged that a reasonable physician would order medical monitoring based on their alleged exposure."  MTD, p. 38. As an initial matter, Norfolk Southern's CEO conceded the necessity for medical monitoring in his Congressional testimony when he stated that "[w]e are committed to a solution that addresses long-term health risks through the creation of a long-term medical compensation fund." Compl. ¶ 221. Moreover, under any potentially applicable law (Ohio, Pennsylvania[31], or West Virginia[32]), Plaintiffs have sufficiently alleged exposure to hazardous chemicals known to cause damage to human central nervous systems and increased risk of specific cancers, reproductive damage, birth defects, miscarriage, liver damage, increased prenatal mortality, kidney damage,

---

[30] As this Court also noted in *Elmer*, expert testimony is required to demonstrate increased risk of disease, and expert proof is not required at this early stage of the litigation. 127 F. Supp. 3d at 825.

[31] To prevail on a common law claim for medical monitoring under Pennsylvania law, the plaintiff must prove: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Redland Soccer Club v. Dep't of the Army*, 696 A.2d 137, 145-46 (Pa. 1997).

[32] To prevail on a medical monitoring claim in West Virginia the plaintiff must prove: (1) he or she has been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease relative to the general population; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible. *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432-33 (W. Va. 1999).

coma, leukemia and lymphoma, lung damage, and death.[33] Compl. ¶¶ 145, 148, 149-50, 160, 162, 168, 170, 172-74, 177, 187-88, 190. These are not mere conclusory allegations. Further, Plaintiffs have plausibly alleged they were exposed to such hazardous chemicals above background levels and therefore are at increased risk of cancer and organ damage. Compl. ¶¶ 4, 7, 10, 14, 17, 48, 362, 372, 382. In fact, Plaintiffs allege that "[t]his increased risk would warrant a reasonable physician to order monitoring." Compl. ¶¶ 219, 366, 376, 386. These allegations fully satisfy Plaintiffs' obligation to meet Fed. R. Civ. P. 8's "short and plain" pleading requirements for medical monitoring regardless of whether it applies to Ohio, Pennsylvania or West Virginia law.

An additional problem with Defendants' argument – for example, when it relies on *Acord v. Colane Co*., 719 S.E.2d 761 (W. Va. 2011), which was decided *after* summary judgment – is that Defendants demand that "plaintiff must prove" their case "with sufficient evidence" at the *pleading* stage. MTD p. 37. That argument is misplaced in a Rule 12(b)(6) motion, where the facts when plausibly alleged are assumed to be true and the only issue is whether the claim is stated as a *matter of law*. *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020) quoting *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). No doubt, when the time comes to present evidence, such as in response to a summary judgment motion or at trial, if Plaintiffs fail to prove the underlying bases for their medical monitoring claims (and all other claims), then their claims will fail. But having Defendants request evidentiary proofs on a motion to dismiss is baseless.

Accordingly, Defendants' argument that Plaintiffs have failed to adequately plead medical monitoring damages or claims is unfounded and must be denied.

---

[33] This list is not exhaustive; a more complete list of diseases to which the Plaintiffs are now at heighted risk is included in the Complaint at ¶¶ 143-193.

### H.    Plaintiffs Have Properly Stated a Claim For Spoliation

Plaintiffs' spoliation claim is premised on Defendants' destruction of case-critical evidence—the surveillance video from the cab of Train 32N—through Defendants' automatic process of recording over surveillance videos. Compl., ¶ 396. The case-critical nature of the surveillance video is undisputed. Contrary to Defendants' assertion, Plaintiffs have alleged willful destruction of evidence: "As a result of the destruction of this video surveillance footage from the cab of Train 32N . . . Defendants have willfully destroyed or interfered with evidence." Compl., ¶ 399. Furthermore, Defendants' adherence to ordinary deletion protocols does not preclude a plausible inference of their willful intent to destroy evidence. *See Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 747-748 (8th Cir. 2004) (court affirmed the trial court's finding of the railroad's intent to suppress evidence despite it simply following its policy of reusing tapes).

Consequently, Defendants' adherence to its ordinary policy for retention of video surveillance videos does not insulate it from a finding of willfulness with respect to Plaintiffs' spoliation claim.

