**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** | Case No. 4:23-CV-00242-BYP<br><br>JUDGE BENITA Y. PEARSON |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' MASTER CONSOLIDATED CLASS ACTION COMPLAINT
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND
TO STRIKE UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    FEDERAL LAW PREEMPTS PLAINTIFFS' NEGLIGENCE, GROSS NEGLIGENCE, NUISANCE, AND STRICT-LIABILITY CLAIMS ....................................................................... 2

    A.    The ICCTA Preempts Plaintiffs' Negligence And Gross Negligence Claims Concerning Railroad Transportation (Counts 1, 17) .................................. 2

    B.    The FRSA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning Railroad Safety (Counts 1-6, 17) ........... 5

        1.    Plaintiffs' claims premised on railroad safety are "covered" by FRSA regulations ....................................................................... 5

        2.    Plaintiffs have not plausibly alleged that Norfolk Southern violated a federal standard of care or an internal rule created pursuant to federal regulation ................................................................................... 8

    C.    The HMTA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning The Transportation Of Hazardous Materials (Counts 1-6, 17) ...................................................................... 10

II.    PLAINTIFFS FAIL TO PLEAD THEIR CAUSES OF ACTION ........................................... 11

    A.    Plaintiffs' Negligence And Gross Negligence Claims Fail (Counts 1, 17) .......... 11

        1.    Plaintiffs fail to plead breach or resulting injury ..................................... 11

        2.    Plaintiffs fail to plead negligence per se ................................................. 14

        3.    Plaintiffs fail to plead gross negligence .................................................. 14

    B.    Plaintiffs' Strict-Liability Claim Fails (Count 2) ............................................ 15

        1.    Plaintiffs fail to plead abnormally dangerous activity .............................. 15

        2.    The common carrier exception applies ................................................... 16

    C.    Plaintiffs' Statutory, Public, And Private Nuisance Claims Fail (Counts 3-6) ..... 17

    D.    Plaintiffs' Trespass Claim Fails (Count 7) ..................................................... 18

E.      Plaintiffs' Trespass-To-Chattels Claim Fails (Count 8) ........................................ 19

F.      Plaintiffs' Statutory Agricultural Claims Fail (Counts 9-12) .............................. 19

G.      Plaintiffs' Medical-Monitoring Claims Fail (Counts 13-15) .............................. 19

H.      Plaintiffs' Spoliation Claim Fails (Count 16) ...................................................... 20

I.      Plaintiffs' Request For Punitive Damages Fails ................................................... 20

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*16630 Southfield Limited Partnership v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ...................................................................................8

*Abrams v. Nucor Steel Marion, Inc.*,
694 F. App'x 974 (6th Cir. 2017) ...........................................................................18

*Adkins v. Chevron Corp.*,
960 F. Supp. 2d 761 (E.D. Tenn. 2012)....................................................................9

*Bailey v. City of Ann Arbor*,
860 F.3d 382 (6th Cir. 2017) ...................................................................................2

*Baker v. Chevron U.S.A., Inc.*,
533 F. App'x 509 (6th Cir. 2013) ...........................................................................18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................2

*BNSF Railway Co. v. Eddy*,
459 P.3d 857 (Mont. 2020)......................................................................................16

*Bradford v. Union Pacific Railroad Co.*,
491 F. Supp. 2d 831 (W.D. Ark. 2007)...............................................................5, 6, 7

*Brown v. County Commissioners of Scioto County*,
622 N.E.2d 1153 (Ohio Ct. App. 1993)...................................................................17

*Brown v. Whirlpool Corp.*,
996 F. Supp. 2d 623 (N.D. Ohio 2014).....................................................................13

*Burlington Northern & Santa Fe Railway Co. v. Doyle*,
186 F.3d 790 (7th Cir. 1999) ....................................................................................8

*Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*,
450 U.S. 311 (1981).................................................................................................3

*CSX Transportation, Inc. v. Public Utililities Commission*,
901 F.2d 497 (6th Cir. 1990) ...................................................................................10

*CSX Transportation, Inc. v. City of Sebree*,
924 F.3d 276 (6th Cir. 2019) ....................................................................................3

*Dartron Corp. v. Uniroyal Chemical Co.*,
893 F. Supp. 730 (N.D. Ohio 1995)..........................................................................15

*Drawl v. Cornicelli*,
  706 N.E.2d 849 (Ohio 1997) .......................................................20

*Duff v. Morgantown Energy Assoc.*,
  187 W. Va. 712 (1992) ...............................................................17

*Elmer v. S.H. Bell Co.*,
  127 F. Supp. 3d 812 (N.D. Ohio 2015)........................................18

*Estate of Barney v. PNC Bank, N.A.*,
  714 F.3d 920 (6th Cir. 2013) ........................................................9

*Farm Bureau General Insurance Co. v. Schneider National Carriers*,
  552 F. Supp. 3d 750 (S.D. Ohio 2021) ........................................12

*Friberg v. Kansas City Southern Railway Co.*,
  267 F.3d 439 (5th Cir. 2001) ........................................................4

*Hirsch v. CSX Transportation, Inc.*,
  2008 U.S. Dist. LEXIS 124211 (N.D. Ohio Oct. 22, 2008) ............12

*In re Behr Dayton Thermal Products Litigation*,
  2022 WL 3328407 (S.D. Ohio Aug. 11, 2022)...............................15

*In re Derailment Cases*,
  416 F.3d 787 (8th Cir. 2005) ........................................................5

*Island Park, LLC v. CSX Transportation*,
  559 F.3d 96 (2d Cir. 2009)............................................................3

*Jackson v. Arka Express, Inc.*,
  2022 WL 1136771 (N.D. Ohio Apr. 18, 2022)...............................14

*Johnson v. CSX Transportation, Inc.*,
  2008 WL 4427211 (W.D. Ky. Sept. 25, 2008)...............................16

*Karpiak v. Russo*,
  676 A.2d 270 (Pa. Super. Ct. 1996)..............................................18

*Killen v. Stryker Spine*,
  2012 WL 4482371 (W.D. Pa. Aug. 21, 2012) .................................9

*Leach v. DeWine*,
  2023 WL 2585484 (N.D. Ohio Mar. 21, 2023) ..............................12

*Mangan v. Landmark 4 LLC*,
  2013 WL 950560 (N.D. Ohio Mar. 11, 2013) ................................16

*Mawa Inc. v. Univar USA Inc.*,
　　2016 WL 2910084 (E.D. Pa. May 19, 2016) ................................................................10

*Maynard v. CSX Transportation, Inc.*,
　　360 F. Supp. 2d 836 (E.D. Ky. 2004) .........................................................................4

*MCI WorldCom Network Services, Inc. v. W.M. Brode Co.*,
　　411 F. Supp. 2d 804 (N.D. Ohio 2006) ......................................................................19

