IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: EAST PALESTINE | ) | CASE NO. 4:23-cv-00242-BYP |
| TRAIN DERAILMENT | ) | |
| | ) | |
| | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| | ) | |

**STIPULATION FOR DISCOVERY OF PLAINTIFFS'
ELECTRONICALLY STORED INFORMATION ("E-DISCOVERY")**

## I.    INTRODUCTION

The procedures and protocols outlined in this Order (the "Protocol") govern the production of discoverable ESI and hard-copy documents (collectively, "Discoverable Information") by Plaintiffs in the above-captioned action (the "Action").  This Protocol supersedes prior pretrial orders issued in this Action to the extent they are inconsistent with this Protocol's provisions.

## II.    IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI

Sources of Discoverable Information.  Plaintiffs have identified to Defendants a preliminary list of the custodians likely to have unique, relevant, and responsive ESI, as well as a preliminary list of potentially relevant data sources, including custodial, non-custodial, and third-party information.  Plaintiffs and Defendants (collectively, the "Parties") reserve the right to meet and confer to discuss supplementing the initial list of custodians.

## III.    PRESERVATION AND COLLECTION

A.    Not Reasonably Accessible ESI.  The Parties agree that the circumstances of this litigation do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible.  For purposes of this paragraph, the Parties

agree that the following sources of ESI are not reasonably accessible:

      1.     Data remaining from systems no longer in use as of the date of this Protocol that is unintelligible to and inaccessible by any commercially available systems.

      2.     ESI stored in volatile and non-volatile memory (including but not limited to Random Access Memory ("RAM"), Read-only Memory ("ROM"), and cache memory) or in temporary or cache files (including but not limited to internet history, web browser cache, and cookie files), wherever located.

      3.     ESI stored as server, operating system, or network logs.

      4.     Temporary internet files, history, cache, cookies, and the like.

      5.     Encrypted ESI/password-protected files, where the key or password cannot be ascertained without extraordinary efforts.

      6.     ESI affected by ransomware or malware or that otherwise has been corrupted or is otherwise unable to be processed without extraordinary efforts.

      7.     ESI stored on photocopiers, printers, scanners, and fax machines.

      8.     Other file types as agreed to by the Parties.

This Protocol does not prevent any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

      B.    <u>Hyperlinked Content</u>.  If Defendants identify any documents within Plaintiffs' productions that appear to include hyperlinks to content that is not publicly available, Defendants may request that Plaintiffs either produce that content in accord with the production format provisions of this Protocol or direct Defendants to the content's location in an existing production. Plaintiffs shall honor such reasonable and proportional requests within ten business days of receipt.

      C.    <u>Hard-Copy Documents</u>.  Hard-copy documents are to be scanned and produced

electronically as images in the same order in which they are maintained in the ordinary course of business.  The Parties agree to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same document as a single document and to treat documents that clearly appear to be separate documents as separate documents.  For hard-copy documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable; the Parties agree to meet and confer if the Producing Party believes it would not be reasonably practicable to scan such labels and tabs.  Original document orientation (i.e., portrait v. landscape) should be maintained to the extent practicable.

## IV.    PROCESSING AND FILTERING

A.    De-NISTing System Files.  ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.[1]

B.    Time Zones.  Plaintiffs shall process ESI for production in Eastern Standard Time with a daylight savings offset to the extent feasible.

C.    Other Files and File Types Excluded.  Plaintiffs may filter out the following files or file types:

1.    ESI affected by ransomware or malware or that otherwise has been corrupted or is unable to be processed without extraordinary efforts.

2.    Temporary internet files, history, cache, cookies, and the like.

3.    ESI stored as server, operating system, or network logs.

4.    Files that are zero bytes in size (i.e., do not contain content).

5.    Other files or file types as agreed to by the Parties.

---

[1] The current NIST file list is published by the National Software Reference Library (NSRL) and can be found here: https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl.

3

D.    Embedded Documents.  Embedded documents from ESI (e.g., a spreadsheet embedded within a word processing document) will, to the extent possible, be extracted and treated as child documents and related back to their top-level parent documents (e.g., standalone file, email message, etc.).

E.    Deduplication.  The Parties agree that production of documents and ESI globally deduplicated in accordance with the provisions of this ESI Protocol shall constitute production of documents as maintained in the ordinary course of business.  A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions.  No Plaintiff shall be required to conduct manual review to eliminate duplicates, including, but not limited to, hard-copy documents that are exact duplicates of electronic versions.

