**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: EAST PALESTINE TRAIN DERAILMENT**

STEVEN MCKAY, SUSAN SCHEUFELE, KAYLA BAKER, NEELY JACK, DAWN BAUGHMAN, DAVID ANDERSON, JAMES ROSS, JON LUKE AFFELTRANGER, ROSEMARY MOZUCH, CHARLES MOZUCH, GREGORY SWAN, LANCE BECK, CLARISSA COHAN, ROLLERENA AUTO SALES LLC, HAROLD FEEZLE, DALQAN HOLDINGS, LLC, VALLEY VIEW MPH LLC, COMPETITION & LUXURY VEHICLE CLUB OF DARLINGTON, LLC, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, OXY VINYLS, LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, and TRINITY INDUSTRIES LEASING COMPANY,

*Defendants*.

Civil Action No. 4:23-CV-00242-BYP

Hon. Benita Y. Pearson

**GATX CORPORATION'S AND GENERAL AMERICAN MARKS COMPANY'S MOTION TO DISMISS FIRST AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants GATX Corporation ("GATX") and General American Marks Company ("General American"), through their undersigned counsel, hereby move to dismiss certain claims brought by the Plaintiffs. A brief in support of this Motion is attached.

DATED: September 26, 2023

Respectfully submitted,

/s/ *Hariklia Karis*

Joseph A. Castrodale (OH: 0018494)
Meggan A. Louden (OH: 0074215)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Tel.: (216) 363-4500
Fax: (216) 363-4588
jcastrodale@beneschlaw.com
mlouden@beneschlaw.com

Hariklia ("Carrie") Karis (IL: 6229535)
Robert B. Ellis (IL: 6206846)
Jonathan O. Emmanuel (IL: 6329645)
Aaron Stevenson (IL: 6327647)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
hkaris@kirkland.com
rellis@kirkland.com
jon.emmanuel@kirkland.com
aaron.stevenson@kirkland.com

Sydne K. Collier (TX: 24089017)
Ben A. Barnes (TX: 24092085)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
Tel.: (214) 972-1770
Fax: (214) 972-1771
sydne.collier@kirkland.com
ben.barnes@kirkland.com

*Counsel for GATX Corporation and General American Marks Company*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 26, 2023, a copy of the foregoing was served on all parties of record via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Hariklia Karis*
Hariklia ("Carrie") Karis

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: EAST PALESTINE TRAIN DERAILMENT**

STEVEN MCKAY, SUSAN SCHEUFELE, KAYLA BAKER, NEELY JACK, DAWN BAUGHMAN, DAVID ANDERSON, JAMES ROSS, JON LUKE AFFELTRANGER, ROSEMARY MOZUCH, CHARLES MOZUCH, GREGORY SWAN, LANCE BECK, CLARISSA COHAN, ROLLERENA AUTO SALES LLC, HAROLD FEEZLE, DALQAN HOLDINGS, LLC, VALLEY VIEW MPH LLC, COMPETITION & LUXURY VEHICLE CLUB OF DARLINGTON, LLC, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, OXY VINYLS, LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, and TRINITY INDUSTRIES LEASING COMPANY,

*Defendants.*

Civil Action No. 4:23-CV-00242-BYP

Hon. Benita Y. Pearson

**GATX CORPORATION'S AND GENERAL AMERICAN MARKS COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES ..... viii

SUMMARY OF ARGUMENTS PRESENTED ..... ix

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Norfolk Southern Operated and Was Responsible For Train 32N. ..... 2

B. GATX Owned, But Did Not Control, Two Cars in Train 32N: GPLX 75465 and GATX 95098. ..... 2

1. GPLX 75465 – Hopper Railcar ..... 2

2. GATX 95098 – Tank Railcar ..... 3

C. Norfolk Southern's Derailment of Train 32N ..... 4

D. Procedural History ..... 5

E. Plaintiffs' Sparse, Generalized Allegations Against GATX and General American Marks ..... 6

1. Plaintiffs' Allegations Regarding Railcar 23 ..... 6

2. Plaintiffs' Allegations Regarding Railcar 29 ..... 7

ARGUMENT ..... 8

A. Standard of Review ..... 8

B. The Court Should Dismiss Plaintiffs' Negligence and Gross Negligence Claims Against GATX and General American. ..... 8

1. The Federal Railroad Safety Act preempts Plaintiffs' negligence and gross negligence claims. ..... 9

a. Plaintiffs' claims as to Railcar 23 are preempted. ..... 10

b. Plaintiffs' claims as to Railcar 29 are preempted. ..... 12

2. The Complaint includes no facts establishing the breach of any duty owed by GATX or General American as to Railcar 23. ..... 12

3. The Complaint includes no facts establishing causation as to Railcar 29 ........ 15

4. The Complaint does not sufficiently allege gross negligence. ........ 17

C. Plaintiffs' Medical Monitoring Claims Should be Dismissed. ........ 19

1. Ohio law does not recognize a standalone claim for medical monitoring. ........ 19

2. Plaintiffs fail to sufficiently allege facts supporting medical monitoring claims under Pennsylvania and West Virginia law. ........ 20

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almanza v. Navar*,
225 S.W.3d 14 (Tex. App. 2005)....................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8, 22

*Barker v. Naik*,
No. 2:17-cv-04387, 2018 WL 3824376 (S.D. W. Va. Aug. 10, 2018)....................21, 22

*Batton v. Sandusky Cnty., Ohio*,
No. 3:21-cv-1771, 2023 WL 375206 (N.D. Ohio Jan. 24, 2023)....................8

*Bowden v. Frito-Lay, Inc.*,
No. 5:09-cv-00914, 2010 WL 3835222 (S.D. W. Va. Sept. 28, 2010)....................14

*Bower v. Westinghouse Elec. Corp.*,
522 S.E.2d 424 (W. Va. 1999)....................20, 21

*Brown v. Phila. Coll. of Oseteopathic Med.*,
760 A.2d 863 (Pa. Super. Ct. 2000)....................15

*C.C. v. Harrison Cnty. Bd. of Educ.*,
859 S.E.2d 762 (W. Va. 2021)....................13

*Christian v. Wal-Mart Stores E., LP*,
No. 11CA002, 2011 WL 2739645 (Ohio Ct. App. July 13, 2011)....................18

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*,
863 F.3d 474 (6th Cir. 2017)....................8, 15, 16

*City of Cleveland v. Ameriquest Mortg. Secs., Inc.*,
621 F. Supp. 2d 513 (N.D. Ohio 2009)....................15

*Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*,
508 F.3d 327 (6th Cir. 2007)....................3

*Coole v. Cent. Area Recycling*,
893 N.E.2d 303 (Ill. App. Ct. 2008)....................15

*Cosgrove v. Commonwealth Edison Co.*,
734 N.E.2d 155 (Ill. App. Ct. 2000)....................13

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993)....9

*Dakota Girls, LLC v. Phila. Indem. Ins. Co.*,
17 F.4th 645 (6th Cir. 2021)....8

*Day v. NLO*,
851 F. Supp. 869 (S.D. Ohio 1994)....20

*Dodrill v. Young*,
102 S.E. 2d 724 (W. Va. 1958)....17

*Dysart v. Est. of Dysart*,
No. 2009 CA 24, 2010 WL 1138929 (Ohio Ct. App. Mar. 26, 2010)....14

*Elliott v. Carter*,
791 S.E.2d 730 (Va. 2016)....18

*Elmer v. S.H. Bell Co.*,
127 F. Supp. 3d 812 (N.D. Ohio 2015) (Pearson, J.)....19, 20

