## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT**<br><br>STEVEN MCKAY, SUSAN SCHEUFELE, KAYLA BAKER, BRENDA WILLIAMS, DAWN BAUGHMAN, DAVID ANDERSON, JAMES ROSS, JON LUKE AFFELTRANGER, ROSEMARY MOZUCH, CHARLES MOZUCH, GREGORY SWAN, LANCE BECK, CLARISSA COHAN, ROLLERENA AUTO SALES LLC, HAROLD FEEZLE, DALQAN HOLDINGS, LLC, VALLEY VIEW MPH LLC, COMPETITION & LUXURY VEHICLE CLUB OF HARLINGTON, LLC, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br> v.<br><br>NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>    *Defendants/Third-Party Plaintiffs*,<br><br> v.<br><br>OXYVINYLS LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, TRINITY INDUSTRIES LEASING COMPANY,<br><br>    *Third-Party Defendants*. | Case No.  4:23-CV-00242-BYP<br><br>JUDGE BENITA Y. PEARSON |

## NORFOLK SOUTHERN RAILWAY COMPANY AND NORFOLK SOUTHERN CORPORATION'S OPPOSITION TO THIRD-PARTY DEFENDANTS GATX CORPORATION AND GENERAL AMERICAN MARKS COMPANY'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT ........................... 2

    A.    The February 3, 2023 Derailment Of Train 32N ........................ 2

    B.    GAMC Improperly Maintained Car 23 ..................................... 4

    C.    GATX Did Not Comply With Federal Regulations Regarding Car 29 ............................................................................................... 5

    D.    Derailment Response ............................................................... 6

    E.    Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment ....................... 7

ARGUMENT ...................................................................................................... 8

    I.    Standard of Review ................................................................. 8

    II.    Norfolk Southern Properly Seeks Contribution Only For GATX And GAMC's Proportionate Share Of Any Damages Awarded To First-Party Plaintiffs ......................................................... 8

    III.    Norfolk Southern Adequately Pled Causation Against GATX ........................... 10

    IV.    Any Factual Dispute Concerning The Ownership Of Railcar 23 Is Not Properly Raised On A Motion To Dismiss ........................ 15

    V.    The Federal Railroad Safety Act Does Not Preempt Counts 3 And 4 ................. 17

CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*City of Cincinnati v. Deutsche Bank National Trust Co.*,
    863 F.3d 474 (6th Cir. 2017) ...............................................14

*City of Cleveland v. Ameriquest Mortgage Securities, Inc.*,
    615 F.3d 496 (6th Cir. 2010) ..............................................14

*City of Cleveland v. Ameriquest Mortgage Securities Inc.*,
    621 F. Supp. 2d 513 (N.D. Ohio 2009)...................................14

*Commodigy OG Vegas Holdings LLC v. ADM Labs*,
    417 F. Supp. 3d 912 (N.D. Ohio 2019)...................................16

*Continental Casualty Co. v. Equity Industrial Maple Heights, LLC*,
    2016 WL 2927847 (N.D. Ohio May 19, 2016).....................8, 15, 16

*Correnti v. City of Cleveland*,
    2022 WL 17176823 (N.D. Ohio Nov. 21, 2022) .......................8

*Corrigan v. United States Steel Corp.*,
    478 F.3d 718 (6th Cir. 2007) ..............................................16

*Crawford v. Geiger*,
    996 F. Supp. 2d 603 (N.D. Ohio 2014)...................................16

*CSX Transportation, Inc. v. Easterwood*,
    507 U.S. 658 (1993)..........................................................18

*Hardwick v. 3M Co.*,
    2019 WL 4757134 (S.D. Ohio Sept. 30, 2019) .......................10

*Hoffman v. United States*,
    600 F.2d 590 (6th Cir. 1979) ..............................................15

*In re DeLorean Motor Co.*,
    991 F.2d 1236 (6th Cir. 1993) ............................................15

*In re National Prescription Opiate Litigation*,
    440 F. Supp. 3d 773 (N.D. Ohio 2020)...............................10, 11

*Interstate Safety & Service Co. v. City of Cleveland*,
    2011 WL 5873108 (N.D. Ohio Nov. 18, 2011) .......................15

- iii -

*Smith v. CSX Transportation, Inc.*,
    2014 WL 3732622 (N.D. Ohio July 25, 2014) ........................................................17, 18

*Taylor v. Webster*,
    12 Ohio St.2d 53, 231 N.E.2d 870 (1967) ........................................................10

*Tipton v. CSX Transportation, Inc.*,
    2016 WL 11501426 (E.D. Tenn. July 7, 2016) ................................................13, 19, 20

## DOCKETED CASES

*Ohio v. Norfolk Southern Railway Co.*,
    No. 4:23-cv-517-JRA (N.D. Ohio) ........................................................7

*Tipton v. CSX Transportation, Inc.*,
    No. 3:15-cv-00311-TAV-CCS (E.D. Tenn.) ................................................13

*United States v. Norfolk Southern Railway Co.*,
    No. 4:23-cv-675-JRA (N.D. Ohio) ........................................................7

## STATUTES, RULES, AND REGULATIONS

49 C.F.R.
    § 179.3.................................................................................5, 11
    § 179.6.................................................................................5, 11
    § 180.501...............................................................................5
    § 180.507.............................................................................5, 11
    § 180.517.............................................................................5, 11
    § 215.3.................................................................................18
    § 215.5.............................................................................17, 18
    § 215.11................................................................................18
    § 20106.............................................................................17, 18

