# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT**<br><br>STEVEN MCKAY, SUSAN SCHEUFELE, KAYLA BAKER, BRENDA WILLIAMS, DAWN BAUGHMAN, DAVID ANDERSON, JAMES ROSS, JON LUKE AFFELTRANGER, ROSEMARY MOZUCH, CHARLES MOZUCH, GREGORY SWAN, LANCE BECK, CLARISSA COHAN, ROLLERENA AUTO SALES LLC, HAROLD FEEZLE, DALQAN HOLDINGS, LLC, VALLEY VIEW MPH LLC, COMPETITION & LUXURY VEHICLE CLUB OF HARLINGTON, LLC, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>     *Defendants/Third-Party Plaintiffs*,<br><br>  v.<br><br>OXY VINYLS LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, TRINITY INDUSTRIES LEASING COMPANY,<br><br>     *Third-Party Defendants*. | Case No.  4:23-CV-00242-BYP<br><br>JUDGE BENITA Y. PEARSON |

**NORFOLK SOUTHERN RAILWAY COMPANY AND NORFOLK SOUTHERN CORPORATION'S OPPOSITION TO THIRD-PARTY DEFENDANT TRINITY INDUSTRIES LEASING COMPANY'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

i

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT ................................................3

    A.   The February 3, 2023 Derailment Of Train 32N ...................................................3

    B.   Derailment Response .............................................................................................4

    C.   Trinity Did Not Comply With Federal Regulations For Car 26 ...................................4

    D.   Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment ...................................................................................5

STANDARD OF REVIEW ....................................................................................................6

ARGUMENT ......................................................................................................................8

I.     The Court Has Personal Jurisdiction Over Trinity ...............................................8

    A.   Ohio's Long-Arm Statute Is Co-Extensive With Due Process ......................................9

    B.   Specific Jurisdiction Over Trinity Comports With Due Process ................................12

        1.   Trinity has purposefully availed itself of the privilege of acting in Ohio.......... 13

        2.   Norfolk Southern's claims arise from and relate to Trinity's conduct in Ohio . 14

        3.   The exercise of personal jurisdiction over Trinity is reasonable ...................... 16

    C.   The Court Should Grant Jurisdictional Discovery ........................................................17

II.    Norfolk Southern's Claims Against Trinity Are Not Preempted..........................................18

    A.   Norfolk Southern's Negligence Claim Against Trinity Is Not Preempted By FRSA .18

    B.   Norfolk Southern's Claims Are Not Preempted By CERCLA...................................22

        1.   Norfolk Southern is seeking damages under state law claims that are different from those recoverable under CERCLA........................................................ 22

        2.   There is no conflict between CERCLA and Norfolk Southern's state law claims ......................................................................................................... 23

III.   Norfolk Southern Has Sufficiently Pled A Negligence Claim Against Trinity...................24

IV.   The Economic Loss Doctrine Does Not Bar Norfolk Southern's Negligence Claim, Which Alleges A Duty Arising Outside Of Contract........................................................28

V.    Norfolk Southern Has Sufficiently Pled A Contribution Claim Against Trinity.................31

CONCLUSION.................................................................................................................32

# TABLE OF AUTHORITIES

Page(s)

## CASES

*425 Beecher, LLC v. Unizan Bank, National Association*,
  927 N.E.2d 46 (Ohio Ct. App. 2010)...................................................................................29

*Air Products. & Controls, Inc. v. Safetech International, Inc.*,
  503 F.3d 544 (6th Cir. 2007) ....................................................................................7, 16

*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) ...........................................................................................16

*AmaTech Group v. Federal Card Services*,
  2022 WL 44674 (S.D. Ohio Jan. 5, 2022) .......................................................................11

*American Metal Stamping Co., LLC v. Pittsburgh Pipe & Supply Corp.*,
  2022 WL 19349904 (N.D. Ohio June 6, 2022).................................................................7

*American Premier Underwriters, Inc. v. General Electric Co.*,
  2008 WL 11351545 (S.D. Ohio Aug. 1, 2008).................................................................24

*Architectural Busstrut Corp. v. Smith LC*,
  2022 WL 1837596 (S.D. Ohio Feb. 8, 2022)...................................................................9

*Arnold v. CooperSurgical, Inc.*,
  2023 WL 4552154 (S.D. Ohio July 10, 2023)..................................................................17

*Atlantic Richfield Co. v. Christian*,
  140 S. Ct. 1335 (2020)......................................................................................................23

*Ault v. Medina Medical Investments LLC*,
  2007 WL 81853 (N.D. Ohio Jan. 8, 2007)........................................................................26

*Blessing v. Chandrasekhar*,
  988 F.3d 889 (6th Cir. 2021) ............................................................................................8

*Bren Insurance Services, Inc. v. Envision Pharmaceutical Services*, LLC,
  2022 WL 5160746 (N.D. Ohio Oct. 5, 2022)...................................................................10

*Bridgeport Music, Inc. v. Still N the Water Publishing*,
  327 F.3d 472 (6th Cir. 2003) ...........................................................................................10

*Bristol-Myers Squibb Co. v. Superior Court*,
  582 U.S. 255 (2017)..........................................................................................................15

iii

*Brott Mardis & Co. v. Camp*,
768 N.E.2d 1191 (Ohio Ct. App. 2001)................................................................27

*Brown v. Whirlpool Corp.*,
996 F. Supp. 2d 623 (N.D. Ohio 2014)................................................................25

*C. T. v. Red Roof Inns, Inc.*,
2021 WL 2942483 (S.D. Ohio July 1, 2021),
*appeal dismissed*, 2021 WL 4739619 (6th Cir. Aug. 4, 2021) .........................10

*Calder v. Jones*,
465 U.S. 783 (1984)..............................................................................................15

*Campbell v. Krupp*,
961 N.E.2d 205 (Ohio Ct. App. 2011)................................................................30

*Carr v. DJO Inc.*,
2012 WL 3257666 (S.D. Ohio Aug. 8, 2012)......................................................18

*CNA Insurance Co. v. Mentor Magnetic Imaging, Inc.*,
2009 WL 10688218 (N.D. Ohio Sept. 16, 2009)..................................................26

*Community Federal Savings & Loan Association v. Transamerica Insurance Co.*,
559 F. Supp. 536 (E.D. Mo. 1983).......................................................................32

*Continental Casualty Co. v. Equity Industrial Maple Heights, LLC*, 2016 WL
2927847 (N.D. Ohio May 19, 2016).......................................................................7

*Correnti v. City of Cleveland*,
2022 WL 17176823 (N.D. Ohio Nov. 21, 2022) ....................................................7

*County of Summit, Ohio v. Purdue Pharma L.P.*,
No. 1:17-md-02804-DAP (N.D. Ohio Oct. 5, 2018), Dkt. 1025 ........................30

*CrossCountry Mortgage, Inc. v. Messina*,
2019 WL 5653288 (N.D. Ohio Oct. 31, 2019).....................................................16

*CSX Transportation, Inc. v. Columbus Downtown Development Corp.*,
307 F. Supp. 3d 719 (S.D. Ohio. 2018) ...............................................................32

*CSX Transportation, Inc. v. Union Tank Car Co.*,
247 F. Supp. 2d 833 (E.D. Mich. 2002)...............................................................14

*Dollison v. Antero Resources Corp.*,
600 F. Supp. 3d 827 (S.D. Ohio 2022) ..................................................................9

*E-Tank Ltd. v. Deist Industries, Inc.*,
2012 WL 1109986 (N.D. Ohio Mar. 31, 2012) ...................................................30

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    141 S. Ct. 1017 (2021) ............................................................................................15, 16

*Fortis Corp. Insurance v. Viken Ship Management*,
    450 F.3d 214 (6th Cir. 2006) ............................................................................................13

*Gerber v. Riordan*,
    649 F.3d 514 (6th Cir. 2011) ..............................................................................................8

*Goodyear Tire & Rubber Co., v. Robert J. Brocker, Jr., M.D., Inc.*,
    1999 WL 476078 (Ohio Ct. App. June 30, 1999)...........................................................32

*Hardwick v. 3M Co.*,
    2019 WL 4757134 (S.D. Ohio Sept. 30, 2019) ...............................................................27

*Huey Jiuan Liang v. AWG Remarketing*,
    2015 WL 65258 (S.D. Ohio Jan. 5, 2015) .......................................................................17

*In re National Prescription Opiate Litigation*,
    440 F. Supp. 3d 773 (N.D. Ohio 2020)................................................................28, 30, 31

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005) ............................................................................................16

*International Shoe Co. v. State of Washington, Office of Unemployment*
    *Compensation & Placement*,
    326 U.S. 310 (1945)..........................................................................................................12

*JBlanco Enterprises Inc. v. Soprema Roofing & Waterproofing, Inc.*,
    2016 WL 6600423 (N.D. Ohio Nov. 8, 2016)..................................................................31

*Jones v. Ohio National Life Insurance Co.*,
    2022 WL 1128596 (S.D. Ohio Apr. 15, 2022) .................................................................29

