# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT**<br><br>STEVEN MCKAY, *et al*., individually and on behalf of all others similarly situated,<br><br>   *Plaintiffs,*<br><br> v.<br><br>NORFOLK SOUTHERN CORPORATION, *et al.*,<br><br>   *Defendants/Third-Party Plaintiffs,*<br><br> v.<br><br>OXYVINYLS LP, *et al.*,<br><br>   *Third-Party Defendants* | Case No. 4:23-cv-00242-BYP<br><br>Judge Benita Y. Pearson |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT OXYVINYLS LP'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER CONSOLIDATED CLASS ACTION COMPLAINT AND/OR TO STRIKE PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES TO BE DECIDED ................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

FACTUAL BACKGROUND ................................................................................... 3

LEGAL STANDARD .............................................................................................. 7

ARGUMENT ........................................................................................................... 8

    I.       PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS ARE NOT PREEMPTED ............................................................................. 8

    II.      PLAINTIFFS' CAUSES OF ACTION ARE SUFFICIENTLY PLEADED AND, THEREFORE, OXYVINYLS' MOTION TO DISMISS SHOULD BE DENIED ... 14

        A.   Plaintiffs Plead Sufficient Facts to Support Their Negligence Claim. ...................... 14

           1.   Plaintiffs adequately allege causation. ................................................ 14

           2.   Norfolk Southern's conduct does not absolve OxyVinyls of liability. ................. 17

           3.   Plaintiffs adequately allege injury. ..................................................... 18

        B.   Plaintiffs Have Sufficiently Pleaded Their Gross Negligence Claim. ........................ 21

        C.   OxyVinyls' Motion to Strike Plaintiffs' Request For Punitive Damages is Procedurally Deficient and Without Merit. ............................................ 24

           1.   OxyVinyls' motion to strike is procedurally improper. ....................... 24

           2.   The allegations in Plaintiffs' Amended Complaint support punitive damages. ... 26

        D.   Plaintiffs Have Properly Pleaded Claims For Medical Monitoring. .......................... 27

           1.   Medical monitoring is a remedy under Ohio law and therefore is not subject to dismissal at the pleading stage. ........................................... 27

           2.   Plaintiffs' allegations support the remedy and claim of medical monitoring. ...... 27

CONCLUSION ......................................................................................................... 32

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. City of Massillon*,
983 N.E.2d 266 (Ohio 2012)...........................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................20

*Baker v. Deutschland GmbH*,
240 F.Supp.3d 341 (M.D. Penn. 2016)............................................................30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................7

*Bender v. Comm'r of Soc. Sec.*,
No. 11-CV-1546, 2012 WL 3913094 (N.D. Ohio Aug. 17, 2012)...................24

*Borke v. Warren*,
Nos. 22-1270/1322/1323, 2023 WL 6367754 (6th Cir. Aug. 2, 2023)..............7

*Bouchard v. Am. Home Prods. Corp.*,
213 F. Supp. 2d 802 (N.D. Ohio 2002).............................................................20

*Bower v. Westinghouse Elec. Corp.*,
522 S.E.2d 424 (W. Va. 1999)..........................................................................28

*Brown & Williamson Tobacco Corp. v. US*,
201 F.2d 819 (6th Cir. 1953) ..............................................................................7

*Brown v. Whirlpool Corp.*,
996 F. Supp. 2d 623 (N.D. Ohio 2014)..............................................................14

*Buon Vino Mfg., Inc. v. Ostrowski*,
No. 1:21-cv-2268, 2023 WL 3074496 (N.D. Ohio April 25, 2023)...................17

*Burns v. Potter*,
No. 07-cv-00018, 2008 U.S. Dist. LEXIS 106762  (S.D. Ohio Feb. 21, 2008) ......................24

*Byrne v. CSX Transp., Inc.*,
541 F. App'x 672 (6th Cir. 2013) ........................................................................8

*Callihan v. Surnaik Holdings of WV, LLC*,
No. 2:17-cv-04386, 2018 WL 6313012  (S.D. W.Va. Dec. 3, 2018) ................30, 31

*Christian v. Wal-Mart Stores E., LP*,
No. 11CA002, 2011 WL 2739645 (Ohio Ct. App. July 13, 2011)....................21

*Cincinnati Ins. Co. v. Watkins Motor Lines, Inc.*,
No. L-07-1333, 2009 WL 20131 (Ohio Ct. App. Jan. 9, 2009)........................17

*Cleveland Bakers & Teamsters Health & Welfare Fund v. Purdue Pharma L.P. (In re Nat'l Prescription Opiate Litig.)*,
440 F. Supp. 3d 773 (N.D. Ohio 2020)..............................................................15

*CSX Transp., Inc. v. Pub. Util. Comm'n of Ohio*,
901 F.2d 497 (6th Cir. 1990), *cert. denied*, 498 U.S. 1066 (1991)...................8

*Diehl v. CSX Transp., Inc.*,
349 F. Supp. 3d 487 (W.D. Pa. 2018)................................................................13

**TABLE OF AUTHORITIES**
(continued)

Page

*Directv, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) ................................................................................ 7
*Elmer v. S.H. Bell Co.*,
  127 F. Supp. 3d 812 (N.D. Ohio 2015) ............................................................... 28
*Est. of Barney v. PNC Bank, Nat'l Ass'n*,
  714 F.3d 920 (6th Cir. 2013) ................................................................................ 8
*Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*,
  721 F. Supp. 2d 663 (N.D. Ohio 2010) ............................................................... 25
*FTC v. Stratford Career Inst.*,
  No. 16-CV-371, 2016 WL 3769187 (N.D. Ohio July 15, 2016) ........................... 25
*Gunasekera v. Irwin*,
  551 F.3d 461 (6th Cir. 2009) ................................................................................ 7
*Hall v. Davis*,
  No. 5:23-CV-00049, 2023 WL 2734690 (N.D. Ohio March 31, 2023) (Pearson, J.) ............... 7
*Hardwick v. 3M Co.*,
  No. 2:18-cv-1185, 2019 WL 4757134 (S.D. Ohio Sept. 30, 2019) ....................... 15
*HDC, LLC v. City of Ann Arbor*,
  675 F.3d 608 (6th Cir. 2012) ................................................................................ 19
*Hirsch v. CSX Transportation, Inc.*,
  No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211 (N.D. Ohio Oct. 22, 2008) (Polster, J.) .. 19
*In re Avandia*,
  No. 07–md–01871, 2011 WL 4006639 (E.D. Pa. Sept. 7, 2011) ........................... 31
*In re Nat'l Prescription Opiate Litig.*,
  440 F. Supp. 3d ............................................................................................. 15, 17
*Ironton Coke Corp. v. Oil Chem & Atomic Workers Intl. Union*,
  491 F. Supp. 70 (S.D. Ohio 1980) ....................................................................... 24
*Key v. DSW, Inc.*,
  454 F. Supp. 3d 684 (S.D. Ohio 2006) ................................................................. 20
*Lafferty v. Sherwin-Williams Co.*,
  No. 1:17-06321, 2018 WL 3993448 (D.N.J. Aug. 21, 2018) ...................... 29, 30, 31
*Leibreich v. A.J. Refrigeration, Inc.*,
  617 N.E.2d 1068 (Ohio 1993) .............................................................................. 18
*Mann v. CSX Transp., Inc.*,
  No. 1:07–cv–3512, 2009 WL 3766056 (N.D. Ohio Nov. 10, 2009) ..................... 30
*Marchetti v. Kalish*,
  53 Ohio St.3d 95 (1990) ....................................................................................... 21
*Mawa Inc. v. Univar USA Inc.*,
  No. 15-6025, 2016 WL 2910084 (E.D. Pa. May 19, 2016) ................................... 13
*McGlone v. Centrus Energy Corp.*,
  No. 2:19-cv-02196, 2020 WL 4431482 (July 31, 2020 S.D. Ohio) ....................... 24

**TABLE OF AUTHORITIES**
(continued)

Page

*Menkes v. 3M Co.*,
    No. 17-0573, 2018 WL 2298620 (E.D. Pa. May 21, 2018) ................................................... 31

*Mohat v. Horvath*,
    No. 2013-L-009, 2013 WL 5450296 (Ohio Ct. App. Sept. 30, 2013) ............................... 22, 23

*Murphy v. Carrollton Mfg. Co.*,
    575 N.E.2d 828 (Ohio 1991) ................................................................................................. 17

*Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*,
    783 F.3d 1045 (6th Cir. 2015) .................................................................................................. 7

*Parrish v. JCI Jones Chem., Inc.*,
    No. 17-00518, 2019 WL 1410880 (D. Haw. Mar. 28, 2019 .................................................. 13

*Preston v. Murty*,
    512 N.E.2d 1174 (Ohio 1987) ............................................................................................... 26

*Redland Soccer Club v. Dep't of the Army*,
    696 A.2d 137 (Pa. 1997) ................................................................................................. 28, 30

*Ripepi v. USA Taekwondo, Inc.*
    No.: 5:20-cv-01896, 2021 WL 4459465 (N.D. Ohio Sept. 29, 2021) ............................... 21, 22

*Roth v. Norfalco LLC*,
    651 F.3d 367 (3rd Cir. 2011) ................................................................................................. 13

*Salerno v. City of Niagara Falls*,
    No. 20-3749-cv, 2021 WL 4592138 (2d Cir. Oct. 6, 2021) .................................................. 21

*Scottsdale Ins. Co. v. Flowers*,
    513 F.3d 546 (6th Cir. 2008) ................................................................................................. 24

*Seaman Corp. v. Siplast, Inc.*,
    No. 5:20CV2040, 2021 WL 4775631 (N.D. Ohio March 15, 2021) ................................. 26, 27

