**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** : : : : : | **CASE NO.  4:23-CV-00242-BYP**  **JUDGE BENITA Y. PEARSON**  **MAGISTRATE JUDGE CARMEN HENDERSON** |

**DEFENDANT/THIRD-PARTY DEFENDANT OXYVINYLS'**
<u>**MOTION TO COMPEL INSPECTION**</u>

Pursuant to the Court's January 31, 2024 Order, Defendant/Third-Party Defendant OxyVinyls LP ("OxyVinyls") moves the Court for an order compelling the National Transportation Safety Board ("NTSB") to permit OxyVinyls to test, sample, and/or inspect the pressure relief devices, valves, fittings, and related components from the following railcars involved in the East Palestine train derailment on February 3, 2023:  TILX 402025; OCPX 80179, 80235, 80370; and GATX 95098.  A Memorandum in Support is attached.

Respectfully submitted,

*s/ Alycia N. Broz*
Alycia N. Broz (0070205)
Kimberly Weber Herlihy (0068668)
Emily J. Taft (0098037)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 45215
Phone: (614) 464-6400
Email: anbroz@vorys.com
    kwherlihy@vorys.com
    ejtaft@vorys.com

*Counsel for OxyVinyls LP*

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

OxyVinyls submits this Motion to Compel the NTSB to permit OxyVinyls to test, sample, and/or inspect the pressure relief devices, valves, fittings, and related components (hereinafter the "Physical Evidence") from the following railcars involved in the East Palestine train derailment on February 3, 2023: TILX 402025; OCPX 80179, 80235, 80370; and GATX 95098.

The Physical Evidence consists of railcar components from railcars owned and/or leased by OxyVinyls that were involved in the derailment of Train 32N in East Palestine, Ohio on February 3, 2023. Norfolk Southern claims that the pressure relief devices ("PRDs") malfunctioned after the derailment and/or were manufactured with components containing materials inconsistent with vinyl chloride, which was the chemical being shipped in its stabilized form. (ECF No. 119, Third-Party Compl. ¶¶ 151–162, 167, 172 & 173.) The Physical Evidence is in the sole custody of the NTSB, and despite OxyVinyls' reasonable and timely request, the NTSB has refused to allow OxyVinyls to even see the PRDs, citing inconvenience and diversion from the NTSB's normal day-to-day activities. (*See* Email from R. Asher to A. Broz of 1/31/2024, attached as Exhibit A.) OxyVinyls' requests access to the Physical Evidence so that it can respond to Norfolk Southern's allegations regarding the five railcars post-derailment.

OxyVinyls respectfully requests an order directing the NTSB to permit OxyVinyls to test, sample, and/or inspect the Physical Evidence.

**II.  BACKGROUND**

    **A.  Norfolk Southern has Made the Physical Evidence Critical to OxyVinyls' Defenses in this Case.**

The Physical Evidence is central to this litigation because, according to the Third-Party Complaint, the PRDs' operation, activity, and appearance following the derailment contributed to

the decision by Norfolk Southern and Unified Command to perform a vent and burn of the five vinyl chloride railcars. Specifically, Norfolk Southern alleges, among other things, that the PRDs vented on and off after the derailment (Third-Party Compl. ¶¶ 76, 79, 80, 82); gas venting from the PRDs ignited and melted the valves and fittings, allegedly causing responders to conclude they could not transfer the vinyl chloride because of the damaged valves (*id.* ¶¶ 77 & 83); Car 28's PRD vented for 70 minutes, which allegedly caused responders to believe that polymerization blocked the PRDs and therefore hot tapping was not a viable method to remove the vinyl chloride, and the polymerization could lead to an explosion (*id.* ¶¶ 84, 88, 90, 91, 116); and that the PRDs were allegedly corroded after the derailment (*id.* ¶ 100).[1]

The Third-Party Complaint also criticizes the construction and testing of the PRDs. For example, it suggests that the PRDs were not tested to withstand fire (*id.* ¶ 78), and that the PRDs allegedly were not approved for vinyl chloride transportation because they contained aluminum components (*id.* ¶¶ 134–35, 161, 167). The Third-Party Complaint seeks to hold OxyVinyls responsible for the certification, qualification, compliance, and maintenance of PRDs and valves. (*Id.* ¶ 116.)

