**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: EAST PALESTINE TRAIN DERAILMENT | ) Case No. 4:23-cv-00242-BYP )<br>)<br>) JUDGE BENITA Y. PEARSON<br>)<br>) CARMEN E. HENDERSON<br>) UNITED STATES MAGISTRATE JUDGE<br>)<br>) **ORDER**<br>)<br>) |

This matter was referred to the Honorable Carmen E. Henderson, United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and Local Rules 72.1 and 72.2(a), for resolution of the parties' discovery disputes. (*See* ECF No. 282). Currently pending are the following:

- Third Party Defendant Oxy Vinyls' Motion to Compel (ECF No. 388);
- Plaintiffs' Brief in Support of Oxy Vinyls' Motion to Compel (ECF No. 389);
- Third Party Defendant GATX's Motion to Compel (ECF No. 390); and
- Defendant Norfolk Southern's Motion to Join the motions to compel (ECF No. 401).

Non-party National Transportation Safety Board ("NTSB") responded to the motions to compel. (ECF Nos. 397 and 398). A telephone conference was held on February 21, 2024. A follow-up conference was held on February 29, 2024.

This Order memorializes the Court's oral orders.

**I.  Introduction**

Oxy Vinyls requests an order compelling the NTSB to permit Oxy Vinyls to test, sample, and/or inspect the pressure plates, pressure relief devices, valves, fittings, and related components from TILX 402025; OCPX 80179, 80235, 80370; and GATX 95098 (collectively, "PRD physical

1

evidence"), the railcars involved in the East Palestine derailment on February 3, 2023. (ECF No. 388). Similarly, GATX requests an order compelling the NTSB to permit GATX to test, sample, and/or inspect the pressure relief devices and related components from the PRD physical evidence, and the wheelset, bearings, and related components from GPLX 75465 (collectively the "wheelset physical evidence"). (ECF No. 390). Plaintiffs and Norfolk Southern also seek to test, sample, and/or inspect the PRD physical evidence and the wheelset physical evidence. (ECF Nos. 389 and 401).

Initially, the NTSB entirely opposed the requests citing its "exclusive authority to control examination and testing of physical evidence during an ongoing investigation. 49 U.S.C. § 1134(d); 49 C.F.R. §§ 831.5(a)(4), 831.9 ('the NTSB has exclusive authority to decide when and how the testing and examination of evidence will occur')." Since the filing of the motions to compel, the NTSB has announced that will begin releasing all physical evidence starting June 26, 2024, following its June 25, 2024, board meeting at the conclusion of its investigation. Prior to that release, the NTSB has agreed to allow the parties to conduct a limited, visual inspection of the PRD physical evidence, which is located at the NTSB Headquarters in Washington, DC. The visual inspection would involve the use of photography and note-taking, with additional specified conditions. The NTSB argues that allowing the parties more than this limited, visual inspection of the PRD physical evidence would cause an undue burden on it, a non-party to this litigation. With respect to the wheelset physical evidence which is held in a secure facility in Omaha, Nebraska, pursuant to a contract with Engineering Systems, Inc. ("ESi"), the NTSB agrees to engage ESi to conduct a live video inspection, with conditions. The NTSB argues that allowing the parties to inspect – let alone sample or test – the wheelset physical evidence would create an undue burden on it as a non-party to this litigation.

.

## II. Law

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Information need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas for the discovery of information from nonparties. Fed. R. Civ. P. 45, Advisory Committee Notes (1991). "[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules." Fed. R. Civ. P. 45, Advisory Committee Notes (1991). A party issuing a subpoena to a nonparty under Rule 45 "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts must not enforce a subpoena that subjects a nonparty to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv).

## III. Analysis

### a. PRD Physical Evidence

Oxy Vinyls and GATX each moved to compel the NTSB to allow them to test, sample, and/or inspect the PRD physical evidence. NTSB agrees to allow Oxy Vinyls, GATX, Norfolk Southern, and Plaintiffs, a limited visual inspection of the PRD physical evidence with specified conditions. Oxy Vinyls, GATX, Norfolk Southern, and Plaintiffs agree to the NTSB's conditions for the limited visual inspection. Accordingly, Oxy Vinyls' motion, as well as GATX's motion to compel is GRANTED IN PART and denied in part.

