PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE:  EAST PALESTINE TRAIN DERAILMENT | ) ) ) ) ) ) ) ) | CASE NO.  4:23CV0242 |
| | | JUDGE BENITA Y. PEARSON |
| | | **MEMORANDUM OF OPINION AND ORDER** |
| | | [Resolving ECF No. 76] |

Pending is Defendants' Norfolk Southern Corporation and Norfolk Southern Railway Company's ("Norfolk Southern") Motion to Dismiss and to Strike (ECF No. 76).  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons set forth below, as announced during the Status Conference held in Chambers on February 9, 2024, Norfolk Southern's motion is granted in part and denied in part.

## I.  Procedural History

Because Plaintiffs made only a few amendments to its original pleading while Norfolk Southern's Motion to Dismiss and to Strike the First Amended Master Consolidated Class Action Complaint ("First Amended Complaint") (ECF No. 138) was pending, the Court did not require Norfolk Southern to file a new motion.  *See* Order (ECF No. 137) at PageID #: 1769-70. The First Amended Complaint  (ECF No. 138) was subsequently amended by interlineation to substitute Ms. Brenda Williams for Ms. Jack and modify plaintiff-specific ¶¶ 12-15.  *See* ECF No. 212-1.  Therefore, the Court considers the briefing for Norfolk Southern's motion ( ECF No. 76) as addressing the First Amended Complaint, as amended by the interlineation.  *See* Order

(4:23CV0242)

(ECF No. 213).[1]  Additionally, the Court relies on certain of the allegations made by Norfolk

Southern in its Third-party Complaint (ECF No. 119) in the Background section below.

## II.  Background

The above-entitled action arises from the February 3, 2023 derailment in East Palestine,

Ohio of Norfolk Southern Train 32N, known as "32 Nasty" to rail workers because of their

concerns about its safety risks.  *See* ECF No. 138 at PageID #: 1796, ¶ 158.  Train 32N traveled

eastbound on the Fort Wayne Line through northeast Ohio and passed at least three wayside

defect detectors before derailing.  *See* ECF No. 138 at PageID #: 1797, ¶ 165.  Train 32N

(comprised of 2 head-end locomotives, 149 railcars, and 1 distributed power locomotive between

the 111th and 112th railcars) derailed 38 railcars.  *See* ECF No. 138 at PageID #: 1795, ¶ 155;

ECF No. 119 at PageID #: 1415, ¶ 28; PageID #: 1418, ¶ 40.  According to Plaintiffs, Train 32N

derailed because an improperly maintained bearing on Car 23 (a railcar allegedly owned by

Defendant General American Marks Company ("General American") and/or Defendant GATX

Corporation ("GATX") failed.  *See* ECF No. 138 at PageID #: 1793-94, ¶ 146.  The derailed cars

included tank cars carrying hazardous materials that subsequently ignited, fueling fires that

damaged additional railcars and resulted in the evacuation of residents.  *See* ECF No. 138 at

PageID #: 1803, ¶¶ 180-81.

Seeking to represent a putative class "upwards of 500,000 Class Members" (ECF No. 138

at PageID #: 1806, ¶ 188), Plaintiffs propose classes and subclasses of residents, property

owners, employees, and businesses spanning three (3) States and nearly 3,000 square miles

---

[1]  The Court has granted Plaintiffs' Motion to Withdraw Named Plaintiffs Kayla
Baker and Gregory Swan.  *See* Non-document Order entered March 13, 2024.  Ms. Baker
and Mr. Swan remain members of the putative class(es).

(4:23CV0242)

encompassed by a 30-mile radius around the derailment site. Plaintiffs seek recovery of alleged "real property damage, out of pocket expense, personal property damage, loss of use and enjoyment of property, diminution in property value, loss of business income, loss of business goodwill, annoyance, upset, aggravation, inconvenience, loss of use and enjoyment, an increased risk of associated disease or illness, and the present need for medical monitoring to ensure early detection of any such disease or illness." ECF No. 138 at PageID #: 1835, ¶ 287.

Plaintiffs assert 17 claims against Norfolk Southern in the First Amended Complaint (ECF No. 138), which include: negligence, negligence per se, and gross negligence/willful and wanton conduct (Counts I(A) and XVII); strict liability (Count II); statutory, private, and public nuisances (Counts III-VI); trespasses (Counts VII and VIII). Plaintiffs also assert state-law statutory claims (Counts IX, X, XI, and XII), claims for medical monitoring (Counts XIII, XIV, and XV), and spoliation (Count XVI). Plaintiffs request compensatory, punitive, and exemplary damages.

Plaintiffs assert that Norfolk Southern's flagrant disregard for safety and the resulting consequences coincides with their adoption of "Precision Scheduled Railroading" ("PSR") in 2019. ECF No. 138 at PageID #: 1789, ¶ 116. They allege that "[w]hile railroads like Norfolk Southern are ultimately responsible for ensuring the safe transport of all rail cars, including any hazardous materials in the railcars they accept for transport along their systems, owners, lessees and shippers are also responsible for any defects they cause, or fail to remedy, or otherwise fail to comply with the freight car safety regulations. *See* 49 CFR 215.7." ECF No. 138 at PageID #: 1792, ¶ 132.

(4:23CV0242)

Plaintiffs further allege that:  General American was the owner of railcar GPLX75465 ("Car 23"); "Car 23 is the railcar that commenced the derailment of Train 32N when a resurfaced and/or reconditioned wheel bearing critically failed;" Defendant OxyVinyls LP ("OxyVinyls") was the owner of railcars OCPX80235 ("Car 27"), OCPX80179 ("Car 28"), and OCPX80370 ("Car 53"); GATX was the owner of railcar GATX95098 ("Car 29"); Defendant Trinity Industries Leasing Company ("Trinity") was the owner of railcar TILX402025 ("Car 26"); OxyVinyls was also the shipper of Cars 26, 27, 28, 29 and 53; and, Cars 26, 27, 28, 29 and 53 were tank cars and each contained vinyl chloride monomer in a pressurized liquid state, which was released during the February 3, 2023 derailment, including the subsequent controlled release on February 6, 2023.  *See* ECF No. 138 at PageID #: 1792, ¶ 133-39.

Immediately after the derailment, the tank cars owned and/or shipped by OxyVinyls were surrounded by pool fires.[2]  "Because of the surrounding pool fires, the flammable gas venting from the PRDs[3] ignited, which upon information and belief began to melt part or all of the [vinyl chloride] tank car[s'] liquid transfer valves and fittings."  ECF No. 119 at PageID #: 1425, ¶ 77. The PRDs continued to vent through the early morning hours of February 4, 2023.  *See* ECF No. 119 at PageID #: 1425, ¶ 79.

After the PRDs stopped venting in the early afternoon of February 4, 2023, responders sent in two teams to monitor the pressure conditions of the vinyl chloride tank cars.  *See* ECF No. 119 at PageID #: 1426, ¶¶ 82-83.  During this time, the PRD on Car 28 (owned by

---

[2] Pool fires are fires that occur when a pool of volatile liquid evaporates and burns.  *See* ECF No. 119 at PageID #: 1424, ¶ 73.

[3] Pressure relief devices ("PRDs") are "designed to activate automatically to relieve pressure from a tank car when the tank's contents exceed a pressure threshold." ECF No. 119 at PageID #: 1420, ¶ 51.

4

(4:23CV0242)

OxyVinyls) activated again and began to continuously vent gas for approximately 70 minutes, frightening responders and causing concern that pressure and heat were building inside the tank of Car 28.  *See* ECF No. 119 at PageID #: 1426-27, ¶ 84.  Responders also detected elevated temperatures on Car 53 (owned by OxyVinyls), raising the concern that the tank temperature and pressure were rising without external stimulus.  *See* ECF No. 119 at PageID #: 1427, ¶ 86.  The PRDs on the other cars carrying vinyl chloride, including Car 29 (owned by GATX), did not resume venting.  *See* ECF No. 119 at PageID #: 1426, ¶ 82.  The allegedly unapproved PRD on Car 29 stopped working, raising fears that the car could explode.  *See* ECF No. 138 at PageID #: 1839, ¶ 303(e).

