**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** | CASE NO. 4:23-CV-00242-BYP<br>JUDGE BENITA Y. PEARSON |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT,**
**APPOINTMENT OF LEAD CLASS COUNSEL, AND**
**<u>APPROVAL OF NOTICE</u>**

# <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.      PRELIMINARY STATEMENT ........................................................................ 2

II.     BACKGROUND AND PROCEDURAL HISTORY ....................................... 3

   A.    Plaintiffs' Allegations Against the Defendants Survived a Motion to Dismiss ........... 4

   B.    Plaintiffs Have Engaged in Extensive Discovery to Support their Allegations and Class Certification ................................................................. 4

   C.    History of Settlement Negotiations ................................................. 5

III.    TERMS OF THE PROPOSED SETTLEMENT ......................................... 6

IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ........... 9

   A.    Plaintiffs and Interim Class Counsel Have Adequately Represented the Proposed Settlement Class (Rule 23(e)(2)(A)) ............................................... 11

   B.    The Proposed Settlement is the Product of Serious, Informed, Non-Collusive Negotiations (Rule 23(e)(2)(B)) ................................................... 12

   C.    The Proposed Settlement is Fair, Reasonable, and Adequate, and Falls Within the Range of Possible Approval ......................................................... 15

     1.    The Settlement Relief Outweighs the Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i)) ............................................................... 16

       (a)    Settlement Components, Including Tiers, are Fair and Supported by Discovery and Depositions ........................................... 16

     2.    The Settlement Amount is Significant and Provides a Beneficial Recovery for Settlement Classes That is Exceedingly Reasonable and Adequate................................ 18

     3.    The Settlement Will Distribute Relief Effectively and Equitably to the Class (Rules 23(e)(2)(C)(ii), 23(e)(2)(D)) ................................................. 20

       (a)    Summary of Distribution Plan ......................................... 21

       (b)    The Plans of Distribution Are Fair, Reasonable, and Adequate ........................ 22

       (c)    The Plans of Distribution Are Equitable................................ 23

     4.    Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Expenses (Rule 23(e)(2)(C)(iii)) .......................................................... 23

     5.    No Other Agreements Exist (Rule 23(e)(2)(C)(iv))................................. 25

V.      PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE 25

   A.    Rule 23(a) is Satisfied................................................................ 25

   B.    The Requirements of Rule 23(b)(3) are satisfied.............................. 27

VI.     THE PROPOSED NOTICE PROGRAM COMPLIES WITH RULE 23 AND DUE PROCESS ........................................................................ 29

VII.    INTERIM CLASS COUNSEL SHOULD BE CONVERTED TO LEAD CLASS
COUNSEL ....................................................................................................................... 32

VIII.    THE PARTIES' PROPOSED SCHEDULE OF EVENTS .......................................... 34

IX.    CONCLUSION ............................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................26

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................25, 28

*In re Bear Stearns Cos.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012).....................................15

*Brown v. Progressions Behav. Health Servs., Inc.*,
    No. CV 16-6054, 2017 WL 2986300 (E.D. Pa. July 13, 2017).............24

*Cates v. Cooper Tire & Rubber Co.*,
    253 F.R.D. 422 (N.D. Ohio 2008) ..........................................26

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................19

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .........................................13, 19

*In Re Crocs Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) ............................................15

*Daffin v. Ford Motor Co.*,
    458 F.3d 549 (6th Cir. 2006) ...........................................26, 28

*Davis v. Omnicare, Inc.*,
    No. 5:18-CV-142-REW, 2021 WL 1214501 (E.D. Ky. Mar. 30, 2021) ...............21

*deMunecas v. Bold Food, LLC*,
    No. 09 CIV. 00440 DAB, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).............24

*Does 1-2 v. Deja Vu Servs., Inc.*,
    925 F.3d 886 (6th Cir. 2019) ...............................................24

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)........................................................29

*Employees Retirement System of the City of St. Louis, et al. v. Jones*,
    No. 2:20-cv-4813 (S.D. Ohio May 9, 2022) .................................14

*In re Flint Water Cases*,
  499 F. Supp. 3d 399 (E.D. Mich. 2021)................................................................21

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)...............................................................................................26

*Gutierrez v. Amplify Energy Corp.*, No. 8:21-CV-01628-DOC,
  Order, ECF No. 599, (C.D Cal. Dec. 7, 2022) ......................................................20

*Hainey v. Parrott*,
  2007 WL 3308027 (S.D. Ohio Nov. 6. 2007).........................................................24

*Hainey v. Parrott*,
  617 F. Supp. 2d 668 (S.D. Ohio 2007) .............................................................14, 16

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020)............................................................23

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) .........15

*In re Illumina*,
  2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) .........................................................22

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio, 2001) ...................................................................10, 16

*Jenson v. First Tr. Corp.*,
  2008 WL 11338161 (C.D. Cal. June 9, 2008) .........................................................22

*JLKX Corp. v. Bobcat Energy Resources, LLC*,
  2019 WL 4573710 (N.D. Ohio Sept. 20, 2019).......................................................10

*Johnson v. Midwest Logistics Sys., Ltd.*,
  2013 WL 2295880 (S.D. Ohio May 24, 2013) ........................................................24

*Komoroski v. Utility Service Partners Private Label, Inc.*,
  2017 WL 3261030 (W.D. Mo. 2017) ......................................................................29

*Midland Funding, LLC v. Brent*,
  No. 3:08 CV 1434, 2011 WL 3557020 (N.D. Ohio Aug. 12, 2011) .......................19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)................................................................................................29

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*,
  546 F. Supp. 1 (N.D. Ohio 1982).............................................................................11

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008) ........................................................19

*Philips v. Philip Morris Cos. Inc.*,
   298 F.R.D. 355 (N.D. Ohio 2014) ......................................................26

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .......................................9

*Reynolds v. Beneficial Nat. Bank*,
   260 F.Supp.2d 680 (N.D.Ill.2003) ......................................................14

*Rikos v. P&G*,
   799 F.3d 497 (6th Cir. 2015) ..........................................................26

*Robles v. Comtrak Logistics, Inc.*,
   No. 15-CV-2228, 2022 WL 17672639 (W.D. Tenn. Dec. 14, 2022) ....................................23

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009) .......................................................28

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................14

*Sellards v. Midland Credit Mgmt., Inc.*,
   No. 1:20-CV-02676, 2023 WL 3869023 (N.D. Ohio May 2, 2023) .....................................13

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   No. 1:01-CV-9000, 2001 WL 1842315 (N.D. Ohio Oct. 20, 2001)...................................10

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................9, 10, 20, 24

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)................................................................28

*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ...................................................11, 12, 16

*Voulgaris v. Array Biopharma Inc.*,
   No. 17-CV-02789-KLM, 2021 WL 6331178 (D. Colo. Dec. 3, 2021), aff'd,
   60 F.4th 1259 (10th Cir. 2023) .........................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...................................................................26

*Ware v. CKF Enterprises, Inc.*,
   No. CV 5:19-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020)..................................21

*Waters v. Pizza to You, L.L.C.*,
   No. 3:19-CV-372, 2022 WL 404614 (S.D. Ohio Feb. 9, 2022) ...............................................24

*Wood v. FCA US LLC*,
   No. 520CV11054JELAPP, 2022 WL 17361963 (E.D. Mich. Dec. 1, 2022) ...........................9

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ...............................................................................................27

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................................................... *Id.*

I.      PRELIMINARY STATEMENT

Plaintiffs file this Motion seeking preliminary approval of a Settlement that will resolve all claims alleged in Plaintiffs' First Amended Master Consolidated Class Action Complaint (ECF No. 138), arising out of, or relating to, the derailment of Norfolk Southern Train 32N, including the subsequent "vent and burn" operation and the chemical release, fire, emergency response, clean-up, remediation, shelter-in-place and evacuation following the derailment (all collectively defined in the Settlement Agreement as "the Incident").

