**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** | Case No.  4:23-CV-00242-BYP<br><br>JUDGE BENITA Y. PEARSON |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY PLAINTIFFS NORFOLK SOUTHERN RAILWAY CORPORATION AND NORFOLK SOUTHERN COMPANY'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DR. CHASON COELHO**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

LEGAL STANDARD........................................................................................................... 3

ARGUMENT....................................................................................................................... 4

I.      Dr. Coelho Is Unqualified To Offer Affirmative Opinions On The Emergency Response, The Vent and Burn, And Railroad Operations ................... 4

      A.      Dr. Coelho Is Unqualified To Opine On The Emergency Response And The Vent And Burn........................................................................... 5

      B.      Dr. Coelho Is Unqualified To Opine On Railroad Operations ................... 6

      C.      Dr. Coelho Is Unqualified To Offer Rebuttal Opinions Related To OxyVinyls's SDS Or The Cause Of The Derailment ............................... 7

            1.      Dr. Coelho is unqualified to opine on Dr. Coates's criticism of OxyVinyls's SDS ................................................................. 8

            2.      Dr. Coelho is unqualified to criticize Mr. Wolf's opinion concerning the cause of the derailment........................................... 9

II.     Dr. Coelho's Rebuttal To Mr. McClellan's Opinions Is Not The Proper Subject Of Expert Testimony................................................................. 11

III.    Dr. Coelho's Opinions Are Not Reliable Because He Is A Quintessential Expert For Hire ............................................................................................ 12

CONCLUSION.................................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Botnick v. Zimmer, Inc.*,
    484 F. Supp. 2d 715 (N.D. Ohio 2007)................................................................................4, 7

*Burgett v. Troy-Bilt LLC*,
    579 F. App'x 372 (6th Cir. 2014) ..............................................................................................4

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993).....................................................................................................................4

*Hayes v. MTD Products, Inc.*,
    518 F. Supp. 2d 898 (W.D. Ky. 2007)....................................................................................13

*In re Ford Motor Co. Spark Plug & 3-Valve Engine Products Liability Litigation*,
    98 F. Supp. 3d 919 (N.D. Ohio 2014)..................................................................................4, 12

*In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Products
    Liability Litigation*, 93 F.4th 339 (6th Cir. 2024) ..................................................................14

*In re Scrap Metal Antitrust Litigation*,
    527 F.3d 517 (6th Cir. 2008) ....................................................................................................4

*Jaeger v. BNSF Railway Co.*,
    2024 WL 2209550 (W.D. Wash. May 16, 2024).....................................................................9

*Johnson v. Manitowoc Boom Trucks, Inc.*,
    484 F.3d 426 (6th Cir. 2007) ............................................................................................12, 13

*Porter v. Cuyahoga County*,
    2022 WL 875252 (N.D. Ohio Mar. 24, 2022) .........................................................................4

*Smelser v. Norfolk Southern Railway Co.*,
    105 F.3d 299 (6th Cir. 1997) ..................................................................................................12

*Youngberg v. McKeough*,
    534 F. App'x 471 (6th Cir. 2013) ...........................................................................................11

**Other Authorities**

E$^x$ponent, *Disputes: When You Need to Know*, https://www.exponent.com/
    solutions/disputes (last visited Oct. 8, 2024) .....................................................................9, 12

**INTRODUCTION**

GATX's expert Dr. Chason Coelho is a quintessential expert for hire who—under the guise of "human performance"—purports to offer opinions on distinctly different, specialized topics for which he has no expertise at all. Dr. Coelho's affirmative opinions cover topics as diverse as the emergency response, the decision to vent and burn the derailed railcars carrying vinyl chloride monomer ("VCM"), and aspects of Norfolk Southern's railroad operations, including its Wayside Help Desk and railcar inspections. But he has no relevant experience or training in any of these areas. A psychologist by trade, Dr. Coelho also offers opinions designed to rebut a tenured chemistry professor at Cornell, who opines on the sufficiency of OxyVinyls's Safety Data Sheet ("SDS"); a railroad operations expert with over 53 years of experience in the rail industry, who opines on the cause of the derailment; and a mechanical engineer, who opines on the functionality of the pressure relief devices ("PRDs") on certain derailed railcars. Despite cloaking all of his rebuttal opinions in his "human factors" expertise, his rebuttal opinions on OxyVinyls's SDS and railroad operations venture into the substance of these topics, which is far outside of his expertise, and his rebuttal opinion related to PRDs is not the proper subject of expert testimony.

