UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:                                                    CASE NO. 4:23-CV-00242-BYP
EAST PALESTINE TRAIN DERAILMENT      JUDGE BENITA Y. PEARSON

**Morgan & Morgan & Co-Lead Counsel T. Michael Morgan's
Memorandum in Support of
Motion to Clarify, Alter, Amend or Reconsider
Order (ECF 556), and to
Enjoin Distribution of Attorneys Fees Prior to Resolution of Appeals**

**I.    Introduction**

Class counsel[1], without any prior discussion or notice, informed Co-Lead T. Michael Morgan that they made fee allocation determinations. In addition to not consulting with their Co-Lead counsel Morgan, class counsel provided no statement as to the process for determining allocations among the firms. Such a wholesale lack of methodologic should not be permitted here. Unfortunately, the Court's Order (ECF 556) appears to give unreviewable and plenary authority to class counsel to make allocation determinations. Because the Court can and should retain its authority under FRCP 23(h) to ensure a fair payment for attorneys who contributed to the common benefit, it is respectfully requested that this Court amend its fee Order to include a process for judicial review of the fee allocation.

---

[1] It does not appear that the Co-Lead Class Counsel from Simmons, Hanly, Conroy, LLP participated with the other class counsel with respect to the fee decisions and the revised proposed Order filing. Further, the Reply brief was signed by Co-Lead Class Counsel Graham, and Co-Lead Class Counsel Graham emailed Co-Lead Morgan seeking wiring instructions without explaining the basis for allocation decisions. Accordingly, it is unclear to undersigned counsel whether the other class counsel participated in the allocation decisions, the decision to distribute attorney fees while the appeals are pending, or in the drafting or approving of the "revised" proposed Order that was attached to the Reply brief.

In addition, it appears that distributions of fees may be imminent, even though the claimants cannot recover during the pending appeals. It is also requested that this Court direct counsel to not distribute fees during the pending appeals.

Finally, the basis for Co-Lead Counsel Morgan being summarily excluded from participation in the fee allocation process is unknown. His exclusion was the result of a language insertion in a "revised" proposed Order submitted as an exhibit to a Reply brief by class counsel; there was no explanation in the class counsel brief for the exclusion, nor was their prior discussion with or notice to Co-Lead Morgan that the exclusion language was being inserted into the "revised" proposed Order. Moreover, Co-Lead Counsel Morgan's signature block was use for this Reply brief and its exhibit, despite it not being provided to Co-Lead Counsel Morgan before its filing. Given the lack of transparency and the fact that individual plaintiff's counsel have waived their contingency fees, Co-Lead Counsel Morgan also respectfully requests that the Court restore to him the authority to participate in the allocation process with class counsel to ensure fair compensation for common benefit work.

## II. Pertinent Facts

On September 6, 2024, class counsel initially filed a 26-page proposed fee order that did not mention any process for allocation. ECF 525-5. Then, on September 23, class counsel filed a 27-page revised proposed fee order as an attachment to a reply brief. ECF 538-5. The only changes in the revised proposed fee order were, first, adding language to the conclusion that the fee award is

> to be distributed to Class Counsel pursuant to paragraph XIV (D) of the Settlement Agreement and this Court grants CoLead Class Counsel authority to distribute the fees in a manner that, in the judgment of Co-Lead Class Counsel, fairly compensates each firm for its contribution to the prosecution of Plaintiffs' claims.

Second, the proposed revised fee order added this language on page 23:

2

> Co-Lead Class Counsel, "who are most familiar with the work done by each firm and each firm's overall contribution to the litigation," are best suited to apportion these fees among the firms involved. In re Auto. Refinishing Paint Antitrust Litig., No. MDL NO 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008); see Bowling v. Pfizer, Inc., 102 F.3d 777, 781 (6th Cir. 1996) (upholding the district court's decision to "not become involved" in class counsel's division of its fee); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 533 n.15 (3d Cir. 2004) (noting "the accepted practice of allowing counsel to apportion fees amongst themselves").

