UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: EAST PALESTINE TRAIN DERAILMENT | Case No. 4:23-cv-00242-BYP <br><br> Judge Benita Y. Pearson |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER REQUIRING APPELLANTS ZSUZSA TROYAN, TAMARA FREEZE, SHARON LYNCH, AND CARLY TUNNO TO POST AN APPEAL BOND**

Plaintiffs submit the following Memorandum of Law in further support of their Motion for an Order requiring appellants Zsuzsa Troyan, Tamara Freeze, Sharon Lynch, and Carly Tunno[1] (the "Troyan appellants") to post an appeal bond of $850,000 pursuant to Rule 7 of the Federal Rules of Appellate Procedure. Plaintiffs' Motion is not affected by the Notice of Appeal filed by Objector Rev. Joseph Sheely, as Plaintiffs are requesting that any appeal bond be the responsibility of all appellants such that if any appellant withdraws the appeal, the remaining appellants are responsible for the entire bond amount. (ECF 667).

**I.  INTRODUCTION**

The Class Settlement, which provides a non-reversionary fund of $600 million to compensate Settlement Class Members, inclusive of attorneys' fees and costs, is an excellent outcome to a contested litigation. Class Members overwhelmingly support the Settlement, as is

---

[1] Unnamed class member Carly Tunno did not file an objection to the settlement. *See* Decl. of S. Fenwick. (ECF 667-1). Therefore, she cannot properly file an appeal. *See Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002) (the power to appeal the approval of a settlement is limited to unnamed class members who have objected at the fairness hearing); *cf. Fidel v. Farley*, 534 F.3d 508, 512-13 (6th Cir. 2008) (an appeal filed by a Rule 23(b)(3) unnamed class member was proper as he filed an objection and was considered a party for purposes of appealing the district court order approving the settlement.)

evident from the participation rates. Over 92% of households in East Palestine have filed claims, and nearly 89% of households within a five-mile radius of the derailment site have also done the same. These claims rates are among the highest ever reported and unprecedented in an environmental disaster case. (ECF 518-7, Decl. of S. Fenwick). Of the 463,271 Class Members, only 86 objections were received – that is, less than 0.018% of the Class filed objections. *Id.*

Zsuzsa Troyan, Tamara Freeze and Sharon Lynch each filed timely objections to the proposed settlement. (ECF 516-6 at PageID 10822, 10830 & 10850). No attorney appeared on behalf of these objectors at the time. All the objections to the proposed Settlement, including those of the Troyan appellants, were addressed in Class Counsel's moving papers (ECF 518-1, 530, 538). On September 25, 2024, the Court held a Final Fairness hearing during which the Court addressed and overruled all the objections to the Settlement. (ECF 553). Prior to the Final Fairness Hearing, Attorney David Graham filed a notice of appearance, objections, and motion to appear pro hac vice only on behalf of two other individuals – Reverend Sheely and Jami Wallace, who opted out of the settlement thereby divesting herself of standing to object. On September 27, 2024, this Court entered its Final Approval Order overruling all objections, certifying the Settlement Class, and approving the $600 million settlement as fair, reasonable, adequate and in the best interest of Settlement Class Members. (ECF 557).

On September 30, 2024, Rev. Sheely publicly stated, on the radio, that he did not wish to pursue the appeal and that he previously informed Attorney Graham, "do not under any circumstances list my name on an appeal to that class action." Despite not representing Ms. Troyan, Ms. Freeze, Ms. Lynch or Ms. Tunno in the District Court, Attorney Graham then filed a

2

notice of appeal on behalf of the Troyan appellants on October 8, 2024.[2] (ECF 570). On October 9th, Rev. Sheely filed a declaration (ECF 614-2), reinforcing his intent to drop the appeal and not denying his public statements.

An appeal bond is warranted as the strong record in this case supports the fairness of the Settlement making it unlikely the Troyan appellants will succeed in establishing that this Court abused its discretion in approving the Settlement. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 638 (N.D. Ohio 2016) ("Appeal bonds also serve to discourage frivolous appeals.") Moreover, the Troyan appeal will take time to resolve, and it will delay payments to the overwhelming number of Settlement Class Members who support the settlement, because Norfolk Southern is not required to make its final payment under the terms of the settlement until after all appellate rights are exhausted. Delays caused by the appeal will increase costs of the third-party settlement administrator, Kroll Settlement Administration, LLC ("Kroll"), by $825,000. (ECF 567-2, Decl. of S. Fenwick). In addition, Class Counsel estimates $25,000 in taxable costs under Rule 39 of the Federal Rules of Appellate Procedure. Accordingly, an appeal bond in the amount of $850,000 is warranted and should be ordered by this Court.

