PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| *IN RE*: EAST PALESTINE TRAIN DERAILMENT | ) CASE NO. 4:23CV0242 <br> ) <br> ) JUDGE BENITA Y. PEARSON <br> ) <br> ) **ORDER** <br> ) [Resolving ECF No. 624] |

Pending is Third-Party Defendants GATX Corporation and General American Marks Company's (collectively "GATX") Motion to Exclude the Testimony of Gary Wolf (ECF No. 624). Norfolk Southern Railway Corporation and Norfolk Southern Company (collectively "Norfolk Southern") filed an Opposition. (ECF No. 682). GATX replied. (ECF No. 697). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons below, the Court denies GATX's Motion to Exclude the Testimony of Gary Wolf.

I. Background

Norfolk Southern and GATX agree that "Norfolk Southern Train 32N derailed at 8:54 pm on February 3, 2023, in East Palestine, Ohio. At the time of the derailment, Train 32N was traveling east on Main Track 1 along Norfolk Southern's Fort Wayne Line and consisted of two lead locomotives, one distributed power unit, and 149 rail cars." *See* Notice of Stipulation Regarding Uncontested Facts (ECF No. 586) at PageID #: 17627, ¶1. "In total, 38 cars derailed." *Id*. Among other things, the derailment resulted in fires, the release of a flammable gas, vinyl chloride, and a vent and burn to address those problems.

(4:23CV0242)

Norfolk Southern lodged a Third-Party Complaint seeking derivative damages under theories of negligence and joint and several liability against certain railcar owners: OxyVinyls LP, GATX Corporation, General American Marks Company, and Trinity Industries Leasing Company.[1] *See* Third-Party Compl. (ECF No. 119). Norfolk Southern proffers Gary Wolf as a rail-industry expert to opine on the causation of the derailment. *See* Opening Expert Report of Gary P. Wolf (ECF No. 624-15). Arguing that Mr. Wolf's causation opinion is unreliable, GATX moves the Court to exclude Mr. Wolf's opinion.[2] *See* Third-Party Defs. GATX Co. and General American Marks Co.'s Mot. To Exclude the Test. of Gary Wolf (ECF No. 624).

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence provides the standards for admitting expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[1] The Court dropped Trinity Industries Leasing Company as a Third-party Defendant with prejudice pursuant to Fed. R. Civ. P. 21 for the reasons stated in the Unopposed Motion of Third-party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company and Trinity (ECF No. 460). *See* Order (ECF No. 464).

[2] Technically, the motion seeks exclusion of Mr. Wolf's "testimony", but at times indicates his "opinion" should be excluded. For efficiency here and in certain of the other twenty-plus Daubert motions filed, the Court will rule on the exclusion of certain opinion evidence. If an opinion is excluded, no testimony or report on those topics may be admitted.

(4:23CV0242)

*Id*.

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrill Dow Pharm., Inc*., 509 U.S. 579, 597 (1993). It also governs the admissibility of expert testimony and codifies the Supreme Court's holdings in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Expert testimony is admissible only if (1) the testimony is based on sufficient facts or data, (2) the testimony comes from reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. An expert's opinion cannot be based on mere speculation. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000). The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the proposed testimony satisfies those standards. *See* Fed. R. Evid. 702 advisory committee's note (2000); *Daubert*, 509 U.S. at 592 n.10. Expert testimony is not admissible "is the exception rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting Fed. R. Evid. 702 advisory committee's note (2000)). When evaluating a scientific or experiential expert, a court "must examine the expert witness's testimony for reliability and relevance." *United States v. Martinez*, 588 F.3d 301, 323 (6th Cir. 2009).

