PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| *IN RE*: EAST PALESTINE TRAIN DERAILMENT | ) CASE NO. 4:23-CV-00242 ) ) JUDGE BENITA Y. PEARSON ) ) **ORDER** ) [Resolving ECF No. 623] |

Pending is Third-Party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company's (collectively "Norfolk Southern") Motion to Exclude the Opinion of Mr. Peter Harnett. ECF No. 623. Third-Party Defendant OxyVinyls LP ("OxyVinyls") responded in opposition. ECF No. 669. Norfolk Southern replied. ECF No. 701. The Court has been advised, having reviewed the record, the parties' briefs, the applicable law. For reasons set forth below, the Court denies in part and grants in part Norfolk Southern's Motion to Exclude (ECF No. 623).

**I.  Background**

"Norfolk Southern Train 32N derailed at 8:54 pm on February 3, 2023, in East Palestine, Ohio. At the time of the derailment, Train 32N was traveling east on Main Track 1 along Norfolk Southern's Fort Wayne Line and consisted of two lead locomotives, one distributed power unit, and 149 rail cars." *See* Notice of Stipulation Regarding Uncontested Facts, ECF No. 585 at PageID #: 17601, ¶ 1. "In total, 38 cars derailed." ECF No. 585 at PageID #: 17601, ¶ 2. Five of these cars contained Vinyl Chloride Monomer ("VCM"), which is considered hazardous and flammable. *See* ECF No. 585-1 at #17609. OxyVinyls was the shipper of all five cars

(4:23CV242)

containing VCM and owned three of them. ECF No. 119 at PageID #: 1412, ¶ 6; *see also* ECF No. 740 at PageID #: 52005, ¶ 5.

Norfolk Southern settled with Plaintiffs represented in the Consolidated Class Action Complaint. *See* Order Granting Final Approval of Settlement, ECF No. 557. Norfolk Southern also lodged a Third-Party Complaint seeking derivative damages under theories of negligence and joint and several liability against certain railcar owners: OxyVinyls LP, GATX Corporation, General American Marks Company, and Trinity Industries Leasing Company.[1] *See* Third-Party Compl, ECF No. 119.

Norfolk Southern alleges that OxyVinyls was negligent in connection with its shipment of the five tank cars containing VCM by, in part, failing to provide accurate information on the hazard VCM could present. ECF No. 119 at PageID #: 1440–43. Norfolk Southern also alleges that OxyVinyls' representatives made conflicting statements on the ability of vinyl chloride to polymerize, offered inconsistent warnings regarding polymerization, and stated that polymerization was not possible under the derailment conditions despite the vinyl chloride having been exposed to extreme conditions. ECF No. 119 at PageID #: 1442, ¶ 168. OxyVinyls' Safety Data Sheet ("SDS") warned that air, sunlight, excessive heat, oxidizers, catalytic metals such as copper, aluminum, and their alloys, and certain catalytic impurities could result in explosive or violent polymerization. ECF No. 119 at PageID 1441–24 ¶¶ 69. Norfolk Southern alleges that the tank cars in which OxyVinyls shipped VCM had aluminum components in the pressure release devices and in other components on each of the cars shipping

---

[1] The Court dropped Trinity Industries Leasing Company as a Third-party Defendant with prejudice pursuant to Fed. R. Civ. P. 21 for the reasons stated in the Unopposed Motion of Third-party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company and Trinity (ECF No. 460). *See* Order (ECF No. 464).

(4:23CV242)

VCM.  ECF No. 119 at PageID #: 1442, ¶ 167.  Norfolk Southern also alleges that "[t]he vent and burn and release of hazardous vinyl chloride was the direct result of the improper shipping containers and Oxy Vinyls' failure to follow federal regulations and its own SDS."  ECF No. 119 at PageID #: 1442, ¶ 172.

