PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| *IN RE*: EAST PALESTINE TRAIN DERAILMENT | ) ) ) ) ) ) | CASE NO. 4:23CV0242 <br><br> JUDGE BENITA Y. PEARSON <br><br> **ORDER** <br> [Resolving ECF No. 619] |

Pending is Third-Party Defendants GATX Corporation and General American Marks Company's (collectively "GATX") Motion to Exclude in Part the Expert Testimony of Michael Lunsford (ECF No. 619). Norfolk Southern Railway Corporation and Norfolk Southern Company (collectively "Norfolk Southern") filed an Opposition. (ECF No. 680). GATX replied. (ECF No. 695). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons above, GATX's Motion to Exclude is granted in part and denied in all other respects.

## I. Background

**A.**

These facts are largely excerpted from the Notice of Stipulation Regarding Uncontested Facts (ECF No. 586) between Norfolk Southern and GATX.

On February 3, 2023, "Norfolk Southern Train 32N derailed at approximately 8:54 pm on February 3, 2023, in East Palestine, Ohio. At the time of the derailment, Train 32N was traveling east on Main Track 1 along Norfolk Southern's Fort Wayne Line and consisted of two lead locomotives, one distributed power unit, and 149 rail cars." *See* ECF No. 586 at PageID #: 17627, ¶1. "38 railcars derailed, including 11 cars carrying hazardous materials. The tank car UTLX 205907 containing butyl acrylates, a flammable liquid, was breached in the derailment

4:23CV0242

and, as a result, released its contents which ignited and formed a pool fire." ECF No. 586 at PageID #: 17632, ¶¶ 56-57. "The pool fire resulting from Train 32N was near or surrounding five DOT-105J300W (DOT 105) tank cars carrying [vinyl chloride monomer] [a flammable gas], including GATX 95098[,] which was designed and constructed to transport [vinyl chloride monomer]." ECF No. 586 at PageID #: 17629, 17632 ¶¶ 17, 19, 59. Before the derailment, on February 1, 2023, "four carmen from the [Terminal Railroad Association of St. Louis] TRRA performed an air brake test on Train 32N at 8:30 PM." ECF No. 586 at PageID #: 17630 ¶34. "[A]round February 4, 2023, a Unified Command was formed[] that included []local first responders and various federal and state agencies." ECF No. 586 at PageID #: 17633 ¶¶ 60-61. Two days later, "Unified Command, with the recommendation of Norfolk Southern and without dissent" executed a "vent and burn" procedure that "involves detonating explosives at certain locations on each tank to release and burn off a railcar's hazardous contents. ECF No. 586 at PageID #: 17632-33; *see also* ECF No. 621 at PageID #: 32093. "GATX was not involved in the decision to perform the vent and burn." ECF No. 586 at PageID #: 17633 ¶64.

**B.**

Norfolk Southern submitted a Third-Party Complaint seeking derivative damages under theories of negligence and joint and several liability against certain railcar owners: OxyVinyls LP, Gatx Corporation, General American Marks Company, and Trinity Industries Leasing Company.[1] *See* Third-Party Compl. (ECF No. 119). To support its third-party claims, Norfolk Southern relies on the testimony of Michael Lunsford, an emergency responder, opining on the

---

[1] The Court dropped Trinity Industries Leasing Company as a Third-party Defendant with prejudice pursuant to Fed. R. Civ. P. 21 for the reasons stated in the Unopposed Motion of Third-party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company and Trinity (ECF No. 460). *See* Order (ECF No. 464).

2

4:23CV0242

adequacy of Norfolk Southern's response to the derailment. *See* Expert Report of Michael Lunsford (ECF No. 619-1). GATX moves the Court to exclude Mr. Lunsford's opinions regarding:

> (1) the propriety of Norfolk Southern's decision to conduct the vent and burn, including testimony regarding any actual or potential critical damage to the VCM tank cars, Norfolk Southern's consideration of any such damage as part of its derailment response, the risk of a tank car rupture, catastrophic failure, or BLEVE due to any such damage, and whether Norfolk Southern was justified in including all five vinyl-chloride tank cars in the vent and burn; and (2) the psychology behind Norfolk Southern's decision to conduct the vent and burn.

*See* ECF No. 619.

