PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| *IN RE*: EAST PALESTINE TRAIN DERAILMENT ) ) ) ) ) ) | CASE NO. 4:23-CV-00242<br><br>JUDGE BENITA Y. PEARSON<br><br>**ORDER**<br>[Resolving ECF No. 622] |

Pending is Third-Party Defendants' GATX Corporation and General American Marks Company's (collectively "GATX") Motion to Exclude Testimony of Joseph Poplawski. ECF No. 622. Third-Party Plaintiffs Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively "Norfolk Southern") responded in opposition. ECF No. 681. GATX replied. ECF No. 696. The Court has been advised, having reviewed the record, the parties' briefs, the applicable law. For reasons set forth below, the Court denies the Motion to Exclude in its entirety.

**I.  Background**

On February 3, 2023, "Norfolk Southern Train 32N derailed at approximately 8:54 pm on February 3, 2023, in East Palestine, Ohio. At the time of the derailment, Train 32N was traveling east on Main Track 1 along Norfolk Southern's Fort Wayne Line and consisted of two lead locomotives, one distributed power unit, and 149 rail cars." *See Notice of Stipulation Regarding Uncontested Facts between Norfolk Southern and GATX*, ECF No. 586 at PageID #: 17627, ¶ 1.

(4:23CV242)

GPLX 75465 (Car 23)—the railcar owned by GATX[1]—was added to Train 32N at the Terminal Railroad Association of St. Louis's ("TRRA") terminal in Madison, Illinois. TRRA, not Norfolk Southern, was obligated to inspect Train 32N before it departed Madison. *See Deposition of James H. Rader*, ECF No. 629-4 at PageID #: 37936:20–37937:3. Before it derailed in East Palestine, Train 32N passed over a series of hot bearing detectors ("HBDs") that monitor the radiant temperatures of a train's roller bearings to prevent derailments. A Norfolk Southern HBD in Salem, Ohio recorded a bearing temperature spike on the L1 wheel of GPLX 75465—whose failed roller bearing caused the derailment on February 3, 2023. GATX argues that Train 32N derailed in East Palestine because Norfolk Southern's HBD system failed to inform the crew of a bearing temperature spike, which would have caused the crew to stop the train. Gary Rambo – the wayside analyst on duty when Train 32N derailed—missed the 953 alert[2] at the Salem detector because he was preoccupied with alerts from five other trains. *See Deposition of Gary Rambo*, ECF No. 622-6 at PageID #: 33458, 33463. The crew of Train 32N testified that had they been informed of the 953 alert at the Salem detector, they would have stopped the train before it derailed in East Palestine. *See Deposition of Kevin Stauffer*, ECF No. 622-7 at PageID #: 33626; *Deposition of Michael Anthony Faison*, ECF No. 622-5 at PageID #: 33401; *Deposition of Javon Jordan Dep. Tr.*, ECF No. 622-8 at PageID #: 33712.

---

[1] *See Stipulation Regarding Uncontested Facts*, ECF No. 586 at PageID #: 17627, ¶¶ 3–4; *see also Stipulation*, ECF No. 740. "At the time of the derailment, GPLX 75465 was leased to Braskem America, Inc. ("Braskem")." ECF No. 586 at PageID #: 17628, ¶ 12.

[2] "A 953 Alert indicates a bearing temperature spike." *Opposing Expert Report of James H. Rader*, ECF No. 629-3 at PageID #: 37743 (citing *Deposition of Thomas Fox*, ECF No. 622-4) at PageID #: 33286; NS-CA-000692637, p. 1 ("953 Alert (Bearing Temperature Spike)").

2

(4:23CV242)

Norfolk Southern retained Mr. Joseph Poplawksi, an expert on bearings. GATX seeks to exclude Mr. Poplawski's testimony.

## II.     Legal Standard

The Federal Rules of Evidence, and specifically Rule 702, "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 governs the admissibility of expert testimony and codifies the Supreme Court's holdings in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Expert testimony is admissible only if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case. FED. R. EVID. 702. In *United States v. Lang*, 717 Fed.Appx. 523 (6th Cir. 2017), the Sixth Circuit held that an expert opinion is reliable when it rests on a "*sufficient*" factual basis and is not "plainly contradict[ed]" by the record. *Id.* at 536 (emphasis in original). The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the proposed testimony satisfies those standards. *See* FED. R. EVID. 702 advisory committee's note (2000); *Daubert*, 509 U.S. at 592 n.10. Expert testimony is not admissible "is the exception rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (quoting FED. R. EVID. 702 advisory committee's note (2000)).

Furthermore, a *Daubert* analysis includes consideration of Fed. R. Evid. 403. *Id.*, at 595. Therefore, courts in the Sixth Circuit employ a four-prong test to determine the admissibility of expert opinions: "(1) that the witness, a qualified expert, (2) was testifying to a proper subject, (3) which conformed to a generally accepted explanatory theory, and (4) the probative value of

3

(4:23CV242)

the testimony outweighed its prejudicial effect." *United States v. Smithers*, 212 F.3d 306, 312 (6th Cir. 2000) (citing *United States v. Green*, 548 F.2d 1261 (6th Cir.1977)).

### III. Analysis

A. <u>Mr. Poplawski is qualified as an expert.</u>

The Court finds GATX's argument that Mr. Poplawski is not qualified to testify as an expert regarding what cause the bearing failure unpersuasive. GATX states that because Mr. Poplawski has "no specific bearing-related experience," his "general engineering experience does not qualify him to opine on railcar bearing failure." ECF No. 622 at PageID #: 33128–29. See *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (affirming the district court's decision to exclude an engineering expert) and *Pride v. BIC Corp.*, 54 F. Supp.2d 757, 761 (E. D. Tenn. 1998) ("Testimony of engineers may be excluded if it is not particular to the science involved in the case.").

The Court finds Mr. Poplawski has expertise regarding the science of the relevant engineering. Unlike the case law that GATX cites as support, the experience Mr. Poplawski lacks is in the situation rather than the science. ECF No. 622 at PageID #: 33129 (listing Poplawski's lack of qualifications, including no train experience, no publication on the particular matter, and no water-related bearing failure testimonial experience). Mr. Poplawski's experience is in "rolling element bearings and the related mechanical equipment." *Poplawski's Opening Expert Report,* ECF No. 618-7 at PageID #: 27801. *See also Joseph V. Poplawski's Curriculum Vitae*, ECF No. 618-7 at PageID #: 27-876–84. While Mr. Poplawski notes a lack of *testimony* experience with railcars, his "lack" of experience with train derailments is not as extensive as GATX argues. *See Poplawski's Deposition Transcript*, ECF No. 622-1 at PageID #: 33147, 50:10–52:19 (noting expert experience with train derailments and railcars but that he never

4

(4:23CV242)

testified or wrote an expert report) *and* PageID #: 33147–48, 52:23–55:8 (noting the same with water etching and water intrusion).  These all go to the weight of Mr. Poplawski's testimony rather than his qualification or the science of the engineering.  Thus, the Court finds Mr. Poplawski qualified to testify as an expert on bearings.

    B. <u>Mr. Poplawski's bearing opinions are reliable.</u>

The Court is not persuaded by GATX's arguments that Mr. Poplawski's opinion is unreliable because it lacks evidence, methodology and is pure speculation.  GATX separates its reasoning against Mr. Poplawski's reliability into four buckets: (1) Mr. Poplawski's extreme weather opinions, (2) Mr. Poplawski not examining key evidence, (3) Mr. Poplawski's Brenco seal opinion, and (4) lack of alternative causation consideration.

Norfolk Southern argues that Mr. Poplawski's opinions are reliable because he "examin[ed] the available evidence in light of his own extensive experience" and does have support on the record, including from independent experts.  ECF No. 681 at PageID #: 47543 *and* PageID #: 47518 ("Independent experts before federal regulators offered the same testimony, which Mr. Poplawski cites.").

But GATX's argument "fundamentally confuses the *credibility and accuracy* of [Mr. Poplawski's testimony] with its *reliability*."  *In re Scrap Metal*, 527 F.3d at 529 (emphasis in original).  While GATX makes much of Mr. Poplawski's lack of "scientific certainty," the L1 bearing on which Mr. Poplawski is opining "was just completely destroyed" making such certainty impossible.  ECF No. 622-1 at PageID #: 33176, 166:2–166:14.  Therefore the "key" physical evidence that GATX speaks of is relative and Mr. Poplawski did examine the relevant

5

(4:23CV242)

"key" evidence.[1] ECF No. 622-1 at PageID #: 33162, 111:2–111:16 (noting Mr. Poplawski sent out his partner to be "eyes at the inspection"). Therefore GATX's true contention is not the reliability of Mr. Poplawski's conclusions, but that he weighed the evidence before him differently and reached a different conclusion. Fed. R. Evid. 702 advisory committee's note (2000); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed.Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."). The same uncertainty also exists for Hurricane Harvey, an extreme weather event with no control variables. Therefore, the question for the Court is whether the methodology with which Mr. Poplawski reached his conclusions is reliable.

The Court finds that Mr. Poplawski's methodology was reliable. While it is true Mr. Poplawski offers three pathways through which the latent defect could have occurred, he points to one cause, Hurricane Harvey and the conditions it created, and has sufficient facts to support his reasoning. *See* ECF No. 618-7 at PageID #: 27852 ("During the hurricane, the L1 bearing was exposed to at least three conditions that can trigger the formation of a defect: (1) heavy, sustained rainfall, causing potential water intrusion; (2) gusting winds, causing potential false brinelling; and (3) lack of movement, causing potential grease degradation and contributing to false brinelling."). *See e.g.*, ECF No. 618-7 at PageID #: 27854, ¶ 108. He did consider alternative causes to the derailment before finding them to be "exceedingly unlikely." ECF No. 618-7 at PageID #: 27852 ("Accordingly, ordinary wear and tear is exceedingly unlikely to cause

---

[1] Mr. **Error! Main Document Only.**Poplawski attended the inspection virtually for health reasons, rather than in person. *See* Reply Memorandum (ECF No. 706) at PageID #: 51405 n. 1.

(4:23CV242)

a bearing defect."). In reaching that conclusion, he relied on sufficient facts and appropriate studies. *See e.g.*, ECF No. 618-7 at PageID #: 27852 ("For example, a study carried out in 2005 found that less than 4% of bearings that were removed from service—itself a miniscule fraction of the overall number of bearings in service—were determined to be defective or overheated."). His reliance on studies performed by Timken, a rival corporation, only go to credibility of his conclusions rather than the reliability of his conclusions. *See* ECF No. 618-7 at PageID #: 27856–61, ¶¶ 111–17 (analyzing both Timken *and* Amsted Rail-Brenco studies on seal performance). Regardless of how he weighs that evidence, his opinions are thus "the product of reliable principles and methods . . . [that] have been reliably applied in the case." United States v. Gissantaner, 990 F.3d 457, 463 (6th Cir. 2021) (internal quotation marks omitted).

Thus, the Court finds Mr. Poplawski's bearings opinions to be reliable and admissible. Any concerns GATX has of his testimony can be addressed by contrary evidence and cross-examination.

C. The allegedly "state of mind" opinions are not automatically objectionable.

The Court is unpersuaded by GATX's argument that Mr. Poplawski is offering a "state of mind" opinions. *See* ECF No. 622 at PageID #: 33129 ("Poplawski Cannot Opine on GATX's State of Mind."). Rule 704 "[i]n criminal cases . . . forbids experts from stating opinions or inferences 'as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or the defense thereto.'" United States v. Waddell, 28 F.3d 1215 (Table), at *6 (6th Cir. June 22, 1994) (citing Fᴇᴅ. R. Eᴠɪᴅ. 704(b)). That said, Rule 704 states that an opinion which embraces an ultimate issue is "not automatically objectionable." Fᴇᴅ. R. Eᴠɪᴅ. 704(a). Mr. Poplawski cites internal and external communications from GATX as the basis for his statement that GATX "recogni[zed] [ ] the historic nature of the

7

(4:23CV242)

hurricane and its potential impact on GATX's railcars, including the roller bearings." Furthermore, rather than an affirmative contrary statement, GATX notes that Mr. Bland testified "the La Porte team, in general, *would have* done an assessment of the entire site[.]" ECF No. 622-1 at PageID #: 33172, 150:15–150:24 (emphasis added).  The Court does not find Mr. Poplawski's opinion, *see* Section XI(C)(1), ECF No. 618-7 at PageID #: 27866–68, objectionable or inadmissible.  Any issues GATX has with the opinion being uncredible shall be addressed with contrary evidence and cross-examination.

    D.  <u>Mr. Poplawski's testimony is plainly relevant.</u>

GATX also makes the argument that Mr. Poplawski's testimony on possible causes of the bearing failure is irrelevant to the issues presented.  ECF No. 622 at PageID #: 33128.  Just because Mr. Poplawski does not specifically reference "some federal standard of care established by regulation with respect to GPLX 75465" does not mean that his testimony is irrelevant.  ECF No. 622 at PageID #: 33128.  His testimony will help the jury determine whether the standard of care was breached and is thus relevant.

## IV.    Conclusion

Accordingly, GATX's Motion to Exclude (ECF No. 622) is denied in its entirety.


IT IS SO ORDERED.


| January 31, 2025 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson<br>United States District Judge |