PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: EAST PALESTINE TRAIN DERAILMENT | ) )  ) ) ) ) ) ) | CASE NO. 4:23CV0242<br><br>JUDGE BENITA Y. PEARSON<br><br>**MEMORANDUM OF OPINION AND ORDER**<br>[Resolving ECF No. 618] |

Pending is Third-Party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company's ("Norfolk Southern") Motion for Partial Summary Judgment Against Third-Party Defendant GATX Corporation ("GATX") (ECF No. 618). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the motion is denied.

**I. Stipulated Facts**

The stipulated facts[1] are as follows:

1. Norfolk Southern Train 32N derailed at approximately 8:54 p.m. on February 3, 2023, in East Palestine, Ohio. At the time of the derailment, Train 32N was traveling east on Main Track 1 along Norfolk Southern's Fort Wayne Line and consisted of two lead locomotives, one distributed power unit, and 149 rail cars.

2. On February 3, 2023, Railcar GPLX 75465 was in the twenty-third car position of Train 32N.

---

[1] *See* Notice of Stipulation Regarding Uncontested Facts (ECF No. 586).

3. GPLX 75465, referred to as "Car 23," was a covered hopper car built in 1997 by Trinity Rail and purchased by GATX that same year.

4. GATX owned GPLX 75465.

5. General American Marks Company did not own GPLX 75465.

6. GATX owned GATX 95098.

7. General American Marks Company did not own GATX 95098.

8. Generally, and at a high level, a covered hopper car like Car 23 consists of a car body, which carries a commodity, and two trucks which distribute the load of the car through adapters into multiple wheelsets, which in turn transfer load into the track; the wheelsets are themselves each comprised of two wheels connected by an axle and two roller bearings outboard of the wheels.

9. A roller bearing comprises a cylindrical cup, which is the area of contact to the bearing adapters (and thus the trucks), and two cone assemblies inside the cup, among other components.

10. A cone assembly consists of the cone itself, which is press-fit onto, and rotates with, the axle journal. The cone assembly also consists of a series of rollers and the cage, which provides the proper orientation for the rollers. The rollers are on the exterior of the cone and roll along the outer circumference of the cone and the inner circumference of the cup.

11. Before loading a railcar, the customer is contractually required to inspect the railcar before shipment to confirm that the railcar is suitable for receiving and transporting the commodity.

12. At the time of the derailment, GPLX 75465 was leased to Braskem America, Inc. ("Braskem").

13. GPLX 75465 was last in GATX's physical possession when it was serviced at GATX's Hearne, Texas facility between December 21, 2016, and January 31, 2017, to install a new lining at Braskem's request.

14. There is no evidence that the L1 roller bearing exhibited any defects prior to January 31, 2017, the last time it was in GATX's physical possession.

15. GATX 95098, referred to as "Car 29," was a DOT105J300W railcar manufactured by Trinity in 1991 and approved for service by the Association of American Railroads ("AAR") Tank Car Committee on February 7, 1992, under Form AAR 4-2 number F916110.

16. The Form AAR 4-2 is otherwise known as the railcar's Certificate of Construction.

17. GATX 95098 was designed and constructed by Trinity Industries to transport vinyl chloride monomer ("VCM").

18. GATX 95098's Certificate of Construction states that the tank car may carry "[p]ropylene oxide and products authorized in DOT 173 for which there are no special commodity requirements."

19. VCM is a Division 2.1 flammable gas.

20. Norfolk Southern uses wayside detectors as one means to monitor railcar conditions along its tracks.

21. At the time of the derailment, Norfolk Southern's wayside detector system was intended to identify potential railcar defects before they escalated into accidents by detecting a range of issues, including hot wheels and overheated bearings.

22. Among the different kinds of wayside detectors Norfolk Southern used at the time of the derailment, its hot bearing detectors ("HBDs") were its most abundant.

3

23. At the time of the derailment, Norfolk Southern classified its responses to HBD readings above set thresholds into two categories: alarms and alerts.

24. At the time of the derailment, the criteria for certain of Norfolk Southern's HBD alerts included various thresholds of "K" values, which are statistical measures of the deviation of a given bearing's above-ambient temperature from those of the other bearings on either the same side of the train, called "Kt values," or the same car, called "Ke values."

25. At the time of the derailment, Norfolk Southern's HBD "warm bearing alarm" was triggered when the bearing temperature was between 170°F and 200°F above ambient.

26. At the time of the derailment, Norfolk Southern's HBD "critical bearing alarm," was triggered when the temperature recorded by the HBD exceeded 200°F above ambient.

27. At the time of the derailment, Norfolk Southern's "953 alert" was generated when an HBD recorded a bearing temperature of 90°F above ambient or higher and a calculated Kt value greater than 4.

28. At the time of the derailment, Norfolk Southern's HBD "critical bearing alarm," required the train crew to immediately stop and inspect the train, consistent with safe train handling procedures.

29. A "burn off" failure may occur when a roller bearing seizes.

30. At the time of the derailment, Norfolk Southern's system was set such that new alerts were initially highlighted in red on a Wayside Help Desk analyst's screen, but the highlighting disappeared after a few minutes if the alert was not addressed by the analyst.

31. At the time of the derailment, Norfolk Southern's system was set such that, if an analyst missed an alert, there was no reminder from the system to prompt the analyst to check the alert or follow up on the alert.

32. On February 1, 2023, Norfolk Southern received Train 32N in interchange at the Terminal Railroad Association of St. Louis Yard (the "TRRA") in Madison, Illinois.

33. Norfolk Southern Corporation has an ownership interest in the TRRA, along with several other Class I railroads.

34. Four carmen from the TRRA conducted an air brake test on Train 32N at 8:30 p.m. on February 1.

35. GPLX 75465 was transferred to Norfolk Southern in Madison, IL on February 1, 2023, as part of Train 32N.  From February 1, 2023 to the evening of February 3, 2023, Train 32N passed through Illinois, Indiana, and part of Ohio.

36. At 10:14 p.m. on February 1, 2023, Train 32N departed the TRRA yard and arrived at the Norfolk Southern yard in Decatur, Illinois at 6:10 a.m. on February 2, 2023.

37. At the Decatur yard, 55 railcars were removed from Train 32N, 40 were added, and a third locomotive was moved to the middle of the train.

38. On February 2, 2023, at 4:15 p.m., Train 32N departed the Decatur yard and traversed eastbound along Norfolk Southern's Cleveland Line headed for Pennsylvania.

39. On February 3, 2023, Train 32N continued its journey, entering the Fort Wayne Line at milepost ("MP") 83.2.

40. On the night of February 3, 2023, before its derailment, Train 32N passed three HBDs, one each in Sebring, Salem, and East Palestine, Ohio, the first of which was about 30 miles before East Palestine.

41. On February 3, between 7:47 and 7:51 p.m., Train 32N passed an HBD in Sebring, Ohio at MP 79.8.

42. The Sebring HBD recorded the temperature of the GPLX 75465's L1 bearing as 38°F above ambient.

43. Also at Sebring, the R1 bearing on the same axle was recorded at 20° F above ambient.

44. Also at Sebring, a Kt value of the L1 bearing was calculated at 0.6.

45. No alerts or alarms were triggered as Train 32N passed Sebring, Ohio.

46. At around 8:13 p.m., Train 32N reached Salem, Ohio (MP 69.01) and passed over an HBD that recorded GPLX 75465's L1 bearing at 103°F above ambient, an increase of 65°F above ambient in about ten miles.

47. At Salem, Ohio, the L1 bearing was 83 degrees Fahrenheit hotter than its R1 counterpart.

48. By the time Train 32N reached Salem, Ohio, the Kt value of the L1 bearing was 5.8.

49. The Salem HBD sent a 953 alert to the Wayside Desk indicating a bearing temperature spike.

50. Gary Rambo was the only analyst on duty at the Wayside Desk when the 953 alert was sent, and he was working from his home.

6

51. Train 32N passed MP 54.1 in New Waterford, Ohio at 8:46 p.m. and third-party security camera footage showed GPLX 75465's L1 bearing glowing.

52. Six minutes after passing the New Waterford MP, at approximately 8:52 p.m. on February 3, 2023, Train 32N passed over the HBD in East Palestine at MP 49.8.

53. The Salem HBD is approximately 19 miles before the East Palestine HBD.

54. At approximately 8:53 p.m., the HBD system sent the train crew a critical alarm for a hot bearing, alerting the crew to stop Train 32N.

55. Before the crew could bring the train to a controlled stop, Train 32N derailed.

56. 38 railcars derailed, including 11 cars carrying hazardous materials.

57. The tank car UTLX 205907 containing butyl acrylates, a flammable liquid, was breached in the derailment and, as a result, released its contents which ignited and formed a pool fire.

58. Norfolk Southern did not sue the owner of UTLX 205907.

59. The pool fire resulting from Train 32N was near or surrounding five DOT-105J300W (DOT 105) tank cars carrying VCM, including GATX 95098.

60. By around midnight on February 4, a Unified Command was formed.

61. Unified Command included, among others, local first responders and various federal and state agencies.

62. Polymerization of VCM is an exothermic reaction that releases energy.

63. A "vent and burn" procedure involves detonating explosives at certain locations on each tank car in order to release and burn off the car's hazardous contents.

64. GATX was not involved in the decision to perform the vent and burn procedure.

65. GATX was not a part of Unified Command.

66. At around 4:37 p.m. on February 6, Norfolk Southern's contractors executed the vent and burn.

## II.

In July 2023, Norfolk Southern impleaded two negligence claims against GATX. *See* Third-Party Complaint (ECF 119) at PageID #: 1438-40, ¶¶ 148-54 (Count One); PageID #: 1443-44, ¶¶ 178-86 (Count Three). Count Three alleges that GATX is at least partially responsible for harms stemming from the derailment because it negligently maintained GPLX 75465. *See* ECF No. 119 at PageID #: 1444, ¶ 182. Norfolk Southern has long framed its alleged injuries as derivative of those in the Plaintiff class. *See* Memorandum in Opposition (ECF 472) at PageID #: 7139 ("Norfolk Southern is [not] seeking any non-derivative damages in this third-party action."); Transcript of Discovery Hearing Proceedings (ECF 363) at PageID #: 4805 (Norfolk Southern is "seeking only what [it is] entitled to under derivative contribution claims.").

## III. Standard of Review

A party may move for partial summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "When a party moves for summary judgment on a part of a claim, the party is seeking a decision on a particular element." *Glob. Digit. Sols., Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, No. 18-80106-Civ-Middlebrooks/Brannon, 2019 WL 8275153, at *2 (S.D. Fla. Nov. 27, 2019); *see also Hudak v. Clark*, No. 3:16-CV-288, 2018 WL 1785865, at *2 (M.D. Pa. April 13, 2018) ("Rule 56 contemplates the possibility that summary judgment may be

8

entered on less than a full claim and on one or fewer than all of the elements necessary to establish a claim."). "[C]ourts throughout the country have held that Rule 56 does not authorize a motion which is solely intended to establish the truth of particular facts." *Robertson v. F. Martin*, No. CV 20-4173-JLS(E), 2021 WL 545895, at *2 (C.D. Cal. Jan. 4, 2021) (collecting cases). "Partial summary judgment is often sought on matters such as liability or with respect to a particular claim or defense. It is not typically used to seek a judgment that a particular fact occurred, especially when that fact does not even establish an entire element of the underlying claim." *Samuels v. Arnold*, No. 11-cv-0201, 2012 WL 6020089, at *2 (W.D. La. Nov. 19, 2012), *report and recommendation adopted*, No. 11-cv-0201, 2012 WL 6020084 (W.D. La. Dec. 3, 2012) (denying plaintiff's motion for partial summary judgment).

As the Seventh Circuit has noted, the label " 'partial summary judgment' is, of course, consistent with section (d) of Rule 56, which allows a court to establish facts prior to trial over which there is no 'substantial controversy.' " *ODC Commc'ns Corp. v. Wenruth Invs.*, 826 F.2d 509, 515 (7th Cir.1987).[2] Partial summary judgment is an appropriate mechanism for resolving core, undisputed issues to bring about more efficient and focused trials. *See* Norfolk Southern's Memorandum in Support (ECF No. 618-1) at PageID #: 27532-33; Norfolk Southern's Reply Memorandum (ECF No. 699) at PageID #: 51259; 51262 (citing *Bonasera v. New River Elec. Corp.*, 518 F. Supp.3d 1136, 1152-1157 (S.D. Ohio 2021) (granting motion for partial summary

---

[2] Prior to the 2010 Amendments, Rule 56(g) was covered by former Rule 56(d). "This rule [Rule 56(g)] does not authorize an independent motion to establish certain facts as true but merely serves to salvage some constructive result from the judicial effort expended in denying a proper summary judgment motion." *Roberts v. Chesapeake Operating, Inc.*, 426 F. Supp.2d 1203, 1210 (D. Kan. 2006) (quoting *City of Wichita, Kan. v. U.S. Gypsum Co.*, 828 F.Supp. 851, 869 (D. Kan.1993), *rev'd in part on other grounds*, 72 F.3d 1491 (10th Cir. 1996)).

9

judgment on the issue of whether the decedent was occupying a truck at the time of an accident); *Comer v. Shrum,* 4:18-cv-58, 2021 WL 2210592, at *2-3 (E.D. Tenn. June 1, 2021) (plaintiffs moved for partial summary judgment against all three defendants and court granted partial summary judgment on the issue of whether "a bullet fired from [a single defendant's] gun" was "the cause of death" of plaintiffs' decedent because that defendant was estopped from disputing the cause-of-death issue); *Bowling v. CSX Transp., Inc.*, No. 1:11-cv-598-HJW, 2013 WL 866459, at *6 (S.D. Ohio March 7, 2013) ("Absent any genuine disputes of material fact on this issue, plaintiff[] is entitled to partial summary judgment on the element of negligence *per se*") (italics added). "The freedom to use summary judgment procedure to address particular issues or elements of a claim is an important feature of Rule 56, making it a much more useful case management device. . . ." 11 James William Moore, et al., *Moore's Federal Practice* § 56.122[2] (Matthew Bender 3d ed. 2024).

A motion for partial summary judgment should be granted when there is no genuine dispute as to any material fact with respect to the part of the claim at issue. Fed. R. Civ. P. 56(a). There is no genuine factual dispute if the opposing party is unable to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts" at issue in the case. *Blume v. Potter,* 289 Fed.Appx. 99, 102 (6th Cir. 2008) (brackets in original) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993)).

**IV.**

**A.**

Norfolk Southern argues Rule 56 permits a motion addressed solely to an issue within or an element of a claim or defense. *See* ECF No. 699 at PageID #: 51258 (citing 11 James William

10

Moore, et al., *Moore's Federal Practice* § 56.122[2] (Matthew Bender 3d ed. 2024). Therefore, Norfolk Southern argues, the Court should grant partial summary judgment on the issue of whether the failed L1 roller bearing on GPLX 75465 (Car 23) – the railcar owned by GATX – was a but-for and proximate cause of the derailment of Train 32N. According to Norfolk Southern, there is no genuine dispute, and the evidence overwhelmingly proves, that GATX owned Car 23, its roller bearing overheated and failed, that failure caused Car 23 to derail, and the derailment of it caused the derailment of the successive 37 cars from the mainline track, including 11 cars carrying hazardous materials.[3] *See* ECF No. 618-1 at PageID #: 27533; 27357.

GATX responds the Court should reject Norfolk Southern's improper request. Instead of requesting summary judgment that GATX caused Norfolk Southern's harm, Norfolk Southern asks the Court to find that a roller bearing (an inanimate object) caused the derailment – without attempting to explain how GATX's alleged conduct relates to the failed L1 roller bearing or how GATX's alleged conduct caused Norfolk Southern's alleged injuries. *See* GATX's Memorandum in Opposition (ECF No. 684) at PageID #: 48413.

The Court notes that, in one of its *Daubert* motions, Norfolk Southern states that it is acknowledged that GATX's Car 23 derailed because of the failure of the L1 roller bearing. The remaining question—"highly disputed, and for the jury to decide"—is why that bearing failed. Memorandum in Support (ECF No. 630-1) at PageID #: 38133; *see also* ECF No. 699 at PageID #: 51262 ("At trial, the parties will present competing arguments as to *why* the bearing failed.")

---

[3] Norfolk Southern concedes that the evidence of the failed roller bearing will necessarily be put before the jury anyway because there are factual disagreements in its case against GATX that will go to trial in order to determine the full extent of GATX's liability – separate from "the clear, undisputed connection between GATX's failed roller bearing and the derailment." ECF No. 618-1 at PageID #: 27537.

11

(emphasis in original).  According to Norfolk Southern, one of the genuinely disputed questions for the jury to resolve is whether GATX failed to properly inspect the roller bearing after it remained outside subject to nearly a year's worth of rain over just four days during Hurricane Harvey – a Category Four storm.  *See* ECF No. 699 at PageID #: 51257-58.  GATX contends there are a multitude of potential causes of the derailment.  *See* ECF No. 684 at PageID #: 48421. As the advisory committee counsels, such matters are best resolved at trial.  Fed. R. Civ. P. 56(g) advisory committee's note to 2010 amendment  (stating "it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event"); *see also Jacob v. Killian*, 437 Fed.Appx. 460, 467 (6th Cir. 2011).  This approach is consistent with the Court's prior ruling that the testimony of Drs. Lee Swanger and Sarah Parker will be important to the jury's determination of the cause of the failed L1 roller bearing on GPLX 75465.  *See* Memorandum of Opinion and Order (ECF No. 753-1) at PageID #: 52577.

The Court finds that genuine issues of material fact exist regarding whether the derailment of GATX's Car 23 caused the derailment of Train 32N.  Additionally, even if the Court were to rule as a matter of law that the failure of the L1 roller bearing on Car 23 caused the derailment of Train 32N, the reasons why would still be brought forward at trial saving no time. The first disputed fact regarding GATX's potential liability is whether the L1 roller bearing on Car 23 was a "but-for" cause of Train 32N's derailment.  The second is whether the roller bearing was also a "proximate cause" of the derailment.  Furthermore, GATX contends that Norfolk Southern does not allege that GATX's conduct was indisputably a but-for or proximate cause of Norfolk Southern's damages – as is required to establish causation under Ohio negligence law.  *See* ECF No. 684 at PageID #: 48413 (citing *Cincinnati Bell Tel. Co. v. J.K.*

12

*Meurer Corp.*, 185 N.E.3d 632, 639 ¶ 30 (Ohio App. 1st Dist. 2022) ("[U]nder a theory of negligence . . . the *defendant's conduct* or omission must be both the actual cause and proximate cause of *the harm*." (emphasis added)), *appeal not accepted for review*, 189 N.E.3d 817 (2022)); *see also Burns v. Walmart Inc.*, No. 1:21-cv-580, 2023 WL 6201500, at *7 (S.D. Ohio Sept. 22, 2023) (denying defendant's motion for summary judgment).

Norfolk Southern's motion is also procedurally improper under Rule 56(a) because it asks the Court to render summary judgment on a particular fact, rather than an element of its negligence claims. Norfolk Southern does not invoke Rule 56(g) until filing its Reply Memorandum. Only then does Norfolk Southern argue that the Court should enter an order under Rule 56(g) establishing for purposes of trial that the roller bearing on GATX's Car 23 caused the derailment. *See* ECF No. 699 at PageID #: 51261. Arguments raised for the first time in reply briefs, however, are typically waived. *See, e.g.*, *Kuhn v. Washentaw Cnty.*, 709 F.3d 612, 623 (6th Cir. 2013) (an appellate court does not usually consider issues raised for the first time on appeal in an appellate reply brief); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (same); *see also Wartluft v. Milton Hershey Sch. & Sch. Tr.*, No. 1:16-cv-2145, 2020 WL 1285332, at *6 (M.D. Pa. March 18, 2020) ("To the extent Plaintiffs could have pursued their request via Rule 56(g), we find that argument to be waived.") *Hamilton v. Astrue*, No. 1:09CV0260, 2010 WL 1032646, at *6 (N.D. Ohio March17, 2010) ("A reply brief is a plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments."). To establish GATX's liability in negligence, Norfolk Southern must prove, among other things, that

13

GATX's "*conduct* proximately caused [Norfolk Southern] to sustain actual loss or damage. *Reed v. Weber*, 615 N.E.2d 253, 255 (Ohio App. 1st Dist. 1992) (emphasis added). That the L1 roller bearing on GPLX 75465 (Car 23) – the railcar owned by GATX – allegedly failed and contributed to the derailment does not, alone, show that GATX's *conduct* was either a but-for or proximate cause of the derailment.

**B.**

Norfolk Southern argues that GPLX 75465's roller bearing – regardless of what actor was responsible for its alleged failure – was a "proximate cause" of the derailment. It suggests that the test for "proximate cause" requires only that it show that "the failed roller bearing 'was a substantial factor in bringing about an injury and without which the injury would not have occurred.' " ECF No. 618-1 at PageID #: 27533 (quoting *Hardwick v. 3M Co.*, No. 2:18-cv-1185, 2019 WL 4757134, at *16 (S.D. Ohio Sept. 30, 2019); *see also* ECF No. 618-1 at PageID #: 27534 ("There is no doubt that the derailment would not have occurred had the roller bearing on GATX's railcar not failed (but-for causation), nor that this failure was a substantial factor in bringing about the derailment (proximate causation).").

The "substantial factor" test, however, is not a stand-alone test for proximate causation that supersedes foreseeability, but is instead an alternative to the "but-for" test when it comes to actual causation. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 589 F. Supp.3d 739, 787 (N.D. Ohio 2022) ("The substantial factor test replaces the but-for causation test because normal operation of the but-for test would allow a proven wrongdoer to escape liability based on the tortious conduct of other wrongdoers.").

As an Ohio Court of Appeals stated when discussing an expert's opinion:

14

> {¶21}  In his conclusion, the Administrator's expert opined that Sizemore's death would not have occurred "but-for" the presence of Deemer's vehicle. Based on this statement, the Administrator contends that the element of proximate cause was satisfied in this matter. However, the expert's opinion only satisfies causation "in fact" with its "but-for" statement. *Columbus v. Wood*, 10th Dist. Franklin No. 15AP-1105, 2016-Ohio-3081, 2016 WL 2941322, ¶ 10-11. Importantly, "cause in fact" is not the same as proximate cause and does not fulfill the entirety of the negligence causation requirement. *Wood* at ¶ 11. Rather, "[t]he two types of causation are distinct." *Id.* citing *Ackison v. Anchor Packing Co.*, 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 48.
>
> {¶22}  "*To establish proximate cause, foreseeability must be found.*" *Id.* If the harm is the natural and probable consequence of an act, and it should have been foreseen in view of all the attending circumstances, the harm becomes the proximate result of the act. *Mussivand v. David*, 45 Ohio St.3d 314, 321, 544 N.E.2d 265 (1989). There may be more than one proximate cause to an injury. *McDougall v. Smith*, 3d Dist., 191 Ohio App.3d 101, 2010-Ohio-6069, 944 N.E.2d 1218, ¶ 5.

*Sizemore v. Deemer*, No. 9-21-02, 174 N.E.3d 5, 10 (Ohio App. 3rd Dist. 2021) (emphasis added); *see also Ray v. Swager*, 903 N.W.2d 366, 376 (Mich. 2017) ("[B]ecause proximate cause is concerned with the foreseeability of consequences, only a human actor's breach of a duty can be a proximate cause." ). "Proximate cause . . . is merely the limitation which the courts have placed upon *the actor*'s responsibility for the consequences of *the actor*'s conduct." *Johnson v. Univ. Hosps. of Cleveland*, 540 N.E.2d 1370, 1377 (Ohio 1989) (quotation marks omitted) (emphasis added). "The rule of proximate cause 'requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act.' " *Jeffers v. Olexo*, 539 N.E.2d 614, 617 (Ohio 1989) (quoting *Ross v. Nutt*, 203 N.E.2d 118, 120 (Ohio 1964) (further quotation and citation omitted); *see also Mussivand*, 544 N.E.2d at 272 ("[I]n order to establish proximate cause, foreseeability must be found."). An inanimate object, such as the roller bearing in the case

15

at bar, however, simply cannot be a "proximate cause" because it cannot "foresee" the consequences of its mindless actions.  *See* Karst v. Vickers, 444 N.W.2d 698, 700 (N. Dak. 1989) ("By ascribing a percentage of negligence to inanimate objects, 'dusk' and 'design of roadway,' the jury has demonstrated a total misapprehension of the law of negligence and proximate cause. *An inanimate object can neither have nor breach a duty of care.*") (emphasis added).

At trial, Norfolk Southern is prepared to prove that the L1 roller bearing failed due to GATX's negligent failure to maintain it.  *See* ECF No. 699 at PageID #: 51262.  Norfolk Southern will attempt to establish a causal link between GPLX 75465's roller bearing and its alleged harm by identifying certain acts or omissions by GATX that it believes proximately caused Norfolk Southern's damages.  Norfolk Southern will also proffer evidence that it claims shows it was reasonably foreseeable to GATX that, as a result of the alleged acts or omissions, GPLX 75465's roller bearing would fail, and that it would result in a derailment causing the alleged damages.  This evidence will be considered by the jury in determining the full extent of GATX's liability, if any.

## V.

Under Fed. R. Civ. P. 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Rule 54(b) allows district courts to reconsider interlocutory orders and to reopen any part of a case before the entry of a final judgment.  *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 952 (6th Cir. 2004) (first citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

16

*Corp.*, 460 U.S. 1, 12 (1983); and then citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)).

The Court's prior *Daubert* rulings that provide, in relevant part, that "the L1 wheel of GPLX 75465 – whose failed roller bearing caused the derailment on February 3, 2023" fall within the scope of Rule 54(b). *See* Memorandum of Opinion and Order (ECF No. 734) at PageID #: 51940; Memorandum of Opinion and Order (ECF No. 741) at PageID #: 52344; and, Memorandum of Opinion and Order (ECF No. 753-1) at PageID #: 52576. " Like other interlocutory rulings, *Daubert* rulings are subject to reconsideration under the appropriate circumstances." *Campbell v. Boston Scientific Corp.*, No. 2:12-cv-08633, 2016 WL 5796906, at *16 (S.D. W.Va. Oct. 3, 2016). When, as is here, a ruling on a *Daubert* motion is not a final judgment, a court is well within its discretion to revise its earlier decision.

The Court treats the statement in the prior *Daubert* rulings that "the L1 wheel of GPLX 75465 – whose failed roller bearing caused the derailment on February 3, 2023" as a scrivener's error and corrects it to read "the L1 wheel of GPLX 75465 – whose failed roller bearing Norfolk Southern argues caused the derailment on February 3, 2023."

## VI.

Norfolk Southern's Motion for Partial Summary Judgment Against GATX (ECF No. 618) is denied.

The statement in the prior *Daubert* rulings that "the L1 wheel of GPLX 75465 – whose failed roller bearing caused the derailment on February 3, 2023" is corrected to read "the L1 wheel of GPLX 75465 – whose failed roller bearing Norfolk Southern argues caused the derailment on February 3, 2023." *See* Memorandum of Opinion and Order (ECF No. 734) at

PageID #: 51940; Memorandum of Opinion and Order (ECF No. 741) at PageID #: 52344; and, Memorandum of Opinion and Order (ECF No. 753-1) at PageID #: 52576.

    IT IS SO ORDERED.

| | |
|---|---|
|  February 21, 2025  |  */s/ Benita Y. Pearson*  |
| Date | Benita Y. Pearson |
| | United States District Judge |