PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| *IN RE*: EAST PALESTINE TRAIN DERAILMENT | ) CASE NO. 4:23CV0242 <br> ) <br> ) JUDGE BENITA Y. PEARSON <br> ) <br> ) **MEMORANDUM OF OPINION** <br> ) **AND ORDER** <br> ) [Resolving ECF No. 645] |

Pending is Third-Party Defendants GATX Corporation and General American Marks Company's (collectively "GATX") Motion for Summary Judgment on Norfolk Southern Count One and Count Three (ECF No. 645). Norfolk Southern Railway Corporation and Norfolk Southern Company (collectively "Norfolk Southern") filed an Opposition. (ECF No. 675). GATX replied. (ECF No. 709). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons below, GATX's Motion for Summary Judgment is granted in part dismissing Count One and denied in part for Count Three.

## I. Stipulated Facts

The stipulated facts[1] are as follows:

1. Norfolk Southern Train 32N derailed at approximately 8:54 p.m. on February 3, 2023, in East Palestine, Ohio. At the time of the derailment, Train 32N was traveling east on MainTrack 1 along Norfolk Southern's Fort Wayne Line and consisted of two lead locomotives, one distributed power unit, and 149 rail cars.

---

[1] *See* Notice of Stipulation Regarding Uncontested Facts (ECF No. 586).

4:23CV0242

2. On February 3, 2023, Railcar GPLX 75465 was in the twenty-third car position of Train 32N.

3. GPLX 75465, referred to as "Car 23," was a covered hopper car built in 1997 by Trinity Rail and purchased by GATX that same year.

4. GATX owned GPLX 75465.

5. General American Marks Company did not own GPLX 75465.

6. GATX owned GATX 95098.

7. General American Marks Company did not own GATX 95098.

8. Generally, and at a high level, a covered hopper car like Car 23 consists of a car body, which carries a commodity, and two trucks which distribute the load of the car through adapters into multiple wheelsets, which in turn transfer load into the track; the wheelsets are themselves each comprised of two wheels connected by an axle and two roller bearings outboard of the wheels.

9. A roller bearing comprises a cylindrical cup, which is the area of contact to the bearing adapters (and thus the trucks), and two cone assemblies inside the cup, among other components.

10. A cone assembly consists of the cone itself, which is press-fit onto, and rotates with, the axle journal. The cone assembly also consists of a series of rollers and the cage, which provides the proper orientation for the rollers. The rollers are on the exterior of the cone and roll along the outer circumference of the cone and the inner circumference of the cup.

4:23CV0242

11. Before loading a railcar, the customer is contractually required to inspect the railcar before shipment to confirm that the railcar is suitable for receiving and transporting the commodity.

12. At the time of the derailment, GPLX 75465 was leased to Braskem America, Inc. ("Braskem").

13. GPLX 75465 was last in GATX's physical possession when it was serviced at GATX's Hearne, Texas facility between December 21, 2016, and January 31, 2017, to install a new lining at Braskem's request.

14. There is no evidence that the L1 roller bearing exhibited any defects prior to January 31, 2017, the last time it was in GATX's physical possession.

15. GATX 95098, referred to as "Car 29," was a DOT105J300W railcar manufactured by Trinity in 1991 and approved for service by the Association of American Railroads (AAR) Tank Car Committee on February 7, 1992, under Form AAR 4-2 number F916110.

16. The Form AAR 4-2 is otherwise known as the railcar's Certificate of Construction.

17. GATX 95098 was designed and constructed by Trinity Industries to transport VCM.

18. GATX 95098's Certificate of Construction states that the tank car may carry "[p]ropylene oxide and products authorized in DOT 173 for which there are no special commodity requirements."

19. VCM is a Division 2.1 flammable gas.

4:23CV0242

20. Norfolk Southern uses wayside detectors as one means to monitor railcar conditions along its tracks.

21. At the time of the derailment, Norfolk Southern's wayside detector system was intended to identify potential railcar defects before they escalated into accidents by detecting a range of issues, including hot wheels and overheated bearings.

22. Among the different kinds of wayside detectors Norfolk Southern used at the time of the derailment, its hot bearing detectors ("HBDs") were its most abundant.

23. At the time of the derailment, Norfolk Southern classified its responses to HBD readings above set thresholds into two categories: alarms and alerts.

24. At the time of the derailment, the criteria for certain of Norfolk Southern's HBD alerts included various thresholds of "K" values, which are statistical measures of the deviation of a given bearing's above-ambient temperature from those of the other bearings on either the same side of the train, called "Kt values," or the same car, called "Ke values."

25. At the time of the derailment, Norfolk Southern's HBD "warm bearing alarm" was triggered when the bearing temperature was between 170°F and 200°F above ambient.

26. At the time of the derailment, Norfolk Southern's HBD "critical bearing alarm," was triggered when the temperature recorded by the HBD exceeded 200°F above ambient.

27. At the time of the derailment, Norfolk Southern's "953 alert" was generated when an HBD recorded a bearing temperature of 90°F above ambient or higher and a calculated Kt value greater than 4.

4

4:23CV0242

28. At the time of the derailment, Norfolk Southern's HBD "critical bearing alarm," required the train crew to immediately stop and inspect the train, consistent with safe train handling procedures.

29. A "burn off" failure may occur when a roller bearing seizes.

30. At the time of the derailment, Norfolk Southern's system was set such that new alerts were initially highlighted in red on a Wayside Help Desk analyst's screen, but the highlighting disappeared after a few minutes if the alert was not addressed by the analyst.

31. At the time of the derailment, Norfolk Southern's system was set such that, if an analyst missed an alert, there was no reminder from the system to prompt the analyst to check the alert or follow up on the alert.

32. On February 1, 2023, Norfolk Southern received Train 32N in interchange at the Terminal Railroad Association of St. Louis Yard (the "TRRA") in Madison, Illinois.

33. Norfolk Southern Corporation has an ownership interest in the TRRA, along with several other Class I railroads.

34. Four carmen from the TRRA conducted an air brake test on Train 32N at 8:30 PM on February 1.

35. GPLX 75465 was transferred to Norfolk Southern in Madison, IL on February 1, 2023, as part of Train 32N. From February 1, 2023, to the evening of February 3, 2023, Train 32N passed through Illinois, Indiana, and part of Ohio.

36. At 10:14 PM, on February 1, 2023, Train 32N departed the TRRA yard and arrived at the Norfolk Southern yard in Decatur, Illinois at 6:10 a.m. on February 2, 2023.

37. At the Decatur yard, 55 railcars were removed from Train 32N, 40 were added, and a third locomotive was moved to the middle of the train.

4:23CV0242

38. On February 2, 2023, at 4:15 PM, Train 32N departed the Decatur yard and traversed eastbound along Norfolk Southern's Cleveland Line headed for Pennsylvania.

39. On February 3, 2023, Train 32N continued its journey, entering the Fort Wayne Line at milepost (MP) 83.2.

40. On the night of February 3, 2023, before its derailment, Train 32N passed three HBDs, one each in Sebring, Salem, and East Palestine, Ohio, the first of which was about 30 miles before East Palestine.

41. On February 3, between 7:47 and 7:51 PM, Train 32N passed an HBD in Sebring, Ohio at MP 79.8.

42. The Sebring HBD recorded the temperature of the GPLX 75465's L1 bearing as 38°F above ambient.

43. Also at Sebring, the R1 bearing on the same axle was recorded at 20° F above ambient.

44. Also at Sebring, a Kt value of the L1 bearing was calculated at 0.6.

45. No alerts or alarms were triggered as Train 32N passed Sebring, Ohio.

46. At around 8:13 PM, Train 32N reached Salem, Ohio (MP 69.01) and passed over an HBD that recorded GPLX 75465's L1 bearing at 103°F above ambient, an increase of 65°F above ambient in about ten miles.

47. At Salem, Ohio, the L1 bearing was 83 degrees Fahrenheit hotter than its R1 counterpart.

48. 48. By the time Train 32N reached Salem, Ohio, the Kt value of the L1 bearing was 5.8.

6

4:23CV0242

49. The Salem HBD sent a 953 alert to the Wayside Desk indicating a bearing temperature spike.

50. Gary Rambo was the only analyst on duty at the Wayside Desk when the 953 alert was sent, and he was working from his home.

51. Train 32N passed MP 54.1 in New Waterford Ohio at 8:46 PM and third-party security camera footage showed GPLX 75465's L1 bearing glowing.

52. Six minutes after passing the New Waterford MP, at approximately 8:52 PM on February 3, 2023, Train 32N passed over the HBD in East Palestine at MP 49.8.

53. The Salem HBD is approximately 19 miles before the East Palestine HBD.

54. At approximately 8:53 PM the HBD system sent the train crew a critical alarm for a hot bearing, alerting the crew to stop Train 32N.

55. Before the crew could bring the train to a controlled stop, Train 32N derailed.

56. 38 railcars derailed, including 11 cars carrying hazardous materials.

57. The tank car UTLX 205907 containing butyl acrylates, a flammable liquid, was breached in the derailment and, as a result, released its contents which ignited and formed a pool fire.

58. Norfolk Southern did not sue the owner of UTLX 205907.

59. The pool fire resulting from Train 32N was near or surrounding five DOT-105J300W (DOT 105) tank cars carrying VCM, including GATX 95098.

60. By around midnight on February 4, a Unified Command was formed.

61. Unified Command included, among others, local first responders and various federal and state agencies.

62. Polymerization of VCM is an exothermic reaction that releases energy.

4:23CV0242

63. A "vent and burn" procedure involves detonating explosives at certain locations on each tank car in order to release and burn off the car's hazardous contents.

64. GATX was not involved in the decision to perform the vent and burn procedure.

65. GATX was not a part of Unified Command.

66. At around 4:37 PM on February 6, Norfolk Southern's contractors executed the vent and burn.

## II.

In July 2023, Norfolk Southern impleaded two negligence claims against GATX. *See* Third-Party Compl. (ECF No. 119) at PageID #: 1438-40, ¶¶ 148-54 (Count One); PageID #: 1443-44, ¶¶ 178-86 (Count Three). Count Three alleges that GATX is at least partially responsible for harms stemming from the derailment because they negligently maintained Car 23. *See* ECF No. 119 at PageID #: 1444, ¶ 182.[2] Norfolk Southern has long framed its alleged injuries as derivative of those in the Plaintiff class. *See* Mem. in Opp'n (ECF 472) at PageID #: 7139 (asserting "Norfolk Southern is [not] seeking any non-derivative damages in this third-party action."); *see also* Tr. of Disc. Hr'g Proceedings (ECF No. 363) at PageID #: 4805 (clarifying that Norfolk Southern is "seeking only what [it is] entitled to under derivative contribution claims."). Norfolk Southern seeks to ensure that GATX pay its share, proportionate to its fault, of the $600 million settlement with the plaintiff settlement class that the Court approved in September 2024.

---

[2] Norfolk Southern now concedes that Count Three as to General American Marks Company should be dismissed. *See* ECF No. 675 at PageID #: 46759, n. 3.

8

4:23CV0242

### III. Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Fed. R. Civ. P. 56(c)(1)(A) requires a party requesting summary judgment in its favor or an opposing party "to go beyond the pleadings" and argument, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

4:23CV0242

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute will not defeat an otherwise properly supported motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be enough to defeat a motion for summary judgment.  *Id.* (citing *Anderson*, 477 U.S. at 252).

"It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment."  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997); *see also Guarino*, 980 F.2d at 410 (concluding "Neither the trial nor the appellate court . . . will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party."); Fed. R. Civ. P. 56(c)(1).  "[T]he court is not required to search the record for some piece of evidence which might stave off summary judgment."  *Id.*  It is also well settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."

10

4:23CV0242

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regul. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

### IV.  Analysis

#### A.  Count One

Norfolk Southern does not oppose GATX's motion for summary judgment on Count One.  *See* Third-Party Pls. Norfolk S. Co. and Norfolk S. Ry. Co.'s Opp'n to GATX's Mot. For Summ. J. (ECF No. 675) at PageID #: 46759 (stating "in the interest of streamlining the issues in dispute for this Court's decision and for trial, Norfolk Southern does not oppose GATX's motion for summary judgment as to Count One of Norfolk Southern's Third-Party Complaint, as addressed in Section II of GATX's motion.")  Therefore, summary judgment is granted in favor of GATX on Count One.

#### B.  Count Three

As stated above, Norfolk Southern concedes that General American Marks Company should be dismissed from this lawsuit.  *See* ECF No. 675 at PageID #: 46759 n.3.  Therefore, going forward the Court analyzes Count Three's allegations against GATX only.

GATX moves for summary judgment on Count Three, arguing that the claim for negligence fails as a matter of law because Norfolk Southern has not shown that GATX violated any federal law or regulation in maintaining GPLX 75465 (a.k.a. Car 23).  ECF No. 645 at PageID #: 42367.  GATX also argues that Count Three fails on the merits, because Norfolk Southern cannot proffer sufficient evidence that Car 23 was stationary longer than six months, or that Car 23 was submerged under water during Hurricane Harvey.  ECF No. 645 at PageID #: 42368.  Even if Norfolk Southern were able to show that GATX failed to exercise reasonable and ordinary care, GATX argues that railcar maintenance and inspections are substantially subsumed by the Federal

11

4:23CV0242

Railroad Safety Act ("FRSA"), which preempts the state-law negligence claim alleged in Count Three. ECF No. 645 at PageID #: 42368. If the FRSA does not preempt the negligence claim, GATX suggests that the claim still fails because Norfolk Southern has not proffered facts showing that GATX breached a common law duty of care with respect to Car 23, or that GATX's conduct proximately caused the derailment or the vent-and-burn. *Id*. GATX also argues that Count Three should be dismissed, because it is improperly impleaded, and Norfolk Southern's alleged damages are not recoverable. ECF No. 645 at PageID #: 42396-97.

Norfolk Southern responds that it need not prove a violation of a federal regulation to maintain its negligence claim in Count Three, because the claim turns on GATX's failure to maintain a railcar that was not in service. ECF No. 675 at PageID #: 46733. Norfolk Southern also contends that there are genuine issues of fact regarding whether Car 23 was damaged by Hurricane Harvey, and that a reasonable juror could find that GATX breached its duty of reasonable care. ECF No. 675 at PageID #: 46734. Norfolk Southern further counters that Count Three is correctly impleaded under Rule 14, because Norfolk Southern only seeks contribution, and it can obtain contribution either as damages for its negligence claim or through the standalone contribution claim. ECF No. 675 at PageID #: 46758.[3]

### 1. Count Three Does Not Fail as a Matter of Law.

At the threshold, the Court must determine whether Norfolk Southern can only prove its negligence claim in Count Three by showing a violation of a federal standard of care provided in the FRSA, or if Norfolk Southern can also prove its negligence claim by showing a violation of a common law duty of care.

---

[3] Norfolk Southern has long framed its alleged injuries as derivative of those in the Plaintiff class. *See* Section II, *supra*.

12

4:23CV0242

To support its proposition that Count Three can be proven only by a violation of federal regulations, GATX relies on the Court's prior ruling denying the Third-Party Defendants' Motion to Dismiss the Third-Party Complaint.  *See* 03/13/24 Memorandum of Opinion and Order (ECF No. 429).  GATX argues that Count Three was not preempted under the FRSA only because Norfolk Southern pleaded multiple violations of federal regulations.  *See* ECF No. 645 at PageID #: 42369 (arguing "[c]onsistent with the Court's ruling, to avoid summary judgment Norfolk Southern must present evidence from which a jury could reasonably find a violation of federal law.") (citing ECF No. 429) at PageID #: 21 (asserting "Norfolk Southern's negligence claims against . . . GATX and General American (Count Three) are not preempted because they are based on an alleged failure to comply with these federal regulations, which create the federal standard of care."));  *see also* Third-Party Defs. Gatx Corp. and Gen. Am. Marks. Co.'s Reply in Supp. Of Their Mot. For Summ. J. (ECF No. 709) at PageID #: 51490 (arguing "this Court was clear that Count III escaped preemption under the FRSA *only* because Norfolk Southern's Third-Party Complaint alleged a federal law violation.") (emphasis in original).

Norfolk Southern responds that GATX overextends the Court's prior ruling.  That ruling does not preclude Norfolk Southern from "establishing at trial that GATX violated a duty that is not substantially subsumed by the FRSA."  *See* ECF No. 675 at PageID #: 46743 (stating "That is not the same as holding that, no matter what discovery reveals, Norfolk Southern is forever precluded from establishing at trial that GATX violated a duty that is not substantially subsumed by the FRSA.")

GATX's interpretation of the Court's ruling on the Third-Party Defendants' Motion to Dismiss the Third-Party Complaint misconstrues the ruling and the Rule 12(b)(6) standard.  A Rule 12(b)(6) motion to dismiss tests only whether the plaintiff has pleaded a cognizable claim.

13

4:23CV0242

See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) (quoting "[i]n practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'") (alteration in original) (citations omitted). The Court's finding that Count Three plausibly alleged that GATX violated certain federal regulations does not mean that Norfolk Southern is restricted to only proving its case through federal violations. Rather, the Court ruled that Norfolk Southern pleaded sufficient facts to sustain a recovery under a theory of negligence. Furthermore, when ruling at the motion to dismiss stage, the Court was required to construe whether Norfolk Southern raises a common law negligence claim, because "[i]f an allegation is capable of several inferences, the allegation must be construed in a light most favorable for the plaintiff." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citation omitted).

Having reviewed the applicable law, the Court maintains its prior determination that the FRSA does not "substantially subsume" the duty of care owed by railcar owners for railcars that are not in service. See March 13, 2024 Memorandum of Opinion and Order[4] (ECF No. 430) at

---

[4] Under the law-of-the-case doctrine, the Court finds that the FRSA does not preempt the negligence claim in Count Three, because Count Three (like the negligence claim in the First Amended Master Consolidated Class Action Complaint, (ECF No. 138) at PageID #: 1836-38) alleges GATX violated a common law duty of care by not inspecting Car 23 while it was not in service. See Arizona v. California, 460 U.S. 605, 618 (1983) (explaining that the law-of-the-case doctrine, "posits [] when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); see also Howe v. City of Akron, 801 F.3d 718, 739 (6th Cir. 2015) (clarifying "[t]he purpose of the law-of-the-case doctrine is to ensure that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result.*'") (emphasis in original).

In previously ruling that the FRSA did not preempt the Class Plaintiffs' claims against Car 23, the Court relied in part on the allegations made by Norfolk Southern in its Third-Party Complaint. See ECF No. 430 at PageID #: 5650 (citing ECF No. 119 at PageID #: 1431, ¶¶ 109-111), see also Id. at 5626 n.1 (asserting, "The Court relies on certain of the allegations made by Norfolk Southern in its Third-party Complaint[.])

14

4:23CV0242

PageID #: 5651 (finding "[Class] Plaintiffs' claims related to Car 23, however, are not preempted because the regulations GATX and General American cite do not 'substantially subsume' the duty of care owed by railcar owners during extended periods of time when their cars are not in service."). In that Order, the Court determined that the regulations set forth in Part 215 do not apply, because § 215 "applies to each railroad freight car *in service* on [various track types]." *Id*. (citing 49 C.F.R. § 215.3(a)) (emphasis and alteration in original). Because those regulations did not cover the subject matter, "[n]ormal state negligence standards apply[.]" *Id*. (citing *Norfolk S. Ry. Co. v. Box*, 556 F.3d 571, 572 (7th Cir. 2009)).

GATX suggests that the FRSA substantially subsumes the subject-matter of Count Three, because 49 C.F.R § 215.115 "regulates precisely the 'subject matter' at the heart of this case" (ECF No. 709 at PageID #: 51493), and the finding that "Part 215 applies to 'each railroad freight car in service'" renders the "'subject matter' of the FRA regulations too narrowly." *See* ECF No. 709 at PageID #: 51493. The Court disagrees. GATX's interpretation would require the Court to make a ruling contrary to the plain language of 49 C.F.R. § 215.3. "When interpreting a statute, we start, as we must, with the text." *J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 726 (6th Cir. 2022). The plain language of the statute unambiguously states that "this part applies to each railroad freight car in service[.]" *See* § 215.3(a). For this reason, the Court finds that Part 215 applies to each railroad freight car in service. In support of its interpretation that the finding is narrow, GATX raises several contentions such as the interpretation of the phrase "subject matter" (ECF No. 709 at PageID #: 51493-94), the legislative intent of the FRSA (ECF No. 709 at PageID #: 51494), and the purpose of the FRSA (ECF No. 709 at PageID #: 51495-96). The Court remains unpersuaded. "[W]here, as here, the words of the statute are unambiguous, the 'judicial inquiry is complete.'"

15

4:23CV0242

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) (citation omitted).  Accordingly, the Court will not go beyond the plain language of the statute, because "the sole function of the courts is to enforce [the law] according to its terms . . . . [I]t is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Caminetti v. United States*, 242 U.S. 470, 485, 490 (1917).

The Court rejects GATX's argument that Count Three should be dismissed as a matter of law.

### 2.  Claim Three Can Be Sustained on the Merits

On the merits, GATX insists that Claim Three fails because Norfolk Southern cannot show that Car 23 was stationary for longer than six months (ECF No. 645 at PageID #: 42370-71), submerged in water during Hurricane Harvey (ECF No. 645 at PageID #: 42371-72), or that its bearings were damaged due to "extreme weather" during Hurricane Harvey[5] (ECF No. 645 at PageID #: 42373).  GATX also asserts that it is entitled to summary judgment, because Norfolk Southern solely relies on the expert testimony of Joseph Poplawski, who concludes that exposure

---

[5] In its Reply, GATX also moves to exclude Norfolk Southern's purported "Extreme Weather" theory, arguing that the theory cannot be a basis for recovery because it did not appear in the Complaint.  *See* ECF No. 709 at PageID #: 51498, 51500-01 (asserting that a Plaintiff may not assert factual allegations for the first time in an Opposition to Summary Judgment).  The Court refuses to hear this argument because GATX raises it for the first time in its reply brief.  *ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577 (6th Cir. 2018) (explaining "It is black-letter appellate practice that a party cannot raise arguments for the first time in a reply brief."); *see also Benham v. Comm'r of Internal Revenue*, No. 19-1938, 2021 WL 320765, at *3 (6th Cir. Jan. 8, 2021) (asserting "a party may not, for the first time in a reply brief, raise issues that were not raised in the opening brief.")

16

4:23CV0242

to "extreme weather" damaged the L1 bearing, which cannot create a genuine issue of fact.  ECF No. 645 at PageID #: 42373-74.

Norfolk Southern responds that there is sufficient evidence in the record from which a jury could find it more likely than not that Car 23 was damaged during Hurricane Harvey, and that such damage proximately caused the derailment, even without relying on Mr. Poplawski's expert report.  ECF No. 675 at PageID #: 46747.

While GATX separates the allegations in Count Three into three theories, the Court finds that it is unnecessary, considering that Count Three relates to whether GATX was negligent in maintaining the railcar in the years before Car 23 was placed in service leading to the derailment. As the Court determined in its Order denying the Third-Party Defendants' Motion to Dismiss the First Amended Master Consolidated Class Action Complaint, "Plaintiffs' claims relate to [] GATX's negligence in maintaining the railcar in the years before Car 23 was placed in service leading up to the derailment."  ECF No 430 at PageID #: 5651.  The Court finds that ruling is applicable, because in making it, the Court relied on certain allegations made by Norfolk Southern in its Third-Party Complaint; the two complaints allege similar facts in their negligence claims against GATX; and Count Three's negligence claim also alleges that GATX violated a duty of care owed by a railcar owner when its car is not in service.

Even if the Court were to ignore its prior ruling, the Third-Party Complaint alleges that Car 23 was improperly maintained.  See ECF No. 119 at PageID #: 1431.  Specifically, it alleges, "the bearing failure on Car 23 was caused by the negative impacts on the bearing and/or its

17

4:23CV0242

functionality stemming from General American Marks Company's failure to properly maintain its railcar." ECF No. 119 at PageID #: 1431, ¶ 184.[6]

Because Count Three concerns whether GATX was negligent in maintaining Car 23 in the years before it was placed in service leading to the derailment, genuine issues of material fact remain for resolution at trial.

There are also genuine issues of material fact as to whether GATX breached its duty of care by failing to inspect Car 23 while it was not in service, and whether that breach proximately caused the train derailment. To this end, Norfolk Southern cites evidence from the record in which a reasonable juror could infer that GATX knew Hurricane Harvey's rainfall could damage railcars like Car 23. ECF No. 675 at PageID #: 46739-40. Norfolk Southern also proffers evidence that the rainfall from Hurricane Harvey infiltrated Car 23's seals, that water infiltration degraded the lubrication inside the roller bearing, which created a latent defect that led to increased friction and thermal lockup causing the failure of the L1 roller bearing. ECF No. 675 at PageID #: 46752-53. In support, Norfolk Southern cites secondary sources advising that water damage can result in a roller bearing's failure (ECF No. 675 at PageID #: 46736-37, 46751-52), and witness and expert testimony explaining that the bearing failure can result in a derailment (ECF No. 675 at PageID #: 36738). Furthermore, Norfolk Southern cites evidence from the record from which a reasonable juror could infer that GATX knew Hurricane Harvey's rainfall could have a detrimental effect on railcars like Car 23. ECF No. 675 at PageID #: 46739-40. Norfolk Southern also presents evidence of Car 23's L1 roller bearing's increased temperature

---

[6] The Court notes that while paragraphs 1-147 are incorporated by reference, paragraph 184 of the Third-Party Complaint (ECF No. 119) mentions only General American Marks Company. It has since been stipulated that GATX Corporation owned Car 23. *See* ECF No. 586 at PageID #: 17627, ¶ 4.

4:23CV0242

shortly before the derailment, and evidence of the L1 roller bearing's failure following the derailment. ECF No. 675 at PageID #: 46741.

Because there is a genuine dispute about breach and proximate causation, the Court rejects GATX's argument that Count Three fails on the merits.

### B. Impleader

GATX and Norfolk Southern dispute whether Count Three is a properly impleaded claim, disagreeing on whether it is derivative of the Class Plaintiffs' claims against Norfolk Southern. *See* ECF No. 645 at PageID #: 42396; *see also* ECF No. 675 at PageID #: 46756-57. The parties also challenge whether Norfolk Southern's alleged damages under a common-law negligence claim are recoverable under Ohio law. *See* ECF No. 645 at PageID #: 42397-98; *see also* ECF No. 675 at PageID #: 46756-57.

The Court's reinstatement of Norfolk Southern's contribution claim renders the arguments moot. *See* Suppl. Pleading to Third-Party Compl. (ECF No. 731). "A federal court 'lacks jurisdiction to consider any case or issue that has lost its character as a present, live controversy and thereby becomes moot.'" *Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 931 (6th Cir. 2017); *see also Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 530 (6th Cir. 2001) (holding "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue.") (citing *Church of Scientology v. United States,* 506 U.S. 9, 12, (1992)).

As stated in Section II, *supra*, Norfolk Southern seeks contribution from GATX towards the $600 million settlement with the plaintiff settlement class that it has incurred. *See* Mem. in Opp'n (ECF 472) at PageID #: 7139 (asserting "Norfolk Southern is [not] seeking any non-derivative damages in this third-party action."); *see also* Tr. of Disc. Hr'g Proceedings (ECF No.

19

4:23CV0242

363) at PageID #: 4805 (clarifying that Norfolk Southern is "seeking only what [it is] entitled to under derivative contribution claims.").

## IV.  CONCLUSION

For the reasons above, GATX's Motion for Summary Judgment on Norfolk Southern's Count One and Count Three (ECF No. 645) is granted in part and denied in part.

Accordingly, GATX's Motion for Summary Judgment on Count One is granted. GATX's Motion for Summary Judgment on Count Three is denied.  General American Marks Company is dismissed.


IT IS SO ORDERED.


| February 21, 2025 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |