# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** | Case No. 4:23-CV-00242-BYP |
| | JUDGE BENITA Y. PEARSON |

## JOINT STATUS REPORT

Pursuant to the Court's March 26, 2025 Order (ECF 897), Third-Party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company (together, "Norfolk Southern"), Third-Party Defendant GATX Corporation ("GATX"), and OxyVinyls LP ("OxyVinyls") (collectively, the "Parties") have conferred and set forth their positions below on the items identified by the Court.

I.      **Amount of Time Each Party Requests to be Allocated to Each Party for Their Respective Opening Statements**

A.  <u>GATX</u>[1]

GATX respectfully submits that GATX and OxyVinyls should each be granted 60 minutes for opening statements, and Norfolk Southern should be granted 90 minutes.  GATX understands that Norfolk Southern requests double the amount of time for opening that GATX and OxyVinyls receive; however, such a rule providing Norfolk Southern with double the time would be inappropriate given the overlap in issues in the case.  Many issues in this case—such as the background information regarding the derailment and Norfolk Southern's response thereto—are overlapping and apply to all the Parties, and therefore will not need to be explained twice by

---

[1] This submission contains the individual positions of the Parties.  GATX disagrees with and objects to Norfolk Southern's characterization of the prior discussions among the parties regarding these issues.  GATX has included Norfolk Southern's position in this joint submission, without GATX having the opportunity to respond.

Norfolk Southern.  Therefore, Norfolk Southern will not require double the time of the other parties.  Such a schedule ensures a balanced and equitable trial process, and these time limits are proportional to the amount of total overall time granted by the Court for evidence in the matter.

      B.  <u>Norfolk Southern</u>

Norfolk Southern defers to the Court on the appropriate overall time for opening statements but requests an even split of time for opening statements between the two sides—half for Norfolk Southern, and half for Third-Party Defendants.  That is, if the Court allocates 45 minutes each for GATX and OxyVinyls's opening statements, Norfolk Southern requests 90 minutes for its opening statement.

Norfolk Southern requests an equal allocation for openings for the same reasons Norfolk Southern requested—and the Court ordered—an equal allocation for overall trial time.  Norfolk Southern is litigating two separate cases against Third-Party Defendants: the case against GATX concerns the failed bearing on GATX's Car 23, which caused the derailment; the case against OxyVinyls concerns its Safety Data Sheet, and the events arising from the derailment and leading to the decision to vent-and-burn.  Moreover, as the Third-Party Plaintiff, Norfolk Southern bears the burden of introducing the key facts and issues in this case to the jury and the Court for the first time during opening statements.  Given the breadth and depth of the issues Norfolk Southern must cover, against two different Third-Party Defendants, an allocation of double the time for opening statements to Norfolk Southern is not only fair but necessary to ensure a complete and fair presentation of its case.

Third-Party Defendants initially proposed that the Court allocate one hour to Norfolk Southern, one hour to GATX, and one hour to OxyVinyls.  That allocation of time would require Norfolk Southern to divide its one hour opening to present on the two separate cases against Third-

Party Defendants, while Third Party Defendants will each have double the time to present their response to Norfolk Southern's case against them.  That structure is particularly unfair where Norfolk Southern has the burden of proof as to each Third-Party Defendant.  GATX's position that it should have 60 minutes and Norfolk Southern 90 minutes is also unfair for the same reasons.

      C.  OxyVinyls

 OxyVinyls requests 60 minutes for its opening statement, and takes no position on the amount of time necessary or appropriate for the other parties.

**II.    Exhibits / Demonstrative Evidence**

With respect to demonstratives used in direct and cross examination, the Parties respectfully request the Court enter the Parties' joint proposed stipulation on demonstrative evidence (ECF 889) filed on March 25, 2025, thereby amending the Court's February 12, 2024 Civil Trial Order (ECF 392) regarding the sharing of demonstratives two days before the start of trial.

Under the joint proposed stipulation, the term "demonstrative" shall include power-points and graphics and animation demonstratives, but does not include scans, images or copies of or from exhibits or deposition transcripts or underlining, highlighting, or similar emphasis on such exhibits or deposition transcripts, or power-points or other media that contain only an image of an exhibit (or portion thereof) with such highlighting, underlining or similar emphasis (e.g., not including titles or other illustrations).

### III. Identification of Any Objections a Party Has to Particular Exhibits(s), Demonstrative Evidence, or Deposition Testimony Another Party Seeks to Use During Opening Statements

#### A. GATX

For purposes of demonstratives used in opening statement, under the definition of "demonstratives" outlined in the Court's Civil Trial Order (ECF 392), the parties need only to exchange "demonstrative evidence such as models or sketches" to be used in opening statements.

It is GATX's position that, consistent with the Court's definitions, the Parties exchange such demonstratives, but not portions of exhibits or deposition transcripts they intend to use during opening statement. The Civil Trial Order speaks only to the exchange of demonstratives. GATX does not believe that the Court's Civil Trial Order requires the parties to, in effect, preview their entire opening statement by requiring an exchange of exhibits and testimony that the party plans to use in opening statement. The Court has instituted a process for motions *in limine* (to inform the parties about what categories of evidence are not admissible), which are guiding principles the Parties should follow with respect to opening statements. The Court should not be required to determine in a vacuum before opening statements (without relevant context during witness examinations) which exhibits will be admitted during the course of the trial.

Therefore, for purposes of opening statement, GATX respectfully submits, consistent with the Court's Civil Trial Order, that, although the Parties are required to exchange demonstratives in advance of opening statements, the Parties may use (and are not required to exchange) excerpts of deposition transcripts they intend to play if there are no pending objections to the portion of the testimony or the Court has entered a ruling regarding the testimony's admissibility.

#### A. OxyVinyls

OxyVinyls agrees with GATX's position on these issues.

B. <u>Norfolk Southern</u>

Norfolk Southern respectfully submits that the parties should exchange the demonstratives, and identify the exhibits and deposition testimony a party seeks to use during opening statements on Sunday, March 30 according to the following schedule:

- 1:30 PM:  The parties exchange demonstratives, and identify exhibits and deposition testimony to be used in opening statements.
- 3:30 PM:  The parties exchange objections
- 4:30 PM:  The parties meet and confer.

For any disputes the parties are unable to resolve by 8:00 PM, Norfolk Southern requests that the parties bring before the Court for resolution outside the presence of the jury the morning of the first day of trial.

Norfolk Southern has been attempting to engage GATX and OxyVinyls to reach agreement on a trial disclosure procedure in order to facilitate an orderly presentation of evidence, that will permit the Court to resolve outstanding objections outside the presence of the jury.  Norfolk Southern first sent a proposed stipulation on trial disclosure times to both Third-Party Defendants on March 19.  Third-Party Defendants sent revisions to that proposed stipulation on March 21. Norfolk Southern sent its further revisions, which included the above proposed disclosure schedule for openings, to GATX and OxyVinyls on March 24.  During a meet and confer the same day, GATX and OxyVinyls refused to agree on exchange times for openings—or exchange times for any other trial disclosures—because (1) the parties did not agree on the time allocated for opening statements and (2) Norfolk Southern did not agree to Defendants' position that any deposition testimony and exhibits could be used in opening statements without any prior disclosure to allow the Court to resolve any objections prior to opening statements.  During the meet and confer,

Norfolk Southern explained that the parties' disagreements over what material should be disclosed for opening statements had no bearing on an agreement for disclosure times, and that the parties should agree on disclosure times for openings, even while their substantive disputes are pending, to facilitate the fair and orderly trial presentation.  GATX and OxyVinyls did not agree.

Norfolk Southern sets forth its position on these two issues below:

*First*, for the time allocation for opening statements, as explained above, Norfolk Southern defers to the Court on the appropriate overall time for openings statements but requests an even split of time for opening statements between the two sides—half for Norfolk Southern, and half for Third-Party Defendants.

*Second*, Norfolk Southern does not agree that the parties may freely use deposition testimony and exhibits during opening statements without disclosure to allow the Court to resolve any outstanding objections.  As Norfolk Southern explained during the parties' meet and confer, a party should identify the evidence it intends to use in openings, including exhibits and deposition testimony, so that the other party can raise any objections *prior to* opening statements for resolution by the Court.  Third-Party Defendants' proposal that the parties should be free to use any exhibit (whether objected to or not) and any portion of deposition testimony (regardless of the context or whether it is a complete and accurate excerpt) is wholly unworkable.  Disclosure will allow the parties to meet and confer in good faith to resolve any objections and narrow the disputes for the Court's consideration and resolution before opening statements.  Third-Party Defendants proposal (no disclosure) will place the parties in the position of having to object to prejudicial evidence during the other side's opening statement, which the Parties and the Court would no doubt want to avoid.  Norfolk Southern therefore proposes that parties disclose the demonstratives, and identify any exhibits or deposition testimony they may use in openings in accordance with the schedule

laid out above, which will permit the parties sufficient time to confer on and narrow disputes prior to opening statements and raise any unresolved disputes with the Court prior to opening statements.

IV. **Whether the Parties Should Play All Designated Deposition Testimony for Each Witness to the Jury at the Same Time**

A. <u>GATX</u>

GATX proposes a procedure for deposition designations such that when multiple parties have submitted affirmative designations for a given witness, the Parties will play all designated deposition testimony for each witness to the jury at the same time. For timekeeping purposes, GATX proposes the Parties will be responsible for providing the Court with the run time of their respective designations for the witness.

Playing all designations for each witness "all at once" avoids the need for time-consuming "refreshers" regarding the role of each witness when designations are played separately. K*raft Foods Glob., Inc. v. United Egg Producers, Inc.*, 2023 WL 6248266, at *4 (N.D. Ill. Sept. 19, 2023). By playing the designations all at once, the Court can ensure that "there w[ill] be no need to remind the jury who the witness is, or replay what the jury heard before. … The continuity, and the close proximity in time, would make things easier to understand for the jury." *Id.* Other courts have similarly required that deposition designations be played "at the same time," *see*, *e.g.*, *Microspherix LLC v. Merck Sharp & Dohme Corp.*, 2023 WL 6613306, at *11 (D.N.J. Oct. 5, 2023); *Ingenico Inc. v. Ioengine, LLC*, 2022 WL 22835287, at *2 (D. Del. July 5, 2022) (same), recognizing that providing a witness's full testimony at once may "promote efficiency and minimize juror confusion," *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2829693, at *4 (S.D.N.Y. June 30, 2017).

In line with these cases, GATX submits that playing all deposition testimony for each witness once, at the same time, is the most efficient and productive manner of evidence

7

presentation for the jury.  It would be confusing for the jury to hear snippets of testimony, devoid of the context of other, related testimony.  In many instances, to provide the necessary context, the parties would be required to replay the same testimony later in their case in chief to then provide the relevant context provided in counter-designations, which would lead to inefficiency and impact the Parties' time management.  To play deposition testimony separately for each party would further be inconsistent with how witness testimony is typically presented.  Much the same way a cross examination occurs at the same time a witness is on the stand, deposition designations should be played for the jury contemporaneously.

      B.  <u>OxyVinyls</u>

OxyVinyls agrees with GATX on these issues.

      C.  <u>Norfolk Southern</u>

Norfolk Southern respectfully submits that an adverse party should not be permitted to play its affirmative deposition designations during another party's case-in-chief.  Instead, an adverse party should be limited to its counter-designations necessary for completeness in accordance with the Federal Rules.

By requesting that the Court permit them to play affirmative designations the first time that witness's testimony is played in court, Third-Party Defendants are effectively seeking to begin introducing their affirmative evidence and case in the middle of Norfolk Southern's case presentation, which is improper, prejudicial, and highly disruptive to the flow of Norfolk Southern's case presentation.   While Norfolk Southern intends to significantly streamline the designations it plays at trial and instead focus its trial presentation on live testimony, Third-Party Defendants—in particular, GATX—intend to take the opposite approach by playing hours and hours of deposition testimony.  For example, GATX represented during the February 5 pretrial

conference that it intends to play as many as 10 hours of deposition testimony, and Third-Party Defendants designated hours and hours of testimony from their *own witnesses*, apparently intending to play deposition testimony from those witnesses rather than bringing them live and subjecting them to cross examination.  *See* Dkts. 760 (GATX's Notice of Filing of Affirmative Deposition Designations designating Tyler Dickman, Debbie Long, Jesus Parada, William Rowe John Sbragia, Jessica Stanfield, and Andrew Vanderford).  Norfolk Southern objected to Third-Party Defendants' use at trial of the deposition transcripts and videos of their own current employees given that neither party has shown that any of these witnesses will be unavailable pursuant to Rule 32(a)(4), and Norfolk Southern was allocated only one hour to depose key witnesses. *See* Dkts. 777 and 801.[2]  Yet, Third-Party Defendants are now not only seeking to introduce such affirmative testimony—but also to do so in *Norfolk Southern's* case-in-chief.  That proposal would be highly prejudicial to Norfolk Southern's trial presentation.

Moreover, if GATX and OxyVinyls are permitted to play their lengthy affirmative designations during Norfolk Southern's case in chief, this would lead to the scenario where Norfolk Southern may play only a few minutes of testimony for a narrow purpose, yet GATX and OxyVinyls would be permitted to play an hour or more of their affirmative designations during Norfolk Southern's trial presentation.  This is fundamentally unfair.  Moreover, the jury is likely to become disengaged by the playing of such lengthy designations and may assume that the decision to play such designations was Norfolk Southern's since the designations were played in Norfolk Southern's case-in-chief.  Such a disruption could also confuse the jury and dilute the

---

[2] GATX has placed Tyler Dickman, Jesus Parada, William Rowe, and Andrew Vanderford on the list of witnesses it intends to call live at trial, see Dkt. 789 (GATX's Amended Witness List,  dated Mar. 14, 2025), and at the March 19, 2025 status conference, withdrew its designations for Mr. Rowe and its affirmative designations for Debbie Long.

impact of the presenting party's case, making it more difficult for the jury to follow and understand the evidence because of extensive and unrelated counter-designations.

Rather, consistent with the Federal Rules, Norfolk Southern should be permitted to play the designations relevant to its affirmative case, with GATX and OxyVinyls providing appropriate counter-designations necessary for completeness.  GAT and OxyVinyls will have the opportunity to do the same during their case presentations.  Nor will the testimony be duplicative—if the testimony is a true counter necessary for completeness, it will be played along with Norfolk Southern's affirmative designation and would not need to be played again later in the trial.

Accordingly, Norfolk Southern requests that the Court not allow Third-Party Defendants to play their affirmative designations during Norfolk Southern's case-in-chief, and instead limit them to playing appropriate counter-designations necessary for completeness to avoid unnecessary prejudice and disruption to Norfolk Southern's trial presentation.

**V.  Whether the Court Should Take Judicial Notice of the Facts Set forth in ECF 887.**

       A.  <u>Norfolk Southern</u>

As Norfolk Southern explained in the Motion for Judicial Notice, each of the facts set forth concerns the Class Action Settlement Agreement, is indisputably true, and is drawn from this case's judicial records whose authenticity is beyond questioning.  They fall squarely under Federal Rule of Evidence 201.

Norfolk Southern has sought to ascertain GATX's and OxyVinyls's positions as to this Motion on multiple occasions over the past week, first proposing a joint stipulation by email to GATX's and OxyVinyls's counsel on March 20.  Counsel for GATX explained in a responding email that they would follow up with their position as to the Motion, but never did.  Norfolk Southern thus notified GATX's and OxyVinyls's counsel on March 25 that, "as we indicated we

10

would do, we intend to file a motion for judicial notice today," and subsequently proceeded to file the Motion.  This morning's Meet and Confer at 10am was thus the first occasion that GATX and OxyVinyls articulated their opposition to the Motion in general terms rather than with respect to each individual fact proposed for notice.  Norfolk Southern requested, and GATX and OxyVinyls agreed, that the Defendants provide their portions of the joint submission to Norfolk Southern no later than 11:00 A.M. ET, so that Norfolk Southern would have time to respond prior to the 12:00 P.M ET filing deadline.   GATX and OxyVinyls did not provide a draft of their joint submission on Norfolk Southern's request for judicial notice until 11:47 AM and 11:36 AM, respectively, denying Norfolk Southern any meaningful opportunity to respond to the specific bases of their objections by the Court-ordered deadline.[3]

The thrust of GATX's and OxyVinyls's objection to the Motion is that certain facts are "incomplete" and taken out of context—or instance, GATX and OxyVinyls suggested that the proposed fact that the Settlement Agreement discharged GATX and OxyVinyls of liability is "incomplete" because there are opt-outs and objectors to the Settlement.  But GATX and OxyVinyls also made clear that there would not be a joint motion for judicial notice, regardless of whether Norfolk Southern would be amenable to adding more facts that would allay purported concerns of "incompleteness"—for instance, jointly proposing that the Court should take notice of the liability release alongside the fact that there are opt-outs and objectors.

Norfolk Southern reiterates that each of the three categories of facts is appropriate for judicial notice under Federal Rule of Evidence 201.  In what follows, Norfolk Southern addresses GATX's and OxyVinyls's objections that have been ascertained to date.

### A. Facts on the Face of the Settlement Agreement

---

[3] OxyVinals sent a draft opposition to Norfolk Southern's motion at 11:18 AM ET.  Presumably, this draft could have been shared as part of the meet and confer process.

GATX and OxyVinyls object that the core, indisputable facts of the Settlement Agreement proposed for notice are "incomplete."  But that there may be *additional facts* that GATX and OxyVinyls would *also* like to have noticed does not negate the indisputable truth of the proposed facts.  For example, there is no question that the Settlement Fund consists of $600,000,000.00.  If OxyVinyls would like "to disclose to the jury how the $600 million is to be allocated," OxyVinyls LP's Memorandum in Opposition at 2 (shared via email at 11:36am), then it could propose that the Court take notice of those facts (or even the entirety of the operative section of the Settlement Agreement) as well.  Norfolk Southern is amenable to notice being taken of a more broadly scoped portion of the Settlement that would provide the jury with information concerning the Settlement's allocation, the fact that there are objectors and opt-outs to the Settlement, "the identities of all of the 'Released Parties,'" *id.* at 2, and so on.  Again, Norfolk Southern attempted to initiate with GATX and OxyVinyls a joint stipulation, one which could incorporate such additional facts, but this invitation was rejected.

### B. Facts Established by Prior Court Orders

GATX and OxyVinyls do not deny that this Court's prior Orders are authentic and the identified facts contained within them indisputable.  Instead, OxyVinyls objects in its Memorandum in Opposition (shared via email at 11:36am) that this Court's determination that the Settlement Agreement was reasonable is "irrelevant" to the reasonableness inquiry under Ohio. Rev. Code § 2307.25(B).  GATX did not articulate such an objection during this morning's Meet and Confer; to the contrary, GATX *agreed* that this Court's prior reasonableness determination was suitable for notice and could be put before the jury.

In any event, OxyVinyls's objection has little to recommend it.  The suitability of this Court's prior reasonableness determination for judicial notice does not turn on whether the reasonableness determinations are one and the same or distinct but overlapping.  Moreover, this

question is almost entirely academic, considering that even OxyVinyls agrees that the Settlement Agreement will be deemed reasonable on appeal.

**C. Fact of the Class Action Plaintiffs' Amended Complaint**

The Court should also take judicial notice of the fact that Class Plaintiffs' Amended Master Complaint includes the statement recited at ECF No. 887 at 4 ("This Consolidated Class Action seeks redress for residents … and other combustible materials"). The fact that the Amended Master Complaint includes this statement is beyond dispute, as is the authenticity of the Amended Master Complaint. Norfolk Southern does not seek notice of the statement *itself* (*i.e.*, for the purpose of establishing the facts asserted by the statement). Norfolk Southern simply seeks notice of the fact *that the statement appears* in the Amended Master Complaint. That fact is beyond dispute.

B. <u>OxyVinyls</u>

OxyVinyls respectfully requests that the Court deny the motion of Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively, "Norfolk Southern") requesting judicial notice concerning the class action settlement (the "Motion"). (ECF No. 887.) Norfolk Southern's Motion should be denied because the "facts" at issue in Norfolk Southern's Motion are subject to dispute and are also irrelevant. Accordingly, the Motion must be denied.

<u>**LAW AND ARGUMENT**</u>

Norfolk Southern has requested that the Court take judicial notice of three categories of "facts": (1) those allegedly found in the class action settlement agreement; (2) those found in the Court's orders regarding the settlement; and (3) prior statements made by Class Plaintiffs. None of the "facts" identified by Norfolk Southern are appropriately the subject of judicial notice.

Rule 201 permits a court to take judicial notice of a fact that is "not subject to reasonable dispute" because it (1) is "generally known within the trial court's territorial jurisdiction;" or (2)

"can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The rule proceeds upon the theory that . . . dispensing with traditional methods of proof [should only occur] in clear cases." *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b) advisory committee's note) (internal quotation marks omitted). Courts should not take judicial notice of court records or judicial proceedings "in order to discern the truth of the facts within that filing." *Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 Fed. App'x 567, 569 (6th Cir. 2012) (internal citation omitted).

**A.    Judicial notice is improper for matters subject to dispute.**

The accuracy of the "facts" at issue in Norfolk Southern's Motion can reasonably be and are questioned by OxyVinyls.

**1.    The class action settlement agreement "facts" identified by Norfolk Southern are incomplete.**

Each of the class action settlement agreement "facts" identified by Norfolk Southern is materially misleading because each is incomplete.

First, Norfolk Southern's proposed stipulation regarding the settlement amount of $600 million fails to disclose to the jury how the $600 million is to be allocated and, therefore, presents the misleading impression that all $600 million will go to the residents and businesses surrounding East Palestine. (Class Action Settlement Agreement, ECF No. 452-2, at PageID #6021.)

Second, Norfolk Southern's proposed stipulation regarding the "Settlement Class" fails to disclose that individuals could opt out of and have opted out of the Settlement Class. (*Id.*, ECF No. 452-2, at PageID ##6013-14, 6018-19.)

Third, Norfolk Southern's proposed stipulation regarding "Released Parties" and "Released Claims" fails to disclose (a) the identities of all of the "Released Parties," (b) that the

14

definition of "Released Claims" expressly carves out "Personal Injury Claims," and (c) that the claims against the "Released Parties" are not extinguished until the Effective Date, which has not occurred yet.  (*Id.*, ECF No. 452-2, at PageID ##6010, 6012-13, 6029-31.)

> **2.** **The Court's prior orders concerning the settlement are irrelevant, needlessly cumulative, and contain information that is reasonably questioned.**

The Court's statements regarding the settlement are irrelevant for two reasons: (1) the reasonableness question that the Court was deciding in approving the class action settlement is different than the reasonableness question at issue in Ohio. Rev. Code § 2307.25(B),[4] and (2) because the Court has ordered, over the objection of the Third-Party Defendants, that "[n]o party may argue or solicit testimony that the Class Action Settlement or its amount was not reasonable" (Omnibus Order, ECF No. 885, PageID #60563), how the settlement was negotiated and the factors that the Court considered in approving the class action settlement agreement are not of consequence in determining the claims against the Third-Party Defendants.  Fed. R. Evid. 401. Furthermore, Norfolk Southern's multiple proposed "facts" that the Court found the class action settlement to be fair, adequate, and reasonable (Mot., ECF No. 887, PageID #60577) needlessly present cumulative evidence.  Fed. R. Evid. 403.  If the Court will not allow the Third-Party Defendants to challenge the amount that Norfolk Southern has agreed to pay in settlement as unreasonable, then Norfolk Southern should not be permitted to present numerous conclusively

---

[4] Whether the class plaintiffs' settlement with Norfolk Southern was fair, reasonable, and adequate is a different question from whether Norfolk Southern can satisfy its burden of demonstrating that the amount it paid in settlement was not in excess of what is reasonable.  In determining whether the class action settlement was fair, reasonable, and adequate, the Court was required to assess whether the settlement was fair, reasonable, and adequate ***to class plaintiffs***.  Fed. R. Civ. P. 23(e)(2)(C) ("the relief provided for the class is adequate . . ."); *see also* Tr. of Fairness Hr'g, ECF No. 553, at 114 ("my job here today is to determine whether or not the settlement is fair, reasonable and adequate and in the best interests ***of the settlement class members***.") (emphasis added).  By contrast, to establish a right to contribution, Norfolk Southern must demonstrate, among other things, that any amount it has agreed to pay in settlement was not ***in excess*** of what is reasonable.  *See* Ohio Rev. Code § 2307.25(B); *Westfield Ins. v. Chapel Elec. Co. LLC*, 2024-Ohio-2736, ¶ 138, 249 N.E.3d 266, 274 (Ct. App.).

established "facts" to the jury that OxyVinyls has never had the opportunity to challenge and will be deprived of having the opportunity to challenge at trial.

Norfolk Southern's proposed facts regarding the Court's prior orders are also improper for judicial notice because the information contained in the proposed facts is reasonably questioned. Norfolk Southern has not provided, through discovery or otherwise, any information regarding the settlement, including whether the settlement between Norfolk Southern and Class Plaintiffs was "vigorously negotiated," the factors that Norfolk Southern considered in entering into the class action settlement, and if Norfolk Southern has paid "over half" of the settlement amount and, if so, to whom. (Mot., ECF No. 887, PageID #60577.) Indeed, in noting that Norfolk Southern has allegedly paid "over half" of the $600 million (Order, ECF No. 730, PageID #51832), the Court cited to a filing by Norfolk Southern (Mot. for Leave to File Supplemental Pleading, ECF No. 569-1, PageID #14684) that it would pay $310 million by a certain date. Norfolk Southern, however, has not presented evidence that the payment has actually been made.

### 3. The allegations by Class Plaintiffs contained in the First Amended Master Consolidated Complaint are misleading and irrelevant.

Finally, Norfolk Southern's proposed "fact" for judicial notice regarding one paragraph contained in Class Plaintiff's First Amended Master Consolidated Class Action Complaint fails to adequately present the bases for Class Plaintiffs' claims. For instance, the single proposed paragraph does not reflect that Class Plaintiffs did not once plead in their First Amended Master Consolidated Class Action Complaint any alleged errors with OxyVinyls' safety data sheet, which is now the focus of Norfolk Southern's claims against OxyVinyls. Moreover, the single paragraph proposed by Norfolk Southern for judicial notice could result in juror confusion that it is a conclusively established fact that the Class Plaintiffs were "contaminat[ed]" by vinyl chloride when the harm to Class Plaintiffs was never determined as a matter of law. Fed. R. Evid. 403;

16

Mot., ECF No. 887, PageID #887; *see also Panezich v. Foley*, Case No. 4:21-cv-331, 2024 U.S. Dist. LEXIS 12661, at *31 (N.D. Ohio Jan. 5, 2024) ("The Court will not presume that *any* fact in the document is indisputable and can appropriately be judicially noticed.").  Moreover, pleading allegations, particularly those including inflammatory language, are irrelevant to whether Norfolk Southern can satisfy its burden of demonstrating that OxyVinyls is a joint tortfeasor to Class Plaintiffs and should be liable for contribution.

**B.**     **Norfolk Southern has the burden of establishing all elements of its contribution claim.**

It is Norfolk Southern's burden to demonstrate to the jury that it is entitled to contribution from OxyVinyls.  In recognition of the fact that "plaintiffs have the burden of proof," Norfolk Southern even asked for additional time to present its case in chief at trial.  (Joint Status Report, ECF No. 779, at PageID #58518; *see also* Op. & Order Denying Norfolk Southern's Mot. for Partial Summ. J. against OxyVinyls, ECF No. 781, PageID #58542 (finding that "Norfolk Southern bears the burden of proof at trial.").)

The Court should reject Norfolk Southern's attempt to avoid having to present evidence that can then be subject to cross examination from OxyVinyls.  Trial presents the first opportunity for OxyVinyls to challenge Norfolk Southern regarding the class action settlement agreement. When granting preliminary approval of the class settlement, the Court ordered that "Persons or Businesses that are not Settlement Class Members may not object to the Settlement."  (ECF No. 524, PageID #11560 (citing ECF No. 452-2, PageID #6017 & Fed. R. Civ. P. 23(e)(5)(A)).) OxyVinyls was not a settlement class member.  Therefore, OxyVinyls was prohibited from objecting to the settlement.  Further, in allowing Norfolk Southern to file a Supplemental Pleading to assert a contribution claim, the Court expressly declined to allow the Third-Party Defendants to file a motion to dismiss or a motion for summary judgment.  (Order, ECF No. 730, PageID #51837-

38.)  Moreover, no fact or expert discovery occurred after the claim was pled.[5]  If Norfolk Southern

is permitted to avoid presenting a witness to testify regarding its settlement with Class Plaintiffs,

then OxyVinyls will once again be deprived of any opportunity to examine the scope of the

settlement.

C.  GATX

GATX likewise opposes Norfolk Southern's request for judicial notice.  GATX does not

oppose Norfolk Southern presenting a witness to testify, or the Court informing the jury, that the

settlement was for $600,000,000.00 to resolve certain claims and that this Court found that the

settlement was fair reasonable and adequate to the class members.  ECF 887 at I.1.  GATX also

states that it understands the Court's rulings on motions *in limine*, including the Court's ruling that

"[n]o party may argue or solicit testimony that the Class Action settlement or its amount was not

reasonable."  ECF 885 at 1.  GATX will follow the Court's ruling and states that will not challenge

the reasonableness of the class action settlement to the jury.[6]  GATX further states  that, in light

of the Court's rulings, and without waiving its appellate rights, it does not oppose Norfolk

Southern's request that the jury be informed that the Court approved the class action settlement

with plaintiffs as fair, reasonable and adequate to the class members.

The Court should deny the remaining portions of Norfolk Southern's request for judicial

notice.  Norfolk Southern asks that the Court take judicial notice of numerous alleged facts offered

in support of the proposed class settlement.  See NS Mot. (ECF 887) at II.1, II.2, II.3 (discussing

"factors supporting the Court's determination," such as that the settlement was "vigorously

---

[5] And the Court has now, over Third-Party Defendants' objection, effectively granted Norfolk Southern summary judgment on the reasonable-amount element of its contribution claim in the guise of an evidentiary ruling. *See Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020) (holding court erred by granting motion in limine not to "address[] the admissibility of certain pieces or types of evidence," but instead "to bar the jury from hearing one side's argument, essentially granting them judgment as a matter of law on that point").
[6] GATX does not waive any rights with respect to that ruling.

18

negotiated," and "reached with the assistance of … retired United States District Judge Layn Phillips"). These facts are irrelevant to the issues being tried in this case and would, without full context, unduly prejudice GATX. The Court's prior rulings resolved the reasonableness issue as to the class settlement. The jury will not be asked to decide whether the settlement was fair, reasonable and adequate to the class. There is therefore no need to inform the jury about, *e.g.*, whether "retired United States District Judge Layn Phillips" is "a highly qualified mediator," or facilitated the settlement "over the course of multiple mediation conferences." ECF 887 at II.2. Providing that information to the jury without allowing GATX to provide proper context would, again, be highly prejudicial.

Other purported facts Norfolk Southern seeks to "notice" – including "the positive reactions of Settlement Class Members," the class definition, the class members support the settlement, the scope of the release, and the other requested judicially noticed facts -- are equally irrelevant and likely to confuse and/or mislead the jury and prejudice GATX, particularly without being placed in proper context. Norfolk Southern leaves out, for example, that had the settlement *not* released GATX, then Norfolk Southern would have no contribution claim against GATX. The complicated interplay between the release and Norfolk Southern's released claims again is not relevant and invites only a confusing distraction if placed before the jury. Similarly, Norfolk Southern's statement that it has paid "over half" of the $600,000,000 obligation is also misleading and confusing. ECF 887 at II.4. The statement leaves out that Norfolk Southern may not pay the remainder until after appeals relating to the settlement are resolved, and if Norfolk Southern does *not* pay the remainder because of an adverse result on appeal, then Norfolk Southern will not have any contribution claim against GATX. This again goes far beyond the issues the jury needs to

decide.  Further, these are issues that are "capable of reasonable dispute" and so are "not subject to judicial notice."  *United States v. Collier*, 68 Fed. App'x 676, 683 (6th Cir. 2003).

Dated: March 27, 2025

Respectfully submitted,

KIRKLAND & ELLIS LLP

BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP

/s/  Hariklia ("Carrie") Karis
HARIKLIA ("CARRIE") KARIS*
ROBERT B. ELLIS*
JONATHAN O. EMMANUEL*
AARON STEVENSON*
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
hkaris@kirkland.com
rellis@kirkland.com
jon.emmanuel@kirkland.com
aaron.stevenson@kirkland.com

JOSEPH A. CASTRODALE (OH: 0018494)
MEGGAN A. LOUDEN (OH: 0074215)
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Tel.: (216) 363-4500
Fax: (216) 363-4588
jcastrodale@beneschlaw.com
mlouden@beneschlaw.com

*Pro hac vice

Counsel for Third-Party Defendant GATX Corporation

21

WILMER CUTLER PICKERING
  HALE AND DORR LLP

*/s/Albinas Prizgintas*
HOWARD M. SHAPIRO*
ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
howard.shapiro@wilmerhale.com
alan.schoenfeld@wilmerhale.com

JONATHAN E. PAIKIN*
BRITTANY AMADI*
ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363
jonathan.paikin@wilmerhale.com
brittany.amadi@wilmerhale.com
albinas.prizgintas@wilmerhale.com

MICHAELA P. SEWALL*
KATHERINE V. MACKEY*
60 State Street
Boston, MA 02109
Tel.: (617)-526-6000
Fax: (617-526-5000
michaela.sewall@wilmerhale.com
katherine.mackey@wilmerhale.com

*Pro hac vice*

DICKIE, MCCAMEY &
  CHILCOTE, P.C.

J. LAWSON JOHNSTON
SCOTT D. CLEMENTS, Ohio Bar No. 0096529
Four Gateway Center
444 Liberty Avenue, Suite 1000
Pittsburgh, PA  15222
Tel.: (412) 281-7272
Fax: (888) 811-7144
ljohnston@dmclaw.com
sclements@dmclaw.com

*Counsel for Third-Party Plaintiffs*
*Norfolk Southern Corporation and Norfolk Southern Railway Company*

22

VORYS, SATER, SEYMOUR AND PEASE LLP

/s/      *Kimberly Weber Herlihy*
KIMBERLY WEBER HERLIHY (0068668)
ALYCIA N. BROZ (0070205)
52 East Gay Street
Columbus, Ohio 43215
Tel.: (614) 464-8283
Fax: (614) 464-8283
kwherlihy@vorys.com
anbroz@vorys.com

*Counsel for Third-Party Defendant*
*OxyVinyls LP*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 27, 2025, a copy of the foregoing was served on all parties of record via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Hariklia Karis*
Hariklia Karis

24