# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

---

**IN RE: EAST PALESTINE TRAIN DERAILMENT**

Case No. 4:23-CV-00242-BYP

JUDGE BENITA Y. PEARSON

---

**NORFOLK SOUTHERN'S COMBINED OPPOSITION TO
CERTAIN CLASS MEMBERS' MOTIONS (ECF 993, 994)
FOR RELIEF FROM JUDGMENT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 60(b)(3), 60(b)(6), AND 60(d)(3)**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 8

    I.        The Court Lacks Jurisdiction To Grant The Rule 60 Motions .............................. 8

    II.       The Rule 60 Motions Are Without Merit ............................................................. 9

           A.       Movants Identify No "Fraud" Under Subsections (b)(3) Or (d)(3) ............ 9

                1.       Movants fail to identify any material information that was not publicly available, much less fraudulently concealed................... 10

                2.       The information Movants rely on is unreliable and flawed .......... 14

           B.       Movants Identify No Basis For Relief Under Subsection (b)(6) ............. 15

           C.       Movants' Claims About Personal Injury Releases Fail For Further Reasons ................................................................................................... 16

           D.       The Motions Are Untimely As To Subsection 60(b) ............................... 20

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BLOM Bank SAL v. Honickman*,
  605 U.S. 204 (2025) ................................................................................................15

*Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*,
  249 F.3d 519 (6th Cir. 2001) ...................................................................................15

*Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*,
  475 F. App'x 65 (6th Cir. 2012) ..............................................................................10

*GenCorp, Inc. v. Olin Corp.*,
  477 F.3d 368 (6th Cir. 2007) ...................................................................................18

*Hernandez v. Results Staffing*,
  907 F.3d 354 (5th Cir. 2018) ...................................................................................13

*Herron v. Patrolman # 1*,
  111 F. App'x 710 (5th Cir. 2004) ..............................................................................9

*Hunter v. Sterling Mortg. & Inv. Co.*,
  2022 WL 633845 (6th Cir. Mar. 4, 2022) ..............................................................9, 10

*Integrated Pipe & Supply, LLC v. Critical Path Res., Inc.*,
  2024 WL 554151 (S.D. Tex. Feb. 12, 2024) ...........................................................17

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) ...................................................................................9

*King v. First American Investigations, Inc.*,
  287 F.3d 91 (2d Cir. 2002)..........................................................................................9

*King v. United States*,
  143 F.4th 705 (6th Cir. 2025) ..................................................................................16

*In re Marriage of Varco*,
  511 N.E.2d 736 (Ill. Ct. App. 1987) ........................................................................17

*MMAR Group v. Dow Jones*,
  187 F.R.D. 282 (S.D. Tex. 1999) .............................................................................13

*Olle v. Henry & Wright Corp.*,
  910 F.2d 357 (6th Cir. 1990) ...................................................................................16

*Pearson v. Target Corp.*,
    893 F.3d 980 (7th Cir. 2018) ................................................................16

*Pickens v. Howes*,
    549 F.3d 377 (6th Cir. 2008) .............................................................8, 9

*Rozier v. Ford Motor Co.*,
    573 F.2d 1332 (5th Cir. 1978) ...........................................................13

*Shine-Johnson v. Warden*, 2023 WL 7128678
    (S.D. Ohio Oct. 30, 2023) ...................................................................20

*Thompson v. Bell*,
    580 F.3d 423 (6th Cir. 2009) ..............................................................20

*United States v. Alqsous*,
    2025 WL 2380321 (N.D. Ohio Aug. 15, 2025) ....................................9

**Docketed Cases**

*Ohio v. Norfolk S. Corp.*,
    No. 4:23-cv-00517 (N.D. Ohio) ....................................................14, 15

**Statutes**

49 U.S.C. § 1154(b) ....................................................................................4

**Rules**

Fed. R. Civ. P. 60
    (b) ............................................................................................. *passim*
    (c) .......................................................................................................20
    (d) .........................................................................................................9

Fed. R. Civ. P. 62.1 advisory committee's note (2009) ...............................9

## INTRODUCTION

The Court should reject the two materially similar motions filed by the same counsel, each attacking this Court's final judgment approving the $600 million class action Settlement. Movants fail to point to any material, new information that was not publicly available before the Settlement was approved, much less any such information that was fraudulently concealed by Class Counsel.  Instead, the motions are premised on the same misguided claims about environmental harm and exposure that objectors and their supporters repeatedly aired in public filings before the final approval of the Settlement.  Objectors re-aired those same concerns at the public fairness hearing itself, and the Court carefully considered and correctly overruled them. Movants cannot hope to meet the demanding standard necessary for extraordinary relief under Rule 60 by repackaging the same information that was insufficient to render the Settlement unfair over a year ago.  These motions are meritless and should be denied.

At the threshold, the motions fail for lack of jurisdiction because the Court's judgment approving the Settlement is on appeal in the Sixth Circuit.  That does not prevent the Court from *denying* the motions on the merits, as it should.  But the Court lacks jurisdiction to *grant* them.

As to the merits, Movants repeatedly say that "Norfolk Southern and class counsel concealed" certain information.  *E.g.*, ECF No. 993-1 at PageID# 68980.  That is wrong several times over.  First, they give no specifics as to Norfolk Southern.  Nor could they—Movants' unsupported attacks on Norfolk Southern are regrettable and wrong.

Second, Movants' theory is that Class Counsel "concealed" certain evidence regarding environmental contamination and risk of future injury.  Norfolk Southern understands that Class Counsel will "thoroughly address[]" the claims specifically directed against them.  *See* ECF No. 995 at PageID# 69070.  But these motions fail regardless for the same core reasons:  As the record demonstrates, and the motions themselves acknowledge, the information Movants rely on

is not materially distinguishable from what objectors presented in public filings in the summer of 2024 and then again at final approval in September 2024.  This information was not concealed.  Nor is it new.

Movants claim that "EPA testing results were invalid and did not accurately reflect the true extent of contamination in East Palestine," relying on the views of purported experts Scott Smith and Stephen Petty.  ECF No. 993-1 at PageID# 68920-21.  Objectors made the same claim over a year ago.  *E.g.*, ECF No. 508 (Objectors' Reply re Req. for Enlargement of Time to Opt-Out, Aug. 18, 2024) at PageID# 9079-80.  And, as Movants acknowledge, both Mr. Smith and Mr. Petty "filed Affidavits objecting to the class actions settlement," with Movants themselves citing filings in this case from September 23, 2024.  ECF No. 993-1 at PageID# 68920.  Movants also parrot objectors' attacks on statements about health risks from Dr. Arch Carson—a physician working with Class Counsel, with whom Norfolk Southern had no involvement—as "'at best speculation, and at worst simply incorrect.'"  ECF No. 993-1 at PageID# 68921; *accord, e.g.*, ECF No. 508 (Objectors' Reply re Req. for Enlargement of Time to Opt-Out, Aug. 18, 2024) at PageID# 9098.  Again—nothing new, nothing concealed.

What is more, Movants' cited support is flawed on its own terms.  Validated testing conducted by both government regulators—U.S. EPA, Ohio EPA, the Pennsylvania DEP—and Norfolk Southern has found that the derailment resulted in only modest environmental impact that Norfolk Southern promptly and extensively remediated.  This evidence is underscored by a U.S. EPA declaration filed in support of a consent decree with the United States currently pending before another federal district court.

Movants place particular focus on the voluntary Personal Injury Payment component of the Settlement, which they agreed to, individually signing Personal Injury Releases.  They ask

the Court to "[p]rohibit enforcement of Personal Injury opt-ins and releases signed by movants." ECF No. 993-1 at PageID# 68936.  But they can point to no valid basis for that relief.  Movants do not challenge the validity of the release's terms, and they are binding.  Movants also do not mention that at least 13 of them have cashed their Personal Injury Payment checks or received their payments via electronic funds transfers as they requested, according to matching names in Settlement Administrator records.

In sum, more than one year after the Exclusion, Objection, and Claims Deadlines, Movants seek an untimely and meritless do-over—to exclude themselves from the Settlement, or void the Personal Injury Releases they individually signed, or both—based on information that has long been in the public sphere and in the record in this case.  The Court correctly concluded in August 2024 that Class Members "had multiple channels through which to investigate their options in this Settlement."  ECF No. 510 (Order Resolving Reqs. for Enlargement of Time to Opt-Out, Aug. 20, 2024) at PageID# 9131.  Movants may regret not having taken advantage of those multiple options until after the Settlement was approved, but that is no basis to unwind that Settlement and award Movants the do-over they seek.[1]

### BACKGROUND[2]

This Court knows well the relevant background of this case—the consolidation of over 30 individual and putative class actions and ensuing litigation arising out of the East Palestine derailment, and the Settlement between Norfolk Southern and a class of individuals and

---

[1]     Because the two motions make similar substantive arguments, Norfolk Southern responds to them together.  For the sake of brevity and clarity, Norfolk Southern has cited only to the memorandum in support of the first motion (ECF No. 993-1) where the similar arguments appear in both memoranda.

[2]     Capitalized terms have the definition provided in the Settlement Agreement (ECF No. 452-2), unless otherwise noted.

businesses within a 20-mile radius of that derailment. Norfolk Southern provides a brief summary as relevant to Movants' claims. Norfolk Southern does not address Movants' extended description of the purported facts of the derailment itself (*see* ECF No. 993-1 at PageID# 68902-12), which has no bearing here. Suffice to say that Norfolk Southern disagrees with numerous assertions, and the only source Movants cite, the NTSB Final Report, is statutorily inadmissible. *See* 49 U.S.C. § 1154(b); ECF No. 885 (Order Resolving Mots. *in Limine*, Mar. 24, 2024) at PageID# 60564 (the NTSB "Final Report and Illustrated Digest are excluded by law").

1.     After consolidation by this Court, the master class action proceeded through motions practice and extensive discovery, including the production of millions of pages of documents and nearly 100 depositions. Norfolk Southern and then-Interim Class Counsel conducted months of negotiations and multiple days of in-person mediation before U.S. District Judge (Ret.) Layn Phillips. Ultimately, Judge Phillips issued a mediator's recommendation; one month after that, the parties reached an agreement in principle and then executed the Settlement on April 26, 2024. This Settlement creates a non-reversionary fund of $600 million, to be allocated among the Settlement Class, defined as "all Persons and Businesses residing, owning or otherwise having a legal interest in property, working, or owning or operating a business within a 20-mile radius of the Derailment Site, from February 3, 2023 to the Settlement Date." ECF No. 452-2 (Class Action Settlement Agreement, Apr. 26, 2024) at PageID# 6013, ¶ QQ. In addition to Direct Payments and Business Loss Payments, the Settlement provides the option—at Settlement Class Members' individual election—for voluntary Personal Injury Payments, providing those within 10 miles of the derailment the option for an additional monetary payment in exchange for an individually executed Personal Injury Release. *Id.* at Page ID# 6067-68.

Settlement Class Members overwhelmingly supported the Settlement.  *See, e.g.*, ECF No. 557 (Order Granting Mot. for Final Approval of Settlement, Sept. 27, 2024) at Page ID# 14583.

2.     Before the fairness hearing, and again at the hearing, the Court heard directly from objectors to the Settlement.  Objectors relied heavily on the claims of Scott Smith and Stephen Petty, purported experts in environmental testing and exposure, as well as George Thompson, a purported toxicology expert.  *See, e.g.*, ECF No. 508 (Objectors' Reply re Req. for Enlargement of Time to Opt-Out, Aug. 18, 2024) at PageID# 9097-02; ECF No. 537 (Aff. of George Thompson, Sept. 23, 2024) at PageID# 12314.  Their views of potential contamination and health risks were aired in public filings between July and September 2024.  *See* ECF No. 485 (Obj. to Class Action Settlement Agreement & Mot. to Enlarge Time filed by Joseph Sheely, July 1, 2024) at PageID# 7306; ECF No. 486 (Obj. to Class Action Settlement Agreement & Mot. to Enlarge Time filed by Jami Wallace, July 1, 2024) at PageID# 7973; ECF No. 508 (Objectors' Reply re Req. for Enlargement of Time to Opt-Out, Aug. 18, 2024) at PageID# 9098; ECF No. 529 (Resp. to Mot. for Final Approval of Settlement, Sept. 18, 2024) at PageID# 11591.

For example, objectors asserted:  "The evidence clearly establishes that multiple chemicals and other products were burned, sending a constellation of toxins into the community by way of air, water and soil.  The real harms that will befall this community have yet to reveal themselves."  ECF No. 529 (Resp. to Mot. for Final Approval of Settlement, Sept. 18, 2024) at PageID# 11591.  Objectors also challenged statements by a physician working with Class Counsel, Dr. Arch Carson (again, with whom Norfolk Southern had no involvement).  Dr. Thompson offered an affidavit submitted in advance of the fairness hearing, opining that "Dr. Carson's statements to class members … were incomplete and unreliable, and contained

inaccurate if not, dangerously misleading information." ECF No. 537 (Aff. of George Thompson, Sept. 23, 2024) at PageID# 12315. Dr. Thompson went on to assert that "[a]t least two East Palestine residents have already been diagnosed with cancer—one man with cancer of the breast, and one man with two tumors/cancers in his brain. The rapid development of these cancers can readily be attributed to the carcinogens released by the fires along with the cancer promoting chemicals." *Id.* at PageID# 12317. These claims were also aired at least a month prior—Dr. Thompson made the same assertions by affidavit submitted in August 2024. ECF No. 508 (Objectors' Reply re Req. for Enlargement of Time to Opt-Out, Aug. 18, 2024) at PageID# 9100. And Dr. Thompson made similar claims even earlier—for example, in "a January 29, 2024 Op-Ed," included in support of objectors' filings on July 1, 2024. ECF No. 485-1 (Exs. in Supp. of Obj. to Class Action Settlement Agreement & Mot. to Enlarge Time, July 1, 2024) at PageID# 7326, 7602-03 (Dr. Thompson, asserting: "I predict East Palestine OH train derailment chemical release deaths may become worse than 9/11." (title case omitted)).

During the public fairness hearing on September 25, 2024, counsel for objectors (Daniel Abraham) reiterated and elaborated on these themes:

> We now know that information has been discovered on all of these topics by many of these factions, but not all of the information provides consistent conclusions. And there is not a consensus regarding the long-term environmental and health risks to members of this community and this class.
>
> ***
>
> What did class members, proposed class members have available to them from class counsel that would provide them sufficient information to inform them on their decision-making? For example, what are my exposure risks? What are my risks to the long-term health effects? For some, why do I have current health issues that I didn't have before?
>
> ***
>
> So what I also know at this point is that … there is a consternation and a real concern about the environmental impact that this vent and burn -- what occurred.

6

And there now appears that information was in the hands of class counsel, … that they were aware of some of this information, or at least it was questionable.

\*\*\*

[T]here is additional information out there that should have either been presented to the Court or made aware to the class individuals so they could make informed decisions as to whether or not to agree to settle this case.

\*\*\*

But this is real injury to real people … You can't make these decisions.  We don't know enough.  But we do know the numbers are not correct.  That when Mr. Carson was telling people in the community that the numbers that were collected were within acceptable limits, we now know that that's not the case.  So if people made decisions on filing in the personal injury case or agreeing to the settlement based upon information that wasn't complete, then they didn't have informed information and it would be unfair to them to settle this case.

\*\*\*

And the real risk is, according to some of the experts that I've talked to, that in a year, two years, six years from now, people are going to have a lot of serious injuries and illnesses.

ECF No. 553 (Fairness Hearing Tr., Sept. 25, 2024) at PageID# 14439-59 (statements of Daniel Abraham).

3.      The Court carefully evaluated and overruled these objections.  Upon consideration of all objections, and hearing argument from objectors' counsel at the hearing, the Court gave "final approval to the Settlement" and found that the Settlement was "fair, reasonable, and adequate and in the best interest of Settlement Class Members."  ECF No. 557 (Order Granting Mot. for Final Approval of Settlement, Sept. 27, 2024) at PageID# 14582.  The Court further found that the Settlement was "vigorously negotiated, conducted at arm's length, entered in good faith and … free of fraud or collusion."  *Id.* at PageID# 14583.  The Court overruled all objections, including those asserting that "Class Counsel did not discover, collect, or consider sufficient evidence before reaching the Settlement" and that "Class Counsel withheld

7

or suppressed evidence." *Id.* at PageID# 14583-84. The Court entered written orders approving the Settlement and Class Counsel's proposed Distribution Plan, as well as their request for attorneys' fees and costs. ECF Nos. 555 (Order Granting Pls.' Mot. for Approval of Plan of Distribution, Sept. 27, 2024); 556 (Order Granting Plaintiffs' Motion for Award of Attorneys' Fees and Expenses and Service Awards, Sept. 27, 2024); 557 (Order Granting Mot. for Final Approval of Settlement, Sept. 27, 2024).

4.     Norfolk Southern is committed to the East Palestine community and seeks to ensure that the community is compensated in accordance with the terms of the $600 million Settlement it agreed to. To that end, Norfolk Southern has strictly complied with all terms of the Settlement, including the timely payment of all required monetary amounts to date. Specifically, Norfolk Southern paid a total of $315 million as of October 11, 2024, with the remaining $285 million on hold pending resolution of objectors' appeals challenging the Settlement.

## ARGUMENT

### I.     THE COURT LACKS JURISDICTION TO GRANT THE RULE 60 MOTIONS

On September 27, 2024, the same day that the Court granted final approval, and October 8, 2024, certain objectors appealed the Court's judgment to the Sixth Circuit. ECF Nos. 558 (Notice of Appeal); 570 (Notice of Appeal). Because jurisdiction over the Court's order and judgment finally approving of the Settlement transferred to the Sixth Circuit, this Court lacks jurisdiction to *grant* Movants relief. It nonetheless can and should *deny* the motions on the merits, for the reasons set out below in Section II.

The filing of a notice of appeal generally divests a district court of jurisdiction to alter, amend, or modify the judgment challenged on appeal. *Pickens v. Howes*, 549 F.3d 377, 383 (6th Cir. 2008). For that reason, when an appeal is pending, "a district court may *deny* a rule 60(b) motion on the merits but may not *grant* rule 60(b) relief without authorization from" the court of

appeals. *Herron v. Patrolman # 1*, 111 F. App'x 710, 711 n.1 (5th Cir. 2004) (emphasis added); *see also, e.g.*, *Pickens*, 549 F.3d at 383; *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004); *United States v. Alqsous*, 2025 WL 2380321, at *2 (N.D. Ohio Aug. 15, 2025); Fed. R. Civ. P. 62.1 advisory committee's note (2009) ("After an appeal has been docketed and while it remains pending, the district court cannot grant a Rule 60(b) motion without a remand. But it can entertain the motion and deny it … ").

Movants cite *King v. First American Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002), to suggest that a district court can grant a Rule 60(b) motion "even though an appeal has been taken and is pending." ECF No. 993-1 at PageID# 68926. That is not the law in this Circuit or in the Second Circuit. As *King* made clear: "This Circuit allows a district court either to 'entertain and *deny* the rule 60(b) motion' *without the circuit court's permission*, or '*grant* a rule 60(b) motion after an appeal is taken … *if the moving party obtains permission from the circuit court*.'" 287 F.3d at 94 (emphasis added).

## II.    THE RULE 60 MOTIONS ARE WITHOUT MERIT

Movants claim they are entitled to relief under three subsections of Rule 60—(b)(3), (b)(6), and (d)(3)—seeking relief from the entire Settlement, or from the Personal Injury Releases they individually signed, or both. Each argument fails.

### A.    Movants Identify No "Fraud" Under Subsections (b)(3) Or (d)(3)

Movants seek relief under Rule 60(b)(3) and (d)(3), alleging "fraud" by Class Counsel against Class Members and the Court. As to subsection (b)(3), "the Sixth Circuit has explained that allegations that a party fraudulently concealed certain information in settlement negotiations do not rise to the level of fraud required by the rule, absent clear and convincing evidence of either affirmative misrepresentations or a deliberate breach of a duty to disclose." *Hunter v. Sterling Mortg. & Inv. Co.*, 2022 WL 633845, at *4 (6th Cir. Mar. 4, 2022). And under

subsection (d)(3), "'the level of fraud or misconduct' alleged must be 'several notches of severity above that required for a Rule 60(b)(3) motion.'" *Id.* Relief for "fraud on the court" is a "truly extraordinary" remedy, reaching only "the most egregious conduct involving a corruption of the judicial process itself," including "such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering." *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 70-71 (6th Cir. 2012).

### 1. Movants fail to identify any material information that was not publicly available, much less fraudulently concealed

Under any standard, Movants' claims fail because the information on which they rely— claims of environmental contamination and risk of future harm—has long been disclosed and discussed on the public record in this case. The motions are a regurgitation of the same flawed arguments objectors raised and this Court overruled in granting final approval. Movants fail to identify any material information that was concealed by Class Counsel—and, again, identify no specifics whatsoever as to Norfolk Southern. They show no wrongdoing at all, much less the required "affirmative misrepresentations or a deliberate breach of a duty to disclose." *Hunter*, 2022 WL 633845, at *4.

Movants raise several related concerns: (1) EPA testing contains inaccurate information about the environmental impacts and associated health risks stemming from the derailment; (2) Dr. Carson provided incorrect information about health risks; (3) expert reports in the litigation were not disclosed because of the Settlement; and (4) Class Members did not have enough information to make an informed decisions about the Settlement.

The Court has heard this before. The chart with illustrative examples below shows that the objections considered and overruled by this Court in approving the Settlement (on the left) mirror the allegations now raised by Movants (on the right), with all emphases added:

10

| September 25, 2024<br>Fairness Hearing | September 25, 2025<br>Motion for Relief |
|---|---|
| *Claims about inaccurate EPA testing data* | |
| [L]argely what the declarations and the attorney who supports them seems to suggest is that the *EPA data in some way was unreliable.*<br><br>ECF No. 553 (Fairness Hearing Tr., Sept. 25, 2024) at PageID# 14486-87 (statement of Class Counsel, discussing objectors' claims and supporting declaration). | [C]lass counsel failed to inform the class members that Plaintiffs' own testing expert Stephen Petty and an actual independent third-party testing expert Scott Smith, both *contested any conclusion based on the EPA's testing results* and the statements presented by Dr. Carson.  Both Petty and Smith filed affidavits, objecting to the class action settlement.  *Smith stated that his own independent testing showed extremely elevated levels of toxic chemicals in East Palestine and the surrounding communities, which contradicted the testing results released by the EPA.*<br><br>ECF No. 993-1 at PageID# 68932.<br><br>In his affidavit, Petty advised that *the EPA testing data was flawed based on use of control or "background" samples* taken by the EPA from contaminated areas.  Petty stated since he could not release his own testing data, the purpose of his affidavit was to at least state on the record that 1) independent testing expert Scott Smith's testing was valid and therefore reliable, 2) *EPA testing data was flawed and not reliable as a basis for the settlement*, and 3) the statements made by Dr. Carson were "at best speculation, and at worst simply incorrect."<br><br>ECF No. 993-1 at PageID# 68932-33. |
| *Claims about information from Dr. Carson, a physician working with Class Counsel* | |
| But this is real injury to real people … *when Mr. Carson was telling people in the community that the numbers that were collected were within acceptable limits*, we now know that that's not the case … And the real risk is, according to some of the experts that I've talked to, that *in a year, two years,* | [C]lass counsel told the Court that they have never told people there was zero risk.  In fact, that is exactly what they told class members when they played the video of *Dr. Carson, in which he said there will be no long term health effects, the number of chemicals released are "dwarfed" by the amount of chemicals already in the environment*, no |

| September 25, 2024<br>Fairness Hearing | September 25, 2025<br>Motion for Relief |
|---|---|
| *six years from now, people are going to have a lot of serious injuries and illnesses*.<br><br>ECF No. 553 (Fairness Hearing Tr., Sept. 25, 2024) at PageID# 14459-60 (statements of objectors' counsel, Daniel Abraham).[3] | cancers of any kinds are expected and he doesn't expect one person to develop a cancer, the risk of cancer from the derailment is much less than the risk of cancer from other things, and that he can predict that people will be safe in the long run.<br><br>ECF No. 993-1 at PageID# 68934.<br><br>Class counsel grossly misrepresented the health impact of the chemical exposure from the derailment and vent and burn but *hiring Dr. Carson to tell them there will be no long-term health effects, no cancers of any kind, and that people will be safe in the long run*.<br><br>ECF No. 993-1 at PageID# 68931. |

*Claims about disclosures of expert reports*

| | |
|---|---|
| So what I also know at this point is that … there is a consternation and a real concern about the environmental impact that this vent and burn -- what occurred.  And *there now appears that information was in the hands of class counsel, … that they were aware of some of this information, or at least it was questionable.*<br><br>ECF No. 553 (Fairness Hearing Tr., Sept. 25, 2024) at PageID# 14457 (statements of objectors' counsel, Daniel Abraham).<br><br>And I think there -- I would request the Court to hold an evidentiary hearing and *have Mr. Petty come to the court and explain in more detail his declaration, what he found, and release him so that he can truly explain what it is the risks to the community are and what his concerns are.* | To this day, the *class members have never learned the results of the testing performed by Plaintiffs' testing expert Stephen Petty.* Likewise, class members have never learned the conclusions of the other expert witnesses hired by class counsel … And while class members have never learned the conclusions reached by Plaintiffs' experts on these issues vital to their decision whether to opt in to the personal injury payment, class members were required to pay for the costs incurred for those expert conclusions.<br><br>ECF No. 993-1 at PageID# 68930. |

---

[3]     The purported toxicology expert, Dr. Thompson, similarly criticized Dr. Carson's opinions in August 2024, claiming that two men in East Palestine had developed "unique cancers" after the derailment.  ECF No. 537 (Aff. of George Thompson, Sept. 23, 2024) at PageID# 12318; ECF No. 508 (Objectors' Reply re Req. for Enlargement of Time to Opt-Out, Aug. 18, 2024) at PageID# 9101; *see supra* pp.5-6.

| September 25, 2024<br>**Fairness Hearing** | September 25, 2025<br>**Motion for Relief** |
|---|---|

ECF No. 553 (Fairness Hearing Tr., Sept. 25, 2024) at PageID# 14464 (same).

---

### Claims about making informed decisions about the Settlement

---

[T]here is additional information out there that *should have either been presented to the Court or made aware to the class individuals so they could make informed decisions as to whether or not to agree to settle this case.*

ECF No. 553 (Fairness Hearing Tr., Sept. 25, 2024) at PageID# 14458 (statements of objectors' counsel, Daniel Abraham).

*So if people made decisions on filing in the personal injury case or agreeing to the settlement based upon information that wasn't complete, then they didn't have informed information and it would be unfair to them to settle this case.*

ECF No. 553 (Fairness Hearing Tr., Sept. 25, 2024) at PageID# 14459 (same).

Class counsel further concealed that the permanently injured class members' doctors were prepared to testify that the illness was caused by the derailment.  *Knowing this information would have affected class members decision whether to opt into the personal injury payment.*

ECF No. 933-1 at PageID# 68932.

---

        This comparison underscores that the information Movants rely on was not new to Class

Counsel, the Settlement Class, or the Court, and was publicized before and at the fairness

hearing.  Nothing they identify was concealed.  Nothing is new.  That is fatal to Movants' claims.

Post-judgment relief is an extraordinary remedy that should only be granted in the rarest of cases.

Movants can point to no basis for even ordinary relief in a run-of-the-mill case.[4]

---

[4]      The record here easily distinguishes this case from the handful of cases Movants cite in the second (but not the first) motion.  ECF No. 994 at PageID# 69041-42.  *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978), *MMAR Group v. Dow Jones*, 187 F.R.D. 282 (S.D. Tex. 1999), and *Hernandez v. Results Staffing*, 907 F.3d 354 (5th Cir. 2018), each involved case-dispositive information that was improperly withheld in discovery.

### 2. The information Movants rely on is unreliable and flawed

The above points suffice to deny the motions—a Rule 60 motion is not an opportunity to relitigate issues that have already been fairly decided.  But it bears emphasis that Movants' cited support is also unreliable and flawed, and so cannot justify the relief they seek for that independent reason.  Ralph Dollhopf, a U.S. EPA employee in the Superfund and Emergency Management Division, filed a declaration in separate litigation in support of a proposed consent decree with the United States, underscoring that environmental testing has confirmed that the derailment resulted in only modest environmental impact, which Norfolk Southern promptly and extensively remediated.  Decl. of Ralph Dollhopf ¶¶ 1-3, *Ohio v. Norfolk S. Corp.*, No. 4:23-cv-00517 (N.D. Ohio Oct. 10, 2024), ECF No. 162-2 ("Dollhopf Decl.").  This declaration—which is not the sum total but only an illustrative sample of the evidence that Norfolk Southern would have presented at trial—reaffirms that no relief from this Court's final judgment is appropriate.

**Air testing**.  Air testing by the U.S. EPA immediately after the derailment found no contaminants of concern outside the immediate vicinity of the vent-and-burn, and later testing following the vent-and-burn only detected contamination immediately above Sulphur Run, a stream adjacent to the derailment site.  Dollhopf Decl. at PageID# 2494-95, ¶¶ 41-42.

**Soil testing**.  EPA testing showed that soil contamination was limited to the area immediately surrounding the derailment site.  Dollhopf Decl. at PageID# 2490-91, ¶¶ 32-33.  By October 2024, Norfolk Southern had completed the vast majority of the soil removal work needed at the site, in coordination with the U.S. EPA.  *Id.* at Page ID# 2488-89, ¶ 25.

**Groundwater and drinking water**.  The EPA found no contaminants of concern related to the derailment in East Palestine's water supply.  Dollhopf Decl. at PageID# 2492-93, ¶ 37.  And under the pending consent decree with the United States, Norfolk Southern will continue to

monitor water quality in the areas covered by the well-sampling programs for an additional 10 years.  *Id.* at Page ID# 2493, ¶ 38.

**Surface water**.  Certain contaminants did reach Sulphur Run.  In coordination with the U.S. and Ohio EPAs, Norfolk Southern engaged in extensive testing and cleanup efforts, which the U.S. EPA found were effective.  Dollhopf Decl. at PageID# 2496-97, ¶¶ 44, 49.  Moreover, Norfolk Southern will continue "to conduct surface water, groundwater, and drinking water monitoring for an additional 10 years after removal actions are complete to provide additional assurance to the community, and in the unlikely event additional derailment contamination is found, Norfolk Southern will be required to address it."  *Id.* at Page ID# 2499, ¶ 54.

Movants now may claim not to believe any of this.  But their choice to disregard independent information from government regulators refuting their claimed evidentiary support, and their desire to relitigate objections that have already been considered and overruled by this Court, highlights the motions' lack of any merit.

## B.    Movants Identify No Basis For Relief Under Subsection (b)(6)

Movants fare no better invoking subsection (b)(6).  The Supreme Court has "consistently reaffirmed that subsection (b)(6) 'should only be applied in extraordinary circumstances.'"  *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212-13 (2025).  "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved."  *Id.*  Moreover, subsection (b)(6) "applies 'only in exceptional or extraordinary circumstances which are not addressed by" subsections (b)(1)-(5).  *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).  Thus, as the Sixth Circuit has cautioned, "it would be

inappropriate to invoke subsection (b)(6) to grant relief that is foreclosed under" subsections (b)(1) through (b)(5). *King v. United States*, 143 F.4th 705, 711 (6th Cir. 2025).

Here, Movants invoke asserted "concealed expert conclusions, false health assurances to vulnerable class members, and material misrepresentations to this Court," arguing that a "pattern" of conduct "warranting relief under Rule 60(b)(3)" also warrants relief under Rule 60(b)(6). ECF No. 993-1 at PageID# 68935-36. Movants have identified no conduct constituting any fraud, let alone a "pattern." And a party that fails to meet subsection (b)(3) cannot use Rule 60(b)(6) as a backup. *See King*, 143 F.4th at 711. Indeed, the Sixth Circuit has held that allegations of "even attorney malpractice, including strategic miscalculation or counsel's misrepresentation" do not warrant relief under subsection (b)(6). *Id.*[5]

Under subsection (b)(6), Movants must identify "'something more' than one of the grounds contained in Rule 60(b)'s first five clauses." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990). Their motions do not do so and should be denied.

### C.    Movants' Claims About Personal Injury Releases Fail For Further Reasons

Movants cannot establish that they are entitled to any relief under Rule 60 for the above reasons, which suffice to deny both motions in their entirety. But their claims regarding Personal Injury Releases fail for additional reasons. Both sets of Movants ask the Court to prohibit their enforcement, but do not mention that at least 13 of them have already received their Personal

---

[5]    Movants cite *Pearson v. Target Corp.*, 893 F.3d 980 (7th Cir. 2018), for the proposition that subsection (b)(6) serves as a "'safety valve' for situations where the settlement process has been compromised … 'to protect the interests of the class.'" ECF No. 993-1 at PageID# 68935-36. That case is easily distinguishable. *Pearson* did "not concern the class settlement itself, but rather what happened after the district court approved the settlement," involving claims that certain objectors appealed but then "pocket[ed] a side payment in exchange for voluntarily dismissing the appeal," 893 F.3d at 982, with the court identifying a "real risk that they did so at the expense of the class," *id.* at 985.

Injury Payments according to Settlement Administrator records.[6]  The latter group of Movants indicate that non-enforcement of the Personal Injury Releases is the only relief they seek.  *See* ECF No. 994-1 at PageID# 69046.  In all events, the Court should reject the request.

First, Movants have not alleged any misconduct on the part of Norfolk Southern—the counterparty to the individually signed Personal Injury Releases.  As noted, Movants' allegations focus on Class Counsel, not Norfolk Southern.  But the releases were signed by Class Members individually with Norfolk Southern as the counterparty.  *See* ECF No. 452-2 at PageID# 6066 (Exhibit E to Class Action Settlement Agreement: Sample Personal Injury Release); ECF No. 993-3 (A. Druckenbrod Personal Injury Release) at PageID# 68944.  Misguided allegations of purported misconduct by Class Counsel have no bearing on the validity of these contracts between Class Members and Norfolk Southern.  *See, e.g.*, *Integrated Pipe & Supply, LLC v. Critical Path Res., Inc.*, 2024 WL 554151, at *2-3 (S.D. Tex. Feb. 12, 2024) ("[D]uress or undue influence from a party's own attorney, rather than from another party to a settlement agreement, does not constitute grounds for the Court to set aside the settlement agreement. … [F]raud perpetrated by a third-party will not afford a ground for cancellation or rescission, absent a showing that the other party to the contract participated in the fraud."); *In re Marriage of Varco*, 511 N.E.2d 736, 738 (Ill. Ct. App. 1987) ("The general rule in contract cases holds that the validity of the contract is not affected by the fact that its execution was induced by duress practiced by a third party.").  Movants cite no case law suggesting otherwise.  Moreover, Movants acknowledged and agreed in the releases that they were entering into them "without being pressured or influenced by, and without relying upon, any statement or representation

---

[6]       This number is based on a comparison of names in the records of the Settlement Administrator with the names on the lists filed by Movants (ECF Nos. 993-2, 994-2), which provide only names with no other identifying information.

made by any person acting on behalf of the Company," namely, Norfolk Southern.  ECF No. 452-2 (Class Action Settlement Agreement, Apr. 26, 2024) at PageID# 6064; ECF No. 993-3 (A. Druckenbrod Personal Injury Release) at PageID# 68950.  By their own admissions, Movants cannot allege any relevant misconduct here because they specifically disclaimed relying on any action or representation by Norfolk Southern in connection with these releases.

Second, Movants "'may not use a Rule 60(b) motion … as a technique to avoid the consequences of decisions deliberately made yet later,'" in their view, "'revealed to be unwise.'" *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) (collecting cases).  Movants do not contest the validity of the releases, and are bound by them.  Movants had the individual choice whether to participate in the Personal Injury Payment component of the Settlement—they were not required to release their Personal Injury Claims, and it was up to each individual Movant to decide whether to affirmatively participate.  *See* ECF No. 452-2 (Class Action Settlement Agreement, Apr. 26, 2024) at PageID# 6012, ¶ MM ("Personal Injury Claims will be released only if an Eligible Personal Injury Settlement Class Member elects to receive a Personal Injury Payment and executes a separate Personal Injury Release.").

Rather than argue that the release is invalid, Movants appear to argue that they now regret signing their releases without the benefit of additional information (the purportedly concealed information by Class Counsel) about risk of future injury.  Putting aside that the information they identify has long been public, the release contemplates and rejects these types of post-hoc claims:

> Releasor acknowledges and agrees that unknown consequences or progression of presently known injuries, diseases or illnesses may arise, develop, or be discovered in the future, including disabling conditions not now known to Releasor, and that future medical treatment, including surgery, may be necessary. Releasor understands that he/she/they may have suffered, or may in the future develop, injuries, diseases, illnesses, damages, and/or other harms that are

18

> presently unknown to Releasor as a result or consequence of the Incident as set
> forth above.

ECF No. 452-2 (Class Action Settlement Agreement, Apr. 26, 2024) at PageID# 6069; ECF

No. 993-3 (A. Druckenbrod Personal Injury Release) at PageID# 68946.  The release made clear

that Movants were releasing claims despite the possibility that new information might be

discovered.

Movants also acknowledged and agreed that they had the "opportunity to and if … so

decided did confer with Class Counsel, or an attorney of his/her/their choice, concerning the

terms and conditions of this Release."  ECF No. 452-2 (Class Action Settlement Agreement, Apr.

26, 2024) at PageID# 6073; ECF No. 993-3 (A. Druckenbrod Personal Injury Release) at

PageID# 68952.  Movants had every opportunity to educate themselves before signing.

Third, to the extent Movants intend to argue that their Personal Injury Payment was

"inadequate" (ECF No. 993-1 at PageID# 68908), Class Counsel's court-approved Plan of

Distribution provided a procedure to address just that scenario.  *See* ECF No. 525 (Notice of

Filing of Suppl. to Plan of Distribution) at PageID# 11564-67.  That Plan includes specific steps

Class Members could take to challenge their award amount.  *Id.*  That process included,

ultimately, appeal to this Court if they remained dissatisfied with the relief provided by the initial

administrative appeal.  *Id.* at PageID# 11566.

Movants now may regret that they signed the release and believe, incorrectly, that they

could obtain more compensation now by bringing some new claim against Norfolk Southern.

But regret is not a reason to undo a valid and binding contract, and Movants advance no other

argument that could justify such a drastic measure.

19

### D.      The Motions Are Untimely As To Subsection 60(b)

Finally, the motions are time-barred as to Movants' claims seeking relief under Rule 60(b).  Such motions must be filed with a "reasonable time"—and, for motions invoking subsection (b)(3), in all events "no more than a year after the entry of judgment."  Fed. R. Civ. P. 60(c)(1); *see also Shine-Johnson v. Warden*, 2023 WL 7128678, at *4 (S.D. Ohio Oct. 30, 2023) ("Motions under 60(b)(6) … must be brought within a 'reasonable' time which, according to the circumstances, could be more or less than a year. (citing *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009)).  Thus, the standard is reasonableness, and what is reasonable "'depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief.'" *Thompson*, 580 F.3d at 443.  Movants have identified no reason for their inexcusable delay in bringing these motions—nor could they.  As discussed, the motions rely on materially the same information publicly aired well before the fairness hearing and then re-aired at the fairness hearing on September 25, 2024.

### CONCLUSION

The Court should deny Movants' Rule 60 motions (ECF Nos. 993, 994) for relief from the Court's final judgment.

Dated: October 10, 2025

Respectfully submitted.

WILMER CUTLER PICKERING
   HALE AND DORR LLP

*/s/ Alan Schoenfeld*

ALAN SCHOENFELD*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com

ALBINAS PRIZGINTAS*
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363
albinas.prizgintas@wilmerhale.com

KATHERINE V. MACKEY*
60 State Street
Boston, MA 02109
Tel.: (617)-526-6000
Fax: (617-526-5000
katherine.mackey@wilmerhale.com

**Pro hac vice*

## CERTIFICATE OF LOCAL RULE 7.1 COMPLIANCE

I certify that this Memorandum adheres to the page limitations set forth in this Court's October 2, 2025 Order because it does not exceed 30 pages in length.  ECF No. 999 at PageID# 69081 ("Class Counsel and Norfolk Southern are granted leave to file Responses to the Rule 60 motions that shall each no exceed 30 pages (15 pages over the LR 7.1(f) limit), excluding any declarations and/or exhibits.").

*/s/ Alan Schoenfeld*
ALAN SCHOENFELD

## CERTIFICATE OF SERVICE

I certify that on October 10, 2025, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

*/s/ Alan Schoenfeld*
ALAN SCHOENFELD
