**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** | **CASE NO. 4:23-CV-00242-BYP** **JUDGE BENITA Y. PEARSON** |

**CLASS COUNSEL'S RESPONSE IN OPPOSITION TO MOVANTS' SEPTEMBER 25, 2025 AND SEPTEMBER 29, 2025, MOTIONS (ECF NOS. 993 AND 994) FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)(3), 60(B)(6), AND 60(D)(3)**

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...................................................................................................1

II.      FACTUAL AND PROCEDURAL BACKGROUND .......................................3

     A.      Discovery ...........................................................................................3

     B.      Arm's length settlement negotiations ....................................................4

     C.      Settlement terms and communication with class ....................................5

     D.      Settlement objections and final approval hearing, final approval order, and appeal ...................................................................................................9

III.      APPLICABLE LAW AND ARGUMENT ......................................................13

     A.      Movants' Motion is jurisdictionally defective ....................................13

     B.      Movants do not seek Rule 60(b) relief ................................................14

     C.      Movants cannot use Rule 60 as a second opportunity to challenge conduct that was known, and already addressed, prior to the Final Approval Order .......................15

     D.      Even if Rule 60 was properly invoked, Movants cannot establish that they are entitled to relief under Rule 60 .....................................................15

         1.      Movants' Rule 60(b)(3) fails, as Movants cannot establish Class Counsel is an opposing party that engaged in fraud, misrepresentation, or misconduct ..................................................................................16

             i.      Class Counsel is not an opposing party .........................................17

             ii.      Even if the Rule 60(b)(3) Motion were properly brought, it would fail because Class Counsel has not engaged in fraud, misrepresentation, or misconduct ....................................................17

                 a.      Class Counsel did not fraudulently conceal expert conclusions from Class members.......................................18

                 b.      Class Counsel did not misrepresent the testing results of Dr. Schuhmann to Class members or the Court ....................19

                 c.      Class Counsel did not misrepresent the health impacts of the derailment and vent and burn to Class members or the Court, and did not conceal Class members' diagnoses ................20

i

2.  Rule 60(b)(6) cannot be used as a catch-all, and Movants have not established any justification for relief under Rule 60(b)(6)......................23

3.  There is no justification for extraordinary relief under Rule 60(d)(3).......24

IV.  CONCLUSION..................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acevedo v. Dan Motors*,
    149 F.3d 1182 (unpublished) (6th Cir. 1998) ........................................................................16

*Aikens v. Ingram*,
    652 F.3d 496 (4th Cir. 2011) ........................................................................24

*Brady v. Beams*,
    132 F.2d 985 (10th Cir. 1942), *cert. denied* 319 U.S. 747, 63 S.Ct. 1032 ............................15

*In re Durkalec*,
    21 B.R. 618 (E.D. Pa. 1982) ........................................................................24

*England v. Doyle*,
    281 F.2d 304 (9th Cir. 1960) ........................................................................25

*Ervin v. Wilkinson*,
    701 F.2d 59 (7th Cir. 1983) ........................................................................18

*Fleming v. New York University*,
    865 F.2d 478 (2d Cir.1989)........................................................................15

*In re Golf 255, Inc.*,
    652 F.3d 806 (7th Cir. 2011) ........................................................................25

*H. K. Porter Co. v. Goodyear Tire & Rubber Co.*,
    536 F.2d 1115 (6th Cir. 1976) ........................................................................25, 26

*Herron v. Patrolman # 1*,
    111 F. App'x 710 (unpublished) (5th Cir. 2004)........................................................................14

*Info-Hold, Inc. v. Sound Merch., Inc.*,
    538 F.3d 448 (6th Cir. 2008) ........................................................................13, 18, 19

*Jennings v. Hicklin*,
    587 F.2d 946 (8th Cir.1978) ........................................................................18

*Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc.*,
    616 F.2d 833 (5th Cir. 1980) ........................................................................19

*Koe v. Univ. Hosps. Health Sys., Inc.*,
    No. 1:22 CV 01455, 2023 WL 10352931 (N.D. Ohio Oct. 18, 2023)........................................................................14

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
 247 F.Supp.2d 1233 (D.Kan.2003), *affirmed* 111 Fed.App'x. 611, 2004 WL
 2370634...............................................................................................................15

*Latshaw v. Trainer Wortham & Co.*,
 452 F.3d 1097 (9th Cir. 2006) ........................................................................17

*Pantoja v. Texas Gas & Transmission Corp.*,
 890 F.2d 955 (7th Cir. 1989) ..........................................................................26

*Park W. Galleries, Inc. v. Hochman*,
 692 F.3d 539 (6th Cir. 2012) ....................................................................14, 25

*Ruelas v. Wolfenbarger*,
 580 F.3d 403 (6th Cir. 2009) ..........................................................................13

*Sherman v. Verizon Va. Inc.*,
 220 F.R.D. 260 (E.D.Va.2002) ........................................................................17

*Short v. Bradshaw*,
 No. 1:07 CV 2989, 2009 WL 248378 (N.D. Ohio Feb. 3, 2009) ...........................15

*Swam v. United States*,
 327 F.2d 431 (7th Cir. 1964) ..........................................................................15

*McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*,
 298 F.3d 586 (6th Cir. 2002) ..........................................................................24

*Valerio v. Boise Cascade Corp.*,
 80 F.R.D. 626 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981)......................26

*Williamson v. City of Morgan City*,
 No. CIV.A. 08-0441, 2010 WL 2874422 (W.D. La. July 16, 2010), *aff'd*,428
 F. App'x 356 (5th Cir. 2011) ..........................................................................17

## Other Authorities

Fed. R. Civ. P. 60 ............................................................................................. *passim*

## I.     INTRODUCTION

Movants' September 25, 2025 and September 29, 2025 Motions for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(3), 60(b) and 60(b)(3) (ECF Nos. 993 and 994) (the "Motion") asks for relief from the Court's order granting final approval of the settlement ("Final Approval Order"), entered on September 27, 2024, insofar as that order allowed for Class members to voluntarily participate in a fund designed to compensate those Class members presumptively exposed to toxins as a result of the derailment. However, the Motion does not seek relief from the Court's judgment itself, but rather a rescission of the personal injury releases that Movants voluntarily and individually signed in exchange for compensation. The Motion is nothing more than an improper repetition of objections already overruled by the Court. Further, the appeal pending before the Sixth Circuit divests the Court of jurisdiction to grant the Motion under Rule 60(b).

Even if the Court had jurisdiction to grant the Motion, Movants' arguments fail.  First, Movants do not raise any new issues—in approving this settlement, the Court has already overruled the exact objections to the Settlement raised here; those same issues are currently on appeal by Objectors through their attorney David Graham.[1] Objectors to final approval specifically argued, as Movants now do, that Class Counsel "fraudulently" concealed testing results and presented misleading opinions from Dr. Arch Carson.[2] Second, no new information has been presented by Movants;

---

[1] Tellingly, Movants' counsel, Jedidah and David Bressman, frequently work in tandem with attorney David Graham on environmental cases across the country. Bressman Law's website touts this close working relationship; of the seven "active" cases advertised on bressmanlaw.com, David Graham is co-counsel on at least three.  *See* Screenshots of "Active Cases" from bressmanlaw.com, attached as Exhibit A. Interestingly, though Movants' argument regurgitates objections previously filed by Mr. Graham, Movants' counsel do not acknowledge or disclose this working relationship in the Motion.  At least one Movant, Tamara Freeze, appears to be represented by Bressman Law here and David Graham on appeal. ECF No. 993-2 (listing Tamara Freeze as a Movant); Appeal on Behalf of Tamara Freeze and others, by David Graham, 2024 WL 5381670.

[2] Identical arguments form the basis for the Objectors' appeal from the Court's Final Approval Order. Appeal on Behalf of Tamara Freeze and others, by David Graham, 2024 WL 5381670.

rather, they seek relief from releases that each voluntarily signed some thirteen months ago, now arguing that certain testing data was "concealed." This Court, after careful consideration of all materials proffered related to this allegedly "concealed" data, specifically found the settlement was free of fraud. And finally, it is noteworthy that more than a dozen of the Movants not only wanted to participate in the voluntary exposure portion of the settlement, but freely accepted compensation in exchange for their releases. Though Movants do not mention this, 10 of the Movants have already received and negotiated a check,[3] and three more have received direct deposits[4] in exchange for their personal injury release. These 13 Movants are seeking to have their cake and eat it too.

Rule 60 is not a tool to rescind a voluntary release signed in exchange for compensation. Moreover, as a matter of law, Rule 60 does not provide a back-door appeal, nor is it an opportunity to rehash prior arguments, and for this reason alone the Motion cannot succeed. Even if Rule 60 were properly raised here, which it is not, the allegations factually underpinning this motion are specious and have been rejected before. Class Counsel has neither concealed information, nor made a single misleading statement, nor committed fraud in anyway. Expert reports were not hidden; rather they were never finalized because a settlement was reached before they were required to be exchanged. Nevertheless, consultations with plaintiffs' experts informed hard-fought negotiations and colored the $600 million settlement structure, including the option that gave class members the ability to *voluntarily elect* to receive a separate payment for a release of personal injury claims. Class Counsel has consistently and accurately explained the voluntary personal injury payment portion of the settlement. Class Counsel, at oral argument, conceded that the risks of exposure in the future are somewhat unknown.  But what is known is that the latency

---

[3] *See, e.g.,* images of issued and negotiated checks, attached as Exhibit B.
[4] Movants Lindsay Kuzemchak, Nicholaus Kuzemchak, and Kristy Munyon received direct deposits of $22,500, $22,500, and $18,750, respectively.

period for an injury caused by the exposure to toxins at the levels suffered by certain factions of the community is not weeks or months; it is decades.[5] Simply asserting that there may be conflicting opinions between professionals about the severity of the health risks does not give rise to fraud. Class Counsel has always acknowledged there is a potential for health risks, evidenced by the very existence of the *voluntary* personal injury payments, in addition to repeated affirmative acknowledgements by Class Counsel of those potential risks.

This Motion should be denied, as it has no support in fact and no basis in law.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Regardless of how Movants frame the Motion, the factual and procedural background of this case makes clear that even if this were a proper Rule 60 challenge, Movants' arguments fail, just as they have before.

### A.     Discovery

Class Counsel, who, as the Court recognized, "have extensive experience handling toxic tort and environmental class actions," prioritized getting relief to the community as quickly as possible, but not without robust discovery of evidence and expert support. ECF No. 557 at ¶ 11. At Class Counsel's request, the Court entered an aggressive schedule for the parties to move forward. ECF No. 98. Over the ten months following the Court's Case Management Order, Class Counsel reviewed over a million documents in discovery, including information about environmental contamination and cleanup. ECF No. 518-2 ("Graham Decl.") ¶ 27; ECF No. 518-3 ("Katz Decl.") ¶ 27. Class Counsel also collected extensive environmental data and facilitated a comprehensive environmental sampling and testing program, in addition to air modeling, to determine the geographic range hazardous material from the derailment traveled. Katz Decl. ¶¶

---

[5] *See* Ezkenazi., *The Seveso accident: A look at 40 years of health research and beyond* (Dec. 2018), attached as Exhibit C.

34–35. The environmental testing conducted by Class Counsel included approximately 160 sampling sites in and around East Palestine, covering sites as far as 45 miles from the Derailment Site. Katz Decl. ¶ 35. As discussed by Class Counsel in briefing and at the Final Approval Hearing, the sampling program was designed to collect data, which Plaintiffs' experts relied on in determining exposure.[6] Class Counsel also consulted and retained numerous experts to advise them about information learned from discovery and the environmental sampling program, on topics including chemistry, toxicology, epidemiology, medical monitoring, pulmonology, and oncology. Graham Decl. ¶ 47.

### B.    Arm's length settlement negotiations

Class Counsel started negotiating a potential settlement with Norfolk Settlement while simultaneously engaging in the fast-tracked discovery process. During this extensive and hard-fought negotiation process, spanning months, Norfolk Southern and Class Counsel engaged the assistance of renowned mediator and retired United States District Judge Layn R. Phillips. Graham Decl. ¶¶ 54–56.  In connection with these mediations, Class Counsel submitted two fulsome confidential mediation statements and confidential briefing, all heavily informed by expert consultation and legal analysis. Graham Decl. ¶ 50.

As Judge Phillips recognized, substantial work went into mediation preparation, and the mediation itself involved complex issues that required significant analysis. ECF No. 518-5 "Phillips Decl.") ¶ 11. Judge Phillips, informed by confidential facts derived in part from the work of Plaintiffs' experts', presented a mediator's recommendation to Norfolk Southern and Plaintiffs on March 6, 2024. Graham Decl. ¶ 58. Both parties accepted the mediator's recommendation, announcing an agreement in principle based on that recommendation on April 9, 2024. *Id.* at ¶ 60.

---

[6] Transcript of September 25, 2024 Hearing, ECF No. 553 at 65:2-7.

Norfolk Southern and Plaintiffs then reduced that agreement to writing and executed the Settlement Agreement on April 26, 2024. *See* ECF No. 452-2 (Settlement Agreement).

Notably, the Settlement was reached before expert reports were due to be exchanged. This is not uncommon; settlements are reached at various points in litigations, and the time period prior to expert challenges is a pivotal point in any litigation. Notwithstanding, Class Counsel here worked closely with their experts before, during, and throughout settlement negotiations to learn the strengths and weaknesses of the case. The substance of the experts' opinions and how those experts would opine concerning Class members' likelihood of disease or injury from both acute and chronic exposure to the toxic chemicals informed the basis of the negotiations. Graham Decl. ¶¶ 48–50. It was no secret that Norfolk Southern would mount significant challenges to all expert opinions at any *Daubert* hearing, including appealing any rulings. Class Counsel incorporated all of their expertise and this information for the benefit of the Class members, negotiating a settlement while using expert opinions to evaluate strengths and weaknesses of the case.

### C.    Settlement terms and communication with class

Class Counsel moved for preliminary approval of the $600 million Settlement on April 26, 2024. ECF Nos. 452. The Settlement distribution includes three categories of payment: Direct Payments to individuals on a per-Household basis ("Direct Payments"); payments to businesses for Business Loss claims ("Business Loss Payments"); and optional payments to Eligible Settlement Class members who voluntarily agree to release any personal injury claims they might have in connection with the derailment by executing a release of personal injury claims ("Voluntary Exposure Supplement" or "Personal Injury Payment"). ECF No. 452-2 at 22-25.

The Voluntary Exposure Payment/Personal Injury Payment is the only category of payment Movants raise issue with here, as they now seek to be released from the voluntary contract they signed in exchange for such payment. As the Long Form Notice, mailed to Class members after

preliminary approval of the Settlement, explained**, "[s]ubmission of a personal injury claim is strictly voluntary; you are not required to submit a personal injury claim to otherwise receive any other benefit under the Settlement."** ECF No. 452-5 at 5, 7. During the notice period, Class Counsel communicated with Class members about the Settlement and their options. Class Counsel or attorneys from their firms were available, in person, six days a week at the Claims Center, and available by phone or email. Graham Decl. ¶ 62. Additionally, Class Counsel arranged several virtual conferences, or "town hall," meetings with Class members to provide as much information as possible to Class members to aid them in this decision.

One such town hall, held on August 1, 2024, is the focus of Movants' argument that Class Counsel misrepresented or fraudulently concealed health impacts to the Class.[7] ECF Nos. 993-1 at 27, 994-1 at 20 (alleging Class Counsel told Class Members there was "zero" or "no" risks when they played the video of Dr. Carson). This town hall was led by community member and Village Manager Chad Edwards; several Class Counsel attorneys attended this conference, including Elizabeth Graham, Seth Katz, Adam Gomez, and Michelle Kranz (who was, at the time, the president of the Ohio State Bar Association).[8] Class Representatives David Anderson and Rick Feezle, spoke first, informing the Class members about the symptoms and acute health impacts they had suffered, including burning skin and eyes, loss of taste and smell, sore throat, chest pain, and a hoarse voice.[9]

The town hall next included a pre-recorded presentation by Dr. Arch Carson. As Mr. Edwards explained, Dr. Carson was "not involved in the litigation [and was] a completely

---

[7] This video was recorded and provided to Class members. A copy of this recording can be found at  https://www.youtube.com/watch?v=VTZpstUPR9I ("Town Hall Recording"); Town Hall Recording at 0:55.
[8] Town Hall Recording at 1:52.
[9] Town Hall Recording at 2:45, 4:30, 9:30, 9:50.

independent third party."[10]  Class counsel arranged for Dr. Carson to speak to the Class because of his expertise in this field, and, because he was not hired as an expert in this case, offer his neutral opinion. Dr. Carson was not compensated in any way by Class Counsel for his opinions or for his time, despite Movants' erroneous and unsupported claim to the contrary.  Nor has Dr. Carson been hired by Class Counsel since his presentation. Finally, Class Counsel did not instruct Dr. Carson what opinions to give other than to ask him to be truthful in anything he said.

During Dr. Carson's presentation he explained he was a medical doctor and a Ph.D. environmental toxicologist who grew up in Cincinnati, went to Ohio State University, and spent most of his career dealing with chemical exposure in occupational and industrial medicine. In response to the question "[w]hat are the health impacts associated with the chemicals released by the derailment?" he explained, in part:

> Based on my best judgment there will not be any long-term health impact of chemical exposure from the derailment to community members of East Palestine. As far as people just living in East Palestine [or working there or in nearby communities] we don't expect there to be any long-term health effects associated with chemical exposure resulting from the derailment.[11]

He further explained that potential health effects depend on the toxins and exposure, but:

> The chemical contaminations that have been clearly associated with health effects in communities have been hundreds of times greater than the measured levels [in East Palestine]. From the derailment, the number of chemicals that have been produced and that may remain in very low levels in the East Palestine area are dwarfed by the amount of other [harmful] substances there."[12]

He elaborated that the chemicals released were carcinogenic at certain levels, "in particular, vinyl chloride," but that the levels community members were exposed to were relatively small. In

---

[10] Town Hall Recording at 12:40.
[11] Town Hall Recording at 13:36.
[12] Town Hall Recording at 14:30.

response to the question, "[w]hat are the chances of someone developing an illness like cancer in the future because of this chemical exposure?" Dr. Carson clarified:

> Well because there were some small levels of chemicals that were involved, not zero, *the risk due to those chemical exposures* **is not zero either**, *but it's very small,* it's much much smaller than 1%, and it's so small, it's very difficult to calculate."[13]

In response to the question "[h]ow would you respond to claims that it's too early to know the long-term health effects of the derailment?" Dr. Carson explained:

> It's too early for some things, but it's not too early to predict the overall health effects [that] will occur from this . . . we pretty well know what exposures resulted from this train derailment and we can pretty well predict that people will be safe in the long term.[14]

Following Dr. Carson's presentation, Class Counsel attorneys Elizabeth Graham and Seth Katz then addressed the factual and legal history of the case. Mr. Katz explained that Class members were "absolutely entitled," to use the money from this settlement however they want, including tests their doctor might tell them to take every year, and if Class members decide to voluntarily participate, they could use, save, or invest that money to cover costs of medical treatment if they do get sick.[15] Adam Gomez then explained the different categories of payments, including a detailed explanation of the Personal Injury Payment, emphasizing it was voluntary and elaborating "you do not need to have suffered a physical injury in order to participate, instead of what would be required in a lawsuit . . . *we've assumed that everyone within 10 miles has been exposed to a certain level of chemical contaminants and as a result is eligible for a personal injury payment. If you have experienced symptoms and if you have sought medical treatment and received a formal diagnosis, those are factors that will be considered in calculating your payment, but it's*

---

[13] Town Hall Recording at 15:57 (emphasis added).
[14] Town Hall Recording at 17:45.
[15] Town Hall Recording at 34:02.

*not required for you to have actually experienced a physical injury, gone to the doctor, received any treatment, or received a diagnosis.* There is also the opportunity for individuals who voluntarily participate in the personal injury program to note extraordinary circumstances [which can be] a very adverse reaction to the chemical exposure, they can be an illness or symptoms that are different than those that have been experienced by most people…those circumstances can be explained … and will receive consideration for additional payment."[16] Michelle Kranz spoke next, also emphasizing that the personal injury claims were voluntary, "if you opt not to participate in the personal injury settlement that Adam's just outlined, you are entitled to do that, your rights are reserved they are your own and you can continue with this case in any matter that you'd like."[17]

### D. Settlement objections and final approval hearing, final approval order, and appeal

Following preliminary settlement, Class Counsel filed a Motion for Final Approval of Settlement, to which they attached a Declaration from Richard J. Schuhmann, Ph.D., an environmental engineer and consulting expert for Class Counsel from the outset of litigation who reviewed data from the sampling program to determine the areas of soil impact. ECF 518-10 ("Schuhmann Decl.) ¶¶ 1, 16, 17.

Objectors subsequently challenged the settlement, as summarized here:

| Date | Document | Party/Attorney | Summary of Relevant Objection |
|------|----------|----------------|-------------------------------|
| 7/1/24 | Objection to Class Action Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement, ECF No. 486 | Jami Wallace/David Graham | Health risks to Class were not yet known, and data from Stephen Petty was "suppressed" by Class Counsel |
| 7/1/24 | Objection to Class Action Settlement Agreement Motion to Enlarge Time to | Joseph Sheely/ David Graham | Health risks to Class were not yet known, and data from Stephen |

---

[16] Town Hall Recording at 40:32-45:45 (emphasis added).
[17] Town Hall Recording at 48:25.

| | Opt Out of Property Portion of Class Settlement, ECF No. 485 | | Petty was "suppressed" by Class Counsel |
|---|---|---|---|
| 7/1/24 | Objections to Settlement, ECF No. 487-2 | 35 Class members/Daniel Abraham | Class members were forced to make a decision without enough information and before enough time had passed for injuries to occur |
| 8/18/24 | Reply to Response to Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement, ECF No. 508 | Jami Wallace/David Graham | Petty's data has not been provided by Class Counsel |
| 9/18/24 | Response to Motion for Final Approvement [sic] of Settlement and Objectors' Brief in Support of Objections, ECF No. 529 | 35 Class members/ Daniel Abraham | Class Counsel withheld expert and discovery information from Class members, Class Counsel has "led Class Members to believe that there is a minimal risk that the exposure will result in future personal injuries by having an expert speak at the town hall assuring the attendees that the exposure is not going to cause future injuries," Dr. Carson was wrong and Class Counsel used him to encourage Class members to sign personal injury releases |
| 9/23/24 | Third Party Affidavit/Declaration of Stephen Petty, ECF No. 534 | Joseph Sheely/ David Graham | Too early to declare there are no health impacts, Dr. Carson was wrong, health risks to Class are unknown, Class Counsel has not allowed release of data |
| 9/23/24 | Third Party Affidavit/Declaration of Scott Smith, ECF No. 536 | Joseph Sheely/ David Graham | Health risks to Class are uncertain, Dr. Carson was wrong |
| 9/23/24 | Third Party Affidavit/Declaration of George Thompson, ECF No. 537 | Joseph Sheely/ David Graham | Health risks to Class are uncertain, Dr. Carson was wrong |
| 9/23/2024 | Third Party Affidavit/Declaration of Stephen Petty, ECF No. 540 | Joseph Sheely/ David Graham | Too early to declare there are no health impacts, Dr. Carson was wrong, health risks to Class are unknown, Class Counsel has not allowed release of data |

In denying objectors' request for more time to opt out, the Court considered and rejected the arguments that (1) the health risks to the community were too unknown for settlement, and (2) Class Counsel needed to release Petty's data in order for Class members to make informed decisions about the Settlement.  ECF No. 510 at 3 ("Settlement Class Members have had multiple channels through which to investigate their options in this Settlement and make informed timely decisions about whether to opt out of the Settlement Class.").

At the final hearing on September 25, 2024, Objectors yet again raised the same issues—which are also the issues raised in the Motion—arguing "when Mr. Carson was telling people in the community that the numbers that were collected were within acceptable limits, we now know that's not the case…if people made decisions on filing in the personal injury case … based upon information that wasn't complete, then they didn't have informed information," and asked that "Stephen Petty be permitted to lift the handcuffs, the confidentiality that is around him" to present his evidence. ECF No. 553 at 37:12-24, 42:10-14. In responding to this request, the Court uncovered that Mr. Petty had not come to the hearing to voice his concerns, was not handcuffed, and rejected such a request. ECF No. 553:3-24.

Class Counsel addressed the Objectors' concerns at the hearing, explaining that Mr. Petty's position was "not new to class counsel [and] not new to the Court. We are well aware of what Mr. Petty says. He is one voice [but] we have scores of other experts. And, again, detailed in the declaration of Richard Schuhmann. We have done our homework. So, this is not some smoking gun that we didn't uncover . . . [i]t's simply additional testing." ECF No. 553 at 64:6-23. As to the concerns about Dr. Carson, Class Counsel attorney Elizabeth Graham explained "we all agree that there is no way to be certain what the health risk is to the community. We are not settling a personal injury class here [but we are] presuming that there is an exposure . . . [and] that the concern is real

11

. . . [b]ut [] we all agree [] it's going to be decades from now before these symptoms manifest" and it would be "nonsensical" to wait for Class members to become sick before settling the case. ECF No. 553 at 54:2-55:7. Further, Ms. Graham explained that Dr. Carson didn't say there was zero risk; rather, he said the risk was unknown, but very low. ECF. No. 553 at 54:2-56:25. At the conclusion of the final approval hearing, the Court specifically found that the Settlement was entered into with good faith, "free of fraud or collusion." ECF No. 553 at 114:20-24. The Court found the Settlement was "fair, adequate, and reasonable" and 'overrule[d] all objections made to the settlement." ECF No. 553 at 115:5-15. The Court's subsequent Final Approval Order considered and "overrule[d] all objections to the fairness, adequacy, or reasonableness of the Settlement." ECF No. 557 ¶¶ 14,15.

Five of the Objectors, including Movant Tamara Freeze, all represented by Attorney David Graham, then filed appeals, which are still pending before the Sixth Circuit, raising identical issues to those raised here—including "Class Counsel withheld reports of their original expert, Stephen Petty,"[18] "Class counsel further withheld documentary evidence demonstrating that their prior assurances health hazards are relatively minimal are not only grossly untrue, but represent active concealment of key data,"[19] and "Class counsel thus fraudulently concealed Stephen Petty's alarming findings from Class members [and] affirmatively misled Class members by trumpeting

---

[18] In re: EAST PALESTINE TRAIN DERAILMENT Zsuzsa Troyan; Tamara Freeze; Sharon Lynch; Carly Tunno Interested Parties-Appellants Harold R. Feezle, on Behalf of Themselves and All Others Similarly Situated; Susan E. Scheufele, On Behalf of Themselves and All Others Similarly Situated; David J. Scheufele, On Behalf of Themselves and All Others Similarly Situated; Rollerena Auto Sales, Llc, On Behalf of Themselves and All Others Similarly Situated; Marilyn Figley,  2024 WL 5381670, at *5–6.
[19] *Id.* at 33-34.

the benign, pre-recorded, PR-manufactured informercial by Dr. Carson in an informational vacuum they constructed."[20] These issues are still pending before the Sixth Circuit.

## III.    APPLICABLE LAW AND ARGUMENT

Movants' only purported legal basis for relief hinges on the application of Rule 60 of the Federal Rules of Civil Procedure, which enumerates specific bases by which a party may seek relief from judgment.  Generally, "[r]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (citing *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund,* 249 F.3d 519, 524 (6th Cir.2001)).

Movants rely on three subsections of Rule 60: Rule 60(b)(3), (b)(6), and (d)(3). All of these sound in fraud, or a basis so extraordinary that the rules of civil procedure could not contemplate it. However, the pending appeal prevents this Court from granting the Motion.

### A.    Movants' Motion is jurisdictionally defective

Movants carefully argue that a "Rule 60(b) motion *can be made* even though an appeal has been taken and pending," but omit that, jurisdictionally, it *cannot be granted*. *See* ECF Nos. 993-1 at 19 and 994-1 at 20. The Sixth Circuit has repeatedly held that a trial court loses jurisdiction to grant a 60(b) motion while an appeal to the Sixth Circuit is pending. *See, e.g.*, *Ruelas v. Wolfenbarger*, 580 F.3d 403, 407 (6th Cir. 2009) (citing *Pickens v. Howes*, 549 F.3d 377, 381 (6th Cir.2008)). The Court may review such a motion during the pendency of an appeal "for the limited purpose of determining whether the court would be inclined to grant the motion" if it had jurisdiction. *Koe v. Univ. Hosps. Health Sys., Inc.*, No. 1:22 CV 01455, 2023 WL 10352931, at *1 (N.D. Ohio Oct. 18, 2023) (conducting a limited review to determine a Rule 60(b) motion would

---

[20] *Id.* at 36.

not be granted on remand). In other words, the Court may consider the argument only to indicate whether it would, or would not, grant the motion for relief, allowing Movants to determine whether they should move for a remand of the appellate case. *Id.* (citing *Post v. Bradshaw*, 422 F.3d 419, 421 (6th Cir. 2005)); *see also Herron v. Patrolman # 1*, 111 F. App'x 710, 711 n.1 (unpublished) (5th Cir. 2004) ("a district court may deny a rule 60(b) motion on the merits [while appeal is pending] but may not grant rule 60(b) relief without authorization from [the appellate] court.").

### B. Movants do not seek Rule 60(b) relief

The Motion should be denied because Movants do not actually seek relief from judgment; they do not ask this Court to revoke its final approval of the Settlement for any specific reason. Instead, they ask this Court to "[p]rohibit enforcement of Personal Injury opt-ins and releases signed by movants." The Court's Order only approved the Settlement, which provided an *option* Class members to *voluntarily* sign personal injury releases in exchange for compensation; the Court's Order did not compel any Class member to sign the personal injury release they entered into with Norfolk Southern. Rule 60 cannot relieve Movants of those contractual obligations, as "Rule 60 does not provide relief from the consequences of a deliberate choice, even if subsequent events reveal the choice to have been unwise." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012).

Movants' other specified request for relief asks this Court to "Order disclosure of all expert reports, testing data, and communications commissioned by class counsel." This is not relief from judgment and is not relief contemplated in any way by Rule 60. The Motion thus fails on these bases.

**C.** **Movants cannot use Rule 60 as a second opportunity to challenge conduct that was known, and already addressed, prior to the Final Approval Order**

Importantly, a motion for relief from judgment under Rule 60(b) cannot be used as a second opportunity for a party to make its strongest case, to relitigate the merits arguments, or to dress up arguments that previously failed. *Fleming v. New York University,* 865 F.2d 478, 484 (2d Cir.1989); *Short v. Bradshaw*, No. 1:07 CV 2989, 2009 WL 248378, at *1 (N.D. Ohio Feb. 3, 2009); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 247 F.Supp.2d 1233 (D.Kan.2003), *affirmed* 111 Fed.App'x. 611, 2004 WL 2370634. Rule 60(b) "was not intended to be an alternative method to obtain review by appeal or as a means of enlarging by indirection the time for appeal." *Swam v. United States*, 327 F.2d 431, 433 (7th Cir. 1964).

The Motion boils down to a re-hashing of three allegations: that Class Counsel (1) concealed or misrepresented environmental testing results, (2) made false representations to Class members about health risks, and (3) fraudulently misled this Court during the fairness hearing about testing data used and health risks discussed with Class members during Dr. Carson's town hall presentation. As detailed in the above chart, these arguments have been raised both in briefs and in argument, and subsequently denied or overruled by this Court. *See Brady v. Beams*, 132 F.2d 985, 987 (10th Cir. 1942) ("Under Rule 60(b)(3), a judgment may be set aside for fraud discovered after the entry of judgment."), *cert. denied* 319 U.S. 747, 63 S.Ct. 1032.

None of these arguments support the application of Rule 60. The Motion should be denied on this basis alone.

**D.** **Even if Rule 60 was properly invoked, Movants cannot establish that they are entitled to relief under Rule 60**

As relevant here, Rule 60(b) allows a court to relieve a party from a final judgment against for:

> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; or

(6) any other reason that justifies relief.

As a threshold issue, the Rule 60(b) arguments are not timely. A motion for relief under Rule 60(b) "must be made within a reasonable time" and, when alleging fraud, misconduct, or misrepresentation under Rule 60(b)(3), no more than a year after the entry of the judgment, order, or date of the proceeding. Fed. R. Civ. P. 60(c)(1). "Factors to consider in making the reasonable time determination are the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other party. *Acevedo v. Dan Motors*, 149 F.3d 1182 (unpublished) (6th Cir. 1998). Movants' September 25, 2025 Motion (ECF No. 993) was filed 363 days after the Court's September 27, 2024 Final Approval Order, and Movants' September 29, 2025, Motion (ECF No. 994) was filed 367 days after the Court's Final Approval Order.

Both Motions only take issue with conduct that occurred, and was known to Movants, before entry of the Judgment. Indeed, Movants signed the releases they now challenge before the Court's Final Approval Order was entered. Movants have not offered, and there is no, justification for this egregious and unreasonable delay, and disturbance to the finality of judgment, when Movants have been sitting on these arguments for 363 and 367 days, respectively. During this time, Settlement funds have been distributed to Class members who signed personal injury releases and have either received or are counting on their payment in exchange; disturbing these releases now would result in a chaos and uncertainty for Class members. The Court should find the Motion was not filed within a reasonable time, are thus not timely, and deny the Motion on that basis.

1. **Movants' Rule 60(b)(3) fails, as Movants cannot establish Class Counsel is an opposing party that engaged in fraud, misrepresentation, or misconduct**

Rule 60(b)(3) does not justify relief from judgment because (1) Class Counsel is not an opposing party, (2) the Motion is not timely, and (3) the Motion raises issues that have already been litigated before this Court and are factually and legally insufficient for relief under Rule 60(b)(3).

### i. Class Counsel is not an opposing party

A Rule 60(b)(3) challenge may not be brought by Movants against Class Counsel, as Class Counsel is not an "adverse party." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102 (9th Cir. 2006) (finding no error in the district court's denial of Rule 60(b)(3) relief because the appellant sought Rule 60(b)(3) relief based on fraud by former legal counsel, who  was "not an adverse party."); *Williamson v. City of Morgan City*, No. CIV.A. 08-0441, 2010 WL 2874422, at *4 (W.D. La. July 16, 2010), *aff'd*,428 F. App'x 356 (5th Cir. 2011) ("Rule 60(b)(3) does not afford relief to a claimant contending he received ineffective assistance of counsel, as the rule specifically contemplates the misconduct of "adverse parties."); *Sherman v. Verizon Va. Inc*., 220 F.R.D. 260, 262 (E.D.Va.2002) ("Plaintiff's former counsel is not an 'adverse party' within the plain meaning of Rule 60(b)(3) . . . In short, defendant, the 'adverse party' contemplated by Rule 60(b)(3), and *not* plaintiff's own attorney, must be the author of any fraud, misrepresentation, or misconduct for which the provisions at issue may provide a remedy."). Per this threshold issue, Movants' Rule 60(b)(3) arguments cannot proceed.

### ii. Even if the Rule 60(b)(3) Motion were properly brought, it would fail because Class Counsel has not engaged in fraud, misrepresentation, or misconduct

Even if the Court were to address the substance of Movants' Rule 60(b)(3) Motion, it fails. Movants' main argument is that Class Counsel made fraudulent misrepresentations and engaged in misconduct with Class members and before the Court. These allegations are simply false and blatantly ignore publicly available information.  Further, Movants rely solely on the same points

that have raised repeatedly before this Court and on appeal by Movants' Counsel's co-counsel—and Objector and Movant Freeze's counsel on appeal—Mr. Graham. This Court already found that these allegations were baseless and specifically found that there was no fraud in reaching the Settlement—if the facts and arguments were insufficient to hinder final approval then, they certainly do not support allegations of fraud now.

"To prevail under a Rule 60(b)(3) claim for fraud movant must show the fraud complained of [by the opposing party] by clear and convincing evidence. Accordingly, the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008); *Jennings v. Hicklin,* 587 F.2d 946, 948 (8th Cir.1978); *Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983). The Sixth Circuit has defined fraud under Rule 60(b)(3) as "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment [which includes] deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material." *Info-Hold,* 538 F.3d at 456.

### a. Class Counsel did not fraudulently conceal expert conclusions from Class members

Movants do not cite to any case in support of their contention that failing to provide expert work product amounts to fraud or misconduct justifying relief from settlement. Indeed, fraud requires a misrepresentation or concealment of a material fact "done to induce another to act to his or her detriment." *Info-Hold*, 538 F.3d at 456 ; *see Kerwit Med. Prods., Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980) (finding no error in denial of 60(b) motion and citing "the well-settled rule that the mere nondisclosure to an adverse party and to the court of facts pertinent

to a controversy before the court does not add up to 'fraud upon the court' for purposes of vacating a judgment.").

Expert opinions have not been "held back" to "induce" Class members to act to their detriment. As addressed in response to objections, Class Counsel did not publish Plaintiffs' expert reports because a settlement was reached before expert reports were due to be exchanged under the schedule entered by the Court, and therefore expert reports were never finalized. Further, by publishing expert data, Class Counsel would lose control of how the work product is used or allowed to be used and thus violate the Settlement. Movants suggest Class Counsel had a duty to share the opinion of Scott Smith, "an actual independent third-party testing expert," because he disagreed with Plaintiffs' expert Dr. Schuhmann. This is illogical. First, Mr. Smith was out in the community and in the media making his opinions known, so there was no need to share opinions that were being publicly espoused. Second, Class Counsel does not have a duty to disclose publicly that someone disagrees with a negotiated settlement. Movants have no evidence whatsoever, let alone clear and convincing evidence, to show that Class Counsel fraudulently concealed expert conclusions by failing to provide expert reports or allow publication of experts' work product.

Class Counsel did not "induce" Class members to sign personal injury releases; to the contrary, Class Counsel has been very clear in Notices, town halls, and in all communications with Class members and the Court that the personal injury program was completely voluntary.

### b. Class Counsel did not misrepresent the testing results of Dr. Schuhmann to Class members or the Court

Movants inexplicably, and without any basis or support, falsely claim that the conclusions in Schuhmann's affidavit are entirely based on flawed EPA data, not the testing of Plaintiffs' own experts and that Dr. Schuhmann ignored Plaintiffs' testing data. ECF Nos. 993-1 at 24, 994-1 at

13-14. Movants thus argue that Class Counsel "claimed independence from EPA data" to the Court "while relying on it." ECF Nos. 993-1 at 26, 994-1 at 13-14.

This claim is refuted by Schumann's sworn declaration. Class Counsel spent a significant amount of resources and time conducting the soil sampling program—attorneys from Class Counsel law firms were present for every sample collected. Katz Decl. at ¶ 35.  Dr. Schumann reviewed data from the sampling program in East Palestine; his declaration notes its existence and his conclusions drawn from it. Schuhmann Decl. ¶¶ 6,14, 16. He compared the data collected from the soil sampling program against *background* levels of dioxins/furans from the EPA in the East Palestine area. Schuhmann Decl. ¶ 17. In other words, the results of the dioxins/furans collected by Class Counsel's program were compared against EPA data; Movants are entirely mistaken in their understanding of Dr. Schuhmann's opinions and their inference that Class Counsel or Dr. Schuhmann ignored Plaintiffs' own sampling program data.

Class Counsel was entirely forthright when explaining to the Court "we had a sampling protocol . . . and we adhered to it. *We didn't rely on EPA data.* We went out and did our own testing. We did split samples. We eliminated background levels. We did everything that we were supposed to do." ECF No. 553 at 65:2-7 (emphasis added). Movants present no evidence of misrepresentation, misconduct, or fraud on this basis.

### c. Class Counsel did not misrepresent the health impacts of the derailment and vent and burn to Class members or the Court, and did not conceal Class members' diagnoses

Contrary to Movants' position, Class Counsel has always recognized the possibility of health risks because of the derailment; the very existence of these voluntary personal injury payments makes clear that Class Counsel (and Norfolk Southern) recognized that potential.[21]

---

[21] Additionally, the settlement between the DOJ and Norfolk Southern, which Class members discussed during the town hall, was announced in May, 2024, which included a requirement for

Despite the relatively low risk of cancer development and other exposure-related long-term health effects, as acknowledged by Dr. Carson, Class Counsel negotiated for these payments to provide Class members an opportunity for achievable compensation for those potential claims. For tens of thousands of participating Class members, this has provided an opportunity for compensation they would not otherwise have received without taking on the additional expense, risk, and delay of a personal injury lawsuit.

Movants audaciously accuse Class Counsel of presenting false information to the Court based on a "*presum[ption]* that Class Counsel paid Dr. Carson to "convince" class members to opt into the personal injury payment; this is far afield from the clear and convincing evidence Movants are required to present on behalf of these serious allegations. ECF No. 993-1 at 24. The allegation that Class Counsel paid Dr. Carson to give certain opinions is critically undermined by statements Class Counsel made themselves, during that same town hall, recognizing the potential long-term health effects to Class members.

To be clear, (a) Dr. Carson was not paid by Class Counsel and (b) Dr. Carson gave his opinions in *his* "best judgment," acknowledged the risk of future health effects was "not zero," and explained the risk was unknown as it was too low to calculate. Crucially, as explained to Class members, Dr. Carson was "not involved in the litigation [and was] a completely independent third party."[22]  Ms. Graham's statements to the Court during the final approval hearing are consistent with Dr. Carson's opinions and with statements given by Class Counsel to Class members.

---

Norfolk Southern to "pay for health monitoring and mental health services for the surrounding communities. DOJ, *United States Reaches Over $310 Settlement with Norfolk Southern to Address Harms Caused by East Palestine Derailment*, (May 23, 2024) https://www.justice.gov/archives/opa/pr/united-states-reaches-over-310-million-settlement-norfolk-southern-address-harms-caused-east.

[22] Town Hall Recording at 12:40.

Notably, Dr. Carson, Class Counsel, and Stephen Petty have all said the same thing—the health risks are not fully known. This is what the Class members were told on all fronts, and that is why Class Counsel has repeatedly emphasized that the personal injury releases were fully voluntary, optional, and would not impact direct payments to Class members. Class Counsel and Dr. Carson did say that the health risks are likely low based on relatively low exposure levels, which is supported by independent scientific studies done to date.[23] Class counsel did not act fraudulently, nor did they commit any form of misconduct, by allowing Dr. Carson to present his opinions to Class members and requiring Stephen Petty to abide by the terms of the settlement agreement. The independent scientific studies that have come out support what Class Counsel, and Dr. Carson, have told Class members. Movants do not articulate how a difference in opinion held by individuals Scott Smith, Stephen Petty, and Dr. Carson amounts to fraud.

Movants baselessly argue that Class Counsel concealed information about some Class members' alleged injuries. This vague argument assumes Class Counsel knew about one Class members' acute "permanent[] injur[ies]," presumably because that Class member—who is one of

---

[23] Haynes et al., *Serum Dioxin Levels in a Subset of Participants of the East Palestine, Ohio Train Derailment Health Tracking Study* (Jun. 2024), https://pmc.ncbi.nlm.nih.gov/articles/PMC11594446/ ("Together, our study demonstrates that although dioxins may have been generated during the derailment and subsequent burning of chemicals, any exposure experienced by our participants was not significantly elevated relative to historical serum dioxin levels in the United States."); UNIVERSITY OF KENTUCKY, COLLEGE OF PUBLIC HEALTH, *East Palestine Health Tracking Study – Indoor Air Sampling Pilot Study* (accessed Oct. 8, 2025) ("We collaborated with an indoor air quality study led by … an East Palestine Resident…[o]verall, the VOCs level found in this study are similar to levels found in indoor air across the US."), https://cph.uky.edu/sites/default/files/2024-09/indoor-air-sampling-fact-sheet-east-palestine.pdf; UNIVERSITY OF KENTUCKY, COLLEGE OF PUBLIC HEALTH, *Wristband Pilot Study* (accessed Oct. 8, 2025) (explaining that 80 residents of East Palestine wore wristbands from July 16 to July 23, 2023 to analyze their exposure, noting "no dioxins were detected in any of the wristbands" and that chemicals the wristbands did detect chemicals, though "most of these chemicals are not thought to be related to the February 2023 train derailment [or vent and burn] and "we do not know if the levels measured n wristbands are associated with any health effects."), https://cph.uky.edu/sites/default/files/2024-09/indoor-air-sampling-fact-sheet-east-palestine.pdf.

the movants—submitted a claim form with the assistance of their individually retained lawyer, detailing their respiratory problems and RADS diagnosis. Movants also suggest Class Counsel erred by not collecting and publicly sharing that private health data.[24] As noted *supra*, Mr. Gomez explicitly informed Class members that some Class members may have already experienced symptoms or already have formal diagnoses, and those would be considered in calculating the total amount of the personal injury payment for those individuals.

In summary, Movants do not establish any misconduct or misrepresentation by Class Counsel, let alone fraud. Every substantive allegation Movants make now was already raised before the Court during the final approval process, and the Court specifically found there was no fraud in reaching this Settlement. There is no basis whatsoever for a finding of fraud now.

### 2. Rule 60(b)(6) cannot be used as a catch-all, and Movants have not established any justification for relief under Rule 60(b)(6)

Movants invoke Rule (6)(b)6) as a catch-all to argue there was fraud, misrepresentation, or misconduct before the Court. Rule 60(b)(6) applies "only in exceptional and extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule . . .[s]uch situations are rare, 'because almost every conceivable ground for relief is covered under the other subsections of Rule 60(b)." *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 596 (6th Cir. 2002) (internal citations omitted). The principal purpose of Rule 60(b)(6) "is to deal with unforeseen contingencies." *In re Durkalec*, 21 B.R. 618 (E.D. Pa. 1982).

---

[24] Without further explanation, both of Movants' Motions attach the same Extraordinary Injury Claim Statement of one individual Class member, submitted by lawyers Mikal Watts and Russell Abney of Watts Law Firm LLP, mis-identifying them as Class Counsel. ECF No.994-3. If Movants attach this to suggest that Class Counsel was aware of these injuries, they do not understand the basics of this Court's orders on class leadership. It is clear from the Court's orders (ECF Nos. 28 and 458) who was appointed as Interim and Lead Class Counsel and who is not, and was never, Class Counsel. At no time during this litigation has anyone other than Ms. Graham, Mr. Katz, or Ms. Conroy and their respective firms been Class Counsel, and thus Movants have offered no proof that Class Counsel submitted, or was even aware of, this Movant's injuries.

There is no basis for the Court to apply the exceptional and extraordinary relief under Rule 60(b)(6), for these unfounded allegations that have already been litigated. Movants rest this argument on the bald assertion there were "affirmative misrepresentations or omissions by counsel in obtaining settlement approval." ECF No. 993-1. As discussed *supra*, Class Counsel did not affirmatively misrepresent, or omit, information to the Class or before the Court, nor is that a basis for Rule 60(b) relief.

Rule 60(b)(6) should be narrowly applied lest it undermine rules that favor finality of judgment. *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) ("if the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal . . . [s]tated simply, 'extraordinary circumstances' do not arise due to limitations that otherwise apply, and a plaintiff cannot use Rule 60(b)(6) to evade such time limitations."); *see McCurry*, 298 F.3d at 596 (explaining FRCP 60(b)(6) relief is not available for straightforward claims of attorney error and strategic miscalculation).

None of the challenged conduct here warrants, or justifies, relief from the Final Approval Order or rescission of Movants' voluntary personal injury releases. Movants' completely unsupported Rule 60(b)(6) argument fails and cannot be the basis for relief from judgment.

### 3.    There is no justification for extraordinary relief under Rule 60(d)(3)

Lastly, Movants ask this Court to relieve them from judgment under Rule 60(d)(3), which explains the Court retains the power to "set aside judgment for fraud on the court." This provision sets no deadline for relief, and thus, as detailed below, requires proof of significantly fraudulent behavior. The burden is on the moving party to establish fraud on the court by clear and convincing evidence. *England v. Doyle*, 281 F.2d 304, 309–10 (9th Cir. 1960).  Movants have not and cannot meet their burden.

Relief under Rule 60(d) is reserved for "'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012). Fraud on the court requires "acts that 'defile the court.'" *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011) (citing cases). This is invoked in cases where, for example, there is "bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured." *Id.*; *see Doyle*, 281 F.2d. at 309 ("[i]n order to set aside a judgment or order because of fraud upon the court under Rule 60(b) . . . it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision."); *H. K. Porter Co. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1118 (6th Cir. 1976) (finding allegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court).

The California District Court case Movants cite in sole support for their claim that "misrepresentations or omissions in obtaining settlement approval may constitute fraud on the court warranting relief" (ECF No. 993-1 at 28) contradicts their argument; it found no fraud on the Court where defendant attorneys "did not advise the court of their assessment of the merits of the case or of the actual damages sustained [and] kept secret from their own clients the facts concerning the basis for the settlement." *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 641 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981).  The court specifically found that, *even assuming arguendo the truth of these allegations*, "none of them prove fraud on the court." *Id.* at 640 (emphasis added).

The Sixth Circuit has ruled that, in considering the allegations of fraud on the court, the court need only consider whether a party deliberately disobeyed an order of the court, not the parties' voluntary dealings with each other in discovery. *H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976). "[A]llegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court." *Id.* (noting that allegations of attorney misdeeds are "serious charge[s] and ought not to be recklessly made without substantial support."); *see Pantoja v. Texas Gas & Transmission Corp.*, 890 F.2d 955, 960 (7th Cir. 1989) ("Even if their allegations of attorney misconduct are true, Rule 60(b)(6) does not address their situation.").

Movants utterly fail to allege any facts sufficient to disturb the finality of judgment—they do not even offer explanation for how this alleged fraud was not sufficiently addressed before the Court during the hearing on September 25, 2025, let alone how Class Counsel schemed to defile the Court. They rely on presumptions and baseless accusations, without evidentiary support, to make reckless allegations that Class Counsel committed fraud on the court.

## IV.  CONCLUSION

Wherefore, for the foregoing reasons and any others deemed just and equitable by this Court, Class Counsel request the Court deny Movants' Rule 60 motions (ECF Nos. 993, 994) for relief from judgment.

Dated: October 10, 2025

Respectfully submitted,

*/s/ Seth A. Katz*

26

Seth A. Katz (pro hac vice)
BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
skatz@burgsimpson.com

M. Elizabeth Graham (pro hac vice)
GRANT & EISENHOFFER, P.A.
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
egraham@gelaw.com

Jayne Conroy (pro hac vice)
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
212-784-6400
jconroy@simmonsfirm.com

*Plaintiffs' Class Counsel*

## <u>CERTIFICATE OF LOCAL RULE 7.1 COMPLIANCE</u>

I certify that this Memorandum adheres to the page limitations set forth in this Court's

October 2, 2025 Order (ECF No. 999) because it does not exceed 30 pages in length.

*/s/ Seth A. Katz*
Seth A. Katz

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2025, a copy of foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Seth A. Katz.*
Seth A. Katz