**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: EAST PALESTINE TRAIN DERAILMENT** | **CASE NO. 4:23-CV-00242-BYP**<br>**JUDGE BENITA Y. PEARSON** |

**CLASS COUNSEL'S RESPONSE IN OPPOSITION TO MORGAN & MORGAN'S**
**MOTION FOR LEAVE TO SEEK DISCOVERY FROM CO-COUNSEL RELATED TO**
<u>**CALCULATION AND ALLOCATION OF FEES**</u>

## I.     INTRODUCTION

This Court has already heard, considered, and denied Morgan & Morgan's attempts to engorge itself beyond its previously allocated attorney fee of almost eight million dollars, which was established by applying the same formula to Morgan & Morgan ("Morgan") as that applied to other law firms; on appeal to the Sixth Circuit, this Court's denial was upheld, save one, narrow direction, discussed below. But Morgan's present motion is yet another attempt to conduct its own calculation of the attorneys' fees it thinks it should have received—a task both this Court and the Sixth Circuit found was appropriately designated to Co-Lead Class Counsel.  This latest attempt should too be denied.

The "narrow issue" remanded by the Sixth Circuit is whether the Court considered Morgan's questionably meritorious argument that its specific allocation of the total attorney fee was not objectively calculated because, though Morgan raised, and fully argued, this position during a telephonic hearing on November 1, 2024, its argument was not specifically addressed in the Court's written Order. (ECF Nos. 986, 698); *In re E. Palestine Train Derailment*, 160 F.4th 751, 754 (6th Cir. 2025). The only instruction on remand is therefore that this Court consider, address, and explain its decision regarding that lone argument, memorialized in the hearing transcript, as to whether the fee allocation methodology was objectively applied to Morgan. (ECF No. 986); *id.* at 763.

The Sixth Circuit affirmed the Court's denial of Morgan's other, written arguments requesting "a process for judicial review of the fee allocation" and to appoint T. Michael Morgan to "participate in the allocation process." (ECF No. 664-1); *In re E. Palestine Train Derailment*, 160 F.4th at 763. The Sixth Circuit found no error in the Court's decision to delegate authority to Co-Lead Class Counsel to calculate and allocate fees. *Id.* at 759-61. Nor did the majority question the methodology Class Counsel applied to the fee allocation, including the weight Class Counsel

1

assigned to certain categories of time worked for the benefit of the Class. In fact, the Sixth Circuit explicitly found that the Court did not err in declining to give Morgan a role in making fee allocations; a role it is now grasping for again by filing the present motion, where it unabashedly asks for discovery "for the purpose of collecting and analyzing the data necessary" to "verify, at a minimum, that 'Class Counsel did the math right.'" *In re E. Palestine Train Derailment*, 160 F.4th at 76; (ECF No. 1050-1). The Sixth Circuit did not require this Court to collect mathematical data and perform the allocation calculations itself. Indeed, the Court need only explain its decision regarding whether Morgan's contributions to this litigation were undervalued; it need not consider additional argument or evidence, and there is certainly no basis for Morgan to obtain depositions and written discovery in order to re-do Co-Lead Class Counsel's work and perform calculations itself.

Further, Morgan and Morgan is already in possession of information it purports to seek on behalf of the Court in discovery, and all of the information it needs to evaluate whether the allocation system was objectively applied to its fee award, including (1) that attorneys' fees were based on total hours worked and approved pursuant to billing guidelines, (2) the total allowed hours for all law firms, including Morgan's total approved hours, broken down by category, (3) the flat, hourly rates applied to document review hours, (4) the multipliers used across each category of time objectively applied to all law firms, including Co-Lead Counsel and Morgan, and (5) the specific per-hour dollar figure applied to each approved hour reported by all firms, including Morgan.

Morgan, appointed only to represent individuals in the class, seeks discovery, so the Court can "ensure that the fee in this case is fair to all *class* counsel." But that is not the Sixth Circuit's mandate, and the Court already has the information needed to determine whether the methodology

was objectively applied to Morgan. Notably, after submitting the lowest number of approved hours of any Co-Lead Counsel firm, Morgan engaged in motions practice—to the detriment of the Class—solely to increase its own fee, and, perhaps most disturbingly, completely abandoned its Court-appointed role as Co-Lead Counsel by not appearing at any hearing or performing any work on behalf of any individuals or the Class whatsoever after October 25, 2024. Simply put, once Morgan objected to its fee allocation, it all but disappeared from any involvement in this litigation—including representation of the individual community members who had retained their law firm[1] —despite continued appeals that threatened the Settlement and hotly contested issues with the Settlement's administration both outside and before this Court. As a result, this Court already has all the information it needs to conclude that Morgan's allocated fee is now disproportionately high relative to the remaining Co-Lead Counsel firms, who have continued to dedicate significant hours litigating on behalf of the Class since their hours were submitted on August 23, 2024.

Morgan long-ago left behind any responsibility to represent the individuals of this Class, yet now it files this Motion in an attempt to warp the Sixth Circuit's remand into an opportunity to afford itself special treatment and collect more than the $7,723,709.87 it would have received had it not disavowed the Settlement it approved only to later challenge and jeopardize on appeal. It once again asks this Court to retract its delegation of authority to Co-Lead Class Counsel, now over the Sixth Circuit's affirmance, and instead oversee all the data inputs and perform the allocation calculations. There is simply no basis to grant Morgan the discovery it seeks, and its Motion should be denied.

---

[1] As the Court is aware from the e-mail it forwarded to Co-Lead Class Counsel on February 4, 2026, a concerned former client described to the Court how Morgan dropped its clients by group video call after providing no meaningful updates for two years.

## II.     BACKGROUND

### a.  The Court already has sufficient information to determine that Morgan was fairly compensated relative to its contributions in this matter.

Morgan requests discovery on the basis that it must assist the Court in ensuring all class counsel receive a fair fee (though no other firm has objected to its allocation); as explained further *infra*, the system of distribution was applied objectively and fairly to Morgan's fee allocation; it was based on an objective number of approved hours, which were then given multipliers by category that were objectively and equally applied. (ECF No. 986 at 16:20-17:2). Morgan's suggestion that it received an unfair allocation as a result of Co-Lead Class Counsel's calculations is unfounded and requires an examination only of the information already before this Court regarding the relative hours Morgan actually contributed to this litigation, a great deal of which did not add any value to the prosecution of the case.

The Court appointed four attorneys as Co-Lead Counsel: three—Seth A. Katz, M. Elizabeth Graham, and Jayne Conroy—were appointed as Class Counsel, and T. Michael Morgan of Morgan was appointed to "represent individuals and entities who have elected to file cases outside the class action, but are not opposed to the class structure." (ECF Nos. 28, 30). To this end, Co-Lead Class Counsel distributed billing guidelines explaining that firms would be paid, following a class action fee application, based on time expended on behalf of the Class; these billing guidelines were incorporated into the Court's Case Management Order. (ECF No. 33). The Court-adopted billing guidelines required all firms to submit time within two months of its expenditure. (ECF No. 33 at 7). Morgan, like all other firms, agreed to, and even represented to the Sixth Circuit it "enforced," these guidelines. 2025 WL 790860, *43. Acceptable time submissions were limited to those hours incurred for the benefit of all Class Members, and the guidelines explained that all hourly time would be assigned a rate, considering the task performed,

4

at the end of litigation, with document review being assigned a standard rate for all participating firms. (ECF No. 33 at 7-9).

Over the course of ten months of intense and thorough discovery, Class Counsel offered ample opportunity for all firms, including Morgan, to assist, including review of over 1,345,000 documents containing highly technical information, depositions of approximately 70 individuals, the defense of 16 class representative depositions, and drafting numerous court filings.  (ECF No. 520-1 at 14-17). Indeed, a Morgan attorney was assigned as Chair of a critically important committee responsible for developing damages experts who would testify on behalf of the Class. (ECF No. 11:25-12:3). Notwithstanding these opportunities, and Mr. Morgan's role as one of the four Co-Leads, Morgan simply chose not to avail itself of meaningful work—for example, it sent an attorney to partially assist at only one deposition.

The Court is already aware of these facts from the November 1, 2024, hearing where it was informed that Mr. Morgan himself only submitted 186.8 hours pursuant to the billing guidelines.[2] (ECF No. 986 at 11:24-25). During this same hearing, the Court learned that Morgan submitted only 839.85 total approved hours in the year between Mr. Morgan's appointment on April 5, 2023, and May 1, 2024 (five days after Co-Lead Counsel moved for preliminary approval of the settlement). (ECF No. 452; ECF No. 986 at 8:11-12). Knowing that its fee would be inextricably linked to the amount of work it performed for the benefit of the Class, Morgan began its scramble to submit additional hours only after Co-Lead Counsel filed their motion for preliminary approval. By July 6, 2024, Morgan submitted an additional 332.15 hours, some of which reached back to 2023 in violation of the Court-adopted billing guidelines. (ECF No. 986 at 8:11-15). Less than 30

---

[2] By comparison, this is remarkably low; Mr. Katz had 1,646 approved hours, Ms. Graham had 1,028.5 approved hours, and Ms. Conroy had over 400 hours. (ECF No. 986 at 16:7-12).

days later, on August 23, 2024 (the cut-off date to submit hours in conjunction with Co-Lead Counsel's motions for final approval), Morgan submitted an additional 1,916 hours. Although many of these were untimely submitted again in violation of the billing guidelines, they were nevertheless processed and accepted for approval. (ECF No. 986 at 8:11-15).

Not to be outdone, after the August 23, 2024, deadline, Morgan attempted to submit an additional 1,514 hours, but an audit of these hours revealed virtually all of them were duplicative of previous submissions or otherwise unapproved under the billing guidelines, regardless of their lateness or improper format. (ECF No. 986 at 8:18-21). Once fully reviewed, Morgan's total approved time totaled 2,711 hours exclusive of 377 hours categorized as document review. (ECF No. 986 at 9:2-6). The volume of these hours was incredibly low compared to other Co-Lead Counsel firms and were even exceeded by other law firms not part of the Co-Lead structure. For example, Ms. Conroy's firm and Ms. Graham's firm completed over 7,000 and 1,700 hours, respectively, of document review alone; all 39 firms in the leadership structure of this case submitted a combined 59,042.63 in approved hours through August 23, 2024. (ECF No.986 at 9:6-8; ECF No. 540-4 at 4).

The Court appointed Michelle Kranz—an attorney independent of Co-Lead Counsel's law firms—to serve as Liaison Counsel and counsel responsible for record keeping related to time submissions. In that role, Ms. Kranz "collected, reviewed, and audited all time and expenses" submitted by all firms. (ECF No. 520-1 at 6). Ms. Kranz submitted a declaration wherein she explained she regularly confirmed work assignments and verified submitted time pursuant to the billing guidelines. (ECF No. 520-4 at 2-3). She identified deficiencies in submitted hours, which included submissions of time with no authorizations, work performed on behalf of individual clients, or lack of sufficient detail to determine whether the time was appropriately Class related.

6

(ECF No. 520-4 at 3). In fulfilling her Court-appointed role, she audited all time entries submitted by all firms to confirm the reasonableness of the time and removed duplicative, unauthorized, or non-class work. (ECF No. 520-4 at 3).

Co-Lead Counsel filed their Motion for Award of Attorneys' Fees and Expenses and Service Awards ("Fee Approval Motion") on September 6, 2024. (ECF No. 520). Mr. Morgan raised no objection to the Fee Approval Motion at the time of filing, raised no objection to the proposed fee order giving "Co-Lead Class Counsel" authority to distribute fees fairly in their judgment (ECF No. 538-5), and did not object during the September 25, 2024 hearing when Co-Lead Class Counsel asked the Court to appoint "class counsel" to apportion fees to individual firms. (ECF No. 689 at 3). The Court appropriately entrusted Co-Lead Class Counsel to allocate the total awarded attorneys' fees in its Order granting the Fee Approval Motion. (ECF No. 556).

It was only after Morgan learned of its allocated dollar amount, and realized that it had not received some sort of additional special treatment simply as a result of Mr. Morgan's position as Co-Lead Counsel, that it moved the Court to "clarify, alter, amend, or reconsider" its Order (ECF No. 556) granting the Fee Approval Motion Morgan had previously endorsed and not objected to. (ECF No. 664; ECF No. 689 at 7). In relevant part, Morgan argued that the Court should not have given authority to Co-Lead Class Counsel to allocate fees, that the allocation process should be made transparent such that Morgan understands "how class counsel allocated the fee allocation for any firm," and that Mr. Morgan should be given an opportunity to participate in the allocation process. (ECF No. 664-1). This Court denied that Motion by Order dated November 18, 2024 ("Order"). (ECF No. 689). As explained below, the denial on these written arguments, and those attempting to dismantle the entire Settlement by challenge to the "quick pay" provisions, was upheld by the Sixth Circuit.

7

### III.   ARGUMENT

**a. There is no basis for Morgan to conduct discovery because the allocation system was applied fairly and objectively to Morgan at the time attorneys' fees were apportioned and the Court has the information it needs to address the narrow issue identified by the Sixth Circuit on remand.**

Neither Morgan nor the Court need discovery for this Court to determine the narrow issue of whether the allocation system was applied objectively to Morgan's contributions. The Sixth Circuit summarized the arguments that this Court did not engage with, but should have, in its written order, as:

(1) Whether the Court "tacitly accepted co-lead class counsel's explanation of how allocations were made while ignoring Morgan & Morgan's assertion that the firm played a critical role in the litigation that was not reflected in the fee allocation";

(2) Whether Morgan & Morgan's "comparatively minimal role in litigation . . . sensibly resulted in a lower share of the fees";

(3) Whether Morgan & Morgan's fee allocation "was based on objective measures stemming from the guidelines the district court approved . . ."; and

(4) Whether the particulars of distributions among counsel become irrelevant once there is no dispute as to their collective worth (a legal question for which discovery is not warranted).

Nothing in the Sixth Circuit's decision required this Court to permit discovery by Morgan, gather more evidence, or consider more information prior to opining on these issues, and the Court need not do so; the information the Court needs to provide a written explanation regarding these issues is already before it.

**i. The Court already has sufficient information to analyze whether Morgan's fee allocation fairly reflected its role in the litigation and whether Morgan's comparatively minimal role in litigation sensibly resulted in a lower share of the fees.**

The Court's Order did not elaborate on Morgan's hourly contributions beyond noting it "had the lowest number of approved hours," but, as discussed *supra*, the Court already has ample information to evaluate the value of Morgan's contributions to this litigation, including: (1)

8

Morgan's total calculated hours—377 hours of document review and 2,711 additional hours—relative to total hours in the litigation through August 23, 2024—59,042.63—and by other Co-Lead Counsel individually, (2) the applicable billing guidelines and a declaration from Ms. Kranz determining how hours were approved, (3) Morgan's choice not to pursue additional hours of work, and (4) its own observations of Morgan's contributions to the litigation. While the Court's Order did not acknowledge Morgan's specific fee allocation, the Court can certainly determine whether $7,723,709.87 for a total of 377 document review hours, and 2,711 substantive hours, would have fairly reflected Morgan's role in the litigation without further discovery.[3]

> **1. Since Co-Lead Class Counsel calculated fee allocations, Morgan, and T. Michael Morgan, abdicated the Court-appointed role of Co-Lead Class Counsel thereby inflating their portion of the fee disproportionately and unfairly**

It is axiomatic that the duty of court-appointed counsel to its clients does not end while litigation is still pending. Nevertheless, Morgan abdicated its court-appointed role as Co-Lead Counsel in this case as soon as Class Counsel successfully negotiated a resolution of the case and argued for approval of the Settlement. The Court does not need to permit or review discovery to understand that this results in Morgan receiving a higher per-hour fee than the rest of Co-Lead Counsel, all of whom have continued to diligently represent the class.

Since August 23, 2024, Class Counsel have continued to spend significant hours and resources to defend the Settlement and advocate on behalf of the Class on matters other than Morgan's fee, including issues raised before this Court, the Sixth Circuit Court of Appeals, and

---

[3] Class Counsel specifically reserves the right to reduce Morgan's allocation of fees to pay for the attorneys' fees Co-Lead Class Counsel expended for their work and that of appellate counsel hired solely to protect the terms of the Settlement challenged by Morgan on appeal, after it had signed the Settlement Agreement and supported the Settlement for final approval.

even the United States Supreme Court.[4] Morgan, however, has not contributed whatsoever to the continued defense of the Settlement, the Class, or any individuals within both. It has not attended any hearing before or conference with this Court on behalf of any Class Member since September 25, 2024. *See* Minutes of proceedings from October 1, 2024, October 3, 2024, October 29, November 3, 2025, November 13, 2025, December 5, 2025. It has not assisted in defending the Settlement when challenged or ensuring the Settlement was appropriately administered. (*See* ECF Nos. 1000, 1003, 1005, 1012, 1039, 1046). To the contrary, Morgan specifically challenged provisions of the Settlement Agreement and, had it been successful, would have undone the entirety of the Settlement. *See Evans v. Jeff D.,* 475 U.S. 717 (1986) (explaining a court's options are either to accept or reject the settlement; it cannot modify it).

Co-Lead Class Counsel anticipated that Co-Lead Counsel would continue to incur hours defending the Settlement and overseeing payments to the Class, hence why all four Co-Lead Counsel firms received a higher multiplier on their hours. What Co-Lead Class Counsel did not anticipate was that Morgan would entirely walk away from its role in this litigation, thereby receiving the benefit of the higher multiplier without putting in any additional work following approval of the Settlement. The natural consequence of this imbalance is that Morgan was allocated a far higher dollar figure per hour worked than the other Co-Lead Class Counsel firms.

Not only has Morgan abandoned its Court-appointed responsibilities, resulting in an unfairly high apportionment of attorneys' fees, it forced Co-Lead Class Counsel to expend time

---

[4] This includes (1) overseeing class payments (2) litigation to remove and disgorge the settlement administrator, and associated settlement negotiations, and (3) successful appellate briefing and argument before the Sixth Circuit regarding, *inter alia*, the appeal bond of objectors, sufficiency of class settlement notice, incentive payments to class representatives, and the fee awarded to *all* class counsel, as well as briefing on the subsequent petition for certification to the Supreme Court. *In Re E. Palestine Train Derailment*, 158 F.4th 704, 709 (6th Cir. 2025), *cert. denied sub nom. Sheely v. Feezle*, No. 25-929, 2026 WL 568332 (U.S. Mar. 2, 2026).

and resources, to the detriment of the Class, litigating Morgan's fee dispute before both this Court and the Sixth Circuit. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 910 n.1 (N.D. Ohio 2003) (ordering certain attorneys who engaged in work to the common detriment of the class to file a formal explanation within 14 days addressing the court's concerns before the court entered a common benefit fee award); *In re Oral Sodium Phosphate Sol.-Based Prods. Liab. Action*, No. 1:09-SP-80000, 2010 WL 5058454, at *4 (N.D. Ohio Dec. 6, 2010) ("an attorney [can] undertake maleficent efforts that work to the common detriment of all settling plaintiffs. For example, a plaintiff's attorney can . . . delay[] settlement without rendering any consequent benefit, or can 'contribute to the common detriment by causing the [Plaintiff's Executive Committee] to incur significant additional costs,' or can 'contribute to a delay in the disbursement of settlement proceeds for all claimants' or can even cause a reduction in the amount of total settlement proceeds available.") This "type of activity can also provide the Court with grounds to reduce a common benefit fee award to zero, and even to impose sanctions." *Id.* at *4; *see also In re E. Palestine Train Derailment*, 160 F.4th at 761 (noting that this Court retains jurisdiction to "resolv[e] issues relating to or ancillary to" the settlement, including any connected orders of the court, such as the fee award.").

The Court does not need Morgan's proposed, self-serving discovery to analyze whether its nearly $8,000,000 fee allocation is now grossly disproportionate to the work done by the remaining appointed Co-Lead Counsel in the 17 months since all firms submitted their hours.

### ii. The Court has information sufficient to determine whether Co-Lead Class Counsel applied the allocation system objectively in determining Morgan's fee allocation

The Court's Order already considered the *general* process by which all attorney fees were distributed. As it acknowledged:

11

> [T]he [allocation] model . . . is based on an objective number at the starting point . . . from the objective number, Co-Lead Counsel backed out the first level of document review hours for every firm to arrive at a flat rate for all non-document review hours. Every first level document review hour was treated the same for every single law firm to which it was applied, a $150 per hour rate . . . all non-document review hours were weighted by applying multipliers to them. Different multipliers were applied for different law firms based on whether they were a Co-Lead Counsel, a member of [a committee] and so on. Multipliers were assessed based in part on which law firms had a greater role in contributing to the funding of the litigation. After that, the type of work was given a multiplier, which was applied equally to all firms without regard to whether the attorney was a Co-Lead Counsel, [a committee member], and so on . . .

While the Court may not have directly addressed Morgan's specific fee allocation it in its Order, it clearly already has the information it needs to consider the debated issue of whether this process was objectively and fairly applied to Morgan. Despite its best efforts, Morgan's attempt to conflate the validity of the methodology and process with the question of whether its specific fee award is the objective result of the same is simply unavailing and unsupported by both this Court and the Sixth Circuit's decisions.

The Court knows that Co-Lead Class Counsel used the number of approved hours through August 23, 2024, as a calculation starting point for Morgan the same as it did for all firms. (ECF No. 986 at 7:24-8:5). Co-Lead Counsel noted that despite Morgan's deviations from the billing guidelines, all of their non-duplicative time submitted by August 23, 2024, was considered for approval. (ECF No. 986 at 8:6-24). For all firms, including Morgan, the document review hours were subtracted from firm's total hours and assigned a flat rate of $150; for Morgan specifically, this meant that their 370 approved document review hours were calculated at $150 each. (ECF No. 986 at 8:24-9:10). All firms were given a multiplier on non-document review hours based on their leadership role in the litigation, and Morgan's hours, specifically, were given the same leadership multiplier as the three other Co-Lead Counsel's firms. (ECF No. 986 at 9:15-25, 11:6-10). Co-Lead Class Counsel then explained that non-document review hours were weighted differently by

category, and the same multipliers were applied across firms, including Morgan. (ECF No. 986 at 9:25-10:9). Hours submitted by any firm for work done on behalf of that firm's individual clients throughout the litigation were not compensated.[5] (ECF No. 16-20).[6] After Co-Lead Class Counsel applied these objective multipliers to Morgan's hours, its weighted hours totaled just over 10,000. (ECF No. 986 at 11:11-13). All weighted hours were assigned just over $766 in value. (ECF No. 986 at 11:13-16). Hence, Morgan's fee allocation totaled $7,723,709.87. There is no fact in discovery that will alter Morgan's relatively low hours in this litigation or that its fee award is based on the objective quantity and quality of its contribution to this litigation. Discovery is not warranted on this basis.

> **b. Morgan uses this Motion to improperly re-iterate its position that this Court should not delegate allocation of attorneys' fees to Co-Lead Class Counsel.**

Morgan's motion is a back-door attempt to resurrect its denied requests for the Court to order "transparency," and give Morgan a role in the allocation process, rather than delegating the authority to determine initial allocations exclusively to Co-Lead Class Counsel; arguments the Sixth Circuit has already decided and ruled against.

The Sixth Circuit explicitly found no error in this Court's decision to delegate initial allocation authority exclusively to Co-Lead Class Counsel, noting it was obvious the Court "empowered co-lead class counsel to make the initial allocation decisions due to their familiarity with the work of each firm in the litigation," and it was "obvious" why the Court made this

---

[5] However, hours incurred as part of the settlement process for assisting individual class members at the Claims Center or at other assistance centers in the community, including those operated by participating law firms, were compensated and awarded enhancements for the salutary effect they had on generating the historic claims rates seen across the entire Class.

[6] As noted *supra*, the vast majority of Morgan's hours were submitted during the claims period in connection with completing claims for roughly 200 of its individual clients.

delegation decision. *In re E. Palestine Train Derailment*, 160 F.4th 751, 761 (6th Cir. 2025). It found no error in the Court's decision to let "lead counsel initially allocate fees while 'retain[ing] the ultimate power to review' any challenges to those allocations" and noted this was not unusual or inappropriate. *Id.* It found no error in the Court's decision to leave the allocation decision to Co-Lead *Class* Counsel, as Morgan's "work was adjacent to the core of the case." *Id.* The only issue remanded concerned the Court's consideration of Morgan's "challenge to its individual allocation." *Id.* Morgan's Motion flies in the face of this Court's previous Order and the Sixth Circuit's affirmation of the same. It does not limit its discovery requests to its own individual allocation or whether the methodology was objectively applied to determine its own fee; instead, it seeks to siphon the authority delegated to Co-Lead Class Counsel by requesting discovery regarding the data related to *all* distributed attorneys' fees. (*See generally* ECF No. 1050-1).

Morgan is blatant about its purpose for this discovery—it argues it "must have" access to depositions and documents relevant to how Class Counsel determined and applied hourly multipliers, so that it can provide the "audit data and multiplier rates" to the Court, which can in turn use it to determine whether the "fee allocation is fair" and verify "at a minimum, that 'Class Counsel did the math right.'" (ECF No. 1050-1 at 3). In other words, Morgan is asking the Court to retract its delegation of authority and instead conduct the calculation and allocation of fees itself, with Morgan double-checking those calculations; the Court has already clearly and expressly declined Morgan's invitation for such an arrangement. (ECF No. 689). In support, Morgan disingenuously characterizes the Sixth Circuit's opinion as "recognizing [] it is impossible to validate Class Counsel's representation without first seeing the audit data and multiplier rates," but cites *only* to the *concurring* opinion for that proposition. (ECF No. 1050-1). The majority made no such ruling.

14

Unable to cite the Sixth Circuit's controlling opinion here, Morgan instead mischaracterizes a First Circuit opinion for the premise that this Court must allow its discovery requests "to satisfy due process." But the opinion it cites actually found this argument to be "without merit" because the court allowed each group of disgruntled plaintiffs' lawyers an equal opportunity to be heard regarding their fee allocation and present their case in the "same manner as their litigation adversaries." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995). Here, Morgan submitted its written motion and brief, and was given an opportunity to be heard before the Court during a telephonic hearing, lasting over an hour, in which it argued it position and answered the Court's questions; there are no due process concerns. (ECF No. 986). Further, the First Circuit determined that the court was not required to convene an evidentiary hearing as "the parties in a fee dispute do not have the right to an evidentiary hearing on demand," and "[w]hen the written record affords an adequate basis for a reasoned determination of the fee dispute, the court in its discretion may forgo an evidentiary hearing," and even noted "[t]he due process clause does not require freewheeling adversarial discovery as standard equipment in fee contests." *Id.* at 303-04 (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1329 (D.C. Cir. 1982) ("The trial court retains substantial discretion based on its view of the submissions as a whole to guide any further inquiry.")). Morgan's due process is not at risk here, and it should not be granted discovery on that basis.

## IV. CONCLUSION

For the foregoing reasons, Co-Lead Class Counsel respectfully request the Court deny Morgan & Morgan's Motion for Leave to Seek Discovery from Co-Counsel Related to Calculation and Allocation of Fees.

15

Dated: April 3, 2026

Respectfully submitted,

*/s/ M. Elizabeth Graham*
M. Elizabeth Graham (pro hac vice)
**GRANT & EISENHOFER P.A.**
123 S. Justison Street, 6th Floor
Wilmington, DE 19801
303-622-7000
303-622-7100 (fax)
egraham@gelaw.com

Seth A. Katz (pro hac vice)
**BURG SIMPSON ELDREDGE HERSH
& JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
303-792-5595
303-708-0527 (fax)
skatz@burgsimpson.com

Jayne Conroy (pro hac vice)
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor New York,
NY 10016
212-784-6400
212-213-5949 (fax)
jconroy@simmonsfirm.com