### I.    Plaintiffs Have Properly Pleaded Their Request For Punitive Damages

Contrary to Defendants' assertion, Plaintiffs have alleged actual malice. The actual malice necessary for punitive damages is "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987). "[A]ctual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross." *Villella v. Waikem Motors, Inc.*, 543 N.E.2d 464, 467 (Ohio 1989).

Plaintiffs' negligence claim describes a stream of reckless breaches that Defendant "knew or should have known," Compl. ¶ 230, had a great probability to cause substantial harm to others, from "[f]ailing to properly inspect their trains and railcars," *id* at ¶ 232(a), to "[a]ccepting and transporting shipments of hazardous material that had pressure relief devices made of

materials that were incompatible with the lading," *id.* at ¶ 232(c), to "[f]ailing to immediately notify train dispatchers about fires observed on roller bearings and the extent to which fires had spread beyond the roller bearing," *id.* at ¶ 232(f), to failing to set appropriate alarm thresholds on wayside and hotbox detectors to determine "when a potentially dangerous condition exists," *id.* at ¶ 232(l), to failing to "ensure a proper mechanism for stopping or slowing malfunctioning railcars in a timely manner to avoid a derailment while transporting . . . hazardous materials," *id.* at ¶ 232(o), and failing to "properly dispose of or otherwise eliminate the hazardous materials from the derailment site." *Id.* at ¶ 232 (gg).

Plaintiffs' remaining counts likewise plead Defendants' recklessness and conscious disregard for the rights and safety of others. *See Compl.* ¶¶ 243, 259-260, 265, 272-273, 277, 281, 289, 291, 300, 303, 312, 324, 334, 343, 352, 360, 408. Plaintiffs' complaint alleges conduct sufficient to state a claim for punitive damages. *See Baatz v. Columbia Gas Transmission, LLC*, 2016 U.S. Dist. LEXIS 200221, at *25–26 (N.D. Ohio Dec. 22, 2016) (plaintiffs' allegations stated plausible claim for punitive damages where they, in part, pleaded defendant's "invasion onto their properties [and] that such trespass was . . . done with conscious disregard for their property rights"); *Molnar v. City of Green*, 140 N.E. 3d 1209, 1210-11 (Ohio Ct. App. 2019) ("The complaint stated claim[] for . . . punitive damages that alleged grossly negligent, reckless, wanton, and willful conduct.")

## **CONCLUSION**

Plaintiffs respectfully submit that Defendants' Motion to Dismiss Plaintiffs' Complaint and Motion to Strike Plaintiffs' Request for Punitive Damages must be denied. If the Court finds any allegations insufficient, Plaintiffs respectfully request leave to amend.

Respectfully submitted,

/s/ *Michelle L. Kranz*
Michelle L. Kranz (Oh 62749)
ZOLL & KRANZ, LLC
6620 West Central Ave., Suite 100
Toledo, Ohio 43617
419-841-9623
419-841-9719 (fax)
michelle@toledolaw.com

*Plaintiffs' Liaison Counsel*

 /s/ *Seth A. Katz*
Seth A. Katz (pro hac vice)
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
303-708-0527 (fax)
skatz@burgsimpson.com

M. Elizabeth Graham (pro hac vice)
GRANT & EISENHOFER, P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
303-622-7100 (fax)
egraham@gelaw.com

Jayne Conroy (pro hac vice)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
212-213-5949 (fax)
jconroy@simmonsfirm.com

Michael Morgan (pro hac vice)
MORGAN & MORGAN
20 North Orange Ave., Suite 1600
Orlando, FL 32801
407-420-1414
407-245-3389 (fax)
mmorgan@forthepeople.com

*Plaintiffs Interim Class Counsel and Co-Lead Counsel*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

I certify that this Response Memorandum adheres to the page limitations set forth in Local Rule 7.1(f) for mass-tort cases because it does not exceed 40 pages in length. See Discovery Plan, Dkt 62 (May 23, 2023).

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2023 a copy of foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/ s/ *Michelle L. Krantz*
Michelle L. Krantz