*MD Mall Associates, LLC v. CSX Transportation, Inc.*,
　　715 F.3d 479 (3d Cir. 2013) ......................................................................................7

*Mohat v. Horvath*,
　　2013 WL 5450296 (Ohio Ct. App. Sept. 30, 2013) ...................................................14

*Nickels v. Grand Trunk Western Railroad, Inc.*,
　　560 F.3d 426 (6th Cir. 2009) ....................................................................................5

*Parrish v. JCI Jones Chemicals, Inc.*,
　　2019 WL 1410880 (D. Haw. Mar. 28, 2019) .............................................................10

*Prentice v. National Railroad Passenger Corp.*,
　　2014 WL 3868221 (N.D. Cal. Aug. 6, 2014) .............................................................10

*Preston v. Murty*,
　　512 N.E.2d 1174 (Ohio 1987) ..................................................................................20

*Redland Soccer Club, Inc. v. Department of the Army*,
　　696 A.2d 137 (Pa. 1997) ..........................................................................................19

*Rhodes v. E.I Du Pont de Nemours & Co.*,
　　657 F. Supp. 2d 751 (S.D. W.Va. 2009) ...................................................................18

*Roth v. Norfalco, LLC*,
　　651 F.3d 367 (3rd Cir. 2011) ...................................................................................10

*Rushing v. Kansas City Southern Railway Co.*,
　　194 F. Supp. 2d 493 (S.D. Miss. 2001) .....................................................................4

*Salerno v. City of Niagara Falls*,
　　2020 WL 5814406 (W.D.N.Y. Sept. 30, 2020),
　　*aff'd*, 2021 WL 4592138 (2d Cir. 2021) ..............................................................13, 14

*Smith v. Howard Johnson Co.*,
　　615 N.E.2d 1037 (Ohio 1993) ..................................................................................20

*State ex rel. City of Martinsburg v. Sanders*,
　　632 S.E.2d 914 (W.Va. 2006) ...................................................................................19

*Trimbur v. Norfolk Southern Railway Co.*,
    2015 WL 4755205 (S.D. Ohio Aug. 10, 2015)........................................................8, 10

*Tyrrell v. Norfolk Southern Railway Co.*,
    248 F.3d 517 (6th Cir. 2001) .................................................................................3

*Walczesky, v. Horvitz Co.*,
    269 N.E.2d 844 (Ohio 1971) ...............................................................................16

## STATUTES, RULES, AND REGULATIONS

49 C.F.R.
    § 172........................................................................................................7, 11
    § 173.............................................................................................................11
    § 174.............................................................................................................11
    § 179.............................................................................................................11
    § 180.............................................................................................................11
    § 213..............................................................................................................7
    § 215.........................................................................................................6, 7
    § 240..............................................................................................................7
    § 242..............................................................................................................7
    § 243..............................................................................................................7
    § 271..............................................................................................................9

49 U.S.C.
    § 10501...........................................................................................................3
    § 20106...........................................................................................................5

## OTHER AUTHORITIES

*Restatement (Second) of Torts*
    § 521.............................................................................................................16
    § 520.............................................................................................................16

## INTRODUCTION

Focusing specifically on the allegations in the Complaint, Norfolk Southern moved to dismiss Plaintiffs' claims as preempted and inadequately pled.  Norfolk Southern presented substantial authority preempting claims like Plaintiffs' here—those premised on allegations concerning railroad operations, safety, and hazardous-material transportation.  And Norfolk Southern sought to hold Plaintiffs to settled pleading standards rejecting the bare assertions they make.  Plaintiffs' opposition underscores that their Complaint should be dismissed.

On preemption, Plaintiffs' front-line argument—that post-derailment conduct is not preempted (Opp. 7-8, Dkt. 103)—is misplaced; Norfolk Southern never made that argument.  As for the arguments Norfolk Southern did make, Plaintiffs reveal some common ground:  They do not dispute that the ICCTA, FRSA, and HMTA expansively regulate the conduct at issue and preempt state-law claims based on that conduct.  Nor do they dispute the importance of this preemption regime—to ensure national standards over a patchwork of conflicting state and local laws.  Plaintiffs try to avoid the preclusive effect of these statutes, but their arguments fail.

Seeking to bypass the ICCTA entirely, Plaintiffs claim that only FRSA preemption is implicated because Plaintiffs' claims "involve[] matters of railroad safety."  Opp. 7, 19.  That artful argument would render the ICCTA dead letter.  Plaintiffs fare no better under the FRSA and HMTA.  While accepting that the FRSA applies, Plaintiffs argue both too narrowly, that a federal regulation covers their allegations only if it specifically names the conduct at issue, and too broadly, that any conduct so named is presumptively alleging a regulatory violation.  Finally, Plaintiffs incorrectly argue that the FRSA ousts the HMTA for any safety-related claims.  Their own case law confirms the opposite.

As for the pleading deficiencies, Plaintiffs invoke a long-discarded legal standard, and their problems proceed from there.  They insist that the Court apply the "'no set of facts'"

- 1 -

standard (Opp. 6) that the Supreme Court rejected over a decade ago.  *See, e.g.*, *Bailey v. City of Ann Arbor*, 860 F.3d 382, 388 (6th Cir. 2017) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-562 (2007)).  Plaintiffs then accuse Norfolk Southern of "improperly focus[ing] on … isolated paragraphs" (Opp. 21-22) and declare they have "pleaded extensive facts" (Opp. 2).  But even the most "extensive" allegations provide, at best, conclusory assertions.  For example, to their failure-to-train allegations, Plaintiffs highlight the bare conclusion that Norfolk Southern "fail[ed] to ensure that their agents, servants, employees … were properly and adequately instructed and trained" (Compl. ¶ 232(w), *cited at* Opp. 22)—the same deficient allegation Plaintiffs accuse Norfolk Southern of cherry-picking.

Plaintiffs acknowledge that Norfolk Southern did not own the first car to derail and did not construct the wheel bearing that allegedly overheated.  Plaintiffs acknowledge that Norfolk Southern was required by law to transport vinyl chloride, and that the controlled vent and burn was performed in coordination with government officials to prevent a catastrophic uncontrolled explosion.  As Norfolk Southern has made clear, and underscores again, it is committed to making things right for the people of East Palestine and the surrounding area, including by establishing long-term funds to address concerns about health, water quality, and residential property values.  Nothing here changes that.  But Plaintiffs' Complaint, based on preempted claims and threadbare allegations, is fundamentally deficient and should be dismissed.

## ARGUMENT

I.  **FEDERAL LAW PREEMPTS PLAINTIFFS' NEGLIGENCE, GROSS NEGLIGENCE, NUISANCE, AND STRICT-LIABILITY CLAIMS**

### A.  The ICCTA Preempts Plaintiffs' Negligence And Gross Negligence Claims Concerning Railroad Transportation (Counts 1, 17)

Plaintiffs do not dispute that their claims rely on allegations that Norfolk Southern failed to route the train to avoid populated areas (Compl. ¶¶ 232(y), 407(o)), loaded the train with "too

many railcars," and improperly organized the railcars (*id.* ¶¶ 232(p)-(r), 407(f)-(h)).  Defs.' Mot. to Dismiss and Strike ("Mot.") 8-10 (Dkt. 76-1).  They do not dispute that those allegations concern core railroad operations—routing, length, and organization.  That should end the matter. As state-law claims bearing on railroad operations, these claims are preempted by the ICCTA.

Seeking to avoid this "most pervasive … federal regulatory scheme," which vests exclusive jurisdiction with the Surface Transportation Board ("STB"), *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981), Plaintiffs argue the ICCTA does not apply when "a claim involves railroad *safety*" (Opp. 19-20).  Plaintiffs misunderstand the law, and their cited cases do not help them.  The question is whether the claims are premised on allegations that implicate activities within the exclusive jurisdiction of the STB.  *See, e.g.*, *CSX Transp., Inc. v. City of Sebree*, 924 F.3d 276, 282-283 (6th Cir. 2019). Since the STB has exclusive jurisdiction over the routes and operation of railroads, 49 U.S.C. § 10501(b), claims premised on allegations regarding routing, length, and organization are preempted.  Virtually any aspect of railroad operations can "involve[] safety" at a broad level (Opp. 19).  That does not—and cannot—nullify the exclusive jurisdiction of the STB.

*Tyrrell v. Norfolk Southern Railway Co.*, 248 F.3d 517, 522-23 (6th Cir. 2001), Plaintiffs' principal authority (Opp. 19-20), does not support a contrary position.  There, the court rejected the argument that ICCTA preemption displaced the FRSA's savings clause where a state rail safety law was at issue.  *Tyrrell*, 248 F.3d at 522.  It did not hold, as Plaintiffs suggest, that FRSA preemption displaces the ICCTA whenever railroad safety is purportedly at issue; *Tyrrell* stands for the proposition that neither the ICCTA nor the FRSA should be construed as preclusive of the other.  248 F.3d at 523 ("[T]here is no positive repugnancy between FRSA and the ICCTA's jurisdictional provisions.").  The same goes for *Island Park, LLC v. CSX*

*Transportation*, 559 F.3d 96, 108 (2d Cir. 2009), on which Plaintiffs also rely (Opp. 19).

Where a state-law claim concerns both railroad safety and railroad operations, both ICCTA and FRSA preemption analyses apply.  For example, Plaintiffs allege Norfolk Southern was negligent in not "rout[ing] railcars carrying hazardous materials in such a way as to avoid populated areas in order to minimize the risk of accidental exposure."  Compl. ¶ 232(y).  To the extent this allegation relates to railroad safety, it is preempted by the FRSA.  *See* Mot. 17.  But this claim is also preempted under the ICCTA to the extent that it seeks to regulate the routing of railcars (which it expressly does), as those issues lie within the exclusive jurisdiction of the STB. *See* Mot. 9-10.

Plaintiffs attempt to dismiss *Friberg v. Kansas City Southern Railway Co.*, 267 F.3d 439 (5th Cir. 2001), *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836 (E.D. Ky. 2004), and *Rushing v. Kansas City Southern Railway Co.*, 194 F. Supp. 2d 493 (S.D. Miss. 2001), arguing they "predominantly involve nuisance claims arising out of noise, vibration, or blocked traffic stemming from sidetrack or switching operation or construction."  Opp. 20-21.  Setting aside that *Friberg* involved a negligence claim, this is a distinction without a difference.  The inquiry does not turn on the type of claim, but on whether the claim would have the effect of governing rail operations.  *See, e.g.*, *Maynard*, 360 F. Supp. 2d at 842-843 (claims premised on drainage problems from railroad track preempted as "side tracks are a vital part of CSX's railroad operations").  Nor is it the case (*see* Opp. 20-21) that the claims at issue have only an incidental effect on rail transportation.  Plaintiffs make no effort to explain how enforcing state-law claims premised on routing, train length, and organization will have only an incidental effect on rail transportation.  The authority supporting preemption shows the opposite.  Mot. 8-10.

**B.**     **The FRSA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning Railroad Safety (Counts 1-6, 17)**

Plaintiffs concede that the FRSA applies to their claims, but advance what would be effectively a dismissal-proof argument that does too little to address the case law finding claims like these preempted at the pleadings stage.  On the one hand, Plaintiffs contend, federal regulations do not "substantially subsume" the subject matter forming the basis of their claims where those regulations do not specifically name the conduct as pleaded.  On the other hand, where the regulations *do* specifically name the conduct as pleaded the mere allegation amounts to a violation of the regulation.  Both arguments fail.

**1.**     **Plaintiffs' claims premised on railroad safety are "covered" by FRSA regulations**

Plaintiffs' claims concerning railroad safety are preempted to the extent they are "substantially subsume[d]" by FRSA regulations.  *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 429 (6th Cir. 2009); *see* 49 U.S.C. §§ 20106(a)(2), (b)(1)(C); *accord* Opp. 9.  As Norfolk Southern demonstrated in its opening brief, Plaintiffs' claims for failure to inspect or monitor the rail tracks and cars, failure to train railroad personnel, and failure to properly transport hazardous materials are indeed "substantially subsumed."  Mot. 14-18.

Plaintiffs' response appears to be that, because their allegations do not directly match federal regulations that subsume the subject matter of claims, such claims are not preempted.  That is not the law.  *See, e.g.*, *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005) ("bureaucratic micromanagement" is not necessary to substantially subsume a subject matter under the FRSA); *Bradford v. Union Pac. R.R. Co.*, 491 F. Supp. 2d 831, 837 (W.D. Ark. 2007) (inquiry under the FRSA is whether "a regulatory framework of sufficient weight and breadth exist[s]" that does more than "touch upon" the claim).  Plaintiffs' emphasis on the wayside-defect-detectors allegations (Opp. 9-10) underscores the flaws in their argument.  As Plaintiffs

would have it (*id.*), absent regulations specifically requiring or regulating the use of these detectors, FRSA preemption cannot apply.  But numerous federal regulations cover the field related to inspection of train cars, and these detectors, by Plaintiffs' own allegations, are means by which Norfolk Southern inspects cars.  Mot. 15 (citing Compl. ¶ 116).  Indeed, the FRA, through its *Railroad Freight Car Safety Standards*, expressly mandates the intervals and locations where an inspection of a rail car must take place.  *See, e.g.*, 49 C.F.R. § 215.13 ("At each location where a freight car is placed in a train, the freight car shall be inspected before the train departs.  This inspection may be made before or after the car is placed in the train."), § 215.15 (addressing periodic inspection requirements), § 215.103(h) (addressing defective wheels, including due to overheating), § 215.115 (addressing defective roller bearings).  These regulations are of "sufficient weight and breadth," *Bradford*, 491 F. Supp. 2d at 837, to cover the subject of wayside detectors.

*Tipton v. CSX Transportation, Inc.* is instructive (Mot. 16), and Plaintiffs' attempt to distinguish it fails (Opp. 10).  There, the court concluded that a negligence claim based on allegedly defective detectors was preempted.  2016 WL 11501426, at *11 (E.D. Tenn. July 7, 2016).  The reasoning was clear:  The FRSA has "enacted regulations pertaining to overheated wheels and to defective roller bearings, which the Court finds cover the same subject matter as plaintiffs' allegations … relating to detecting overheated rail car wheel roller bearings.  Plaintiffs' allegations therefore attempt to impose additional duties in areas that are covered by FR[S]A regulations."  *Id.*  Plaintiffs insist (Opp. 10) they do not allege Norfolk Southern was "obligated to operate a system of wayside defect detectors."  But they do just that, and the preempted allegations in *Tipton* and those here are materially the same.  2016 WL 11501426, at *10 ("[P]laintiffs allege that CSX breached its duty of care 'to maintain devices capable of

detecting overheated rail car wheel roller bearings during [train operation]" (alteration in original)); Compl. ¶ 232(l) (alleging a "fail[ure] to utilize appropriate … technology such as 'wayside defector detectors' or 'hot bearing detectors'").

Next, Plaintiffs seek to reclassify their inspection allegations (*e.g.*, Compl. ¶¶ 232(d), (f)) as "lookout" allegations relating to "rules of the road." Opp. 11. But a "lookout" relating to cars in the train is an inspection by another name. The FRSA imposes detailed inspection requirements on Norfolk Southern for track defects (49 C.F.R. § 213.231), car defects (*id.* § 215 *et seq.*), and requires it to "immediately report" fires, derailments, and other hazardous conditions (*id.* § 220.13). Mot. 14-15. These regulations substantially subsume state-law claims, like those advanced here, that relate to looking out for potential defects.[1]

Finally, Plaintiffs claim (Opp. 11-12) that Norfolk Southern cited no regulations that substantially subsume training-related allegations. But as Norfolk Southern explained (Mot. 16-17), the training-related claims are substantially subsumed under at least 10 different regulations under 49 C.F.R. Parts 240 (training and certification requirements, and approval process for engineer training), 242 (training and certification requirements, and approval process for conductor training), 243 (training requirements of safety-related employees and the approval process of the training) and 172 (training requirements for hazmat employees). Otherwise, Plaintiffs focus on two allegations that they claim are not substantially subsumed. Plaintiffs argue that paragraph 232(s)—which alleges that Norfolk Southern failed to adequately staff positions that plan, prepare, coordinate, and oversee transportation of hazardous materials by

---

[1]     Plaintiffs' cited cases compel no different conclusion. *Bradford*, 491 F. Supp. 2d at 838, as Plaintiffs concede, did not address the lookout claims at issue here. *MD Mall Associates, LLC v. CSX Transportation, Inc.*, 715 F.3d 479, 490 (3d Cir. 2013), cites only *Bradford*. And *Diehl v. CSX Transportation, Inc.*, declined to dismiss the plaintiff's lookout claims where, unlike here, the "[d]efendant … cited no authority to support its assertion that this alleged duty is preempted by the FRSA." 349 F. Supp. 3d 487, 504 (W.D. Pa. 2018).

railcar—is not subsumed by the expansive federal regulations covering training of individuals involved in transporting hazardous materials.  Staffing positions to plan, prepare, coordinate, and oversee such transportation necessarily requires and implicates the training of individuals to do such tasks.  And Plaintiffs seek to exempt from preemption paragraph 232(x)—which concerns negligent training—by incorrectly arguing that the expansive training regulations do not specifically cover training for derailments.[2]

### 2. Plaintiffs have not plausibly alleged that Norfolk Southern violated a federal standard of care or an internal rule created pursuant to federal regulation

Plaintiffs discuss at length (Opp. 12-13) that the FRSA does not preempt state-law claims that a party has failed to comply with a federal standard of care established by a regulation or its own rule created pursuant to a regulation or order.  But Norfolk Southern acknowledged this standard.  Mot. 11.  It argued that Plaintiffs fail to allege facts showing Norfolk Southern violated any regulation or rule created pursuant to a regulation or order.  *See id.* 12-13.  Plaintiffs merely allege, "upon information and belief," that Norfolk Southern violated "one or more regulations, including but not limited to" 16 distinct regulations.  Compl. ¶ 237.  They also assert, without elaboration, that Norfolk Southern breached 40 duties but do not cite corresponding regulations or rules created pursuant to a regulation.  *See id*. ¶¶ 232(a)-(nn).

Plaintiffs' principal argument is that this suffices: "Plaintiffs' allegations put Defendants on notice of duties they have violated."  Opp. 13.  Plaintiffs misunderstand their burden.  To start, mere "notice" (*id.*) pleading is insufficient.  *See, e.g.*, *16630 Southfield Ltd. P'ship v.*

---

[2]    Plaintiffs fail in their attempts to distinguish *Trimbur v. Norfolk Southern Railway Co.*, 2015 WL 4755205 (S.D. Ohio Aug. 10, 2015), and *Burlington Northern & Santa Fe Railway Co. v. Doyle*, 186 F.3d 790 (7th Cir. 1999).  In *Trimbur*, the court first found training claims to be substantively subsumed; the witness' testimony—on which Plaintiffs' focus—was an *additional* reason for the court dismissing the claims.  2015 WL 4755205, at *9.  In *Burlington*, which *Trimbur* cites in its holding, the parties did not dispute that the training claims were preempted.

*Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). And contrary to Plaintiffs' submission (Opp. 13-14), preemption does not permit some lesser pleading standard. *See, e.g.*, *Killen v. Stryker Spine*, 2012 WL 4482371, at *7 (W.D. Pa. Aug. 21, 2012). ("[T]o state a plausible claim to avoid … preemption, a plaintiff must plead sufficient facts to state a facially plausible claim that relies on 'more than labels and conclusions.'"); *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 772-773 (E.D. Tenn. 2012) (dismissing class action toxic tort complaint where "plaintiffs allege in a general sense the violation of federal safety standards, [but] … totally fail to provide any factual allegations which would support their allegation of the breach of an applicable federal safety standard"). Plaintiffs' own case states that "'[a] motion to dismiss can be premised on an affirmative defense[,]' provided that 'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" *Estate of Barney v. PNC Bank, N.A.*, 714 F.3d 920, 926 (6th Cir. 2013). This is consistent with Norfolk Southern's arguments on the pleadings.

Plaintiffs' allegations do not support an inference that Norfolk Southern violated regulations or any internal rule created pursuant to a regulation. For the allegations Plaintiffs now contend constitute regulatory violations, Plaintiffs include only bare assertions. *See, e.g.*, Compl. ¶¶ 232(a)-(c), (e), (g), (h)-(k), (m)-(o), (w), (ff), (mm). For example, Plaintiffs allege that Norfolk Southern breached a duty to develop or implement risk reduction procedures (Compl. ¶ 232(h)), which Plaintiffs argue constitutes violation of eight sections of 49 C.F.R. Part 271 (Opp. 15 n.9). Plaintiffs provide no factual support for this allegation, failing to state how or in what ways Norfolk Southern did or did not have any such procedures.

As for internal operating rules, Plaintiffs try to deflect *Tipton*'s clear statement—that "the overwhelming majority of federal courts to address this issue have concluded that a railroad operating rule is only created 'pursuant to' federal law if a specific regulation affirmatively

mandates adoption of the rule," 2017 WL 10398182, at *21—by limiting the case to its posture. This settled legal rule does not turn on fact discovery, but on what Plaintiffs have alleged.  *See Prentice v. Nat'l R.R. Passenger Corp.*, 2014 WL 3868221, at *10 (N.D. Cal. Aug. 6, 2014) ("It is insufficient to allege a violation of Amtrak's own rules without citing to any applicable federal regulation mandating these rules.").  Plaintiffs' fail to cite any regulation requiring adoption of any internal rule they claim was violated.  Mot. 13.

> **C.      The HMTA Preempts Plaintiffs' Negligence, Gross Negligence, Nuisance, And Strict-Liability Claims Concerning The Transportation Of Hazardous Materials (Counts 1-6, 17)**

The HMTA applies to Plaintiffs' claims to the extent they rely on allegations about routing and handling of hazardous materials, reporting of the unintentional release of such materials, and inspection and maintenance of the container used to transport such materials, and to the extent they are not "substantively the same" as what federal law requires.  Mot. 20-21. The parties agree that the FRSA preemption framework applies here.  *Id.* 17 n.6; *see* Opp. 17. But it is not the case, as Plaintiffs suggest (Opp. 17) that the FRSA ousts the HMTA in claims regarding railroad safety.  Plaintiffs' lead case states the opposite: "[T]he proper approach [to preemption] is to reconcile the operation of both statutory schemes with one another rather than holding one completely ousted."  *CSX Transp., Inc. v. Pub. Utils. Comm'n*, 901 F.2d 497, 502 (6th Cir. 1990); *accord Tipton*, 2016 WL 11501426, at *15.[3]

Where a state-law claim concerns both railroad safety and transportation of hazardous materials, both FRSA and HMTA preemption analyses apply.  As Norfolk Southern explained

---

[3]      Plaintiffs' attempts to distinguish cases cited by Norfolk Southern (Opp. 18-19) are similarly misplaced. Alleging regulatory violations does not dispense with HMTA preemption.  And it is unremarkable that in certain cases where only HMTA preemption—and not FRSA preemption—was at issue, the plaintiffs made no allegations of regulatory violations.  *See Roth v. Norfalco, LLC*, 651 F.3d 367, 374-375 (3rd Cir. 2011); *Mawa Inc. v. Univar USA Inc.*, 2016 WL 2910084, at *5-6 (E.D. Pa. May 19, 2016); *Parrish v. JCI Jones Chems., Inc.*, 2019 WL 1410880, at *2-5 (D. Haw. Mar. 28, 2019).  The relevant point is this:  In cases where both FRSA and HMTA preemption were at issue, courts apply both analyses.  *See Trimbur*, 2015 WL 4755205, at *5-8.

(Mot. 20-21), Plaintiffs' claims relating to the transportation of hazardous materials are preempted by the HMTA.  And Plaintiffs' arguments regarding HMTA regulations fail for the same reason they fail under the FRSA.  Plaintiffs argue (Opp. 17) that the "[the railroad's] response to the derailment, and mitigation of the damage from the toxic chemical spill and fire" are not preempted because they are not governed by any regulation, whether issued under the FRSA or the HMTA.  Norfolk Southern has not argued to the contrary.  As for the points actually at issue, Plaintiffs argue that the remaining allegations are exempt from preemption because they allege regulatory violations.  But in their Complaint, Plaintiffs only cite the HMTA for the proposition that vinyl chloride is flammable and cite to Parts 174 and 179 of 49 C.F.R., encompassing "one or more" violations of HMTA regulations.  Compl. ¶¶ 147, 151, 237.  They do not tie the regulations to any plausible factual allegations.  Plaintiffs now cite over 20 alleged regulatory violations in their brief, including under Parts 172, 173, and 180 of 49 C.F.R., but again with no corresponding factual detail.  This does not satisfy their pleading burden.

## II.  PLAINTIFFS FAIL TO PLEAD THEIR CAUSES OF ACTION

The thrust of the Complaint is a derailment occurred, chemicals were released, and therefore Norfolk Southern is liable.  Under Supreme Court precedent, not the rejected case law Plaintiffs cite (Opp. 6), their conclusory allegations are insufficient.

### A.  Plaintiffs' Negligence And Gross Negligence Claims Fail (Counts 1, 17)

#### 1.  Plaintiffs fail to plead breach or resulting injury

Plaintiffs fault Norfolk Southern for relying on "isolated paragraphs" (Opp. 22) and insist their allegations "detail" "extensive facts" (Opp. 2).  The Complaint shows the opposite.

For their failure-to-train allegations (Opp. 22), Plaintiffs highlight the bare conclusions that Norfolk Southern "fail[ed] to ensure that their agents, servants, employees … were … adequately instructed and trained."  *E.g.*, Compl. ¶ 232(w).  Those are the same deficient

allegations that Plaintiffs fault Norfolk Southern for relying on.  *See* Mot. 22 (citing Compl. ¶¶ 232(t)-(x)); *Farm Bureau Gen. Ins. Co. v. Schneider Nat'l Carriers*, 552 F. Supp. 3d 750, 760-761 (S.D. Ohio 2021) (alleging that truckers were not trained was insufficient to plead negligent training).  For their failure-to-inspect allegations, Plaintiffs highlight deficient allegations that Norfolk Southern "deprioritize[d] rail and railcar inspections, maintenance, repairs, and safety devices in favor of increasing … speed and efficiency[.]"  *E.g.*, Compl. ¶ 101, *cited at* Opp. 22; *see Leach v. DeWine*, 2023 WL 2585484, at *6-7 (N.D. Ohio Mar. 21, 2023) (dismissing claims that defendant "refused [to] implement safe practices" as "vague and conclusory").  Plaintiffs also allege that Norfolk Southern, as a result of a "drop in operating costs," "reduc[ed] … spending" for train inspections, among other similar allegations.  Compl. ¶¶ 82, 95, 98, 101, 105-106, *cited at* Opp. 22.  Such generalized allegations relating to reductions in spending resemble the generalized allegations that policymakers created a plan to discriminate, which the Supreme Court found insufficient in *Ashcroft v. Iqbal* itself.  *See* 556 U.S. 662, 679-680 (2009).

Plaintiffs cite two decisions in derailment actions where courts denied motions to dismiss.  *See* Opp. 24-25 (citing *Hirsch v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 124211 (N.D. Ohio Oct. 22, 2008), and *Tipton*, 2016 WL 11501426).  Neither supports Plaintiffs' position.  In *Hirsch*, the railroad "admitted to the first two elements of [p]laintiffs' negligence claim"—that is, duty and breach—and only disputed the element of causation.  2008 U.S. Dist. LEXIS 124211 at *16-17, & n.3.  And in *Tipton*, the plaintiffs linked specific actions, such as a failure to identify the chemical involved in the derailment, a failure to perform inspections on certain dates, and specific mechanical problems, directly to required duties under federal statutes.

2016 WL 11501426 at *18. Plaintiffs have offered no similar allegations here.[4]

Plaintiffs' causation allegations are similarly deficient. Plaintiffs' causation theory is that the "controlled release" led to "a large, fiery explosion that released a plume of thick black smoke forming a mushroom cloud," which spread "30 miles in each direction from the Derailment Site." Opp. 23. This mirrors the deficient allegations resulting in dismissal in *Salerno v. City of Niagara Falls*, 2020 WL 5814406, at *6 (W.D.N.Y. Sept. 30, 2020), *aff'd*, 2021 WL 4592138 (2d Cir. 2021). Plaintiffs attempt to distinguish *Salerno* by arguing they "adequately describe the direction" in which the smoke plume traveled and "how and why" it traveled. Opp. 23 n.18. Plaintiffs ignore their Complaint, which provides no greater detail than the allegations in *Salerno*: "On information and belief, … hazardous substances originated at the Love Canal Landfill site and migrated to Plaintiffs' properties through the storm and sewer system." *Salerno*, 2020 WL 5814406, at *2.

Plaintiffs also rely on *Brown v. Whirlpool Corp*., 996 F. Supp. 2d 623, 637-638 (N.D. Ohio 2014), to argue that alleging "airborne emissions" from a dump site is all that a plaintiff needs to plausibly allege negligence. Opp. 23. This mischaracterizes the allegations in *Brown*. There, the court noted the plaintiffs alleged "the Ohio EPA determined Whirlpool emitted 'unacceptable levels' of benzene—a known carcinogen—and other chemicals," and that "government agencies … confirmed … a cancer cluster in southeast Sandusky County, and one study identified … low probability that the cluster could be explained by chance alone." *Brown*, 996 F. Supp. 2d at 637-638. Plaintiffs' allegations provide a stark contrast.

With respect to harm, Plaintiffs cite their conclusory allegations that individuals "suffered

---

[4] Plaintiffs assert that Norfolk Southern forfeited arguments related to certain duties Plaintiffs invoke because Norfolk Southern "ignor[ed] them." Opp. 22 & n.16 (citing Compl. ¶ 232). In fact, Norfolk Southern argued that the allegations in this paragraph were wholly devoid of factual assertions. *See* Mot. 22-23.

a loss of income and an increased risk of cancer and organ damage from exposure to and inhalation of toxic chemicals."  *E.g.*, Compl. ¶¶ 39, 48, *cited at* Opp. 23-24.  These allegations are like those rejected in *Salerno*.  *See* 2020 WL 5814406 at *6 (alleged injuries connected "generally to 'toxic exposure'" too speculative to survive a motion to dismiss).  And Plaintiffs argue (Opp. 24) that *Tipton* demonstrates that a claim for property damages in a derailment action requires a plaintiff only to plead a possessory interest in the property.  But *Tipton* relied on specific allegations that the EPA cautioned directly that "smoke or fumes may have gotten trapped" in the plaintiffs' homes.  2016 WL 11501426, at *2.

### 2.  Plaintiffs fail to plead negligence per se

Plaintiffs concede (Opp. 25-26), consistent with their cited case law, that regulatory violations cannot constitute negligence per se as a matter of law.  *Jackson v. Arka Express, Inc.*, 2022 WL 1136771, at *3 (N.D. Ohio Apr. 18, 2022), *cited at* Opp. 25.  And since Plaintiffs now have disclaimed any stand-alone claim for negligence per se, their cited case law regarding pleading standards (Opp. 25-26) is irrelevant.  To the extent that Plaintiffs rely on allegations of regulatory violations as the basis for their negligence claims, those allegations are insufficient for the reasons already stated.  *Supra* pp. 8-10; Mot. 25.

### 3.  Plaintiffs fail to plead gross negligence

The negligence pleading defects apply to Plaintiffs' gross negligence claims.  Mot. 25.  And Plaintiffs do not satisfy the additional, heightened elements—failing to point to any plausible factual allegations of "willful and wanton conduct."  *Mohat v. Horvath*, 2013 WL 5450296, at *4 (Ohio Ct. App. Sept. 30, 2013).

Insisting otherwise (Opp. 26), Plaintiffs cite dozens of paragraphs from their Complaint, but none helps them.  *See* Compl. ¶¶ 108-143.  Plaintiffs' allegations fail to connect alleged conduct—let alone identify "specific actionable gross misconduct"—to the spread of chemicals.

- 14 -

Mot. 23-24. Indeed, the conduct that Plaintiffs point to regarding the controlled release supports the conclusion that Norfolk Southern—in coordination with government officials—acted to prevent harm. *See* Compl. ¶¶ 135-138. And Plaintiffs passingly argue Norfolk Southern had "actual knowledge of the risks their conduct posed to the community" (Opp. 26), but provide no facts to support this conclusory statement, or how it would support gross negligence.

### B. Plaintiffs' Strict-Liability Claim Fails (Count 2)

Plaintiffs' strict-liability claim fails for two reasons. *First*, Plaintiffs fail to plausibly allege any conduct by Norfolk Southern constituted an abnormally dangerous activity. *Second*, to the extent they do, such conduct falls within the common carrier exception to strict liability.

#### 1. Plaintiffs fail to plead abnormally dangerous activity

Ohio recognizes only a "limited" set of activities that qualify as "abnormally dangerous," as to trigger strict liability. *In re Behr Dayton Thermal Prods. Litig.*, 2022 WL 3328407, at *10 (S.D. Ohio Aug. 11, 2022). Plaintiffs failed to plead allegations sufficient to show that Norfolk Southern engaged in an abnormally dangerous activity subject to strict liability. Mot. 26-28.

Citing no case law where a railroad's statutorily required transportation of hazardous materials qualified as "an abnormally dangerous activity," Plaintiffs attempt to recast post-derailment mitigation efforts as conduct akin to the intentional use and storage of explosives for blasting and mining. Opp. 27 (citing *Dartron Corp. v. Uniroyal Chem. Co.*, 893 F. Supp. 730, 739 (N.D. Ohio 1995)). This effort fails. *First*, Plaintiffs' cited authority does not support recognizing a broad category of "intentional explosive release" (Opp. 27); to the contrary, their case law recognizes the "limited application of strict liability," *Dartron*, 893 F. Supp. at 739. *Second*, Plaintiffs' own allegations fail to support the argument they offer. With respect to post-derailment conduct, Plaintiffs' strict liability argument rests on their allegation that Norfolk Southern engaged in "abnormally dangerous and/or ultrahazardous activity when they dumped

the vinyl chloride they were transporting and lit it on fire in a residential community."  Compl.

¶ 48.  This bears no resemblance to case law on which Plaintiffs rely, dealing with, for example,

blasting during road construction.  *See, e.g.*, *Walczesky, v. Horvitz Co.*, 269 N.E.2d 844, 845-846

(Ohio 1971).[5]

### 2.     The common carrier exception applies

Plaintiffs assert (Opp. 29) that Ohio courts have not formally adopted the common carrier

exception to strict liability defined in the Restatement (Second) of Torts, Part 521.  This

argument fails.  Plaintiffs do not dispute that Norfolk Southern was required to accept and

transport vinyl chloride as cargo—or that courts have universally found that railroads are entitled

to this exception in similar circumstances.  *See*, *e.g.*, *BNSF Ry. Co. v. Eddy*, 459 P.3d 857, 874

(Mont. 2020).  And Plaintiffs offer no basis to distinguish Ohio from every jurisdiction that has

adopted Part 521 of the Second Restatement—and even acknowledge that the Restatement

counsels adopting it here.  Opp. 29 n.21.[6]

The common carrier exception clearly applies, excepting Norfolk Southern from strict

liability for the transport of hazardous materials.  And there is no merit to Plaintiffs' attempt to

distinguish the controlled release of chemicals from their transportation.  The district court in

*Johnson* rejected this attempt to carve off chemical disposal from transportation.  *Johnson v. CSX*

*Transp., Inc.*, 2008 WL 4427211, at *1-3 (W.D. Ky. Sept. 25, 2008).  Plaintiffs' argument that

mitigation was an independent action undertaken for Norfolk Southern's "own purposes" (Opp.

---

[5]      Of the dozens of allegations Plaintiffs cite in their opposition (Opp. 27), only a handful go to post-derailment mitigation efforts.  And those allegations speak to efforts to prevent "a catastrophic tanker failure and explosion" by using explosives "so as to dump the vinyl chloride … into a trench where it would be lit on fire" and a resulting, unintended "large, fiery explosion" Compl. ¶¶ 137-38.  Again, this disaster-mitigation conduct is categorically distinct from mining and blasting operations at issue in the line of case law Plaintiffs invoke.

[6]      Plaintiffs cite to Ohio cases relying on the Second Restatement to define the elements of strict liability and offer no reason that Ohio courts would be less inclined to accept other aspects of the Restatement's discussion of strict-liability claims.  *See* Opp. 28 (citing discussion of the Restatement (Second) of Torts, § 520 in *Mangan v. Landmark 4 LLC*, 2013 WL 950560 (N.D. Ohio Mar. 11, 2013)).

29-30) suffers from a temporal issue, as in *Johnson*:  Vinyl chloride would not have been present in East Palestine but for Norfolk Southern's federally mandated transportation of these materials.

### C.  Plaintiffs' Statutory, Public, And Private Nuisance Claims Fail (Counts 3-6)

As Plaintiffs acknowledge (Opp. 30), under Ohio and Pennsylvania law private claims of statutory and common law public nuisance require harms distinct from those suffered by the public.[7]  Plaintiffs fail to allege such harms.  Beyond conclusory assertions (Compl. ¶¶ 264, 276, 296, *cited at* Opp. 31), Plaintiffs reference only generalized injuries (Compl. ¶¶ 2-58, *cited at* Opp. 31)—not the "particular harm" required to plead public nuisance.  *See Brown v. Cty. Comm'rs of Scioto Cty.*, 622 N.E.2d 1153, 1160 (Ohio Ct. App. 1993).  Indeed, Plaintiffs' own Complaint works against them.  The generalized harms alleged—loss of income, increased health risk, and contamination of property—appear in near-identical language for all 18 Plaintiffs.  *See, e.g.*, Compl. ¶¶ 4-56.  And Plaintiffs allege that these harms are typical (*id.* ¶ 208) of a putative class of "upwards of 500,000 Class Members" (*id.* ¶ 141).  Such allegations belie the argument that Plaintiffs suffered harms distinct from the public.  *Cf. Brown*, 622 N.E.2d at 1160-1161 (denying dismissal where a single plaintiff described a specific lost sale based on offensive odors from the defendant's plant).

Plaintiffs' private nuisance claims fare no better.  To succeed on a private nuisance claim, Plaintiffs must show that Norfolk Southern's conduct was a non-trespassory invasion of their interest in the private use and enjoyment of their land, and that this invasion was either (a) intentional and unreasonable or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct.  *Brown*, 622 N.E.2d at 1158-59.  Plaintiffs claim Norfolk

---

[7]        The standard is identical to West Virginia law.  *See Duff v. Morgantown Energy Assoc.*, 187 W. Va. 712, 716 n.7 (1992).  Plaintiffs assert that Norfolk Southern waived its argument for dismissal of Plaintiffs' public nuisance claim under West Virginia law.  *See* Opp. 30 n.25.  Not so—Norfolk Southern sought dismissal of all nuisance claims.  Mot. 30.

Southern's "negligent, reckless, or abnormally dangerous conduct" caused the derailment and controlled release. In support, they point generally to their entire Complaint. That does not ameliorate the fact that they alleged no particular facts to support their private nuisance claims and rely on the same conclusory assertions as Plaintiffs' negligence claim.

### D.    Plaintiffs' Trespass Claim Fails (Count 7)

To plead trespass based on airborne particles, Plaintiffs must allege "substantial physical damage" to their property or "substantial interference with their reasonable and foreseeable use" of the property. *Baker v. Chevron U.S.A., Inc.*, 533 F. App'x 509, 523 (6th Cir. 2013); *see* Mot. 33. Plaintiffs' opposition confirms there are no such allegations in the Complaint, as Plaintiffs rely on "potential physical harm" before describing how the Complaint recites elements of a trespass claim. Opp. 34. Plaintiffs' own case law indicates that mere "potential" physical harm is not enough. *See Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 979-980 (6th Cir. 2017) (likelihood of harm to human health may support indirect-trespass claim). Plaintiffs suggest Norfolk Southern incorrectly relies on decisions from the summary judgment context in seeking dismissal, but *Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812 (N.D. Ohio 2015), on which Plaintiffs rely (*see* Opp. 34-35), supports dismissal. There, the plaintiffs cited to multiple OEPA air quality studies and soil samples demonstrating that manganese was in the air and soil. *Elmer*, 127 F. Supp. at 824-825. The district court allowed indirect trespass claims, due to allegations of a soil sample demonstrating the presence of a specific chemical on plaintiffs' land. *Id.* at 825.[8]

---

[8]    Plaintiffs incorrectly contend (Opp. 34 n.28) that Norfolk Southern forfeited dismissal for claims under West Virginia and Pennsylvania law. Norfolk Southern assumed that Ohio law applied unless the Complaint expressly invoked another state's law (Mot. 22 n.9), and Plaintiffs did not invoke any state's law with respect to common law trespass. In any event, West Virginia does not recognize "intangible" trespass via air particle. *See Rhodes v. E.I Du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 772 (S.D. W.Va. 2009). Pennsylvania treats air-particle trespass claims as nuisance suits. To plead trespass by air, Plaintiffs must show "corrosive damage" to their property. *Karpiak v. Russo*, 676 A.2d 270, 271 (Pa. Super. Ct. 1996). Under any standard, Plaintiffs' claim fails.

E.      **Plaintiffs' Trespass-To-Chattels Claim Fails (Count 8)**

Failing to respond to the case law Norfolk Southern cited (Mot. 35), Plaintiffs attempt to re-write the chattels claim to fit their pleadings.  Liability here is limited to situations where action is intentionally directed against the chattel.  *MCI WorldCom Network Servs., Inc. v. W.M. Brode Co.*, 411 F. Supp. 2d 804, 810 (N.D. Ohio 2006).  Plaintiffs make no such allegations. Neither of Plaintiffs' cases address the core pleading deficiency:  Plaintiffs assert the controlled release spread out of Norfolk Southern's control—not that it was intentionally directed to a chattel.  *See* Compl. ¶¶ 138-141 ("the controlled release was anything but controlled.").

F.      **Plaintiffs' Statutory Agricultural Claims Fail (Counts 9-12)**

Plaintiffs do not address the core problem with their claims for destruction of plants and animals.  Plaintiffs have not alleged facts sufficient to infer that Norfolk Southern destroyed any plants or timber, much less that it did so with the requisite intent.  Mot. 36-36.  Plaintiffs' citation to over 150 paragraphs (*see* Opp. 5; Compl. ¶¶ 69-193; 325-60, 402-08) fails to address this deficiency.

G.      **Plaintiffs' Medical-Monitoring Claims Fail (Counts 13-15)**

After initially hedging (Compl. n.13), Plaintiffs concede that medical monitoring is not a cause of action in Ohio and therefore Count 13 should be dismissed.  Opp. 36.  And as for their remaining claims (Counts 14 and 15), Plaintiffs have not satisfied the required elements.

Under Pennsylvania and West Virginia law, a plaintiff must plead more than exposure to hazardous chemicals; the plaintiff must plead exposure *caused by* defendant's negligent conduct. *See Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137, 145-46 (Pa. 1997); *State ex rel. City of Martinsburg v. Sanders*, 632 S.E.2d 914, 918 (W.Va. 2006).  Plaintiffs' claims are entirely premised upon an allegation, made on information and belief, that the smoke and particulate plume "eventually traveled" 30 miles in every direction.  *See* Compl. ¶ 141.  Plaintiffs

- 19 -

do not plausibly allege "exposure greater than normal background levels" to hazardous substances was "caused by Norfolk Southern's negligence," or that they face significantly increased risk of disease "as a proximate result of the exposure."  Mot. 38.

### H.    Plaintiffs' Spoliation Claim Fails (Count 16)

Plaintiffs' Complaint lacks any allegations that Norfolk Southern destroyed evidence in order to disrupt Plaintiffs' case.  *See Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).  Plaintiffs assert that purported "case-critical" video from the cab of Train 32N was destroyed "through Defendants' *automatic* process of recording over surveillance videos."  Opp. 38 (emphasis added).  Plaintiffs then conclude, based on nothing, that "Defendants have willfully destroyed or interfered with evidence."  Compl. ¶ 399.  Plaintiffs fail to allege any facts showing "voluntar[y] and intention[al]" deletion "with the specific intent to do something the law forbids."  *Drawl v. Cornicelli*, 706 N.E.2d 849, 852 (Ohio 1997).

### I.    Plaintiffs' Request For Punitive Damages Fails

Plaintiffs' request for punitive damages should be stricken as they have failed to plead that Norfolk Southern acted with actual malice.  Plaintiffs allege neither (a) "hatred, ill will, or a spirit of revenge" nor (b) "extremely reckless behavior revealing a conscious disregard for a great and obvious harm."  *Preston v. Murty*, 512 N.E.2d 1174, 1175 (Ohio 1987).  Plaintiffs insist that Norfolk Southern had "actual knowledge of the risks their conduct posed to the community" (Opp. 26), yet provide no factual allegations to support this conclusory statement.

### CONCLUSION

The Court should dismiss Plaintiffs' Master Consolidated Class Action Complaint with prejudice and strike Plaintiffs' request for punitive damages.

- 20 -

Dated: July 14, 2023

WILMER CUTLER PICKERING
    HALE AND DORR LLP

/s/ Alan Schoenfeld
ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

DAVINA PUJARI*
CHRIS RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA  94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC  20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

MICHELLE LISZT SANDALS*
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
michelle.sandals@wilmerhale.com

*Pro hac vice

Respectfully submitted.

DICKIE, MCCAMEY &
    CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS, Ohio Bar No. 96529
AARON PONZO*
PAUL ROMAN*
Two PPG Place, Suite 400
Pittsburgh, PA  15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

*Pro hac vice

*Counsel for Defendants*
*Norfolk Southern Corporation and Norfolk Southern Railway Company*

- 21 -

**<u>CERTIFICATE OF LOCAL RULES 7.1 COMPLIANCE</u>**

On July 10, 2023, this Court granted Defendants' Unopposed Motion for Leave to File

Reply Memorandum of 20 Pages in Support of Motion to Dismiss.  I certify that this Reply

Memorandum adheres to the applicable page limit because it does not exceed 20 pages in length.

*/s/ Alan Schoenfeld*
ALAN SCHOENFELD

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

/s/ Alan Schoenfeld
ALAN SCHOENFELD