F.    Password-Protected or Encrypted Files.  If Plaintiffs encounter any password-protected or encrypted documents or ESI during collection or processing that are known by Plaintiffs to contain Discoverable Information or for which the unprotected or unencrypted information available (e.g., file names, storage locations, etc.) suggests on its face that they contain Discoverable Information, Plaintiffs will produce the files at issue and will take reasonable steps to identify and provide the necessary keys or passwords.

G.    The Parties agree to meet and confer in advance of any processing or filtering of ESI, apart from the items listed above, that removes or excludes documents from human review.

**V.    IDENTIFYING THE REVIEW POPULATION**

A.    Search Methodologies. The Parties recognize and agree that each Party may use one or more search methodologies to cull, review, and produce responsive, not-privileged Discoverable Information.  The Parties therefore agree to cooperate in good faith regarding the disclosure and formulation of appropriate search methodology.  The Parties agree to meet and confer regarding any methodologies that remove Discoverable Information from human review and withhold that

Discoverable Information from production (e.g., search terms, technology-assisted review, or other culling mechanisms) and the document sources to which they will be applied, prior to the application of any such methodologies to any ESI source that may contain potentially relevant or responsive ESI.  After meeting and conferring, the Parties may enter into additional agreements or protocols relating to the search methodologies they will use to satisfy their discovery obligations. If the Parties are unable to agree on search methodologies, the Parties shall notify the Court of their unresolved dispute(s) and seek resolution.

      B.      <u>Email Domains and Senders</u>.  The Parties agree to meet and confer about emails from domains and senders typically associated with junk email (e.g., emails related to fantasy football, retailer advertising, or newsletters or alerts from non-industry sources) to the extent a Producing Party wants to exclude such email domains or sender addresses as part of its initial filter of potentially responsive documents.  Prior to the application of such filters, the Producing Party shall propose domains and senders to exclude under this paragraph, and the Parties shall work cooperatively on agreed methods for excluding the same.

      C.      <u>Email Threading</u>.  Due to the importance of the metadata in prior or lesser-included emails contained in whole or in part in a most-inclusive email, and in order to facilitate reasonable evidentiary use of emails, production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails.  No document shall be withheld from production on the basis that it is included in a produced more-inclusive email.  The Producing Party may, at its discretion, elect to review only the most inclusive email thread in determining the responsiveness of the prior or lesser-included emails or for any other internal purpose.

**VI.**    **<u>PRODUCTION FORMAT</u>**

      A.      <u>Rolling Production</u>.  The Parties agree to produce documents and data on a rolling

basis when practicable.  The Parties will communicate with each other about their respective priorities for production and agree to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of information at issue, the relative accessibility of information, efficiencies in the process of search and review, and the additional processing time required for certain types of ESI.

      B.    <u>General Production Format</u>.  Plaintiffs shall produce Discoverable Information in the format specified in this Section VI. Photographs, audio files, and video files will be produced in native format. Messages and other content available only on mobile devices (other than photographs, videos, and audio files) shall be produced as images created at the time of collection using a screen capture function of the mobile device at issue, with each message expanded (to show, e.g., the time at which the message was sent) to the extent possible to an end-user in the relevant messaging platform  Other Discoverable Information (e.g., emails, word documents, spreadsheets, presentations, PDFs, and other ESI contained on personal computers) will be produced in static image format (i.e., TIFF or PDF), accompanied by document-level text files containing searchable text and metadata load files as described below, unless otherwise specified. Within 21 days of receipt of a document production from any Plaintiff, Defendants shall identify any documents within that production for which Defendants believe an alternative production format is proportional under Fed R. Civ. P. 26(b).  Plaintiffs shall honor reasonable and proportional requests for alternative production formats for specific documents.

      C.    <u>Image Formatting</u>. Documents produced as static images (i.e., TIFF or PDF) shall be subject to the following provisions.

            1.    Where a document produced in image format contains color, and that color is crucial for understanding of the document, such images will be produced in color by default, without the need for a specific request by the Receiving Party.  Other images may

be produced in black and white.  Additionally, Plaintiffs shall honor reasonable requests by Defendants to produce in color documents previously produced in black and white.

2. When imaged, all documents shall include and show field codes.

3. Images shall be processed and produced in a manner that maintains and displays (i.e., shall force on) all hidden columns or rows, hidden text or worksheets, speaker or presenter notes, and tracked changes and comments (maintained as last saved).

4. A Plaintiff may elect to produce document otherwise subject to production in image format under this ESI Protocol in native format.[2] Plaintiffs shall accommodate reasonable requests for alternate production formats of documents produced in native format. This provision does not require the production of privileged material and does not alter a Producing Party's ability to withhold or redact privileged information from the types of content listed in this paragraph.

D. <u>Metadata</u>.  No Plaintiff has an obligation to create or manually code metadata that does not exist as part of the original metadata of the document.  The Parties agree to meet and confer to the extent such information cannot be automatically populated with industry standard ESI processing tools.  For documents in image format, Plaintiffs shall provide non-privileged information in the metadata fields attached as Appendix A associated with each document produced in a Concordance-format delimited file with a .DAT file extension.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each document.  When a document is withheld for attorney-client privilege or work product, all metadata for the withheld document is excluded from the .DAT file.

---

[2] For purposes of this Protocol, "native format" or "native file" means the format in which ESI was used and stored by the Producing Party in the ordinary course.

E.  <u>Text Files</u>.  Each document produced in image format under this ESI Protocol shall be accompanied by a text file containing the text for that document.  Each text file shall be named using the Bates Number of the first page of the corresponding production item and the production load file shall contain a path link to the produced text file in the "TEXTLINK" metadata field described in Appendix A.

1.  <u>Unredacted documents</u>. The text of each unredacted ESI item produced in image format shall be extracted directly from the native file to the extent technically possible. OCR will be used to provide text for the following record types that typically do not have text available to extract: hard-copy documents, .JPG, .JPEG, .TIF, .TIFF, and .PDF.

2.  <u>Redacted documents</u>. To the extent that a document is redacted, the text files shall not contain the text of the redacted portions, but shall indicate where the redactions were made, and the text of the Producing Party's redaction label. The Producing Party may use OCR of redacted images to provide text for redacted documents.

F.  <u>ESI Only Readable on Proprietary Software</u>.  To the extent that Plaintiffs identify responsive documents that are only readable on proprietary software, the Parties shall meet and confer to discuss methods for extraction and production, or inspection and copying, of such data. If the Parties are unable to agree on a method for such production, the Parties shall submit any dispute to the Court.

G.  <u>Structured Databases</u>.  To the extent Defendants request Discoverable Information that is stored in a structured or aggregated database, that Discoverable Information will be produced in a data table, .CSV file, Excel file, or other delimited text format, or in reasonably usable standard report formats available in the relevant database software.  Upon review of this Discoverable Information as produced, the Requesting Party may make reasonable, specific

requests that the Producing Party explain any codes, abbreviations, or other information necessary to ensure that the Discoverable Information is reasonably usable.  In the event of such a request, the Producing Party will determine the most reasonable means to provide the information requested.

H.     Social Media.  Plaintiffs shall produce any Discoverable Information from social media sources (e.g., Facebook, Instagram, Twitter, etc.) using the social media platform's native tools for end-users (e.g., Facebook's "Download Your Information" tool, Twitter's "Download Your Twitter Archive" tool, etc.).  For the avoidance of doubt, Plaintiffs shall be entitled to review the output of any social media platform's native export tool for relevance, and to withhold material on the basis of non-responsiveness. Plaintiffs shall also be entitled to redact material contained in a social media platform's output on the basis of non-responsiveness. To the extent a Producing Party is unable to use a relevant platform's native tool, the Parties shall meet and confer to discuss methods for production, or inspection and copying, of such data.  If the Parties are unable to agree on a method for such production, the Parties shall submit any dispute to the Court.

I.     Numbering/Endorsement.  All produced documents will be Bates-numbered as described in this paragraph VI(F) and its sub-paragraphs.  The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

1.     A Producing Party should use a consistent format for the Bates numbers it uses across its productions.  Bates numbers will be created so as to identify the Producing Party, and each Producing Party shall use a consistent prefix and number padding across their respective productions.  Numerical suffixing is permitted for re-productions of documents.

2.     For documents produced in image format, each page will have a unique, sequential Bates number; for other documents (e.g., native files), a single Bates number will be assigned to the document.  A produced document's first or only assigned Bates number

9

will serve as its unique Control ID with which the produced file will be named.

  3. For a document produced in image format, the Bates number will be electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source document.  Should a Bates number or other designation obscure any information originally appearing on the document, the Producing Party will reproduce such document upon reasonable request.

  4. For a document produced in native format such that "burning" a Bates number onto each page is not possible, the document's Bates number shall be affixed to the document by an alternative means, such as to the file name of the produced native document.  The database record for that file shall include a single-page image branded with this Bates number, any confidentiality designation, and the phrase "Document Produced Natively."  The production load file shall contain a path link to the produced native file as specified in the "NATIVELINK" metadata field described in Appendix A.

  5. Where information or materials have been redacted, the Producing Party shall reflect such redaction with a "Redacted" label "burned" onto the document's image in the same area(s) as the redacted information appears.  Failure to comply with this procedure shall not waive any protections. For the avoidance of doubt, this provision is not intended to expand any Party's right to redact material within responsive documents.

  J. <u>Redaction of Confidential Personal Information</u>.  Except where relevant to an issue in this Action (including but not limited to claims, defenses, and damages) and not otherwise protected, Plaintiffs may redact any document or metadata field containing Confidential Personal Information.  For purposes of this Protocol, Confidential Personal Information does not include an individual's name, but does include an individual's personal contact information (e.g., domains of personal email addresses, personal phone numbers, and residential address), social security

number, personal financial information (e.g., bank account numbers, and credit card numbers), and medical or health information (e.g., "Protected Health Information" as defined under the Health Insurance Portability and Accountability Act and its implementing regulations (45 C.F.R. Parts 160-164)).

K.     <u>Entire Document Families</u>.  A Document Family[3] will be produced together and will be consecutively Bates-numbered, with parent documents followed immediately by all child document(s).  Family members that are withheld on the basis of privilege shall be produced as slipsheets indicating the basis of withholding.  The Document Family must be identified using the "BegAttach" and "EndAttach" fields designating the beginning and ending of each Document Family, in accordance with Appendix A.

L.     <u>Production Delivery</u>.  The Producing Party shall produce document images (i.e., TIFF or PDF files), native format files, text files, and load files by secure FTP or other secure electronic transfer system or document repository; or by other mutually agreeable method.  For productions delivered via electronic transfer, the Producing Party shall provide a letter containing the information that would otherwise be on the label. Each production shall be accompanied by an index identifying, at a minimum: (1) the date of the production, (2) the custodians with data in the production and/or the structured data sources that are found within the production, (3) the Bates range of documents in the production. To the extent that a production includes any confidential information protected under any applicable protective order filed with the Court, the label or letter for that production shall indicate as much.  All methods of delivery must be encrypted or, if not possible, at least password-protected; the Producing Party will provide a decryption key or

---

[3] "Document Family" means a group of related documents. A "parent document" is an electronic file that includes, attaches, references, or embeds, at least one other electronic file (a "child document") by means of any kind of attachment or hyperlink. A "Document Family" includes messages (e.g., email or chats) sent in any platform used or controlled by a Plaintiff, that point to a file that is stored elsewhere within any platform used or controlled by that Plaintiff.

password under separate cover at the time of production.

## VII.   **GENERAL PROVISIONS**

A.     <u>Discoverability and Admissibility</u>.  This Protocol does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  Nothing in this Protocol shall be construed to affect the admissibility of any document or data.  All objections, including but not limited to the non-discoverability or inadmissibility of any document or data, are preserved and may be asserted at any time.

B.     <u>Producing Party's Right to Review Own Documents</u>.  This Protocol does not limit a Producing Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

C.     <u>Proportionality</u>.  The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and paper documents in this Action.

D.     <u>Modification</u>.  Any practice or procedure set forth in this Protocol may be modified by written agreement of the Parties.

E.     <u>Dispute Resolution</u>.  The Parties will act in good faith to try and resolve any disputes regarding the issues set forth in this Protocol prior to filing a motion with the Court or otherwise seeking relief.  Regarding all disputes, if the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.


SO AGREED

Dated: July 24, 2023

Respectfully submitted,

/s/ Seth A. Katz
Seth A. Katz (pro hac vice)
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
303-708-0527 (fax)
skatz@burgsimpson.com

M. Elizabeth Graham (pro hac vice)
GRANT & EISENHOFER, P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
303-622-7100 (fax)
egraham@gelaw.com

Jayne Conroy (pro hac vice)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
212-213-5949 (fax)
jconroy@simmonsfirm.com

Michael Morgan (pro hac vice)
MORGAN & MORGAN
20 North Orange Ave., Suite 1600
Orlando, FL 32801
407-420-1414
407-245-3389 (fax)
mmorgan@forthepeople.com

*Plaintiffs Interim Class Counsel and Co-Lead Counsel*

13

WILMER CUTLER PICKERING
   HALE AND DORR LLP

ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

DAVINA PUJARI*
CHRISTOPHER A. RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC 20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

MICHELLE LISZT SANDALS*
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
michelle.sandals@wilmerhale.com

* Pro hac vice

REDGRAVE LLP

 /s/ Jonathan M. Redgrave
JONATHAN M. REDGRAVE*
MONICA MCCARROLL*
4800 Westfields Boulevard, Suite 250
Chantilly, VA 20151
Tel.: (703) 592-1155
Fax: (703) 230-9859
jredgrave@redgravellp.com
mmccarroll@redgravellp.com

DICKIE, MCCAMEY &
   CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS
AARON M. PONZO*
PAUL A. ROMAN, JR.*
Two PPG Place, Suite 400
Pittsburgh, PA 15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

Counsel for Defendants
Norfolk Southern Corporation and Norfolk Southern Railway Company

IT IS SO ORDERED.


_____        _____

 Date                                                                    The Honorable Benita Y. Pearson
                                                                             United States District Judge

## APPENDIX A – METADATA PRODUCTION FIELDS

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| BEGINDOC | First Bates Number associated with document (including prefix) | All |
| ENDDOC | Last Bates Number associated with document (including prefix) | All |
| BEGATTACH | First Bates Number (i.e., BeginDoc) of parent document in the family (including prefix) | All |
| ENDATTACH | Last Bates Number (i.e., EndDoc) of last child in the family (including prefix) | All |
| PAGECOUNT | Number of Bates Numbers associated with document (i.e., BeginDoc to EndDoc) (corresponds to number of pages for documents produced in image format) | All |
| ATTACHMENTCOUNT | Number of attachments; populated for parent email records only | Email |
| CUSTODIAN | Source of document (e.g., individual custodian name, database or archive name, shared area, etc.) | All |
| ALLCUSTODIANS | When global deduplication has been employed, all custodians who are sources of an identical document | All |
| NATIVE TYPE | Type of native file loaded into the system | Email, EFiles |
| FILEEXTENSION | File extension of document | Email, EFiles |
| FILENAME | File name of document | Email, EFiles |
| FILESIZE | Size of the file in bytes | Email, EFiles |
| FILEPATH | File path to native file as it existed in original environment | Email, EFiles |
| ALLFILEPATHS | When global deduplication has been employed, file path to native for sources of an identical document | Email, EFiles |
| DATETIMESENT | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was sent | Email |
| DATETIMERECEIVED | Date (mm/dd/yyyy) and time (hh:mm:ss) the parent email was received | Email |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| DATETIMECREATED | Date (mm/dd/yyyy) and time (hh:mm:ss format) that non-email data was created | EFiles and Attachments |
| DATELASTMODIFIED | Date (mm/dd/yyyy) and time that (hh:mm:ss format) that non-email data was last modified | EFiles and Attachments |
| AUTHOR | Author field where available | EFiles |
| TO | To field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| FROM | From field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CC | CC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| BCC | BCC field extracted from email file types (not populated for attachments unless they are also emails) | Email |
| SUBJECT | Subject line extracted from email file types (not populated for attachments unless they are also emails) | Email |
| CONVERSATION INDEX | Email thread created by the email system | Email |
| DATESTARTED | Start date and time (mm/dd/yyyy hh:mm:ss) for calendar appointments | Email |
| TITLE | Title field where available | EFiles |
| CONFIDENTIALITY | Level of Confidentiality per Protective Order | All |
| REDACTED | Does the document contain redactions (Y/N)? | All |
| REDACTION REASON | Redaction reason designation (will be blank for documents without redactions) | All |
| HASHVALUE | Document-level MD5 or SHA1 hash value | All |
| TIME ZONE | Time zone in which the native file was processed | Email, EFiles |

| FIELD NAME | FIELD DESCRIPTION | DOCUMENT TYPE |
|---|---|---|
| NATIVELINK | Path and filename to produced native file format (*see* Paragraph 4(e) in Appendix A) | Email, EFiles |
| TEXTLINK | Link to text file (*see* Paragraph 3 in Appendix A) | All |
| PRODUCTIONVOLUME | Unique identifier for the production in which the document is contained | All |