*Est. of Barney v. PNC Bank, Nat'l Ass'n*,
714 F.3d 920 (6th Cir. 2013)....15

*Est. of Swift by Swift v. Northeastern Hosp.*,
690 A.2d 719 (Pa. Super. Ct. 1997)....13

*First Assembly of God, Inc. v. Tex. Utils. Elec. Co.*,
52 S.W.3d 482 (Tex. App. 2001)....1, 8, 15

*Fisher v. Perron*,
30 F.4th 289 (6th Cir. 2022)....14

*Floering v. Roller*,
No. WD-02-076, 2003 WL 22417127 (Ohio Ct. App. 2003)....14

*Gann v. Anheuser-Busch, Inc.*,
394 S.W.3d 83 (Tex. App. 2012)....13

*Grigsby v. Chao*,
No. 3:05-CV-07054, 2005 WL 1593701 (N.D. Ohio July 6, 2005)....3

*Hall v. Kosta's Night Club*,
No. 15 CA 105, 2016 WL 3881216 (Ohio Ct. App. July 18, 2016)....18

*Hoffman v. United States*,
600 F.2d 590 (6th Cir. 1979)....15

*Howard v. Miami Twp. Fire Div.*, 891 N.E.2d 311 (Ohio 2008) ....................14

*In re Derailment Cases*, 416 F.3d 787 (8th Cir. 2005) ....................10

*In re Scheidmantel*, 868 A.2d 464 (Pa. Super. Ct. 2005) ....................17

*ISCO Indus., Inc. v. Great Am. Ins. Co.*, 148 N.E.3d 1279 (Ohio Ct. App. 2019) ....................13

*Kibler v. Blue Knob Recreation, Inc.*, 184 A.3d 974 (Pa. Super. Ct. 2018) ....................17

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ....................13

*Lee v. Ohio Educ. Ass'n*, 951 F.3d 386 (6th Cir. 2020) ....................8

*Martin v. Lambert*, 8 N.E.3d 1024 (Ohio Ct. App. 2014) ....................14

*McCallister v. Frost*, 849 N.E.2d 69 (Ohio Ct. App. 2006) ....................14

*Navy Fed. Credit Union v. Lentz*, 890 S.E2d 827, 257 (Va. Ct. App. 2023) ....................13

*Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426 (6th Cir. 2009) ....................9, 11, 12

*Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344 (2000) ....................9

*Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137 (Pa. 1997) ....................20, 21

*Resolution Tr. Corp. v. Franz*, 909 F. Supp. 1128 (N.D. Ill. 1995) ....................18

*Robertson v. LeMaster*, 301 S.E.2d 563 (W. Va. 1983) ....................13

*Robinson v. Lafarge N. Am., Inc.*, 183 N.E.3d 1255 (Ohio Ct. App. 2022) ....................13

*Rutecki v. CSX Hotels, Inc.*,
290 F. App'x 537 (4th Cir. 2008) ....................17

*Simmons v. Pacor, Inc.*,
543 Pa. 664 (Pa. 1996) ....................21

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*
955 F. Supp. 2d 452 (E.D. Pa. 2013) ....................22, 23

*Smith v. CSX Transp., Inc.*,
No. 3:13CV2649, 2014 WL 3732622 (N.D. Ohio July 25, 2014) ....................9

*Speedway LLC v. Jarrett*,
889 S.E.2d 21 (W. Va. 2023) ....................13

*Strother v. Hutchinson*,
423 N.E.2d 467 (Ohio 1981) ....................13, 15

*Sugarland Run Homeowners Ass'n v. Halfmann*,
535 S.E.2d 469 (Va. 2000) ....................15

*Thompson Elec., Inc. v. Bank One, Akron, N.A.*,
525 N.E.2d 761 (Ohio 1988) ....................17, 18

*Tipton v. CSX Transp., Inc*,
No. 3:15-CV-311-TAV-CCS, 2016 WL 11501426 (E.D. Tenn. July 7, 2016) ....................11

*Toro v. Fitness Int'l LLC*,
150 A.3d 968 (Pa. Super. Ct. 2016) ....................13

*Webb v. Sessler*,
63 S.E.2d 65 (W. Va. 1950) ....................15

*Wilson v. Brush Wellman, Inc.*,
817 N.E.2d 59 (Ohio 2004) ....................19

**Statutes**

49 U.S.C. § 20101 ....................9

49 U.S.C. § 20106(a)(1) ....................9

49 U.S.C. § 20106(a)(2) ....................9

**Rules**

FED. R. CIV. P. 12(b)(6) ....................8

**Other Authorities**

49 C.F.R. § 179.102 .......... 7, 12

49 C.F.R. § 180.501 .......... 12

49 C.F.R. § 180.507 .......... 12

49 C.F.R. § 180.517 .......... 12

49 C.F.R. § 180.590 .......... 12

49 C.F.R. § 215 .......... 10, 11

## STATEMENT OF THE ISSUES

**ISSUE ONE:** Whether Plaintiffs' negligence and gross negligence claims are barred by the Federal Railroad Safety Act.

**ISSUE TWO:** Whether Plaintiffs' negligence and gross negligence claims must be dismissed for failure to allege duty or causation.

**ISSUE THREE:** Whether Plaintiffs' gross negligence claim must be dismissed for failure to allege a lack of "slight care" by GATX or General American.

**ISSUE FOUR:** Whether Plaintiffs' medical monitoring claims must be dismissed for failure to plead a cause of action under Ohio law or essential elements under West Virginia and Pennsylvania law.

## SUMMARY OF ARGUMENTS PRESENTED

**ISSUE ONE:** Plaintiffs' negligence and gross negligence claims assert that GATX and General American were obligated under state law to inspect and move Railcar 23 and contends documentation issues with regard to Railcar 29. But the FRSA and regulations implemented by the Federal Railroad Administration ("FRA") preempt such claims because such regulations "substantially subsume" the subject matter of both railcar inspection and railcar documentation.

**ISSUE TWO:** Plaintiffs assert negligence and gross negligence claims based on conclusory statements alleging a failure by GATX and General American to inspect and move Railcar 23 and to document certain alleged modifications to Railcar 29. But Plaintiffs assert no non-conclusory facts that support that GATX or General American owed any duty to them to inspect and move Railcar 23 or that the purported documentation issues caused their claimed damages.

**ISSUE THREE:** Plaintiffs' gross negligence claim requires that they allege that GATX and General American acted without even slight care or with reckless disregard toward them. Plaintiffs, however, do not assert any non-conclusory facts that support a lack of slight care or reckless conduct by GATX or General American.

**ISSUE FOUR:** Plaintiffs assert causes of action for medical monitoring under Ohio law, West Virginia law, and Pennsylvania law. Ohio law does not recognize a cause of action for medical monitoring, and therefore it must be dismissed. While West Virginia and Pennsylvania law do recognize causes of action, Plaintiffs fail to plead essential elements—Plaintiffs fail to plead any non-conclusory facts that support any exposure to hazardous chemicals or increased risk of harm that requires unique medical monitoring as a result of GATX's or General American's alleged tortious conduct.

## INTRODUCTION

This case arises from the February 3, 2023 derailment of Norfolk Southern Train 32N in East Palestine, Ohio, and the resulting damage. GATX owned only two of the thirty-eight railcars that derailed, and it leased those railcars—GPLX 75465 ("Railcar 23") and GATX 95098 ("Railcar 29")—to customers years before the accident occurred. GATX did not choose the commodities that the two railcars carried or oversee their loading or transport. Nor did GATX have authority to decide, or make the decision, to "vent and burn" five of Train 32N's railcars carrying stabilized vinyl chloride monomer after the train derailed. In fact, GATX had no connection with the derailment at all except that it owned two railcars on the 149-car train. Plaintiffs nevertheless seek to hold GATX responsible for their unspecified injuries, including those allegedly suffered by "residents, property owners, employees and businesses" as a result of different, unquantified exposures to hazardous materials that they claim the derailment caused.

Each of Plaintiffs' claims fails as a matter of law. ***First***, the Federal Railroad Safety Act ("FRSA") preempts, and therefore bars, Plaintiffs' negligence and gross negligence claims. ***Second***, Plaintiffs' negligence claims also fail because Plaintiffs do not plead any facts to establish duty or causation. ***Third***, Plaintiffs' gross negligence claim independently fails because the Complaint includes no facts establishing that GATX or General American failed to exercise even "slight care," as required to establish gross negligence. ***Fourth***, Plaintiffs' medical monitoring claims fail because, as Plaintiffs concede, "medical monitoring" is not a recognized cause of action under Ohio law. Plaintiffs also fail to plead essential elements of their medical monitoring claims under Pennsylvania and West Virginia law.

For these and the reasons that follow, GATX and General American respectfully request that Plaintiffs' claims against GATX and General American in the First Amended Complaint (the "Complaint") be dismissed with prejudice.

## BACKGROUND

### A. Norfolk Southern Operated and Was Responsible For Train 32N.

Norfolk Southern is a Class 1 freight railroad connecting railroads across 22 states. Compl. ¶ 60. It is a common carrier that, among other things, "accepts hazardous substances for transport." *Id.* ¶ 62. According to the Complaint, Norfolk Southern "operated Norfolk Southern Train 32N and its railcars in their Keystone Division in Pennsylvania, at all relevant times." *Id.* ¶ 63. Plaintiffs further allege that Norfolk Southern is "responsible for inspecting, maintaining, and repairing wayside detectors like 'hot-box' detectors, which alert operators to equipment failures while the train is in operation." *Id.* ¶ 125. Norfolk Southern does not dispute its common carrier status or that it bears the associated duties. Indeed, in its own Third-Party Complaint, Norfolk Southern acknowledges that, as a railroad, it has "been charged with the safe transportation of materials such as crude oil, spent nuclear fuel, and a range of chemicals, among other hazardous materials." Third Pty. Compl. ¶ 14.

### B. GATX Owned, But Did Not Control, Two Cars in Train 32N: GPLX 75465 and GATX 95098.

GATX, by contrast, owns and leases railcars. GATX owned only two of the thirty-eight railcars that derailed: GPLX 75465 and GATX 95098.[1]

#### *1. GPLX 75465 – Hopper Railcar*

GPLX 75465 ("Railcar 23") was a hopper railcar (a railcar that transports loose materials such as grain or coal) that GATX leased to a customer in 2010. That customer used Railcar 23 to

[1] Defendant General American is a GATX subsidiary that owns car marks. Car marks are an identifier—like a license plate—for a railcar. The owner of the car marks does not necessarily own the railcar itself or have responsibilities for the railcar. Here, although General American owned the car marks for GPLX 75465, it does not own the railcar. GATX was the owner and lessor of that railcar.

ship non-hazardous polyethylene pellets on Train 32N. Compl. ¶ 140. The customer, not GATX, directed the commodity, destination, loading, and movement of Railcar 23 until Norfolk Southern accepted it for transport.

*2. GATX 95098 – Tank Railcar*

GATX 95098 ("Railcar 29") was a DOT105J300W tank railcar (a railcar that transports liquid or gaseous materials) leased to Oxy Vinyls LP ("Oxy Vinyls"). *Id.* ¶¶ 76, 79. Railcar 29 was manufactured by Trinity Industries, Inc. in 1991 and approved for service by the AAR Tank Car Committee on February 7, 1992, under certificate number F916110.[2] It was not designated for a specific commodity; the Certificate of Construction notes that Railcar 29 was approved for "propylene oxide and products authorized by DOT Part 173 for which there are no special commodity requirements and nonregulated commodities compatible with this class of car." Stabilized vinyl chloride monomer ("VCM") is a product authorized by DOT Part 173 for which there are no special commodity requirements, and, according to its manufacturer, Railcar 29 was constructed to safely carry VCM.

Like Railcar 23, GATX and General American did not direct, operate or control the commodity or commodities Oxy Vinyls transported using Railcar 29. Nor did GATX direct,

---

[2] Plaintiffs' First Amended Complaint references GATX 95098's "Certificate[] of Approval" and other unspecified "approval, certification and qualification" documentation. *See*, e.g., Compl. ¶¶ 148–50. Documents referenced in the complaint are appropriately considered in a motion to dismiss. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–336 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *Grigsby v. Chao*, No. 3:05CV7054, 2005 WL 1593701, at *2 (N.D. Ohio July 6, 2005) ("Courts may also consider letter decisions of governmental agencies and documents referenced in the plaintiff's complaint even if the documents are not attached as exhibits."). GATX and General American nevertheless reference the documents in this motion solely to place Plaintiffs' allegations in their proper context; the documents are not necessary to grant this motion to dismiss.

control or have involvement in the loading of commodities into the railcar, or in determining the destination or movement of Railcar 29. As Plaintiffs' Complaint alleges, shippers of hazardous substances "are responsible for the safe loading, packaging and inspection of hazardous goods," and shippers are "charged with ensuring that the railcars and equipment they use to transport their materials, including hazardous materials, are compatible with both the certificate of approval issued for the railcar and the nature of the lading." Compl. ¶¶ 130–31. Oxy Vinyls LP was leasing and directing the use of Railcar 29 to ship VCM at the time of the derailment and had been using that railcar to ship VCM for years. *Id.* ¶ 76.

**C. Norfolk Southern's Derailment of Train 32N**

On February 3, 2023, Norfolk Southern operated Train 32N on the Fort Wayne Rail Line. *Id.* ¶ 155. Around 8:54 p.m., the train derailed in East Palestine, Ohio. *See id.* ¶ 159. Thirty-eight railcars derailed, and, according to the Complaint, eleven of the railcars carried hazardous materials, including Ethylene Glycol Monobutyl Ether, Ethylhexyl Acrylate, Butyl Acrylate, Isobutylene, benzene "residue" and VCM. *Id.* ¶ 170. Norfolk Southern acknowledges that it is responsible for the derailment. Third Pty. Compl. at 1–2, ¶¶ 12–21.

Following the derailment, no railcars containing VCM immediately breached or spilled VCM. According to the Complaint, first responders and officials were quickly engaged, and a "Unified Command" was formed that included federal, state, and local officials, as well as Norfolk Southern's Hazmat Team. *See* Compl. ¶¶ 177–88; Third Pty. Compl. ¶¶ 73–74. Neither GATX nor General American participated in these response activities. *Id.* Plaintiffs' Complaint alleges that "one railcar carrying vinyl chloride became a focus of concern when its emergency safety valves malfunctioned, and pressure started building to unsafe levels"—that railcar was *not* Railcar 29. Compl. ¶ 179. The Complaint further alleges that, on February 6, 2023, due to "a drastic temperature change [that] took place within the railcar," "federal, state, and local officials

[concluded] that the only way to avoid a catastrophic tanker failure and explosion was to conduct a 'controlled release' of vinyl chloride in the compromised tanker." *Id.* ¶¶ 181–82. "Although the concern related to only one of the vinyl chloride cars, at 4:30 p.m. on Monday, February 6, 2023, [Norfolk Southern] and/or its contractors intentionally blew holes in, not just the one tanker car of concern, but all five derailed rail cars containing vinyl chloride." *Id.* ¶ 184. Neither GATX nor General American participated in the decision to release VCM or to "vent and burn" railcars 26, 27, 28, 29, and 53 containing VCM. *Id.* ¶¶ 179–84.

**D. Procedural History**

Just days after the derailment, a series of lawsuits were filed against Norfolk Southern arising from the derailment. Ultimately, twenty-two lawsuits were filed, none of which named GATX or General American. Pursuant to the Court's April 5, 2023 Order, Plaintiffs filed a Master Consolidated Class Action Complaint on May 4, 2023 ("Master Complaint"), again naming only Norfolk Southern Corporation and Norfolk Southern Railway Company as defendants. The Master Complaint, purportedly brought on behalf of a disparate class of "residents, property owners, employees, and businesses living, working and/or located" in three different states, asserted seventeen counts against Norfolk Southern. Norfolk Southern filed its motion to dismiss the Master Complaint on June 2, 2023, and that motion is currently pending.

On July 25, 2023, Norfolk Southern filed a third-party complaint against Oxy Vinyls, GATX, General American, and Trinity Industry Leasing Co. ("Trinity"), seeking to shift responsibility for the derailment. Two weeks later, Norfolk Southern and Plaintiffs filed a joint motion seeking leave for Plaintiffs to amend the Master Complaint to add the same new defendants: Oxy Vinyls, GATX, General American, and Trinity.

### E. Plaintiffs' Sparse, Generalized Allegations Against GATX and General American Marks.

Plaintiffs allege in the First Amended Master Complaint that they live, work and/or own businesses in Ohio, Pennsylvania, and West Virginia near the derailment site and very broadly claim to have "suffered damages" as a result of the derailment. *Id.* ¶¶ 2–57. They purport to represent the same extremely broad class of Pennsylvania, Ohio, and West Virginia residents and businesses located within an arbitrarily drawn 30-mile radius around the site of the accident. *See id.* ¶ 188. No plaintiff identifies the specific hazardous substance or substances to which he or she was exposed, however, or the specific exposure or conduct that caused any alleged harm.

The allegations in the First Amended Master Complaint pertaining to GATX and General American are sparse. Plaintiffs allege only very generally, upon "information and belief," that certain issues with Railcars 23 and 29 "in combination with the acts and omissions" of Norfolk Southern, somehow caused their alleged injuries. *Id.* ¶ 294.

#### *1. Plaintiffs' Allegations Regarding Railcar 23*

Plaintiffs' claims against GATX and General American regarding Railcar 23 allege that "[a]s railcar owners responsible for the maintenance of Car 23, General American Marks Company and GATX Corporation, were responsible for ensuring that Car 23 moved at least one car length every six months." *Id.* ¶ 292. Plaintiffs base that allegation not on a federal statute or regulation, but on an excerpt from an undated installation manual issued by a bearing manufacturer, which states "cars, coaches and locomotives equipped with roller bearings that remain stationary should be moved one car length every six months to distribute lubricant over the bearing surfaces." *Id.* ¶ 141. Plaintiffs further allege "[u]pon information and belief" that "Car 23 was twice stationary for longer than six months in the lead up to the derailment of Train 32N." *Id.* ¶ 144. Plaintiffs cite

no FRA regulations requiring car owners to move railcars every six months – because no such regulation exists.

2. *Plaintiffs' Allegations Regarding Railcar 29*

Plaintiffs' allegations regarding Railcar 29 likewise fail to identify any specific federal regulation GATX or General American allegedly violated. Count I(C) of the Complaint alleges, generally, that "Car 29 was fitted with an unapproved pressure relief device ("PRD") and was not specially approved for use with vinyl chloride." *Id.* ¶ 303(e). This allegation not only fails to identify a specific regulatory violation but also conflicts with Railcar 29's Certificate of Construction, which authorizes the railcar to carry "propylene oxide and products authorized in DOT 173 for which there are no special commodity requirements and nonregulated commodities compatible with this class of car." *Certificate of Construction, AAR No. F916110* (December 30, 1991). And to the extent Plaintiffs suggest that Railcar 29 needed "special approval" to carry VCM, they are wrong as a matter of law. Railcar 29 was not designated for a specific commodity. It was authorized to carry materials "for which there are no special commodity requirements." FRA regulations specifically identify the five materials for which there are special commodity requirements, and VCM is *not* a listed material for which special requirements exist. *Id.*; *see also* 49 C.F.R. § 179.102. Equally important, the Complaint does not allege that the alleged documentation issues with Railcar 29 caused the derailment or contributed in any way to the derailment or the resulting decision to vent and burn Railcar 29. Indeed, no Plaintiff specifically alleges that he or she was exposed to vinyl chloride, or that vinyl chloride exposure was the cause of any Plaintiff's alleged injury or damages.

GATX and General American now seek dismissal from the First Amended Complaint, because each of the Plaintiffs' claims against them—Counts I(B), I(C), XIII, XIV, XV, and XVII—fails as a matter of law.

## ARGUMENT

### A. Standard of Review

When a party moves to dismiss under Rule 12(b)(6), the Court should determine whether the Complaint "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In so doing, the Court "disregard[s] bare legal conclusions and 'naked assertions,' affording the presumption of truth only to genuine factual allegations." *Id.* (quoting *Iqbal*, 556 U.S. at 678). The Court also does not "credit a 'threadbare recital of the elements of a cause of action supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Moreover, a plaintiff must "connect specific facts or events with the various causes of action she assert[s]," *Lee v. Ohio Educ. Ass'n,* 951 F.3d 386, 392–393 (6th Cir. 2020), and a court should dismiss a complaint that is devoid of "substantive factual allegations . . . as opposed to generalized allegations against 'all Defendants.'" *E.g.*, *Batton v. Sandusky Cnty., Ohio*, No. 3:21-cv-1771, 2023 WL 375206, at *6 (N.D. Ohio Jan. 24, 2023). In the same vein, courts will dismiss complaints that fail to make specific allegations of causation and instead force the defendants and the Court to "disaggregate from other potential causes" the damages alleged. *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480 (6th Cir. 2017).

### B. The Court Should Dismiss Plaintiffs' Negligence and Gross Negligence Claims Against GATX and General American.

Plaintiffs fail to state a claim for negligence or gross negligence against GATX or General American as a matter of law. *First*, the FRSA preempts Plaintiffs' negligence and gross negligence claims. Plaintiffs assert state law negligence claims based on GATX's and General American's alleged failure to inspect, maintain, or document matters concerning Railcar 23 and Railcar 29. In

doing so, Plaintiffs improperly attempt to impose greater duties on GATX and General American under state law than the FRSA requires, and the FRSA therefore preempts these claims. *Second*, Plaintiffs' negligence and gross negligence claims concerning Railcar 23 fail because Plaintiffs' allegations, taken as true, do not sufficiently allege a duty owed by GATX or General American. *Third*, Plaintiffs' negligence and gross negligence claims concerning Railcar 29 also independently fail because the Complaint contains no non-conclusory allegations establishing how the alleged documentation issues concerning Railcar 29 caused Plaintiffs' alleged injury and damages. Finally, Plaintiffs' gross negligence claim independently fails because the Complaint includes no non-conclusory allegations to establish that either GATX or General American failed to exercise even "slight care" concerning Railcar 23 or Railcar 29.

*1. The Federal Railroad Safety Act preempts Plaintiffs' negligence and gross negligence claims.*

Plaintiffs' negligence and gross negligence claims all fail because the claims are preempted by the FRSA. The FRSA was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101; *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000). The FRSA provides that "[l]aws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). Thus, although a plaintiff may bring a state-law negligence claim for violation of a federal regulation, the FRSA expressly "preempts any state or local law, regulation, or order that is 'an additional or more stringent law, regulation, or order related to railroad safety and security.'" *Smith v. CSX Transp., Inc.*, No. 3:13CV2649, 2014 WL 3732622, at *2 (N.D. Ohio July 25, 2014) (quoting 49 U.S.C. § 20106(a)(2)); *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 432 (6th Cir. 2009). "[T]he regulations have pre-emptive effect . . . if the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S.

658, 664 (1993). And "a regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter." *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005) (finding a negligent inspection claim preempted by the FRA's adoption of regulations for freight car inspections).

FRSA preemption is a two-part inquiry: The Court first asks whether the plaintiff alleges a violation of a federal standard for railroad safety. If so, the claim may proceed. If not, the Court then asks whether a federal standard for railroad safety already "covers" the subject matter of the plaintiff's claim. If so, then the claim is preempted. Applying this two part inquiry, Plaintiffs' negligence claims are preempted.

a. Plaintiffs' claims as to Railcar 23 are preempted.

Plaintiffs' negligence claims as to Railcar 23 are preempted because Plaintiffs do not allege that Railcar 23 violated any federal standard. As relevant here, Plaintiffs' negligence claims pertaining to Railcar 23 center on General American's alleged failure to have "Car 23 moved at least one car length every six months." Compl. ¶¶ 141, 292. Plaintiffs further allege that, because Railcar 23 allegedly was not moved every sixth months, GATX failed to properly inspect, maintain, or replace the wheel bearing. *Id.* ¶¶ 293, 472(ee). The allegations allege that General American and GATX had a duty under state law to inspect Railcar 23's bearings more frequently; but FRA regulations already cover this subject matter and impose no such duty.

Specifically, FRA regulations require *railroads* (not railcar owners) to "designate persons qualified to inspect railroad freight cars for compliance" with Title 49, Part 215 of the Code of Federal Regulations, entitled "Railroad Freight Car Safety Standards." 49 C.F.R. § 215.11(a). Railroads also must, "before the train departs," inspect each freight car "[a]t each location where a freight car is placed in a train" "to determine whether the car is in compliance with [Part 215]." *Id.* § 215.13(a)–(b). Part 215 further describes safety compliance standards for various freight car

components, including roller bearings, and prohibits railroads from "plac[ing] or continu[ing] in service a car" if the railcar's roller bearing "shows signs of having been overheated," or shows evidence of other defects. *Id.* § 215.115(a). Notably, Part 215.115 also requires railroads to inspect and test any roller bearing "whose truck was involved in a derailment" before continuing the affected railcar in service. *Id.* § 215.115(b)(1).

Applying these FRA regulations, the United States District Court for the Eastern District of Tennessee recently held that a materially indistinguishable negligence claim was preempted. *See Tipton v. CSX Transp., Inc*, No. 3:15-CV-311-TAV-CCS, 2016 WL 11501426, at *1 (E.D. Tenn. July 7, 2016). *Tipton* involved a train derailment in Maryville, Tennessee caused by the overheating and failure of a railcar's bearing. *Id.* at *1, *10. The court dismissed plaintiffs' negligence claims against the railcar owner on preemption grounds, holding that FRA regulations concerning the maintenance and inspection of railcars and wheel bearings preempted the plaintiffs' state law claims. *Id.* at *10–11. The court explained that "the FRA has enacted regulations for inspecting railcars before departure" and that the FRA's requirements "cover[ed] the same subject matter as plaintiffs' allegations . . . as they relate to necessary visual inspections of the . . . cars." *Id.* at *11; *see also Nickels*, 560 F.3d at 432–33 (holding that FRSA preempted Federal Employer Liability Act claim based on track ballast size because FRA regulations covered track ballast specifications).

The same reasoning applies here. As in *Tipton,* FRA regulations substantially subsume the subject matter of Plaintiffs' claim, which is based on Plaintiff's assertion that General American had an alleged duty to inspect the car's bearings every six months and move the car if it remained stationary. Compl. ¶¶ 292–93, 472(ee). But as explained above, FRA regulations impose no such duty, despite covering inspection and maintenance standards for wheel bearings. Plaintiffs cannot

through this state law claim impose "an additional or more stringent law, regulation, or order related to railroad safety or security" than the FRSA requires.

b. Plaintiffs' claims as to Railcar 29 are preempted.

Plaintiffs' claims as to Railcar 29 are also preempted. Plaintiffs allege that GATX is responsible "for using only those railcars that are approved for use under applicable federal regulations and industry standards including, but not limited to, 49 C.F.R. §§ 180.501, 180.507, 180.590, and 180.517." *Id.* ¶ 299; *see also id.* ¶¶ 300–01. Plaintiffs then identify two alleged documentation issues with respect to Railcar 29, ostensibly to plead a negligence claim. Plaintiffs allege, generally, that Railcar 29 (1) "was fitted with an unapproved pressure relief device ('PRD')" and (2) "was not specifically approved for use with vinyl chloride." *Id.* ¶¶ 303(e), 472(ff). But Plaintiffs do not identify how these documentation issues violate the cited regulations, or any other regulation. Instead, they simply seek to impose a heighted duty on GATX under state negligence law by asserting that the alleged documentation issues "in combination with the acts and omissions of the Railroad Defendants as set forth herein, directly and proximately caused or contributed to the release of hazardous materials, including vinyl chloride." *Id.* ¶ 304. But any such claim is substantially subsumed by the numerous FRA regulations that address tank car standards, certification, and documentation. *See, e.g.*, 49 C.F.R. §§ 179.102, 173.314, 172.101-02. Plaintiffs cannot, under state negligence law, seek to impose a more stringent standard than the regulations require. *Nickels*, 560 F.3d at 432.

*2. The Complaint includes no facts establishing the breach of any duty owed by GATX or General American as to Railcar 23.*

The Court should also dismiss Plaintiffs' negligence and gross negligence claims concerning Railcar 23 (Counts I(B) and XVII) because Plaintiffs have not alleged any facts to establish that either GATX or General American breached a duty owed to Plaintiffs. To state a

claim for negligence, Plaintiffs must allege facts showing the "existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Strother v. Hutchinson*, 423 N.E.2d 467, 469 (Ohio 1981). Duty "refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Robinson v. Lafarge N. Am., Inc.*, 183 N.E.3d 1255, 1259 (Ohio Ct. App. 2022) (citation omitted). "The existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." *Id.* (citation omitted).[3]

In Count I(B), Plaintiffs allege: "As railcar owners responsible for the maintenance of Car 23, General American Marks Company and GATX Corporation, were responsible for ensuring

[3] A court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Under Ohio choice of law rules, "[w]here no conflict of laws exists, the law of the forum controls." *ISCO Indus., Inc. v. Great Am. Ins. Co.*, 148 N.E.3d 1279, 1283 (Ohio Ct. App. 2019). Here, the Court need not engage in a choice of law analysis at this stage because there is no substantive conflict between under Ohio law and other potentially applicable states' laws as to the relevant pleading standards for the purposes of deciding this motion to dismiss. *See, e.g.*, *Toro v. Fitness Int'l LLC*, 150 A.3d 968, 976–77 (Pa. Super. Ct. 2016) ("A plaintiff must prove four elements to establish negligence by a defendant: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. 'The nature of the duty which is owed in any given situation hinges primarily upon the relationship between the parties at the time of the plaintiff's injury.'" (quoting *Est. of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997))); *Roche v. Ugly Duckling Car Sales, Inc.*, 879 A.2d 785, 790 (Pa. Super. Ct. 2005) ("The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case."); *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762, 771 (W. Va. 2021) ("The plaintiff must prove that the defendant owed the plaintiff some duty of care; that by some act or omission the defendant breached that duty; and that the act or omission proximately caused some injury to the plaintiff that is compensable by damages."); *Speedway LLC v. Jarrett*, 889 S.E.2d 21, 27 (W. Va. 2023) ("In determining whether a duty exists, courts must consider foreseeability of risk and, 'beyond the question of foreseeability, policy considerations underlying the core issue of the scope of the legal system's protection including the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant.'" (quoting *Robertson v. LeMaster*, 301 S.E.2d 563, 568 (W. Va. 1983))); *Cosgrove v. Commonwealth Edison Co.*, 734 N.E.2d 155, 158–59 (Ill. App. Ct. 2000) ("[A] plaintiff must establish the following elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries."); *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012) ("[A] plaintiff must be able to prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach."); *Navy Fed. Credit Union v. Lentz*, 890 S.E2d 827, 257 (Va. Ct. App. 2023) ("All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person.") (citation omitted).

that Car 23 moved at least one car length every sixth months." *Id.* ¶ 292. But Plaintiffs make no factual allegations against GATX or General American that support that either breached any duty owed to them. Instead, Plaintiffs cite a manual stating that railcars equipped with roller bearings "should be moved one car length every six months." Compl. ¶ 141. The manual does not state that railcar *owners* have any such duty, and Plaintiffs do not allege railcar owners who have leased their cars to another entity must locate and take control of the railcars from the lessee every six months—wherever those cars may be—in order to move the railcar. Nor do they allege that GATX or General American had the authority or ability to do so. *Cf. Martin v. Lambert*, 8 N.E.3d 1024, 1036 (Ohio Ct. App. 2014) (property owner could not be held liable for negligence where it did not maintain control of the property but instead leased it to a different possessor). Moreover, that a manual exists does not impose a duty on a railcar owner. *Cf. Floering v. Roller*, No. WD-02-076, 2003 WL 22417127, at *3 (Ohio Ct. App. 2003) (recognizing, under Ohio law, that "while the manual directs that there should not be any obstructions in the clear zone, it does not give rise to a duty to remove all trees in the clear zone"), *abrogated in part on other grounds by Howard v. Miami Twp. Fire Div.*, 891 N.E.2d 311, 315 (Ohio 2008); *Bowden v. Frito-Lay, Inc.*, No. 5:09-cv-00914, 2010 WL 3835222, at *8 (S.D. W. Va. Sept. 28, 2010) (recognizing, under West Virginia law, that a manual in itself "does not 'impose a specifically identifiable duty upon Defendant'"). Because there are no factual allegations that a support a duty owed by either GATX or General American, Plaintiffs' negligence and gross negligence claims fail.[4] *E.g.*, *Fisher v. Perron*, 30 F.4th 289, 300 (6th Cir. 2022) (affirming dismissal of complaint where the "the well-pleaded facts do

[4] Moreover, General American did not own Railcar 23, only GATX did. As General American did not own Railcar 23, Plaintiffs assert no duty owed by it. *Cf. McCallister v. Frost*, 849 N.E.2d 69, 72 (Ohio Ct. App. 2006) (finding electric utility owed no duty to inspect or repair privately owned equipment); *Dysart v. Est. of Dysart*, No. 2009 CA 24, 2010 WL 1138929 (Ohio Ct. App. Mar. 26, 2010) (finding estate owed no duty to plaintiff where it did not own area in which plaintiff was injured).

not permit the court to infer more than the mere possibility of misconduct"); *Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 929 (6th Cir. 2013) (affirming dismissal of claim for "negligent supervision and training" where complaint provided "only conclusory allegations and a recital of the elements of a claim").

3. *The Complaint includes no facts establishing causation as to Railcar 29.*

The Court also should dismiss Plaintiffs negligence and gross negligence claims concerning Railcar 29 (Count I(C) and Count XVII) because the Complaint includes no non-conclusory allegations to support causation. To sufficiently allege negligence, plaintiff must claim that the defendant caused its damages. *Strother*, 423 N.E.2d at 469.[5] But where, as here, "damages are difficult to connect to [defendant's] actions and nearly impossible to disaggregate from other potential causes," the claim cannot stand. *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480 (6th Cir. 2017); *see also City of Cleveland v. Ameriquest Mortg. Secs., Inc.*, 621 F. Supp. 2d 513, 533 (N.D. Ohio 2009) ("The City's allegations fail to demonstrate any direct relationship between its alleged injury and Defendants' conduct. It would be tremendously difficult, if not completely impossible, to determine which of the City's damages are attributable to Defendants' alleged misconduct and not to some absent party."); *Hoffman v. United States*, 600 F.2d 590, 590–91 (6th Cir. 1979) (granting a motion to dismiss where "the sole proximate cause

[5] Again, the Court need not engage in a choice of law analysis at this stage because there is no outcome determinative conflict between Ohio law and other potentially applicable states' laws in terms of plaintiffs' failure to adequately plead causation. *Brown v. Phila. Coll. of Oseteopathic Med.*, 760 A.2d 863, 868 (Pa. Super. Ct. 2000) ("[T]he complainant must demonstrate that the breach was both the proximate cause and the actual cause."); *Webb v. Sessler*, 63 S.E.2d 65, 68 (W. Va. 1950) ("Axiomatic, in the consideration of this case, is the rule prevailing in this jurisdiction that there can be no recovery for negligence unless the negligence charged was the proximate cause of the alleged injury or death."); *First Assembly of God, Inc. v. Tex. Utils. Elec. Co.*, 52 S.W.3d 482, 491 (Tex. App. 2001) ("To establish such a claim, the plaintiff must show the defendant's action or failure to act was a proximate cause of his damages."); *Coole v. Cent. Area Recycling*, 893 N.E.2d 303, 310 (Ill. App. Ct. 2008) (explaining that the purported breach "must have been the direct and proximate cause of the injury before liability will exist"); *Sugarland Run Homeowners Ass'n v. Halfmann*, 535 S.E.2d 469, 472 (Va. 2000) ("The personal representatives had the burden of proving not only that the Association was negligent but also that its negligence was a proximate cause of the accident.").

of this accident was pilot negligence" in matter where plaintiff alleged defendant "negligently issued a license to American Aviation Company").

In *Deutsche Bank*, for example, the City alleged that the defendant caused a public nuisance by failing to maintain its properties if the cost of compliance outweighed the value of resale. 863 F.3d at 476. It further alleged that it had "suffered damage[s] as [a] direct and proximate result" of the nuisances "but supplie[d] no factual allegations to support it." *Id.* at 480. The court concluded these allegations were too speculative and conclusory to support proximate cause at the motion to dismiss stage because "[t]he failure to tether the damages to nuisance-related problems . . . prevents us from assessing the 'directness' of the relationship between the two." *Id.*

Like the complaint in *Deustche Bank*, Plaintiffs' negligence claims regarding Railcar 29 fail to allege a causal link between GATX and Plaintiffs' claimed injuries. Plaintiffs allege that "GATX['s] . . . failures to ensure [its] Cars were approved, certified and/or compatible with the use of vinyl chloride . . . directly and proximately caused or contributed to the release of hazardous materials" and:

> As a direct and proximate result of Defendant[] . . . GATX['s] . . . negligence, in combination with the acts and omissions of the Railroad Defendants as set forth herein, Plaintiffs and the Class Members presently suffer, and will continue to suffer, real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, loss of use and enjoyment, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

Compl. ¶ 304–05. But Plaintiffs offer no facts to support these boilerplate assertions.

As stated, Plaintiffs identify two alleged documentation issues with respect to Railcar 29: Railcar 29 (1) "was fitted with an unapproved pressure relief device ('PRD')" and (2) "was not specifically approved for use with vinyl chloride." *Id.* ¶¶ 303(e), 472(ff). Even accepting these allegations as true (they are not), Plaintiffs fail to state a claim because the Complaint includes no

allegations indicating how the alleged "discrepancies" caused the derailment or contributed to any injury and resulting damages.

Specifically, Plaintiffs do not allege that the derailment occurred due to alleged documentation issues with Railcar 29 in any fashion. Nor does the Complaint allege that the decision to vent and burn the VCM tank cars was somehow driven by the alleged documentation issues with respect to Railcar 29. The Complaint's allegation that Railcar 29 used aluminum housing is equally insufficient. *Id.* ¶ 152. Plaintiffs do not suggest that the alleged use of an aluminum housing violated any federal regulation; nor do they contend that the use of aluminum housing on Railcar 29 caused the derailment or the vent and burn. Indeed, to the contrary, Plaintiffs concede that there were "concern[s] related to only one of the vinyl chloride cars" and that railcar was not Railcar 29. Compl. ¶ 184. The only causation-related allegation discussing GATX states that "[a]s a direct and proximate result of Defendant[] . . . GATX['s] negligence," Plaintiffs have been injured. *Id.* ¶ 305. As *Deustche Bank* makes clear, such conclusory allegations do not suffice.

*4. The Complaint does not sufficiently allege gross negligence.*

The Court also should dismiss Plaintiffs' gross negligence claims for an independent reason: the Plaintiffs do not allege a lack of slight care of reckless disregard by GATX or General American.[6] *Thompson Elec., Inc. v. Bank One, Akron, N.A.*, 525 N.E.2d 761, 768 (Ohio 1988).

[6] While there are differences for gross negligence standards between Ohio law and the law of other potentially applicable states, the Court need not determine the applicable law at this stage, as Plaintiffs fail to meet the necessary pleading standards under potentially applicable states' laws.. *See, also*, *Kibler v. Blue Knob Recreation, Inc.*, 184 A.3d 974, 984–85 (Pa. Super. Ct. 2018) ("Gross negligence may be deemed to be a lack of slight diligence or care compromising a conscious, voluntary act or omission in 'reckless disregard' of a legal duty and the consequences to another party" (quoting *In re Scheidmantel*, 868 A.2d 464, 485–86 (Pa. Super. Ct. 2005))); *Rutecki v. CSX Hotels, Inc.*, 290 F. App'x 537, 542–43 (4th Cir. 2008) ("While the West Virginia Supreme Court of Appeals has never provided its own definition of gross negligence, it has interpreted Virginia law to define gross negligence as the 'degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.'" (quoting *Dodrill v. Young*, 102 S.E. 2d 724, 730 (W. Va. 1958))); *Almanza v. Navar*, 225 S.W.3d 14, 22 (Tex. App. 2005) ("Gross negligence includes two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.");

The Complaint includes no non-conclusory allegations establishing that GATX or General American failed to exercise even "slight care," as required to state a claim for gross negligence. Gross negligence is the "failure to exercise any or very slight care," or in other words, "failure to exercise even that care which a careless person would use." *E.g.*, *Thompson*, 525 N.E.2d at 768; *Christian v. Wal-Mart Stores E., LP*, No. 11CA002, 2011 WL 2739645, at *4–5 (Ohio Ct. App. July 13, 2011) (reversing a finding of gross negligence where defendant had marked a crosswalk such that "slight care" was shown, even though it did not meet popular design methods); *Hall v. Kosta's Night Club*, No. 15 CA 105, 2016 WL 3881216, at *3 (Ohio Ct. App. July 18, 2016) (affirming a finding of no gross negligence where bar security allowed patron to stay despite his verbal altercations, ultimately resulting in patron shooting plaintiff decedent).

Plaintiffs do not allege any facts that suggest GATX or General American acted with reckless disregard or failed to exercise even slight care. Plaintiffs allege that GATX and General American were grossly negligent with regard to both Railcar 23 and Railcar 29, incorporating their same insufficient allegations that support Counts I(B) and I(C) respectively. *See* Compl. ¶¶ 472(ee)–(ff). Setting aside that Plaintiffs do not even satisfy the negligence standard for those counts—Plaintiffs certainly do not satisfy the gross negligence standard.

As to Railcar 23, Plaintiffs acknowledge that Railcar 23 was accepted for shipment on February 1, 2023 by Norfolk Southern and placed on a Norfolk Southern rail line that had its own hot-box detectors and surveillance equipment. *Id.* ¶¶ 125, 141, 161. Plaintiffs acknowledge that shippers are "charged with ensuring that the railcars and equipment they use to transport their materials . . . are compatible with both the certificate of approval issued for the railcar and the

*Resolution Tr. Corp. v. Franz*, 909 F. Supp. 1128, 1140–41 (N.D. Ill. 1995) (explaining Illinois law "defines gross negligence as recklessness"); *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) ("[A] claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care.").

nature of the lading." *Id.* ¶ 131. Further, Plaintiffs do not allege any deviations from federal regulations or controls for Railcar 23. Given the volume of checks and controls that Plaintiffs themselves identify, and lack of any actual federal violation by GATX, it cannot be said that GATX acted without even slight care.

As to Railcar 29, Plaintiffs assert just two paperwork discrepancies between the railcar's paperwork and its parts. Even accepting the allegations as true, Plaintiffs do not assert any issue with the pressure relief device itself or Railcar 29's ability to hold and transport vinyl chloride. Indeed, as Plaintiffs acknowledge, there were no mechanical issues with Railcar 29. *Id.* ¶ 184. Because Plaintiffs assert no facts that support their bare allegations that neither GATX nor General American acted without any care, Count XVII must be dismissed.

**C. Plaintiffs' Medical Monitoring Claims Should be Dismissed.**

Plaintiffs' medical monitoring claims against GATX and General American under Ohio, Pennsylvania, and West Virginia law also should be dismissed. First, there is no claim for medical monitoring under Ohio law. Second, the Complaint lacks sufficient allegations to establish Plaintiffs' entitlement to a medical monitoring remedy under Pennsylvania or West Virginia law.

*1. Ohio law does not recognize a standalone claim for medical monitoring.*

Through Count XIII, Plaintiffs purport to bring a standalone claim for medical monitoring under Ohio law. However, as Plaintiffs concede, "medical monitoring is not a cause of action" under Ohio law. *Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812, 825 (N.D. Ohio 2015) (Pearson, J.) (citing *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 63 (Ohio 2004)); *see also* Compl. at 93 n.13 ("Plaintiffs acknowledge that under Ohio law, medical monitoring might not be recognized as a stand-[alone] cause of action."). Instead, as this Court recognized in *Elmer*, medical monitoring is merely "a form of damages for an underlying tort claim" and "may be 'a compensable item of damage when liability is established under traditional tort theories of recovery.'" *Elmer*, 127 F.

Supp. 3d at 825 (quoting *Day v. NLO*, 851 F. Supp. 869, 880 (S.D. Ohio 1994)). For these reasons, this Court dismissed the plaintiffs' standalone medical monitoring claim in *Elmer*, and it should do the same here.

*2. Plaintiffs fail to sufficiently allege facts supporting medical monitoring claims under Pennsylvania and West Virginia law.*

The Court also should dismiss Plaintiffs' medical monitoring claim under Pennsylvania and Western Virginia law because the Complaint lacks sufficient facts to prevent dismissal. To prevail on a medical monitoring claim under Pennsylvania law, a plaintiff must prove:

> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Redland Soccer Club, Inc. v. Dep't of the Army*, 696 A.2d 137, 145–46 (Pa. 1997). Similarly, to prevail on a medical monitoring claim under West Virginia law, a plaintiff must prove that:

> (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible.

*Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432–33 (W. Va. 1999).

As explained above, Plaintiffs fail to state a claim for either negligence or gross negligence against GATX or General American. Consequently, Plaintiffs also fail to state a medical monitoring claim under Pennsylvania or West Virginia law because Plaintiffs must prove a

predicate tort to prevail on either claim. Without a viable negligence claim, Plaintiffs cannot satisfy the elements of medical monitoring, and their claims fail as a matter of law.

Plaintiffs medical monitoring claims also fail because they are supported by only conclusory and speculative allegations. Specifically, Plaintiffs generally allege that they and the putative class members "will [] suffer a significantly increased risk of serious injury and diseases as alleged herein, including liver disease such as liver cancer and angiosarcoma of the liver, cancers such as brain cancer and leukemia, lung damage, Raynaud's disease, acro-osteolysis, and reproductive damage." Compl. ¶ 266. But Plaintiffs do not detail the degree of exposure needed to increase the risk of contracting one of these diseases. Nor do Plaintiffs allege any non-conclusory facts establishing a causal connection between exposure to VCM and the diseases identified in the Complaint. These boilerplate allegations do not suffice. *See Redland Soccer Club, Inc*., 696 A.2d at 145 (explaining that, while plaintiffs could recover medical monitoring for "asbestos-related asymptomatic pleural thickening," "damages for increased risk and fear of cancer were too speculative to be recoverable where cancer was not present" (citing *Simmons v. Pacor, Inc.*, 543 Pa. 664 (Pa. 1996))); *Bower*, 206 W. Va. At 142 (noting that plaintiff must demonstrate a "significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure" to recover medical monitoring damages).

Federal courts in West Virginia and Pennsylvania alike have dismissed claims for medical monitoring where, as here, plaintiffs assert merely conclusory allegations regarding exposure and risk. In *Barker v. Naik*, No. 2:17-cv-04387, 2018 WL 3824376, at *1 (S.D. W. Va. Aug. 10, 2018), for example, plaintiffs brought a putative class action complaint for medical monitoring, among other things, on behalf of all owners and renters within 1.5 miles of the property. *Id.* Specifically, they alleged the fire "released smoke, soot, pollutants, air contaminants, and noxious orders," *id.*,

which caused plaintiffs to be "significantly exposed to proven hazardous substances through the tortious conduct of the Defendants" and those exposures caused plaintiffs to "have or will have a significantly increased risk of contracting one of those, including but not limited to cancer." *Id.* at *5 (citation omitted). The court dismissed the claim, explaining that plaintiffs "fail to allege any facts in support of [the medical monitoring] elements, only making conclusory statements which are insufficient to sustain this claim" and that such "conclusory allegations do not even come close to sufficiently alleging the appropriate facts as required under the dictates of *Twombly* and *Iqbal*." *Id.*

Similarly, in *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, plaintiffs brought a class action against manufacturers of a home insulation known as spray polyurethane foam. 955 F. Supp. 2d 452, 455 (E.D. Pa. 2013). Plaintiffs alleged that the foam was a comprised of "highly toxic compounds" and "remains toxic" after installation. *Id.* at 455–56. They further alleged that exposure to the foam resulted in "personal injuries resulting in eye irritations, sore throats and cough, nausea, fatigue, shortness of breath, and/or neurological harm" and caused class members to develop "a significantly increased risk of contracting a serious latent disease." *Id.* at 455, 465. The court held the allegations were insufficient to support a medical monitoring claim, and dismissed it. *Id.* at 464–65. It explained, "[p]laintiffs have failed to identify either a serious latent disease which requires monitoring or a medical monitoring procedure suitable in this case. The Court thus concludes that plaintiffs have failed to state a claim for medical monitoring." *Id.* at 465.

Here, Plaintiffs do not allege any non-conclusory facts regarding what the chemicals they were individually exposed to, what diseases that exposure results in, and what medical monitoring procedures would assist them. Identical to the plaintiffs in *Barker*, Plaintiffs assert a laundry list

of possible exposures: "significant amounts of vinyl chloride, butyl acrylate, benzene residue, other contaminants as alleged, and byproducts including but not limited to volatiles, semi-volatiles, dioxins, and phosgene at levels that are far higher than normal background levels." Compl. ¶ 447. Then, they allege "[a]s a direct and proximate result of their exposure to these toxic substances . . . Plaintiffs and Class Members have a significantly increased risk of developing diseases and cancer," providing example diseases such as "but not limited to[,] liver cancer, brain cancer, angiosarcoma of the liver, Raynaud's disease, and acro-osteolysis." *Id.* ¶ 450. They do not, however, identify what exposures Plaintiffs suffered, how such exposures occurred, or the injuries that require monitoring.

Further, as in *Slemmer*, Plaintiffs do not identify what medical monitoring procedures would assist them in monitoring for the "increased risk of developing diseases" or how such procedures are different from those normally recommended. Instead, Plaintiffs merely allege that there are such procedures and that those procedures are different from those normally recommended. *Id.* ¶ 453. These conclusory allegations are a far cry from the specific facts necessary to support a claim again GATX and General American. The Court should dismiss Plaintiffs' medical monitoring claims (Counts XIV and XV) because Plaintiffs assert no non-conclusory facts supporting their argument that, as direct or proximate result of GATX and General American, they had significant exposure to hazardous materials and that the exposure was the proximate cause of an increased risk of disease.

## CONCLUSION

Plaintiffs have failed to allege facts in support of their claims against GATX and General American in Counts I(B), I(C), XIII, XIV, XV, and XVII. Accordingly, the Court should dismiss those claims against GATX and General American.

DATED: September 26, 2023

Respectfully submitted,

/s/ *Hariklia Karis*

Joseph A. Castrodale (OH: 0018494)
Meggan A. Louden (OH: 0074215)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Tel.: (216) 363-4500
Fax: (216) 363-4588
jcastrodale@beneschlaw.com
mlouden@beneschlaw.com

Hariklia ("Carrie") Karis (IL: 6229535)
Robert B. Ellis (IL: 6206846)
Jonathan O. Emmanuel (IL: 6329645)
Aaron Stevenson (IL: 6327647)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
hkaris@kirkland.com
rellis@kirkland.com
jon.emmanuel@kirkland.com
aaron.stevenson@kirkland.com

Sydne K. Collier (TX: 24089017)
Ben A. Barnes (TX: 24092085)
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, Texas 75205
Tel.: (214) 972-1770
Fax: (214) 972-1771
sydne.collier@kirkland.com
ben.barnes@kirkland.com

*Counsel for GATX Corporation and General American Marks Company*

**CERTIFICATE OF LOCAL RULE 7.1 COMPLIANCE**

I certify that this Memorandum adheres to the page limitations set forth in Local Rule 7.1(f) for mass-tort cases because it does not exceed 40 pages in length. *See* Dkt. 98 (June 28, 2023).

/s/ *Hariklia Karis*
Hariklia ("Carrie") Karis

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 26, 2023, a copy of the foregoing was served on all parties of record via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Hariklia Karis*
Hariklia ("Carrie") Karis