Fed. R. Civ. P.
    8........................................................................................8
    14.......................................................................................8

## OTHER AUTHORITIES

Timken, *Installing and Maintaining Timken AP and AP-2 Bearings, Diesel
    Locomotive, Passenger and Freight Car Applications* (2015) ...........................................4

Defendants and Third-Party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company (together, "Norfolk Southern") submit this Opposition to Third-Party Defendants GATX Corporation ("GATX") and General American Marks Company's ("GAMC") Motion to Dismiss (Dkt. 194) under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Norfolk Southern Train 32N derailed on the evening of February 3, 2023 in East Palestine, Ohio because, as alleged by First-Party Plaintiffs, an improperly maintained bearing on a railcar owned by GAMC (Car 23) failed. *See* First Am. Consol. Compl. (Dkt. 138) ¶ 146. After the derailment, Unified Command made the decision to "vent and burn" five derailed tank cars containing vinyl chloride because of the risk of violent polymerization and catastrophic explosions. GATX owned one of those tank cars, but the car had never been approved for vinyl chloride service and had other unapproved tank car modifications that were incompatible with vinyl chloride service, all of which directly contributed to the decision by Unified Command to proceed with the vent and burn.

Norfolk Southern did not manufacture, own, lease, or load Car 23 or Car 29, and did not manufacture or maintain Car 23's faulty bearing. Norfolk Southern, therefore, is not liable for damages allegedly resulting from the derailment or the vent and burn. Rather, it is Third-Party Defendants, including GATX and GAMC, that are liable. Through its Third-Party Complaint, Norfolk Southern seeks to ensure that all necessary parties are held to account, as appropriate under the law. Its Third-Party Complaint is properly pled and the motion to dismiss should be denied.

*First*, GATX and GAMC are incorrect that Norfolk Southern seeks contribution greater than its potential liability to First-Party Plaintiffs or seeks double recovery for damages. Norfolk

Southern seeks contribution from GATX and GAMC in an amount equal to their "proportionate share of the common liability," including amounts Norfolk Southern has paid or will pay in satisfaction of First-Party Plaintiffs' alleged damages. These amounts are distinct from the amounts sought by Norfolk Southern's contribution claim in the separate enforcement action filed by the United States and the State of Ohio.

*Second*, Norfolk Southern adequately pled that GATX's failure to obtain regulatory approvals for Car 29's transportation of vinyl chloride and failure to obtain approvals for certain modifications to Car 29 that made it unsafe for vinyl chloride service were substantial factors in the decision to vent and burn the vinyl chloride inside Car 29.

*Third*, the Court should reject GATX and GAMC's attempts to inject, and then unilaterally resolve, a factual dispute as to the owner of Car 23. Norfolk Southern's allegations must be accepted as true in deciding this motion. And, in any event, GATX and GAMC have declined to provide Norfolk Southern any information or documentation supporting their contention.

*Finally*, Norfolk Southern's negligence claim against GAMC (Count 3) is not preempted by the Federal Railroad Safety Act ("FRSA"). Count 3 is premised in part on GAMC's failure to move Car 23 every six months when it was *not* in service, resulting in the internal degradation and ultimate failure of Car 23's bearing. Consequently, federal regulations governing the visual inspection of railcars when *in service* do not "substantially subsume" Norfolk Southern's claim and, therefore, do not preempt Norfolk Southern's claim.

## THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT

### A.    The February 3, 2023 Derailment Of Train 32N

On February 3, 2023, Train 32N, a Norfolk Southern freight train comprised of 149 railcars and transporting hazardous materials, was traveling eastbound on the Fort Wayne Line

through northeast Ohio. Third-Pty. Compl. (Dkt. 119) ¶¶ 27-28. One of Train 32N's cars (Car

23) was a hopper car owned by GAMC which was carrying polyethylene (plastic) pellets. *Id.*

¶ 30. Car 23 was equipped with roller bearings that allow for the transfer of weight from the car

and its lading to the wheels, and allow the axle to rotate under the load, while minimizing the

rotational friction. *Id.* ¶ 32. However, bearings are capable of overheating and can cause

derailments. *Id.* ¶ 32. In addition to conducting visual, on-the-ground inspections of railcars

pursuant to 49 C.F.R. Part 215, Norfolk Southern also has equipped its network, including the

Fort Wayne Line, with hot bearing detectors ("HBDs") to assess the temperature conditions of

bearings and provide audible, real-time warnings to train crews and Norfolk Southern's Advance

Train Control Wayside Help Desk when certain bearing temperature thresholds are met. *Id.* ¶ 33.

On the evening of February 3, an HBD in East Palestine recorded a bearing on Car 23 at

253°F above ambient temperature, triggering a critical audible alarm and causing the train

engineer to engage the brake application to stop the train, which was already in the process of

slowing due to train traffic on the network. *See* Third-Pty. Compl. ¶¶ 34-38. Shortly thereafter,

during deceleration, at approximately 8:54 p.m., the overheated bearing on Car 23 failed, and the

car derailed along with 38 additional railcars, five of which were carrying vinyl chloride (also

known as "vinyl chloride monomer" or "VCM"), a flammable gas that is transported in a

pressurized liquid state, and that must be stabilized for safe transportation to prevent contact with

reactive agents like oxygen. *Id.* ¶¶ 39-46, 55-56. Under prolonged exposure to fire or heat,

liquefied vinyl chloride turns to vapor and expands, which can cause its container to violently

rupture and explode—this reaction is called a boiling liquid evaporating vapor explosion

("BLEVE"). *Id.* ¶ 58. Under exposure to heat or to catalytic metals, such as copper, aluminum,

and their alloys, vinyl chloride can also polymerize, a chemical reaction that turns vinyl chloride

into a solid-state polymer, which can increase the risk of a BLEVE by blocking the proper operation of the pressure relief devices ("PRDs"). *See id.* ¶¶ 60-66. A PRD is designed to automatically relieve pressure from the tank car when the tank's contents exceed a pressure threshold. *Id.* ¶ 51.

One of the five tank cars carrying vinyl chloride, Car 29, was owned by GATX. Third-Pty. Compl. ¶ 47. At the time of the derailment, Car 29 was equipped with an unapproved PRD. *Id.* ¶ 120(b).

### B.     GAMC Improperly Maintained Car 23

The bearing on Car 23 was manufactured by Timken Company, whose Bearing Install Manual states that "[c]ars, coaches, and locomotives equipped with roller bearings that remain stationary should be moved one car length *every six months* to distribute lubricant over the bearing surfaces." Third-Pty. Compl. ¶ 107 (emphasis added) (quoting Timken, *Installing and Maintaining Timken AP and AP-2 Bearings, Diesel Locomotive, Passenger and Freight Car Applications*, 25 (2015)). Timken's guidance is consistent with industry practice to prevent railcars from sitting stationary for long periods because grease separation may occur, which reduces the amount of lubrication around the bearings and may impact functionality. *Id.* ¶ 108.

As the owner of Car 23, GAMC was responsible for ensuring that Car 23 moved at least one car length every six months. Third-Pty. Compl. ¶ 106. However, the movement data for Car 23, which operated out of the Gulf States for long periods, indicates that it had few shipments and low mileage over the prior decade, and that it had been stationary for longer than six months at least twice: first for 565 days ending in August 2018 and again for 206 days ending in May 2019. *Id.* ¶¶ 109-111. GAMC's failure to move Car 23 every six months resulted in the internal degradation and ultimate failure of Car 23's bearing. *Id.* ¶ 184.

### C.    GATX Did Not Comply With Federal Regulations Regarding Car 29

GATX owned Car 29. Railcar owners are responsible for many different compliance and maintenance measures for tank cars that carry hazardous materials. Third-Pty. Compl. ¶ 116 (citing 49 C.F.R. §§ 180.501 (general applicability), 180.507 (qualification requirements), 180.509 (inspection requirements), 180.517 (reporting requirements)). Pursuant to 49 C.F.R. § 179.3, the Association of American Railroads ("AAR") is charged with approving the design, materials, construction, conversion, and modification of tank cars in accordance with AAR's Manual of Standards and Recommended Practices and the federal regulatory specifications. Third-Pty. Compl. ¶ 118. Any changes made to the tank car design or components after the fact must also be approved. *See* 49 C.F.R. § 179.6.

After the derailment, the Federal Railroad Administration ("FRA") identified at least three discrepancies between the approval documents for Car 29 and its actual physical characteristics, including: (i) the car had *never* been approved for vinyl chloride transport; (ii) the original tank car valve had been replaced with a Midland 720 valve without approval; (iii) the car's original PRD, which had a 225 psi start, had been replaced with a PRD with a 247.5 psi start without approval. Third-Pty. Compl. ¶ 120(b). As discussed more fully below, each of these discrepancies violate federal regulations.

Moreover, despite the known risk of polymerization upon an interaction between vinyl chloride and catalytic metals including aluminum (*supra* at 3-4), Car 29 was fitted with a protective housing cover made of aluminum; aluminum was also found in the exterior debris of the protective housing and housing cover following the derailment, and the angle valves were covered in solidified melted aluminum. Third-Pty. Compl. ¶ 135(d).

### D.       Derailment Response

Shortly after the derailment, first responders arrived and began addressing pool fires, which are fires that occur when a pool of volatile liquid evaporates and burns. Third-Pty. Compl. ¶ 73. By midnight a Unified Command was formed, made up of local first responders and personnel from the U.S. Environmental Protection Agency, Ohio Environmental Protection Agency, Ohio Emergency Management Agency, Pennsylvania Department of Environmental Protection, Pennsylvania State Police, Beaver County (Pennsylvania) Hazmat Response Team, other Ohio and Pennsylvania state officials, and the Norfolk Southern Hazmat Team. *Id.* ¶ 74.

Around midnight, the PRDs on the vinyl chloride tank cars began activating and releasing pressure in a cycle of thirty seconds on (releasing) and two minutes off. Third-Pty. Compl. ¶ 76. The flammable gas venting from the PRDs ignited, which began to melt the tank car liquid transfer valves and fittings. *Id.* ¶¶ 76-77. The PRDs continued to vent through the early morning hours of February 4, 2023. *Id.* ¶ 79.

After the PRDs stopped venting in the early afternoon of February 4, responders sent in two teams to monitor the pressure conditions of the vinyl chloride tank cars. Third-Pty. Compl. ¶¶ 82-83. During this time, the PRD on Car 28 (owned by third-party defendant OxyVinyls LP) activated again and began to continuously vent gas for approximately 70 minutes, frightening responders and causing concern that pressure and heat were building inside the Car 28 tank. *Id.* ¶ 84. Responders also detected elevated temperatures on Car 53 (owned by OxyVinyls LP), raising the concern that the tank temperature and pressure were rising without external stimulus. *Id.* ¶ 86. The PRDs on the other cars carrying vinyl chloride, including GATX-owned Car 29, did not resume venting. *See id.* ¶ 82.

The elevated temperature on Car 53 and sudden extended venting from Car 28 caused responders to become concerned about the potential for catastrophic explosions. Third-Pty.

Compl. ¶ 88. These factors also indicated to Unified Command that polymerization may have blocked the PRDs on Car 28 and the other vinyl chloride cars, including GATX-owned Car 29. *Id.* ¶ 90. As a result, on the morning of February 6, 2023, Unified Command met to discuss strategies to relieve the pressure in the five vinyl chloride tanks and avoid a catastrophic uncontrolled explosion, and ultimately decided to vent and burn the contents of all five vinyl chloride cars. *Id.* ¶ 96.

> **E.** **Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment**

Within days of the derailment, numerous individuals commenced actions against Norfolk Southern alleging damages from the derailment and the vent and burn. These actions have since been consolidated before this Court. The plaintiffs purport to represent classes of residents, property owners, employees, and businesses within a 30-mile radius of the derailment site, seeking recovery of alleged "real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, loss of use and enjoyment, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness." *See, e.g.*, First Am. Compl. ¶ 287.

In addition to these actions, the United States and the State of Ohio brought actions against Norfolk Southern under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and under Ohio law to recover, *inter alia*, natural resources damages and CERCLA cleanup oversight costs. *See United States v. Norfolk S. Ry. Co.*, No. 4:23-cv-675-JRA (N.D. Ohio); *Ohio v. Norfolk S. Ry. Co.*, No. 4:23-cv-517-JRA (N.D. Ohio).

To date, and without any finding of liability, Norfolk Southern has paid millions of dollars for the benefit of residents and businesses in and around East Palestine, and is continuing to conduct a comprehensive environmental response in the area.

Norfolk Southern brings the third-party claims in this action against GATX and GAMC, along with Third-Party defendants OxyVinyls LP and Trinity Industries Leasing Company, so that all parties who are or may be liable are before the Court, as specifically permitted by Rule 14(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it").

## ARGUMENT

## I.      Standard of Review

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff." *Cont'l Cas. Co. v. Equity Indus. Maple Heights, LLC*, 2016 WL 2927847, at *1 (N.D. Ohio May 19, 2016); *see also* Fed. R. Civ. P. 8(a)(2) (setting forth the liberal pleading standard, requiring merely "a short and plain statement of the claim showing that the pleader is entitled to relief"). "On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint may also be taken into account." *Correnti v. City of Cleveland*, 2022 WL 17176823, at *2 (N.D. Ohio Nov. 21, 2022).

## II.     Norfolk Southern Properly Seeks Contribution Only For GATX And GAMC's Proportionate Share Of Any Damages Awarded To First-Party Plaintiffs

Norfolk Southern does not dispute that, in this action, it may only recover damages arising from its alleged liability to the First-Party Plaintiffs, and that it may not assert any

separate and independent cause of action through its Third-Party Complaint. But the claims Norfolk Southern makes and the damages it seeks here are directly correlated to the claims of the First-Party Plaintiffs and are therefore properly raised in this action.

GATX and GAMC argue that they should not be responsible for Norfolk Southern's "response costs" because "[t]hose costs reflect the alleged economic loss suffered by the Government and Norfolk Southern in responding to the incident" and "do not reflect any economic loss incurred by the First-Party Plaintiffs." Mot. 8. But that argument mischaracterizes Norfolk Southern's third-party claims. Norfolk Southern does not seek its CERCLA environmental response costs in this action; rather, it seeks contribution for the significant costs it has incurred, will continue to incur, and may be required by a judge or jury in the future to incur, to address the alleged impacts of this incident on the residents of East Palestine and the surrounding area. Since the derailment, Norfolk Southern has assisted the people of East Palestine and the surrounding area in many different ways, including by providing millions of dollars in financial assistance directly to residents and businesses. Third-Pty. Compl. ¶ 1. As just two examples, Norfolk Southern established its Family Assistance Center to provide millions of dollars of compensation directly to residents and has also processed numerous business loss claims. These millions of dollars in compensation are not cleanup costs under CERCLA; rather, these payments and commitments were made to directly compensate putative class members for the alleged economic losses sought in their First-Party Amended Complaint. Because Norfolk Southern only seeks contribution for damages reflecting First-Party Plaintiffs' alleged losses, this lawsuit is a proper third-party action and should not be dismissed.

GATX and GAMC also argue that Norfolk Southern improperly seeks duplicative recovery because it has also filed a third-party complaint against GATX and GAMC seeking

- 9 -

contribution in the enforcement actions filed by the United States and Ohio under CERCLA and state laws for their share of potential liability to the United States and Ohio. Mot. 9. However, that consolidated enforcement action is distinct from this putative class action. In this case, the putative class seeks to recover economic damages for alleged harm to business plaintiffs and individual plaintiffs' personal and real properties. In the enforcement action, the United States and Ohio seek to recover natural resources damages and CERCLA cleanup oversight costs. Norfolk Southern agrees that it cannot recover natural resources damages and cleanup oversight costs from the Third-Party Defendants in the putative class action. Here, Norfolk Southern seeks only contribution and indemnity for damages allegedly sustained by First-Party Plaintiffs.

**III.     Norfolk Southern Adequately Pled Causation Against GATX**

GATX next argues that Norfolk Southern did not adequately allege that GATX's failure to follow federal regulations and industry rules on the design, build, testing, modification, and certification for Car 29 and its components proximately caused the release of hazardous materials and any resulting damages. Mot. 10-12. The Court should reject GATX's argument because, as alleged in the Third-Party Complaint, had GATX properly complied with federal regulations, Car 29 would not have carried vinyl chloride in the first place, would not have faced an imminent risk of explosion, and the vent and burn would not have been required. These allegations satisfy pleading requirements for causation under Rule 8.

Proximate cause is defined under Ohio law as "an act or failure to act that was a *substantial factor* in bringing about an injury and without which the injury would not have occurred." *Hardwick v. 3M Co.*, 2019 WL 4757134, at *16 (S.D. Ohio Sept. 30, 2019) (emphasis added) (citation omitted). "Like federal courts, Ohio courts recognize 'there can be more than one proximate cause of a particular injury.'" *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 795 (N.D. Ohio 2020) (quoting *Taylor v. Webster*, 12 Ohio St.2d 53, 231 N.E.2d 870,

873 (1967)). Further, "[i]t is not necessary that a defendant anticipate a plaintiff's particular injury. Instead, it is sufficient that the defendant's act is likely to result in injury to someone." *Id.*

As Norfolk Southern alleged in its Third-Party Complaint, GATX violated federal regulations, which was a "substantial factor" in the decision to vent and burn the tank cars containing vinyl chloride, resulting in the release of hazardous materials. Specifically, GATX (as the owner of Car 29) was required to receive approval for car construction and any design or component changes to the car. Third-Pty. Comp. ¶ 151 (citing 49 C.F.R. §§ 179.3, 179.6). Railcar owners must continually certify that they have complied with these requirements. 49 C.F.R. §§ 180.507, 180.517. The Third-Party Complaint alleges that GATX specifically failed to obtain the required approvals in three important respects: (i) the original tank car valve had been replaced with a Midland 720 valve, without approval; (ii) the original PRD, which had a 125 psi start, had been replaced with a PRD with a 247.5 psi start, without approval; and (iii) the car had never been approved for vinyl chloride service. Third-Pty Compl. ¶ 152(b).

The approval and recertification process is not merely an exercise in administrative rubber-stamping, but rather critically ensures that railcar owners construct *and maintain* their railcars in a manner compatible with the lading—the failure of which, as alleged in the Third-Party Complaint, can have potentially catastrophic consequences. At the time of the derailment, Car 29 was transporting vinyl chloride—a volatile chemical that can, under certain circumstances, rapidly vaporize and expand, resulting in a BLEVE, or can polymerize, increasing the risk of a BLEVE. Indeed, the vinyl chloride safety data sheet ("SDS") that OxyVinyls LP provided to Norfolk Southern expressly warned that vinyl chloride "MAY MASS EXPLODE IN FIRE" and that "*[e]xposure to the following conditions or mixtures with the following elements and materials can cause explosive or violent polymerization of VCM*: Air,

- 11 -

Sunlight, Excessive heat, Oxidizers, Catalytic metals, such as copper, *aluminum*, and their alloys and certain catalytic impurities." Third-Pty. Compl. ¶¶ 64-65 (emphasis added). Yet, despite the substantial risks inherent in the transportation of vinyl chloride, even in cars properly equipped and approved for transport of vinyl chloride, GATX never obtained the necessary approvals for Car 29 to carry vinyl chloride. *Id.* ¶ 120(b). Moreover, Norfolk Southern specifically alleged that Car 29 contained components made of materials that substantially increased the risk of polymerization if placed in contact with vinyl chloride and thus increased the risk of a BLEVE. *Id.* ¶¶ 54, 135(d), 167. And, as alleged in the Third-Party Complaint, GATX modified Car 29 to include a non-approved tank car valve and PRD, which may have caused the vinyl chloride inside the tank car to interact with potentially reactive agents, such as aluminum. *Id.* ¶¶ 120(b), 135. Car 29 had a protective housing cover made of aluminium and an aluminium angle valve handwheel, and aluminium was found in the exterior debris of the protective housing and housing cover following the derailment, and the angle valves were covered in solidified melted aluminium. *Id.* ¶ 135(b).

Norfolk Southern's allegations regarding the causal relationship between these unapproved changes and the release of hazardous materials from Car 29 are not speculative. As detailed in the Third-Party Complaint, "[b]ecause of the surrounding pool fires, the flammable gas venting from the PRDs ignited, which upon information and belief began to melt part or all of the [vinyl chloride] tank car[s'] liquid transfer valves and fittings." Third-Pty. Compl. ¶ 77. This was particularly troubling with respect to Car 29, "which had been fitted with a protective housing cover made of aluminum," "had aluminum found in exterior debris of the protective housing and housing cover on the tank car," and whose "angle valves were covered in solidified melted aluminum after the derailment." *Id.* ¶ 135(d). The presence of aluminum in Car 29

significantly heightened the risk of polymerization and a violent BLEVE. Indeed, "[t]he elevated temperature on Car 53 and sudden extended venting from Car 28 without a pool fire underneath it caused responders to become concerned" "that polymerization may have blocked the PRDs on Car 28 and the other vinyl chloride tank cars," including Car 29. *Id.* ¶¶ 88, 90. In light of the facts on the ground, Unified Command determined that a vent and burn of all five vinyl chloride tank cars—including Car 29—was the safest option. *Id.* ¶¶ 96-97.

Norfolk Southern's allegations go well beyond those that other courts in this Circuit have determined are sufficient to withstand a motion to dismiss. For example, in *Tipton v. CSX Transportation, Inc.*, 2016 WL 11501426 (E.D. Tenn. July 7, 2016), plaintiffs brought private nuisance and negligence claims against a railroad, CSX, and a railcar owner, Union Tank Company ("UTC"), following a train derailment and subsequent release of chemicals and fire in Maryville, Tennessee. *Id.* at *1. The plaintiffs alleged that UTC had violated its duty of care by failing to properly manufacture roller bearings, comply with regulatory inspection requirements, and repair or replace the roller bearings. On causation, the plaintiffs merely alleged that the breaches "were a cause in fact and a proximate cause of damages to Plaintiffs." Master Consol. Class Action Compl. ¶¶ 72-73, *Tipton v. CSX Transp., Inc.*, No. 3:15-cv-00311-TAV-CCS (E.D. Tenn. June 10, 2016), Dkt. 114. The court refused to dismiss the plaintiffs' negligence claim, holding that "[t]he Court [wa]s able to 'draw the reasonable inference' that each defendant's negligence was a proximate cause of the train derailment and subsequent chemical spill and fire, which caused plaintiffs property and personal injury damage." 2016 WL 11501426, at *18. Here, Norfolk Southern has alleged particularized facts from which the Court can draw reasonable inferences in Norfolk Southern's favor that the transportation of vinyl chloride in an unapproved and improperly equipped tank car was a substantial factor in causing the ultimate release of

hazardous materials and the alleged damages of First-Party Plaintiffs. As in *Tipton*, the negligence claim here should be permitted to move forward.

GATX's reliance on *City of Cincinnati v. Deutsche Bank National Trust Co.*, 863 F.3d 474 (6th Cir. 2017), is misplaced. There, the City of Cincinnati alleged that the defendants' failure to keep buildings up to code led to the "attenuated" damages of decreased tax revenue and increased police, fire, and administrative costs. *Id.* at 480. But the City did not allege any actual properties had become public nuisances, much less connect those properties to actual costs incurred by the City. *Id.* at 479-480. That is not the case here, where Norfolk Southern has specifically alleged that GATX's negligence led to the unsafe transportation of vinyl chloride, which in turn led to the vent and burn. Unlike *Deutsche Bank*, this is not a case where there are "no factual allegations" to support causation. *Id.* at 480.

GATX's other case citations similarly fall flat. In *City of Cleveland v. Ameriquest Mortgage Securities Inc.*, 621 F. Supp. 2d 513 (N.D. Ohio 2009), the district court dismissed a suit for failing to plead causation where Cleveland brought a public nuisance suit against twenty-two financial entities it claimed were responsible for the epidemic of foreclosures because of their subprime lending practices. Cleveland argued that the defendants, who for the most part had not even originated the loans but instead merely financed subprime mortgages, had created a public nuisance that led to a foreclosure crisis in Cleveland that devastated its neighborhoods and economy. In affirming the district court's dismissal, the Sixth Circuit found, among other things, that the alleged damages—eyesores, fires, drug deals, and looting—were not directly caused by the defendants and could have occurred for many reasons unconnected to the alleged misconduct. *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 505 (6th Cir. 2010). The facts of *City of Cleveland* are not comparable to this case—where GATX's tank car

was transporting vinyl chloride but was unapproved to do so and had modifications incompatible with vinyl chloride service, thus leading to the vent and burn.

Finally, in *Hoffman v. United States*, 600 F.2d 590 (6th Cir. 1979) (per curiam), a pilot who had been left uninsured by his employer caused a plane crash by failing to check his gasoline supply and overloading the plane. The injured parties sued the Federal Aviation Authority and Civil Aeronautics Board for issuing a license to the pilot's company despite the company's lack of insurance. *Id.* at 590-591. In affirming the district court's dismissal of the case for failure to plead causation, the court found that the connection between the licensing and the cause of the crash was too remote. *Id.* at 591. Here, in contrast, GATX's negligence *directly* caused damages: the transportation of vinyl chloride in an unapproved and improperly equipped tank car was a substantial factor in the need to vent and burn the vinyl chloride inside the tank car.

Norfolk Southern's claims are therefore not analogous to any of the cases GATX cites in which allegations of proximate causation were found to be deficient, and the motion should be denied.

## IV.    Any Factual Dispute Concerning The Ownership Of Railcar 23 Is Not Properly Raised On A Motion To Dismiss

GATX and GAMC make a factual argument that the Third-Party Complaint incorrectly pleads ownership of Car 23 by GAMC, when Car 23 was in fact owned by GATX. Mot. 12-13. But it is well-settled that "factual disputes … cannot be resolved at the motion to dismiss stage." *Interstate Safety & Serv. Co. v. City of Cleveland*, 2011 WL 5873108, at *1 (N.D. Ohio Nov. 18, 2011) (denying motion to dismiss that "relie[d] upon disputed facts"); *see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) ("A judge may not grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations."); *Cont'l*

*Cas., Co. v. Equity Indus. Maple Heights, LLC*, 2016 WL 2927847, at *1 (N.D. Ohio May 19, 2016) ("When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff."). Norfolk Southern's allegation as to ownership must be accepted as true. It would be improper to rely on GATX and GAMC's allegation of a contrary fact as a basis for ruling on their motion.[1]

GATX and GAMC also argue that the claims against GATX in Counts 3 and 4 should be dismissed because "there are no factual allegations against GATX." Mot. 12-13. That is also incorrect. Norfolk Southern plainly alleged that "GATX Corporation exercises substantial direct control over the operations of its subsidiary GAMC Marks Company, including with respect to railcar maintenance." Third-Pty. Compl. ¶ 185. That allegation is sufficient for Rule 12(b)(6) purposes. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (under Ohio law, a parent company that, among other things, exerts control over a subsidiary can be held liable for the acts of the subsidiary); *Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 925-926 (N.D. Ohio 2019) (same). Moreover, GATX itself contends in its motion that *it* is the owner of Car 29 (Mot. 12), which is dispositive and the motion should be denied on that basis alone.

In sum, the motion should be denied as to Counts 3 and 4 for both GATX and GAMC.

---

[1] To the extent the Court is inclined to entertain this factual dispute at the motion to dismiss stage, Norfolk Southern requests that the Court grant limited discovery into the ownership of Car 23 and, if necessary, permit Norfolk Southern to amend its Third-Party Complaint. *Crawford v. Geiger*, 996 F. Supp. 2d 603, 610 (N.D. Ohio 2014) (recognizing "plaintiffs' right to conduct discovery and, if they develop facts [bearing on plaintiffs' claims], seek leave to amend their complaint").

- 16 -

## V.         The Federal Railroad Safety Act Does Not Preempt Counts 3 And 4

Finally, GATX and GAMC argue that Counts 3 and 4 should be dismissed because the Federal Railroad Safety Act ("FRSA") preempts Norfolk Southern's negligence claim concerning Car 23. Mot. 13-15. This argument is incorrect. The regulations that GATX and GAMC cite do not "substantially subsume" Norfolk Southern's claims; rather, those regulations apply to a railroad's visual inspections of railcars that have been placed into a train *during* service, not *maintenance* by car owners *before and between* service periods. *See* 49 C.F.R. § 215.5(d) (defining "[i]n service," *see infra* at 18). Accordingly, the cited regulations do not preempt Norfolk Southern's claims that GATX and GAMC failed to exercise ordinary care in maintaining their railcars.

Generally, "[t]he FRSA preempts any state or local law, regulation, or order that is 'an additional or more stringent law, regulation, or order related to railroad safety or security.'" *Smith v. CSX Transp., Inc.*, 2014 WL 3732622, at *2 (N.D. Ohio July 25, 2014) (quoting 49 U.S.C. § 20106(a)(2)). But states may nonetheless "adopt or continue in force a law, regulation, or order related to railroad safety or security until … [the FRA] prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). Additionally, even when the FRA prescribes safety standards, a state may still enforce an "additional or more stringent law" related to the same subject matter if: (1) it is necessary to prevent a local safety or security hazard; (2) it is not incompatible with a federal regulation on the safety issue in question; and (3) it does not "unreasonably burden" interstate commerce. *Id.* And finally, a "2007 clarification amendment further provided that 'nothing in [the preemption] section of the FRSA shall be construed as preventing an action under state law seeking damages for personal injury, death, or property damage when the claim alleges that a party has 'failed to comply' with a federal regulation, the party's own safety standard, or a state law or regulation

- 17 -

that has met the criteria set forth in Section 20106(a)(2)." *Smith*, 2014 WL 3732622, at *2 (quoting 49 U.S.C. § 20106(b)(1)).

Here, Counts 3 and 4 for negligence and contribution are not preempted unless this Court finds that the FRA has "prescribe[d] a regulation … *covering the subject matter*" of the state law at issue. 49 U.S.C. § 20106(a)(2) (emphasis added). Interpreting this statutory language, the Supreme Court has held that "[t]o prevail on the claim that the regulations have pre-emptive effect, petitioner must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (emphasis added).

None of the FRA regulations cited by GATX and GAMC "substantially subsumes" Norfolk Southern's state-law claims. Specifically, Norfolk Southern alleges that GATX and GAMC "failed to exercise ordinary care by, among other things, failing to properly maintain Car 23's bearings by leaving the car stationary for periods in excess of sixth months." Third-Pty. Compl. ¶ 182. If the car is not moved, then the lubricant around the bearings will separate and degrade, leading to the internal degradation and ultimate failure of the bearings. *Id.* ¶ 183.

GATX and GAMC cite three FRA regulations under Part 215 that they contend "cover[] inspection and maintenance standards for wheel bearings." Mot. 14-15 (citing to 49 C.F.R. §§ 215.11 – Designated inspectors, 215.13 – Pre-departure inspection, 215.15 – Periodic inspection). But Part 215 applies only to a "freight car in service" on a railroad track, 49 C.F.R. § 215.3(a), (c), *not* when it is out of service or undergoing repairs. The term "in service" specifically does not cover periods when the car is "on a storage track and is empty" or when it is "in a repair shop or on a repair track." *Id.* § 215.5(e). Moreover, the pre-departure inspection

mandated by the FRA applies only to in service freight cars at the "location where a freight car is placed in a train." *Id.* § 215.13(a).

Accordingly, Part 215 has nothing to do with GATX and GAMC's failure to properly maintain the bearing on Car 23 by moving it instead of letting it sit idle for over six months on two separate occasions. Preemption does not attach to this situation where GATX and GAMC's actions while the car was stationary (and out of service) caused an internal problem within the bearing that is not visible during a Part 215 inspection which occurs when the car is put back into service and placed in a train.

Additionally, GATX and GAMC take an overbroad and simplistic view of *Tipton* to argue their position. Mot. 14-15. They argue that *Tipton* held that FRA regulations concerning the maintenance and inspection of railcars and wheel bearings preempt wholesale the plaintiffs' state law negligence claims, which were "materially indistinguishable" from the claims here. *Id.* But *Tipton* made no such holding. In *Tipton*, the plaintiffs sued CSX (a railroad) and UTC (a railcar owner) following a train derailment, subsequent release of chemicals, and a fire. 2016 WL 11501426, *1-2. The plaintiffs' negligence claim was premised on the defendants' breach of their duties—which the plaintiffs alleged arose from federal regulation, and other sources, including the CSX Operating Rules and industry standards—to inspect rail cars immediately prior to placing them into service, to prevent defective rail cars and cars with defective roller bearings from being placed into service, and to maintain devices capable of detecting overheated rail car wheel roller bearings during train operation. *Id.* at *10.

The court in *Tipton* first examined whether FRA regulations "substantially subsume[d]" plaintiffs' state law negligence allegations concerning the "visual inspection of the track and cars" immediately prior to placing the cars in service. 2016 WL 11501426, at *11. In finding that

FRA's regulations covered the plaintiffs' allegations concerning the visual inspection of railcars, the court held that the plaintiffs' allegations were preempted "to the extent they impose[d] additional duties on defendants beyond those contained in the FRSA or in defendants' operating rules." *Id.* at *18.[2] However, Norfolk Southern does not allege here that GATX and GAMC were required to conduct a Part 215 inspection when Car 29 was placed into a train by the Terminal Railroad Association of St. Louis on February 1, 2023 before it was interchanged with Norfolk Southern. Rather, Norfolk Southern alleges that GATX and GAMC negligently failed to maintain the car and its bearings—thereby creating an internal latent issue within the bearing at issue—long before the Terminal Railroad Association of St. Louis performed a Part 215 visual inspection on February 1, 2023. Their duty falls outside Part 215. Accordingly, Norfolk Southern's claims premised upon GATX and GAMC's failure to maintain Car 23 in a manner consistent with Timken's guidance and industry standards while Car 23 was not in service are not preempted—a conclusion entirely consistent with *Tipton*.

## CONCLUSION

GATX and GAMC's motion to dismiss should be denied. If the Court grants the motion, however, it should grant Norfolk Southern leave to obtain discovery and leave to amend.

---

[2] As set forth in Norfolk Southern's motion to dismiss the First-Party Plaintiffs' complaint, *Tipton*'s holding supports Norfolk Southern's contention that any attempts to impose liability upon it for supposed inadequate inspection and monitoring with respect to "wayside detectors" or "hot-box detectors" are preempted by the FRSA. *See* Dkt. 76-1 at 15-16 (citing *Tipton*, 2016 WL 11501426, at *11 (negligence claim preempted to the extent premised on allegedly defective hot-box detectors)).

Dated: October 16, 2023

WILMER CUTLER PICKERING
   HALE AND DORR LLP

_/s/ Alan Schoenfeld_

ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

DAVINA PUJARI*
CHRISTOPHER A. RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA  94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC  20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

KATHERINE MACKEY*
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
katherine.mackey@wilmerhale.com

* Pro hac vice

Respectfully submitted,

DICKIE, MCCAMEY &
   CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS
AARON PONZO*
PAUL ROMAN*
Two PPG Place, Suite 400
Pittsburgh, PA  15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

REDGRAVE LLP

JONATHAN M. REDGRAVE*
MONICA MCCARROLL*
4800 Westfield Blvd., Suite 250
Chantilly, VA  20151
(703) 592-1155
jredgrave@redgravellp.com
mmccarroll@redgravellp.com

MARTIN T. TULLY*
230 West Monroe Street, Suite 210
Chicago, IL  60606
mtully@redgravellp.com

_Counsel for Defendants_
_Norfolk Southern Corporation and Norfolk Southern Railway Company_

## CERTIFICATE OF LOCAL RULES 7.1 COMPLIANCE

I certify that this Opposition adheres to the page limitations set forth in Local Rule 7.1(f)

for mass-tort cases because it does not exceed 40 pages in length. *See* Discovery Plan 1 n.*,

Dkt. 62 (May 23, 2023).

/s/ Alan Schoenfeld
ALAN SCHOENFELD

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 16, 2023, I caused a copy of the foregoing to be filed

with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will

provide electronic notice to all counsel of record.

*/s/ Alan Schoenfeld*

ALAN SCHOENFELD

- 23 -