*Merrick v. Diageo Americas Supply, Inc.*,
    805 F.3d 685 (6th Cir. 2015) ............................................................................................23

*Metropolitan Property & Casualty Insurance Co. v. Pest Doctor Systems, Inc.*,
    2014 WL 2855003 (S.D. Ohio June 23, 2014) ................................................................26

*Miller ex rel. Miller v. Allianz Life Insurance Co. of North America*,
    2020 WL 5653548 (N.D. Ohio Sept. 23, 2020)...............................................................26

*Miller v. Kent Nutrition Group, Inc.*,
    2016 WL 11246420 (N.D. Ohio Sept. 16, 2016)..............................................................11

*Mott v. Schelling & Co.*,
    966 F.2d 1453 (6th Cir. 1992) ..........................................................................................13

*New Market Acquisitions, Ltd. v. Powerhouse Gym*,
    154 F. Supp. 2d 1213 (S.D. Ohio 2001) ..........................................32

*NOCO Co. v. Shenzhen Valuelink E-Commerce Co.*,
    550 F. Supp. 3d 488 (N.D. Ohio 2021)....................................................11, 12

*Ohio v. Norfolk Southern Ry. Co.*,
    No. 4:23-cv-517-JRA (N.D. Ohio) ..................................................6

*Opportunity Fund, LLC, v. Epitome Systems, Inc.*,
    912 F. Supp. 2d 531 (S.D. Ohio 2012) ..........................................15

*Premier Property Sales Ltd. v. Gospel Ministries International, Inc.*,
    539 F. Supp. 3d 822 (S.D. Ohio 2021) ..........................................10

*Riemeier Lumber Co. v. Universal Forest Products Eastern Division, Inc.*,
    2008 WL 11351361 (S.D. Ohio Sept. 26, 2008) ............................32

*Scotts Co. v. Aventis S.A.*,
    145 F. App'x 109 (6th Cir. 2005) .....................................................9

*Serras v. First Tennessee Bank National Association*,
    875 F.2d 1212 (6th Cir. 1989) ..........................................................7

*Smith v. CSX Transportation, Inc.*,
    2014 WL 3732622 (N.D. Ohio July 25, 2014) ....................19, 21, 22

*Smith v. Swaffer*,
    566 F. Supp. 3d 791 (N.D. Ohio 2021)............................................11

*SpyGlass Group v. Genesis Health Clubs Management, Inc.*,
    2022 WL 17251820 (N.D. Ohio Nov. 28, 2022) ............................10

*Step2 Co., LLC v. Parallax Group International, LLC*,
    2010 WL 3783151 (N.D. Ohio Sept. 17, 2010)..............................13

*Sullivan v. LG Chem, Ltd.*,
    79 F.4th 651 (6th Cir. 2023) ......................................................8, 12

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) ....................................................9, 17

*United States v. Norfolk Southern Ry. Co.*,
    No. 4:23-cv-675-JRA (N.D. Ohio) ..................................................6

*United States v. Pretty Products, Inc.*,
    780 F. Supp. 1488 (S.D. Ohio 1991) ..............................................24

*Village of DePue, Illinois v. Exxon Mobil Corp.*,
    537 F.3d 775 (7th Cir. 2008) ........................................................24

*Vlach v. Yaple*,
    670 F. Supp. 2d 644 (N.D. Ohio 2009)........................................7

*Zahara Ariel LLC v. Lionsgate Entertainment Corp.*,
    2023 WL 4706188 (S.D. Ohio June 14, 2023) ..........................10

*Zimmerman v. Norfolk Southern Corp.*,
    706 F.3d 170 (3d Cir. 2013)........................................................19

## STATUTES, RULES, AND REGULATIONS

49 C.F.R.
    § 171.1..........................................................................................28
    § 179............................................................................................21
    § 179.3...............................................................5, 20, 25, 29
    § 179.5..........................................................................................20
    § 179.6...............................................................5, 20, 25, 29
    § 180..................................................................................20, 21
    § 180.501......................................................................................5
    § 180.507....................................................................................20
    § 180.509..............................................................................20, 21
    § 180.517....................................................................................20

42 U.S.C. § 9613 ...............................................................................23, 24

49 U.S.C.
    § 20101......................................................................................19
    § 20106..........................................................................19, 20, 22

Fed. R. Civ. P.
    8..................................................................................................7
    14...........................................................................................6, 14

Ohio Rev. Code Ann. § 2307.382.................................................9, 11, 12

Defendants and Third-Party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company (together, "Norfolk Southern") submit this Opposition to Third-Party Defendant Trinity Industries Leasing Company's Motion to Dismiss (Dkt. 190) under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## INTRODUCTION

On February 3, 2023, Norfolk Southern Train 32N derailed in East Palestine, Ohio. At the time of the derailment, Train 32N was transporting five tank cars containing vinyl chloride, a flammable gas transported in a pressurized liquid state that is used to make PVC, a common synthetic plastic polymer. Because of the risk of polymerization and a catastrophic explosion of the vinyl chloride following the derailment, Unified Command made the decision to "vent and burn" the vinyl chloride in the five tank cars, all of which derailed. Included among these five tank cars was TILX402025 ("Car 26")—a car owned by Defendant Trinity Industries Leasing Company ("Trinity").

As the owner of a tank car transporting hazardous material, Trinity was responsible for the proper certification and maintenance of Car 26 and its component parts in compliance with federal regulations and industry standards. Trinity neglected these responsibilities by, among other things, making unapproved tank car modifications that were incompatible with vinyl chloride service. Trinity's failure to meet its legal obligations meant to ensure Car 26 was certified and safe for hazardous material transportation substantially contributed to the decision to vent and burn the contents of Car 26 following the derailment.

Despite Trinity's failure as tank car owner to ensure Car 26 was certified for transporting vinyl chloride, Trinity asks this Court to absolve it of any responsibility for its share of Plaintiffs' alleged harms arising from the release of hazardous materials and to instead place the blame

solely on others, including Norfolk Southern—which has already spent millions of dollars compensating those alleging they are affected by the derailment—even though Norfolk Southern did not manufacture, load, or own the vinyl chloride and other substances Train 32N was carrying on February 3, 2023, nor did it manufacture, lease, own, or certify the tank cars that contained the vinyl chloride. Trinity's arguments for dismissal are meritless and the motion to dismiss should be denied.

*First*, as Norfolk Southern adequately pled, this Court has personal jurisdiction over Trinity because specific jurisdiction here comports with the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and therefore, with Ohio's long-arm statute, as amended in 2021.

*Second*, Norfolk Southern's negligence claim against Trinity, premised on Trinity's failure to meet federal regulatory requirements for Car 26, is not preempted by either the Federal Railroad Safety Act ("FRSA") or the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The FRSA explicitly states that an action claiming a party has failed to comply with federal regulations shall not be preempted. And CERCLA does not preempt this action because the damages sought here are distinct from the response costs that CERCLA covers.

*Third*, Norfolk Southern has adequately pled a negligence claim against Trinity. Trinity had a duty to exercise reasonable and ordinary care to ensure the accurate certification, qualification, compliance, and maintenance of Car 26 and its components. Norfolk Southern, like all common carrier railroads required to transport hazardous materials, necessarily relies on the representations of car owners such as Trinity and their compliance with their obligations as car

owners. Trinity failed to exercise reasonable and ordinary care by failing to meet its obligations, resulting in harm.

*Fourth*, Norfolk Southern's negligence claim is not barred by the economic loss doctrine, which does not apply where a claim alleges a duty arising outside of contract.

*Finally*, Norfolk Southern has adequately pled a cause of action for contribution under Ohio law.

## THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT

### A.    The February 3, 2023 Derailment Of Train 32N

On February 3, 2023, Train 32N, a Norfolk Southern freight train comprised of 149 railcars and transporting hazardous materials was traveling eastbound on the Fort Wayne Line through northeast Ohio, when a roller bearing on Car 23 failed, leading to a derailment in East Palestine, Ohio. Third-Pty. Compl. ¶¶ 27-28, 39.

Thirty-eight railcars derailed, including Car 26, a tank car owned by Trinity and shipped by Third-Party Defendant OxyVinyls LP ("OxyVinyls"). Third-Pty. Compl. ¶ 8, 40. Car 26 was one of five derailed tank cars carrying vinyl chloride, a flammable gas that is transported in a pressurized liquid state, and that must be stabilized for safe transportation to prevent contact with reactive agents like oxygen. *Id.* ¶¶ 55-56. Under prolonged exposure to fire or heat, liquefied vinyl chloride turns to vapor and expands, which can cause its container to violently rupture and explode—this reaction is called a boiling liquid evaporating vapor explosion ("BLEVE"). *Id.* ¶ 58. Under exposure to heat or to catalytic metals, such as copper, aluminum, and their alloys, vinyl chloride can also polymerize, a chemical reaction that turns vinyl chloride into a solid-state polymer, which can accelerate the risk of a BLEVE by blocking the proper operation of the pressure relief devices ("PRDs"). *See id.* at ¶ 60-66. A PRD is designed to automatically relieve

3

pressure from the tank car when the tank's contents exceed a pressure threshold. *Id.* ¶¶ 51-52, 54. Car 26 was improperly outfitted with a PRD containing aluminum coating on its springs, and aluminum was also found in the interior of Car 26's manway nozzle. *Id.* ¶ 135(a).

### B. Derailment Response

Shortly after the derailment on February 4, 2023, the pressure inside the derailed tank cars began to rise, and flammable gas venting from Car 26 and the other cars ignited, melting the valves and fittings. Third-Pty. Compl. ¶ 76-77. Although the pool fires surrounding the cars eventually began to die down, the pressure inside one of the five cars containing vinyl chloride, Car 28 (owned by OxyVinyls), continued to increase, with the PRD continuously venting gas for 70 minutes, and first responders were concerned that heat was building inside the car from internal processes. *Id.* ¶ 84. First responders also recorded the internal temperature of another vinyl chloride car, Car 53 (owned by OxyVinyls) at 135 degrees Fahrenheit, and then 138 degrees an hour later—indicating the tank temperature were rising due to internal processes. *Id.* ¶ 86. Responders could not be certain of the internal temperature of Car 26, *id.* ¶ 87, although thermal imaging cameras captured an above-ambient temperature reading. *Id.* ¶¶ 86-89. Given the risk of catastrophic explosions if temperatures and pressure continued to rise, including due to polymerization, on-site industry experts and responders reasonably believed that a vent and burn was the safest option and Unified Command decided to proceed with the vent and burn. *Id.* ¶¶ 95-96. The vent and burn was executed effectively, and without casualties, on February 6, 2023. *Id.* ¶¶ 97-101.

### C. Trinity Did Not Comply With Federal Regulations For Car 26

Trinity owned Car 26. Railcar owners are responsible for a variety of compliance and maintenance measures for tank cars that carry hazardous materials. Third-Pty. Compl. ¶ 116

(citing 49 C.F.R. §§ 180.501 (general applicability), 180.507 (qualification requirements), 180.509 (inspection requirements), 180.517 (reporting requirements)). Pursuant to 49 C.F.R. § 179.3, the Association of American Railroads ("AAR") is charged with approving the design, materials, construction, conversion, and modification of tank cars in accordance with the AAR Manual of Standards and Recommended Practices Specification ("MSRP") for Tank Cars and federal regulatory specifications. *Id.* ¶ 118. Any changes made to the tank car design or components after the fact must also be approved. *See* 49 C.F.R. § 179.6. These regulations were enacted to ensure that tank cars are safe to transport hazardous materials, such as vinyl chloride. *Id.* ¶ 119.

After the derailment, the Federal Railroad Administration ("FRA") identified discrepancies between the approved documentation for Car 26 and its actual physical characteristics, signifying that Car 26 was constructed and maintained in a manner inconsistent with its certification. Third-Pty. Compl. ¶ 120(a). The discrepancies across the five tank cars carrying vinyl chloride included changes to the PRDs, valves, and component parts that had not been approved, such that they were not fit for vinyl chloride transportation. *Id*. ¶ 161. And despite the known risk of polymerization occurring from interaction between vinyl chloride and catalytic metals including aluminum, samples of the interior surface of the manway nozzle of Car 26 revealed the presence of aluminum and aluminum was also found on the car's PRD springs. *Id*. ¶ 135.

### D.   Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment

Within days of the derailment, numerous individuals commenced actions against Norfolk Southern alleging damages from the derailment and the vent and burn. These actions have since been consolidated in the action now before this Court. The plaintiffs purport to represent a class

5

of residents, property owners, employees, and businesses within a 30-mile radius of the derailment site, seeking recovery of alleged "real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, loss of use and enjoyment, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness." *See, e.g.*, Dkt. 138 ¶ 287.

In addition, the United States and the State of Ohio brought actions against Norfolk Southern under CERCLA and Ohio law to recover, *inter alia*, natural resources damages and CERCLA cleanup oversight costs. *See United States v. Norfolk Southern Ry. Co.*, No. 4:23-cv-675-JRA (N.D. Ohio); *Ohio v. Norfolk Southern Ry. Co.*, No. 4:23-cv-517-JRA (N.D. Ohio).

To date, and without any finding of liability, Norfolk Southern has paid millions of dollars for the benefit of residents and businesses in and around East Palestine, and is continuing to conduct a comprehensive environmental response in the area.

Norfolk Southern brings the third-party claims in this action against Trinity, along with Third-Party Defendants OxyVinyls, GATX Corporation, and General American Marks Company, so that all parties who are or may be liable are before the Court, as specifically permitted by Rule 14(a) of the Federal Rules of Civil Procedure ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it").

**STANDARD OF REVIEW**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in

favor of the plaintiff." *Cont'l Cas. Co. v. Equity Indus. Maple Heights, LLC*, 2016 WL 2927847, at *1 (N.D. Ohio May 19, 2016); *see also* Fed. R. Civ. P. 8(a)(2) (setting forth the liberal pleading standard, requiring merely "a short and plain statement of the claim showing that the pleader is entitled to relief"). "On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint may also be taken into account." *Correnti v. City of Cleveland*, 2022 WL 17176823, at *2 (N.D. Ohio Nov. 21, 2022).

When a defendant affirmatively raises a personal jurisdiction challenge under Federal Rule of Civil Procedure 12(b)(2), the court may decide the motion based on written submissions only, permit discovery in aid of the motion, or conduct an evidentiary hearing on the merits of the motion. *See Serras v. First Tennessee Bank Nat'l. Assoc*., 875 F.2d 1212, 1214 (6th Cir. 1989). If the district court relies solely on written submissions to resolve a motion to dismiss for lack of personal jurisdiction, "the burden on the plaintiff is 'relatively slight.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc*., 503 F.3d 544, 549 (6th Cir.2007)). The plaintiff need only make a "*prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Am. Metal Stamping Co., LLC v. Pittsburgh Pipe & Supply Corp*., 2022 WL 19349904, at *3 (N.D. Ohio June 6, 2022). The court must construe all "the pleadings and the affidavits in a light most favorable to the plaintiff" and disregard any "contrary factual contentions of the defendant." *Vlach v. Yaple*, 670 F. Supp. 2d 644, 647 (N.D. Ohio 2009); *see also Serras*, 875 F.2d at 1215 (where plaintiff's written submissions state facts sufficient to establish personal jurisdiction, the court is "obligat[ed] to ignore contrary assertions" by defendant).

## ARGUMENT

### I.    The Court Has Personal Jurisdiction Over Trinity

Norfolk Southern has made a *prima facie* showing that Trinity is subject to specific personal jurisdiction in this Court. This assertion of jurisdiction comports with both the Ohio long-arm statute and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

A federal court sitting in a diversity case may exercise personal jurisdiction over an out-of-state defendant if a court of the forum state, here Ohio, could do so. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (citing *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021)). "Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Gerber v. Riordan*, 649 F.3d 514, 517 (6th Cir. 2011). General jurisdiction "exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there." *Sullivan*, 79 F.4th at 660 (citation omitted). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*; *Gerber*, 649 F.3d at 517 (specific jurisdiction is proper "in a suit arising out of or related to the defendant's contacts with the forum.").[1]

To determine whether specific personal jurisdiction exists over a non-resident defendant, a court must (1) assess if the applicable forum state's long-arm statute provides sufficient basis for asserting jurisdiction over the defendant and (2) ensure that the exercise of jurisdiction over

---

[1] For purposes of this opposition, Norfolk Southern does not contend that the Court has general jurisdiction over Trinity.

the non-resident defendant comports with the Due Process Clause. *See Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 112 (6th Cir. 2005).

Here, Norfolk Southern's Third-Party Complaint and Declaration of Chris A. Rheinheimer ("Rheinheimer Declaration") make a *prima facie* showing that this Court has specific personal jurisdiction over Trinity under Ohio's long-arm statute, O.R.C. § 2307.382, which is co-extensive with the limits of the Due Process Clause. Should the Court find that Norfolk Southern has not made a *prima facie* showing of personal jurisdiction over Trinity, Norfolk Southern respectfully requests jurisdictional discovery and leave to amend the Third-Party Complaint. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (a court "may permit discovery in aid of deciding" a motion to dismiss based on lack of personal jurisdiction).

A.    **Ohio's Long-Arm Statute Is Co-Extensive With Due Process**

In April 2021, the Ohio General Assembly amended Ohio's long-arm statute to extend the reach of Ohio's jurisdiction to the limits permitted by the United States Constitution. The Ohio statute now states that "a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." O.R.C. § 2307.382(C). In other words, "if the Court finds that it has personal jurisdiction over Defendants under the federal Due Process Clause, it will also have personal jurisdiction over Defendants under Ohio's long-arm statute." *Architectural Busstrut Corp. v. Smith LC*, 2022 WL 1837596, at *2 (S.D. Ohio Feb. 8, 2022); *Dollison v. Antero Res. Corp*., 600 F. Supp. 3d 827, 836 (S.D. Ohio 2022) ("[I]f the Court finds that it has personal jurisdiction over SWN under the federal Due Process Clause, it will also have personal jurisdiction over SWN under Ohio's long-arm statute."). Accordingly, courts now collapse the specific personal jurisdiction analysis under

9

Ohio's law into a single due-process inquiry, i.e, whether the assertion of jurisdiction is permitted by the Due Process Clause. *See e.g.*, *Zahara Ariel LLC v. Lionsgate Ent. Corp.*, 2023 WL 4706188, at *2 (S.D. Ohio June 14, 2023) (because the revised Ohio long-arm statute is "co-extensive with the limits of the federal Due Process Clause," the court only needs to determine whether exercising personal jurisdiction violates constitutional due process) (citing *Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003)); *Bren Ins. Servs., Inc. v. Envision Pharm. Servs.*, *LLC*, 2022 WL 5160746, at *3 (N.D. Ohio Oct. 5, 2022) (same); *C. T. v. Red Roof Inns, Inc.*, 2021 WL 2942483, at *10 (S.D. Ohio July 1, 2021), *appeal dismissed*, 2021 WL 4739619 (6th Cir. Aug. 4, 2021) (same).

Trinity contends that the scope of specific jurisdiction under the Ohio long-arm statute remains unchanged despite the April 2021 amendment. Mot. 7 n.2; 9 n.4. In support, Trinity cites a few cases that interpret the amendment as applying to general jurisdiction only. *Id*. at 7 n.2; *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 (S.D. Ohio 2021); *SpyGlass Grp. v. Genesis Health Clubs Mgmt., Inc.*, 2022 WL 17251820, at *4 (N.D. Ohio Nov. 28, 2022). Those cases represent a minority view. "[M]ost of the courts to address the amended language" have concluded otherwise, holding that "Ohio's long-arm statute now extends personal jurisdiction to the fullest extent that the U.S. Constitution permits" and that the "Court need only inquire whether the exercise of personal jurisdiction comports with the limits of the Due Process Clause." *AmaTech Grp. v. Fed. Card Servs.*, 2022 WL 44674, at *5 (S.D. Ohio Jan. 5, 2022); *see also Smith v. Swaffer*, 566 F. Supp. 3d 791, 806 (N.D. Ohio 2021) ("In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution."); *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, 550 F. Supp. 3d 488, 493 (N.D.

Ohio 2021) ("Ohio recently amended its long-arm statute, Ohio Rev. Code § 2307.382, to mirror the constitutional limitations for personal jurisdiction").

Courts have interpreted the April 2021 amendment of the Ohio long-arm statute as conterminous with due process for good reason—that is exactly what the Ohio legislature intended the amendment to do. *See Miller v. Kent Nutrition Grp., Inc.*, 2016 WL 11246420, at *3 (N.D. Ohio Sept. 16, 2016) (should the court find ambiguity in the language of a statute, the court may consider indicia of legislative intent, including the legislative history). Specifically, the Ohio legislature amended the state's long-arm statute for the purpose of "expand[ing] the basis of a court's personal jurisdiction to include *any basis* consistent with … the United States Constitution." Amended S.B. 10, 133d Gen. Assembly (Ohio Jan. 7, 2021) (emphasis added); *see also* Ohio House Journal 2279 (Sept. 1, 2020). Whereas Ohio law at the time allowed courts to exercise long-arm jurisdiction for "only a cause of action arising from the listed acts" (i.e. the nine enumerated categories), the legislature intended the amendment to mean that "*in addition to* a court's exercise of personal jurisdiction over the listed causes of action, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Legislative Service Commission, Bill Analysis, H.B. 272, 133d Gen. Assembly (Oct. 23, 2019). Thus, adopting Trinity's position that "new amendments … only come into play if the party is … asserting [general] personal jurisdiction" would mean that specific jurisdiction only arises under Ohio law if the enumerated circumstances apply, contrary to the very purpose of the amendment to expand jurisdiction beyond those circumstances. Mot. 9 n.4.[2]

---

[2] Trinity also cites to cases where Ohio courts have conducted a two-part jurisdictional analysis—ignoring that in all of those cases, the courts did not address, let alone interpret, the amendment of the Ohio long-arm statute. Mot. 9 n.4.

Consistent with other courts analyzing the April 2021 amendment in the context of specific jurisdiction, this Court should treat the Ohio long-arm statute as conterminous with the Due Process Clause, considering only whether the exercise of personal jurisdiction over Trinity comports with Due Process.[3] Norfolk Southern has made a *prima facie* showing that it does.[4]

### B. Specific Jurisdiction Over Trinity Comports With Due Process

For personal jurisdiction to attach consistent with the Due Process Clause, a non-resident defendant must have sufficient contacts with the forum state such that the exercise of jurisdiction over the defendant does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Courts in the Sixth Circuit apply a three-part test to determine if specific personal jurisdiction exists: (1) the defendant must purposefully have availed itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *See Sullivan*, 79 F.4th at 670 (6th Cir. 2023) (citation omitted).

---

[3] Trinity's argument that the amended version of Ohio's long-arm statute is not applicable because its conduct at issue in this case "occurred pre-amendment in 2016" misstates the law. "Jurisdiction is determined as of the commencement of an action" and this action was commenced in 2023—two years after the amendment of the Ohio long-arm statute. *See Smith*, 566 F. Supp. 3d at 806 (considering when plaintiffs commenced their action to determine if the April 2021 amendment to the Ohio long-arm statute applied); *NOCO Co.*, 550 F. Supp. 3d at 493 (considering when the case was filed to determine if the amendment to Ohio's long-arm statute is applicable).

[4] Even if Ohio's long-arm statute was not co-extensive with due process, Trinity's forum contacts would satisfy Ohio's long-arm statute. O.R.C. § 2307.382(A). *First*, by leasing railcars to Ohio customers, Trinity "transact[s]. . . business in [Ohio]." *Id.* § 2307.382 (A)(1). *Second*, Trinity "[c]ontract[s] to supply services or goods" in Ohio, including by leasing its railcars to companies that route its cars through Ohio. *Id.* § 2307.382 (A)(2). *Third*, Norfolk Southern's negligence and contribution claims seek damages for injuries proximately caused by Trinity's negligence in Ohio. *Id.* § 2307.382 (A)(3) ("[c]ausing tortious injury by an act or omission in [Ohio]").

### 1. Trinity has purposefully availed itself of the privilege of acting in Ohio

The Sixth Circuit has adopted the "stream of commerce plus" test to determine if a defendant has purposefully availed itself of the laws of a forum state. *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 220 (6th Cir. 2006). That test is satisfied if the non-resident defendant "plac[es] a product into the stream of commerce" and then takes affirmative steps to distribute the product at issue (in this case, a railcar) within the forum state. *Id.*

Trinity cannot dispute that it places its railcars into the "stream of commerce" when it leases them to third parties who ship them throughout the United States. Trinity and its parent, Trinity Industries, Inc., operate under the name "TrinityRail," which describes itself as the "leading provider[] of railcar products and services in North America." *See* Rheinheimer Decl. ¶ 6, Ex. C. TrinityRail claims that its "lease fleet of more than 140,000 railcars is one of the largest and fastest growing in North America." *See* Rheinheimer Decl. ¶ 7, Ex. D. By leasing its railcars to shippers that distribute them throughout the country, Trinity "undoubtedly kn[ows] that its [railcars] could end up in [Ohio] through the stream of commerce." *Fortis Corp. Ins.*, 450 F.3d at 221 (citing *Mott v. Schelling & Co.*, 966 F.2d 1453 (6th Cir. 1992) (a party "cannot avoid liability for injuries caused by its products [in the forum state] by creating a paper transfer through a middleman"); *see also Step2 Co., LLC v. Parallax Grp. Int'l, LLC*, 2010 WL 3783151, at *6 (N.D. Ohio Sept. 17, 2010) ("It is reasonable to infer that [products] placed into the stream of commerce through [] established national distribution channels may make their way to Ohio.").

Trinity has also taken affirmative steps to distribute its railcars specifically in Ohio. Trinity leased Car 26 to OxyVinyls, an entity that regularly does business in and ships railcars through Ohio. Third-Pty. Compl. ¶¶ 27-28, 39. In fact, Car 26 traveled on the Fort Wayne Line

13

through northeast Ohio before it derailed in East Palestine, Ohio. *Id.* ¶¶ 6, 40; *see also CSX Transp., Inc. v. Union Tank Car Co.*, 247 F. Supp. 2d 833, 842 (E.D. Mich. 2002) (defendant "purposefully availed itself of causing a consequence within [Michigan]" when it "leas[ed] a rail tank car which it knew or should have known would travel on [third party's] rail system, which includes Michigan"). Trinity also admits it leases cars, such as DOT-105J300W tank cars (the same model as Car 26), to other customers with billing addresses in Ohio and derives revenue from railcars routed through Ohio; indeed, Trinity concedes it "derived approximately 2% of its total revenue *from railcars routed through Ohio*" in 2022. Dkt. 190-2 ¶ 10-11, 14 (emphasis added). Trinity's railcars that regularly pass through Ohio are also repaired within the State, and Trinity pays for those repairs. *See* Rheinheimer Decl. ¶ 5, Ex. B. Since December 2014, Norfolk Southern has submitted over 24,600 invoices to Trinity for car repairs performed in Ohio, totalling over $3,800,000 in repair costs. *Id.*; *see also CSX*, 247 F. Supp. 2d at 842 (defendant had sufficient contacts with Michigan where it generated revenue from its railcars traveling through the state and paid for a significant number of repairs to its railcars within the state). In the face of these facts, Trinity cannot deny that it purposefully availed itself of the laws of Ohio with respect to its railcars, and Car 26 in particular.

### 2. Norfolk Southern's claims arise from and relate to Trinity's conduct in Ohio

Norfolk Southern's claims also "arise out of or relate to [Trinity's] contacts with the forum." *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). A cause of action arises from conduct in Ohio where a plaintiff can "establish at least a 'causal connection' between a defendant's activities in the forum state and the harm to the plaintiff." *Opportunity Fund, LLC, v. Epitome Sys., Inc.*, 912 F. Supp. 2d 531, 540 (S.D. Ohio 2012). However, jurisdiction may also exist without "proof of causation—*i.e.*, proof that the plaintiff's

14

claim came about because of the defendant's in-state conduct," if the defendant's contacts with the forum "relate to" the litigation. *Ford*, 141 S. Ct. at 1026 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."). Put differently, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (citation omitted). For example, where the "brunt of the harm" (the alleged release of hazardous materials from the railcar) is felt in one State, "based on the effects" of the out-of-state conduct (the lease and unapproved modifications of Car 26), jurisdiction is appropriate. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (internal quotation marks omitted).

Norfolk Southern's negligence and contribution claims against Trinity arise from, or at the very least "relate to," Trinity's activities in Ohio. Trinity leases railcars to customers that transport their railcars through Ohio, has its railcars repaired in Ohio, and derives revenue from its leases when its railcars travel through Ohio. *See* Dkt. 190-2 ¶¶ 10-11; *Ford Motor Co.*, 141 S. Ct. at 1028 ("specific jurisdiction attaches in cases identical to this one—when a company cultivates a market for a product in the forum state and the product malfunctions there"). Specifically, Trinity leased Car 26 to OxyVinyls, and Car 26 traveled on the Fort Wayne Line through northeast Ohio before it derailed in East Palestine, Ohio. Dkt. 190-2 ¶¶ 12; Third-Pty. Compl. ¶¶ 27, 40. Norfolk Southern's claims are based on Trinity's failure to follow federal regulations designed to ensure that Car 26, leased to OxyVinyls and shipped through Ohio, was safe to transport vinyl chloride in Ohio and elsewhere. Third-Pty. Compl. ¶ 152. Thus, there is a strong "relationship among the defendant [Trinity], the forum [Ohio], and th[is] litigation"—the

15

'essential foundation' of specific jurisdiction." *Ford Motor Co.*, 141 S. Ct. at 1028 (citation omitted).

### 3.    The exercise of personal jurisdiction over Trinity is reasonable

The third factor in the Sixth Circuit's three-part test is whether there is a substantial enough connection between the acts of the defendant or consequences caused by the defendant and the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air Prods.*, 503 F.3d at 549. Notably, where "the first two criteri[a] are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" *Id.* at 554 (citation omitted). For this factor, courts typically consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *See Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

Here, the exercise of personal jurisdiction in Ohio is entirely reasonable. *First*, there is little to no burden placed upon Trinity by litigating this case in Ohio given the matter's direct connection with Ohio residents and, in any event, Trinity has not argued and has "provide[d] no specific facts or other particular support" in favor of a finding that litigating this matter in Ohio would be substantially burdensome. *See AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016) (holding the exercise of personal jurisdiction over Texas resident reasonable where he "deliberately affiliated himself with [the forum] and its residents, and the fact that [defendant] lives in Texas does not overcome the inference of reasonableness"). *Second*, "Ohio has a strong interest in ensuring the enforcement of its laws," especially because the violation of its tort laws is alleged to have resulted in harm affecting purported Ohio class members. *CrossCountry Mortgage, Inc. v. Messina*, 2019 WL 5653288, at *14 (N.D. Ohio Oct. 31, 2019).

16

*Third*, Norfolk Southern has a strong interest in obtaining relief in a single proceeding from all those who are or may be liable, and the most reasonable place for that proceeding—both for Norfolk Southern and for the efficient use of judicial resources—is this one already before the Court where Norfolk Southern (and now, through the First Amended Master Consolidated Class Action Complaint, Trinity) has been sued by the First-Party Plaintiffs. *Huey Jiuan Liang v. AWG Remarketing*, 2015 WL 65258, at *8 (S.D. Ohio Jan. 5, 2015) (finding exercise of jurisdiction over third-party defendant reasonable to avoid "piecemeal litigation" and crediting third-party plaintiffs' assertions "that they have a vested interest in resolving the lawsuit in this forum, in turn preventing them from engaging in a separate lawsuit in a different forum that would require the presentation of the evidence given in this case").

### C.      The Court Should Grant Jurisdictional Discovery

In the event the Court finds Norfolk Southern's Third-Party Complaint and Affidavit do not make a *prima facie* showing of personal jurisdiction over Trinity, Norfolk Southern respectfully requests that the Court permit Norfolk Southern to take jurisdictional discovery before ruling on Trinity's Rule 12(b)(2) motion. Where, as here, a motion to dismiss for lack of personal jurisdiction creates factual questions, courts have discretion to "permit discovery in the aid of deciding the motion." *Theunissen*, 935 F.2d at 1458. A grant of jurisdictional discovery is appropriate if a plaintiff has shown that personal jurisdiction over the defendant "*may* be consistent with the Federal Due Process Clause and Ohio's long-arm statute," but "additional evidence demonstrating that [the defendant] made the necessary contacts in Ohio" can only be learned through discovery. *See Arnold v. CooperSurgical, Inc.*, 2023 WL 4552154, at *12 (S.D. Ohio July 10, 2023). Jurisdictional discovery should be allowed "unless the plaintiff's claim is 'clearly frivolous.'" *Carr v. DJO Inc.*, 2012 WL 3257666, at *3 (S.D. Ohio Aug. 8, 2012).

Permitting Norfolk Southern to conduct jurisdictional is warranted. Discovery into factual questions such as the extent of Trinity's knowledge regarding the routes its leased railcars take,[5] how often Trinity's railcars travel through Ohio, whether Trinity regularly leases its railcars to lessees that transport railcars through Ohio, Trinity's solicitation of business from Ohio, and its corporate structure and finances, among other things, could further demonstrate that Trinity has the requisite contacts with Ohio to support this Court's exercise of personal jurisdiction.

## II.  Norfolk Southern's Claims Against Trinity Are Not Preempted

Trinity argues that Norfolk Southern's negligence and contribution claims must be dismissed because they are preempted by the FRSA and CERCLA. Mot. 15-20. Trinity is wrong on both grounds. First, the FRSA makes clear that it does not preempt claims premised on a party's failure to comply with federal regulations. Second, CERCLA does not preempt Norfolk Southern's state law claims against Trinity because there is no conflict between the state law claims and CERCLA and the state law claims against Trinity seek damages separate from those covered by CERCLA.

### A.  Norfolk Southern's Negligence Claim Against Trinity Is Not Preempted By FRSA

Norfolk Southern's negligence claim is not preempted because Norfolk Southern's Third-Party Complaint alleges multiple violations by Trinity of federal regulations and these allegations must be taken as true for purposes of this motion. *See Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 178 (3d Cir. 2013) ("We first ask whether the defendant allegedly violated

---

[5] For example, Trinity asserts that "*[m]ost of the time*, Trinity is not even aware of the routes on which its leased railcars are shipped or where their destination is," Dkt. 190-2 (emphasis added), but, in doing so, raises questions as to how often and in what circumstances it *is* aware of the routes of its railcars. Notably, limited jurisdictional discovery may show that Trinity was aware that TILX402025 (Car 26) was routed through Ohio.

either a federal standard of care or an internal rule that was created pursuant to a federal regulation. If so, the plaintiff's claim avoids preemption. *See* 49 U.S.C. Section 20106(b)(1)(A)-(B). Otherwise, we move to the second step and ask whether any federal regulation covers the plaintiff's claim."). And since Norfolk Southern seeks to hold Trinity liable for violating a federal standard of care created pursuant to federal regulations and does not rely on any state law that imposes a more stringent standard of care than the regulations require, Norfolk Southern's claims are not preempted.

The purpose of FRSA is to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. FRSA seeks to accomplish this by ensuring that "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security [are] nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). As a general rule, "FRSA preempts any state or local law, regulation, or order that is 'an additional or more stringent law, regulation, or order related to railroad safety or security.'" *Smith v. CSX Transp., Inc.*, 2014 WL 3732622, at *2 (N.D. Ohio July 25, 2014) (quoting 49 U.S.C. § 20106(a)(2)).

Significantly, a 2007 amendment clarified the limits of FRSA preemption, providing that "'nothing in [the preemption] section of FRSA shall be construed as preventing an action under State law seeking damages for personal injury, death, or property damage' when the claim alleges that a party has 'failed to comply' with a federal regulation, the party's own safety standard, or a state law or regulation that has met the criteria set forth in Section 20106(a)(2)." *Smith*, 2014 WL 3732622, at *2 (quoting 49 U.S.C. § 20106(b)(1)). Norfolk Southern's negligence claim is based on Trinity's failure to comply with federal regulations and therefore is not preempted under FRSA.

19

As a railcar owner, Trinity is subject to regulations promulgated by the Secretary of Transportation that outline railcar owners' obligations to promote safety in railroad operations and reduce railroad-related accidents and incidents.[6] Notably, 49 C.F.R. Part 179 governs specifications for tank cars like Car 26. It authorizes the AAR to approve the design, materials, construction, conversion, and modification of tank cars in accordance with the AAR MSRP Specification for Tank Cars and the federal regulatory specifications. 49 C.F.R. § 179.3; *see also* 49 C.F.R. § 179.5(a) (requiring builders to furnish Certificate of Construction to tank car owners certifying that tank, equipment, and car fully conform to regulations). Car owners must receive approval for the car construction and any design or component changes that are made later. 49 C.F.R. §§ 179.3, 179.6. Car owners must continually certify that they have complied with these requirements and obtained the proper approvals. 49 C.F.R. §§ 180.507, 180.517.

Additionally, 49 C.F.R. § 180 states that tank cars marked as a "DOT" specification "must retain the certificate of construction (AAR Form 4-2) and related papers certifying that the manufacture of the specification tank car identified in the documents is in accordance with the applicable specification." 49 C.F.R. §§ 180.507, 180.517. DOT specifies that tank car owners, such as Trinity, are responsible for the inspection, testing, and requalification of the tank car's structural integrity, thickness, internal coating or lining, leakage under pressure, and service equipment like PRDs, at set temporal intervals. *See* 49 C.F.R. § 180.509 *et seq*.

Norfolk Southern's negligence claim is not preempted by FRSA because it is based on Trinity's failure to comply with these federal regulations which create the federal standard of care. *See Smith*, 2014 WL 3732622, at *2 (negligence claim not preempted by FRSA because

---

[6] FRSA does not preempt state law claims that allege a violation of any "federal standard of care established by a regulation or order issued by the Secretary of Transportation," 49 U.S.C. § 20106(b)(1)(A), which includes regulations promulgated under the Hazardous Materials Transportation Act ("HMTA").

plaintiffs alleged a failure to comply with regulations prescribed by FRSA). As alleged in the Third-Party Complaint, the FRA found that Trinity's AAR 4-2 Certificate of Construction for Car 26, a DOT-105J300W specification tank car carrying vinyl chloride (Third-Pty. Compl. ¶¶ 46-48), contained discrepancies and did not match the car's actual characteristics. *Id.* ¶¶ 120, 152, 161.  Discrepancies to the five vinyl chloride cars on Train 32N included non-approved changes to the PRDs, valves, and component parts, meaning Car 26 was not approved for vinyl chloride transportation. *Id*. ¶ 161. In other words, Car 26 was constructed of materials *incompatible with vinyl chloride*, as evidenced by the aluminum found in samples of the interior surface of the manway nozzle and the aluminum coating on the PRD springs. *Id.* ¶ 135. Therefore, Trinity violated 49 C.F.R. § 180 by failing to retain accurate certifications that its tank car complied with the applicable specifications under 49 C.F.R. § 179.

Nonetheless, Trinity contends that Norfolk Southern's allegations regarding discrepancies between the AAR 4-2 and Car 26's actual characteristics are vague and do not amount to a claim that Trinity violated any federal regulation. Mot. at 25-26. Putting aside that Norfolk Southern's allegations regarding the discrepancies are sufficiently pled (Third-Pty. Compl. ¶¶ 120, 152, 161), Trinity does not (and cannot) deny that Norfolk Southern has alleged the existence of discrepancies in Car 26's Form AAR 4-2 and the car's actual characteristics on the day of the derailment, which necessarily means Trinity violated federal regulations regardless of the actual discrepancies.

Finally, Norfolk Southern's argument that the First-Party Plaintiffs' claims are preempted by FRSA is not inconsistent with its assertion that its third-party negligence claim against Trinity is *not* preempted. Norfolk Southern's properly pled negligence claim identifies specific regulations violated by Trinity and seeks only to hold Trinity liable for its breach of the federal

standard of care created by these federal regulations. In contrast, Plaintiffs fail to sufficiently

plead a violation of any applicable federal regulations by Norfolk Southern, and instead seek to

impose liability on Norfolk Southern for various state law negligence claims that go far beyond

any obligations or standard of care required by the federal regulations. This is a critical

distinction because, as noted above, "FRSA preempts any state or local law, regulation, or order

that is 'an additional or more stringent law, regulation, or order related to railroad safety or

security.'" *Smith v. CSX Transp., Inc.*, 2014 WL 3732622, at *2 (N.D. Ohio July 25, 2014)

(quoting 49 U.S.C. § 20106(a)(2)). Norfolk Southern's negligence claim against Trinity is not

preempted by FRSA.[7]

> **B.**     **Norfolk Southern's Claims Are Not Preempted By CERCLA**

CERCLA does not preempt Norfolk Southern's state law claims against Trinity for two

independent reasons. First, Norfolk Southern is seeking damages from Trinity separate from

those covered by CERCLA. Second, there is no conflict between the state law claims and

CERCLA.

> **1.**     **Norfolk Southern is seeking damages under state law claims that are different from those recoverable under CERCLA**

Norfolk Southern's claims are not preempted by CERCLA because Norfolk Southern

does not seek damages here that would be covered by CERCLA. Trinity argues that "Norfolk

Southern's negligence claim effectively seeks the CERCLA costs it has incurred related to

environmental clean-up." Mot. at 19. That mischaracterizes Norfolk Southern's third-party

claims. Norfolk Southern does not seek its CERCLA environmental response costs in this action;

---

[7] Trinity also argues that Norfolk Southern's negligence claim is "substantially subsumed" by FRSA and is therefore preempted. Mot. at 17. However, Trinity concedes that where a state law action alleges that a party has failed to comply with a federal regulation, it is not preempted (*id.* at 16). Thus, the Court does not need to consider if the state law action is "substantially subsumed" by FRSA.

rather, it seeks contribution for Trinity's share of Norfolk Southern's potential responsibility to the putative class.

> ### 2. There is no conflict between CERCLA and Norfolk Southern's state law claims

Trinity's preemption argument fails for a second, independent reason: Norfolk Southern's claims do not defeat the purpose of CERCLA. "The question, for preemption purposes, is whether compliance with the state law defeats the purposes and objectives of the federal law, not whether the two laws impose different standards by different means." *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 695 (6th Cir. 2015).[8] Trinity asserts that Section 113(f) of CERCLA—the mechanism for seeking contribution from other parties for CERCLA costs—preempts Norfolk Southern's negligence and contribution claims in this case because, according to Trinity, "assigning liability under Ohio state law would interfere with CERCLA's contribution scheme." Mot. at 18 (quoting 42 U.S.C. § 9613(f)(1)).

Trinity fails to articulate how Norfolk Southern's state claims interfere with the CERCLA scheme. Section 113 was enacted as part of the Superfund Amendments and Reauthorization Act ("SARA") to "speed up CERCLA's remedial processes at every phase and to make CERCLA more effective," in part by "ensur[ing] that once the EPA chooses a removal or remedial action for a particular site, litigation will not delay the completion or enforcement of a cleanup action." *Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 778–79, 784-85 (7th Cir. 2008). CERCLA specifically states that its contribution scheme is limited to "seek[ing] contribution from any other person who is liable or potentially liable under Section 9607(a) of this title"—the

---

[8] The United States Supreme Court recently affirmed that state law claims for damages beyond what are recoverable under CERCLA may proceed in parallel with an ongoing CERCLA cleanup. *See Atlantic Richfield Co. v. Christian*, 140 S. Ct. 1335, 1345–48, 1355 (2020) (holding that Montana property owners' state claims for restoration damages for property within the boundaries of a CERCLA Superfund site could proceed).

provision governing parties liable for CERCLA damages—"during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1). Accordingly, courts have generally held that CERCLA Section 113 preempts state law claims "only to the extent that they regard 'matters addressed in the [CERCLA] settlement.'" *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1494 n.4 (S.D. Ohio 1991) (quoting 42 U.S.C. § 9613(f)(2)); *see also Am. Premier Underwriters, Inc. v. Gen. Elec. Co.*, 2008 WL 11351545, at *16 (S.D. Ohio Aug. 1, 2008) (holding that common law contribution "[does] not undermine CERCLA's settlement scheme because [the party from whom contribution is sought] has not resolved its liability to the United States and is therefore not entitled to contribution immunity"); *see also Vill. of DePue, Ill.*, 537 F.3d at 787 (holding state law was not preempted by CERCLA because defendant "failed to show that any CERCLA-authorized remediation effort … is implicated in this case with which the [state law] could conflict"). Trinity does not, and cannot, identify how Norfolk Southern's state law claims conflict with CERCLA under Section 113 because, at this point in time, no parties have resolved their CERCLA liability. Thus, there is no conflict between CERCLA and state law claims, and the state law claims are not preempted.

III.    **Norfolk Southern Has Sufficiently Pled A Negligence Claim Against Trinity**

Trinity also alleges that Norfolk Southern has not pled all elements of negligence under Ohio law. The Court should deny Trinity's request for dismissal on that basis because Norfolk Southern has sufficiently alleged the existence of a duty, Trinity's breach of that duty, and harm proximately caused by Trinity's breach of duty. *See Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 635 (N.D. Ohio 2014) (stating elements of a negligence claim).

*First*, the Third-Party Complaint sets forth in sufficient detail that Trinity had a duty to exercise reasonable and ordinary care to ensure the "safety of individuals and entities whose

24

persons or property were within reasonable proximity to the rail line, Norfolk Southern's employees and its property, and the environment" including by complying with all federal regulatory requirements for the certification of Car 26's design and components. Third-Pty. Compl. ¶¶ 103-105, 115-125, 149-151; 49 C.F.R. §§ 179.3, 179.6. Trinity's argument that Norfolk Southern fails to distinguish between the duties owed by Trinity as the owner of Car 26 and OxyVinyls as the shipper is incorrect. *See* Mot. at 22. The Third-Party Complaint specifies that certification is the sole domain of car owners, not shippers. Third-Pty. Compl. ¶ 124. It further alleges that railroads such as Norfolk Southern rely on car owners' compliance with federal regulations and the accuracy of certification information provided by car owners to ensure the cars can safely transport materials. *Id.* ¶¶ 17, 115-125. Trinity attempts to disavow all responsibility, alleging that Norfolk Southern bears sole responsibility for the condition of cars on its line under AAR Interchange Rules. Mot. at 22. But Trinity ignores that both federal regulations and the Interchange Rules divide and assign responsibilities for maintenance and inspection in rail transportation between car owners, railroads, and other entities. *Id*. ¶¶ 103, 105. The Interchange Rules establish that car owners are responsible for and chargeable with repairs to their railcars necessitated by wear and tear. *See id.* ¶ 105. That responsibility continues even after a car owner leases its car to a shipper or the car is being transported by a railroad. *See* Dkt. No. 138 at ¶¶ 128-129, 147-152 (First Amended Consolidated Class Action Complaint). Although railroads have their own discrete inspection duties, they rely on car owners meeting their responsibilities to ensure that the cars comply with federal standards and are safe for transport. *Id.* ¶ 125.

All the cases that Trinity cites on this point are distinguishable because, in those cases, the plaintiffs failed to identify the source of any duty of care. In *Metropolitan Property &*

*Casualty Ins. Co. v. Pest Doctor Systems, Inc.*, 2014 WL 2855003, at *4 (S.D. Ohio June 23, 2014), plaintiff's complaint failed to allege defendant "owed any duty of care *at all* to [plaintiff]" relating to pest control services, "let alone [] the source of that duty." Likewise, in *CNA Ins. Co. v. Mentor Magnetic Imaging, Inc.*, 2009 WL 10688218, at *4 (N.D. Ohio Sept. 16, 2009), the court noted that plaintiff devoted a "single sentence" to duty and did "not assert a source" for the duty it alleged. In *Miller ex rel. Miller v. Allianz Life Ins. Co. of North America*, 2020 WL 5653548, at *9 (N.D. Ohio Sept. 23, 2020), the court held the complaint did not plead the existence of a duty to provide proper investment advice where plaintiff conceded there was no allegation that defendant held itself out as a financial advisor from which such a duty could arise. And in *Ault v. Medina Medical Investments LLC*, 2007 WL 81853 (N.D. Ohio Jan. 8, 2007), plaintiff asserted that defendant owed a duty arising from contract but did not allege the existence of a contract between the parties. In contrast to each of these cases, Norfolk Southern's Third-Party Complaint identifies both the existence of a duty and its source—as a car owner, Trinity had a duty to ensure safety by complying with federal regulations set by the FRA and AAR. *See e.g.*, Third-Pty. Compl. ¶¶ 103-105, 122, 123, 149-151.

*Second*, Norfolk Southern has plausibly alleged that Trinity breached its duty to exercise reasonable and ordinary care when it failed to comply with federal regulations requiring it to certify continuously that Car 26's design and components were approved by the AAR, as evidenced by discrepancies between the AAR 4-2 and Car 26's actual characteristics on the day of derailment. Third-Pty. Compl. ¶¶ 120, 135, 152, 161.[9] Trinity contends that Norfolk Southern has not provided enough detail regarding the discrepancies the FRA found between the AAR 4-2

---

[9] Norfolk Southern is not alleging that Trinity was negligent per se (*see* Mot. at 24), but rather that Trinity's failure to abide by the regulations is evidence of Trinity's negligence, to be considered by the trier of fact.

and Car 26's actual characteristics (Mot. at 23). But Trinity ignores that the Third-Party Complaint identifies specific discrepancies found across the five tank cars carrying vinyl chloride on Train32N, such as non-approved changes to the PRDs, valves, and component parts, indicating they were not fit for vinyl chloride transportation. Third-Pty. Compl. ¶ 161. The fact that the FRA found these discrepancies existed further supports Norfolk Southern's claim that Trinity failed to comply with federal regulations and therefore breached its duty. *See e.g.*, *id.* ¶¶ 103, 105, 120, 125, 152, 161. And despite the risk of polymerization when vinyl chloride is exposed to aluminum, Car 26 contained aluminum in its manway nozzle and PRD springs—a clear breach of the duty to ensure the safety of individuals near the car. *Id.* ¶¶ 134-135.

*Finally,* Norfolk Southern has adequately pled that Trinity's breach of duty caused harm by contributing to the release of hazardous materials. Third-Pty. Compl. ¶ 153. Proximate cause is "an act or failure to act that was a substantial factor in bringing about an injury and without which the injury would not have occurred." *Hardwick v. 3M Co.*, 2019 WL 4757134, at *16 (S.D. Ohio Sept. 30, 2019). A party's negligence is a proximate cause of an injury if "the injury is a natural and foreseeable result of the party's act or failure to act." *Brott Mardis & Co. v. Camp*, 768 N.E.2d 1191, 1194 (Ohio Ct. App. 2001). In this case, Trinity failed to follow federal regulations designed to ensure that Car 26 was safe to transport vinyl chloride, and it was reasonably foreseeable that such a failure would create a risk of polymerization and explosion in the event of an emergency, just as happened here. Third-Pty. Compl. ¶ 152. At the time of the derailment, Car 26 was one of five cars transporting vinyl chloride, a volatile and hazardous chemical that can, under certain circumstances, rapidly vaporize and expand resulting in a BLEVE or can polymerize, increasing the risk of BLEVE. *Id.* ¶¶ 46-47. Trinity provided a car that was not suitable for vinyl chloride service, as evidenced by Car 26's AAR 4-2 and the

27

FRA's findings. As explained, aluminum is incompatible with vinyl chloride but was found in samples of the interior surface of Car 26's manway nozzle and in the coating on the PRD springs of Car 26. *Id.* ¶ 135. Preventing the release of hazardous materials is precisely why federal regulations require car owners to ensure their cars are safe for the transportation of the material. *See* 49 C.F.R. § 171.1. And such a release did occur because of Trinity's negligence.[10] After the derailment, the PRD on Car 26 began venting, indicating that the temperature inside the Car was increasing. Third-Pty. Compl. ¶ 76. Even after pool fires died, the temperature inside Car 26 was above ambient temperature—a clear sign that polymerization could be occurring. *Id.* ¶¶ 86-89. This risk contributed to Unified Command's determination that a vent and burn was necessary. *Id.*

Trinity attempts to pass off its breach as "a single … paperwork 'discrepancy,'" Mot. at 25, but federal regulations requiring approval for the specifications of tank cars are not merely an exercise in administrative paper-pushing. Rather, the approval and recertification processes critically ensure that tank car owners maintain their cars in a manner fit for the shipment of hazardous materials—the failure of which, as alleged in the Third-Party Complaint, can have potentially catastrophic consequences. Trinity cannot avoid liability for its negligence as indicated by its failures to comply with applicable regulations.

## IV.  The Economic Loss Doctrine Does Not Bar Norfolk Southern's Negligence Claim, Which Alleges A Duty Arising Outside Of Contract

Trinity's argument that Norfolk Southern's negligence claim is barred by the economic loss doctrine lacks merit. The economic loss doctrine does not apply "where a tort claim alleges

---

[10] Trinity contends that its conduct could not have been the proximate cause of the release of hazardous chemicals given the actions of the other Third-Party Defendants, but Ohio law is clear that "'there can be more than one proximate cause of a particular injury.'" *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 795 (N.D. Ohio 2020) (quoting *Taylor v. Webster*, 12 Ohio St.2d 53, 231 N.E.2d 870, 873 (1967)).

a duty was breached independent of [a] contract." *Jones v. Ohio Nat'l Life Ins. Co.*, 2022 WL

1128596, at *9 (S.D. Ohio Apr. 15, 2022) (emphasis added). A duty is independent of a contract

if the defendant would owe that duty "'even if no contract existed.'" *425 Beecher, LLC v. Unizan*

*Bank, Nat'l Ass'n*, 927 N.E.2d 46, 59 (Ohio Ct. App. 2010) (quoting *Textron Fin. Corp. v.*

*Nationwide Mut. Ins. Co*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996)).

Norfolk Southern's negligence claim is not based on the negligent performance of any

contractual duties. Rather, Trinity's duty to exercise reasonable and ordinary care to ensure the

"safety of individuals and entities whose persons or property were within reasonable proximity

to the rail line, Norfolk Southern's employees and its property, and the environment" (Third-Pty.

Compl. ¶¶ 149-151), by complying with all federal regulatory requirements for the certification

of Car 26, arises outside of any contractual obligation. *Id.* ¶¶ 103-105, 115-125; 49 C.F.R. §§

179.3, 179.6. There are no contract claims at issue in this case. *See 425 Beecher, LLC*, 927

N.E.2d at 59.

Moreover, Trinity's argument that the economic loss doctrine should bar Norfolk

Southern's negligence claim because it seeks to recover for purely economic losses rather than

personal injury or property damage (Mot. at 26) is contrary to the purpose of the doctrine.[11] The

economic loss doctrine "stems from the recognition of a balance between tort law, designed to

redress losses suffered by breach of a duty imposed by law to protect societal interests, and

contract law, which holds that 'parties to a commercial transaction should remain free to govern

their own affairs.'" *E-Tank Ltd. V. Deist Indus., Inc.*, 2012 WL 1109986, at *3 (N.D. Ohio Mar.

31, 2012) (quoting *Eyesoldt v. ProScan Imaging*, 957 N.E.2d 780, 785 (Ohio Ct. App. 2011).

---

[11] To the extent the Court agrees with Trinity that a showing of personal or property damage is required to avoid application of the economic loss doctrine, Norfolk Southern requests leave to amend to allege damages to its property as a result of Trinity's negligence.

29

The doctrine bars tort recovery for purely economic harm *only* if the duty arose by contract, where the remedy is in contract law. *Id.* "[T]he economic rule does not apply—and the plaintiff who suffered only economic damages can proceed in tort—where the defendant breached a duty that did not arise solely from a contract." *Id.* (quoting *Campbell v. Krupp*, 961 N.E.2d 205, 211 (Ohio Ct. App. 2011)).

*In re National Prescription Opiate Litigation*, 440 F. Supp. 3d 773 (N.D. Ohio 2020), is illustrative. There, the plaintiffs alleged they "incurred costs they would not have otherwise incurred" because of defendants' negligent sales practices. *Id.* at 811. The court held that the economic loss doctrine did not preclude the plaintiffs' negligence claim for purely economic losses because the claim arose from a duty independent of any contract. *Id.* at 813-14 (citing Report and Recommendation 83, *County of Summit, Ohio v. Purdue Pharma L.P.,* No. 1:17-md-02804-DAP (N.D. Ohio Oct. 5, 2018), Dkt. 1025 (negligence claim pleading damage to proprietary interests did not run afoul of the economic loss doctrine)). Notably, the court went on to reject the very type of argument Trinity makes here—that the economic loss doctrine bars every tort claim that fails to allege non-economic injury—because "that construction is at odds with the conclusion of this and other courts that the rule does not deny recovery for purely economic damages in tort, where claims are alleged to arise from a duty independent of a contract." *Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d at 814.

Trinity's citation to *JBlanco Enterprises Inc. v. Soprema Roofing & Waterproofing, Inc.*, 2016 WL 6600423, at *16 (N.D. Ohio Nov. 8, 2016), misses the point. In that case, the court barred tort claims because the third-party plaintiff failed to claim damages outside of those it sought to recover in its breach of contract claim. The court noted the third-party plaintiff could have avoided application of the economic loss rule if he was able to "demonstrate that the

alleged tortious conduct breached a duty owed separately from an obligation created by contract." *Id.* That is exactly the situation here, as Norfolk Southern has alleged that Trinity's tortious conduct breached a duty owed outside of any contractual relationship. *See e.g.*, *id.* ¶¶ 103, 105, 120, 125, 152, 161.

Finally, because Norfolk Southern's third-party negligence claim is based on contribution, it would be illogical to require Norfolk Southern to claim damages for personal or property harm of its own, apart from the Plaintiffs' damages and Norfolk Southern's economic losses vis-à-vis Plaintiffs. As Trinity acknowledges, Norfolk Southern's third-party claims "must be dependent on the outcome of the main claim." Mot. at 20 n.9 (quoting *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008)). So in this contribution action, it is irrelevant whether Norfolk Southern itself suffered physical injury, because any physical injury that Norfolk Southern suffered is not contingent on its liability to the plaintiffs. Accordingly, the economic loss doctrine does not apply in these circumstances.

## V.     Norfolk Southern Has Sufficiently Pled A Contribution Claim Against Trinity

Finally, Trinity alleges that Norfolk Southern's contribution claim must be dismissed because there is no underlying claim against Trinity as a joint tortfeasor. Trinity's argument fails because Norfolk Southern has properly pled Trinity's negligence in its third-party claim (*supra*, Section IV). In any event, a defendant like Norfolk Southern can plead a contribution claim "even though a cause of action has not yet accrued [against the joint tortfeasor], provided the claim is contingent upon the success of plaintiff's claim, and will accrue when defendant is found liable in the main action." *New Mkt. Acquisitions, Ltd. V. Powerhouse Gym*, 154 F. Supp. 2d 1213, 1228 n.14 (S.D. Ohio 2001) (citing *Community Fed. Sav. & Loan Ass'n v. Transamerica Ins. Co.*, 559 F. Supp. 536, 537 (E.D. Mo. 1983)); *see also Goodyear Tire &*

31

*Rubber Co., v. Robert J. Brocker, Jr., M.D., Inc.*, 1999 WL 476078, at \*3 (Ohio Ct. App. June 30, 1999) ("All that is required [for a contribution claim under Ohio law] is a showing that the contribution defendant is 'liable in tort' for the injuries originally at issue.").

Norfolk Southern's contribution claim is contingent on the success of Plaintiffs' claim— it alleges that "*[i]f* Plaintiffs establish that Norfolk Southern is responsible for damages, *then* such damages were contributed to by [Trinity]" because of its failure to comply with federal regulations. Third-Pty. Compl. ¶ 190 (emphasis added).[12] Since Plaintiffs' claims have already been brought and are pending, the Court should reject Trinity's argument that Norfolk Southern's contribution claim is premature. *See CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 734 (S.D. Ohio. 2018) (where Federal Rule of Civil Procedure 14 states that a defending party may, as a third-party plaintiff, serve a complaint on a party who is or *may be liable*, "courts have long held that parties may plead a 'claim of a contingent nature, the ultimate outcome of which depends on the determination of other features or issues'" (citation omitted)). Norfolk Southern's contribution claim is proper at this juncture.

## CONCLUSION

Based on the foregoing, the Court should deny Trinity's Motion to Dismiss the Third-Party Complaint. If the Court grants the motion, however, it should grant Norfolk Southern leave to amend.

---

[12] Trinity's reliance on *Riemeier Lumber Co. v. Universal Forest Products Eastern Division, Inc.*, 2008 WL 11351361, at \*6 (S.D. Ohio Sept. 26, 2008), the only case it cites in support of its argument that the contribution claim should be dismissed, is misplaced. In *Riemeier Lumber Co.*, the court dismissed a crossclaim for contribution against defendants only *after* determining that they were not liable to plaintiffs for the injuries originally at issue. *Id.* The same cannot be said here.

Dated: October 16, 2023

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

DICKIE, MCCAMEY &
CHILCOTE, P.C.

/s/ Alan Schoenfeld

ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS
AARON PONZO*
PAUL ROMAN*
Two PPG Place, Suite 400
Pittsburgh, PA  15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

DAVINA PUJARI*
CHRISTOPHER A. RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA  94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

REDGRAVE LLP

JONATHAN M. REDGRAVE*
MONICA MCCARROLL*
4800 Westfield Blvd., Suite 250
Chantilly, VA  20151
(703) 592-1155
jredgrave@redgravellp.com
mmccarroll@redgravellp.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC  20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

KATHERINE MACKEY*
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
katherine.mackey@wilmerhale.com

MARTIN T. TULLY*
230 West Monroe Street, Suite 210
Chicago, IL  60606
mtully@redgravellp.com

* Pro hac vice

*Counsel for Defendants*
*Norfolk Southern Corporation and Norfolk Southern Railway Company*

## **CERTIFICATE OF LOCAL RULES 7.1 COMPLIANCE**

I certify that this Opposition adheres to the page limitations set forth in Local Rule 7.1(f)

for mass-tort cases because it does not exceed 40 pages in length. *See* Discovery Plan 1 n.*,

Dkt. 62 (May 23, 2023).

> */s/ Alan Schoenfeld*
> ALAN SCHOENFELD

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

*/s/ Alan Schoenfeld*
ALAN SCHOENFELD