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*,
    No. 12-6542, 2013 WL 5655480 (E.D. Pa. Oct. 17, 2013) ............................................. 30, 31

*Smith v. CSX Transp., Inc.*,
    No. 3:13 CV 2649, 2014 WL 3732622 (N.D. Ohio July 25, 2014) ........................................ 12

*Stollenwerk v. Tri-West Health Alliance*,
    No. Civ. 030185PHXSRB, 2005 WL 2465906 (D. Ariz. Sept. 6, 2005) ............................... 20

*Strother v. Hutchinson*,
    423 N.E.2d 467 (Ohio 1981) ................................................................................................. 15

*Taylor v. Webster*,
    231 N.E.2d 870 (Ohio 1967) ................................................................................................. 17

*Thompson Elec., Inc. v. Bank One*,
    37 Ohio St.3d 259 (1988) ...................................................................................................... 21

*Tipton v. CSX Transp.*,
    No. 3:15-CV-311/337/497/346, 2016 WL 11501426 (E.D. Tenn. July 7, 2016) ..... 9, 12, 19, 20

*Trimbur v. Norfolk S. Ry. Co.*,
    No. 2:13-cv-0160, 2015 WL 4755205 (S.D. Ohio Aug. 10, 2015) ........................................ 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Villella v. Waikem Motors, Inc.*,
    543 N.E. 2d 464 (Ohio 1989).................................................................... 26
*W. Bend Mut. Ins. Co. v. Osmic, Inc.*,
    No. 1:21-CV-00593-PAB, 2023 WL 6258796 (N.D. Ohio Sept. 26, 2023) ..... 7, 12
*Wiley v. City of Columbus*,
    36 F.4th 661 (6th Cir. 2022) .................................................................... 21
*Wilson v. Brush Wellman, Inc.*,
    817 N.E.2d 59 (Ohio 2004) ...................................................................... 27

**Statutes**
49 U.S.C. § 20106(b) .................................................................................. 9

**Other Authorities**
*Handbook for Vent and Burn Method of Field Product Removal*,
    U.S. Dep't of Transp. (May 1994) ............................................................ 18

**Regulations**
49 C.F.R. § 171.1 ..................................................................................... 16
49 C.F.R. § 172.102(c)(7)(iii) .................................................................... 11
49 C.F.R. § 173.22(a)(2) ........................................................................... 11
49 C.F.R. § 173.24(e)(1) ........................................................................... 11
49 C.F.R. § 173.24(f) ................................................................................ 11
49 C.F.R. § 173.301(a)(3) .......................................................................... 11
49 C.F.R. § 173.301(f)(1) .......................................................................... 11
49 C.F.R. § 173.31(a)(1) ........................................................................... 11
49 C.F.R. § 173.313 .................................................................................. 11
49 C.F.R. § 174.61(a) ............................................................................... 11
49 C.F.R. § 178.276(b)(3) .......................................................................... 11
49 C.F.R. § 178.276(e)(1) .......................................................................... 11
49 C.F.R. § 178.276(e)(2) .......................................................................... 11
49 C.F.R. § 178.276(e)(3) .......................................................................... 11
49 C.F.R. § 178.276(f) .............................................................................. 11
49 C.F.R. § 179.100-13 ............................................................................. 11
49 C.F.R. § 179.15 ................................................................................... 11
49 C.F.R. § 179.5 ................................................................................. 6, 10
49 C.F.R. § 180.205(d)(1) .......................................................................... 11
49 C.F.R. § 180.501 .................................................................................. 10
49 C.F.R. § 180.503 .................................................................................. 11
49 C.F.R. § 180.507 .................................................................................. 10
49 C.F.R. § 180.509 ............................................................................... 9, 10
49 C.F.R. § 180.509(b)(1) .......................................................................... 11
49 C.F.R. § 180.509(d)(1-4) ....................................................................... 11
49 C.F.R. § 180.511(d) .............................................................................. 11

**TABLE OF AUTHORITIES**
(continued)

Page

49 C.F.R. § 180.517 ........................................................................................... 10
49 C.F.R. § 180.590 ............................................................................................. 9
49 C.F.R. §§ 173.24(b)(1-2) ............................................................................... 11
49 C.F.R. §§ 173.31(a)(3), (d)(1) ....................................................................... 11
49 C.F.R. §§ 179.18 ............................................................................................ 11
49 C.F.R. §§ 179.3 .............................................................................................. 10
49 C.F.R. §§ 179.6 .............................................................................................. 10
49 C.F.R. §§ 180.501 ........................................................................................... 9
49 C.F.R. §§ 180.509 ........................................................................................... 9
49 C.F.R. §§ 180.517 ........................................................................................... 9
49 C.F.R. §§ 215.7 ............................................................................................... 9

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether Defendant OxyVinyls, LP fails to meet its burden to establish that Plaintiffs' claims for negligence and gross negligence are preempted by the Hazardous Materials Transportation Act (HMTA) and, therefore, Defendant's motion to dismiss should be denied.

2.      Whether, when construing the complaint in the light most favorable to Plaintiffs and accepting all allegations as true, Plaintiffs have sufficiently pleaded their claims for negligence, gross negligence, and medical monitoring and, therefore, Defendant's motion to dismiss should be denied.

3.      Whether Defendant OxyVinyls, LP's motion to strike Plaintiffs' request for punitive damages is procedurally deficient and without merit and, therefore, should be denied.

## SUMMARY OF THE ARGUMENT

The responsibility of safe transport of cargo via rail belongs not only to railroads, but also to owners and lessees of the railcars, and the manufacturers and shippers of materials being transported, particularly when the materials are hazardous. Defendant OxyVinyls, LP ("OxyVinyls"), as the shipper and owner / lessee of the five vinyl chloride rail cars (Cars 26, 27, 28, 29 & 53) in the consist of Train 32N, should be held responsible for the harms they caused Plaintiffs and Class Members.

Defendant OxyVinyls failed to ensure its vinyl chloride cars were safe and approved to transport vinyl chloride, a known hazardous material. For instance, multiple discrepancies existed between the required approval, certification, and qualifications of the railcars and the railcars' actual, physical characteristics. Moreover, the railcars OxyVinyls used to ship vinyl chloride contained aluminum-coated springs in the pressure relief device (Car 26), aluminum protective housings and handwheels (Cars 27, 28 and 29), and aluminum angle valve handwheels (Car 53). OxyVinyls knew or should have known that such aluminum features are incompatible

- 1 -

with shipping vinyl chloride, as the aluminum can melt or be damaged by fires. Post-derailment, melting and damage caused to the aluminum parts of the railcars compromised the cars' ability to properly vent and depressurize, leading to a decision to denotate all five of Defendant's vinyl chloride cars.

As set forth below, OxyVinyls' motion to dismiss should be denied. First, OxyVinyls erroneously asserts Plaintiffs' claims are preempted by the HMTA. Plaintiffs' claims are not preempted. Plaintiffs' alleged OxyVinyls failed to comply with the federal standard of care established by the federal regulations. Plaintiffs do not seek to impose duties on OxyVinyls exceeding those requirements. OxyVinyls fails to prove its affirmative defense of federal preemption.

Second, Defendant's arguments that Plaintiffs insufficiently pled their state law causes of action is without merit. Plaintiffs pleaded extensive facts that support their negligence and gross negligence claims. Plaintiffs' allegations more than adequately support their claims that OxyVinyls' breach of duty was the proximate cause of Plaintiffs' injuries. Furthermore, OxyVinyls cannot escape liability by seeking to blame Norfolk Southern. Any determination of intervening or superseding cause should be decided at the summary judgment or trial stage, not on a motion to dismiss. Moreover, there can be more than one proximate cause of Plaintiffs' injuries. Plaintiffs have sufficiently pleaded that OxyVinyls' conduct was a substantial factor in producing the harms alleged, and sufficiently set forth their injuries in the Amended Complaint. Additionally, Plaintiffs' allegations support their claim of gross negligence and requested remedy of punitive damages, as the pleadings demonstrate that OxyVinyls' failure to ensure their cars were safe and fit for the transport of vinyl chloride was willful, wanton, and reckless.

- 2 -

Finally, Plaintiffs have sufficiently pleaded claims for ongoing medical monitoring arising from their exposure to the highly toxic chemicals released into their homes and workplaces as a result of the derailment and subsequent detonation of the vinyl chloride cars, which resulted in a massive toxic cloud that spread throughout the community. Consistent with the prevailing current view of Ohio law, Plaintiffs alleged medical monitoring as a remedy under Ohio law, and also pled it as a stand-alone cause of action under Pennsylvania and West Virginia law. Plaintiffs' Amended Complaint is replete with allegations that, when accepted as true and construed in Plaintiffs' favor, more than adequately support medical monitoring at the pleading stage of this litigation.

OxyVinyls' motion to dismiss should be denied.

## **FACTUAL BACKGROUND**

This case arises out of the February 3, 2023, derailment of Norfolk Southern Train 32N in East Palestine. Defendant OxyVinyls is a leading North American manufacture of vinyl resins, chlorine, and caustic soda, key building blocks for a number of plastic productions. Am. Compl. ¶ 73. OxyVinyls owns and maintains a fleet of rail cars to transport its goods and products, including vinyl chloride, a known hazardous material. Am. Compl. ¶¶ 74, 191. OxyVinyls was the shipper and owner / lessee of the five vinyl chloride railcars in the consist of Train 32N that derailed (Cars 26, 27, 28, 29 & 53).[1] Am. Compl. ¶¶ 75, 135, 138-139. Plaintiffs amended their Class Action Complaint to add OxyVinyls as a Defendant after the Norfolk Southern

---

[1] OxyVinyls was the owner of railcars 27, 28, and 53. OxyVinyls leased railcars 26 and 29. OxyVinyls was the shipper of vinyl chloride in all five railcars.

Defendants[2] filed a third-party complaint against several defendants, including OxyVinyls. (ECF 119, 138.)

On February 3, 2023, Norfolk Southern's Train 32N was traveling on a downhill route eastbound from Illinois to Pennsylvania on main track 1 of the Norfolk Southern Fort Wayne line of the Keystone Division. Am. Compl. ¶ 155. On the Fort Wayne line, Norfolk Southern had equipped its rail network with hotbox detectors to assess the temperature conditions of railcar wheel bearings while en route to provide real-time warnings to train crew members. Am. Compl. ¶¶ 162-163. Approximately 30 miles prior to the derailment, Train 32N passed over a hotbox detector and recorded a temperature of 38° F above ambient for the wheel bearing of railcar 23.[3] Am. Compl. ¶ 166. Ten miles later, the recorded temperature for the wheel bearing of railcar 23 was 103° F above ambient and was visibly on fire. Am. Compl. ¶ 167. Twenty miles later and just minutes before the derailment, a third hotbox detector recorded a temperature of 253° F above ambient for the wheel bearing, triggering an alarm message instructing the crew to stop and inspect. Am. Compl. ¶¶ 168-169. The engineer applied the dynamic brakes, and the emergency brakes were engaged. But the train equipment malfunctioned, consistent with an overheated wheel bearing, and the train derailed. Am. Compl. ¶ 169.

The derailment of the already-ablaze Train 32N caused a massive inferno that would burn for days. Am. Compl. ¶ 172. A few days after the derailment, concerns arose as the pressure relief device (PRD) on one of OxyVinyls' derailed cars stopped working, raising fears that the vinyl chloride car could explode. Am. Compl. ¶ 179. On Monday, February 6, 2023, a decision was made to conduct a controlled release on the compromised vinyl chloride car. Am. Compl.

---

[2] Includes Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company.

[3] Railcar 23 was owned by Defendants GATX Corporation and/or General American Marks Company. Am. Compl. ¶¶ 66-69.

¶¶ 182-183. Later that afternoon, Norfolk Southern and/or its contractors detonated explosives on all five derailed vinyl chloride cars and then set the released vinyl chloride on fire. Am. Compl. ¶ 184. This eruption created byproducts, including hydrogen chloride and phosgene gas. Am. Compl. ¶¶ 185-186. A huge, thick plume of toxic smoke shot up from the explosion and spread out over East Palestine and the surrounding area. Am. Compl. ¶¶ 187-188.

As a result of the derailment and explosion, the people, residents, businesses, pets, wildlife, property, crops, food, water, and air in a thirty-mile radius were exposed to significant and harmful levels of toxins, including vinyl chloride, dioxins, ethylene glycol monobutyl ether, isobutylene, benzene, butyl acrylate, ethylhexyl acrylate, diethylene glycol, hydrogen sulfide, hydrogen cyanide, phosgene, and hydrogen chloride.[4] Am. Compl. ¶¶ 190-240. The effect of exposure to these chemicals in humans is disastrous. It can lead to serious and potentially fatal illnesses, such as organ failure, nervous system depression, and cancer. Am. Compl. ¶¶ 190-240.

The responsibility of safe transport of hazardous materials via rail belongs not only to the railroad, but also to the owners and lessees of the railcars, and the manufacturers and shippers of the materials being transported. Am. Compl. ¶ 128. Tank car manufacturers, owners, and lessees are obligated to ensure tank cars are compliant with federal laws and regulations and capable of safely moving hazardous materials. Am. Compl. ¶ 129. Railcar owners must have appropriate certification and qualifications for their tank cars. Am. Compl. ¶ 148.

Following the derailment, it has been discovered that multiple discrepancies existed between the approval, certification, and qualifications of OxyVinyls' railcars and the railcars' actual, physical characteristics: (1) Car 26 had actual, physical characteristics that made it

---

[4] While the Amended Complaint alleges in good faith that the toxic chemicals spread in a 30-mile radius, as the litigation progresses, Plaintiffs intend to rely on developed facts, evidence, and expert testimony to establish the direction and scope of the toxic chemical spread.

incompatible with its Association of American Railroads (AAR) 4-2 Certificate of Approval;[5] (2) Car 29 had an incompatible PRD replaced and never received the regulatory approval needed to ship vinyl chloride; (3) Cars 27, 28, and 53 each had required information missing from their Certifications of Approval; and (4) Car 27 had modifications that were neither documented nor approved. Am. Compl. ¶ 149. None of the five vinyl chloride railcars were properly constructed, approved, and/or certified for transport at the time of the derailment. Am. Compl. ¶ 150.

Moreover, all five of the vinyl chloride cars were constructed of materials that were inappropriate for, or inconsistent with, the shipment of vinyl chloride at the time of the derailment. Am. Compl. ¶ 153. Several of the vinyl chloride cars were constructed with, or had features, containing aluminum, including: (1) Car 26's aluminum-coated springs in the PRD; (2) Cars 27, 28, and 29's aluminum protective housings and handwheels; and (3) Car 53's aluminum angle valve handwheels. Am. Compl. ¶ 152. These aluminum components posed serious risks because they can melt or be damaged in fires, as happened in this case. There is also a potential for an adverse chemical reaction if the vinyl chloride is exposed to aluminum. Am. Compl. ¶ 151.

Plaintiffs' Amended Complaint against OxyVinyls sets forth claims of negligence, gross negligence, and medical monitoring. Am. Compl. ¶¶ 299-308, 426-455, 466-473. The allegations in the Amended Complaint are more than sufficient to state these claims for relief and to put OxyVinyls on notice of such claims. For the reasons set forth below, OxyVinyls' motion to dismiss should be denied.

---

[5] An AAR Certificate of Approval is a certificate that the tank, equipment, and car fully conform to all the specification requirements and must be obtained prior to the tank car being placed into service.  49 C.F.R. § 179.5.

## LEGAL STANDARD

OxyVinyls seeks dismissal of Plaintiffs' causes of action pursuant to Rule 12(b)(6). On such motion, "the defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This is a heavy burden. Reviewing courts "must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." *Borke v. Warren*, Nos. 22-1270/1322/1323, 2023 WL 6367754, at *2 (6th Cir. Aug. 2, 2023). To survive, a complaint must merely "contain enough facts to state a claim for relief that is plausible on its face." *Id.* (internal quotations omitted). Consistent with Rule 8(a)(2), only a short and plain statement of the claim is needed. *Hall v. Davis*, No. 5:23-CV-00049, 2023 WL 2734690, at *2 (N.D. Ohio March 31, 2023) (Pearson, J.). "'Specific facts are not necessary; the statement need 'only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.''" *W. Bend Mut. Ins. Co. v. Osmic, Inc.*, No. 1:21-CV-00593-PAB, 2023 WL 6258796, at *5 (N.D. Ohio Sept. 26, 2023) (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

OxyVinyls has also moved to strike Plaintiffs' request for punitive damages pursuant to Rule 12(f). Such motions "are viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Rule 12(f) authorizes courts to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. A motion to strike, however, should only be granted when "the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. US*, 201 F.2d 819, 822 (6th Cir. 1953). As set forth below, OxyVinyls has not met its burden. Plaintiffs' pleading is more than sufficient and there are no grounds to strike Plaintiffs' request for punitive damages.

- 7 -

## ARGUMENT

I. **PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS ARE NOT PREEMPTED**

OxyVinyls asserts that Plaintiffs' negligence and gross negligence claims are preempted by the HMTA.  But OxyVinyls fails to prove that any of the claims are preempted, offering only the conclusory assertion that Plaintiffs' "claims seek to impose duties and obligations that do not 'conform [ ] in every significant respect' to the federal requirements." MTD, p. 7; *see Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 674-75 (6th Cir. 2013) ("Federal preemption is an affirmative defense that requires the defendant . . . to prove . . . [that] federal preemption applies.") That naked assertion, which does not identify or discuss any particular allegation that purportedly exceeds federal regulations, falls far short of OxyVinyls' burden to establish that Plaintiffs' claims are preempted.  *See Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) ("Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings" and the "undisputed facts conclusively establish an affirmative defense as a matter of law.")  Plaintiffs' negligence and gross negligence claims are not preempted under federal law because the Complaint alleges that OxyVinyls failed to comply with the federal standard of care established by federal regulations, and Plaintiffs do not seek to impose duties on OxyVinyls exceeding those requirements.

When a claim involves matters of railroad safety, courts generally analyze HMTA preemption under the framework established by the Federal Rail Safety Act (FRSA).  *CSX Transp., Inc. v. Pub. Util. Comm'n of Ohio*, 901 F.2d 497, 501 (6th Cir. 1990), *cert. denied*, 498 U.S. 1066 (1991); *see also, e.g.*, *Tipton v. CSX Transp.*, No. 3:15-CV-311/337/497/346, 2016

- 8 -

WL 11501426, at *15 (E.D. Tenn. July 7, 2016) (same).[6]  Under this framework, when a state

law claim seeks to enforce duties set forth under federal regulations, that claim is not preempted.

*See id.*[7] OxyVinyls agrees, arguing that Plaintiffs' claims should be preempted only "*to the*

*extent* that the claims impose different requirements than what is set forth in the HMTA."  MTD,

p. 7 (emphasis added).[8] Because Plaintiffs seek only to enforce standards of care imposed by the

federal regulations, OxyVinyls' preemption argument fails on its own terms.

Throughout the complaint, Plaintiffs allege that OxyVinyls failed to abide by its duties as

an owner and shipper set forth under "federal regulations."  *See, e.g.*, Am. Compl. ¶¶ 132, 138-

139, 147-154, 299-304, & 472(ff), citing federal regulations, including but not limited to, 49

C.F.R. §§ 180.501 (which itself cites regulations under Parts 107, 171, 172, 173, 174, and 179),

180.507, 180.509,[9] 180.517 & 215.7.  These allegations include, but are not limited to, the

following:

---

[6] Preemption under the FRSA and HMTA was fully briefed in Plaintiffs' Memorandum in
Opposition to Defendant Norfolk Southern's Motion to Dismiss at 1218-1231(ECF 103). For the
sake of brevity, Plaintiffs incorporate by reference their arguments regarding FRSA and HMTA
preemption as if fully set forth herein.

[7] As set forth in the Clarification Amendment, "[n]othing in this section shall be construed to
preempt an action under State law seeking damages for personal injury, death, or property
damage alleging that a party – (A) has *failed to comply* with the Federal standard of care
*established by a regulation or order* issued by the Secretary of Transportation (with respect to
railroad safety matters) … (B) has failed to comply with its own plan, rule, or standard that it
created pursuant to a regulation or order issued by either of the Secretaries." 49 U.S.C.
§ 20106(b) (emphasis added).

[8] Norfolk Southern also agrees with this framework. *See* Norfolk Southern Railway Company
and Norfolk Southern Corporation's Opposition to Third-Party Defendant OxyVinyls' Motion to
Dismiss the Third-Party Complaint at 10 (ECF 229) ("In other words, state law claims that are
based on violations of the HMTA or HMTA regulations are not preempted.")

[9] Plaintiffs' First Amended Class Action Complaint contains a typo – 49 C.F.R. § 180.590
should be 49 C.F.R. § 180.509.

- Plaintiffs allege that as the owner of Cars 27, 28, and 53, OxyVinyls failed to provide correct and/or complete certificates of construction, Form AAR 4-2. *See, e.g.*, Am. Compl. ¶ 303(c).  For example, Paragraph 149 of the Complaint alleges that all three cars "had required information missing from their Certificates of Approval," and that "Car 27 had modifications that were neither documented nor approved."  Am. Compl. ¶ 149(c). These failures breached OxyVinyls' duty under 49 C.F.R. § 179.5 to accurately "furnish a … Form AAR 4-2 . . . certifying that the tank, equipment, and car fully conforms to all requirements of the specification." 49 C.F.R. § 179.5. OxyVinyls' modifications also breached its duties under 49 C.F.R. §§ 179.3 and 179.6, which require car owners to receive approval for the car's construction and any design or component changes that are made later. OxyVinyls' failure to continually certify approval in an accurate fashion also violated its duties under 49 C.F.R. § 180.517,[10] 49 C.F.R. § 180.507,[11] 49 C.F.R. § 180.509,[12] and 49 C.F.R. § 180.501.[13]  *See* Am. Compl. ¶¶ 300-303 (alleging violations of duties under such provisions).

- Plaintiffs allege that OxyVinyls shipped cars carrying vinyl chloride that were constructed with, or had features containing, aluminum.  *See, e.g.*, Am Compl. ¶¶ 151-154.  As Plaintiffs allege, "[t]he use of aluminum in railcars transporting vinyl chloride can be problematic because aluminum components can melt or otherwise be damaged in the event of a fire, as appears to have happened here."  Am. Compl. ¶ 151.[14]  Plaintiffs

---

[10] *See* 49 C.F.R. § 180.517 ("Each owner of a specification tank car must retain the certificate of construction (AAR Form 4–2) and related papers certifying that the manufacture of the specification tank car identified in the documents is in accordance with the applicable specification.")

[11] *See* 49 C.F.R. § 180.507 ("Each tank car marked as meeting a 'DOT' specification or any other tank car used for the transportation of a hazardous material must meet the requirements of this subchapter or the applicable specification to which the tank was constructed.")

[12] 49 C.F.R. § 180.509 sets forth requirements for inspection and testing of specification tank cars, and dictates, among other things, that "[e]ach tank car owner must ensure that a tank car facility . . . [p]repares the documentation as required by § 180.517 for each item qualified under this section.")

[13] *See* 49 C.F.R. § 180.501 ("This subpart prescribes requirements, in addition to those contained in parts 107, 171, 172, 173, 174, and 179 of this subchapter, applicable to any person who manufactures, fabricates, marks, maintains, repairs, inspects, or services tank cars to ensure continuing qualification . . . Any person who performs a function prescribed in this part shall perform that function in accordance with this part.")

[14] The NTSB has noted that it is continuing to assess the extent to which the aluminum had on the "venting and discharge operation." NTSB, *Norfolk Southern Railway Train Derailment with Subsequent Hazardous Material Release and Fires* https://www.ntsb.gov/investigations/Pages/RRD23MR005.aspx (Update Mar. 21, 2023) (*last visited* Oct. 24, 2023). The NTSB also reported that "according to the manufacturer's part

allege that OxyVinyls' shipment of vinyl chloride in cars containing aluminum was "incompatible" with its obligation under "federal regulations," Am. Compl. ¶ 154, including but not limited to its obligation to "only [use] those railcars that are compatible with the lading or goods to be transported within them under applicable federal regulations," Am. Compl. ¶ 302.  By shipping vinyl chloride in cars containing the alleged aluminum components, OxyVinyls violated its obligation to ensure that "packagings are compatible with their lading," 49 C.F.R. § 173.24(e)(1); its duty to ensure that hazardous material not be offered for transportation in a tank car unless "the tank car meets the applicable specification and packaging requirements," 49 C.F.R. § 173.31(a)(1); and its duties under 49 C.F.R. § 173.22(a)(2), which set forth the shipper's requirements to ensure that a railcar has been "manufactured, assembled, and marked," in accordance with these regulations.

- Relatedly, Plaintiffs allege that OxyVinyls owned Cars 27, 28, and 53, and that those cars "were each constructed with aluminum in their pressure relief devices ('PRD'), PRD protective housings, handwheels and angle [valve] handwheels." Am Compl. ¶ 303(d); 472(ff).  Here too, Plaintiffs allege OxyVinyls' use of aluminum in these components violated its duties under applicable federal regulations.  *See, e.g.*, Am. Compl. ¶¶ 303, 304, 472(ff).  In particular, that conduct violated at least C.F.R. § 179.100-13, which states that "[v]enting, loading and unloading valves must be of approved design, made of metal not subject to rapid deterioration by the lading," and 49 C.F.R. § 179.15, which states that "tanks must have a pressure relief device, made of material compatible with the lading."[15]  In light of these failures, OxyVinyls similarly violated the Part 180

---

specifications, one of the installed PRD's internal springs was coated with aluminum, which is not compatible with the VCM lading." *Id.*

[15] These regulations also require inspection and testing of pressure release devices for "any [ ] condition that makes the tank car unsafe for transportation . . . ." *See* 49 C.F.R. §§ 173.31(a)(3), (d)(1)(ii), (vi), 173.301(a)(3), 180.205(d)(1), 180.509(b)(1), 180.509(d)(1-4), 180.511(d).  *See also* 49 C.F.R. § 180.503 (defining "defects").  Further, containers must be "designed [and] constructed . . . so that under conditions normally incident to transportation" hazardous materials will not be released and the container will not be damaged under the hazardous materials' maximum temperature.  49 C.F.R. §§ 173.24(b)(1-2), 174.61(a).  Additionally, because the cars contained hazardous gases, "[t]he pressure relief device must be capable of preventing rupture of the normally filled cylinder when subjected to a fire test . . . ." 49 C.F.R. § 173.301(f)(1).  Because vinyl chloride is flammable, the tank car also needed a tested thermal resistance system that would prevent release.  49 C.F.R. §§ 179.18, 173.31(b)(4), 172.101 (vinyl chloride designated as "2.1").  *See also* 49 C.F.R. §§ 172.101 (vinyl chloride notation "T50"), 172.102(c)(7)(iii), 173.313, 178.276(b)(3) ("When the shells intended for the transportation of non-refrigerated liquefied compressed gases are equipped with thermal insulation, a device must be provided to prevent any dangerous pressure from developing in the insulating layer in the event of a leak."); 178.276(e)(1) ("The pressure relief devices must be of a type that will resist dynamic forces including liquid surge."); 178.276(e)(2) ("Pressure relief devices must be designed to prevent the entry of foreign matter, the leakage of gas and the development of any dangerous excess pressure."); 178.276(e)(3); 178.276(f); 173.24(f) (closures should not leak

regulations identified above, which require accurate certification of conformity with tank car specifications.

Allegations like these are more than sufficient to survive a motion to dismiss on preemption grounds. Plaintiffs' negligence and gross negligence claims are predicated upon OxyVinyls' violation of specific federal regulations, and the duties Plaintiffs allege OxyVinyls violated are duties established by the standard of care set forth in those federal regulations. At the complaint stage, Plaintiffs need not conclusively establish each violation of a federal regulation by OxyVinyls; rather, Plaintiffs must allege sufficient facts to put OxyVinyls on notice that its conduct violated the standards set forth by the HMTA. Plaintiffs have done so.

Courts routinely refuse to dismiss on preemption grounds allegations that are much less robust than Plaintiffs' allegations here. For example, in *Tipton*, 2016 WL 11501426, the court considered whether to dismiss claims on preemption grounds where Plaintiffs failed to identify any specific regulation that had purportedly been violated. "Construing the complaint in the light most favorable to plaintiffs," the court held that "plaintiffs have given [Defendant] fair notice that they allege it has violated certain HMR provisions in its maintenance, inspection, manufacturing, and repair of its tank car used in transporting the toxic material, despite not explicitly citing to those provisions . . . . Thus, the Court finds that the duties plaintiffs allege [Defendant] negligently violated are substantively the same as those in the HMR, and should not be preempted." *Id.* at *5, 15. Similarly, in *Smith v. CSX Transp., Inc.*, No. 3:13 CV 2649, 2014 WL 3732622, at *3 (N.D. Ohio July 25, 2014), the court denied a motion to dismiss on preemption grounds when plaintiffs alleged defendant failed to comply with FRSA regulations,

---

under normal conditions); 173.304a(a)(2) & n.5. Although discovery is in its early stages, the Complaint plausibly alleges that OxyVinyls' use of aluminum in these devices rendered the cars inadequate under many of these related regulations.

without identifying any specific regulations.  *See also Diehl v. CSX Transp., Inc.*, 349 F. Supp. 3d 487, 503 (W.D. Pa. 2018) (court denying a motion to dismiss based on FRSA preemption arguments because it would be incorrect to do so "[a]t this [motion to dismiss] stage" because "Plaintiff alleges that Defendant failed to comply with the[] regulations").  The same result should follow here, where the Complaint contains more robust allegations and Plaintiffs (along with Norfolk Southern) have identified many specific regulations that OxyVinyls has violated.

The cases cited by OxyVinyls are distinguishable and do not support preemption in the instant matter.  In *Roth v. Norfalco LLC*, 651 F.3d 367 (3rd Cir. 2011), for example, the parties agreed that Norfalco complied in full with the HMTA regulations – "there is not a single provision in the HMTA or HMR with which Norfalco failed to comply."  *Id.* at 372.  Similarly, in *Mawa Inc. v. Univar USA Inc.*, No. 15-6025, 2016 WL 2910084 (E.D. Pa. May 19, 2016), the plaintiff acknowledged that his allegations were not covered by the HMTA and were not substantively the same as its regulations. *See also*, *Parrish v. JCI Jones Chem., Inc.*, No. 17-00518, 2019 WL 1410880, at *5 (D. Haw. Mar. 28, 2019) ("Plaintiffs do not allege that Defendant violated any federal law."); *Trimbur v. Norfolk S. Ry. Co.*, No. 2:13-cv-0160, 2015 WL 4755205, at *6 n. 6 (S.D. Ohio Aug. 10, 2015) (Court dismissed claims against rail carrier premised on defective couplers on tank car, while acknowledging that "the FRSA does not preempt actions in which a party failed to comply with federal regulations.  As discussed in this section, the allegations regarding deficient couplers point to a manufacturer and/or third-party inspector's potential lack of compliance, rather than NSRC's.") (citation omitted).  Those cases are not relevant here, where Plaintiffs allege specific violations of federal regulations.

- 13 -

Plaintiffs have plausibly alleged that OxyVinyls' conduct violated HMTA regulations, and therefore Plaintiffs' negligence claims are not preempted. OxyVinyls' motion to dismiss on preemption grounds should therefore be denied.

## II.  PLAINTIFFS' CAUSES OF ACTION ARE SUFFICIENTLY PLEADED AND, THEREFORE, OXYVINYLS' MOTION TO DISMISS SHOULD BE DENIED

### A.  Plaintiffs Plead Sufficient Facts to Support Their Negligence Claim.

Plaintiffs' Amended Complaint properly alleges a negligence claim against OxyVinyls. *See Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 635 (N.D. Ohio 2014) (stating elements of a negligence claim).[16] OxyVinyls does not dispute that Plaintiffs have adequately alleged OxyVinyls had a duty to Plaintiffs and that it breached that duty. Rather, OxyVinyls limits its argument to challenging causation and harm. As set forth below, OxyVinyls' challenges are meritless and, therefore, the motion to dismiss should be denied.

#### 1.  Plaintiffs adequately allege causation.

OxyVinyls erroneously argues Plaintiffs' negligence claims fall short because its only purported breach of duties owed to Plaintiffs were "administrative deficiencies" that did not cause Plaintiffs' harms. MTD, p. 8. OxyVinyls wholly misconstrues and ignores Plaintiffs' well pled allegations. Indeed, Plaintiffs allege detailed facts showing OxyVinyls' failure to ensure its cars were safe and approved to transport vinyl chloride directly led to Plaintiffs' injuries. *See* Am. Compl. ¶¶ 149-154. That is all that is required at the pleading stage, even setting aside that proximate cause questions are inherently fact bound. *See Cleveland Bakers & Teamsters Health & Welfare Fund v. Purdue Pharma L.P. (In re Nat'l Prescription Opiate Litig.)*, 440 F. Supp. 3d

---

[16] Defendants only challenge the adequacy of Plaintiffs' negligence claims under Ohio law. For that reason, Plaintiffs do not discuss any other law that may apply.

773, 795 (N.D. Ohio 2020) (proximate cause is ordinarily a question of fact for the jury). Put simply, Plaintiffs adequately allege causation.

Proximate cause is "an act or failure to act that was a substantial factor in bringing about an injury and without which the injury would not have occurred." *Hardwick v. 3M Co.*, No. 2:18-cv-1185, 2019 WL 4757134, at *16 (S.D. Ohio Sept. 30, 2019) (citation omitted). It exists where an injury "could have been foreseen or reasonably anticipated from the alleged negligent act." *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d at 795 (citing *Strother v. Hutchinson*, 423 N.E.2d 467, 471 (Ohio 1981)). However, "[i]t is not necessary that a defendant anticipate a plaintiff's particular injury. Instead, it is sufficient that the defendant's act is likely to result in injury to someone." *Id.*

Plaintiffs have more than sufficiently alleged that OxyVinyls' failure to ensure its railcars were safe and properly certified to transport hazardous materials was a "substantial factor in bringing about" the release of dangerous chemicals and Plaintiffs' resulting injuries. *Hardwick*, 2019 WL 4757134, at *16. OxyVinyls owned and/or shipped five unapproved and improperly certified tank cars, unfit for transporting vinyl chloride (Cars 26, 27, 28, 29, and 53). Am. Compl. ¶¶ 149-154. The five cars contained unsafe aluminum parts and components, such as PRDs, protective housings, handwheels, and angle valve handwheels, despite the fact that aluminum components melt when exposed to fire (as happened here) and can cause dangerous adverse chemical reactions with vinyl chloride. Am. Compl. ¶¶ 151, 303(d), 472(ff).[17] These failures thereby directly led to the risk that one or more of the railcars would explode, and

---

[17] *See* Press Release, National Transportation Safety Board, *NTSB Examines Pressure Relief Devices in East Palestine Derailment* (Mar. 21, 2023), available at https://www.ntsb.gov/news/press-releases/Pages/NR20230321.aspx (last visited Oct. 24, 2023) (aluminum "is not compatible with vinyl chloride").

- 15 -

ultimately contributed to the venting and burning of vinyl chloride. Am. Compl. ¶¶ 149-154, 179-184, 299-308.

These allegations set forth more than mere administrative oversights. MTD, p. 9-10. In fact, in attempting to downplay its failure to comply with federal regulations, OxyVinyls ignores the entire purpose of the regulations: the safe transportation of hazardous materials. *See* 49 C.F.R. § 171.1 (explaining that the HMTA authorizes the Secretary of Transportation to "establish regulations for the *safe and secure transportation* of hazardous materials in commerce") (emphasis added). It is reasonably foreseeable to any car owner or shipper that the failure to comply with regulations designed to ensure safe transportation of hazardous materials will substantially contribute to the release of those materials in the event of an emergency. Indeed, the primary risk associated with the transportation of hazardous materials *is* the release of those materials. Accordingly, as alleged, Plaintiffs have directly tied OxyVinyls' negligence to Plaintiffs' injuries and more than adequately met their burden to prove proximate cause.

No case cited by OxyVinyls holds otherwise. In fact, most of the cases OxyVinyls cites are summary judgment decisions that have no bearing on the pleading standard. To the extent the cases are at all instructive, they stand for the unremarkable proposition that mere administrative failures—e.g., failing to obtain a license, follow statutes, or maintain administrative documents—do not establish a negligence claim *absent a connection* between the failure and alleged injury. *See* MTD, p. 9-10. However, here, as set forth above, Plaintiffs allege a direct connection. Yet, even if that connection could be considered attenuated, which is not the case here, dismissal is not warranted. Indeed, as one of OxyVinyls' own authorities acknowledges, "where reasonable minds could differ as to which acts, omissions, or violations of a statute constitute the proximate cause of an accident, *the determination is a matter for the jury*."

- 16 -

*Cincinnati Ins. Co. v. Watkins Motor Lines, Inc.*, No. L-07-1333, 2009 WL 20131, at *3 (Ohio Ct. App. Jan. 9, 2009) (emphasis added).

## 2. **Norfolk Southern's conduct does not absolve OxyVinyls of liability.**

OxyVinyls' second proximate cause argument seeks to deflect blame to Norfolk Southern for causing the derailment and for venting and burning vinyl chloride. MTD, p. 11. In particular, OxyVinyls claims Norfolk Southern's actions were intervening and superseding causes of Plaintiffs' injuries, thereby relieving it of liability. While OxyVinyls can certainly assert this defense at trial or the summary judgment stage, it is no basis to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6). As recently recognized by this Court, whether something is an intervening cause goes to the "provability" of the claims. "But [a 12(b)(6) motion], by rule, only permits a review of the [complaint] to determine whether it plausibly states a claim for relief." *Buon Vino Mfg., Inc. v. Ostrowski*, No. 1:21-cv-2268, 2023 WL 3074496, at  *3 (N.D. Ohio April 25, 2023).[18] Plaintiffs have done just that.

Moreover, to what extent Norfolk Southern *also* contributed to Plaintiffs' injuries is a red herring. It is axiomatic that "there can be more than one proximate cause of a particular injury." *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d at 795 (quoting *Taylor v. Webster*, 231 N.E.2d 870, 873 (Ohio 1967)); *see also Murphy v. Carrollton Mfg. Co.*, 575 N.E.2d 828, 830 (Ohio 1991) ("In Ohio, when two factors combine to produce damage or illness, *each* is a proximate cause." (emphasis added)). The law does not require "sole" proximate cause. Plaintiffs' burden here is only to plausibly plead (and ultimately prove) that OxyVinyls' conduct was a substantial factor in producing the harms alleged. Plaintiffs have done that.

---

[18] Each case cited by OxyVinyls is a decision on summary judgment or after presentation of the evidence. Accordingly, these cases have no bearing on the pleading standard.

Where, like here, more than one act of negligence combines to cause injuries, "[t]he causal connection of the first act of negligence is broken and superseded by the second, *only if* the intervening negligent act is both *new and independent*." *Leibreich v. A.J. Refrigeration, Inc.*, 617 N.E.2d 1068, 1071 (Ohio 1993) (emphasis altered). The intervening cause must be "new" in that "it could not reasonably have been foreseen" and it must be "independent" in that there is an "absence of any connection or relationship of cause and effect between the original and subsequent act." *Id.* at 1071-72. The vent and burn was the opposite of new and independent—it was a direct foreseeable consequence of OxyVinyls' negligence in equipping its rail cars with unsuitable safety components made of aluminum which failed, ultimately leading to a decision to vent and burn the vinyl chloride cars. *See* Am. Compl. ¶¶ 182-84 (venting *each* of the railcars containing vinyl chloride, including Cars 26, 27, 28, 29 and 53, was "the only way to avoid a catastrophic tanker failure and explosion"). Indeed, the Federal Railroad Administration considers the vent and burn method a foreseeable consequence in the event of an emergency. *See Handbook for Vent and Burn Method of Field Product Removal*, U.S. Dep't of Transp. (May 1994). Whether there was any intervening or superseding cause to OxyVinyls' negligence will ultimately be determined by a trier of fact. *Leibreich*, 617 N.E.2d at 1071 ("We have also repeatedly recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact.") At the pleading stage, however, Plaintiffs have met their burden.

### 3.  Plaintiffs adequately allege injury.

Plaintiffs allege they have suffered real harms because of OxyVinyls' negligence. Among other things, Plaintiffs' allegations describe and catalogue the numerous harms Plaintiffs have suffered, including lost income, property damage, contamination at residences and workplaces, and increased risks of serious and potentially fatal illnesses including cancer and organ damage

- 18 -

necessitating ongoing medical monitoring.[19] Am. Compl. ¶¶ 4-57, 287. OxyVinyls' erroneous contention that Plaintiffs must, to survive a motion to dismiss, provide particularized allegations about the manner in which they and/or their property were harmed (MTD, p. 13) is both entirely unsupported and fundamentally inconsistent with Rule 8(a)'s notice-pleading standard. *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (federal pleading standard does not require "detailed factual allegations" (citation omitted)); *see also Tipton*, 2016 WL 11501426, at \*17-18 (train derailment case in which plaintiffs plausibly alleged property damage where they pleaded a possessory interest in real estate).

The denial of a similar motion to dismiss in prior train derailment case in this District is instructive.  *See generally Hirsch*, 2008 U.S. Dist. LEXIS 124211. In *Hirsch*, plaintiffs brought a putative class action after a train carrying hazardous materials derailed. Like Plaintiffs here, the *Hirsch* plaintiffs asserted negligence claims and alleged the derailment "was accompanied by a chemical spill, fire, and rail car explosion, allegedly causing toxic substances, toxic fumes, and/or carcinogens . . . to be released into the atmosphere, ground and water." *Id.* at \*2-3. The court denied the defendant's  motion to dismiss the negligence claims, stating:

> Plaintiffs have sufficiently alleged that toxic substances were on the train and were released because of the derailment, they were exposed to these substances because of the derailment, the toxic substances are associated with increased risk of disease, and because defendant's conduct caused them to be exposed to these toxic substances they face an increased risk of disease requiring medical monitoring.

*Id.* at \*22. The substantially similar negligence allegations here justify the same result.

---

[19] Plaintiffs need not allege "physical manifestations of personal or bodily injury" to adequately plead that they have suffered harm. *Hirsch v. CSX Transportation, Inc.*, No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211, at \*19 (N.D. Ohio Oct. 22, 2008) (Polster, J.) ("[P]hysical injury is not required to demonstrate damages entitling a plaintiff to medical monitoring relief.").

*Tipton* is also instructive. There, plaintiffs brought negligence claims after "a train derailment and subsequent release of toxic chemicals," alleging that smoke, soot, and fumes from the toxic chemical fire "*may* have settled on their yards or in their homes . . . or . . . may have gotten trapped in their homes." 2016 WL 11501426, at *1-2 (emphasis added). As a result, the plaintiffs alleged "that they have suffered property damage, inconvenience, fear, anxiety, aggravation, and mental anguish, among other things." *Id.* at *2. The court summarily denied defendants' motion to dismiss the negligence claim in a single paragraph, finding that the plaintiffs sufficiently detailed "how such breaches were both a proximate cause and cause in fact of plaintiffs' damages." *Id.* at *18. The court, therefore, could "'draw the reasonable inference' that each defendant's negligence . . . caused plaintiffs property and personal injury damage." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs' allegations are at least equally, if not more, detailed.

Moreover, the cases cited by OxyVinyls are inapplicable or distinguishable.[20] For example, *Key v. DSW, Inc.*, 454 F. Supp. 3d 684 (S.D. Ohio 2006), was a class action credit monitoring case where the court held plaintiff did not have standing as her data had not actually been stolen and she was only at an increased risk of future identity theft. Notably, the *Key* court distinguishes credit monitoring cases from medical monitoring cases, as medical monitoring cases "justify departure from the general rule that enhanced future risk [of] injury cannot be the sole basis of a negligence action." *Id.* at 691 (citing *Stollenwerk v. Tri-West Health Alliance*, No. Civ. 030185PHXSRB, 2005 WL 2465906, at *4 (D. Ariz. Sept. 6, 2005)).

---

[20]*Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802 (N.D. Ohio 2002) is a summary judgment decision and, thus, has no bearing on the pleading standard.

Contrary to the plaintiffs in *Salerno v. City of Niagara Falls*, No. 20-3749-cv, 2021 WL 4592138 (2d Cir. Oct. 6, 2021) – an unpublished and out of circuit opinion cited by OxyVinyls – Plaintiffs here have adequately alleged injuries flowing from the train derailment. Plaintiffs' Complaint (1) details the location of the derailment with respect to injuries suffered within a 30-mile radius therefrom; (2) alleges real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, and loss of use and enjoyment; and (3) specifies the chemicals with their known health risks and requests medical monitoring. Am. Compl. ¶¶ 4-57, 155, 169-175, 184-188, 190-240, 248, 266-273, 304-307, 426-455.

For these many reasons, Plaintiffs have adequately pled their claim for negligence and OxyVinyls' motion to dismiss must be denied.

### B.  **Plaintiffs Have Sufficiently Pleaded Their Gross Negligence Claim.**[21]

Plaintiffs more than adequately allege a claim for gross negligence.[22] Gross negligence is defined as a "failure to exercise any or very slight care." *Thompson Elec., Inc. v. Bank One*, 37 Ohio St.3d 259, 265 (1988) (citation omitted). Gross negligence is evidenced by willful, wanton, or reckless conduct. *See Ripepi v. USA Taekwondo, Inc.* No.: 5:20-cv-01896, 2021 WL 4459465, at *10-12 (N.D. Ohio Sept. 29, 2021); *Wiley v. City of Columbus*, 36 F.4th 661, 671 (6th Cir. 2022). Accordingly, courts applying Ohio law deny motions to dismiss gross negligence claims

---

[21] OxyVinyls only substantively challenges the adequacy of Plaintiffs' gross negligence claim under Ohio law.  For that reason, Plaintiffs do not discuss any other law that may apply.

[22] The primary opinions upon which OxyVinyls relies to argue otherwise are summary judgment decisions that have no bearing on whether Plaintiffs' have met the pleading standard. *See* MTD, p. 14, citing *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990); *Christian v. Wal-Mart Stores E., LP*, No. 11CA002, 2011 WL 2739645 (Ohio Ct. App. July 13, 2011).

where the complaint plausibly alleges the defendant's actions were willful, wanton, or reckless. *See Ripepi*, 2021 WL 4459465, at *11-12, *34-35; *Mohat v. Horvath*, No. 2013-L-009, 2013 WL 5450296 (Ohio Ct. App. Sept. 30, 2013).

The Supreme Court of Ohio defines "willful misconduct" as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. City of Massillon*, 983 N.E.2d 266, 273 (Ohio 2012). Likewise, it defines "wanton misconduct" as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* Finally, it defines "reckless conduct" as being "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* The allegations in the Amended Complaint plausibly allege that OxyVinyls' actions were willful, wanton, and reckless.

OxyVinyls is a leading North American manufacturer of vinyl resins, chlorine, and caustic soda. Am. Compl. ¶ 73. Accordingly, OxyVinyls is no stranger to the volatile and toxic properties of vinyl chloride that make it "carcinogenic, mutagenic and/or otherwise harmful to humans." Am. Compl. ¶ 468. Rather, OxyVinyls knows the "considerable health risks associated with the release of vinyl chloride . . . into the air, water, and land, including the risk of causing various diseases and cancers in the surrounding population." Am. Compl. ¶ 469.

OxyVinyls also owns and maintains a fleet of railcars for use in shipping vinyl chloride. Am. Compl. ¶ 74. OxyVinyls is therefore innately aware of the risks and dangers that can arise when transporting vinyl chloride by rail. Furthermore, OxyVinyls knows that its failure to take

- 22 -

appropriate safety measures in the construction, maintenance, and inspection of the railcars transporting its "vinyl chloride . . . could result in the unreasonably dangerous emission of hazardous materials into the surrounding communities." Am. Compl. ¶ 470; *See also*, Am. Compl. ¶ 300-302.

Despite this knowledge, OxyVinyls chose to cut corners on the construction, maintenance, certification, and upkeep of critical safety features on the railcars it owned and leased. Indeed, OxyVinyls chose to ship its dangerous product in unsafe, unapproved, uncertified, and incompatible railcars that unsurprisingly failed, resulting in immense harm to Plaintiffs and the Class. *See, e.g.,* Am. Compl. ¶ 303-304. Specifically, Car 29 was fitted with an unapproved PRD. Am. Compl. ¶ 303. Furthermore, Cars 26, 27, 28, 29, and 53 had aluminum components and/or coatings in, around, and/or on the PRD, protective housings, and/or handwheel valves. Am. Compl. ¶ 152, 303. Aluminum, however, is a soft and malleable metal that has an extremely low melting point and is susceptible to melting and damage from common fires. Am. Compl. ¶ 151. The risk of using such a weak metal in, around, or on critical valves, housings, and PRDs is readily apparent, as such devices become necessary in the event of catastrophic events such as derailments and fires. It is therefore unsurprising that in this case there is evidence that damage to or the melting of aluminum parts compromised the PRDs' ability to properly vent and depressurize the cars, ultimately leading to the decision to detonate the five vinyl chloride cars. *See* Am. Compl. ¶¶ 182-184.

These allegations are more than sufficient to allege that OxyVinyls' actions were willful, wanton, and reckless, which caused and/or contributed to the decision to explode all five vinyl chloride cars and directly harm Plaintiffs.  At the pleading stage, nothing further is required of Plaintiffs to assert a claim for gross negligence. *See Mohat*, 2013 WL 5450296, at *5 (affirming

- 23 -

a denial of a motion to dismiss gross negligence claims; holding "a plaintiff is only required to allege a set of facts, which, if proven, would plausibly allow him to recover."); *McGlone v. Centrus Energy Corp.*, No. 2:19-cv-02196, 2020 WL 4431482, at *15 (July 31, 2020 S.D. Ohio) (allegations that defendant released toxic substances into community without warning were sufficient to state a claim for gross negligence).

### C.    OxyVinyls' Motion to Strike Plaintiffs' Request For Punitive Damages is Procedurally Deficient and Without Merit.

OxyVinyls' Motion to Strike Plaintiffs' request for punitive damages should be denied for two independent reasons: (1) Defendant's motion is procedurally improper; (2) Plaintiffs' Complaint adequately sets forth the basis for their request for punitive damages.

### 1.    OxyVinyls' motion to strike is procedurally improper.

OxyVinyls' motion presents no basis to strike Plaintiffs' request for punitive damages under Rule 12(f). Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). At no point in its motion does OxyVinyls allege that Plaintiffs' request for punitive damages should be stricken because it is redundant, immaterial, impertinent, or scandalous.[23] [24] Instead, OxyVinyls bases its

---

[23] Any attempt to raise such arguments in its Reply must be ignored and/or stricken. *Bender v. Comm'r of Soc. Sec.*, No. 11-CV-1546, 2012 WL 3913094, at *8 (N.D. Ohio Aug. 17, 2012) ("It is also inappropriate for the undersigned to consider the arguments raised in Plaintiff's reply brief because they have been waived. It is well-established that a party should not raise new arguments in a reply brief." (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008))), *report and recommendation adopted*, 2012 WL 3913091 (N.D. Ohio. Sept. 7, 2012).

[24] Other federal courts in Ohio have stricken punitive damages claims at the motion to dismiss stage where punitive damages were not an available remedy under the applicable statutory or common law cause of action. *See e.g.*, *Ironton Coke Corp. v. Oil Chem & Atomic Workers Intl. Union*, 491 F. Supp. 70, 74 (S.D. Ohio 1980); *Burns v. Potter*, No. 07-cv-00018, 2008 U.S. Dist. LEXIS 106762, *5-6 (S.D. Ohio Feb. 21, 2008), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 17652 (S.D. Ohio March 7, 2008). Here, however, OxyVinyls does not assert punitive damages are unavailable under the causes of action Plaintiffs allege.

entire motion on the erroneous assertion that Rule 12(f) authorizes this Court to strike an "insufficient claim" and that Plaintiffs' request for punitive damages is insufficiently pled. MTD, p. 4. Contrary to OxyVinyls' position, however, the sufficiency analysis of Rule 12(f) does not pertain to claims and instead is limited to defenses.

As noted above, Rule 12(f) states that a court may "strike from a pleading an insufficient *defense*[.]" The word "claim" is not included in this rule. This was intentional. In the 1946 Advisory Committee Note adopting this language, the Committee states: "This amendment affords a specific method of raising the insufficiency *of a defense*, a matter which has troubled some courts[.]" (emphasis added). Defendant cannot add the word "claim" to this Rule to serve its own ends.

Indeed, the two cases OxyVinyls cites do not say otherwise. The first case Defendant cites is *FTC v. Stratford Career Inst.*, No. 16-CV-371, 2016 WL 3769187 (N.D. Ohio July 15, 2016). Therein, the court – consistent with the language of Rule 12(f) – considered a motion to strike affirmative defenses, not claims. The second case Defendant cites is *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*, 721 F. Supp. 2d 663 (N.D. Ohio 2010). The procedural history of *Flex Homes* is important. In a prior ruling, the court had dismissed the plaintiffs' request for punitive damages. *Id.* at 666. Thereafter, the court "instructed the Plaintiffs to amend the Complaint to assert a basis for punitive damages or their request for such damages would be stricken from the Complaint." *Id.* at 675. Unsurprisingly, when the plaintiffs "did not avail themselves of that opportunity" to amend their pleading, the court struck the request for punitive damages from the complaint. *Id.* at 676. *Flex Homes*, therefore, did not use Rule 12(f) to test the sufficiency of any claim, but rather utilized the Rule to strike allegations it had *previously* determined to be improperly pled.

Accordingly, neither the language of the Rule nor the cases to which OxyVinyls cites support the use of Rule 12(f) to test the sufficiency of anything other than defenses.

Even if the sufficiency analysis of Rule 12(f) applied to claims, however, it still would have no bearing on Plaintiffs' request for punitive damages. As recognized by this very Court, punitive damages are not a claim; rather, they are a remedy. *Seaman Corp. v. Siplast, Inc.*, No. 5:20CV2040, 2021 WL 4775631, at *2 (N.D. Ohio March 15, 2021) (Pearson, J.). Because of this distinction, this Court has held Rule 12(b)(6) – which unlike Rule 12(f) does focus on the sufficiency of claims – to be inapplicable to requests for punitive damages. *Id.* (denying motion to dismiss punitive damages due to allegedly insufficient allegations of malice). Therefore, if Rule 12(f) could be used to challenge the sufficiency of claims, it would not apply to Plaintiffs' requested remedy of punitive damages. For these reasons, OxyVinyls' Motion to Strike is procedurally improper and should be denied.

### 2. The allegations in Plaintiffs' Amended Complaint support punitive damages.

Not only is OxyVinyls' Motion to Strike procedurally deficient, but it is also substantively without merit. Contrary to OxyVinyls' assertion, Plaintiffs have alleged that it acted with actual malice. The actual malice necessary for punitive damages is "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987). "[A]ctual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross." *Villella v. Waikem Motors, Inc.*, 543 N.E. 2d 464, 467 (Ohio 1989). Indeed, as set forth above regarding Plaintiffs' gross negligence allegations, Plaintiffs have adequately pleaded that OxyVinyls' actions were willful, wanton, and reckless. Such allegations not only support that OxyVinyls' actions were grossly negligent, but also that it acted with actual malice. OxyVinyls,

- 26 -

with full knowledge of the dangerous chemicals it was transporting and the extreme hazards that would result if such chemicals were released into the community, chose to cut corners critical to safety on each of the vinyl chloride containing cars directly resulting in the detonation of Cars 26, 27, 28, 29, and 53. (*See Supra* at II.B.); Am. Compl. ¶¶ 149-153, 300-304, 182-184, 470, 472. At the pleading stage, such allegations are more than sufficient to demonstrate OxyVinyls acted with actual malice and that its conduct was reckless, willful, wanton, malicious, and/or intentionally without regard for Plaintiffs' and Class Members' rights.

For these reasons, Plaintiffs respectfully submit that OxyVinyls' motion to strike should be denied.

### D. **Plaintiffs Have Properly Pleaded Claims For Medical Monitoring.**

#### 1. **Medical monitoring is a remedy under Ohio law and therefore is not subject to dismissal at the pleading stage.**

In Ohio, medical monitoring is a form of damages for an underlying tort claim. *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 63 (Ohio 2004); Am. Compl. p. 93, n. 13. It is therefore a remedy, not a claim. Accordingly, as a remedy, Plaintiffs' request for medical monitoring is not subject to dismissal pursuant to Rule 12(b)(6). *Seaman*, 2021 WL 4775631, at *2-3(denying motion to dismiss, because Rule 12(b)(6) cannot be used to challenge a remedy). For this reason alone, OxyVinyls' Motion is procedurally improper and should be denied. As set forth in further detail below, OxyVinyls' arguments are also substantively without merit.

#### 2. **Plaintiffs' allegations support the remedy and claim of medical monitoring.**

Under any potentially applicable law (Ohio, Pennsylvania, or West Virginia), Plaintiffs' allegations are sufficient to support their requested remedy or claim of medical monitoring. Under Ohio law, to be entitled to medical monitoring, a plaintiff must establish that as a result of a defendant's negligence they have been exposed to something that places them at an increased

- 27 -

risk of disease for which a reasonable doctor would order medical monitoring. *See Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812, 825 (N.D. Ohio 2015). Similarly, Defendants concede that under the laws of Pennsylvania[25] and West Virginia,[26] to plead a claim for medical monitoring a plaintiff must allege that: as a result of a defendant's negligence they were exposed to something at a significant level or amounts above background levels, such exposure places them at an increased risk of developing disease, monitoring procedures exist that would allow earlier detection of the disease, and such medical monitoring is reasonably necessary. *See e.g.* MTD, p. 16. Plaintiffs have clearly met these pleading standards.

    a.    **Plaintiffs provide detailed allegations regarding their exposure to specifically identified chemicals as a result of OxyVinyls' negligence.**

In their highly detailed Amended Complaint, Plaintiffs allege that as a result of OxyVinyls' negligence they have been significantly exposed – above background levels – to *specifically identified* hazardous chemicals, including vinyl chloride and its by-products. *See e.g.*, Am. Compl. ¶¶ 4, 7, 10, 14, 17, 20, 23, 27, 30, 33, 35, 39, 42, 48, 427, 437, 447. Indeed,

---

[25] To prevail on a common law claim for medical monitoring under Pennsylvania law, the plaintiff must prove: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Redland Soccer Club v. Dep't of the Army*, 696 A.2d 137, 145-46 (Pa. 1997).

[26] To prevail on a medical monitoring claim in West Virginia the plaintiff must prove: (1) he or she has been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease relative to the general population; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible. *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432-33 (W. Va. 1999).

- 28 -

Plaintiffs plead that each of said chemicals were in fact detected in air, water, soil, and sediment in the 30-mile radius around the derailment site. Am. Compl. ¶ 190. Despite this detail, OxyVinyl's alleges *Lafferty v. Sherwin-Williams Co.*, No. 1:17-06321, 2018 WL 3993448 (D.N.J. Aug. 21, 2018) requires more – that Plaintiffs purportedly must plead what chemicals they were actually exposed to and their actual level of exposure. MTD, p. 17. First, as noted above, Plaintiffs did specifically detail the names of the chemicals to which they were significantly exposed. Second, *Lafferty* did not hold that at the pleading stage a plaintiff must plead their level of exposure. Rather *Lafferty* simply held that the claimant's "[s]weeping allegations" were insufficient to sustain a medical monitoring claim. *Id.* at *10. The court then proceeded to list specific details, including exposure levels, that *could* overcome the pleading burden. *Id.* at *11. The court did not however hold that such details were required to state a claim. Here, Plaintiffs' allegations are far from "sweeping" generalizations. Rather, they are detailed and specific as to what Plaintiffs have been exposed to in the air, water, soil, and sediment as a result of OxyVinyls' negligence. Plaintiffs have met their burden.

> **b.** **Plaintiffs adequately allege they are at an increased risk of specifically identified diseases that can be detected by medical monitoring that would be ordered by a reasonable doctor.**

In their Amended Complaint, Plaintiffs allege that as a result of their exposure, they are at an increased risk of developing *specifically identified* diseases that include, but not limited to liver cancer, brain cancer, angiosarcoma of the liver, Raynaud's disease, and acro-osteolysis. *See* Am. Compl. ¶¶ 430, 440, 450, 190-240. Plaintiffs allege that early detection of these identified diseases is achievable through existing monitoring procedures and periodic diagnostic medical exams (different from typical doctors' visits for those that have not been exposed.) *See* Am. Compl. ¶¶ 430-434, 440-444, 450-454. Finally, Plaintiffs allege that reasonable physicians

- 29 -

would order such monitoring of Plaintiffs, because early detection and diagnosis is critical to minimizing the harm that these diseases cause. *See* Am. Compl. ¶¶ 431-432, 441-442, 451-452.

At the pleading stage, this is all that is required to provide a short and plain statement of the claim and place Defendant on notice of the known chemicals and diseases of concern giving rise to this remedy/claim. Further, removing any risk of surprise to OxyVinyls is the fact that Plaintiffs must produce expert disclosures and testimony (in accordance with Scheduling Order) to ultimately prove these claims and entitlement to this remedy. OxyVinyls will have ample time to review, challenge, and respond with its own expert disclosures prior to summary judgment and trial. Nonetheless, OxyVinyls attempts to demand more now, such as the specifics as to the level of increased risk Plaintiffs now face and the specific monitoring regimen Plaintiffs require. MTD, p. 17-19. This "thinly disguised demand for proof rather than plausibility at the pleading stage" however must be rejected. *See Baker v. Deutschland GmbH*, 240 F.Supp.3d 341, 347 (M.D. Penn. 2016) (denying motion to dismiss medical monitoring claims).

Indeed, the cases OxyVinyls cites for the contrary conclusion bear little merit. For example, OxyVinyls cites summary judgment decisions that speak to the burden of proof at trial, but not the pleading standard. *See e.g.* MTD, p. 17-19 citing *Redland Soccer Club*, 696 A.2d (Pa. 1997); *Mann v. CSX Transp., Inc.*, No. 1:07–cv–3512, 2009 WL 3766056 (N.D. Ohio Nov. 10, 2009). Likewise, the cases OxyVinyls cites addressing medical monitoring claims at the motion to dismiss stage are distinguishable and/or unpersuasive. *See* MTD p. 17-19 citing *Lafferty*, 2018 WL 3993448, *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, No. 12-6542, 2013 WL 5655480 (E.D. Pa. Oct. 17, 2013), *Callihan v. Surnaik Holdings of WV, LLC*, No. 2:17-cv-04386, 2018 WL 6313012 (S.D. W.Va. Dec. 3, 2018); *In re Avandia*, No. 07–md–

- 30 -

01871, 2011 WL 4006639 (E.D. Pa. Sept. 7, 2011), *Menkes v. 3M Co.*, No. 17-0573, 2018 WL 2298620 (E.D. Pa. May 21, 2018).

While the medical monitoring claims in these cited cases were dismissed, a cursory review of these opinions and their underlying pleadings reveal barebones allegations that stand in stark contrast to the detailed Amended Complaint currently before this Court. *See*, *e.g.*, *In re Avandia*, 2011 WL 4006639 (medical monitoring claim lacked any specifically alleged facts). For instance, in *Menkes*, medical monitoring was not pled as a separate claim, but rather the claimants "merely tack[ed] 'medical monitoring' onto a long list of damages." 2018 WL 2298620, at *12. Likewise, in *Callihan*, the claimants alleged exposure to chemicals, but failed to link that exposure to any likely risk of developing a disease. *See* 2018 WL 6313012, at *7. Indeed, a review of the underlying pleading reflects that the claimants only alleged exposure to chemicals that were "possibly" or "probably" carcinogenic and failed to identify any specific cancer or disease that the claimants were at risk of developing as a result from their exposure. *See* Ex. A - *Callihan* Complaint. As noted above, *Lafferty* dismissed "sweeping allegations," but contrary to OxyVinyls' assertions, the court did not specify the precise details that are required to plead every claim for medical monitoring. *See* 2018 WL 3993448, at *4-6. Finally, in *Slemmer*, the claimants failed to specifically identify any serious latent condition arising from their alleged exposure. 2013 WL 5655480, at *3. These opinions dismissing threadbare pleadings have little bearing on the detailed fact specific allegations in Plaintiffs' Amended Complaint. To the extent, however, that any of these cases could be read to require more detail than that provided in Plaintiffs' complaint, Plaintiffs respectfully submit that they are unpersuasive, as they seek levels of proof better reserved for summary judgment and trial and not the pleading stage of litigation.

Plaintiffs have met the pleading standard and provided OxyVinyls with detailed notice of the basis for their claim and requested remedy of medical monitoring. Accordingly, Defendants' motion to dismiss should be denied.

## CONCLUSION

Plaintiffs respectfully submit that OxyVinyls' motion to dismiss Plaintiffs' Complaint and motion to strike Plaintiffs' request for punitive damages should be denied. If the Court finds the allegations insufficient, Plaintiffs respectfully request leave to amend.

Dated: October 24, 2023

                          Respectfully submitted,

                          */s/ Michelle L. Kranz*_____
                          Michelle L. Kranz (Oh 62749)
                          ZOLL & KRANZ, LLC
                          6620 West Central Ave., Suite 100
                          Toledo, Ohio 43617
                          419-841-9623
                          419-841-9719 (fax)
                          michelle@toledolaw.com

                          *Plaintiffs' Liaison Counsel*

                          */s/ Seth A. Katz*_____
                          Seth A. Katz (pro hac vice)
                          BURG SIMPSON ELDREDGE HERSH
                          & JARDINE, P.C.
                          40 Inverness Drive East
                          Englewood, CO 80112
                          303-792-5595
                          303-708-0527 (fax)
                          skatz@burgsimpson.com

                          M. Elizabeth Graham (pro hac vice)
                          GRANT & EISENHOFER, P.A.
                          123 S. Justison Street, 6th Floor
                          Wilmington, DE 19801
                          303-622-7000
                          303-622-7100 (fax)
                          egraham@gelaw.com

- 32 -

Jayne Conroy (pro hac vice)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
212-213-5949 (fax)
jconroy@simmonsfirm.com

Michael Morgan (pro hac vice)
MORGAN & MORGAN
20 North Orange Ave., Suite 1600
Orlando, FL 32801
407-420-1414
407-245-3389 (fax)
mmorgan@forthepeople.com

*Plaintiffs Interim Class Counsel and Co-Lead Counsel*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

I certify that this Response Memorandum adheres to the page limitations set forth in

Local Rule 7.1(f) for mass-tort cases because it does not exceed 40 pages in length.  See, Case

Management Conference Order (ECF 98).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2023, a copy of foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt. Parties may access this filing through the Court's

system.

/ s/ *Michelle L. Kranz*
Michelle L. Kranz