   **B. Despite Reasonable Requests, the NTSB Refuses to Permit OxyVinyls to Test, Sample, and/or Inspect the Physical Evidence.**

OxyVinyls has requested multiple times, without success, to test, sample, and/or inspect the Physical Evidence, which is and has been in the sole custody of the NTSB. The NTSB conducted some testing of the Physical Evidence on March 15 and 16, 2023, shortly after the derailment, and published the results. (Letter from W. McMurry to A. Broz of 1/29/2024, attached

---

[1] OxyVinyls cites these paragraphs only for purposes of this Motion but denies any and all allegations that state or suggest that the PRDs were not functioning properly and denies the remaining allegations in Norfolk Southern's Third-Party Complaint.

3

as Exhibit B.) Yet, this does not change the fact that OxyVinyls needs and has the right to access to the Physical Evidence to defend itself against the allegations in the Third-Party Complaint.

On January 2, 2024, OxyVinyls submitted a *Touhy* request with an affidavit of counsel in conformance with 49 C.F.R. § 837.4, as well as a subpoena, seeking testing, sampling, and/or inspection of the Physical Evidence. (*See* Letter from K. Herlihy to D. Glagoleva of 1/02/2024 & and Affidavit of K. Herlihy, attached as Exhibit C; Subpoena, attached as Exhibit D.)

The NTSB replied acknowledging receipt of the *Touhy* request and stated that it would respond by February 5, 2024. (Letter from R. Asher to A. Broz of 1/05/2024, attached as Exhibit E.) Counsel for OxyVinyls emailed the NTSB the same day, said that discovery closes February 5, 2024, and requested a response by January 19, 2024. (Email from K. Herlihy to R. Asher of 1/05/2024, attached as Exhibit F.) After a few more exchanges, the NTSB denied OxyVinyls' request to test, sample, and/or inspect, in part, stating that the NTSB permits only official parties to an investigation to access investigative materials and that allowing OxyVinyls access would compromise their investigation and divert employee time and resources. (Email from R. Asher to K. Herlihy of 1/22/2024, attached as Exhibit G; Letter from W. McMurry to A. Broz of 1/29/2024, Ex. B.) The NTSB represented that it would release the Physical Evidence after its investigation concludes, sometime this summer—well after the close of fact and expert discovery in this case. (Letter from W. McMurry to A. Broz of 1/29/2024, Ex. B; *see also* ECF No. 301, Order of 12/07/23.)

On January 31, 2024, following a telephonic discovery conference, the Court ordered the NTSB to respond to OxyVinyls' request to inspect the PRD physical evidence. (ECF No. 380, Order of 1/31/2024.) On January 31, 2024, the NTSB responded that an inspection would require significant time and resources, and that it needed more information about the extent and methods

4

of inspection. (Email from R. Asher to A. Broz of 1/31/2024, attached as Exhibit H.) Counsel for OxyVinyls provided that additional information. (Email from A. Broz to R. Asher of 2/6/2024, attached as Exhibit I.)

The Court also ordered any parties making the *Touhy* request to move to compel the NTSB by February 7, 2024. (ECF No. 380, Order of 1/31/2024, at 2–3.) Consistent with the Court's Order, and in view of NTSB's refusal to permit *even* a visual inspection of the Physical Evidence, OxyVinyls respectfully submits this Motion to Compel.

### III. LAW AND ARGUMENT

#### A. The Court has Authority to Compel the NTSB to Allow OxyVinyls to Sample, Test, and/or Inspect the Physical Evidence.

As a federal agency, the NTSB's regulations identify the process by which materials may be released to parties engaged in litigation where the NTSB is not a party. *See* 49 C.F.R. § 837.4; *Touhy v. Ragen*, 340 U.S. 462, 468–69 (1951); *see also* 5 U.S.C. § 301 (authorizing federal agency executives to regulate the government of the department, including preservation of records). Pursuant to these regulations, OxyVinyls submitted a *Touhy* request to the NTSB for inspection, sampling and testing of the Physical Evidence. (*See Touhy* Req., Ex. C, Subpoena, Ex. D.) NTSB denied the request. (Letter from R. Asher to A. Broz of 1/05/2024, Ex. E at 1–2.)

Courts in the Sixth Circuit analyze motions to compel a federal agency to produce information pursuant to the *Touhy* regulations under the federal rule governing subpoenas, Federal Rule of Civil Procedure 45. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 U.S. Dist. LEXIS 90002, at *56 (N.D. Ohio Apr. 11, 2018) (examining Drug Enforcement Agency's refusal to produce database materials citing *Touhy* regulations under Rule 45(d)); *Gischel v. Univ. of Cincinnati*, No. 1:17-cv-475, 2018 U.S. Dist. LEXIS 230845, at *10 (S.D. Ohio June 26, 2018) (stating the Department of Education's *Touhy* regulations "should not be read to

5

prohibit this Court from applying the Federal Rules of Civil Procedure to compel the production of documents pursuant to an otherwise enforceable subpoena."); *In re Packaged Ice Antitrust Litig. Direct Purchaser Action*, No. 08-MD-01952, 2011 U.S. Dist. LEXIS 51116, at *10 (E.D. Mich. May 10, 2011) ("[F]ederal discovery rules, including Rule 45 and Rule 26(b), along with all applicable privilege rules, provide sufficient 'tools' with which this Court can adequately protect both the litigant's right to receive evidence and the government's interest in protecting both its processes and its resources."); *Gardner v. Mich. State Univ.*, No. 1:12-cv-1018, 2013 U.S. Dist. LEXIS 134501, at *10 (W.D. Mich. Sept. 20, 2013) (stating that the proposition that "sovereign immunity deprives the court of jurisdiction to enforce the subpoena and that the procedures set forth in the agency's *Touhy* regulations are plaintiff's exclusive recourse" have been "rejected by the federal courts in recent years."). Accordingly, this Court has the authority to order the NTSB to respond to OxyVinyls' *Touhy* request.

      **B.**     **OxyVinyls' Request is Enforceable.**

OxyVinyls' *Touhy* request is enforceable and proper under Federal Rule of Civil Procedure 45. Under Rule 45, a court may quash a subpoena if it "requires disclosure of privileged or other protected matter, or subjects a person to undue burden, or calls for disclosure of a trade secret or other confidential research, development, or commercial information." *In re Nat'l Prescription Opiate Litig.*, 2018 U.S. Dist. LEXIS, at *71–72 (internal quotations and citations omitted). Additionally, "[a]lthough Rule 45 does not specifically include irrelevance as a basis for quashing a subpoena, 'the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26.'" *In re Subpoena Issued to the United States Dep't of Educ.*, No. 2:18-MC-18, 2018 U.S. Dist. LEXIS 44600, at *4–5 (S.D. Ohio Mar. 19, 2018) (quoting *Hendricks v. Total Quality Logistics*, LLC, 275 F.R.D. 251, 253 (S.D. Ohio 2011)).

6

Here, the *Touhy* request is proper because (1) the Physical Evidence is relevant to the case, (2) there is no privileged or protected materials at issue, (3) testing, sampling, and/or inspection would be completed with minimal burden and expense to the NTSB, and (4) there is no trade secret or confidential information at issue.

The Physical Evidence is relevant to the case and to OxyVinyls' defense against the allegations in Norfolk Southern's Third Party Complaint. (Third Party Compl. ¶¶ 151–62, 167, 172, 173.)

Second, the release of the Physical Evidence for OxyVinyls' inspection does not require disclosure of privileged or protected matter. Rather, the Physical Evidence was taken from railcars owned or leased by OxyVinyls. Additionally, the NTSB has conceded that some photographs and information about the Physical Evidence were already released on the public docket. (Letter from W. McMurry to A. Broz of 1/29/2024, Ex. B.)

Third, allowing OxyVinyls to test, sample, and/or inspect the Physical Evidence would not subject the NTSB to undue burden. The NTSB has had exclusive and unhindered access to the Physical Evidence since late February of 2023, almost a year ago, to conduct any testing and inspection the NTSB deemed necessary. The NTSB has not identified a substantive reason why OxyVinyls should be precluded from accessing the Physical Evidence, merely relying on a vague allegation of "undue burden" and a contention that "the PRD physical evidence cannot be inspected without numerous, onerous safety measures." (*See* Email from R. Asher to A. Broz of 1/31/2024, Ex. H.) OxyVinyls agrees to comply with any necessary safety measures, and would bear the cost of any testing and sampling. To the extent that compliance would require NTSB to monitor and coordinate with OxyVinyls, OxyVinyls reiterates that it is willing to test, sample, and/or inspect the Physical Evidence on reasonable terms that would, to the extent possible, reduce the expense

7

and burden on the NTSB. The request to test, sample, and/or inspect is tailored to OxyVinyls' needs and not overly broad.

Fourth, there is no trade secret or confidential information at issue. The Physical Evidence, while in NTSB's custody, is from railcars owned or leased by OxyVinyls.

For all of these reasons, the *Touhy* requests and subpoena are enforceable under Rule 45 because there is no privileged, protected, trade secret, or confidential material at issue, and OxyVinyls' request to test, sample, and inspect the Physical Evidence is relevant and necessary to the litigation and would not be an undue burden on the NTSB.

    **C.**    **Alternatively, OxyVinyls Requests that the Court Allow it to Submit its Expert Report, or to Serve a Supplemental Expert Report, after the Current Expert Deadline, so that OxyVinyls Can Test, Sample, and/or Inspect the Physical Evidence.**

If OxyVinyls is unable to inspect the Physical Evidence until after the completion of the NTSB's investigation, OxyVinyls requests that it be permitted to submit its expert report, or serve a supplemental expert report, after the close of expert discovery so that its experts may test, sample, and inspect the Physical Evidence.

When a party seeks a modification of a scheduling order, the party must demonstrate good cause for why the party is unable to meet the scheduling deadline. *Andretti v. Borla Performance Indus.*, 426 F.3d 824, 830 (6th Cir. 2005). Good cause exists here. As thoroughly detailed above, OxyVinyls seeks to conduct testing, sampling, and/or inspection on Physical Evidence that is important to OxyVinyls' defenses. *See supra Section II*. The NTSB has refused to permit OxyVinyls to do so within the current discovery deadline but suggested that it will release the PRD physical evidence sometime this summer. As such, good cause exists to permit OxyVinyls to submit its expert report regarding the Physical Evidence after the deadline for expert discovery or serve a supplemental report after the deadline. There will be no prejudice to the other parties

8

involved in the litigation because, presumably, they would also benefit from additional testing, sampling, and/or inspection. Therefore, if the Court will not compel the NTSB to allow OxyVinyls access to the Physical Evidence now, OxyVinyls requests that it be granted leave to serve its expert report, or a supplemental expert report, after the deadline, once it has had sufficient opportunity to test, sample, and/or inspect the Physical Evidence.

### IV. CONCLUSION

For the foregoing reasons, OxyVinyls respectfully requests the Court grant its Motion and compel NTSB to permit OxyVinyls to test, sample, and/or inspect the Physical Evidence. In the alternative, OxyVinyls requests it be permitted to submit its expert report, or to serve a supplemental expert report, after the close of expert discovery so that its experts may test, sample, and/or inspect the Physical Evidence.

Respectfully submitted,

*s/ Alycia N. Broz*
Alycia N. Broz (0070205)
Kimberly Weber Herlihy (0068668)
Emily J. Taft (0098037)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
Phone: (614) 464-6400
Email: anbroz@vorys.com
  kwherlihy@vorys.com
  ejtaft@vorys.com

*Counsel for OxyVinyls LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 7, 2024, a copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*s/ Alycia N. Broz*
Alycia N. Broz (0070205)