Oxy Vinyls and GATX expressed that further testing or sampling may be necessary following the visual inspection of the PRD physical evidence but have agreed to first conducting the limited visual inspection. Accordingly, the remainder of the motion to compel is denied at this time. Within ten days of the limited visual inspection, Oxy Vinyls and GATX may renew the motions to compel should further testing, inspection, or sampling be desired.

### b. Wheelset Physical Evidence

GATX requests an order compelling the NTSB to permit it to test, sample, and/or inspect the wheelset physical evidence, which are being held at an ESi facility in Omaha, Nebraska. The NTSB agreed to allow the parties a live video inspection conducted by ESi. NTSB argues that allowing an in-person inspection and/or examination of the wheelset physical evidence imposes an undue burden upon it. The NTSB states that its contract with ESi does not permit access to the labs for inspections by third parties; modifying that contract would cost in excess of $10,000 and would be impossible to accomplish "since the NTSB does not have the authority [under the Federal Acquisition Regulations] to enter into a contract" for the purpose of permitting the type of access GATX seeks (ECF No. 398 at 8-9); and that allowing the parties an in-person inspection at ESi would cost the NTSB around $50,000 to fly NTSB board members to Omaha to be present at the in-person inspection. GATX argues that the in-person inspection is necessary to allow it to properly defend itself in the litigation as it owns the rail car and its component parts involved in the derailment, which is being held at ESi.

To determine whether a burden is undue, a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it. *EEOC v. Ford Motor Credit Co*., 26 F.3d 44, 47 (6th Cir. 1994). Undue burden is "assessed in a case-specific manner considering 'such factors as relevance, the need of

4

the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

This Court finds that the potential value to the information GATX may obtain through a limited, in-person inspection of the wheelset evidence outweighs the burden imposed upon the NTSB in allowing the inspection. The NTSB agreed to work with ESi to conduct a live video inspection of the evidence. The NTSB agreed to a video inspection with the following conditions:

a. The NTSB will conduct a live video inspection via a portal that will accommodate multiple attending parties and numerous video feeds.

b. The inspection will take place on one day convenient for all interested parties and last no more than three hours.

c. The NTSB will record the live video inspection, take any necessary photographs, and share the resulting media with the parties via Kiteworks upon conclusion of the inspection. The parties will not be allowed to independently record the live video inspection via the portal, by cellphones, or otherwise. d. The NTSB will direct ESi to move the video camera closer or farther away, at the parties' request, to accommodate viewing and photography of the wheelset physical evidence from multiple perspectives and angles.

e. The NTSB will direct ESi while ESi takes visibly recordable dimensional measurements of the wheelset physical evidence using measurement instruments, such as standard scale bars and measuring tapes. Because of the time constraints, measuring of the evidence by way of microscopy or laser will not be permitted.

f. In the interest of preserving the wheelset physical evidence's condition for the ongoing investigation, the NTSB will not authorize examination of the evidence by testing, sampling, cutting, scraping, or mechanically manipulating (e.g. nesting, pushing, or compressing pieces).

g. The results of this inspection, including the video recording, any photographs, and/or notes taken during the inspection, are subject to the protective order entered by the court on August 2, 2023.

h. Any individual participating in the video inspection agrees to abide by the above parameters of the inspection.

NTSB argues that an in-person inspection of the wheelset evidence would be unduly burdensome as it would cost it around $50,000, which includes the cost of flying its board members to Omaha for the inspection and $10,000 to amend its contract with ESi.

The Court finds that allowing GATX a limited, in-person inspection of the wheelset evidence would not cause an undue burden on the NTSB. This Court has been working with the parties and the NTSB for several weeks to facilitate an agreement regarding the parties' attempts to view, examine, and or test material evidence in the possession of the NTSB. Multiple conferences have been held and the parties and the NTSB have submitted position statements as well as the briefings related to the pending motions to compel. Throughout this time, the Court has proposed several suggestions and/or alternatives that would allow the NTSB to maintain physical control over the evidence through the completion of its investigation, while at the same time allowing the parties an opportunity to, at a minimum, view the physical evidence. The NTSB states that it wishes to work the with parties to view this evidence, but each time a suggestion is made, the NTSB changes its argument.

Initially, the NTSB argued that the Court should not allow GATX (or any of the parties) to examine, inspect, and/or test the evidence because the board investigators would still need to see and manipulate the evidence to finalize their reports. In response, the Court – and the parties – agreed to a limited, visual inspection of the evidence only, during which the NTSB would be the only party manipulating or otherwise touching the evidence, while the parties view in-person. Thereafter, the NTSB stated that allowing an in-person inspection of the wheelset evidence would 1) cost the NTSB around $50,000 to fly their board members out for an in-person inspection for the parties and then return to view the evidence themselves to finalize their reports; and 2) interfere with the NTSB's ability to perform it investigative functions by pulling its investigators away from

6

their duties to be present at an in-person inspection. To alleviate the NTSB's concerns about multiplying its costs and pulling its investigators away from their other investigative duties, the Court suggested that the NTSB give the parties notice as to when its investigators intended to fly to Omaha to view the evidence and allow the parties their in-person inspection at the same time. In response, the NTSB altered course and explained that its investigators may not, in fact, be going to Omaha to view the evidence. Instead, should they need to view the wheelset evidence, they would likely contact ESi to have ESi manipulate the evidence via video for NTSB investigators to view.

The NTSB envisions "direct[ing] ESi while ESi takes visibly recordable dimensional measurements" via video and the Court sees no reason why the NTSB cannot still direct the measurements via video if GATX is allowed to be physically present. Despite agreeing that ESi is capable and able to perform the physical manipulations, the NTSB argues that NTSB members would be required to "police" the area should an in-person inspection be allowed. The NTSB argues that is needs to be physically present during an in-person inspection to ensure that none of the physical evidence is touched by GATX representatives. However, the NTSB agrees that viewing the evidence at ESi would not require GATX to obtain security clearance. Moreover, ESi employees will be present, the inspection will occur via video, and there will be a recording of the entirety of the inspection, which will further verify that no improper handling of any evidence in the possession of ESi occurred. Accordingly, this Court is not persuaded that NTSB employees are *required* to be physically present at ESi during an in-person inspection.

The NTSB stated that it would cost roughly $10,000 to amend its contract with ESi to allow for another party, such as GATX, access to the evidence. Thus, it is conceivable that the cost of allowing GATX to be physically present would be around $10,000. Because there are several ways

7

to minimize the NTSB's costs and interruptions to its investigative function, this weighs in favor of allowing GATX an in-person inspection of the wheelset evidence.

The NTSB also argued that the Court should deny the motion to compel because allowing further examination unduly burdens it by running contrary to its authority to independently investigate accidents, free of private litigation. (ECF No. 398 at 10). However, the NTSB has since agreed to allow the parties limited, visual inspections of the physical evidence. Thus, despite NTSB's argument that it has the sole authority to independently investigate accidents, it acknowledges that it can – and will – allow access to the physical evidence. The NTSB has agreed to in-person inspection of the PRD evidence. Its only argument against allowing the same for the wheelset evidence is the costs associated with viewing the evidence housed in a facility in Omaha. As the Court has already explained, it finds such costs manageable and not unduly burdensome. Because the NTSB has agreed to a limited, visual inspection this Court finds that the NTSB has effectually waived its "sole authority to investigate" argument with respect to allowing limited, visual inspections of the physical evidence.

GATX's need for an in-person inspection also weighs in its favor. The NTSB argues that "[e]xtensive information about the physical evidence, including detailed measurements, photographs, media, and reports of testing and analyses, are either available on the NTSB's public docket or have been released to the parties pursuant to the protective order in November 2023" (ECF No.398 at 12) and that it "will begin to release all physical evidence starting on June 26, 2024", thus all GATX has to do is wait and it will get everything it requests. However, as the parties and NTSB are aware, initial expert reports are due April 1, 2024. Accordingly, the GATX does not have the luxury of simply waiting until June 16, 2024, to begin its expert analysis of the physical evidence – the evidence it owns and that, presumably, will be material in determining

8

liability. Moreover, the Court has previously indicated that the NTSB reports may not be admissible; thus, GATX is necessarily required to conduct its own inspections of the physical evidence in order to properly defend itself in this litigation.

In conclusion, this Court agrees with GATX that as the owner of the wheelset evidence, it should be allowed, at the very least, an opportunity to view the physical evidence in person prior to the discovery cutoff. However, the remainder of the parties and the NTSB may attend the inspection via live video as set forth by the NTSB. By March 12, 2024, the NTSB shall provide the parties with a plan for conducting the limited, in-person (GATX) and live video (remainder of the parties) inspection, including available dates for the inspection. It is up to the NTSB whether it will conduct the entire limited, visual inspection in-person for all parties and itself. However, GATX shall be allowed to view the wheelset evidence in-person.

GATX expressed that further testing or sampling may be necessary following the visual inspection of the wheelset evidence but has agreed to first conduct the limited visual inspection. Accordingly, the remainder of the motion to compel is denied at this time. Within ten days of the limited visual inspection, GATX may renew the motion to compel should further testing, inspection, or sampling be desired.

Finally, GATX requested that this Court compel the NTSB to release the physical evidence relating to railcars GATX 95098 and GPLX 75465 to GATX, not Norfolk Southern. The NTSB opposes the request stating that "[s]uch a request for specific relief against the United States is unrelated to GATX's subpoena and improperly brought in a discovery motion." (ECF No. 398 at 14). This Court agrees with the NTSB. GATX has not demonstrated how the release of the physical evidence is properly raised in a discovery matter relating to the subpoena at issue. Accordingly, GATX's request is DENIED.

c. **Plaintiff's Brief in Support of Oxy Vinyls' Motion to Compel**[1]

Plaintiffs did not serve a *Touhy* request upon the NTSB. Nonetheless, Plaintiffs request that "in the event that the Court grants OxyVinyls' (and/or GATX's) motion to compel inspection of the evidence being held by the NTSB, Plaintiffs and their experts be granted the same access to inspect the evidence held by the NTSB." (ECF No. 389 at 2). The NTSB argues that Plaintiffs lack standing to join in any motion to compel discovery brought by GATX or Oxy Vinyls against the NTSB because Plaintiffs never requested the discovery from NTSB.

The Court notes that Plaintiffs have not moved to compel the NTSB in any way. Instead, Plaintiffs ask the Court to allow them to participate in any discovery this Court allows. As discussed above, NTSB agrees to allow the parties – including Plaintiffs – access to the PRD physical evidence for a limited, visual inspection. Additionally, the NTSB agrees to allow the Plaintiffs to view a live, video inspection of the wheelset evidence. Because the NTSB does not object to Plaintiffs presence during the limited inspections, this Court need not address whether Plaintiffs have standing to have filed the brief in support of the motion to compel.

d. **Norfolk Southern's Motion to Join**

On January 31, 2024, after a telephone conference with the parties regarding NTSB's refusal to allow the parties to examine the physical evidence, this Court stated that "[a]ny party having made a *Touhy* request upon the NTSB may move no later than Wednesday, February 7, 2024, to compel the NTSB's compliance with the request." (ECF No. at 2). Norfolk Southern did not submit a *Touhy* request until February 5, 2024. Then, on February 15, 2024, eight days after this Court's deadline to file a motion to compel but the final day to raise a discovery dispute

---

[1] At the time Plaintiffs filed their Brief, GATX has not yet moved to compel compliance by the NTSB, though the motion was expected

10

pursuant to Local Rule 37, Norfolk Southern moved to *join* in the motions to compel filed by Oxy Vinyls and GATX.[2] No response to the motion to join has been filed.

Norfolk Southern attempts to circumvent the Court's deadline for filing a motion to compel via its untimely motion to join the motions filed by GATX and Oxy Vinyls. As a result, the Court is inclined to deny Norfolk Southern's motion to join the motions to compel as non-compliant with its Order. *See* Loc. R. 7.1(h) ("Any motion (other than motions made during hearings or at trial) served and filed beyond the motion deadline established by the Court may be denied solely on the basis of the untimely filing."). However, the NTSB agrees to allow Norfolk Southern access to the PRD physical evidence for a limited, visual inspection. Additionally, the NTSB agrees to allow Norfolk Southern to view a live, video inspection of the wheelset evidence. Because the NTSB does not object to Norfolk Southern's presence during the limited inspections, the Court denies Norfolk Southern's motion as MOOT.

## IV. Conclusion

For the reasons set forth above and during the telephone conference held on February 29, 2024, Oxy Vinyls' Motion to Compel is GRANTED IN PART and DENIED IN PART; GATX's Motion to Compel is GRANTED IN PART and DENIED IN PART. Norfolk Southern's Motion to Join is DENIED AS MOOT.

Dated: March 5, 2024

s/ *Carmen E. Henderson*  
CARMEN E. HENDERSON  
U.S. MAGISTRATE JUDGE

---

[2] Norfolk Southern did not join in GATX's request for the Court to order the NTSB to release the wheelset evidence to GATX.