The elevated temperature on Car 53 and sudden extended venting from Car 28 caused responders to become concerned about the potential for catastrophic explosions.  *See* ECF No. 119 at PageID #: 1427, ¶ 88.  These factors also indicated to Unified Command that polymerization may have blocked the PRDs on Car 28 and the other vinyl chloride tank cars. *See* ECF No. 119 at PageID #: 1428, ¶ 90.  As a result, on the morning of February 6, 2023, Unified Command met to discuss strategies to relieve the pressure in the five vinyl chloride tanks and avoid a catastrophic uncontrolled explosion, and ultimately decided to vent and burn the contents of all five vinyl chloride railcars.  *See* ECF No. 119 at PageID #: 1429, ¶ 96.

Norfolk Southern, in coordination with government officials ("Unified Command"), decided to detonate explosives on all five derailed cars containing hazardous materials and to vent and burn the released vinyl chloride dumped in a trench, causing a massive explosion that sent toxic chemicals over East Palestine and the surrounding area.  *See* ECF No. 138 at PageID #: 1804, ¶¶ 183-185; *see also* ECF No. 138 at PageID #: 1832-33, ¶ 279 (z-ee, gg-ll) (alleging

5

(4:23CV0242)

violations of duties following the derailment); ECF No. 119 at PageID #: 81-96 (detailing the options available to Norfolk Southern and explaining why the vent and burn was the only option in light of the evidence of polymerization occurring in the five tank cars).

### III.  Standard of Review for a Motion to Dismiss

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007); *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 895 n.3 (6th Cir. 2019) (when determining the plausibility of claims at the motion to dismiss stage, the complaint must be viewed as a whole).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570; *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The plausibility

6

(4:23CV0242)

standard is not akin to a "probability requirement," but it suggests more than a sheer possibility that a defendant has acted unlawfully.  *Twombly*, 550 U.S. at 556.  When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557 (brackets omitted).  "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference."  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

## IV.  Law and Analysis

According to Norfolk Southern, Plaintiffs have failed to allege a single actionable claim and ask the Court to dismiss the 473-paragraph First Amended Complaint (ECF No. 138) in its entirety.

### A.

Norfolk Southern argues Plaintiffs' state laws claims for negligence, gross negligence, nuisance, and strict liability are preempted by the Interstate Commerce Commission Termination  Act ("ICCTA"),[4] the Federal Railroad Safety Act ("FRSA"),[5] and the Hazardous

---

[4]  The ICCTA "preempts all 'state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.' " *Adrian & Blissfield R.R. Co. v. Village of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008) (quoting *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007)) (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir.

(continued...)

7

(4:23CV0242)

Materials Transportation Act ("HMTA").[6]  *See* <u>*Roth v. Norfalco LLC*, 651 F.3d 367, 374-375 (3d</u> <u>Cir. 2011)</u>; <u>*Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430-31 (6th Cir. 2009)</u>; <u>*Adrian*</u> <u>*& Blissfield R.R. Co.*, 550 F.3d at 539</u>.  According to Norfolk Southern, Plaintiffs fail to sufficiently plead a violation of any applicable federal regulations by Norfolk Southern, and instead seek to impose liability on Norfolk Southern for various state law claims that go far beyond any obligations or standard of care required by the federal regulations.  For example, Plaintiffs allege that Norfolk Southern failed to route railcars carrying hazardous materials in such a way as to avoid populated areas, and failed to warn those in danger of exposure to hazardous chemicals.  *See* <u>ECF No. 138 at PageID #: 1872, ¶ 472(o), (p)</u>.  According to Norfolk Southern, those allegations would have imposed duties on Norfolk Southern far beyond those required under federal laws and regulations.

"Federal preemption is an affirmative defense that requires the defendant . . . to prove that . . . federal preemption applies." <u>*Byrne v. CSX Transp., Inc.*, 541 Fed.Appx. 672, 674-75</u> <u>(6th Cir. 2013)</u>.  "[T]here is a presumption against the supplanting of historic state police powers by the federal government unless preemption is 'the clear and manifest purpose of Congress.' "

---

[4](...continued) <u>2001)</u>)).  It established the Surface Transportation Board ("STB").

[5]  The FRSA governs matters "related to railroad safety."  <u>49 U.S.C. § 20106</u>.  It authorizes the Federal Railroad Administration ("FRA") to prescribe regulations related to railroad safety.

[6]  HMTA preemption is limited in relevant part to laws relating to "the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing" of a package or container used in transporting hazardous materials, such as by rail.  <u>49 U.S.C. § 5125(b)(1)(E)</u>. The HMTA directed the Secretary of Transportation to issue regulations "for the safe transportation . . . of hazardous materials."

8

(4:23CV0242)

*Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 522 (6th Cir. 2001) (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)).

The Supreme Court's decision in *Easterwood* interpreted the FRSA's preemption language.  The case involved an accident wherein a truck driver was killed after entering a railroad crossing and being stuck by a train.  The driver's estate sued the railroad operator under Georgia common law, asserting that the operator was negligent in failing to install signals at the crossing and for operating the train at an excessive speed.  In considering the issue of FRSA preemption, the Supreme Court first explained that the railroad operator had to show more than just that federal regulations "touch upon" or "relate to" the same subject matter as the state negligence law, because the FRSA's statutory preemption language applies only when the federal regulation "cover[s]" the same subject.  The Court stated that " 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law."  *Id.* at 664.  With regard to the claim that the railroad was negligent in failing to install signals, the Court carefully parsed all of the relevant regulations, finding that some were inapplicable because they were merely advisory or concerned the allocation of federal funds, not railroad operations.  Others were arguably sufficiently specific so as to preempt the state tort law, but the Court found that the facts of the case did not fall within those regulations' requirements.  For example, a regulation required that automatic crossing gates be installed if federal funds were used for the installation of warning devices.  The Court found that this language would displace the state law, but it did not apply because there was no evidence that federal funds were actually used on warning

9

(4:23CV0242)

devices at the crossing in question.  *Id.* at 669-672.  Thus, the estate's negligence claim relating to the lack of signals was not preempted.  *Id.* at 670.

**1.**

Plaintiffs argue the allegations in the First Amended Complaint (ECF No. 138) involve claims not covered by, or involve direct violations of, federal regulations.  Norfolk Southern has not identified any regulation that covers Plaintiffs' allegations relating to wayside defect detectors.  *See* ECF No. 138 at PageID #: 1831, ¶ 279(l) (Plaintiffs allege that once Norfolk Southern decided to employ those devices, they were obligated to do so in a reasonably prudent manner).  It is to be noted that the FRA issued a Safety Advisory after the East Palestine derailment, which acknowledges that "there are no Federal regulations requiring the use of [wayside detectors] for freight trains, or any regulations related to the inspection, calibration, and maintenance of this equipment. . . ."  *FRA Safety Advisory 2023-01*, 88 Fed. Reg. 13494-01 (March 3, 2023), 2023 WL 2329977 at 13496.  Because there are no regulations covering the subject matter, Plaintiffs' claims relating to wayside defect detectors are not preempted.  And in the absence of a regulation addressing those devices, Congress made clear that states can fill that gap.  *See Norfolk Southern Ry. Co. v. Box*, 556 F.3d 571, 572 (7th Cir. 2009).

Plaintiffs also allege Norfolk Southern failed to act properly while Train 32N was in transit and failed to timely detect the fire on the tank car that led to the derailment.  *See* ECF No. 138 at PageID #: 1831, ¶ 279(d, f).  According to Plaintiffs, employees of Norfolk Southern should have realized sooner that Train 32N had caught fire and Norfolk Southern should have had a better system in place for monitoring malfunctions during transit.  *See, e.g.*, ECF No. 138 at PageID #: 1796-98, ¶¶ 160-70; PageID #: 1831, ¶ 279(d, f).  Norfolk Southern has not

10

(4:23CV0242)

identified any regulations that substantially subsume allegations of errors during transit. Defendants vaguely cite "track safety standards" (Norfolk Southern's Memorandum in Support (ECF No. 76-1) at PageID #: 1025) to argue that state law cannot require railroad employees to maintain a vigilant lookout during transit. But the regulations invoked by Norfolk Southern relate to pre-departure matters. Norfolk Southern has not cited any regulations that provide "rules of the road" that would cover Plaintiffs' post-departure allegations.

Courts generally have found that allegations like failure to keep a proper lookout are not preempted. *See, e.g.*, *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 490 (3d Cir. 2013) (noting that courts have found claims including failure to keep a proper lookout are not "substantially subsumed" by related regulations); *Diehl v. CSX Transp., Inc.*, 349 F. Supp.3d 487, 504 (W.D. Pa. 2018) (declining to dismiss allegations that defendant violated duty to keep a proper lookout); *Bradford v. Union Pac. R.R. Co.*, 491 F. Supp.2d 831, 838 (W.D. Ark. 2007) (holding "negligent operation has not been substantially subsumed by regulations enacted pursuant to FRSA").

For similar reasons, Norfolk Southern also fails to identify federal regulations that substantially subsume the allegations in ECF No. 138 at PageID #: 1832, ¶ 279(s); PageID #: 1872, ¶ 472(i) (failure to adequately staff trains that plan, prepare, coordinate, and oversee transportation of hazardous materials) and ECF No. 138 at PageID #: 1832, ¶ 279(x); PageID #: 1872, ¶ 472(n) (failure to properly instruct and adequately train concerning safety and emergency procedures in the event of a possible derailment).

Even if federal regulations have been promulgated that "cover" aspects of Norfolk Southern's conduct in the case at bar, claims based on that conduct are not preempted if – as

11

(4:23CV0242)

Plaintiffs have alleged – Defendants breached their duties to Plaintiffs by violating those

regulations.  In 2007, Congress amended the FRSA to clarify and limit the scope of its

preemptive effect.  The "Clarification Amendment" provides, in relevant part, that "[n]othing in

this section shall be construed to preempt an action under State law seeking damages for

personal injury, death, or property damage alleging that a party-- (A) has *failed to comply* with

the Federal standard of care *established by a regulation or order* issued by the Secretary of

Transportation (with respect to railroad safety matters) . . ., covering the subject matter as

provided in subsection (a) of this section; (B) has failed to comply with its own plan, rule, or

standard that it created pursuant to a regulation or order issued by either of the Secretaries."

49 U.S.C. § 20106(b) (emphasis added).

        Norfolk Southern admits that "Plaintiffs allege . . . that [it] violated 'one or more

regulations,' listing a host of regulations that Norfolk Southern purportedly violated," and that

"Norfolk Southern violated . . . duties imposed by federal regulations."  ECF No. 76-1 at PageID

#: 1023.  Yet, Defendants attempt to sidestep this admission by arguing they did not violate any

regulations.  But such a factual inquiry is not appropriate for a motion to dismiss.  Plaintiffs'

allegations at PageID #: 1834, ¶ 284 of ECF No. 138 put Defendants on notice of duties they

may have violated, which is sufficient to overcome a preemption argument on a motion to

dismiss.  To that end, the Court believes that the efficient and appropriate way forward is to

permit discovery to occur and consider the parties' arguments on summary judgment.[7]  *See, e.g.,*

---

        [7]  The Court also denies Norfolk Southern's motion to dismiss Plaintiffs'
allegations based on Norfolk Southern's violations of their own internal policies adopted
pursuant to regulations, as evidence may be developed during the present case to prove
such violations and it would be improper to preclude such claims on a motion to dismiss.

12

(4:23CV0242)

*Smith v. CSX Transp., Inc.*, No. 3:13 CV 2649, 2014 WL 3732622, at *3 (N.D. Ohio July 25, 2014) (court denied motion to dismiss based on FRSA preemption arguments because "the FRA has prescribed regulations regarding the inspection of rails, [and] Plaintiffs allege [the defendant] failed to comply with those regulations."); *Diehl*, 349 F. Supp.3d at 503 (court denied motion to dismiss based on FRSA preemption arguments because it would be incorrect to do so "at this [motion to dismiss] stage" because "Plaintiff alleges that Defendant failed to comply with these regulations").

Similarly, the Court will deny Norfolk Southern's motion to dismiss Plaintiffs' allegations under the FRSA, which are premised on express violations of FRSA regulations. These allegations include that Defendants breached duties owed to Plaintiffs by violating 49 C.F.R. § 215.115, which prohibits placing in service or continuing in service a train car with an overheated roller bearing, ECF No. 138 at PageID #: 1830, ¶ 279(b); PageID #: 1834, ¶ 284; as well as allegations that Norfolk Southern violated regulations relating to inspections, training, and the transportation of hazardous materials.

**2.**

Next, Norfolk Southern argues the HMTA applies to Plaintiffs' negligence, gross negligence, nuisance, and strict liability claims as premised on allegations related to the routing and handling of hazardous materials, the reporting of the unintentional release of such materials, and the inspection and maintenance of the container used to transport such materials. ECF No. 76-1 at PageID #: 1031. In *CSX Transp., Inc. v. Public Utils. Comm'n of Ohio*, 901 F.2d 497, 501 (6th Cir. 1990), *cert. denied*, 498 U.S. 1066 (1991), the Sixth Circuit held that the FRSA's preemption provisions, and not those of the HMTA, govern matters of railroad safety. *See also,*

13

(4:23CV0242)

*e.g.*, *Tipton v. CSX Transp., Inc.*, No. 3:15-CV-311-TAV-CCS, No. 3:15-CV-337-TAV-CCS, No. 3:15-CV-497-TAV-CCS, No. 3:15-CV-346-TAV-CCS, 2016 WL 11501426, *15 (E.D. Tenn. July 7, 2016) ("As the Sixth Circuit has held that the FRSA preemption analysis applies to the HMTA, and the FRSA preemption section contains a savings clause that expressly states that state law claims for personal injury or property damage for failure to comply with a federal regulation or standard are not preempted, the Court finds that it would be consistent with the Sixth Circuit's holding to find that a common law negligence action is not preempted under the HMTA either.").

Plaintiffs' allegation at PageID #: 1830, ¶ 279(c) of ECF No. 138 that Norfolk Southern was negligent in "[a]ccepting and transporting shipments of hazardous material that had pressure relief devices made of materials that were incompatible with the lading" asserts a breach of the duty set forth in 49 C.F.R. § 179.15(a), which provides that "[e]ach tank must have a pressure relief device, made of materials compatible with the lading, having sufficient flow capacity to prevent pressure build-up in the tank to no more than the flow rating pressure of the pressure relief device in fire conditions as defined in appendix A of the AAR Specifications for Tank Cars (IBR, see § 171.7 of this subchapter)." *See* ECF No. 138 at PageID #: 1835, ¶ 284(f) (alleging defendants violated § 179.15(a)). Defendants' violations of specific HMTA regulations are not preempted under the plain language of the FRSA's Clarification Amendment. The other duties allegedly breached that Norfolk Southern contends are preempted are consistent with the FRSA and the HMTA regulations covering inspection, maintenance, and repair of its equipment. For example, ECF No. 138 at PageID #: 1832, ¶ 279(w) (allegation that Norfolk Southern failed to ensure its agents, servants, and employees were properly and adequately instructed and trained

14

(4:23CV0242)

while transporting hazardous substances) is consistent with their failure to inspect and test for pressure release defects, leakage, valve defects, and "any other condition that makes the tank car unsafe for transportation. . . ." under 49 C.F.R. § 173.31(d)(1)(ii).  Because Plaintiffs' claims merely seek to enforce duties that are established by federal regulations, they are not preempted under either the FRSA or the HMTA.

### 3.

In *Tyrrell*, the Court of Appeals for the Sixth Circuit held that while the ICCTA may preempt state laws or claims bearing on other railroad-related topics, claims dealing with rail safety are governed by the FRSA.  248 F.3d at 522-23; *see also Island Park, LLC v. CSX Transp., Inc.*, 559 F.3d 96, 107 (2d Cir. 2009) ("Several circuits that have examined the interplay between ICCTA and FRSA have concluded that the federal statutory scheme places principal federal regulatory authority for rail safety with the Federal Railroad Administration ("FRA"), not the STB.  We agree.  Thus, FRSA provides the appropriate basis for analyzing whether a state law, regulation or order affecting rail safety is pre-empted by federal law.").  Because the Ohio regulation at issue in *Tyrrell* related to railroad employee safety, the FRSA governed the preemption question rather than the ICCTA, even though the claim involved issues related to track construction.  Consequently, the plaintiff's claims were not preempted because no regulation "covered" the subject matter of minimum track clearance.  *See* 248 F.3d at 525; *see also*, *Smith*, 2014 WL 3732622, at *2 (holding the "allegations involve railroad safety procedures, which the FRSA – not the ICCTA – was enacted to regulate. . . .  Because those claims [of negligence and qualified nuisance] relate to rail safety, and do not amount to economic regulation of railroads, the ICCTA does not preempt Plaintiffs' claims.").

15

(4:23CV0242)

The Court concludes at this time that Plaintiffs' derailment claims are not preempted by federal law, especially as to the allegations regarding Norfolk Southern's conduct *after* the derailment.  *See* Tipton, 2016 WL 11501426, at *12 (holding that claims concerning conduct occurring "after derailment," such as the duty to "control, mitigate, and remediate [a] chemical release," are not preempted).  Congress has made clear that the FRSA, the principal statute Norfolk Southern relies on in its preemption argument, does not preempt state law claims when the government has not issued regulations "covering" the subject matter of those claims or when the claims are based on violations of regulations.  At the pleading stage of the litigation, Plaintiffs have set forth sufficient factual allegations to establish that their claims for negligence, gross negligence, nuisance, and strict liability fall within the scope of these exemptions.

**B.**

**1.**

Next, Norfolk Southern contends Plaintiffs fail to satisfy their pleading burden for all their state law causes of action and their request for punitive damages.  Norfolk Southern focuses on fewer than ten (10) isolated paragraphs in the 473-paragraph First Amended Complaint (ECF No. 138) in arguing that the negligence claims be dismissed.  Plaintiffs, however, not only sufficiently plead extensive facts that support their negligence and gross negligence claims, but also detail *how* Norfolk Southern's failures caused the derailment.  In addition, Plaintiffs sufficiently allege they suffered harm because of Norfolk Southern's breaches.

To plead a negligence claim under Ohio law, Plaintiff "must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach."

16

(4:23CV0242)

*Pierre Invs., Inc. v. Fifth Third Bancorp*, No. 1:22-cv-155, 2022 WL 6764494, at *5 (S.D. Ohio Oct. 11, 2022)* (quoting *Rieger v. Giant Eagle, Inc.*, 157 Ohio St.3d 512, 516, 138 N.E.3d 1121 (2019)).

The First Amended Complaint (ECF No. 138) supports Plaintiff's failure-to-inspect and failure-to-train allegations, including by, *inter alia*, alleging that Norfolk Southern (i) reduced "spending to . . . perform train inspections" as the result of their adoption of PSR, ECF No. 138 at PageID #: 1787, ¶ 102; PageID #: 1789, ¶ 115; (ii) "eliminate[d] necessary inspections" and "deprioritize[d] rail and railcar inspections," thereby decreasing safety and materially increasing the risk of derailments, ECF No. 138 at PageID #: 1789, ¶ 118; PageID #: 1790, ¶ 121; (iii) reduced the number of their employees responsible for conducting inspections, ECF No. 138 at PageID #: 1791, ¶¶ 125-26; (iv) bore responsibility for "train[ing] each . . . employee who transports hazardous materials[,]" but failed to adequately ensure that employees "were properly and adequately instructed and trained" regarding the transportation of "hazardous substances" such as vinyl chloride, ECF No. 138 at PageID #: 1788, ¶ 109; PageID #: 1832, ¶¶ 279(w, bb); and, (v) failed to train employees regarding "emergency procedures in the event of a possible derailment," "proper procedures" for responding to the "derailment of railcars containing hazardous materials," and "mechanical malfunction[s] of a rail car," ECF No. 138 at PageID #: 1832, ¶¶ 279(t)-(bb).  At a minimum, these allegations support the "reasonable inference" that Norfolk Southern breached duties owed to Plaintiffs, many of which arise from federal regulations specifically cited in the First Amended Complaint (ECF No. 138).  *See Iqbal*, 556 U.S. at 678.

17

(4:23CV0242)

The First Amended Complaint (ECF No. 138) also plausibly and in detail alleges the ways in which Norfolk Southern's breaches of duty caused Plaintiffs' harms.  In addition to myriad allegations explaining how the breaches caused the at-issue derailment, Plaintiffs allege that after the derailment Norfolk Southern performed a "'controlled release'" that led to "a large, fiery explosion that released a plume of thick black smoke forming a mushroom cloud," which spread toxic chemical "from the Derailment Site."  ECF No. 138 at PageID #: 1804-1806, ¶¶ 182-88.  These allegations plausibly establish an unbroken chain of causation between Norfolk Southern's breaches and the spread of hazardous chemicals to Plaintiffs' homes and businesses, which more than satisfies the applicable pleading standard.  *Gallivan*, 943 F.3d at 293; *Brown v. Whirlpool Corp.*, 996 F. Supp.2d 623, 637- 38 (N.D. Ohio 2014) (denying motion to dismiss negligence claims because plaintiffs alleged "airborne emissions from" a plant and "airborne transmission from" dump sites exposed them to harmful substances and noting that "[n]o further detail is required at this stage of the litigation").

In addition, Plaintiffs allege they suffered harm because of Norfolk Southern's breaches. Among other things, the First Amended Complaint (ECF No. 138) describes and catalogues the numerous harms Plaintiffs have suffered, including lost income, property damage, contamination at residences and workplaces, and increased risk of serious and potentially fatal illnesses including cancer and organ damage necessitating ongoing medical monitoring.[8]

---

[8]  "While physical injury is not required to demonstrate damages entitling a plaintiff to medical monitoring relief, a plaintiff must demonstrate that because of defendant's actions, he has incurred an increased risk of disease or illness."  *Hirsch v. CSX Transp., Inc.*, No. 1:07CV3512, 2008 U.S. Dist. LEXIS 124211, at *19 (N.D. Ohio Oct. 22, 2008) (denying motion to dismiss in train derailment case).

(4:23CV0242)

*See* ECF No. 138 at PageID #: 1773-81, ¶¶ 4-57 and PageID #: 1835, ¶ 287; ECF No. 212-1 at

PageID #: 2438-39.  *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012)

(federal pleading standard does not require "detailed factual allegations" (citation omitted)); *see*

*also Tipton*, 2016 WL 11501426, at *17-18 (in train derailment and subsequent release of toxic

chemicals case, plaintiffs plausibly alleged property damage when they pleaded a possessory

interest in real property).

> In *Tipton*, the district court stated, in relevant part:

> Upon review, the Court disagrees with defendants' assertions.  In the complaints,
> plaintiffs detail how both defendants allegedly owed a duty to inspect, maintain,
> and repair its rail cars and wheel roller bearings, to identify the toxic chemical
> involved in the derailment, and to control the toxic chemical release, among other
> things.  Some—but not all—of these duties arise from the FRSA and the HMTA.
> Plaintiffs then allege how defendants breached these duties, and how such
> breaches were both a proximate cause and cause in fact of plaintiffs' damages.
> The Court is able to "draw the reasonable inference" that each defendant's
> negligence was a proximate cause of the train derailment and subsequent
> chemical spill and fire, which caused plaintiffs property and personal injury
> damage.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Accordingly,
> the Court finds that plaintiffs have stated a claim for negligence.

2016 WL 11501426, at *18 (citations to record and footnote omitted).  The First Amended

Complaint (ECF No. 138) is similarly detailed.

## 2.

Plaintiffs have not pleaded a separate, stand-alone negligence *per se* claim against

Norfolk Southern under Ohio law, but instead captioned Count I(A) as "Negligence and

Negligence Per Se."  ECF No. 138 at PageID #: 1827.  Plaintiffs detail the duties that Norfolk

Southern allegedly breached, including identifying obligations set forth in some relevant safety

regulations.  Under Ohio law, "evidence of a violation of the Safety Regulations may be

19

(4:23CV0242)

considered by the trier of fact as evidence of negligence." *Jackson v. Arka Express, Inc.*, No. 3:21CV2393, 2022 WL 1136771, at *3 (N.D. Ohio April 18, 2022) (citing *Gruenbaum v. Werner Enters., Inc.*, No. 09-cv-1041, 2011 WL 563912, at *4 (S.D. Ohio Feb. 2, 2011).

Norfolk Southern focuses only on ECF No. 138 at PageID #: 1834, ¶ 284 and argues that Plaintiffs fail "to explain which actions breached which regulations, or what the regulations require." ECF No. 76-1 at PageID #: 1036. Plaintiffs respond by citing numerous other assertions that detail the many ways in which Norfolk Southern allegedly violated federal regulations. *See* ECF No. 138 at PageID #: 1786-1814, ¶¶ 89-240; PageID #: 1827-36, ¶¶ 274-90. In addition, Plaintiffs need not include the regulatory text in the First Amended Complaint to satisfy their pleading burden; in fact, "a complaint need not even cite any law in order to pass muster under the liberal pleading standards." *Beyoglides v. Montgomery Cnty. Sheriff*, No. 3:14-cv-158, 2016 WL 8669789, at *2 (S.D. Ohio Aug. 12, 2016) (quoting *Baker v. John Morrell & Co.*, 266 F. Supp.2d 909, 922 (N.D. Iowa 2003), *aff'd*, 382 F.3d 816 (8th Cir. 2004)); *see also Smith v. Bank of Am., N.A.*, 615 Fed.Appx. 830, 833 (5th Cir. 2015) ("A complaint need not cite a specific statutory provision or articulate a perfect 'statement of the legal theory supporting the claim asserted.'" (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)).

**3.**

Norfolk Southern contends that Plaintiffs failed to allege they acted with the requisite *mens rea* required to establish a claim for gross negligence.

Ohio law defines gross negligence as the "failure to exercise any or very slight care" and "a failure to exercise even that care which a careless person would use." *CBC Engineers & Associates Ltd. v. Miller Aviation, LLC*, 880 F. Supp.2d 883, 887 (S.D. Ohio 2012) (quoting

20

(4:23CV0242)

*Johnson v. State*, 66 Ohio St. 59, 67, 63 N.E. 607 (1902), and *Thompson Elec. v. Bank One, Akron, N.A.*, 37 Ohio St.3d 259, 265, 525 N.E.2d 761 (1988)).  All elements of negligence must exist to establish gross negligence.  *Id.* at 887-88.  "Under Ohio law gross negligence is defined as wanton or reckless conduct."  *Wiley v. City of Columbus*, 36 F.4th 661, 671 (6th Cir. 2022) (citing *Mohat v. Horvath*, No. 2013-L-009, 2013 WL 5450296, at *4 ¶ 23 (Ohio App. 11th Dist. Sept. 30, 2013) (affirming denial of motion to dismiss and holding "a plaintiff is only required to allege a set of facts, which, if proven, would plausibly allow him to recover")).  "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result."  *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 388, ¶ 33, 983 N.E.2d 266 (2012).  "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligence conduct."  *Id.*, ¶ 34.

The First Amended Complaint alleges that Norfolk Southern had actual knowledge of the risks their conduct posed to the community and nevertheless acted wantonly and recklessly.  *See e.g.*, ECF No. 138 at PageID #: 1870-71, ¶¶ 467-72.  The First Amended Complaint sufficiently details Norfolk Southern's alleged specific actionable gross misconduct that caused serious and permanent harm to residents of East Palestine and surrounding communities.  ECF No. 138 at PageID #: 1795-1807, ¶¶ 155-90.

(4:23CV0242)

## C.

Courts applying Ohio law generally recognize the use of explosives as an ultrahazardous activity.  *Dartron Corp. v. Uniroyal Chem. Co., Inc.*, 893 F. Supp. 730, 739 (N.D. Ohio 1995).  "To come within the doctrine, courts have found that the activity must have an immediate, high risk of great physical harm to those in close proximity, which high risk cannot be reduced through the exercise of due care."  *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, No. 2:13-md-2433, 2015 WL 4092866, at *16 (S.D. Ohio July 6, 2015); (citing *Caveny v. Raven Arms Co.*, 665 F. Supp. 530, 532 (S.D. Ohio 1987), *aff'd*, 849 F.2d 608 (6th Cir. 1988)).  The initial and later expanded evacuation orders in the case at bar demonstrate there was an immediate and high risk of harm from the "controlled release" of the toxic chemicals.

Whether the evidence establishes that Norfolk Southern's alleged actions of (1) carelessly transporting hazardous materials and/or (2) later releasing and burning vinyl chloride constitute abnormally dangerous activities under applicable law, including under § 520 of the Restatement (Second) of Torts, is an issue to be decided only after development of the factual evidence.  *See Schwartz v. Accuratus Corp.*, 7 F. Supp.3d 490, 500 (E.D. Pa. 2014), *vacated in part on other grounds*, 655 Fed.Appx. 111 (3d Cir. 2016) (denying defendants' motions to dismiss as development of the factual record was necessary to assess the § 520 factors).  As stated by another U.S. District Judge in the Northern District of Ohio in denying in part a defendant's motion to dismiss:

> . . . the pleading requirements of Fed R. Civ. P. 8(a)(2) does not require that their pleadings set forth their full factual and legal argument to prove that Landmarks' alleged activities could be classified as an abnormally dangerous activity.  In fact, a Plaintiff is not required to set forth even every element of a claim for negligence or strict liability.  *Davis v. Widman*, 184 Ohio App.3d 705, 922 N.E.2d 272 (Ohio App., 2009).  The six factors outlined in Section 520 of the Restatement Second

(4:23CV0242)

> of Torts are not elements of a strict liability claim.  They are guidelines for the
> Court to use when determining whether the facts presented on Summary
> Judgment or at trial establish that the Defendant[']s activities are abnormally
> dangerous for purposes of the strict liability laws.  These factors are not
> exclusive, are not mandatory, and not required to be pled either with or without
> specificity.  *See*, *Doherty v. Ohio State University*, 1990 WL 86772 at *3 (Ohio
> App. June 26, 1990).

*Mangan v. Landmark 4LLC*, No. 1:12CV0613, 2013 WL  950560, at *2 (N.D. Ohio March 11, 2013).

Plaintiffs allege Norfolk Southern was transporting approximately 1,600,000 pounds of toxic and hazardous chemicals; specify those chemicals and their specific dangers; note the initial evacuation order for East Palestine and its subsequent expansion to a larger area; and, detail Norfolk Southern's intentional explosive release and ignition of vinyl chloride that released those hazardous chemicals and their combustion by-products into a residential community.  *See* ECF No. 138 at PageID #: 1795, ¶ 155; PageID #: 1798-99, ¶¶ 170-71; PageID #: 1802, ¶ 177; PageID #: 1803-1804, ¶¶ 180-84; PageID #: 1807-14, ¶¶ 191-240; PageID #: 1841, ¶¶ 310-13 (citing Restatement (Second) of Torts §§ 519 & 520).

Plaintiffs have sufficiently alleged a claim for strict liability in Count II (ECF No. 138 at PageID #: 1841-42) based on Norfolk Southern engaging in abnormally dangerous activities, including transporting over a million pounds of hazardous chemicals and intentionally setting fire to them in a residential neighborhood.

**1.**

Plaintiffs alternatively allege claims for both strict liability and negligence, which is permitted under Fed. R. Civ. P. 8(a)(3).  " 'Strict liability and negligence are complementary but

(4:23CV0242)

distinct theories of liability' that may be pled in the alternative." *Mangan*, 2013 WL 950560, at *3 (quoting *Francis Corp. v. Sun Co.*, No. 74966, 1999 WL 1249534, at *1 (Ohio App. 8th Dist. Dec. 23, 1999)).  While Plaintiffs may not obtain recovery on both distinct theories, they are not precluded from pursuing both theories in the alternative through the course of the litigation. *Id.*

**2.**

Section 521 of the Restatement (Second) of Torts provides that the rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier. Norfolk Southern argues that rail transportation of hazardous materials, and conduct incident to such transportation, falls within the common carrier exception to strict liability, which requires dismissal of Plaintiffs' strict liability claim.

Ohio, however, has not adopted the common carrier exception to strict liability codified in the Restatement (Second) of Torts § 521.  According to Plaintiffs, even if the Court finds that Ohio would adopt the common carrier exception, this does not extend to Norfolk Southern's actions of releasing and burning vinyl chloride as such actions far exceed the scope of the public duties imposed on Norfolk Southern as a common carrier. *Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1006 (9th Cir. 2008) (most courts that have adopted the public policy duty in § 521 "have generally done so only to the extent a defendant was legally required to perform the ultrahazardous activity").  While Norfolk Southern may have been required to accept and transport the vinyl chloride as cargo, they voluntarily undertook activities for their own purpose; namely to release and burn vinyl chloride in order to get the derailed cars out of the way to start

24

(4:23CV0242)

their trains running through East Palestine again to earn revenue.  *See BNSF Ry. Co. v. Eddy*, 459 P.3d 857, 874 (Mont. 2020) (the activities of BNSF, other than the transportation of vermiculite, are not protected by the common carrier exception); *Murphy-Fauth v. BNSF Ry. Co.*, No. CV-17-79-GF-BMM-JTJ, 2018 WL 3601235, at *2 (D. Mont. July 27, 2018) (the common carrier exception "does not apply when an entity engages in an abnormally dangerous activity for 'its own purposes.' " (citation omitted)).

### D.

Plaintiffs have also adequately stated claims for statutory (Ohio and Pennsylvania), private, and public nuisance under applicable law, detailing allegations of Norfolk Southern's negligent, careless, and intentional conduct that caused particularized harm to Plaintiffs.

### 1.

Plaintiffs adequately allege under Ohio, Pennsylvania and West Virginia law, as well as the Restatement (Second) of Torts, that they suffered particularized injuries.  When the nuisance causes physical harm to a plaintiff and/or his land or chattels, it is "of a different kind than that suffered by the public."  *Brown v. Cty. Comm'rs of Scioto Cty.*, 87 Ohio App.3d 704, 714, 622 N.E.2d 1153 (Ohio App. 4th Dist. 1993) ("When the particular harm involved consists of interference with the use and enjoyment of land, the landowner may recover . . . on the basis of the particular harm to her resulting from the public nuisance. . . ."); *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 220 (3d Cir. 2020) (under Pennsylvania law, the right to use and enjoy one's home and obtain full value of one's property are personal rights that are qualitatively different from the general right to clean air); *Duff v. Morgantown Energy Assoc.*, 187 W.Va. 712, 716 n.7, 421 S.E.2d 253 (1992) ("Traditionally, a private plaintiff, in order to have standing to

(4:23CV0242)

bring a public nuisance action, had to show a 'special injury' different in both kind and degree from the public."); *see also* Restatement (Second) of Torts § 821C cmt. D.

Plaintiffs allege harm flowing to them that is distinct from the harms to the general public because Norfolk Southern has unreasonably interfered with their personal and property rights. *See* ECF No. 138 at PageID #: 1773-82, ¶¶ 2-58 (limiting the claims to those persons harmed because they live in, work in, own a business in, or own property in a specified radius surrounding the derailment and subsequent intentional ignition of toxic chemicals); PageID #: 1845, ¶ 329; PageID #: 1847, ¶ 341; PageID #: 1851, ¶ 361.  Plaintiffs allege that the particulate plume traveled to and/or hazardous chemicals were found where Plaintiffs live, work, own property, or own a business.  *See* ECF No. 138 at PageID #: 1806, ¶ 188; PageID #: 1807, ¶ 190; PageID #: 1822, ¶ 252.  As a result, Plaintiffs well-pleaded allegations claim they suffered interferences with their health (by being exposed to unsafe levels of toxic chemicals increasing their risk of disease or illness), suffered interferences with their property (including loss of use and enjoyment, property damage, diminution in value), suffered interferences with their business, and/or suffered pecuniary losses (such as out-of-pocket costs and loss of income).  *See* ECF No. 138 at PageID #: 1773-82, ¶¶ 2-58; PageID #: 1843-44, ¶¶ 324-26; PageID #: 1846, ¶¶ 336-38; PageID #: 1851, ¶ 362.

Public nuisance claims are allowed to be brought as class actions.  *See e.g.*, *Baptiste*, 965 F.3d at 222, 227 (finding that class action plaintiffs stated a public nuisance claim and rejecting defendants' mass nuisance argument); *see also Thornburgh v. Ford Motor Co.*, 4:19-cv-01025-HFS, 2021 WL 1230271, at *3 (W.D. Mo. March 31, 2021) (denying defendants' motion to dismiss class action plaintiffs' public nuisance claim, noting that the complaint

(4:23CV0242)

included specific allegations of harm from the 16 representatives); *see also* Restatement (Second) of Torts § 821C(2)(c).  Plaintiffs have been affected differently from those falling outside the proposed classes as the nuisance has caused an interference with rights of their personal health, business, and/or property.

2.

Actionable private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land" that is either:  "(a) intentional and unreasonable, or (b) unintentional and caused by negligent, reckless or abnormally dangerous conduct." *Brown*, 87 Ohio App.3d at 712 (citing Restatement (Second) of Torts § 821D, at 100 (1979)). "Unlike a public nuisance, a private nuisance threatens only one or few persons." *Ogle v. Ohio Power Co.*, 180 Ohio App.3d 44, 49 ¶ 7, 903 N.E.2d 1284 (Ohio App. 4th Dist. 2008) (citing *Taylor v. Cincinnati*, 143 Ohio St. 426, 442, 55 N.E.2d 724 (1944)).

The First Amended Complaint (ECF No. 138) states a claim for private nuisance.  *See Beck v. Stony Hollow Landfill, Inc.*, No. 3:16-cv-455, 2017 WL 1551216, at *1 (S.D. Ohio May 1, 2017) (holding plaintiffs adequately pleaded their class action private nuisance claims when their complaint alleged defendant failed to properly construct, maintain, and operate its landfill and "failed to sufficiently collect, capture, and destroy landfill gas" such that noxious odors interfered with neighboring properties); *Green v. Begley Co.*, No. 1:08cv77, 2008 WL 4449065, at *2 (S.D. Ohio Sept. 29, 2008) (denying motion to dismiss private nuisance claim as plaintiff alleged defendant's "release of chemicals into the soil and groundwater was both negligent and abnormally dangerous").  It contains numerous allegations regarding how Norfolk Southern's

27

(4:23CV0242)

alleged negligent and reckless behavior led to the derailment, *see* ECF No. 138 at PageID #: 1788-91, ¶¶ 110-27; PageID #: 1795-98, ¶¶ 155-69; PageID #: 1830-34, ¶¶ 279-83, and how their intentional conduct of blasting holes in the vinyl chloride tankers and lighting the vinyl chloride on fire led to a mushroom cloud dispersing toxic chemicals for miles, *see* ECF No. 138 at PageID #: 1803-1806, ¶¶ 181-88.  Plaintiffs further allege the spread of toxic and hazardous chemicals into the local water and onto neighboring private lands at great risk to human life.  *See* ECF No. 138 at PageID #: , ¶¶ 172-78; PageID #: 1804-14, ¶¶ 185-240.  According to Plaintiffs, the "improper transportation, handling, and disposal" of the toxic and hazardous chemicals was "negligent, reckless and/or intentional" and "contaminated real property located in the 30-mile radius surrounding the East Palestine derailment site."  *See* ECF No. 138 at PageID #: 1847-48, ¶¶ 344-47.

### E.

Similarly, based largely on the same conduct, Plaintiffs have adequately pleaded claims for trespass (Count VII), trespass to chattels (Count VIII), damage to agriculture (Ohio - Count IX, Pennsylvania - Count X, and West Virginia - Count XI), and injury to animals (Count XII) under applicable common law and statutes.

### 1.

Ohio recognizes a claim for indirect trespass based on chemical invasion of real property by either aerial dispersion or groundwater.  *See Little Hocking Water Ass'n v. E.I. du Pont Nemours & Co.*, 91 F. Supp.3d 940, 978-79 (S.D. Ohio 2015) (citations omitted).  Pennsylvania and West Virginia also recognize a claim.  *See Maroz v. Arcelormittal Monessen*, No. 15cv0770, 2015 WL 6070172, at *5 (W.D. Pa. Oct. 15, 2015) (denying motion to dismiss trespass claim

(4:23CV0242)

based upon defendant's release of noxious odors and air particulate matter onto plaintiffs' property); *Perrine v. E.I. du Pont*, 225 W.Va. 482, 539 (2010) (upholding liability and compensatory damages verdict against du Pont for, *inter alia*, trespass through release of dust, gases, and fumes onto nearby property). The Sixth Circuit has explained that "in an Ohio indirect-trespass claim, a plaintiff may establish substantial physical damages to, or interference with, his property by demonstrating that the concentration of an invading contaminant on his property is likely to cause harm to human health." *Abrams v. Nucor Steel Marion, Inc.*, 694 Fed. Appx. 974, 979-980 (6th Cir. 2017).

Plaintiffs have alleged substantial physical damages or substantial interference with the reasonable and foreseeable use of their property. The First Amended Complaint alleges that Norfolk Southern's "controlled release" and burn of the vinyl chloride caused a toxic mushroom cloud to disperse dozens of toxic chemicals and combustion by-products traveling miles from the derailment site and "contaminating the air, surfaces, soil and water." *See* ECF No. 138 at PageID #: 1804-1806, ¶¶ 182-88. Plaintiffs also specified the chemicals that invaded the air and surfaces, as well as the potential physical harm caused by such chemicals. *See* ECF No. 138 at PageID #: 1806-14, ¶¶ 188-240. Plaintiffs claim that Norfolk Southern intentionally, knowingly, and negligently released hazardous chemicals knowing that such toxins would contaminate Plaintiffs' land and water. *See* ECF No. 138 at PageID #: 1852-53, ¶¶ 367-369. Finally, the First Amended Complaint alleges Norfolk Southern's actions interfered with and substantially impaired Plaintiffs' rights to the use and enjoyment of their property, as well as economic and property damages. *See* ECF No. 138 at PageID #: 1853-54, ¶¶ 373-74.

29

(4:23CV0242)

At the pleading stage, the court must take Plaintiffs' allegations as true and draw inferences in their favor.  Courts routinely decline to dismiss trespass claims with damages allegations similar to those in the case at bar.  *See Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812, 826 (Pearson, J.) ("Plaintiffs have sufficiently alleged that . . . they face increased risk of disease and that their property has been contaminated."); *Green v. Begley Co.*, No. 1:08cv77, 2008 WL 4449065, at *4 (S.D. Ohio Sept. 29, 2008) ("Plaintiff alleges that . . . these contaminants continue to injure Plaintiff.").  As in these cases, "[i]t is premature to rule upon the issue of damages in the context of a motion to dismiss stage as there has been no discovery or development of a record in this case."  *Weirton Area Water Bd. v. 3M Co.*, No. 5:20-CV-102, 2020 WL 7776542, at *8 (N.D. W.Va. Dec. 30, 2020).  Plaintiffs have properly alleged a trespass claim and will be permitted to develop the facts and retain experts.

**2.**

The Restatement (Second) of Torts § 217(b) states that a trespass to chattel may be committed by intentionally using or intermeddling with the chattel in possession of another.  Restatement § 217, cmt. e defines physical "intermeddling" as follows:  "intentionally bringing about a physical contact with the chattel.  The actor may commit a trespass by an act which brings him into an intended physical contact with a chattel in the possession of another[.]"  Restatement (Second) of Torts § 218 determines when a claim for trespass to chattel may be actionable:

> One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if.
> (a) he dispossesses the other of the chattel, or
> (b) the chattel is impaired as to its condition, quality, or value, or
> (c) the possessor is deprived of the use of the chattel for a substantial time, or

30

(4:23CV0242)

> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest.

Therefore, liability is limited to situations when an action is intentionally directed against the chattel. *MCI WorldCom Network Servs., Inc. v. W.M. Brode Co.*, 411 F. Supp.2d 804, 810 (N.D. Ohio 2006) (granting defendant's motion for summary judgment and denying plaintiff's cross-motion on plaintiff's trespass to chattel claim under Ohio law since plaintiff had produced no evidence that defendant intended the physical contact with plaintiff's fiber optic cable).  Conduct is intentional when "the actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result." *Harasyn v. Normandy Metals, Inc.*, 49 Ohio St.3d 173, 175, 551 N.E.2d 962 (1990) (employer intentional tort case); *see* Restatement (Second) of Torts § 217, cmt. c.

Plaintiffs allege that Norfolk Southern detonated explosive charges on five rail cars containing vinyl chloride.  *See* ECF No. 138 at PageID #: 1804, ¶¶ 183-85.  Vinyl chloride is "prone to explode if not . . . handled with proper methods. . . ."  *See* ECF No. 138 at PageID #: 1807, ¶¶ 193-94.  This created "a large, fiery explosion that released a large plume of thick black smoke forming a mushroom cloud over the entire area."  ECF No. 138 at PageID #: 1804, ¶ 185.  The plume spread out for miles, releasing approximately one million pounds of vinyl chloride into the atmosphere.  *See* ECF No. 138 at PageID #: 1805-1806, ¶¶ 186-188; PageID #: 1808, ¶ 200.  Viewing these allegations in the light most favorable to Plaintiffs, the Court concludes at this time that nearby chattels would suffer damage.  *See Bradley v. Am. Smelting & Refining Co.*, 104 Wash.2d 677, 682 (1985) ("It had to know that the solids propelled into the air by the warm gases would settle back to earth somewhere.").

31

(4:23CV0242)

**3.**

In a single paragraph, *see* ECF No. 76-1 at PageID #: 1046-47, Norfolk Southern seeks to dismiss Plaintiffs' claims for damage to agricultural property (Ohio - Count IX, Pennsylvania - Count X, and West Virginia - Count XI), and injury to animals (Count XII). Those Counts address Defendants' violations of Ohio Rev. Code § 901.51, 42 Pa.C.S.A. § 8313, and W.Va. Code § 61-3-48a. Norfolk Southern makes no argument concerning Count X and devotes a single sentence to Counts IX and XI, and another sentence to Count XII. Norfolk Southern's argument as to these four (4) counts that "Plaintiffs allege only that hazardous chemicals released from the derailment disbursed within a 30-mile radius," ECF No. 76-1 at PageID #: 1047, is belied by the actual allegations in Counts IX-XII, as well as the multitude of other allegations in the First Amended Complaint. *See* ECF No. 138 at PageID #: 1772, ¶ 1; PageID #: 1786-1814, ¶¶ 89-240; PageID #: 1857-63, ¶¶ 390-425; PageID #: 1870-74, ¶¶ 467-73.

**F.**

In addition, Plaintiffs have sufficiently pleaded claims for ongoing medical monitoring arising from their exposure to the highly toxic chemicals, including phosgene, released into the homes and workplaces as a result of the derailment and subsequent intentionally set explosions and fire. Consistent with a prevailing current view of Ohio law, Plaintiffs alleged medical monitoring as a remedy under Ohio law (Count XIII), as well as pleading it as a stand-alone cause of action under Pennsylvania (Count XIV) and West Virginia (Count XV) law.

**1.**

Plaintiffs and Norfolk Southern now agree that medical monitoring is not an independent cause of action in Ohio. *See* Plaintiffs' Memorandum in Opposition (ECF No. 103) at PageID #:

(4:23CV0242)

1248; Norfolk Southern's Reply Memorandum (ECF No. 112) at PageID #: 1310. To the extent that Plaintiffs have pleaded "medical monitoring" as a separate cause of action on behalf of the Ohio residents, the Court grants the motion to dismiss Count XIII.

The presently prevailing view is that medical monitoring in Ohio is an element of damages when liability is otherwise established for an underlying tort claim. *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 542, 817 N.E.2d 59 (2004); *see also Hirsch v. CSX Transportation, Inc.*, No. No. 1:07-cv-3512, 2008 U.S. Dist. LEXIS 124211, at *5 (N.D. Ohio Oct. 22, 2008); ECF No. 138 at PageID #: 1863 n. 13. Plaintiffs have pleaded exposure to hazardous materials which caused such an increased risk of disease that a reasonable physician would order medical monitoring. *Elmer*, 127 F. Supp.3d at 825 ("[I]f the Plaintiffs can establish liability and an increased risk of disease, they may be entitled to medical monitoring as a remedy." (alterations and citation omitted)).[9] To provide that monitoring, Plaintiffs have requested quantifiable costs of a monitoring program, and/or injunctive relief in the form of a court-established medical monitoring program. *See* ECF No. 138 at PageID #: 1824, ¶¶ 263 and 265; PageID #: 1826, ¶ 271; PageID #: 1827, ¶ 273.

**2.**

Defendants argue that "[a]s to Ohio law, Plaintiffs have not plausibly alleged that a reasonable physician would order medical monitoring based on their alleged exposure." ECF No. 76-1 at PageID #: 1049. As an initial matter, Norfolk Southern's CEO conceded the

---

[9] In *Elmer*, the court also noted that expert medical testimony is required to demonstrate increased risk of disease. 127 F. Supp.3d at 825 (citing *Day v. NLO*, 851 F. Supp. 869, 881 (S.D. Ohio 1994). Expert proof, however, is not required at the pleading stage of the litigation. Neither must Plaintiffs prove anything or present sufficient evidence.

(4:23CV0242)

necessity for medical monitoring in his testimony before Congress on March 21, 2023 when he stated that "[w]e are committed to a solution that addresses long-term health risks through the creation of a long-term medical compensation fund."  ECF No. 138 at PageID #: 1825, ¶ 268.  In addition, under any potentially applicable law, *see, e.g.*, *Redland Soccer Club v. Dep't of the Army & Dep't of Def. of the U.S.*, 548 Pa. 178, 195-96, 696 A.2d 137 (1997); *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 141-42 (1999), Plaintiffs have sufficiently alleged exposure to hazardous chemicals known to heighten the risk of disease.  *See* ECF No. 138 at PageID #: 1807-1808, ¶¶ 192 and 195-97; PageID #: 1809, ¶ 207; PageID #: 1810, ¶ 209; PageID #: 1811, ¶¶ 215, 217, 219-21; PageID #: 1812, ¶ 224; PageID #: 1813, ¶¶ 234-35 and 237.  Plaintiffs have also plausibly alleged they were exposed to such hazardous chemicals above background levels and therefore are at increased risk of cancer and organ damage.  *See* ECF No. 138 at PageID: 1773, ¶¶ 4 and 7; PageID: 1774, ¶¶ 10 and 14; PageID: 1775, ¶ 17; PageID: 1780, ¶ 48; PageID: 1863, ¶ 427; PageID: 1865, ¶ 437; PageID #: 1867, ¶ 447.  Finally, Plaintiffs allege that "[t]his increased risk would warrant a reasonable physician to order monitoring."  *See* ECF No. 138 at PageID #: 1825, ¶ 266; PageID #: 1864, ¶ 431; PageID #: 1866, ¶ 441; PageID #: 1868, ¶ 451.

## G.

Plaintiffs have properly stated a claim for spoliation.  Count XVI is premised on Norfolk Southern's destruction of the surveillance video from the cab of Train 32N by recording over the video pursuant their automatic deletion protocols.  ECF No. 138 at PageID #: 1869, ¶ 461.  The case-critical nature of the deleted surveillance video cannot reasonably be disputed.  "[T]he elements of a claim for interference with or destruction of evidence are (1) pending or probable

34

(4:23CV0242)

litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is

probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case,

(4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's

acts."  *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).

Contrary to the assertion of Norfolk Southern, *see* ECF No. 76-1 at PageID #: 1050,

Plaintiffs have alleged willful destruction of evidence.  *See* ECF No. 138 at PageID #: 1870,

¶ 464 ("As a result of the destruction of this video surveillance footage from the cab of Train

32N . . . Defendants have willfully destroyed or interfered with evidence. . . .").  Furthermore,

Norfolk Southern's adherence to ordinary deletion protocols does not preclude a plausible

inference of their willful intent to destroy evidence.  *See Stevenson v. Union Pac. R.R. Co.*, 354

F.3d 739, 747-748 (8th Cir. 2004) (affirming the district court's finding of the railroad's intent to

suppress evidence despite it simply following its policy of reusing voice tapes).  Consequently,

whether Norfolk Southern's adherence to its ordinary policy for retention of video surveillance

videos insulates them from a finding of willfulness with respect to Plaintiffs' spoliation claim is

a question to be decided at a later time.

**H.**

**1.**

Finally, Norfolk Southern moves to strike Plaintiffs' request for punitive damages.  The

function of a motion under Fed. R. Civ. P. 12(f) is to "avoid the expenditure of time and money

that must arise from litigating spurious issues by dispensing with' them early in the case."

*Operating Eng'rs Local 324 Health Care Plan v. G &W Const. Co.*, 783 F.3d 1045, 1050 (6th

Cir. 2015) (internal quotation marks and citation omitted).  According to the case law of the

(4:23CV0242)

Sixth Circuit, the "action of striking a pleading should be used sparingly by the courts." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).  It should be "resorted to only when required for the purposes of justice" and when "the pleading to be stricken has no possible relation to the controversy." *Id.*

**2.**

The actual malice necessary for punitive damages is "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174 (1987).  "[A]ctual malice can be inferred from conduct and surrounding circumstances which may be characterized as reckless, wanton, willful or gross." *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 37, 543 N.E.2d 464 (1989).

Plaintiffs have adequately detailed Norfolk Southern's alleged recklessness and conscious disregard for the rights and safety of others pre- and post-derailment to support their request for punitive damages.  Plaintiffs' negligence claim against Norfolk Southern (Count I(A)) describes a stream of alleged reckless breaches that Defendant "knew or should have known," ECF No. 138 at PageID #: 1827, ¶ 277, had a great probability to cause substantial harm to others, from:  "[f]ailing to properly inspect their trains and railcars," ECF No. 138 at PageID #: 1830, ¶ 279(a); "[a]ccepting and transporting shipments of hazardous material that had pressure relief devices made of materials that were incompatible with the lading," ECF No. 138 at PageID #: 1830, ¶ 279(c); "[f]ailing to immediately notify train dispatchers about fires observed on roller bearings and the extent to which fires had spread beyond the roller bearing," ECF No. 138 at PageID #: 1831, ¶ 279(f); failing to set appropriate alarm thresholds on wayside and hotbox detectors to determine "when a potentially dangerous condition exists," ECF No. 138

36

(4:23CV0242)

at PageID #: 1831, ¶ 279(l); "[f]ailing to ensure a proper mechanism for stopping or slowing

malfunctioning railcars in a timely manner to avoid a derailment while transporting . . .

hazardous materials," ECF No. 138 at PageID #: 1831, ¶ 279(o); and, "[f]ailing to properly

dispose of or otherwise eliminate the hazardous materials from the derailment site . . . ." ECF

No. 138 at PageID #: 1833, ¶ 279(gg).

      The remaining counts in the First Amended Complaint also plead Norfolk Southern's

alleged recklessness and conscious disregard for the rights and safety of others. *See* ECF No.

138 at PageID #: 1836, ¶ 290; PageID #: 1842, ¶ 318; PageID #: 1843, ¶¶ 324-25; PageID #:

1845, ¶ 330; PageID #: 1846, ¶¶ 337-38; PageID #: 1847, ¶ 342; PageID #: 1848, ¶ 346; PageID

#: 1850, ¶¶ 354 and 356; PageID #: 1852-53, ¶ 365 and 368; PageID #: 1854, ¶ 377; PageID #:

1856, ¶ 389; PageID #: 1858, ¶ 399; PageID #: 1860, ¶ 408; PageID #: 1861, ¶ 417; PageID #:

1863, ¶ 425; PageID #: 1874, ¶ 473.

      The First Amended Complaint (ECF No. 138) alleges conduct sufficient to support a

request for punitive damages. *See Baatz v. Columbia Gas Transmission, LLC*, No. 1:14CV0505,

2016 U.S. Dist. LEXIS 200221, at *25-26 (N.D. Ohio Dec. 22, 2016) (plaintiffs' allegations

stated plausible request for entitlement to punitive damages when, *inter alia*, plaintiffs pleaded

defendant's "invasion onto their properties [and] that such trespass was . . . done with conscious

disregard for their property rights"); *Molnar v. City of Green*, 140 N.E. 3d 1209, 1210-11 (Ohio

App. 9th Dist. 2019) (quoting *Molnar v. City of Green*, No. 28650, 2018 WL 1569817, at *1 ¶ 3

(Ohio App. 9th Dist. March 30, 2018)) ("The complaint stated claim[ ] for . . . punitive damages

that alleged grossly negligent, reckless, wanton, and willful conduct."). Therefore, the Motion to

Strike is denied.

(4:23CV0242)

## V.  Conclusion

As earlier announced, Norfolk Southern's Motion to Dismiss and to Strike (ECF No. 76) is granted in part and denied in part.  To the extent that Plaintiffs have pleaded "medical monitoring" as a separate cause of action on behalf of the Ohio residents, the Court grants the motion to dismiss Count XIII.  Nevertheless, because, in Ohio, medical monitoring is an element of damages, should Norfolk Southern become liable for an underlying tort claim, medical monitoring can be imposed.  All other claims and remedies of Plaintiffs remain pending against Norfolk Southern.


IT IS SO ORDERED.


  March 13, 2024                       _/s/ Benita Y. Pearson_
Date                                  Benita Y. Pearson
                                      United States District Judge