This case arises from the derailment of Norfolk Southern Train 32N in East Palestine, Ohio, on February 3, 2023. Following the derailment, Norfolk Southern and its contractors conducted a "vent and burn" of five railcars containing vinyl chloride. Plaintiffs allege that this operation released various dangerous chemicals that polluted the surrounding air, soil, and water, and led to toxic exposure of neighboring properties, businesses, and persons to those chemicals. Plaintiffs brought their lawsuit and sought to recover damages as a result of the Incident, including loss of use and enjoyment of property, property damage, exposure to toxic material, economic damages, and the need for medical monitoring.

This hard-fought Settlement has been reached after all parties engaged in extensive discovery, and Norfolk Southern and Plaintiffs negotiated the Settlement fairly and at arm's length. The proposed Settlement will provide class-wide releases over a 20-mile radius to all named Defendants in exchange for a significant monetary payment to Settlement Class Members. It is a fair, reasonable, and adequate settlement that meets the criteria for preliminary approval.

Plaintiffs now seek preliminary approval of a proposed Settlement pursuant to Federal Rule of Civil Procedure 23. Plaintiffs respectfully move the Court to (1) order preliminary approval of the Settlement, (2) approve the proposed Long-Form and Short-Form Publication

notices for dissemination to the settlement class members pursuant to the notice plan, (3) appoint Interim Class Counsel as Lead Class Counsel to the Settlement Classes for purposes of this Settlement, and (4) schedule a Final Approval Hearing consistent with the Parties' proposed schedule of events.

## II.  BACKGROUND AND PROCEDURAL HISTORY

In the evening hours of February 3, 2023, Norfolk Southern Train 32N was traveling eastbound on the Fort Wayne Line through northeast Ohio. (ECF No. 138 at ¶165). Train 32N passed three wayside defect detectors before derailing. Plaintiffs allege that Car 23, owned by General American Marks Company and/or GATX, derailed because of a failed wheel bearing. (ECF No. 138 at ¶146). In total, 38 railcars derailed following the bearing failure. (ECF No. 138 at ¶155). General American Marks Company, GATX Corporation, Oxy Vinyls LP, and Trinity Industries Leasing Company owned or shipped at least one of five railcars that derailed and were carrying vinyl chloride. (ECF No. 138 at ¶133-39). On February 6, 2023, Norfolk Southern and its contractors conducted a "vent and burn" of all five vinyl chloride cars, causing a massive explosion that Plaintiffs allege sent toxic chemicals over East Palestine and the surrounding area. (ECF No. 138 at ¶183-85, 279).

On August 14, 2023, Plaintiffs filed their First Amended Master Consolidated Class Action Complaint ("Master Complaint") against Norfolk Southern, adding defendants Oxy Vinyls LP, GATX Corporation, General American Marks Company, and Trinity Industries Leasing as defendants. (ECF No. 138). The Master Complaint seeks, in summary, redress for residents, property owners, employees and businesses living, working, and/or located in and around the February 3, 2023 Norfolk Southern Train 32N derailment. (ECF No. 138 at ¶1).

### A. PLAINTIFFS' ALLEGATIONS AGAINST THE DEFENDANTS SURVIVED A MOTION TO DISMISS

On June 2, 2023, Norfolk Southern filed its Motion to Dismiss and to Strike. (ECF No. 76).[1] The remaining Defendants subsequently filed their own Motions to Dismiss. (ECF Nos. 205 [GATX and General American Marks Company], 206 [Trinity Industries Leasing Company], 207 [Oxy Vinyls LP]). The Court denied all four of Defendants' Motions to Dismiss nearly in their entirety, dismissing only the Ohio-based medical monitoring claim, finding that under Ohio law it is not a stand-alone cause of action. (ECF Nos. 428, 430). However, the Court observed that medical monitoring as an element of damages remains viable for Ohio residents, as do all other claims and remedies of Plaintiffs against all Defendants. (ECF Nos. 428, 430).

### B. PLAINTIFFS HAVE ENGAGED IN EXTENSIVE DISCOVERY TO SUPPORT THEIR ALLEGATIONS AND CLASS CERTIFICATION

The Court's June 28, 2023 Case Management Order originally gave the parties until January 5, 2024, to complete fact discovery (ECF No. 98 at ¶11), but that deadline was later extended one month to February 5, 2024, with certain depositions taken after that date by party agreement. Expert reports were to be fully exchanged by May 17, 2024, and expert depositions completed before July 1, 2024. (ECF No. 98 at ¶11).

All parties engaged in comprehensive and voluminous discovery over the ten months following the Court's Case Management Order. Norfolk Southern alone produced over 720,000 documents; all non-plaintiffs together produced over 1,345,000 documents in discovery. Plaintiffs produced over 6,880 documents. Plaintiffs also collected extensive

---

[1] Though the First Amended Master Consolidated Class Action Complaint was not yet filed, the Court ruled that Norfolk Southern's Motion to Dismiss and to Strike did not need to be amended or refiled because of the limited scope of the new allegations in the First Amended Complaint. (ECF No. 137).

environmental data and facilitated a comprehensive environmental sampling and testing program, in addition to air modeling, to determine the geographic range of exposure. The environmental testing included approximately 160 sampling sites in and around East Palestine, covering sites as far as 45 miles from the Incident.[2] Plaintiffs also worked with experts to establish the costs of a medical monitoring program, and to determine the damages in their trespass and nuisance claims.[3]

Defendants deposed all of the 16 proposed class representatives, including some in their capacities as corporate designees. Plaintiffs took or participated in approximately 70 additional depositions over the course of discovery, including Rule 30(b)(6) depositions of all Defendants, and individual depositions of their employees, agents, or representatives involved in the derailment and its aftermath. Depositions were concluded by March 1, 2024.

As a result of their extensive discovery, Plaintiffs fully developed their claims as a result of the Incident.

### C.   HISTORY OF SETTLEMENT NEGOTIATIONS

Plaintiffs and Norfolk Southern were in the midst of discovery when they began to negotiate a potential settlement. As a result of ongoing negotiations, Norfolk Southern and Plaintiffs engaged in a two-day mediation with the assistance of retired United States District Judge Layn R. Phillips in October 2023. The mediation did not result in a settlement at that time, but productive negotiations between Norfolk Southern and Plaintiffs continued with the

---

[2]     The coordinates of the Incident site are in East Palestine, Columbiana County, Ohio at Latitude: 40.8360395°N; Longitude: 80.5222838°W.

[3]     Plaintiffs have worked extensively with their experts, though no expert reports from Plaintiffs have been exchanged in this litigation. Plaintiffs' original expert disclosure deadline was April 1, 2024 (ECF No. 98), but was extended to April 15, 2024, (ECF No. 432) before the Court granted the motion from Plaintiffs and Norfolk Southern to stay deadlines in Plaintiffs' consolidated case pending the filing of preliminary and final approval papers. (ECF No. 446).

assistance of Judge Phillips over the next four months. As fact discovery came to a close, Norfolk Southern and Plaintiffs were engaged in intense negotiations. Ultimately, Plaintiffs and Norfolk Southern decided to return to a formal mediation, again, with Judge Phillips on February 19, 2024.

Plaintiffs' Interim Class and Co-Lead counsel were present at the mediation, including senior attorneys from Grant & Eisenhofer P.A., Burg Simpson Eldredge Hersh & Jardine, P.C., Simmons Hanly Conroy LLP, and Morgan and Morgan, P.A. Norfolk Southern was represented at mediation by senior attorneys from Wilmer Cutler Pickering Hale and Dorr LLP and Dickey, McCamey & Chilcote, as well as multiple in-house counsel representatives of Norfolk Southern. Plaintiffs and Norfolk Southern rigorously negotiated toward a resolution during the course of the day-long mediation. Though Plaintiffs and Norfolk Southern did not finalize an agreement on the day of the mediation, negotiations continued, with counsel for the parties in near constant contact with the mediator.

Judge Phillips presented a mediator's recommendation to Norfolk Southern and Plaintiffs on March 6, 2024. Both parties accepted the mediator's recommendation and announced an agreement in principle based on that recommendation on April 9, 2024. Norfolk Southern and Plaintiffs then reduced that agreement to writing and executed the Settlement Agreement, attached as Exhibit A, on April 26, 2024.

## III.    TERMS OF THE PROPOSED SETTLEMENT

The Parties have come to a fair result, in the best interest of the Parties, including the Settlement Class Members, as a result of their negotiations. As set forth in the Settlement Agreement, Norfolk Southern has agreed to a total payment of $600 million to the Settlement Class, defined below, in exchange for a release extinguishing all liability for claims that were or could have been asserted in the Master Complaint as to Norfolk Southern arising out of, or

relating to, the Incident. *See* Settlement Agreement § XVI.  This includes a Release of all Plaintiffs' claims that were or could have been asserted in the Master Complaint against Oxy Vinyls, LP, GATX Corporation, General American Marks Company, and Trinity Industries Leasing Company. *See id.* While the proposed Settlement would extinguish all of Plaintiffs' claims against all Defendants, Norfolk Southern's contribution claims against Oxy Vinyls, LP, GATX Corporation, General American Marks Company, and Trinity Industries Leasing Company are expressly preserved under all applicable law.

The Settlement Agreement incorporates the following Settlement Class:

All Persons and Businesses residing, owning or otherwise having a legal interest in property, working, or owning or operating a Business within a 20-mile radius for the Derailment Site, from February 3, 2023 to April 26, 2024.[4]

The $600 million payment will be distributed in three components, with the assistance of a Settlement Administrator, as follows: [5]

1) Direct payments to class member households for all class action claims (except for business loss and personal injury), including nuisance, trespass, property damage/diminution, medical monitoring and mental or emotional injury or harm;
2) Business loss payments to qualifying businesses with proof of actual net loss in 2023;
3) Optional personal injury claims for persons within a 10-mile radius of the derailment site.

The first component, direct payments, requires threshold certification of residency, employment, and/or property ownership to a Claims Administrator for compensation. It will

---

[4]    Excluded from the Settlement Class are Norfolk Southern, and any of its parents, subsidiaries, or affiliates; all duly elected and approved officers of Norfolk Southern, and all directors of Norfolk Southern; Norfolk Southern employees, and contractors of Norfolk Southern and their employees, who were specifically sent by Norfolk Southern to the area in and around the Derailment Site to respond to the Incident and do not otherwise fall within the definition of Settlement Class; Norfolk Southern's Counsel; Class Counsel; a government, political subdivision, public entity, or public agency; and this Honorable Court (Pearson, J.) presiding over this Action and the Court's staff.

[5]    The payments to any given Settlement Class Member will be net of any prior payments by Norfolk Southern to avoid double payments. However, all funds, after fees and costs, will be distributed to the Class and no money— none of the $600,000,000—will revert to Norfolk Southern.

be further divided into two tiers. The first tier will include households within 1-10 miles of the Incident site, and will utilize a point system, measuring factors such as geographic proximity, number of household members, number of children in the house, relocation mandates, and length of displacement; payments will be distributed based on the allocated points. The second tier will include households within 10-20 miles of the Incident and will not include a point system. Instead, it will only consider actual displacement and extraordinary injuries.

The second component, business losses, allocates an amount determined by Class Counsel, in consultation with the Settlement Administrator and financial experts, to compensate qualifying business for actual net losses in 2023, pending the proof required by Class Counsel and the Settlement Administrator. Any portion of this allocated fund that is not claimed by businesses with qualifying losses will be redistributed to the first component, direct payments.

The third, and final, component of the payments, compensation for personal injury claims, provides an additional, optional benefit to qualifying Settlement Class Members within 10 miles of the Incident site. Those persons with past, present, or future personal injuries attributable to the Incident may voluntarily choose to receive compensation for those injuries in exchange for a release of their personal injury claims. Plaintiffs negotiated this benefit to allow residents of East Palestine, and all those within a 10-mile radius of the Incident site, an accessible way to receive compensation for their injuries now and in the future without the burden of additional litigation. Only those persons who elect to participate in this component will provide a release for their personal injury claims. Otherwise, those with personal injury claims can pursue them separately, outside of the terms of this Settlement.

Any portion of this fund that is unclaimed by persons with personal injuries will be redistributed to the first component, direct payments.

Interim Class and Co-Lead Counsel have selected Kroll Settlement Administration, LLC as the Settlement Administrator, and will determine the allocation formula and fixed amounts, subject to Norfolk Southern's review and consent, but with consent not to be unreasonably withheld. *See Wood v. FCA US LLC*, No. 520CV11054JELAPP, 2022 WL 17361963, at *4 (E.D. Mich. Dec. 1, 2022) (approving final settlement that used Kroll Settlement Administration). Interim Class and Co-Lead Counsel will work with Kroll, LLC to open an on-site East Palestine Settlement Center in East Palestine to encourage and assist those in the community to receive the benefits of the Settlement Agreement. This will be a physical, staffed location that community members can visit to submit claim forms.

## IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015) (Zouhary, J.); *see In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) (noting that Federal Rule of Civil Procedure 23 provides that "[a] class action shall not be dismissed or compromised without the approval of the court"). Ultimate approval of a class action settlement requires that the class representatives and class counsel adequately represented the class, the proposal was negotiated at arm's length, and that the relief is adequate. Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, the Court need only determine whether the proposed "'settlement is fair, adequate, and reasonable under the circumstances, as well as consistent with public interests,' and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than if

pursued to a verdict by a jury." *Telectronics*, 137 F. Supp. 2d at 1008. "Given that the Court will have an opportunity to analyze the proposed Settlement Agreement at a final approval hearing, 'at this junction, [the Court] is not obligated to, nor could it reasonably, undertake a full and complete fairness review.'" *JLKX Corp. v. Bobcat Energy Resources, LLC*, 2019 WL 4573710, *7 (N.D. Ohio Sept. 20, 2019) (Pearson, B.) (*citing In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio, 2001) (O'Malley, J.)); *see In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-CV-9000, 2001 WL 1842315, at *3 (N.D. Ohio Oct. 20, 2001) (O'Malley, J.) ("approval of the proposed settlement agreement … is only the first step in an extensive and searching judicial process… the Court [should not "rubber-stamp" the agreement] but also must be mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the parties' motions are premised.").

Preliminary approval is appropriate where a "proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Telectronics*, 137 F. Supp. 2d at 1015-16; *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350 (finding the court must only "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties," and should not second guess the settlement terms). When a settlement is "the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350–51 (N.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983)). Further, this limited review should consider the uncertainties, risks, and costs associated with

continued litigation. *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982) (Lambros, J.).

In recently amending Rule 23, the Advisory Committee recognized that the various Circuits had independently generated their own lists of factors to consider in determining whether a settlement is fair, reasonable, and adequate.[6] Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment. Because the Sixth Circuit factors are similar, caselaw in this Circuit applying those factors remains instructive here. That said, following the instructions of the Advisory Committee, Plaintiff will "present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.* As detailed below, the Settlement merits preliminary approval.

The proposed Settlement here meets the applicable standards and should, accordingly, be preliminarily approved.

### A.   PLAINTIFFS AND INTERIM CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE PROPOSED SETTLEMENT CLASS (RULE 23(E)(2)(A))

Plaintiffs and Interim Class Counsel have prosecuted this action on behalf of the proposed Settlement Class with vigor and dedication for the past year, with the aim of securing substantial and expeditious relief for community members affected by the train derailment. *See* Fed. R. Civ. P. 23(e)(2)(A).[7] As discussed above, Interim Class Counsel have thoroughly investigated the factual and legal issues involved, conducted substantial discovery, engaged

---

[6]     In the Sixth Circuit, those factors are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631.

[7]     Similarly, under the Sixth Circuit factors, courts look to the amount of discovery engaged in by the parties. *See UAW*, 497 F.3d at 631.

in extensive motion practice before this Court, and worked with experts to establish liability and assess the Settlement Class's damages. *See supra* Background and Procedural History § II. In particular, Plaintiffs have obtained more than 1,345,000 documents, taken depositions of the key witnesses, and worked with experts to collect and analyze environmental data, among other things. *Id.*

Plaintiffs have also been actively engaged in the case—each sitting for depositions, responding to discovery requests, and regularly communicating with their counsel up to and including evaluating and approving the proposed Settlement.

## B.    THE PROPOSED SETTLEMENT IS THE PRODUCT OF SERIOUS, INFORMED, NON-COLLUSIVE NEGOTIATIONS (RULE 23(E)(2)(B))

Rule 23(e)(2) next asks whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). To ensure negotiations were conducted at arm's length, courts look to the "conduct of the negotiations," recognizing that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment.[8]

Plaintiffs believe the claims asserted against Norfolk Southern in this case have merit, and that Plaintiffs would ultimately be successful in certifying a class and prevailing on the merits at trial. Nonetheless, Plaintiffs and Class Counsel recognize and acknowledge the risks, expense, and delay associated with continued litigation against Defendants, including at the class certification stage. Specifically, Norfolk Southern disputes that Plaintiffs are entitled to

---

[8]    Sixth Circuit factors likewise include the risk of fraud or collusion. *See UAW*, 497 F.3d at 631.

recovery based on their claims. Norfolk Southern maintains that it has strong, meritorious defenses to class certification and claims Plaintiffs alleged.

Plaintiffs, Norfolk Southern, and their counsel have also considered the uncertain outcome and risks of any litigation, especially in complex actions such as this, as well as the difficulties inherent in such litigation. *See* Settlement Agreement §§ 1J; 1K. Plaintiffs appreciate that Norfolk Southern is likely to fully exercise its appellate rights against any certified class, leading to substantial delays in the desperately-needed recovery in the East Palestine and surrounding community.

The Settlement Agreement between Norfolk Southern and Plaintiffs will provide relief now, as opposed to years, or even decades, down the road. Recognizing that further litigation would be risky, burdensome, and expensive, Plaintiffs and Norfolk Southern agree that it is desirable and beneficial that the case is settled. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("in performing this balancing task [of weighing factors in settlement fairness], the trial court is entitled to rely upon the judgment of experienced counsel for the parties."); *Sellards v. Midland Credit Mgmt., Inc.*, No. 1:20-CV-02676, 2023 WL 3869023, at *9 (N.D. Ohio May 2, 2023), report and recommendation adopted, No. 1:20-CV-02676, 2023 WL 3641447 (N.D. Ohio May 25, 2023) (Fleming, C) ("counsel for both parties seek approval of the settlement agreement, and their opinions are entitled to deference").

Thus, Plaintiffs and Norfolk Southern engaged in extensive settlement negotiations in good faith and, after months of negotiation at arm's length, were able to reach a resolution. That coming to an agreement took as long as it did, with multiple formal mediations, is indicative of the serious, informed, and non-collusive nature of the negotiations. As Plaintiffs continued to build the facts of their case, including through a comprehensive environmental

sampling program, they recognized the value of this case and steadfastly impressed the same upon Norfolk Southern and its experienced counsel. *See Reynolds v. Beneficial Nat. Bank*, 260 F.Supp.2d 680, 687–88 (N.D.Ill.2003) (declining to approve settlement on remand and disqualifying class counsel because evidence established that they attempted to settle case without first undertaking sufficient discovery to estimate class damages); *cf. Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587–88 (N.D. Ill. 2011) ("[T]he question that this Court must answer is not how much or how little discovery was completed by the parties before they agreed to the settlement, but rather whether the discovery that was completed was sufficient for "effective representation."). Plaintiffs' extensive discovery also allowed them to appreciate potential weaknesses, including potential modifications to the class definition necessary to succeed on class certification.

Both parties' interests were represented by experienced attorneys who are well-versed in these types of negotiations. On Plaintiffs' side, the final mediation was well-informed by not only Interim Class and Co-Lead Counsel, but representatives of the Discovery, Science, and Damages Committees were consulted to ensure that all necessary factors were considered when narrowing the terms of any proposed settlement. Further supporting approval, the parties were assisted by a renowned mediator, which "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).

Indeed, numerous courts have specifically noted Judge Phillips' involvement as a factor weighing in favor of settlement approval. *See Employees Retirement System of the City of St. Louis, et al. v. Jones*, No. 2:20-cv-4813 (S.D. Ohio May 9, 2022) (approving, preliminarily, the proposed settlement and noting it was facilitated by "reputable independent

mediator" Judge Phillips), copy attached as Exhibit B; *Voulgaris v. Array Biopharma Inc.*, No. 17-CV-02789-KLM, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021), aff'd, 60 F.4th 1259 (10th Cir. 2023) ("Judge Phillips' involvement in the mediation process, the length of the mediation (eleven hours), and the extensive briefing and discovery that occurred in connection with the mediation, demonstrate fair, honest, and arm's length negotiations in connection with the Settlement."); *In Re Crocs Inc. Sec. Litig.*, 306 F.R.D. 672, 690 (D. Colo. 2014) (approving settlement and noting that the parties "engaged in extensive negotiations and mediation sessions" in front of "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases."); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 09-cv-00419-MMD-WGC, 2012 WL 5199742, at *2 (D. Nev. Oct. 19, 2012) (finding settlement was fair when it "was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips."); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement when parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases.").

The negotiations were hard-fought, at arm's length, by experienced attorneys and with the assistance of a nationally-recognized mediator; thus, the negotiations were serious, informed, non-collusive, and the resulting Settlement Agreement should be preliminarily approved.

### C. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

The Court must "ensure the relief provided for the class is adequate," taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed

distribution plan, including the claims process; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement made in connection with the proposal, as required under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).[9] These factors support preliminary approval.

### 1. The Settlement Relief Outweighs the Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i))

#### (a) Settlement Components, Including Tiers, are Fair and Supported by Discovery and Depositions

As the terms of this Settlement Agreement were intensely negotiated by experienced counsel, the Court may presume the terms are fair. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350–51 (N.D. Ohio 2001).

Particularly, the distribution and payment components of this Settlement contemplate two forms of relief—household distribution payments and net business loss payments—and a voluntary personal injury payment, which will fairly compensate those affected by the Incident.[10]

Interim Class and Co-Lead Counsel strongly believe that the Settlement Class and payments provided to them are appropriate and do not improperly grant preferential treatment to segments of the Class, given the vast fact discovery and expert development that now have been undertaken.

---

[9]     Similarly, the Sixth Circuit considers the complexity, expense and likely duration of the litigation; the likelihood of success on the merits; the opinions of class counsel and class representatives; the reaction of absent class members; and the public interest. *UAW*, 497 F.3d at 631.

[10]    Class Counsel propose that Class representatives receive an additional award of $15,000 pursuant to the Settlement Agreement. The Sixth Circuit allows incentive awards to class representatives in consideration of several factors, including "their actions to protect the rights of the class members and…the amount of time and effort spent pursuing the litigation." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 677 (S.D. Ohio 2007). The "mere fact" that a "settlement agreement provides for payment of incentive awards to class representatives does not render the proposed settlement agreement unfair, unreasonable, or inadequate." *Id.*

Depositions and discovery confirm the "impact zone" that is reflected in the Settlement Agreement. Upon review and analysis of the vast record, including extensive environmental data, any impact of the Incident extends no further than a 20-mile radius from the derailment site, and any claims for relief arising out of, or relating to, the Incident beyond a 20-mile radius are without merit. As reflected in this Settlement, using a geographic radius of 20 miles for all claims (excepting only personal injury claims, limited to a 10-mile radius) fairly and adequately compensates those in East Palestine and the surrounding affected communities for the Incident. Moreover, the allocation formula, which, as described in the Settlement Agreement and below, is based on a weighted point system that heavily considers proximity to the Incident and expert opinions as to the ensuing spread of toxins, both prioritizes those households most impacted and protects the outlying households from the risk of an adverse ruling or verdict.

Eligible Settlement Class Members' ability to voluntarily elect to participate in and receive a personal injury payment if present within a 10-mile radius of the Incident is designed to compensate those individuals who have suffered, or may suffer, a physical injury arising from the Incident. Because, in Class Counsel's view, class actions for personal injury claims are not legally viable, this Settlement seeks to nevertheless address all compensable personal injuries on a broad scale. Those Settlement Class Members who participate will be compensated for past, present, and future personal injuries from the Incident. The Settlement avoids risks of a complete non-recovery for any person within the 10-mile radius and provides compensation for personal injuries now and in the years to come. Class and Co-Lead Counsel—including counsel who represent individuals with such injuries—are confident that the 10-mile radius participation definition is more than expansive enough to ensure that all of those Settlement Class Members with personal injury claims are eligible for additional relief in the form of personal injury payments. Simply stated, the

17

likelihood of success on the merits for personal injury claims outside the 10-mile radius is extremely remote given the science, fact record, and expert analysis.

Accordingly, the terms of the Settlement are fair and should be preliminarily approved on this basis.

> **2.      The Settlement Amount is Significant and Provides a Beneficial Recovery for Settlement Classes That is Exceedingly Reasonable and Adequate**

Pursuant to the Settlement Agreement, Co-Lead and Interim Class Counsel will use a Settlement Administrator, and experts, to determine allocation of the $600,000,000 in settlement funds. This will include in-depth consideration of the potential distribution within each component of the payments. The $600,000,000 Settlement will provide a significant and broad recovery for those households, businesses, and persons with personal injuries from the Incident. Based on the discovery, depositions, and anticipated expert reports in this case, Plaintiffs' counsel is confident that this is a fair, reasonable, and adequate recovery for Plaintiffs, proposed Settlement Class Members, and persons choosing to receive voluntary personal injury compensation.

The proposed Settlement is more than reasonable and adequate because it allows class members to recover damages that would otherwise be beyond their reach if proceeding individually, given the expenses and costs in complex litigation such as this. The payments available to households and businesses pursuant to the Settlement Agreement are reasonable, and they compensate households and businesses for the claims set forth in the Complaint. (*See* ECF No. 138). The structure of this Settlement also allows a recovery that would not be possible through class action litigation—personal injury compensation. Rather than Settlement Class Members having to incur the expense and delay of pursuing a separate personal injury action, this Settlement allows a streamlined mechanism for qualifying persons

to recover for their personal injuries without the burdens, trouble, and uncertainty imposed by separate litigation.

This Settlement is also highly advantageous as compared to trial. Were this case to proceed to trial, it would be a lengthy proceeding involving complex scientific proof on several issues, which would be expensive for both sides. *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (weighing in favor of settlement the necessity of complex scientific proof, and cost of the experts necessary to present it, which would have been very expensive for both sides). A likely appeal, which Plaintiffs face in this case at the class certification and trial stages, also weighs in favor of settlement. *Id.* Further, the Settlement Agreement payments will avoid the uncertainty, risk, delay, and trouble of further litigation. *See Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 WL 3557020, at *12 (N.D. Ohio Aug. 12, 2011) (Katz, D.) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."). The proposed Settlement is positioned to put financial relief in the hands of the class members prior to the two-year anniversary of the Incident.

The $600,000,000 million Settlement is beneficial for the East Palestine community and surrounding area, and will provide households, families, and local businesses much-needed, immediate relief for the losses, suffering, and inconvenience they have endured since February 3, 2023. It falls well within the range of possible approval and provides substantial

recovery for the Settlement Class and those Settlement Class Members seeking compensation for past, present, or future personal injuries. The proposed Settlement has "no obvious deficiencies, does not improperly grant preferential treatment" to any segment of the proposed Settlement Classes, is fair, adequate, reasonable, "falls within the range of possible approval," and should be preliminarily approved. *See Telectronics*, 137 F. Supp. 2d at 1015-16.

> ### 3.    The Settlement Will Distribute Relief Effectively and Equitably to the Class (Rules 23(e)(2)(C)(ii), 23(e)(2)(D))

In considering settlement approval, the Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). If the Settlement is approved by the Court, in addition to what is already set forth in the Settlement Agreement and described further below, Plaintiffs will submit a plan of allocation to the Court concurrently with their motion for final approval and will also make this allocation plan available on the Settlement Website. As a part of the notice plan, Settlement Class Members will be instructed to review the plan of distribution on the website and be afforded the opportunity to do so well before they must decide whether to opt out or object to the Settlement.

For the Settlement Class, the Settlement Administrator will determine the amount of each Class Member payment consistent with the plan of distribution. To prevent double recovery, awards will be offset by payments Class Members have already received through the Norfolk Southern claims process.

Approval of the plan of distribution is meant to be separate and distinct from the Court's approval of the Settlement Agreement. *See, e.g.*, *Gutierrez v. Amplify Energy Corp.*, No. 8:21-CV-01628-DOC, Order, ECF No. 599, (C.D Cal. Dec. 7, 2022) (granting preliminary approval in a mass environmental casualty (oil spill) case and setting a later deadline for plaintiffs to submit a

detailed allocation plan). As a result, even if a Settlement Class Member objects to the plan of distribution, the Settlement could nonetheless become final and effective. This helps ensure that the Settlement becomes final and effective as soon as possible.

### (a)  Summary of Distribution Plan

The contemplated distribution plan will effectively distribute relief to the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Courts regularly approve settlement distributions that vary based on the relative damages of each Class Member. *See, e.g.*, *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (approving settlement where class claimants received "allocations that correlate to the number of hours they were allegedly undercompensated."); *Davis v. Omnicare, Inc.,* No. 5:18-CV-142-REW, 2021 WL 1214501, at *12 (E.D. Ky. Mar. 30, 2021) (approving class settlement and noting "[e]ach specific calculation will hinge on variables particular to a participant as included in a set formula for the sub-classes of driver and dispatcher—the same formula applies per sub-class, and the claimant's characteristics will explain the differing levels of precise compensation.")

Here, all Settlement Class Members who submit an approved Claim Form shall receive a Direct Payment per household. The *pro rata* amount of the Direct Payment shall be determined by a point grading system based on criteria that will include the following: distance to Derailment Site, direction from Derailment Site, members of household, acreage, number of properties the claimant owns/leases in the Class Zone, time displaced, property sale, and real or personal property damage. The establishment of these objective criteria will ensure that "similarly situated claimants receive the same monetary award," thereby assuring "'horizontal equity' among claimants." *See In re Flint Water Cases*, 499 F. Supp. 3d 399, 412 (E.D. Mich. 2021) (finding, at the preliminary approval stage, that allocation among categories of claims was fair because the distribution process required that similarly situated claimants receive the same monetary award).

Any Direct Payment will be less any prior payments, settlements, loans, or other financial payment made by Norfolk Southern arising from or relating to the Incident, including but not limited to payments from the Norfolk Southern Family Assistance Center, and payments from the Norfolk Southern Value Assurance Program.

Settlement Class Member Businesses may also submit a Claim Form seeking a Business Loss Payment. Business Loss Payments require proof of an actual net business financial loss between February 3, 2023, and the execution date of this Settlement Agreement, arising from or relating to the Incident. Settlement Class Members may also submit claims for lost wages. Any Business Loss Payment will be less any prior payments, settlements, loans, or other financial payments made by Norfolk Southern arising from or relating to the Incident, including but not limited to payments from the Norfolk Southern Family Assistance Center, and payments from the Norfolk Southern Value Assurance Program. The Business Loss Payment claim form and process shall not inquire into a Settlement Class Member's tax treatment of any business loss claimed.

After the claims deadline, the Settlement Administrator will calculate the relative shares of damages for these Class Members and distribute awards pro rata.

(b)     **The Plans of Distribution Are Fair, Reasonable, and Adequate**

Fundamentally, "[a]ssessment of a plan of allocation of settlement proceeds in a class action under [Rule] 23 is governed by the same standards of review applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate." *In re Illumina,* 2021 WL 1017295, at *4 (S.D. Cal. Mar. 17, 2021) (citation omitted). The plan "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Jenson v. First Tr. Corp.*, 2008 WL 11338161, *9 (C.D. Cal. June 9, 2008).

The proposed plan of distribution—described in general terms here, with specific details to be provided to the Court with the plan itself—readily satisfy Rule 23(e)(2)(c)(ii)'s requirement

that settlement funds be distributed "in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (quoting *Newberg*, *supra*, § 13:53). In addition, no Settlement funds will revert to Norfolk Southern; after payment of any attorneys' fees, expenses, service awards, and notice administration, all money will be distributed to Class Members. Settlement Agreement at § XIII. This is a "[s]ignificant[]" fact that further demonstrates the Settlement's fairness and effectiveness. *Hilsley*, 2020 WL 520616, at *7.

### (c) The Plans of Distribution Are Equitable

The proposed distributions will also "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Relevant considerations include "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note. The release in the Settlement affects all Class Members equally. Settlement § XVI.

As noted above, the plan of distribution apportions relief among each proposed Class equitably, considering the relative harm to each Class Member where feasible. Allocation of funds among class members is also equitable, reflecting both relative amounts of damages as estimated by expert analysis to date, and likelihood of recovery given relative strength of claims. *See Robles v. Comtrak Logistics, Inc.*, No. 15-CV-2228, 2022 WL 17672639, at *10 (W.D. Tenn. Dec. 14, 2022) (approving class settlement that allocated amounts to class members based on the number of weeks the employee was misclassified; "[t]his distribution scheme aligns payments with the claim size of each individual driver.").

### 4. Settlement Class Counsel Will Seek Reasonable Attorneys' Fees and Expenses (Rule 23(e)(2)(C)(iii))

Assuming the Court preliminarily approves the proposed Settlement, Plaintiffs' requested Fee and Expense Award will be fully addressed in Class Counsel's Motion for Fees and Expenses. At that time, Plaintiffs will submit additional detailed information in support of their requested award and the Court will have the opportunity to evaluate the reasonableness of the request in full. *Waters v. Pizza to You, L.L.C.*, No. 3:19-CV-372, 2022 WL 404614, at *4 (S.D. Ohio Feb. 9, 2022) (Rose, T.) ("At final approval, courts will have a full record of class counsel's expenses and will consider Class Members' objections (if any) to the preliminarily-approved fee award.").

For purposes of preliminary approval, Class Counsel have committed to seek no more than 27% of the total monetary recovery achieved by the Settlement Agreement, which is a percentage the Sixth Circuit has recognized as acceptable, and costs and expenses up to 3% of the fund. *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019) ("It is not abnormal for negotiated attorneys' fee awards to comprise 20% to 30% of the total award."); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1042, *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001)("in common fund cases, the fee percentages range from 10 to 30 percent (10%–30%) of the common fund created"); *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (approving 33% attorneys' fees and expense award in common fund settlement); *Hainey v. Parrott*, 2007 WL 3308027, at *3 (S.D. Ohio Nov. 6. 2007) (approving attorneys' fees award of 30% in common fund case); *deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases awarding 33% in the Second Circuit); *Brown v. Progressions Behav. Health Servs., Inc.*, No. CV 16-6054, 2017 WL 2986300, at *6 (E.D. Pa. July 13, 2017)

(approving 33% award of attorney's fees and explaining "'the Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund' in common fund cases").

### 5.    No Other Agreements Exist (Rule 23(e)(2)(C)(iv))

Finally, Plaintiffs must identify any agreements "made in connection with the proposal" besides the Settlement itself. Fed. R. Civ. P. 23(e)(2)(C)(iv), 23(e)(3). Plaintiffs and Norfolk Southern have entered into a confidential supplemental agreement, referenced in the Settlement Agreement (§ XI.C), to provide Norfolk Southern with the option to terminate the proposed Settlement if Settlement Class Members' participation rates trigger certain numerical thresholds. It is typical for agreements of this nature to remain confidential because "[k]knowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out." Fed. Judicial Ctr., Manual for Complex Litigation (4th ed.) § 21.631.

## V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g.*, Manual for Compl. Litig., § 21.632 (4th ed. 2014); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Class certification is warranted when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. As demonstrated below, the proposed Settlement Class readily satisfies these requirements.[11]

### A.    RULE 23(A) IS SATISFIED

**Numerosity**. Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class is sufficiently

---

[11]      As set forth in the Settlement Agreement, Norfolk Southern stipulates for settlement purposes only to the certification of the Settlement Class but does not waive, and instead expressly reserves, its right to challenge the propriety of conditional or class certification for any other purpose. *See* Settlement Agreement § IV.C.

numerous, as it consists of thousands of residents and businesses within a 20-mile radius of the derailment sight, making joinder impracticable. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (recognizing that "while there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement"). Accordingly, Rule 23's numerosity requirement is satisfied.

**Commonality**. Rule 23(a)(2) requires that there be one or more questions common to the class. This said, "there need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014); *see  Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("Even a single [common] question will do.") (quotation marks omitted). This case raises multiple common questions, including whether Norfolk Southern acted negligently in operating and maintaining its railcar, and whether it utilized adequate safety measures and systems. The answer to these questions are the same no matter who in the Settlement Class asks them, and the answer to these common questions are central to this litigation. *See Rikos v. P&G*, 799 F.3d 497, 505 (6th Cir. 2015) (commonality is satisfied where "a common question [] will yield a common answer for the class"). Accordingly, Rule 23's commonality requirement is satisfied here.

**Typicality**.  The typicality test under Rule 23(a)(3), is "not onerous." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008). A plaintiff's claims are "typical" if they are reasonably coextensive with those of absent class members. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156–57 (1982). Plaintiffs' claims and those of the Settlement Class each represents are based on the same course of conduct and the same legal theories. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (typicality met where a plaintiff's claim (arises from the same event or practice or course of conduct that gives rise to the claims of other class members,

and if his or her claims are based on the same legal theory") (citation omitted). Moreover, the Plaintiffs representing the Settlement Class suffered the same types of alleged harm as the Class Members they seek to represent. Therefore, typicality is satisfied.

**Adequacy of Representation.** As the proposed Class Representatives, Plaintiffs will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts ask two questions to determine whether proposed class representatives will adequately represent the class: (1) do the named plaintiffs share common interests with unnamed class members? and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). Interim Class Counsel have extensive experience litigating and resolving class actions, and are well qualified to represent the Settlement Class. *See supra* § II; *infra* § VII. Interim Class Counsel have vigorously litigated this action on behalf of the Settlement Class, including engaging in substantial motions practice and extensive investigation and discovery, developing experts, participating in mediation, and negotiating the proposed Settlement. *See supra* § II; *infra* § VII.

Likewise, Plaintiffs have demonstrated their commitment to the Settlement Class, including by sitting for depositions, providing pertinent information about their losses, searching for and providing documents and information in response to discovery requests, regularly communicating with their counsel about the case, and reviewing and approving the proposed Settlement.

Finally, Plaintiffs' and Interim Co-Lead Class Counsel's interests are aligned with and not antagonistic to the interests of the Settlement Class, with whom they share an interest in obtaining relief from Norfolk Southern for alleged harms caused by the derailment.

## B.  THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

be satisfied. Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)

**Predominance.** "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Courts within the Sixth Circuit favor class treatment of claims stemming from a "common course of conduct," like those alleged from the train derailment in this case. *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 452 (S.D. Ohio 2009); *see also Daffin*, 458 F.3d at 554 (finding predominance where class members alleged the same product defect). Common questions predominate here. The Settlement Class Members' claims all arise under the same laws and the same alleged conduct. The questions that predominate include whether Norfolk Southern acted negligently in maintaining and operating its train, and whether Norfolk Southern utilized adequate and appropriate safety measures and systems before and after the derailment. Moreover, under the proposed Settlement, there will not need to be a class trial, meaning there are no potential concerns about any individual issues, if any, creating trial inefficiencies. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.")

**Superiority.** Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at 615. Class treatment is superior to other methods for the resolution of

this case, particularly given the robust relief offered to Settlement Class Members under the Settlement. Moreover, as always, Settlement Class Members remain free to exclude themselves if they wish to do so.

## VI.  THE PROPOSED NOTICE PROGRAM COMPLIES WITH RULE 23 AND DUE PROCESS

Pursuant to the Settlement Agreement, Interim Class Counsel will work with settlement administrator Kroll Settlement Administration, LLC to disseminate adequate and reasonable notice to Settlement Class Members.

Under Fed. R. Civ. P. 23(e)(1)(B) a District Court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[I]ndividual notice must be provided to the Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).

Following preliminary approval of this Settlement, the parties will provide notice of the proposed Settlement to those who will be bound by it, which will encompass the Settlement Class and those Settlement Class Members qualified to receive payment from the personal injury fund, should they choose to participate in the personal injury payment in exchange for a personal injury release. (ECF No. 138). *See Komoroski v. Utility Service Partners Private Label, Inc.*, 2017 WL 3261030, *1 (W.D. Mo. 2017) ("The preliminary approval order will also authorize the parties to provide notice of the proposed settlement to

the class and set forth a schedule for objections, opt-outs, a final fairness hearing, and other deadlines.").

The proposed notice plan, attached as Exhibit C, created by Interim and Co-Lead Counsel in conjunction with Kroll Settlement Administration, LLC is reasonably calculated to apprise all interested parties of the pendency of the action. Kroll Settlement Administration, LLC will provide notice to interested parties via email and printed mail after developing a database of contact information, through reasonable effort, which will include all household and businesses addressed within twenty miles of the Incident. This will include an initial email and/or letter sent by First-Class U.S. mail informing interested parties of the Settlement and claims process via the proposed form Notices, including the Long-Form Notice and Short-Form Publication Notice (collectively "notice" or "notices") attached as Exhibits D and E, respectively. The proposed notices sufficiently describe, in clear, concise and easily understood language, the nature of the action and claims, and that the terms of the Settlement Agreement, if approved, will be binding on all Settlement Class Members. Kroll Settlement Administration, LLC will assist Class Counsel in creating a Settlement Website, which will disseminate notice of the Settlement, including the Long-From Notice, allow requests for exclusion, facilitate claim submissions, provide access to relevant case documents, and announce upcoming deadlines.

Kroll Settlement Administration, LLC will also assist in disseminating the Short-Form Publication Notice through local and targeted media. The media and advertisement component of the notice plan will target Settlement Class Members in the region for four to six weeks. It includes (1) posted notices on the Settlement Website, (2) repeated advertisements in ten different local newspapers, (3) online advertisements targeting adults

up to 20 miles from the Incident site on websites including YouTube, Google, Facebook, Instagram, and local newspaper websites, (4) 30-second commercials on Youngstown, Ohio and Pittsburgh, Pennsylvania television stations, and (5) three press releases through Cision PR Newswire into Ohio, Pennsylvania, and West Virginia news lines announcing the settlement, discussing the claim filing process, and, finally, announcing the claim filing deadline is approaching. Norfolk Southern has already established resources for those impacted by the Incident on its own website; Norfolk Southern will post the notice on their website as well.

Class Counsel and Kroll Settlement Administration, LLC will also spearhead the establishment and staffing of a local East Palestine Settlement Center in East Palestine at 191 East Rebecca Street, East Palestine, Ohio 44413, which is well known to the community as the former Family Assistance Center established by Norfolk Southern after the derailment to assist the people of East Palestine and surrounding communities.[12] This local, brick-and-mortar resource will be staffed five days a week for sixteen weeks, with the additional part-time presence of management and senior director-level staff. Class Counsel will also be present and available at the East Palestine Settlement Center on a weekly, part-time basis. The Long-Form Notice and Short-Form Publication Notice will be posted at the East Palestine Settlement Center. Those staffing the East Palestine Settlement Center will be prepared to assist Settlement Class Members in submitting their claim forms, in person, at the East Palestine Settlement Center. This undertaking will ensure that community members, and Settlement Class Members, have a straight-forward and accessible way to ask questions,

---

[12]     Norfolk Southern will be relocating its Family Assistance Center to 248 N Market St., East Palestine, Ohio, 44413.

receive information about the case, and submit claim forms. Both notices will indicate the existence of the East Palestine Settlement Center, the address for it, and that claims can be submitted in person there.

All facets of this proposed notice plan will provide the best notice practicable under the circumstances to Settlement Class Members. The notice plan comports with due process and the Federal Rules of Civil Procedure.

At this stage of the settlement proceedings, Class Counsel request that the Court approve both notices, attached as Exhibits D and E, for dissemination by mail, email, advertisements, and media as set forth in the notice plan.

## VII.  INTERIM CLASS COUNSEL SHOULD BE CONVERTED TO LEAD CLASS COUNSEL

Appointing Interim Class Counsel as Lead Class Counsel will benefit the Settlement Classes as Interim Class Counsel have done an extensive amount of work in investigating the claims, they have significant experience handling class actions, including environmental toxic torts, they are familiar with the applicable law, and they have more-than-adequate resources to represent the class.

Under Federal Rule of Civil Procedure 23(g)(1), when the Court certifies a class, including for settlement, it "must appoint class counsel." Fed. R. Civ. P. 23(g)(1).

In order to determine whether an appointment should be made, Rule 23(g)(1) sets out three factors that the court must consider. They are (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to

representing the class. The appointed class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4).

On April 5, 2023, this Court approved of and appointed current Interim Class Counsel (ECF No. 28). When appointing Interim Class Counsel, this Court considered the above-listed factors in Rule 23(g)(1). (ECF No. 28 at 12-13). The Court noted that Seth A. Katz, M. Elizabeth Graham, and Jayne Conroy had "done significant work in identifying and investigating the potential claims in the [derailment]." (ECF No. 28 at 13). The Court found that their respective law firms have extensive experience in class actions, complex litigation, toxic torts, railroad litigation, regulatory, and environmental litigation, were dedicated to committing substantial economic and legal resources to represent the putative class, and would be able to commit the resources necessary to represent the class. (ECF No. 28 at 13). As such, the Court concluded that Seth A. Katz, M. Elizabeth Graham, and Jayne Conroy, and their firms, were competent to serve as Interim Class Counsel and met the standards set forth in Federal Rule of Civil Procedure Rule 23. (ECF No. 28 at 14).

Since being appointed as Interim Class Counsel, Seth A. Katz, M. Elizabeth Graham, and Jayne Conroy, along with their respective law firms, have continued their dedicated work in investigating the claims resulting from the Incident. As noted *supra*, they have conducted extensive, fast-paced discovery, thoroughly investigated the allegations against Defendants, and have now negotiated a remarkable recovery on behalf of the putative class members. Interim Class Counsel counsel's experience in handling class actions, complex litigation, and claims of this type have only improved since their appointment as Interim Class Counsel. Their knowledge of the applicable law in this matter is unmatched, as they have been immersed in the legal bases, strengths, and arguments of this case since its inception just over

a year ago. Interim Class Counsel have, efficiently, expended significant resources in representing the putative class; they will continue to do so in the role of Lead Counsel. Finally, Interim Class Counsel have aptly exemplified that they represent the interests of the class and, particularly in negotiating a hard-fought settlement, have demonstrated their commitment to continue doing so.

For these reasons, Plaintiffs and Interim Class Counsel respectfully request the appointment of Seth A. Katz, M. Elizabeth Graham, and Jayne Conroy, and their respective law firms, as Lead Class Counsel for the purposes of representing the settlement classes.

## VIII.  THE PARTIES' PROPOSED SCHEDULE OF EVENTS

Pursuant to Rule 23, the Settlement Agreement, and the terms of a Preliminary Approval Order, the Parties propose the following schedule of events:

| | |
|---|---|
| Notice to be Completed | **May 24, 2024** |
| Last day to file Objections or Opt-Out Requests | **June 24, 2024** |
| Last Day for the Plaintiffs to file Plan of Allocation | **September 6, 2024** |
| Last day for Plaintiffs to File motion for Final Approval of Settlement and Approval of Plans of Distribution, and for Lead Class Counsel to file Application for Fees and Expenses and for Service Awards | **September 6, 2024** |
| Last day to file replies in support of Final Approval, Plans of Distribution, Attorneys' Fees and Expenses, and Service Awards | **September 18, 2024** |
| Final Approval Hearing | **September 25, 2024** |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs request that this Honorable Court grant their Motion for Preliminary Approval of the Settlement Agreement, Appointment of Lead Class Counsel, and Approval of Notice and (1) order preliminary approval of the Settlement, (2) approve the proposed Long-Form and Short-Form Publication notices for dissemination to the Settlement Class Members pursuant to the notice plan, (3) appoint Interim Class Counsel as Lead Class Counsel to the Settlement Class for purposes of this Settlement, and (4) schedule a Final Approval Hearing consistent with the parties' proposed schedule of events. A proposed Order granting Preliminary Approval is attached hereto.

Dated: April 26, 2024                                    Respectfully submitted,

*/s/ M. Elizabeth Graham*
M. Elizabeth Graham (pro hac vice)
Adam J. Gomez (pro hac vice)
Caley DeGroote (pro hac vice)
**GRANT & EISENHOFER P.A.**
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
303-622-7100 (fax)
egraham@gelaw.com
agomez@gelaw.com
cdegroote@gelaw.com

Seth A. Katz (pro hac vice)
**BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
303-708-0527 (fax)
skatz@burgsimpson.com

Jayne Conroy (pro hac vice)
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016

212-784-6400
212-213-5949 (fax)
jconroy@simmonsfirm.com

Michael Morgan (pro hac vice)
**MORGAN & MORGAN**
20 North Orange Ave., Suite 1600
Orlando, FL 32801
407-420-1414
407-245-3389 (fax)
mmorgan@forthepeople.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2024 a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ M. Elizabeth Graham*
M. Elizabeth Graham
Grant & Eisenhofer P.A.