Dr. Coelho's opinions are also unreliable. With no prior relevant experience that relates to the subject matter of this case, Dr. Coelho is attempting to offer opinions that were prepared solely for the purposes of this litigation and that lack any objective proof of their reliability. The Court should strike and exclude his opinions for these reasons.

**BACKGROUND**

Before Train 32N derailed on February 3, 2023, in East Palestine, Ohio, the Terminal Railroad Association of St. Louis ("TRRA") preformed a predeparture inspection, as required, and did not identify any visible defects on the L1 bearing of GATX's railcar GPLX 75465. That

bearing—the evidence unequivocally shows—was later determined to have caused the derailment.  *See* Ex. 1 (Wolf Opening Rep.) at 1.[1]  In the hour before the derailment, Train 32N generated an alert as it crossed over a hot bearing detector on the tracks outside Salem, Ohio.  Ex. 2 (Zarembski Rep.) at 25.  The alert was sent to Norfolk Southern's Wayside Help Desk; based on the circumstances in which it was generated, it did not require any intervention from the Wayside Help Desk.  *Id.*

Immediately after Train 32N derailed, Norfolk Southern personnel, contractors, and first responders took steps to mitigate the immediate risks posed by the derailment.  Ex. 3 (Lunsford Rebuttal Rep.) at 16; Ex. 4 (Coelho Rep.) at 25-26.  In assessing the risks posed by the vinyl chloride monomer ("VCM") in certain of the derailed railcars, Norfolk Southern and its contractors considered and relied on statements contained in OxyVinyls's VCM SDS, which warned that VCM could polymerize if exposed to heat.  Ex. 5 (Lunsford Rep.) at 45-48.  After carefully weighing the options, Unified Command, with the recommendation of Norfolk Southern and without dissent, decided to conduct a vent and burn to prevent potentially catastrophic harms to people and property.  *Id.* at 49-51, 57.

In an attempt to cast doubt on the actions of Norfolk Southern and its contractors in connection with this series of events, GATX offers Dr. Coelho as a "human factors" expert.  Dr. Coelho seeks to offer five opinions.  Ex. 6 (Coelho Dep.) at 27:17-28:2, 40:13-19, 41:5-11.

Dr. Coelho's first opinion is that three Norfolk Southern experts, Dr. Geoffrey Coates, Gary Wolf, and Peter McClellan, offer flawed opinions because they "ignore indications that

---

[1]     Unless otherwise noted, 'Ex. ___' citations reference exhibits to the Declaration of Alan Schoenfeld filed herewith, emphasis is added, and objections are omitted for deposition citations.

decision makers in the subject incident response were problematically influenced by decision-making biases and … they suffer from conjecture."  Ex. 4 (Coelho Rep.) at 6.

Dr. Coelho's second opinion relates to the emergency response.  He opines that certain materials relied on by emergency responders at the derailment site provided "reasonable and sufficient" "[i]nformation about safety and emergency response," including "metrics indicative of polymerization and the use of water to cool down the tanks" and that "[e]mergency responders could have, and should have, complied with instructions to engage in water cooling."  Ex. 4 (Coelho Rep.) at 6.

Dr. Coelho's third opinion addresses the vent and burn in particular.  According to Dr. Coelho, Norfolk Southern's and its contractors' decision-making processes were flawed insofar as "alternative mechanisms and mitigation responses were not adequately considered and … information gathering and decision-making processes were consistent with individuals experiencing problematic influence of biases."  Ex. 4 (Coelho Rep.) at 6.

Dr. Coelho's fourth and fifth opinions both relate to Norfolk Southern's railroad operations.  His fourth opinion is that Norfolk Southern's wayside help desk protocols "increased the likelihood of its single wayside analyst failing to identify the subject wayside hot bearing detector alert and subsequently eliminating the opportunity to communicate the alert to the train crew before the subject derailment."  Ex. 4 (Coelho Rep.) at 6.  His fifth opinion is that "[it] was both imprudent and inconsistent with good practices that Norfolk Southern failed to ensure [TRRA] (a) utilized a written job aid for the safety-critical predeparture inspection of the subject freight train and (b) appropriately documented the inspection."  *Id.* at 7.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence entrusts trial judges with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."

*Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The Sixth Circuit has translated Rule 702's standard into three requirements.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-529 (6th Cir. 2008); *see also In re Ford Motor Co. Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, 98 F. Supp. 3d 919, 922 (N.D. Ohio 2014).  First, a party's proposed expert "must be qualified by 'knowledge, skill, experience, training, or education.'"  *In re Scrap Metal*, 527 F.3d at 529.  Second, that expert's testimony must be relevant—a criterion met only when testimony can "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Id*.  Third, testimony must be reliable.  *Id*.  GATX and General American Marks Company, as the parties proffering Dr. Coelho's expert testimony, bear the burden of establishing by a preponderance of the evidence that his opinions satisfy these requirements.  *Porter v. Cuyahoga Cnty.*, 2022 WL 875252, at *2 (N.D. Ohio Mar. 24, 2022).

## ARGUMENT

### I. DR. COELHO IS UNQUALIFIED TO OFFER AFFIRMATIVE OPINIONS ON THE EMERGENCY RESPONSE, THE VENT AND BURN, AND RAILROAD OPERATIONS

"For a Court to recognize a witness as a qualifying expert, the subject of the testimony must lie within the purview of the witness's expertise."  *Botnick v. Zimmer, Inc.*, 484 F. Supp. 2d 715, 719 (N.D. Ohio 2007).  This means that GATX cannot rely on Dr. Coelho's purported expertise in "human factors," "human performance and motor control," and "mental and physical human behavior," Ex. 4 (Coelho Rep.) at 5, to support the affirmative opinions he seeks to offer regarding the emergency response, the vent and burn, and railroad operations, *see, e.g.*, *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014) (excluding mechanical engineer from testifying about biomechanics and human factors).

### A.      Dr. Coelho Is Unqualified To Opine On The Emergency Response And The Vent And Burn

Dr. Coelho's second opinion relates to the purported sufficiency of information, including about VCM polymerization, available to emergency responders at the derailment site and steps that emergency responders should have taken, and his third opinion criticizes the decision-making process leading up to the vent and burn.  Ex. 4 (Coelho Rep.) at 6.  Both are far outside the scope of his meager emergency response experience, *see, e.g.*, *id.* at 5, which is not relevant to the specific scenario presented by the derailment, in which train cars carrying VCM derailed in a populated area, and emergency responders had to make decisions about how to respond with limited, imperfect information.

Dr. Coelho has no general experience responding to rail transport emergencies nor has he conducted any research on this topic.  Ex. 6 (Coelho Dep.) at 113:6-15, 114:13-23.  He also has no derailment-specific experience.  He has never responded to (or even seen) a train derailment at all, let alone one involving hazardous materials.  *Id.* at 115:5-7, 115:14-15.

Dr. Coelho also has no academic and professional experience that qualifies him to opine on decision-making related to the vent and burn.  While he may have some limited education related to VCM, Ex. 6 (Coelho Dep.) at 55:12-19, 103:15-104:1, he has never taken any courses specifically relating to VCM, has done no research on VCM, published no articles on VCM, and has no personal experience with VCM at all.  *Id.* at 104:2-3, 104:5-7, 104:8-10, 104:20-22.  Unlike the Norfolk Southern contractors who were onsite and assessing how to handle the VCM cars, *see* Ex. 7 (McCarty Dep. Day 1) at 91:6-11, 297:17-298:15; Ex. 8 (Day Dep.) at 17:20-

18:11, 150:2-17, he has not attended, for example, a CHLOREP training and does not "hold [himself] as an expert in hazmat."[2]  Ex. 6 (Coelho Dep.) at 107:10-11; *see also id.* at 107:22-24.

He also has no practical experience that would allow him to assess the decision to vent and burn.  He has never performed a vent and burn, seen a vent and burn, or been involved in a decision about whether to vent and burn in connection with a rail emergency.  Ex. 6 (Coelho Dep.) at 122:7-16, 123:25-124:3.  He has never taken the pressure or temperature of a tank car, has never been a leader in a rail transport emergency response involving hazardous materials, or any rail transport emergency at all.  *Id.* at 116:7-117:6.  He has also never participated in a Unified Command as part of a rail transport emergency response.  *Id.* at 117:7-10.

### B.      Dr. Coelho Is Unqualified To Opine On Railroad Operations

Despite having never worked for a railroad, *see infra* Section I.C.2, having next to no experience in railroad operations, *see infra* Section I.C.2, and having no experience whatsoever in either wayside detection or railcar inspections, Dr. Coelho nevertheless seeks to offer opinions on the operations of Norfolk Southern's Wayside Help Desk, where analysts monitored alerts and alarms from wayside detectors passed over by trains, and the inspection practices of TRRA, which inspected Train 32N before its departure.  Ex. 4 (Coelho Rep.) at 6-7.

Dr. Coelho has no practical experience with wayside operations.  He has never visited a Wayside Help Desk in person nor seen a visual representation (photo or video) of a help desk operating.  Ex. 6 (Coelho Dep.) at 109:15-110:15.  He has also never spoken to anyone who worked at a Wayside Help Desk or seen or touched a Wayside Detector.  *Id.* at 108:25-109:2, 110:22-111:4.  He has never consulted on the construction or repair of a Wayside Detector, monitored data generated by a Wayside Detection System, or personally analyzed data coming

---

[2]      CHLOREP is part of the Chlorine Institute, a professional association of chlorine manufacturers.  Ex. 8 (Day Dep.) at 17:20-18:11.

into a Wayside Detection System.  *Id.* at 111:10-16, 111:17-20, 112:2-8.  He also has no academic experience with Wayside Detectors, having never conducted any research on the topic.  *Id.* at 111:5-9.[3]

Dr. Coelho is equally unqualified to opine on train inspections.  He has never been trained to perform an inspection, never performed an inspection, and never published anything focused on train inspections.  Ex. 6 (Coelho Dep.) at 126:5-7, 127:6-12, 174:22-24.[4]

All of the affirmative opinions that Dr. Coelho seeks to offer—on the emergency response, the vent and burn, wayside operations, and railcar inspections—are far outside "the purview of [his] expertise," *Botnick*, 484 F. Supp. 2d at 719, and must be excluded because he is not qualified to offer them.

### C.     Dr. Coelho Is Unqualified To Offer Rebuttal Opinions Related To OxyVinyls's SDS Or The Cause Of The Derailment

Dr. Coelho is similarly unqualified to rebut the opinions of Dr. Coates and Mr. Wolf as he purports to do in part of his first opinion.  Ex. 4 (Coelho Rep.) at 6.  Rather than directly rebut these experts, he claims to rebut their opinions from a "human factors" perspective, Ex. 6 (Coelho Dep.) at 27:18-28:2, opining that they ignore decision-making biases and involve conjecture, Ex. 4 (Coelho Rep.) at 6.  But cloaking his first opinion in the terminology of "human factors" is misleading because the substance of the opinions he offers to rebut Dr. Coates and Mr. Wolf in fact addresses their respective areas of expertise, areas in which Dr. Coelho is unqualified to offer expert opinion.  For example, in criticizing Dr. Coates, he claims

---

[3]     Dr. Coelho claims that the wayside detectors came up in an engagement for Exponent, *see infra* n.5, but refused to provide any further information, Ex. 6 (Coelho Dep.) at 108:4-24.

[4]     Dr. Coelho claims that he witnessed a train inspection in connection with a prior engagement for Exponent, *see infra* n.5, but refused to provide further information, Ex. 6 (Coelho Dep.) at 127:13-128:1.

that Dr. Coates's opinion about the sufficiency of OxyVinyls's SDS is flawed because it does not address information about polymerization contained in "other documents relied upon by decision makers at the incident site" and because it does not acknowledge instructions in these documents for what emergency responders should have done at the derailment site.  Ex. 4 (Coelho Rep.) at 45.  He tries a similar tactic in his criticism of Mr. Wolf's opinion related to the cause of the derailment, claiming that this opinion is flawed because it does not consider certain issues that Dr. Coelho claims to have identified with Norfolk Southern's Wayside Help Desk Operations and TRRA's inspection procedures.  *Id.* at 46.  But Dr. Coelho is entirely unqualified to opine on the substance of these topics.

### 1. Dr. Coelho is unqualified to opine on Dr. Coates's criticism of OxyVinyls's SDS

Dr. Coelho criticizes Dr. Coates, who offers opinions about "OxyVinyls's hazard warnings in its … SDS for VCM," including the opinion that the information OxyVinyls provided was not accurate.  Ex. 9 (Coates Opening Rep.) at 1; *see* Ex. 4 (Coelho Rep.) at 45-46. As explained, Dr. Coelho's rebuttal opinion to Dr. Coates ventures beyond Dr. Coelho's "human factors" subject area, and Dr. Coelho is not qualified to offer it.  He is not a chemist, does not have a degree related to chemistry, has taken no courses "specifically on VCM," has published no research on VCM, has no personal experience with VCM, and has never done research on polymer science.  Ex. 6 (Coelho Dep.) at 103:7-104:22, 180:14-15.  As he himself admits, he is "not a chemistry expert."  *Id.* at 180:14.

The contrast with Dr. Coates underscores Dr. Coelho's fundamental deficiencies.  Dr. Coates has extensive academic and professional experience in chemistry and polymer science in particular.  He has a Ph.D. in Organic Chemistry from Stanford and was a Post-Doctoral Research Fellow in Chemistry at the California Institute of Technology.  Ex. 9 (Coates Rep.) at

1.  He is a tenured chemistry professor at Cornell where he has taught undergraduate organic chemistry and graduate polymer chemistry for over 26 years and is also a Member of the Cornell Center for Materials where he advises Cornell's Polymer Characterization Facility.  *Id.* at 2.  Dr. Coates has numerous additional professional activities that relate to polymer science, including research, service on editorial boards, and membership in professional associations.  *Id.*  In the course of this work, he has "reviewed approximately 100 safety data sheets when working with various compounds that have hazardous properties[.]"  *Id.*

### 2. Dr. Coelho is unqualified to criticize Mr. Wolf's opinion concerning the cause of the derailment

Dr. Coelho also criticizes Mr. Wolf's opinion that "the sole cause of the derailment of Train 32N at East Palestine was an unexpected failure of the L1 journal bearing on the GPLX 75465 hopper car" and that no other factor, including the train crew's handling, the defects identified by the FRA, or the makeup of Train 32N, caused or contributed to the derailment.  Ex. 1 (Wolf Opening Rep.) at 1; *see* Ex. 4 (Coelho Rep.) at 46.  As in the case of Dr. Coates, Dr. Coelho's rebuttal opinion to Mr. Wolf is not limited to human factors issues, and Dr. Coelho is not qualified to opine on the cause of Train 32N's derailment.

Dr. Coelho has next to no experience in railroads and none at all in derailment investigations.[5]  He has no academic experience in rail transport, having taken no Ph.D. courses

---

[5]     Dr. Coelho's only professional experience in the rail transport industry has been during his time at Exponent, where it has amounted to less than five percent of his time.  Ex. 6 (Coelho Dep.) at 136:6-13.  Despite touting his experience in rail transport on Exponent's website, Exponent, *Disputes: When You Need to Know*, https://www.exponent.com/solutions/disputes (last visited October 8, 2024), the only experience in the rail transport industry disclosed in his report is his work in *Jaeger v. BNSF Railway Co.*, 2024 WL 2209550, at *1 (W.D. Wash. May 16, 2024), which concerned an alleged slip and fall on the job.  Ex. 6 (Coelho Dep.) at 91:11-92:2.  Dr. Coelho testified that he had worked on additional, previously undisclosed engagements related to the rail transport industry during his time at Exponent.  He was unclear as to the

in rail transport, done no Ph.D. research on rail transport, never studied the rail transport industry in an academic setting, and never taught a class on the rail transport industry.  Ex. 6 (Coelho Dep.) at 60:13-61:3, 86:6-11.  He has never published anything on the rail transport industry or given any presentations on the rail transport industry.  *Id.* at 96:10-18, 96:22-97:3.  He has also never been employed by a company in the rail transport industry.  *Id.* at 86:12-14; *see also id.* at 64:10-16, 64:23-65:5.

Dr. Coelho has even less experience with derailments.  He has never responded to a train derailment and never even been to a train derailment site.  Ex. 6 (Coelho Dep.) at 115:5-7, 115:16-18.  He has also never published anything on train derailments or been hired to analyze a train derailment.  *Id.* at 155:6-9, 157:4-11.  Dr. Coelho recognizes that he lacks expertise in this area; as he testified, "I don't hold myself out as a train derailment expert."  *Id.* at 156:7-8.

Yet again, the contrast with Mr. Wolf underscores Dr. Coelho's deficiencies.  Mr. Wolf has over 53 years of experience in the rail industry, including 17 years at Class I railroads, and has over 49 years of experience specializing in the investigation of train derailments and accidents.  Ex. 1 (Wolf Opening Rep.) at 1.  As part of this work, Mr. Wolf has analyzed over 4,000 derailments, trained 7,000 track, mechanical, and operations personnel in Derailment Investigation, trained approximately 350 of the Federal Railroad Administration field accident investigators, and all of the National Transportation Safety Board rail division investigators.  *Id.* at 2.  In 2021, Mr. Wolf published *The Complete Field Guide to Modern Derailment Investigation*.  *Id.*  Mr. Wolf has been qualified as an expert in train operations, dynamics, and derailment causation in approximately 300 cases in numerous jurisdictions.  *Id.* at 1-2.

---

precise number, *id.* at 133:21-136:5, and was unable or unwilling to provide many specific details about what he worked on as part of these projects, *e.g., id.* at 87:7-88:23.

## II.    DR. COELHO'S REBUTTAL TO MR. MCCLELLAN'S OPINIONS IS NOT THE PROPER SUBJECT OF EXPERT TESTIMONY

In his first opinion, Dr. Coelho also claims that Mr. McClellan's opinions, which relate to the performance of the PRDs on certain of the derailed railcars, Ex. 10 (McClellan Opening Rep.) at 12-13, are flawed because they ignore decision-making biases and involve conjecture. Ex. 4 (Coelho Rep.) at 6.  Dr. Coelho's specific criticism is that, in opining that the volume of VCM in two of the derailed railcars cannot be accurately assessed, Mr. McClellan fails to take account of the fact that a lack of documentation of PRD activity by Norfolk Southern and its contractors is the reason for the uncertainty.  *Id.* at 46.  He then claims that Mr. McClellan's opinion is further flawed because it does not address the assertion that a lack of documentation can have negative impacts on decision making.  *Id.*

But the premise of this criticism—that the uncertainty is allegedly the fault of Norfolk Southern and its contractors—has nothing to do with Dr. Coelho's purported expertise in human factors.  It is something that will or will not be established by fact witness testimony and is "equally within the competence of the jurors to understand and decide." *Youngberg v. McKeough*, 534 F. App'x 471, 479 (6th Cir. 2013) (explaining that a jury could determine "whether or not parents were negligent in their supervision of a child by allowing him to drive a boat" and so it was not a proper subject for expert testimony).  Dr. Coelho's rebuttal of Mr. McClellan's opinion is not the proper subject of expert testimony and Dr. Coelho should not be permitted to offer it.[6]

---

[6]    Moreover, Dr. Coelho is unqualified to offer any substantive opinions related to the operation of the PRDs.  *See, e.g.*, Ex. 4 (Coelho Rep.) at 51 ("Moreover, there is no evidence that SPSI or SRS substantively considered alternative explanations for any PRD activity exhibited by (55) OCPX 80370, such as that stated in Pamphlet 171, including that PRD activity can continue after fires have subsided.").  He is not a mechanical engineer. Ex. 6 (Coelho Dep.) at 85:15-16. His CV and professional background are entirely devoid of any experience that would qualify

- 11 -

**III.    DR. COELHO'S OPINIONS ARE NOT RELIABLE BECAUSE HE IS A QUINTESSENTIAL EXPERT FOR HIRE**

Among the variety of factors considered by courts in the Sixth Circuit in the reliability analysis is whether the proposed testimony is based on research "prepared solely for purposes of litigation" or whether it "flows naturally" from the expert's pre-existing work. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434-435 (6th Cir. 2007); *see also In re Ford Motor Co.*, 98 F. Supp. 3d at 922.  Put differently, courts should ask whether a proposed expert is a "quintessential expert for hire," and, if so, "the party proffering the expert must show some objective proof … supporting the reliability of the expert's testimony." *Johnson*, 484 F.3d at 435.  This inquiry informs reliability because independence from litigation can "provide[] important, objective proof that [] research comports with the dictates of good science." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

Dr. Coelho has no "pre-existing work" from which the opinions he seeks to offer would naturally flow. *Johnson*, 484 F.3d at 434.  As explained above, he has no relevant academic, professional, or other experience in the subject matter of any of the opinions he seeks to offer. He has worked full-time at Exponent, a firm that provides consultants for expert testimony, since 2018. Ex. 6 (Coelho Dep.) at 65:18-20.[7]  Already in his short career at Exponent, Dr. Coelho has been deposed as a proposed expert in at least 21 matters (but he has never been qualified as an expert or testified at trial).  Ex. 4 (Coelho Rep.) at Appendix B; Ex. 6 (Coelho Dep.) at 78:14-

---

him to opine on issues related to mechanical engineering.  He has no academic qualifications in the field, Ex. 4 (Coelho Rep.) at Appendix A, no professional experience in the field, *id.* at 1-3, no relevant publications, *id.* at 3-5, and no other experience in mechanical engineering that could support an opinion on PRD operation and behavior.

[7]     Exponent, *Disputes: When You Need to Know*, https://www.exponent.com/solutions/disputes (last visited Oct. 8, 2024).

- 12 -

79:3.  Work in connection with lawsuits has occupied more than half of his time and the proportion has increased as time has gone on.  Ex. 6 (Coelho Dep.) at. 67:12-68:10.

Dr. Coelho's professional profile also touts his experience providing expert testimony in cases across an exceedingly wide range of topics including "premises liability, personal injury, international arbitration, … product liability … motorcycle safety issues, aircraft mishaps, forklift incidents, and road construction zones."  Ex. 4 (Coelho Rep.) at Appendix A.  As his CV suggests and as underscored by the wide variety of topics covered by his testimony in this case, Dr. Coelho's proffered expertise is essentially anything involving humans—"[h]umans are humans wherever they go," he explained.  *See id.*; Ex. 6 (Coelho Dep.) at 93:10-14; *see also id.* at 64:10-16, 85:9-17.  Such generic claimed expertise is further demonstration that Dr. Coelho is lacking here.  *See Hayes v. MTD Prods., Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007) (an expert's "generic" expertise supports a conclusion that he is an expert for hire).

Because Dr. Coelho is an expert for hire, GATX must offer "objective proof … supporting the reliability of [Dr. Coelho's] testimony" *Johnson*, 484 F.3d at 435.  GATX cannot do so, given his patent lack of qualifications to offer any of the opinions set forth in his report. Moreover, there is ample evidence of their unreliability.  For example, Dr. Coelho's second opinion is that "[e]mergency responders could have, and should have, complied with instructions to engage in water cooling."  Ex. 4 (Coelho Rep.) at 6.  But Dr. Coelho's own report recognizes that emergency responders did engage in foam and water cooling at one point and considered doing so again before they were instructed to stop doing so.  *Id.* at 25.  And Dr. Coelho fails to account for the significant safety concerns that further attempts at water cooling would have created for people at the derailment site.  *See* Ex. 5 (Lunsford Rep.) at 19-20.  His "failure to adequately account for contrary evidence is not reliable or scientifically sound."  *In re Onglyza*

*(Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345

(6th Cir. 2024) (internal quotation marks omitted).

<u>**CONCLUSION**</u>

Norfolk Southern respectfully requests that this Court exclude the expert report and

testimony of Dr. Chason Coelho in its entirety.

- 14 -

Dated: October 9, 2024

WILMER CUTLER PICKERING
   HALE AND DORR LLP

 /s/ *Alan Schoenfeld*
_____
ALAN SCHOENFELD*
ANDREW RHYS DAVIES*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
andrew.davies@wilmerhale.com

DAVINA PUJARI*
CHRIS RHEINHEIMER*
One Front Street, Suite 3500
San Francisco, CA  94111
Tel.: (628) 235-1000
Fax: (628) 235-1011
davina.pujari@wilmerhale.com
chris.rheinheimer@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC  20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

*Pro hac vice*

Respectfully submitted,

DICKIE, MCCAMEY &
   CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS, Ohio Bar No. 0096529
AARON PONZO*
PAUL ROMAN*
Two PPG Place, Suite 400
Pittsburgh, PA  15222
Tel.: (412) 281-7272
Fax: (412) 888-811-7144
ljohnston@dmclaw.com
sclemenets@dmclaw.com
aponzo@dmclaw.com
proman@dmclaw.com

*Pro hac vice*

*Counsel for Defendants / Third-Party Plaintiffs*
*Norfolk Southern Corporation and Norfolk Southern Railway Company*

## CERTIFICATE OF LOCAL RULE 7.1 COMPLIANCE

I certify that this Memorandum adheres to the page limitations set forth in the Local Rule 7.1(f) for mass-tort cases because it does not exceed 15 pages in length.

                                        /s/ Alan Schoenfeld
                                        ALAN SCHOENFELD

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

                                        /s/ Alan Schoenfeld
                                        ALAN SCHOENFELD