On September 27, 2024, this Court adopted the language is the class counsel's revised proposed fee order. *See* ECF 556 at 28, 32. The effect of the additional language in the Order is that class counsel have seemingly unreviewable discretion to allocate fees to counsel without the Court's review or transparency.

Further, based upon this language in the Order, class counsel removed Attorney T. Michael Morgan from the allocation process. This Court initially appointed Attorney Morgan as Co-Lead Counsel to "represent individuals and entities who have elected to file cases outside the class action, but are not opposed to the class structure." ECF 28 at 15. The Court authorized Co-Lead Counsel to, *inter alia*, make decisions about what legal arguments to present to the Court; assign and authorize work for attorneys; monitor plaintiff attorneys' work "to ensure that schedules are met and unnecessary expenditures of time and funds by counsel are avoided"; retain experts; and "conduct settlement discussions in the Action with Defendants' counsel on behalf of Plaintiffs and the proposed Class and to enter into a settlement with Defendants, subject to Court approval". ECF 28 at 17-20; ECF 33 at 8-12. In the face of this Court's directives, and without any prior notice to Co-Lead Counsel Morgan (or, apparently, Co-Lead Class Counsel from Simmons, Hanly, Conroy) in their fee Reply brief, class counsel argued that only class counsel have this exclusive authority:

> The Objectors' focus on apportionment disregards the well-established principle that lead counsel are best suited to apportion fees among the firms involved. *See In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269 at *8 (N.D. Ohio Feb. 26, 2015) ("This Court grants Co-Lead Counsel authority to 'distribute the fees in a manner that, in

3

> the judgment of Co-Lead Counsel, fairly compensates each firm for its contribution to the prosecution of Plaintiffs' claims.'"). Here, consistent with well-established practice and precedent, Co-Lead Class Counsel are best positioned to ensure that attorneys are compensated based on their actual contributions to the Class's case. The Court appointed Co-Lead Class Counsel to manage the litigation efficiently and prevent duplicative efforts that could inflate fees. ECF No. 28 at 19. To that end, Co-Lead Class Counsel created Time and Expense Billing Guidelines, adopted by the Court on May 12, 2023. ECF No. 33. These guidelines ensured that only work that benefitted the Settlement Class would qualify for compensation and thus provided a fair and transparent framework for fee apportionment.

ECF 538 at 2-3. The fee Reply brief misstates the appointment order (ECF 28 at pages 17-20), which discusses the responsibilities of Co-Lead Counsel—including Attorney Morgan. The fee Reply brief also misstates the Order approving billing guidelines (ECF 33 at pages 4 & 7-12), which likewise discusses the responsibilities of Co-Lead Counsel—including Attorney Morgan.

As a court-appointed Co-Lead Counsel, Attorney Morgan expected to be involved in allocation decisions. This Court placed Attorney Morgan—like class counsel—in charge of the distribution of work among counsel, the ability to direct legal arguments presented to the Court, and with the responsibility to ensure that counsel do not overbill. *See* ECF 28 at 17-20; ECF 33 at 4, 7-12. Moreover, Attorney Morgan believes that it is his responsibility to not only represent the interests of individual plaintiffs, but also to ensure that individual plaintiffs' counsel are fairly compensated for their common benefit work.

However, class counsel did not involve Attorney Morgan in any deliberations about how to distribute the fee award. In fact, on October 7, 2024, class counsel sent an email to Attorney Morgan saying, "We have finalized the allocations and need wire instructions[.]" Even after talking with class counsel, it is unclear to Attorney Morgan how the class counsel calculated the allocation for Morgan & Morgan or for any other firm. Further, it is unclear whether all approved hours have been compensated in the allocation process, what previously approved hours class counsel have included or excluded from the allocation process for any given firm, how class

4

counsel valued or devalued hours, or whether there was consistency in how hours were treated across firms.

By attaching a revised proposed order to a reply brief, class counsel effectively obtained removal *sub silentio* of the appointment of Attorney Morgan as Co-Lead Counsel. Class counsel also included Attorney Morgan's name and signature block on the bottom of the Reply brief without obtaining his consent to a fee allocation procedure that would cut out Attorney Morgan from the process. Because the process has been completed in secret, and is contrary to the spirit of the Court's prior orders regarding Mr. Morgan's responsibilities, this Court should direct that Co-Lead Counsel Morgan is entitled to participate in the allocation.

Making matters worse, it has come to the attention of Attorney Morgan that class counsel intend to make fee payments to attorneys, despite the appeal that is staying direct payments to clients. Had Attorney Morgan been aware of this, he would have objected to paying the attorneys while the process for paying class members remain stayed on appeal. This is another reason to establish a process for judicial oversight and for a transparent allocation process.

### III. This Court should direct that counsel refrain from distributing fees until resolution of the pending appeals.

As previously noted, it has come to the attention of Attorney Morgan that class counsel intend to make payments to attorneys (and indeed may have already done so), despite the appeal that is staying direct payments to clients. This Court should preserve the status quo and direct that counsel refrain from distributing fees before all appeals are resolved.

The standard for considering a motion for a preliminary injunction is well established:

> Plaintiff has the burden of demonstrating his entitlement to the extraordinary remedies he seeks. *See Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to grant or deny emergency injunctive relief, the Court must consider four factors: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether issuance of an injunction would

5

> cause substantial harm to others; and (4) whether the public interest would be served by issuance of an injunction. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet*, 305 F.3d at 573 (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." *Northeast Ohio Coal. for Homeless*, 467 F.3d at 1010 (quoting *Mich. Coal of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

*Perry v. May*, 2023 WL 406054, at *4 (N.D. Ohio Jan. 25, 2023).

Here, this Court should preserve the status quo. Turning to the injunction factors, relief is likely based upon the previous arguments explained in the next section. Further, without an injunction, it could be difficult or impossible to turn back the clock. Undersigned Counsel fear that class counsel may have already started distributing allocations to firms out of the fee award or that they may start distributing funds soon—even while claimants remain unable to recover. If class counsel distribute attorney fees now, then firms can and will spend the fund's proceeds during the pendency of the appeal. If any appeal is successful, this is extremely problematic as class counsel will have already emptied the bank. Even if all of the appeals fail, class counsel will no doubt expend time and money to oppose the appeals—even though class counsel have depleted the fund. For the third factor, a brief delay will not harm class counsel, and the claimants themselves await distribution. The public interest is served by an injunction because the public is served by an open process to allocating class fees that come out of the class plaintiffs' recovery and the public is unserved by lawyers taking first while their clients wait out appeals.

## IV. Relief is Appropriate under Rules 59(e), 60(b)(1) and 60(b)(6).

Based upon their actions since the Order approving fees, it appears that class counsel believe that they have unreviewable allocation authority. This Court should clarify or amend the Order to establish a process for review of the allocation. Further, given the lack of transparency, this Court should authorize Attorney Morgan to participate in the allocation process.

6

This Court can alter or amend a judgment under FRCP 59(e) to, *inter alia*, correct a clear error of law or prevent manifest injustice. *Cont'l Cas. Co. v. Indian Head Indus.*, 941 F.3d 828, 833 (6th Cir. 2019).[2] Similarly, under FRCP 60, even if reconsideration is not appropriate, this Court can grant relief from an order under FRCP 60(b)(1) to correct a legal or factual "mistake" in the Order, *Kemp v. US*, 596 U.S. 528, 535 (2022), and can grant relief under FRCP 60(b)(6) for "exceptional or extraordinary circumstances." *E. Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011).

Here, relief is warranted under FRCP 59(e) and FRCP 60(b)(1) to correct a clear error of law. The language in the Order that appears to give complete, unreviewable discretion to class counsel is, as explained below, contrary to this Court's duty to ensure reasonable and fair compensation for counsel and this Court's oversight obligation under FRCP 23(h).

Relief is also warranted under FRCP 59(e) and FRCP 60(b)(1) to correct a factual error as, in seeking to exclude Attorney Morgan from the allocation process, in the Reply brief misstated the court-appointed authority of Co-Lead Counsel (which includes Attorney Morgan) as the court-appointed authority of class counsel (which does not include Attorney Morgan). *See* 538 at 2-3 (misstating the authorizations in ECF 28 at 17-20 and ECF 33 at 4, 7-12).

In addition, relief is warranted under FRCP 59(e) and FRCP 60(b)(6) to prevent manifest injustice and due to exceptional and extraordinary circumstances. There has been no transparency in the allocation process and decisions by class counsel. As a result, there is no way to ensure that the zero-sum fee allocation decisions by class counsel fairly compensate the other firms. Moreover, class counsel intend to start distributing fees even though the ongoing appeal

---

[2] This motion is timely under FRCP 59(e). The fee order (ECF 556) was entered on Friday, September 27, 2024. Under FRCP 59(e), the deadline is 28 days. Under FRCP 6(a)(1)(A), September 27th is not counted. Accordingly, the deadline is today, Friday, October 25, 2024.

7

has held up payments to the actual claimants. Both separately and in the aggregate these circumstances are manifestly unjust, exceptional and extraordinary.

> **A. This Court should remove the language in the fee Order that appears to give unreviewable allocation authority to class counsel.**

To the extent the fee Order can be interpreted as giving class counsel unreviewable power to allocate fees, this Court should clarify or amend the Order to expressly permit judicial oversight of the allocation. As the Sixth Circuit has explained, "[w]hen awarding attorney's fees in a class action, a court ***must*** make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir. 1993) (emphasis added). Here, this Court cannot ensure fair compensation for *any* lawyer without a process to review the allocation.

Under FRCP 23(h), "the court may award ***reasonable*** attorney's fees…" (Emphasis added). When FRCP 23(h) was added in 2003, the Advisory Committee explained, "In a class action, the district court ***must*** ensure that the amount and mode of payment of attorney fees are fair and proper... Even in the absence of objections, the court bears this responsibility." Fed. R. Civ. P. 23, 2003 Advisory Committee Note (emphasis added).[3] Accordingly, "it is the court that has the final authority on how the fee is allocated among counsel." NEWBERG AND RUBENSTEIN

---

[3] *See also id.* ("Whether or not there are formal objections, the court must determine whether a fee award is justified and, if so, set a ***reasonable*** fee.") (emphasis added); Fed. R. Civ. P. 23, 2018 Advisory Committee Note ("any award of attorney's fees must be evaluated under Rule 23(h)"); *In re Nat'l Prescription Opiate Litig.*, 332 F.R.D. 532, 554 (N.D. Ohio 2019), rev'd and remanded on other grounds, 976 F.3d 664 (6th Cir. 2020) ("[A]ll fees and costs in a class action must be adjudicated according to the procedures set forth in Rule 23(h) and this Court will carefully scrutinize each fee request, as well as the total amount of fees paid from the class's recovery to all of the many attorneys involved here – Class Counsel, the MDL leadership, litigating-entity lawyers, etc. – to ensure that the Class is not unduly taxed."); *Snyder v. Ocwen Loan Servicing,* 2019 WL 2103379, at *16 (N.D. Ill. May 14, 2019) ("the Court exercises its authority and duty under Rule 23(h) to assess the reasonableness of the fee distribution proposed by the parties.").

8

on Class Actions § 15:23 (6th ed.).[4]

> While deference to lead counsel is often appropriate, deference is not a rubber stamp:
>
> [T]he district court retains the ultimate power to review applications and allocations and to adjust them where appropriate. Suffice it to say that a standard counseling consideration of lead counsels' allocation of fees does not in any way limit the district court's ability to engage in a meaningful review of the fairness of the allocation and the overall reasonableness of fees.

*In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1206–07 (10th Cir. 2023) (quoting *Victor v. Argent Classic Convertible Arbitrage Fund*, 623 F.3d 82, 90 (2d Cir. 2010)).[5]

---

[4] *See also id.* § 15:115 ("the court has ultimate authority over this allocation."); Ann. Manual Complex Lit. § 22.927 (4th ed.) ("Absent agreement among the attorneys, the court will have to allocate fees among the attorneys, a task that involves placing a value on the services provided by different attorneys."); *id.* § 14.232 ("Where attorneys for the class do not agree on the allocation of attorney's fees among themselves, the court must allocate and provide an explanation of the allocation decisions to demonstrate that the court applied the criteria required for approval of fee awards generally."); *id.* § 14.11 ("The court must distribute the fund among the various plaintiffs' attorneys, which may include class counsel, court-designated lead and liaison counsel, and individual plaintiff's counsel."); *id.* § 14.122 ("Because compensation directed to any group of attorneys will reduce the amount available to satisfy other contingent fee arrangements, the court should attempt to resolve conflicts between these groups in determining a fair allocation.").

[5] *See also In re Nat'l Football League Players' Concussion Inj. Litig.*, 814 F. App'x 678, 683–84 (3d Cir. 2020) ("The District Court has the authority to decide how to gather attorneys' fees information and make its assessment, and to appoint others to assist with or provide recommendations for calculating and allocating attorneys' fees. When a court chooses to seek input from interested lawyers, it of course must closely scrutinize their recommendations, and, as the fiduciary of the class, it must remain the final arbiter of both the amount of the award and to whom it is allocated based upon the work performed and whether that work benefitted the class…") (citations omitted); *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 233 (5th Cir. 2008) (nothing "the district court's duty to scrutinize the allocation of a fee award when an attorney objects to his co-counsels' fee award recommendations."); *Drazin v. Horizon Blue Cross Blue Shield of New Jersey*, 528 F. App'x 211, 214 (3d Cir. 2013) (agreeing with *High Sulfur*); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("responsibility for determining fees for the work of non-lead counsel performed before the appointment of the lead plaintiff will rest, in the first instance, with the district court, though that court may ask the lead plaintiff for guidance in evaluating claims for fees."); *id.* at 197 ("In the unlikely case that lead plaintiffs appropriate that work and attempt to deny compensation, we expect that the court will nonetheless reward the earlier attorney's work on behalf of the class."); *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th at 1207 ("Only when the district court strays from its duty to ensure that the attorneys' fees award is fair and reasonable do we find an abuse of discretion in the court's weighing of lead counsel's proposals."); *In re FPI/Agretech Sec. Litig.*,

9

Indeed, because the fund is zero-sum, this Court should consider trade-offs: "In a common fund case, it will be difficult, if not impossible to assess the reasonableness of a fee application without reference to any other such applications pending before the court." *Fla. v. Dunne*, 915 F.2d 542, 546 (9th Cir. 1990) (reversing award of attorney fee expenses to one counsel in light of competing fee petition by another attorney) (citation omitted).[6] In fact, one of the class counsel's experts has emphasized this concern:

---

105 F.3d 469, 473 (9th Cir. 1997) ("[D]istrict courts have the authority to reject a fee allocation that does not accurately reflect the amount of work performed by the various attorneys."); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 311 (1st Cir. 1995) ("Just as the PSC members deserved compensation for their endeavors on behalf of the whole, the IRPAs who labored as representative counsel conferred a common benefit, and must be compensated accordingly."); *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 614 (1st Cir. 1992); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987) ("We reject this authority, however, to the extent it allows counsel to divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement. Such a division overlooks the district court's role as protector of class interests under Fed.R.Civ.P. 23(e) and its role of assuring reasonableness in the awarding of fees in equitable fund cases."); *id*. at 225 ("the district court's responsibility … under Fed.R.Civ.P. 23(e), goes beyond concern for only the overall amount of fees awarded and requires attention to the fees allocated to individual class counsel."); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 944-46 (N.D. Ill. 2022) (disagreeing with allocation proposal by co-lead counsel); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2017 WL 5969318, at *4 (N.D. Cal. Feb. 28, 2017) (disagreeing with allocation proposal by lead counsel); *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 222 (D.D.C. 2005) ("Once C & H objected, however, Co–Lead Counsel's decisions became subject to court review to determine whether Co–Lead Counsel abused their discretion in apportioning the fees in the manner they did."); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1225 (S.D. Fla. 2006) ("a federal court always has authority to reject agreements allocating fees among class counsel whenever there is cause to do so."); *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Properties*, 2020 WL 10897935, at *2 (M.D. Fla. Mar. 26, 2020) (same).

[6] *See also* NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 15:23 (6th ed.) ("lead counsel is invariably conflicted in that it is not just allocating money among others but identifying its own share of the aggregate fee award, that is, self-allocating."); *Victor v. Argent Classic Convertible Arbitrage Fund*, 623 F.3d 82, 89 (2d Cir. 2010) ("lead counsel has an incentive to undercompensate non-lead counsel, as such compensation typically decreases lead counsel's own recovery."); *In re Diet Drugs*, 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring) ("But counsel have inherent conflicts. They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?").

> Deferring to a small minority to divide the pie encourages self-dealing, and it is no exaggeration to say that the allocation of fees in MDL has led to fights that are even uglier and more ferocious than the original litigation… This strategy is therefore decidedly suboptimal or at minimum, unreliable.

Cheng, Edelman & Fitzpatrick, *Distributing Attorney Fees in Multidistrict Litigation*, 13 J. Legal Analysis 558, 567 (2021).

Accordingly, when fee disputes arise between counsel, courts in this Circuit have recognized their duty to ensure that the allocation fairly compensates counsel. *See In re Flint Water Cases*, 583 F. Supp. 3d 911, 937 (E.D. Mich. 2022) ("the Court must undertake an independent analysis to determine the reasonableness of the fees for the [common benefit award] and Class Counsel award."); *id.* at 950 ("The Court has been provided with adequate information in the Fee and Expense Motion regarding how Plaintiffs' Counsel intend to sub-divide any award of fees granted by the Court."); *affirmed*, 63 F.4th 486, 503 (6th Cir. 2023) (noting that "[a]fter evaluating each *Ramey* factor, the district court approved Plaintiffs' Counsel's Common Benefit Assessment provisions and fee caps for individually retained counsel…").[7] Here, this Court

---

[7] *See also id.* at 936 ("The Court has undertaken additional modifications to Movants' proposed allocation among attorneys in a manner it believes is fair…"); *In re Nat'l Prescription Opiate Litig.*, 2024 WL 3893605, at *1 (N.D. Ohio July 11, 2024) ("the Application Protocols provided that the Court would: (1) set forth a "process by which Fee Applicants may appeal to the Court the final fee allocation recommendation of the Fee Panel," (2) review "any appeal of the Fee Panel's final fee allocation recommendation ... under an abuse of discretion standard," and (3) have "plenary authority regarding the awarding of common benefit attorneys' fees.""); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 940 (N.D. Ohio 2003) ("The Court has weighed the Ramey factors generally and also for each applicant. In addition, the Court has conducted a two-pronged analysis of the propriety of a common benefit fee award, using both the lodestar method and the percentage of the fund method, both on an overall and an individualized basis."), *affirmed* 398 F.3d 778, 781 (6th Cir. 2005) ("the district court made it clear that it based its awards on the totality of the circumstances, in order to "reflect accurately the common benefit each applicant conferred upon the plaintiff class relative to each other applicant." Indeed, the district court acted reasonably under the circumstances, and its application of both the lodestar method and the percentage of the fund method ensures that Weitz & Luxenberg's contributions, which inherently reflect its market value, were reasonably considered. … the district court, in a thoroughly reasoned order, used the discretion granted it under Rawlings to determine an appropriate methodology and applied the *Rawlings* factors to

11

should exercise its authority under FRCP 23(h) to establish a process to review the allocation.[8]

### B. The current allocation process is not transparent.

It should go without saying that the fee allocation process "should be transparent to all involved…" 5 Newberg and Rubenstein on Class Actions § 15:23 (6th ed.). Nevertheless, no one—other than perhaps a single class counsel—has a precise understanding of the methodology used to allocate fees, if there was indeed a methodology. It remains unknown to undersigned counsel—a Co-Lead Counsel appointed by this Court—how class counsel have calculated the fee allocation for any firm. Further, it is unclear whether all approved hours have been compensated in the allocation process, what previously approved hours class counsel have

---

ascertain a reasonable fee award. The holistic and reasonable nature of the court's analysis overcomes the firm's challenge.").

[8] *Bowling* is not to the contrary. In that case, "Class Counsel has reached an agreement with each of the Special Counsel **as to how the award will be divided**." *Bowling v. Pfizer*, 922 F. Supp. 1261, 1269 (S.D. Ohio 1996) (emphasis added). The District Court rejected the Class and Special Counsel's $33 million proposal as excessive and awarded $10.25 million instead, *id.* at 1280-84, and awarded Public Citizen's fee application for $105,037, *id.* at 1285. The District Court rejected Class Counsel's motion for reconsideration of the award to Public Citizen and the $10.25 million fee award, noting that the District Court had "pored over Counsel's fee application and supplements…" *Bowling v. Pfizer*, 927 F. Supp. 1036, 1042-44 (S.D. Ohio 1996). Affirming, the Sixth Circuit rejected arguments by intervenors who claimed that they were entitled into review counsel's fee agreements:

> The district court examined the work performed by class and special counsel and the value their work conferred upon the class. Thus, the district court decided exactly what that group of attorneys' work was worth and then awarded a fee commensurate with that worth. How special counsel and class counsel ultimately divide that fee among themselves appears to be irrelevant. As long as class and special counsel are paid only what their collective work is worth, their distributions among themselves, even if done in a manner unrelated to the services a particular counsel has performed for the class, will in no way harm the class or negatively impact the fund from which the class's benefit is measured. … [T]he district court, given the questionable relevance of the fee arrangements, did not abuse its discretion in requiring only *in camera* disclosure of the agreements. We do not rule out the possibility, however, that a different manner of determining fees in subsequent fee applications might warrant disclosure of the agreements.

*Bowling v. Pfizer*, 102 F.3d 777, 781 (6th Cir. 1996)

included or excluded from the allocation process, how class counsel valued or devalued hours, or whether there was consistency in how hours were treated across firms.

This process is woefully insufficient. *See In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) ("Because the factual basis of the court's fee allocation remains unknown, this court cannot approve it."). Given the lack of any transparency, and in keeping with its prior orders, this Court should authorize Attorney Morgan to participate in the allocation process. *See* 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 15:23 (6th ed.) ("While the court might be inclined to defer to the recommendations of lead counsel, it should not do so if there are red flags suggesting a flawed process.").

## V.     Conclusion

This Court should direct that no fees be distributed until resolution of the pending appeals, clarify or amend the fee Order to include a process for judicial review of the fee allocation, and appoint Co-Lead Counsel T. Michael Morgan to participate in the allocation process.

Dated: October 25, 2024

*s/ T. Michael Morgan* (pro hac vice)
MORGAN & MORGAN
20 North Orange Ave., Suite 1600
Orlando, FL 32801
407-420-1414
407-245-3389 (fax)
mmorgan@forthepeople.com

*s/ Josh Autry*
MORGAN & MORGAN
333 W. Vine Street, Suite 1200
Lexington, KY 20507
Tel: (859) 899-8785
Fax: (859) 899-8806
jautry@forthepeople.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, a copy of this filing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties and counsel of record indicated on the electronic filing receipt. Parties and counsel of record may access this filing through the Court's system.

*s/ T. Michael Morgan*