II.     **ARGUMENT**

    A.     **An Appeal Bond Is Warranted.**

Pursuant to Rule 7 of the Federal Rules of Appellate Procedure, "[t]he district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Rule 7 is designed to protect the interests of appellees. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d at 638. The decision to

---

[2] Attorney Graham is not admitted pro hac vice to represent the Troyan appellants and did not enter an appearance on their behalf.

3

impose a bond lies within the discretion of the court. *Id.* When determining whether to impose a bond, courts typically consider the following factors: (1) the merits of the appeal; (2) whether the appellant has shown any bad faith or vexatious conduct; (3) the appellant's financial ability to post a bond; and (4) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful. *Id.* These factors weigh in support of imposing an appeal bond.

### 1. The Troyan appeal lacks merit.

This Court's Final Approval Order will be overturned only if there has been an abuse of discretion. *Fidel*, 534 F.3d at 513 ("[w]e review a district court's approval of a settlement as fair, adequate, and reasonable for abuse of discretion.") The Troyan appellants face a steep uphill battle to convince the Sixth Circuit that this Court abused its discretion in approving this Settlement as fair, reasonable, and adequate.

Before this Court granted final approval of the Settlement, the Court reviewed the numerous filings on the docket, including all objections and the Declaration of Hon. Layn Phillips (Ret.) who served as the mediator and made the mediator's recommendation that resulted in the settlement (ECF 518-5; ECF 553, PageID 14437 & 14480; ECF 557). The Court conducted a lengthy Final Fairness hearing during which time the Court addressed and overruled "all objections made to the settlement," noting that "the fairness and adequacy of reasonableness of the settlement require me to overrule any and all of those objections." (ECF 553 at PageID 14537). The Court also issued an Order, specifically addressing and overruling the objections, and approving the Settlement (ECF 557).

Where the court has considered and rejected objections and success on appeal is unlikely, there is a strong basis to impose a bond on appeal. *See Gemelas v. Dannon Co.*, No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503, at *7 (N.D. Ohio Aug. 31, 2010) ("courts have discretion to

4

impose appeal bonds to prevent frivolous, unreasonable or groundless litigation.") This factor weighs in favor of imposing a bond.

### 2. The Troyan appeal is filed in bad faith.

As a preliminary matter, Attorney Graham's notice of appeal on behalf of class member Carly Tunno is in bad faith, as Ms. Tunno did not file an objection to the class action settlement. (ECF 667-1, Decl. of S. Fenwick). The law is clear that a class member can only file an appeal if he/she filed an objection to the settlement. *Devlin*, 536 U.S. at 10 *Cf. Fidel*, 534 F.3d at 512-13. Moreover, Attorney Graham had previously filed a notice of appeal on behalf of Rev. Sheely and it was only after Rev. Sheely made public statements that he did not authorize the filing of the notice of appeal that Attorney Graham apparently found others on whose behalf he could file a notice of appeal. Attorney Graham's appeal on behalf of the Troyan appellants was only necessary if he was aware that Rev. Sheely's appeal was filed in bad faith and was likely to be withdrawn or summarily dismissed. This type of serial filing is evidence that this filing was made in bad faith or for a vexatious purpose.

Furthermore, rather than challenge the Settlement on the appropriate grounds of whether the Settlement was fair, reasonable, and adequate, the vast majority of the Troyan objections are inappropriate. For example, objections that remediation is ongoing, and the potential health impacts may not be known for years makes clear that the Troyan appellants and Attorney Graham do not understand the terms of the Settlement. Any class member who wanted to keep all their claims available to them had that ability under the terms of the Settlement by either (a) opting out of the class or (b) accepting the direct payment but electing not to participate in the voluntary exposure / personal injury supplement payment. The Troyan appellants also object that not enough time was given before a decision had to be made to opt-out of the settlement.

5

Attorney Graham is well aware this Court overruled this objection and also denied his motions on behalf of Rev. Sheely and Jami Wallace (ECF 485 & 486) to extend the opt-out date as Class Members were adequately informed and had multiple channels through which to investigate their options (ECF 510), yet he continues to assert on appeal that class members did not have enough time to evaluate their rights and options. Lastly, based on the filed "Statement of the Parties and Issues" (appeal docket no. 24-3880, ECF 26), Attorney Graham intends to assert objections on appeal that were not raised by the Troyan appellants at the District Court. *See e.g.,* Did the district court fail to address the suppression or disregard of critical soil sampling data by Class Counsel, which data contradicted publicly available environmental assessments? Such actions are improper. *Devlin*, 536 U.S. at 9 ("petitioner will only be allowed to appeal that aspect of the District Court's order that affects him -- the District Court's decision to disregard his objections."); *In re Petrobras Secs. Litig.*, 784 F. App'x 10 (2d Cir. 2019) (objections to a class action settlement that were not raised at the district court were waived and could not be asserted on appeal); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) (same). In fact, Attorney Graham acknowledged that an appellant "can only raise on appeal arguments and issues properly preserved in the proceedings before this Court." (ECF 660, PageID 46296).

The actions of Attorney Graham and the Troyan appellants are in bad faith, warranting the imposition of an appeal bond.

### 3. There is no evidence to suggest that the Troyan appellants cannot post a bond.

The appellant has the burden to demonstrate that the bond would constitute a barrier to his or her right to an appeal. *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004). Notably, the Troyan appellants are not proceeding *in forma pauperis* in this case and are

being represented by Attorney Graham. There is no indication that posting an appeal bond would be a hinderance to the Troyan appellants' right to appeal. As such, an appeal bond is warranted.

### 4. There exists a risk that the Troyan appellants would not pay Appellee's costs if the appeal is unsuccessful.

Rule 39 of the Federal Rules of Appellate Procedure states that "if an appeal is dismissed, costs are taxed against the appellant," and "if a judgment is affirmed, costs are taxed against the appellant." There exists a clear risk that the Troyan appellants will not pay the costs if their appeal is dismissed, or the judgment is affirmed. A bond will help allay the reasonable concerns of Class Counsel that this appeal will result in additional, unwarranted costs to the Class. Although this Court awarded 3% of the Settlement fund for costs in this case, as explained by Class Counsel at the Final Fairness hearing and related filings, costs are already anticipated to be more than the 3% awarded. (ECF 553 at PageID 14525-26; ECF 520-1). These appeal costs just compound the problem. Accordingly, an appeal bond is warranted.

## B. The Court Should Impose an Appeal Bond Of $850,000.

The amount of an appeal bond is left to the discretion of the Court. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d at 638. Rule 7 directs courts to set an amount necessary to ensure payment of costs on appeal. *Id.*

### 1. The bond should include appeal related taxable expenses.

While appellate courts have reached different conclusions as to what qualifies as costs on appeal, at a minimum, costs include those set forth in Rule 39 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 1920.[3] *Id.* Costs can include transcript costs, copying costs, docket

---

[3] Rule 39(e) provides the following costs are taxable: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a bond or other security to preserve rights pending appeal; and (4) the fee for filing the notice of appeal. The costs taxable under 28 U.S.C. § 1920 include, the marshal and clerk fees, court

7

fees, court reporter fees, printing fees, etc. Class Counsel will incur docket fees related to the transcript of the Fairness Hearing. Class Counsel will incur docket fees, as not all Class Counsel are admitted to the Sixth Circuit and there are court costs associated with admission. Although briefs are filed electronically, there will be money spent on printing and copying during the appeal writing and oral argument stages. *See Vassalle v. Midland Funding*, No. 3:11 CV 96, 2015 U.S. Dist. LEXIS 196831, at *5-6 (N.D. Ohio Jan. 27, 2015) (although the Sixth Circuit may not require paper copies to be filed, costs associated with copying and record preparation for counsel are appropriate to include in the appeal bond).

A reasonable estimate of appeal-related expenses provides justifiable grounds to include such costs in the appeal bond. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 1998, 2010 U.S. Dist. LEXIS 131775, at *17 (W.D. Ky. Dec. 13, 2010). Class Counsel estimates $25,000 in taxable expense for the appeal. Bonds to cover administrative expenses in the amount of $25,000 in class action cases have been considered reasonable. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d at 643 (court included $25,000 in taxable appeal costs in the appeal bond); *Brandewie v. Wal-Mart Stores, Inc.*, 2016 U.S. Dist. LEXIS at *6 (court found $25,000 in taxable appeal costs for the bond was appropriate); *In re Uponor, Inc.*, No. 11-MD-2247 ADM/JJK, 2012 U.S. Dist. LEXIS 130140, at *11 (D. Minn. Sept. 11, 2012) (same).

### 2. The bond should include increased administrative costs to the Settlement Class.

The Troyan appeal will cause prejudice and delay to the vast majority of community members who have accepted this settlement, filed claims, and are seeking substantial monetary

---

reporter fees, printing and witness fees, copying fees, docket fees, and compensation for court appointed experts and interpreters. *Brandewie v. Wal-Mart Stores, Inc.*, CASE NO. 1:14-CV-965, 2016 U.S. Dist. LEXIS 21115, at *3 (N.D. Ohio Feb. 22, 2016).

relief under the Settlement. These Settlement Class Members have had their lives interrupted by the train derailment in their community and wish to move on – including relocating their families to areas unaffected by the derailment. The Troyan appeal will delay settlement payments likely by somewhere between twelve and twenty-four months. This delay will cause actual hardship to the Class Members, including the loss of use of the settlement funds for an extended period of time.

Numerous courts have found that when considering the amount of bond to impose on objectors to class action settlements, serious consideration should be given to the practical effect of prejudicing other Settlement Class Members due to increased administrative costs and delayed disbursement of settlement funds. *In re Cardizem CD Antitrust Litig.*, 391 F.3d at 818. *See also Allapattah Servs. v. Exxon Corp.*, CASE NO. 91-0986-CIV-GOLD/SIMONTON, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. Apr. 7, 2006) (in a $1.075 billion dollar class action settlement, the court ordered an appeal bond of $1.075 million due to "the highly detrimental impact" of an appeal to the entire class); *In re Checking Account Overdraft Litig.*, No. 3:09-2186, 2012 U.S. Dist. LEXIS 18384 (S.D. Fla. Feb. 14, 2012) (in a $410 million class action settlement, court order appeal bond of $616,338.00 due to the "highly detrimental impact of an appeal as to the entire class."). The identical logic applies here.

Class Counsel estimates $825,000 in increased administrative costs from Kroll. (ECF 567-2, Decl. of S. Fenwick). As explained by Mr. Fenwick, "any appeal to the Settlement extends the time and scope of administrative services currently contemplated by Kroll's engagement up to a year," and the increase in administrative expenses is "approximately $825,000." (ECF 567-2 at PageID 14661). As set forth in the Settlement Agreement, Kroll's administrative services include "creating and maintaining the Settlement Website; establishing

9

the qualified settlement fund and complying with its tax filing, paying and reporting obligations; receiving and processing Claim Forms; . . . sending payments under the terms of the Settlement; . . . and performing such other settlement administration matters set forth herein." (ECF 495-6). Clearly, Settlement administrative costs will increase due to the Troyan appeal. While the voluntary exposure payments will be distributed to Class Members who have executed a valid release, regardless of any appeals, the direct payment property damage claims cannot be paid until all appeals are exhausted. Naturally this will result in extra time, effort, work and costs associated with distributing the second round of payments and causing Kroll to keep staff on board until the appeal is denied and direct payments can be made. Costs also increase for the qualified settlement fund because the longer the account is open, the more administrative expenses are associated with the account.

Class Counsel respectfully submit that the increased administrative costs of $825,000 are proper to include in an appeal bond, particularly where the appeal lacks merit. *See In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x 53, 61 (3d Cir. 2014) (approving a bond sufficient to cover one year of additional administrative costs due to delay caused by objector appeal); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (court upheld bond of $174,429.00, which included $123,429.00 in settlement administrative costs); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700, at *11-12 (S.D. Ind. Feb. 27, 2013) (court included $235,000.00 in increased class administration costs in the appeal bond); *In re Uponor, Inc.*, 2012 U.S. Dist. LEXIS 130140 (court ordered appeal bond of $170,000.00, which include $150,000 for delays caused in payments to class members and administrative class costs).

10

## III. CONCLUSION

Plaintiffs respectfully submit that imposition of an appeal bond is both reasonable and necessary to protect the interests of the Class. Moreover, an appeal bond in the amount of $850,000 is appropriate and reasonable. Plaintiffs respectfully request that the appeal bond be the responsibility of all appellants such that if any appellant withdraws the appeal, the remaining appellants are responsible for the entire bond amount.

Respectfully submitted,

/s/ *M. Elizabeth Graham*
M. Elizabeth Graham (pro hac vice)
GRANT & EISENHOFER, P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
303-622-7100 (fax)
egraham@gelaw.com

Seth A. Katz (pro hac vice)
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
303-708-0527 (fax)
skatz@burgsimpson.com

Jayne Conroy (pro hac vice)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
212-213-5949 (fax)
jconroy@simmonsfirm.com

*Plaintiffs' Class Counsel*

>Mark P. Chalos
>Patrick I. Andrews
>Christopher Coleman
>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
>222 2nd Avenue South, Suite 1640
>Nashville, TN  37201
>615.313.9000
>615.313.9965 (fax)
>mchalos@lchb.com
>pandrews@lchb.com
>ccoleman@lchb.com
>
>*Plaintiffs' Executive Committee Member and Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2024, a copy of foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

>/ s/ *M. Elizabeth Graham*
>M. Elizabeth Graham