Furthermore, a *Daubert* analysis includes consideration of Fed. R. Evid. 403. *Daubert*, 509 U.S. at 595. Therefore, courts in the Sixth Circuit employ a four-prong test to determine the admissibility of expert opinions: "(1) that the witness, a qualified expert, (2) was testifying to a proper subject, (3) which conformed to a generally accepted explanatory theory, and (4) the probative value of the testimony outweighed its prejudicial effect." *United States v. Smithers*, 212 F.3d 306, 312 (6th Cir. 2000) (citing *United States v. Green*, 548 F.2d 1261 (6th Cir.1977)).

3

(4:23CV0242)

### III. Analysis

Gary Wolf is a consultant and owner of Rail Sciences Inc., possessing 53 years of rail industry experience, and specializing in the investigation of train derailments and accidents. Mr. Wolf's CV speaks for itself. *See* Appendix A (ECF No. 624-15) at PageID #: 35022. Relying on his extensive railroad experience, Mr. Wolf opines that "the sole cause of the derailment of Train 32N at East Palestine was an unexpected failure of the L1 journal bearing on the GPLX 75465 hopper car." ECF No. 624-15 at PageID #: 34996.

**A. Mr. Wolf's Causation Opinion is Reliable.**

Mr. Wolf's causation opinion uses a "root-cause" analysis that considers the makeup of Train 32N, its handling, railcar defects identified by the Federal Railroad Administration, and the structure of the train track. *See* ECF No. 624-16 at PageID #: 35051; *see also* ECF No. 624-15 at PageID #: 34996. GATX, applying a differential-diagnosis standard, argues that the Court should exclude Mr. Wolf's causation opinion for lack of reliability because it overlooks *all* potential contributing causes of the derailment. ECF No. 624 at PageID #: 34078-80. Specifically, GATX asserts that Mr. Wolf fails to address other contributory causes for the L1 bearing failure, such as a human error, organizational issues like Norfolk Southern's operation of its wayside detector system, and Norfolk Southern's implementation of Precision Scheduled Railroading.[3] ECF No. 624 at PageID #: 34080. Responding that courts focus on the principles and methodology of an expert, and not the conclusions they generate, Norfolk Southern contends that Mr. Wolf's causation opinion is reliable despite not discussing every possible contributing

---

[3] Precision Scheduled Railroading "is a moniker for a[n] operating procedure" coined by Hunter Harrison, to explain that railroad companies "run a – tighter scheduled rail operation." *See* Gary Wolf Deposition Transcript (ECF No. 624-16) at PageID #: 35056, 35098-99.

4

(4:23CV0242)

cause. ECF No. 682 at PageID #: 48358. In its reply, GATX adds that the Court should exclude Mr. Wolf's expert opinion, because Norfolk Southern improperly and artificially limited the scope of relevant facts that Mr. Wolf considered. ECF No. 697 at PageID #: 51225-26.

### 1. The Court Declines to Apply the Differential-Diagnosis Standard.

Given that Mr. Wolf did not provide a reliable root cause analysis, GATX asserts that Mr. Wolf speculates on multiple causes for the bearing's failure and fails to rule out other potential causes. ECF No. 624 at PageID #: 34080-81 (explaining that Mr. Wolf did not perform a metallurgical lab analysis, disregards human failure in maintaining the bearing, or whether each parties fulfilled its obligations to the bearings performance, rebuild, and inspection). For this reason, GATX argues that Mr. Wolf "deviates from a standard root-cause analysis, his analysis certainly cannot be said to be accepted by the 'relevant scientific community' or the product of 'peer review.'" ECF No. 624 at PageID #: 34082.

Norfolk Southern contends GATX fabricates the distinction "between an 'immediate-cause opinion' and 'root cause opinion.'" ECF No. 682 at PageID #: 48360-63. It provides that under Mr. Wolf's methodology, the "'root cause, or *primary* cause, is the *one condition* that if eliminated, the derailment does not occur." ECF No. 682 at PageID #: 48361 (citing ECF No. 682-2 at PageID #: 48380-83) (alteration in original). Applying his 12-step methodology, Mr. Wolf concludes that the cause of the derailment was the failure of the bearing, after considering: "the makeup, tonnage, car placement, and length of Train 32N . . . the defects identified by the [Federal Railroad Administration] on non-derailed cars . . . the condition of the track . . . and 'witness statements and the NTSB's factual report on the derailment.'" ECF No. 682 at PageID #: 48361 (citations omitted). Norfolk Southern also suggests that GATX mischaracterizes Mr. Wolf's assertion that he deviates from his methodology, because his analysis provides that "step

5

(4:23CV0242)

9 of the methodology requires the investigator to assign a primary cause for the derailment."
ECF No. 682 at PageID #: 48362.

GATX maintains that Mr. Wolf erroneously performs a process of elimination analysis, and that the Court should apply the differential diagnosis standard. ECF No. 697 at PageID #: 51228.[4]

As Norfolk Southern indicates, when an expert testifies to causation, his testimony "need not eliminate all other possible causes of the injury." See Jahn v. Equine Servs., PSC, 233 F.3d 382, 390 (6th Cir. 2000) ("The fact that several possible causes might remain 'uneliminated' . . . only goes to the accuracy of the conclusion, not to the soundness of the methodology.") (quoting Ambrosini v. Labarraque, 101 F.3d 129, 140 (D.C.Cir.1996)). As the Sixth Circuit provides,

> *Daubert* and Rule 702 require only that the expert testimony be derived from inferences based on a scientific method and that those inferences be derived from the facts of the case at hand . . . not that they *know* answers to all the questions a case presents—even to the most fundamental questions.

Jahn, 233 F.3d at 390 (alterations in original). While GATX is correct—Parks v. Kia Motors Am., Inc., No. 23-5654, 2024 WL 4024667, at *7 (6th Cir. Sept. 3, 2024) (quoting Jahn, 233 F.3d at 390), an unpublished case relied on by Norfolk Southern does not bind the Court. ECF No. 697 at PageID #: 51227. Nonetheless, given *Jahn*, the Court need not apply the heightened differential diagnosis standard urged by GATX to Mr. Wolf's causation opinion. Rather, the Court finds that

---

[4] GATX's reply also reiterates that Norfolk Southern fails to address whether Mr. Wolf deviates from his own methodology requiring consideration of all contributory causes, such as the wayside operations or the Precision Scheduled Railroading program, ECF No. 697 at PageID #: 51229-30; and, suggests that Norfolk Southern fails to address its metallurgical lab analysis, which is required to determine the cause of a failed wheel bearing. ECF No. 697 at PageID #: 51230.

6

(4:23CV0242)

Mr. Wolf's causation opinion relies on sufficient evidence in the record, as required of Rule 702 and *Daubert*, and that his opinion need not address every possible cause.

>    **2. Mr. Wolf's Causation Opinion Does Not Require Evaluating Norfolk Southern's Wayside Detection System Nor Norfolk's Implementation of the Precision Scheduled Railroading.**

GATX asserts that Mr. Wolf's opinion lack's reliability because he sidesteps the other contributing factors like Norfolk Southern's wayside technology in his causation analysis, and that "[a]ny reliable root-cause analysis, however, would have considered this critically relevant data." ECF No. 624 at PageID #: 34082-84.  It argues that the wayside detector data would have been important in determining the cause of the derailment, because it would have identified defects during transit, even including a "bearing that is about to fail." ECF No. 624 at PageID #: 34083.  GATX suggests that the omission of such important data in Mr. Wolf's report results in an unreliable root-cause analysis that the Court should exclude. ECF No. 624 at PageID #: 34084.  Claiming that Norfolk Southern's policies and business practices contributed to the derailment, GATX argues that Mr. Wolf's causation opinion lacks reliability, because it did not consider that Norfolk Southern's Precision Scheduled Railroading program. ECF No. 624 at PageID #: 34084-86.

Neither Rule 702 nor *Daubert* require an expert to opine on every possible theory of the case.  To that end, Mr. Wolf concedes that he did not rule out the conduct of the wayside desk nor the Precision Scheduled Railroading program as a contributing clause. ECF No. 624-16 at PageID #: 35065, 35067; ECF No. 682 at PageID #: 48365.  GATX may challenge Mr. Wolf's opinion on cross examination.  *See Great N. Ins. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 637 (S.D. Ohio 2015) ("'[v]igorous cross-examination, presentation of contrary evidence, and

7

(4:23CV0242)

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'") (quoting *Daubert*, 509 U.S. at 596).

### B. Mr. Wolf's Causation Opinion Contained Sufficient Facts and Data.

Proposing that the Court should exclude Mr. Wolf's causation opinion for lacking sufficient facts or data, GATX purports that he ignored data concerning Train 32N's makeup, generalized Train 32N to other trains, and he ignored whether Train 32N conformed with Norfolk Southern's internal standards. ECF No. 624 at PageID #: 34086-88. It suggests that "Wolf's opinion that [the] train makeup did not contribute to the derailment therefore lacks any 'basis in established fact,' as required by Rule 702," and for that reason it makes an "unsubstantial leap between facts in the record and the ultimate opinion[.]" ECF No. 624 at PageID #: 34088 (citation omitted).

Norfolk Southern responds that Mr. Wolf's opinion was based on sufficient facts and data, GATX raises a question for the jury, and it erroneously focuses on the word "typical", instead of Mr. Wolf's independent analysis supporting his opinion. ECF No. 682 at PageID #: 48367-71. Instead, it argues that Mr. Wolf's description of the train's length and tonnage was based on his rail industry experience, and such criticisms go toward the weight rather than its admissibility. ECF No. 682 at PageID #: 48368. It also asserts that GATX is wrong for suggesting that Norfolk Southern's internal standards are irrelevant to an expert's safety-related opinion, because courts regularly permit experts to provide opinions on whether a company complied with its standards. ECF No. 682 at PageID #: 48369. It provides that Mr. Wolf applied the industry-standard Train Operations and Energy Simulator ("TOES") simulation to evaluate the possible impact of Train 32N's length or weight. ECF No. 682 at PageID #: 48370-71.

8

(4:23CV0242)

GATX rebuts that Norfolk Southern erroneously contends that the weaknesses of Wolf's methodology go toward the weight of the evidence, as opposed to its admissibility pursuant to the 2023 amendments to Rule 702.  ECF No. 697 at PageID #: 51231.  It also retorts that Wolf's opinion that the makeup of Train 32N did not contribute to the derailment is wrong, because the data suggests that "Train 32N was significantly *below* the average train length and tonnage for North American rail operations."  ECF No. 697 at PageID #: 51231-32 (alteration in original).

The Court finds that Mr. Wolf's reports and testimony are based on sufficient facts and data such that his expert opinion meets the threshold standard established by Rule 702 and *Daubert*.  Mr. Wolf's expert report summarized his qualifications and his background in the railroad industry.  He uses his TOES simulation "that takes into account and analyzes the track the train was operating on (grades and curves), the consist of the train (tonnage and length), and the operating commands used by the engineer (speeds, throttle, braking)." ECF No. 624-15 at PageID #: 35007.  Relying on the simulation, he concludes that the train handling was not causative in the derailment, and that the simulations shows that "train make up, tonnage, car placement, and length did not cause any excessive coupler forces in the moving train." ECF No. 624-15 at PageID #: 31008.  Considering that specific train length and tonnage data is not publicly available, he refers to several reports and articles to base his assertion that Train 32N "was a typical train length and tonnage for current North America operations." ECF No. 624-15 at PageID #: 35006.  To the extent that GATX argues that Dr. Wolf's TOES analysis is insufficient for ignoring other factors, its argument goes to the weight of Mr. Wolf's opinion—not its admissibility.

Because Mr. Wolf's expert testimony and report are based on sufficient data, is grounded in reliable principle and methods, is applied reasonably to the facts of the case, and will assist the

9

(4:23CV0242)

jury in determining the cause of the derailment, the Court rejects GATX's argument that Mr. Wolf's causation opinion is unreliable.

### C. Mr. Wolf's Opinion on Pre-Departure Inspection Practices are Reliable.

Criticizing the reliability of Dr. Wolf's predeparture inspection practices, GATX suggests that Mr. Wolf's opinion should be excluded, because *Daubert* does not allow an expert to solely rely on their experience when making an opinion. ECF No. 624 at PageID #: 34088-89. It argues that he makes assertions without evidentiary support, and instead, vaguely relies on his industry experience that he never explains, nor describes how it applies to specific issues. ECF No. 624 at PageID #: 34089. Concerned that Mr. Wolf's "bare assertions" will have a strong influence on the jury, ECF No. 697 at PageID #: 51233-34, GATX urge that Norfolk Southern "impermissibly asks the Court to 'take the expert's word for it' by suggesting that his experience validates his testimony regarding common industry practices." ECF No. 697 at PageID #: 51234 (citation omitted).

Norfolk Southern responds that Mr. Wolf's opinions about predeparture inspections pass muster under Rule 702 and *Daubert*. ECF No. 682 at PageID #: 78371-72. It counters that GATX's disagreement with his conclusions are not appropriate questions about his reliability, or proper subjects for a *Daubert* motion. ECF No. 682 at PageID #: 78372. Rather, Norfolk Southern provides that Mr. Wolf may rely on his professional experience in forming his opinion, because he has explained how his experience reliably applies to the facts and the conclusions reached.

An expert witnesses may rely on his own experience and "specialized knowledge," as long as he "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R.

10

(4:23CV0242)

Evid. 702 advisory committee's notes to 2000 amendments; *see also* United States v. Cunningham, 679 F.3d 355, 378–79 (6th Cir. 2012) (reciting that Rule 702 expressly contemplates that an expert may be qualified on the basis of experience). To this end, drawing on his 54 years of experience industry experience, Mr. Wolf opines that Train 32N received all required pre-departure inspections, and that the FRA identified defects do not suggest that Train 32N had inadequate inspections or that it caused or contributed to the derailment. *See* Rebuttal Expert Report of Gary P. Wolf (ECF No. 624-17) at PageID #: 35158-63. Mr. Wolf relies on his fieldwork and teaching experience in the rail industry to discuss the average length of an inspection, in addition to the performance of physical inspections. ECF No. 624-17 at PageID #: 35156-57; ECF No. 624-16 at PageID #: 35102 (Wolf testifying that he spends about two-thirds of a day teaching how to inspect freight cars, ranging from "the wedges to the wheels to the side bearings to the brakes, et cetera[.]") Wolf testifies that he has performed 215 inspections (ECF No. 624-16 at PageID #: 35102), and that while teaching, he has used a watch during those inspections to oversee Union Pacific and CSX employees average around two minutes per railcar inspection (ECF No. 624-16 at PageID #: 35103). It is not improper for Mr. Wolf to opine on his experience of documentation predeparture inspection practices. ECF No. 624-16 at PageID #: 35108; *see also* Auto Konnect, LLC v. BMW of N. Am., LLC, 590 F. Supp. 3d 977, 983-84 (E.D. Mich. 2022) (expert that worked over 40 years in the automobile industry could reliably testify about automotive industry practices and customs, the market for external service providers, and his personal observations about a third-party suppliers hiring practices). Therefore, the Court finds Mr. Wolf's opinions about predeparture inspection practices based on a reliable foundation, and that they will assist the trier of fact in understanding a relevant issue.

(4:23CV0242)

## IV. CONCLUSION

For the reasons above, the Court denies GATX's Motion to Exclude the Testimony of Gary Wolf.

IT IS SO ORDERED.

| | |
|---|---|
| January 22, 2025 | /s/ *Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |

12