OxyVinyls retained Mr. Peter Harnett, an expert on hazard communication, emergency response, risk assessment, safety, and industrial hygiene.  Norfolk Southern seeks to exclude certain of Mr. Harnett's opinions.[2]

## II.  Legal Standard

The Federal Rules of Evidence, and specifically Rule 702, "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  Rule 702 governs the admissibility of expert testimony and codifies the Supreme Court's holdings in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Expert testimony is admissible only if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case.  FED. R. EVID. 702.  In *United States v. Lang*, 717 Fed.Appx. 523 (6th Cir. 2017), the Sixth Circuit held that an expert opinion is reliable when it rests on a "*sufficient*" factual basis and is not "plainly contradict[ed]" by the record.  *Id.* at 536 (emphasis in original).  The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the proposed testimony satisfies those standards.  *See* FED.

---

[2] Norfolk Southern seeks the exclusion of certain of Mr. Harnett's opinions.  For efficiency and as done on its previous orders, the Court will rule on the exclusion of certain opinion evidence.  *See* 01/22/2025 Order, ECF No. 738 a PageID #: 51971 n.2.  If an opinion is excluded, no testimony or report on those topics may be admitted.

(4:23CV242)

R. Evid. 702 advisory committee's note (2000); *Daubert*, 509 U.S. at 592 n.10. Expert testimony is not admissible "is the exception rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

Furthermore, a *Daubert* analysis includes consideration of Fed. R. Evid. 403. *Id.*, at 595. Therefore, courts in the Sixth Circuit employ a four-prong test to determine the admissibility of expert opinions: "(1) that the witness, a qualified expert, (2) was testifying to a proper subject, (3) which conformed to a generally accepted explanatory theory, and (4) the probative value of the testimony outweighed its prejudicial effect." *United States v. Smithers*, 212 F.3d 306, 312 (6th Cir. 2000) (citing *United States v. Green*, 548 F.2d 1261 (6th Cir.1977)).

### III.    Analysis

A. Mr. Harnett is qualified to opine on emergency response and SDS.

Mr. Harnett describes himself as a scientist with thirty-five years of experience as an industrial hygienist. *See Expert Report of Peter Harnett,* ECF No. 623-3 at PageID #: 33834–35 (citing his "Statement of Qualifications"). He explains that, "[a]n industrial hygienist is a health and safety processional trained in the anticipation, recognition, evaluation, and control of occupation health and safety hazards. . . . Specific responsibilities may include chemical hazard communication, assessment of chemical and physical agent exposure, workplace audits, review of occupational and environmental health reports, review and summary of analytical data, and report writing." ECF No. 623-3 at PageID #: 33834–35. Norfolk Southern argues that Mr. Harnett "lacks relevant experience with train derailments, the polymerization of VCM, vent and burns, and emergency response." ECF No. 623-1 at PageID #: 33819 (capitalization altered).

4

(4:23CV242)

Mr. Harnett's experience includes emergency decision making generally, and more specifically, he has experience with chemical releases and field safety.  *See* ECF No. 623-3 at PageID #: 33834–35 ("Statement of Qualifications.").  The Court finds Mr. Harnett's "lack of specialized specific knowledge" is of "little consequence" to Mr. Harnett's qualifications; rather, his lack of specified knowledge "cut[s] against the weight given to his opinion." *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 455 (6th Cir. Aug. 9, 2013) (finding an expert on mechanical engineering competent to testify on firearms even though he was not a firearms expert because he was competent to offer opinions on various mechanical topics).

    B.  <u>Mr. Harnett's opinions on emergency response and SDS are reliable.</u>

Norfolk Southern argues that Mr. Harnett's opinions are unreliable because he engaged in cherry-picking of evidence, and did not have a reliable methodology or any methodology at all. *See* ECF No. 623-1 at Page ID #: 33822–26.  Norfolk Southern asserts that Mr. Harnett ignored contradictory evidence in rendering his SDS opinion and that he lacked reliable methodology in rendering his emergency response opinion.

Rather than cherry-pick, OxyVinyls responds that Mr. Harnett applied a reliable methodology.  OxyVinyls asserts that Mr. Harnett considered the "mounds of evidence" Norfolk Southern claims he ignored but found that evidence to "not bear on the question of whether OxyVinyls' SDS properly complied with the requirements of OSHA [Hazard Communication standard ("HCS")]." ECF No. 669 at PageID #: 46406–07.  OxyVinyls explains that Mr. Harnett's methodology followed multi-step, industry accepted risk assessment principles, and other "accepted industry and government standards and procedures" which he compared with the emergency response.  ECF No. 669 at PageID #: 46409–10.

5

(4:23CV242)

On the record before it, the Court finds that Mr. Harnett's opinions on risk assessment, emergency response, and SDS are reliable. Mr. Harnett did not base his opinion "only on facts that 'plainly contradict' undisputed evidence." *Lang*, 717 F. App'x at 536 (agreeing that the "sufficiency" of an expert's factual basis means cherry-picking data is just as bad as omitting it or making it up altogether). He did not ignore or omit contradictory evidence but weighed all the evidence to determine which was more relevant to his methodology and analysis. *See* ECF No. 669 at PageID #: 46406 (citing, for example, Mr. Harnett's deposition to prove that he considered the testimony and found it did not bear on whether OxyVinyls' SDS complied with OSHA HCS's requirements). *See also* ECF No. 623-3 at PageID #: 33840–42 (finding that the process by which OxyVinyls created the SDS "relied upon appropriate and reliable scientific sources") (capitalization altered). Mr. Harnett also explains his methodology in his opinion. *See* ECF No. 623-2 at PageID #: 33838–40 (explaining "OSHA's Hazard Communication Standard (HCS) . . . Department of Transportation PHMSA Emergency Response Guidebook . . . [and] Risk Assessment and Decision-Making Analysis"). Therefore, the Court finds that Mr. Harnett's opinions on risk assessment, SDS, and emergency response are reliable and based on reliable methodology.

C. <u>Mr. Harnett is not qualified to opine on confirmation bias.</u>

While Mr. Harnett is qualified to opine as ruled above, he is not qualified to opine on whether Norfolk Southern, its representatives, and Unified Command acted with confirmation bias.

Norfolk Southern points out that Mr. Harnett lacks any qualifications in psychology from which to opine on confirmation bias. *See* ECF No. 623-1 at PageID #: 33821. Norfolk Southern also argues that Mr. Harnett's confirmation bias opinion is based on an article in a magazine,

6

(4:23CV242)

which is not an academic journal or psychological research, and supplies no principles, methodology, or justification for this opinion. ECF No. 623-1 at PageID #: 33826–27.

OxyVinyls' argument, that Mr. Harnett has sufficient expertise on risk assessment and emergency response, and that this background in risk assessment permits his opinion on whether Norfolk Southern and its contractors exhibited confirmation bias, is unpersuasive. ECF No. 669 at PageID #: 46411–12. The Court finds OxyVinyls' insistence that Mr. Harnett need not be a psychologist or possess any social science discipline before reliably testifying about failures to maintain objectivity in Norfolk Southern's decision-making regarding the vent and burn equally unpersuasive. ECF No. 669 at PageID #: 46412.

Confirmation bias is the label given to "people's tendency to process information by looking for, or interpreting, information that is consistent with their existing beliefs." *Confirmation Bias*, BRITANNICA, (Dec. 17, 2024), https://www.britannica.com/science/confirmation-bias (last accessed Jan. 27, 2025) (categorizing "confirmation bias" under "Psychology & Mental Health"). This psychological concept requires an understanding of a person's motivations, decision-making, and information process, which would require an understanding of the psychology of humans, generally, as well as the specific individual. Nowhere in Mr. Harnett's extensive curriculum vitae is there a single mention of psychology or any psychology-related qualifications. *See Mr. Harnett's Curriculum Vitae*, ECF No. 623-3 at PageID #: 33874– 79. Thus, Mr. Harnett's opinion that Norfolk Southern or its contractors exhibited confirmation bias is excluded. *See* ECF No. 623-3 at PageID #: 33862–64 and PageID #: 33867.

(4:23CV242)

## IV. Conclusion

Norfolk Southern's Motion to Exclude (ECF No. 623) is granted in part and denied in part. Because the Court finds that Mr. Harnett's opinions on risk assessment, SDS, and emergency response are reliable and based on reliable methodology, the motion to exclude them is denied. Because Mr. Harnett is not qualified to opine on confirmation bias, the opinions he rendered on that topic are excluded. Accordingly, Section VI(B) and conclusion Section VII(C)(2) of his report are excluded.

IT IS SO ORDERED.

| January 27, 2025 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson<br>United States District Judge |