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence provides the standards for admitting expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id*.

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 597 (1993). It also governs the admissibility of expert testimony and codifies the Supreme Court's holdings in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S.

3

4:23CV0242

137 (1999). Expert testimony is admissible only if (1) the testimony is based on sufficient facts or data, (2) the testimony comes from reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. An expert's opinion cannot be based on mere speculation. McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801 (6th Cir. 2000). The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the proposed testimony satisfies those standards. See Fed. R. Evid. 702 advisory committee's note (2000); *Daubert*, 509 U.S. at 592 n.10. Expert testimony is not admissible "is the exception rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting Fed. R. Evid. 702 advisory committee's note (2000)). When evaluating a scientific or experiential expert, a court "must examine the expert witness's testimony for reliability and relevance." United States v. Martinez, 588 F.3d 301, 323 (6th Cir. 2009).

Furthermore, a *Daubert* analysis includes consideration of Fed. R. Evid. 403. See *Daubert*, 509 U.S. at 595. Therefore, courts in the Sixth Circuit employ a four-prong test to determine the admissibility of expert opinions: "(1) that the witness, a qualified expert, (2) was testifying to a proper subject, (3) which conformed to a generally accepted explanatory theory, and (4) the probative value of the testimony outweighed its prejudicial effect." United States v. Smithers, 212 F.3d 306, 312 (6th Cir. 2000) (citing United States v. Green, 548 F.2d 1261 (6th Cir.1977)).

### III. Analysis

Mr. Lunsford promotes himself as an expert in hazardous materials emergency response. See Michael Lunsford Dep. Tr. (ECF No. 619-2) at PageID #: 30308 ("I understand that I am being offered as an expert in hazardous materials emergency response expert."). He is the

4

4:23CV0242

founder of Florida Coastal Associates, a safety, health, hazardous materials, and emergency management consulting firm he founded in 2024. *See* Appendix A (ECF No. 619-1) at PageID #: 30209. With over 35 years of firefighting, emergency response, and health and safety compliance experience, he concludes that "Norfolk Southern's response [to the derailment] was prompt, appropriate and prudent." ECF No. 619-1 at PageID #: 30209.

To support his conclusion, Mr. Lunsford makes three opinions about the competency of Norfolk Southern's response:

> 1. [I]n the initial hours after the derailment, Norfolk Southern followed typical, proactive protocols for internal communication, agency communication and dispatching resources to the scene.
> 2. [I]n the hours and days following the derailment, Norfolk Southern properly responded to the derailment.
> 3. Norfolk Southern and its specialist contractors reasonably concluded that a vent and burn was necessary for public and responder safety and appropriately communicated that recommendation to the Unified Command Incident Commander.

ECF No. 619-1 at PageID #: 30209. Mr. Lunsford also offers a rebuttal report against GATX proffered experts Dr. Abid Kemal and Dr. Chason Coelho and OxyVinyl's proffered experts Peter Harnett, E. Bryan Coughlin, and Dr. Georges Melhelm. *See* Rebuttal Expert Report of Michael Lunsford (ECF No. 619-3). GATX moves to exclude Mr. Lunsford testimony, arguing that he cannot opine on "(1) the propriety of Norfolk Southern's decision to conduct the vent and burn," and "(2) the psychology behind Norfolk Southern's decision to conduct the vent and burn." ECF No. 619 at PageID #: 30198.

> **1. Mr. Lunsford's Qualifications**
>
>> **a. Mr. Lunsford's Qualifications to Opine on the Recommendation to Perform a Vent and Burn**

5

4:23CV0242

GATX asserts that Mr. Lunsford lacks the qualifications to opine on Norfolk Southern and its contractors recommendation to perform a vent and burn, because he is inexperienced with the derailment of tank cars carrying VCM (ECF No. 619 at PageID #: 30186), and because he lacks training, education, or expertise on polymerization, *see* ECF No. 619 at PageID #: 30187. *See also* ECF No. 695 at PageID #: 51179 (positing, "[t]he problem for Norfolk Southern is that Lunsford's opinions are not 'derived substantially from practical experience.'") (citation omitted).

Norfolk Southern responds that Mr. Lunsford's experience and education in emergency response, firefighting, and railroad hazmat incident response qualifies him to opine on the adequacy of Norfolk Southern's response to the train derailment. *See* Norfolk S. Ry. Co. and Norfolk S. Co.'s Opp'n to GATX's Mot, to Exclude in Part Expert Ops. and Test. of Michael Lunsford (ECF No. 680) at PageID #: 47511-12. It also answers that Mr. Lunsford's inexperience with serving as an expert witness (ECF No. 680 at PageID #: 47513), derailments involving VCM (ECF No. 680 at PageID #: 47514), or lack of expertise in VCM polymerization (ECF No. 680 at PageID #: 47515) does not mean he cannot meet Rule 702's threshold.

Rule 702 requires that the court "must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997). "[Courts] take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient[.]" *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015). In making that determination, the question is whether an expert can help resolve an issue in the case. *Bridger v. Union Ry. Co.,* 355 F.2d 382, 388 (6th Cir. 1966) (finding an expert's opinion "requires an *ad hoc* determination, predicated upon the probable value of the witness's testimony in relation to the intricacies of the particular lawsuit."). "[T]he

6

4:23CV0242

expert need not have complete knowledge about the field in question and need not be certain. He need only be able to aid the jury in resolving a relevant issue." Mannino v. Int'l Mfg. Co., 650 F.2d 846, 850 (6th Cir.1981).

Considering Mr. Lunsford's education and experience, the Court finds that he is qualified to opine on the appropriateness of the vent and burn response. Mr. Lunsford holds Associate and Bachelor of Science degrees in Fire Protection and Safety Engineering Technology, and a Master of Science degree in Industrial Engineering Technology. See ECF No. 619-1 at PageID #: 30274. He is informed in disaster response and emergency planning (ECF No. 619-1 at PageID #: 30272), he has managed CSX Transportation (a Class I freight railroad company) emergency response activities that include derailments (ECF No. 619-1 at PageID #: 30273), and has served as a corporate witness for hazardous materials incidents and derailments, see ECF No. 619-2 at PageID #: 30293. His education, training, and emergency response and hazardous materials experience allow him to opine on the appropriateness of Norfolk Southern's response to the train derailment. See Palatka v. Savage Arms, Inc., 535 F. App'x 448, 455 (6th Cir. 2013) (ruling mechanical engineering professor was qualified to opine various mechanical topics, such as a firearm, despite not being a firearm expert).

Because the Court finds that Mr. Lunsford is qualified, GATX's motion to exclude on this ground is denied.

### b. Mr. Lunsford's Qualification to Opine on the Psychology Behind the Recommendation to Perform a Vent and Burn and the Presence of Bias

Arguing that Mr. Lunsford lacks the education, training, or experience to opine on psychological factors, GATX moves for the exclusion of Mr. Lunsford's opinion that Norfolk Southern did not exhibit certain biases or "group think" in rebuttal to Dr. Chason Coelho, a cognitive neuroscientist and human factors expert. ECF No. 619 at PageID #: 30188. In short,

7

4:23CV0242

GATX asserts that Mr. Lunsford may only opine on his specific subject of expertise.  ECF No. 695 at PageID #: 51192.

Norfolk Southern responds that Mr. Lunsford does not opine on psychological factors, but he offers opinions about the emergency response, an opinion that Dr. Coelho lacks qualifications to offer.  ECF No. 680 at PageID #: 47516.  Norfolk Southern provides that Mr. Lunsford answers, "whether the emergency responders appropriately responded to the derailment," and Mr. Lunsford's experience allows him to rebut Dr. Coelho's conclusions.  ECF No. 680 at PageID #: 47517.

The Court will not exclude Mr. Lunsford's opinion in its entirety, because he offers opinions from the perspective of a hazardous materials emergency response expert—not a psychological or human factor expert.  To clarify, Mr. Lunsford identifies Dr. Coelho's human factor conclusions, and refutes those conclusions as an expert relying on his experience and observations as emergency responder.  For example, in responding to Dr. Coelho's opinion that Norfolk Southern and its contractors engaged in availability and anchoring biases when confronted with determining the existence of polymerization, Mr. Lunsford explains "[h]azmat response leaders seldom have all the data they would like to make informed decisions, which makes hazmat emergencies generally more challenging than medical emergencies, rescues or structure fires."  ECF No. 619-3 at PageID #: 30451.  It is proper for Mr. Lunsford to opine on his experience and observations as an emergency responder.  See *Auto Konnect, LLC v. BMW of N. Am., LLC*, 590 F. Supp. 3d 977, 983-84 (E.D. Mich. 2022) (finding expert who worked over 40 years in the automobile industry could reliably testify about automotive industry practices and customs, the market for external service providers, and his personal observations about a third-party suppliers hiring practices).

8

4:23CV0242

There is an issue, however, regarding whether Mr. Lunsford also opines on the existence or lack thereof, of certain biases. *See e.g.*, ECF No. 619-3 at PageID #: 30452 (testifying on availability and anchoring bias, "Based on my review of the available materials and my personal experience responding to hazardous materials emergencies, the only 'bias' I can discern in the conduct of Norfolk Southern and its hazmat specialty contractors is a bias toward safety and protecting human life); *Id*. (testifying, "Overconfidence has been confused by Dr. Coelho with concern for public safety and preventing an uncontrolled explosion of one of the tank cars."); *Id*. (testifying, "After reading Dr. Coelho's explanation of overconfidence, I am certain that I have experienced it in the emergency response profession, but I did not see it displayed in Mr. McCarty as claimed." In making these statements, Mr. Lunsford conflates his own expertise with that of a psychological expert, when he tries to identify biases from his own experience working as an emergency responder. Mr. Lunsford lacks the expertise to *identify* and then opine on psychological factors, such as biases.

The Court grants the exclusion of Mr. Lunsford's opinion in rebuttal to Dr. Coelho in part. The Court excludes Mr. Lunsford's opinion and testimony on the identification or existence of biases. GATX's motion to exclude Mr. Lunsford's opinion in rebuttal to Dr. Coelho is denied in all other respects.

**2. Reliability of Mr. Lunsford's Methodology**

GATX specifies that Mr. Lunsford's opinion on the vent and burn that analyzes past derailments responses and compares them to Norfolk Southern's conduct in East Palestine results from is an unreliable methodology, and even if the methodology were reliable, Mr. Lunsford could not reliably apply it here. ECF No. 619 at PageID #: 30188. Applying *Daubert's* reliability standard, GATX argues that Mr. Lunsford's analysis lacks acceptance within the

9

4:23CV0242

scientific community because he has not published or identified any published work that supports his methodology. ECF No. 619 at PageID #: 30189; *see also* ECF No. 695 at PageID #: 51178. GATX claims that Mr. Lunsford's historical-comparison methodology--- comparing a vent and burn from two derailments involving VCM---suffer from analytical and factual gaps, because he did not rely on the publicly available NTSB report and could not identify key facts related to the tank cars. ECF No. 619 at PageID #: 30190-91. GATX also asserts that Mr. Lunsford's opinion on the vent and burn fails to rely on critical factors and data. ECF No. 619 at PageID #: 30192-94.

      Norfolk Southern responds that GATX applies the wrong reliability standard. Norfolk Southern urges that, in instances of non-scientific expert testimony, qualifications alone can make an expert's opinion reliable. ECF No. 680 at PageID #: 47518. Against that backdrop, it asserts that Mr. Lunsford's experience involving railroad derailment and hazmat incident makes his opinions reliable, because he relies on a reasonable factual basis. ECF No. 680 at PageID #: 47519; *see also* ECF No. 680 at PageID #: 47522 (explaining that Mr. Lunsford's opening report contains 246 supporting citations, and his rebuttal report contains 140 footnotes and considers nearly two pages of material). It also responds that the failure to consider the circumstances that distinguish the Waverly and Livingston derailments from the East Palestine derailment (ECF No. 680 at PageID #: 47520-21), the failure to consider the East Palestine responders decision to not vent and burn the isobutylene car (ECF No. 680 at PageID #: 47523-24), and the failure to consider other critical factor goes to the weight of his opinions, rather than its admissibility.

      "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527

10

4:23CV0242

F.3d 517, 529–30 (6th Cir. 2008). "[W]here non-scientific expert testimony is involved, 'the *Daubert* factors may be pertinent,' or 'the relevant reliability concerns may focus upon personal knowledge or experience.'" Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 295 (6th Cir. 2007) (alteration in original) (quoting First Tennessee Bank Nat. Ass'n v. Barreto, 268 F.3d 319, 335 (6th Cir. 2001)).  In United States v. Lang, 717 Fed.Appx. 523 (6th Cir. 2017), the Sixth Circuit held that an expert opinion is reliable when it rests on a "*sufficient*" factual basis and is not "plainly contradict[ed]" by the record.  Id. at 536 (emphasis in original).  "[T]he reliability inquiry is a flexible one and may 'focus upon personal knowledge and experience[.]'" Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 432 (6th Cir. 2007) (quoting *Kumho,* 526 U.S. at 150).

The Court finds that Mr. Lunsford's emergency response expert testimony constitutes "technical or other specialized knowledge[,]" and that the *Daubert* factors alone cannot measure the reliability of his testimony.  See Fed. R. Evid. 702; *see also* Barreto, 268 F.3d at 335 (upholding district court's admittance of non-expert testimony that "derived largely from [the expert's] own practical experience throughout forty years in the banking industry[,]" because "[o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation.")  The more important question is whether Mr. Lunsford's analysis is reliable, despite having not been published, nor referred to any other work that uses his methodology.  The Court finds that it is.

Mr. Lunsford has over 35 years of experience in emergency response, and health and safety compliance.  He has managed more than 400 railroad incident emergency response efforts for a Class I railroad company, such as assisting with CSX train derailments in Painesville, Ohio and El Dorado, Arkansas (ECF No. 619-2 at PageID #: 30294), and has served as a Safety

11

4:23CV0242

Manager and Health and Lead for a polyvinyl chloride ("PVC") resin plant, and a VCM manufacturing plant. ECF No. 619-1 at PageID #: 30207. He has also participated in "two vent and burn operations" (ECF No. 619-2 at PageID #: 30296). In rendering his opinions, he relies on numerous sources, including materials from the National Transportation Safety Board ("NTSB"), the Federal Railroad Administration. *See* ECF No. 619-1 at PageID #: 30276, 30284.

GATX can challenge Mr. Lunsford's lack of consideration the circumstances that distinguish the Waverly and Livingston derailments from the East Palestine derailment; his lack of consideration of the East Palestine responders' decision to not vent and burn the isobutylene car; and his lack of consideration of other critical factors, on cross-examination. *See Daubert,* 509 U.S. at 596 (finding "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

The Court denies GATX's motion to exclude Mr. Lunsford's opinions for lack of reliability.

> **3. Whether Mr. Lunsford's Opinion on the Vent and Burn Recommendation Will Assist the Trier of Fact**

GATX implores that Lunsford's opinion on the vent and burn will not assist the trier of fact in understanding whether Norfolk Southern and its contractor's "decision to vent and burn GATX 95098 was proximately caused by GATX's conduct, including GATX's use of an aluminum protective housing cover or aluminum angle valve handwheels." ECF No. 619 at PageID #: 30194. Instead, it suggests that his testimony only helps the "trier of fact understand whether those features of GATX 95098 contributed to Norfolk Southern's *actual decision* to execute the vent and burn." ECF No. 619 at PageID #: 30193-94 (emphasis in original).

12

4:23CV0242

Norfolk Southern answers that relevance under Rule 702 does not require an expert to opine on an ultimate issue, but "help the trier of fact to understand the evidence or to determine a fact in issue." ECF No. 680 at PageID #: 47524.  For this reason, it argues that Mr. Lunsford's opinion is relevant, because it helps the jury understand why Norfolk Southern and its contractors recommended the decision to conduct a vent and burn to the Unified Command.  *Id*.  It also responds that Mr. Lunsford's opinion on the vent and burn decision is relevant because it pertains to GATX's contributory negligent affirmative defense (ECF No. 680 at PageID #: 47524-25), nor is it speculative because GATX claims that Mr. Lunsford relies on evidence that was unavailable to emergency responders at the time of the derailment, *see* ECF No. 680 at PageID #: 47526.

For an expert opinion to be admissible, the expert must offer testimony that "will help the trier of fact to understand the evidence or to determine a fact in issue." *In re Scrap Metal,* 527 F.3d at 529 (quoting Fed. R. Evid. 702(a)).  "This requirement has been interpreted to mean that scientific testimony must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert,* 509 U.S. at 592); *see also United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993) (finding "there must be a 'fit' between the inquiry in the case and the testimony, and expert testimony that does not relate to any issue in the case is not relevant and therefore not helpful.")  In other words, "a party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride,* 218 F.3d at 578.

13

4:23CV0242

The Court finds that Mr. Lunsford's opinion on the vent and burn decision will assist the trier of fact in understanding why Norfolk Southern and its contractors recommended the decision to perform a vent and burn.[2] For example, Mr. Lunsford's report explains that other potential response options were not advisable (ECF No. 619-1 at PageID #: 30254), and why an option like waiting for the tank cars to cool down was not possible, *see* ECF No. 619-1 at PageID #: 30256. The Court also rejects GATX's assertion that Mr. Lunsford's opinion is speculative because it would require him to consider evidence that was unavailable to the emergency responders at the time of the derailment. Norfolk Southern and the responders had to consider the effects of what would occur if it did not perform a vent and burn. *See e.g.*, ECF No. 619-2 at PageID #: 30319 (testifying, "A. . . . It's not whether the cars had any damage; it's the potential. It's the possibility. It's the probability. It's the ability to kill people. It's the ability to explode. It's the ability to fail catastrophically. That's what the responders have to keep in mind.")

### 4. Whether Mr. Lunsford's Vent and Burn Opinion Flows from His Natural Line of Work

GATX asserts that Mr. Lunsford's opinion about the adequacy of Norfolk Southern's derailment response does not stem from his natural work, because he has no training or experience with vent and burn operations concerning VCM tank cars, and he has never published

---

[2] GATX also raises various arguments that Lunsford's opinion will confuse the jury. *See* ECF No. 695 at PageID #: 51190. The Court refuses to hear these arguments because GATX raises them for the first time in its reply brief. *Benham v. Comm'r of Internal Revenue*, No. 19-1938, 2021 WL 320765, at *3 (6th Cir. Jan. 8, 2021) ("a party may not, for the first time in a reply brief, raise issues that were not raised in the opening brief.")

14

4:23CV0242

any research, studies, or conducted tests on the subjects. ECF No. 619 at PageID #: 30197. To support its proposition that Lunsford prepared his work solely for this litigation, it refers to Mr. Lunsford contacting OxyVinyls before Norfolk Southern to offer his services. ECF No. 619 at PageID #: 30197; *see also* ECF No. 619-2 at PageID #: 30292-93.

Norfolk Southern responds that Mr. Lunsford's opinions naturally flow from his firefighting, emergency response, and health and safety compliance experience. ECF No. 680 at PageID #: 47527. It also asserts that GATX's prior arguments emphasising that Mr. Lunsford had never been retained as an expert witness before, weighs against the proposition that he is an expert for hire. ECF No. 680 at PageID #: 47528.

The Sixth Circuit "views with special caution expert testimony prepared solely for purposes of litigation, rather than flowing from an expert's line of scientific or technical work." *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182, 190 (6th Cir. 2012) (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434–35 (6th Cir. 2007)). For this reason, courts evaluate whether the opinion was "conceived after the start of this litigation" or if it was not a product of their independent work[.]" *Wilden v. Laury Transp., LLC*, 901 F.3d 644, 655 (6th Cir. 2018) (quoting *Johnson*, 484 F.3d at 434). An opinion given "by a 'quintessential expert for hire' does not require that the expert 'be accorded a presumption of *unreliability*'; rather, the trial court must evaluate whether there is some objective basis for the opinion." *Johnson*, 484 F.3d at 434.

The Court finds that Mr. Lunsford's opinions are rooted in objective, verifiable evidence, because he relies on his 35 years of experience, and a variety of academic literature, government agency reports, and depositions taken in this matter. Therefore, the Court rejects GATX's request to exclude Dr. Coelho's opinions because he is a quintessential expert for hire.

4:23CV0242

## IV. CONCLUSION

For the reasons above, GATX's Motion to Exclude (ECF No. 619) is granted in part, that is: the Court excludes Mr. Lunsford's opinion and testimony on the identification or existence of biases. GATX's motion to exclude Mr. Lunsford's opinions is denied in all other respects.

IT IS SO ORDERED.

| | |
|---|---|
| January 31, 2025 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |