PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:  EAST PALESTINE TRAIN
DERAILMENT

)
)
)
)
)
)
)
)
)
)

CASE NO.  4:23CV0242

JUDGE BENITA Y. PEARSON

**MEMORANDUM OF OPINION
AND ORDER**
[Resolving ECF Nos. 993 and 994]


On September 25, 2025, Attorney Jedidiah I. Bressman, on behalf of 144 class members,[1]

filed a Motion for Relief From Judgment Pursuant to Fed. R. Civ. P. 60(b)(3), (b)(6), and (d)(3)

(ECF No. 993).  Four (4) days later, Attorney Bressman, on behalf of 52 class members,[2] filed a

second Motion for Relief From Judgment Pursuant to Fed. R. Civ. P. 60(b)(3), (b)(6), and (d)(3)

(ECF No. 994).  The two motions make similar substantive arguments.  These class members

move the Court for relief from the Order (ECF No. 557) granting Plaintiffs' Motion for Final

Approval of Settlement, entered on September 27, 2024.  ECF No. 557 approved the Class

---

[1] A four-page list of these class members whom opted in for the "Voluntary Exposure Supplement" or "Personal Injury Payment" is attached as Exhibit 1 (ECF No. 993-2).  The list provides names with no other identifying information.  One of the class members, Tamara Lynn Freeze, is one of the five objectors that appealed in *In Re East Palestine Train Derailment*, 158 F.4th 704 (6th Cir. 2025) (ECF No. 1019), *cert. denied*, No. 25-929, 2026 WL 568332 (March 2, 2026) (Mem) (ECF No. 1049).

[2] A two-page list of these class members whom also opted in for the voluntary exposure personal injury supplement is attached as Exhibit 1 (ECF No. 994-2).  This list also provides names with no other identifying information.

(4:23CV0242)

Action Settlement Agreement (ECF No. 452-2).  That Order, in relevant part, allowed for class

members to voluntarily participate in a fund designed to compensate those class members

presumptively exposed to toxins as a result of the February 2023 train derailment.  The

"Voluntary Exposure Supplement" or "Personal Injury Payment" is the only category of payment

Movants raise an issue with in the within motions, as they now seek to be released from the

voluntary contract they signed in exchange for such payment.  They ask the Court to "[p]rohibit

enforcement of Personal Injury opt-ins and releases signed by movants." ECF No. 993-1 at

PageID #: 68936.[3]  Thirteen (13) of the Movants seek a rescission of the personal injury releases

that they voluntarily and individually signed in exchange for compensation.  For the reasons that

follow, the Court finds that the Movants have not established a basis for relief from judgment

under Rule 60(b)(3), (b)(6) or (d)(3).

**I.**

Class Counsel reviewed over a million documents in discovery, including information

about environmental contamination and cleanup.  *See* Declaration of M. Elizabeth Graham (ECF

No. 518-2) at PageID #: 10949, ¶ 27; Declaration of Seth A. Katz (ECF No. 518-3) at PageID #:

11060, ¶ 27.  They facilitated a comprehensive environmental sampling and testing program

designed to collect data, on which Plaintiffs' experts relied in determining chemical exposure.

*See* Transcript of Fairness Hearing (ECF No. 553) at PageID #: 14487.  Class Counsel also

consulted with and retained numerous experts on topics including chemistry, toxicology,

epidemiology, medical monitoring, pulmonology, and oncology, to advise them about

---

[3]  For conciseness, the Court has cited only to the memorandum in support of the
first motion (ECF No. 993-1) when similar arguments appear in both memoranda.

(4:23CV0242)

information learned from discovery and the environmental sampling program.  *See* ECF No. 518-2 at PageID #: 10954, ¶ 47 (providing a longer non-exhaustive list of expert types).

Class Counsel and Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company ("Norfolk Southern") retained the services of U.S. District Judge Layn R. Phillips (retired) to mediate the claims of Plaintiffs against Norfolk Southern.  *See* ECF No. 518-2 at PageID #: 10955-56, ¶¶ 53-56.  Judge Phillips, confidentially informed by facts derived in part from the work of Plaintiffs' experts, presented a mediator's recommendation to Class Counsel and Norfolk Southern on March 6, 2024.  *See* ECF No. 518-2 at PageID #: 10957, ¶ 58. After months of negotiation, on April 9, 2024, Plaintiffs and Norfolk Southern announced a settlement in principle.  *See* Notice and Motion to Stay Deadlines (ECF No. 445); ECF No. 518-2 at PageID #: 10957, ¶ 60.  Notably, the Settlement was reached before expert reports were finalized and due to be exchanged.  *See* Order (ECF No. 432) at PageID #: 5686 ("On or before April 15, 2024, the party that has the burden of proof on an issue(s) shall identify its retained expert witness(es) and provide opposing counsel with a written expert report(s).").

The Class Action Settlement Agreement (ECF No. 452-2) was executed on April 26, 2024.  The Settlement creates a non-reversionary fund of $600 million, to be allocated among the Settlement Class Members.  The Settlement distribution includes three categories of payment: Direct Payments to individuals on a per-Household basis ("Direct Payments"); payments to businesses for Business Loss claims ("Business Loss Payments"); and optional payments to Settlement Class Members within 10 miles of the derailment who voluntarily agree to release any personal injury claims they might have in connection with the derailment by executing a release of personal injury claims ("Voluntary Exposure Supplement" or "Personal Injury Payment").  *See*

3

(4:23CV0242)

ECF No. 452-2 at PageID #: 6023-26.  The Order (ECF No. 557) granting Plaintiffs' Motion for

Final Approval of Settlement did not compel any class member to sign the personal injury release

they entered into with Norfolk Southern.  In fact, class members were informed the personal

injury releases would not impact direct payments to them.

During the notice period, Class Counsel communicated with class members about the

Settlement and their options.  Class Counsel arranged several virtual conferences or "town hall"

meetings with class members.  One such town hall led by community member and Village

Manager Chad Edwards was held on August 1, 2024.  It was recorded and the video was

provided to class members.  *See* EP Settlement Attorney PR Zoom meeting. 8/1/24 ("Town Hall

Recording"), https://www.youtube.com/watch?v=VTZpstUPR9I (last visited May 1, 2026).  This

town hall included a pre-recorded presentation by Dr. Chip Carson, a physician and Ph.D.

environmental toxicologist.  Class Counsel arranged for Dr. Carson to speak to the class

members.  Dr. Carson, however, was not compensated in any way by Class Counsel for his

opinions or for his time.  *See* ECF No. 553 at PageID #: 14477.  As explained to class members

at the town hall, Dr. Carson was "not involved in the litigation [and is] a completely independent

third party."  Town Hall Recording at 12:48-52 (brackets added).  In response to the question

"[w]hat are the health impacts associated with the chemicals released by the derailment?" he

explained, in part:

> Based on my best judgment, there will not be any long-term health impact of
> chemical exposure from the derailment to community members of East Palestine.
> As far as people just living in East Palestine or working there or in nearby
> neighboring communities, we don't expect there to be any long-term health effects
> associated with chemical exposure resulting from the derailment.

4

(4:23CV0242)

Town Hall Recording at 13:32-14:06.  Furthermore, he explained that measurable health effects depend on the toxins and characteristics of the exposure, but:

> . . . the chemical contaminations that have been clearly associated with health effects in communities have been hundreds of times greater than the measured levels that we are now finding in East Palestine.  From the derailment, the number of chemicals that have been produced and that may remain in very low levels in the East Palestine area are dwarfed by the amount of other [harmful] substances that are there. . . .

Town Hall Recording at 14:34-15:09.[4]  Dr. Carson explained that the chemicals released were carcinogenic at certain levels, "in particular, vinyl chloride," but that the levels community members were exposed to were relatively small.  Town Hall Recording at 15:20-15:46.  In response to the question, "[w]hat are the chances of someone developing an illness like cancer in the future because of this chemical exposure?",  Dr. Carson clarified:  "Well because there were some small levels of chemicals that were involved, not zero, *the risk due to those chemical*

---

[4] Dr. Carson and Class Counsel did say that the health risks are likely low based on relatively low exposure levels, which is supported by independent scientific studies done to date.  *See* Haynes et al., *Serum Dioxin Levels in a Subset of Participants of the East Palestine, Ohio Train Derailment Health Tracking Study* (June 2024) ("Together, our study demonstrates that although dioxins may have been generated during the derailment and subsequent burning of chemicals, any exposure experienced by our participants was not significantly elevated relative to historical serum dioxin levels in the United States."); UNIVERSITY OF KENTUCKY, COLLEGE OF PUBLIC HEALTH, East Palestine Health Tracking Study - Indoor Air Sampling Pilot Study ("We collaborated with an indoor air quality study led by . . . an East Palestine Resident. . . .  Overall, the [Volatile Organic Compound]s level found in this study are similar to levels found in indoor air across the US.") (brackets added; bold omitted); UNIVERSITY OF KENTUCKY, COLLEGE OF PUBLIC HEALTH, East Palestine Health Tracking Study - Wristband Pilot Study (explaining that 80 East Palestine residents wore wristbands from July 16 to July 23, 2023 to analyze their exposure, noting "[n]o dioxins were detected in any of the wristbands" (bold omitted); and that most of the chemicals the wristbands did detect were "not thought to be related to the February 2023 train derailment, subsequent burn, and cleanup"; and "we do not know if the levels measured in wristbands are associated with any health effects") (brackets added).

5

(4:23CV0242)

*exposures **is not zero either**, but it's very small*, it's much much smaller than 1%, and it's so small that it's very difficult to calculate." Town Hall Recording at 15:52-16:23 (emphasis added).  In response to the question "[h]ow would you respond to claims that it's too early to know the long-term health effects of the derailment?", Dr. Carson declared:  ". . . It's too early for some things, but it's not too early to predict the overall health effects [that] will occur from this. . . .  We pretty well know what exposures resulted from this train derailment and we can pretty well predict that people are gonna be safe in the long term." Town Hall Recording at 17:41-18:21 (brackets added).

Following Dr. Carson's presentation, Class Counsel M. Elizabeth Graham and Seth Katz, as well as Attorneys Adam Gomez and Michelle Kranz spoke.  Town Hall Recording at 18:50-56:24.

As stated above, the public announcement of the Settlement in principal occurred on April 9, 2024.  The well-publicized Settlement received extensive local and national coverage in the media at that time.  *See, e.g.*, *Some oppose Norfolk-Southern $600M settlement*, The Vindicator, April 11, 2024 (last visited May 1, 2026); *Norfolk Southern agrees to $600 million settlement in Ohio train derailment*, NBC News, April 9, 2024 (last visited May 1, 2026). "Settlement Class Members had multiple channels through which to investigate their options in this Settlement."  Order (ECF No. 510) at PageID #: 9131.

Validated testing conducted by both government regulators—U.S. EPA, Ohio EPA, the Pennsylvania DEP—and Norfolk Southern has found that the derailment resulted in only modest environmental impact that Norfolk Southern promptly and extensively remediated.  This evidence is underscored by a U.S. EPA declaration filed in support of a consent decree with the

6

(4:23CV0242)

United States. *See* Declaration of Ralph Dollhopf (ECF No. 162-2) at PageID #: 2494-95, ¶¶ 41-42 (air testing); PageID #: 2490-91, ¶¶ 32-33 and PageID #: 2488-89, ¶ 25 (soil testing); PageID #: 2492-93, ¶¶ 37-38 (groundwater and drinking water); PageID #: 2496-97, ¶¶ 44,49 and PageID #: 2499, ¶ 54 (surface water) in *State of Ohio v. Norfolk Southern Corp.*, No. 4:23CV0517 (N.D. Ohio filed March 14, 2023) (enforcement actions brought by government plaintiffs under CERCLA and Ohio laws to recover, *inter alia*, natural resources damages and CERCLA cleanup oversight costs).[5]

Objectors subsequently challenged the Settlement in the case at bar:

- Rev. Joseph Sheely's Objection to Class Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement (ECF No. 485);

- Jami R. Wallace's Objection to Class Settlement Agreement and Motion to Enlarge Time to Opt Out of Property Portion of Class Settlement Agreement (ECF No. 486);

- Statement of Objections of 36 Class Members (ECF No. 487-2);

- Jennifer Gray's Statement of Objections (ECF No. 489-2);

- Traci Mascher's Objections (ECF No. 490);

- Gregory Mascher's Objections (ECF No. 491);

- Tamara Lynn Freeze's Objections(ECF No. 493);

---

[5] "The United States and Norfolk Southern reached agreement on a settlement, which was lodged with the Court on May 23, 2024, and which the United States moved the Court to enter on October 10, 2024." ECF No. 308 at PageID #: 15132 in No. 4:23CV0517. The Consent Decree Between Plaintiff United States of America and Defendants includes a requirement for Norfolk Southern to pay for health monitoring and mental health services for the surrounding communities. *See* ECF No. 138-1 at PageID #: 2280-85 in No. 4:23CV0517.

(4:23CV0242)

- Rev. Joseph Sheely and Jami R. Wallace's Reply to Class Plaintiffs' Response in Opposition to Objectors' Request for Enlargement of Time to Opt-Out (ECF No. 508);

- Response to Motion for Final [Approval] of Settlement and Objectors' Brief in Support of Objections (ECF No. 529);

- Declaration of Stephen Petty (ECF No. 534);

- Declaration of Scott Smith (ECF No. 536);

- Affidavit of Dr. George Thompson (ECF No. 537);

- Declaration of Stephen Petty (ECF No. 540);

- Supplemental Declaration of Scott Smith (ECF No. 542);

- Rev. Joseph Sheely's Motion for Leave to File Supplemental Objection to Settlement Post-Deadline (ECF No. 543);

- Affidavit of Robert Kroutil (ECF No. 547), and,

- Declaration of Lesley Pacey (ECF No. 550).[6]

Class Counsel also filed a Notice of Filing of Written Objections to Class Action Settlement Agreement (ECF No. 516).  The Notice was filed pursuant to Section VII(D) of the Class Action Settlement Agreement.  *See* ECF No. 452-2 at PageID #: 6017.  A 3-ring binder contains Objections received by the former Settlement Administrator, Kroll Settlement Administration, LLC.

---

[6] On July 2, 2024, Attorney David M. Graham was admitted *pro hac vice* for purposes of appearing and presenting as counsel for and on behalf of Jami Wallace.  *See* Order (ECF No. 488).  ECF Nos. 485, 486, 508, 534, 536, 537, 540, 542, 543, 547, and 550 were all filed by Attorney Graham.  He appeared in person and was in the courtroom during the fairness hearing, but stated he did not intend to address the Court.  *See* Non-document Minutes of Proceedings dated Sept. 25, 2024; ECF No. 553 at PageID #: 14433-34.

8

(4:23CV0242)

At the fairness hearing conducted on September 25, 2024, Objectors raised the same issues that are raised in the within motions.  They argued:

> But this is real injury to real people.  And the risk that we run here, if you even look at Stephen Petty's declaration, he says it's too soon.  You can't make these decisions.  We don't know enough.
>
> But we do know the numbers are not correct.  That when Mr. Carson was telling people in the community that the numbers that were collected were within acceptable limits, we now know that that's not the case.
>
> So if people made decisions on filing in the personal injury case or agreeing to the settlement based upon information that wasn't complete, then they didn't have informed information and it would be unfair to them to settle this case.

ECF No. 553 at PageID #: 14459.

> Now, one last thing I would ask the Court is that I think it would be helpful that Stephen Petty be permitted to lift the handcuffs, the confidentiality that is around him that he referred to in averment number 6 in his declaration.

ECF No. 553 at PageID #: 14464; *see also* ECF No. 534 at PageID #: 11627, ¶ 6.  In response to this request, the Court queried and learned that Mr. Petty (1) did not attend the hearing to voice his concerns or observe, and (2) was not handcuffed, so the Court rejected the request.  *See* ECF No. 553 at PageID #: 14464-65.

At the hearing, Class Counsel addressed the Objectors' concerns and explained that Mr. Petty's position was not new:

> . . . what is contained in those declarations, and we've read them all, is not new to class counsel.  And indeed, it is not new to this Court.  They were submitted -- with the exclusion of Mr. Petty's declaration, they were submitted to Your Honor in support of a motion to enlarge time, which this Court denied.
>
> We are well aware of what Mr. Petty says.  He is one voice.  And we understand his methodology and his testing that was done.  We have scores of other experts.  And, again, detailed in the declaration of Richard Schuhmann.  We have done our homework.

9

(4:23CV0242)

> So this is not some smoking gun that we didn't uncover. This is not something that wasn't out in the public domain. This isn't something that we're trying to hide. It's simply additional testing.

ECF No. 553 at PageID #: 14486. At the fairness hearing, Class Counsel also affirmatively conceded that the future risks from exposure to the toxic chemicals are somewhat unknown. Attorney M. Elizabeth Graham stated: "We didn't offer [Dr. Carson's video] as evidence. We knew this. We've spoken to other doctors as well. What we did know is that the risk is uncertain, and that the types of diseases that are connected to the types of toxins that were on the railcars result, if ever, in symptoms decades down the road, because the latency period is such that you have to wait to see what's going to happen." ECF No. 553 at PageID #: 14479 (brackets added). But what is known is that the latency period for an injury caused by the exposure to toxins at the levels suffered by certain factions of the East Palestine community is not weeks or months; it is decades. *See* Ezkenazi, *et al.*, *The Seveso accident: A look at 40 years of health research and beyond* (Dec. 2018) (ECF No. 1003-3).

During the hearing, Attorney Graham also declared: "We have never proffered any information to suggest that there is zero risk to this community." The Court then asked whether the Town Hall Recording "suggests no worries, no illness will befall any of you, did that happen?" ECF 553 at PageID #: 14477. Attorney Graham responded, in part: "[Dr. Carson] didn't say there was zero risk. What he said is the likely risk. And again, he is an occupational and industry medicine doctor. What he said was that the likely risk is unknown and that it is likely very low, in his opinion." ECF No. 553 at PageID #: 14478 (brackets added). Finally, Attorney Graham stated:

10

(4:23CV0242)

> So I can tell the Court, as you may recall, we had a sampling protocol that Mr. Katz and I negotiated early on with the Defendants, and we adhered to it. *We didn't rely on EPA data.* We went out and we did our own testing. We did split samples. We eliminated background levels. We did everything that we were supposed to do.

ECF No. 553 at PageID #: 14487 (emphasis added).

At the conclusion of the fairness hearing, the Court specifically found that the Settlement was "entered into with good faith and is *free of fraud* or collusion." ECF No. 553 at PageID #: 14536 (emphasis added). The Court also found the Settlement was "fair, adequate, and reasonable" and "overrule[d] all objections made to the settlement." ECF No. 553 at PageID #: 14537. The Order granting Plaintiffs' Motion for Final Approval of Settlement also considered and "overrule[d] all objections to the fairness, adequacy, or reasonableness of the Settlement." ECF No. 557 at PageID #: 14584, ¶ 15.

On September 27, 2024, Attorney David M. Graham,[7] on behalf of Objecting Settlement Class Member Rev. Joseph Sheely, filed a Notice of Appeal (ECF No. 558) from ECF No. 557. *See In re:  East Palestine Train Derailment*, No. 24-3852 (6th Cir.). Eleven (11) days later and after Rev. Sheely made public statements that he did not authorize the filing of ECF No. 558,

---

[7] According to Class Counsel, Attorneys Jedidiah and David Bressman frequently work in tandem with Attorney David Graham on environmental cases across the country. *See* ECF No. 1003 at PageID #: 69125 n. 1. Bressman Law's website publicizes this close working relationship. Of the seven (7) "active" cases advertised on bressmanlaw.com, Attorney Graham is co-counsel on at least three. *See* Screenshots of "Active Cases" from bressmanlaw.com (ECF No. 1003-1). It is worth noting that Attorneys Jedidiah and David Bressman do not acknowledge or disclose this working relationship in ECF Nos. 993 and 994.

In December 2025, Attorney Jedidiah Bressman, on behalf of 33 plaintiffs, filed another case in an Ohio state court over the East Palestine train derailment and exposure to toxic chemical contamination. *See Tsai v. Norfolk Southern Railway Co.*, No. 2025 CV 00614 (Columbiana Cnty. Ct. Common Pleas filed Dec. 12, 2025).

(4:23CV0242)

Attorney Graham, on behalf of Objecting Settlement Class Members Zsuzsa Troyan, Tamara

Freeze, Sharon Lynch, and Carly Tunno, filed a Notice of Appeal (ECF No. 570) from ECF No.

557.  *See In re:  East Palestine Train Derailment*, No. 24-3880 (6th Cir.).

On November 5, 2025, the United States Court of Appeals for the Sixth Circuit dismissed

the Objectors' appeal of the motion to extend time to appeal bond order for lack of jurisdiction,

and granted the motion to dismiss the Objectors' appeals of the Settlement.  *In Re East Palestine*

*Train Derailment, supra* (ECF No. 1019).  On December 2, 2025, the Clerk of the Sixth Circuit

issued the mandate pursuant to Fed. R. App. P. 41 (ECF No. 1041).[8]  Objectors' petition for writ

of certiorari was subsequently denied.  *Sheely v. Feezle*, No. 25-929, 2026 WL 568332 (March 2,

2026) (Mem) (ECF No. 1049).

---

[8]  *See Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1380 (Fed. Cir. 2003) ("all appellate
judgments are returned to the district court for entry and implementation; the district court
regains jurisdiction when the appellate mandate issues"); *see also* 16AA Charles Alan
Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3987 (5th ed. Sept. 2025
Update) ("Until the mandate issues . . . the case ordinarily remains within the jurisdiction
of the court of appeals and the district court lacks power to proceed further with respect to
the matters involved with the appeal.") (footnotes omitted).  Thus, under most
circumstances "a federal district court and a federal court of appeals should not attempt to
assert jurisdiction over a case simultaneously."  *Griggs v. Provident Consumer Discount
Co.*, 459 U.S. 56, 58 (1982).

(4:23CV0242)

Ten (10) of the Movants (in the matter at bar) have already received and negotiated a check,[9] and three (3) others have received direct deposits[10] in exchange for their personal injury releases.

**II.**

The Order (ECF No. 557) granting Plaintiffs' Motion for Final Approval of Settlement was entered on September 27, 2024.  ECF Nos. 993 and 994, however, were not filed until September 25, 2025 (363 days after) and September 29, 2025 (367 days after), respectively.

Motions based on Fed. R. Civ. P. 60(b)(3) must be filed "no more than a year after the entry of the judgment or order."[11]  Motions under Rule 60(b)(6) must be filed "within a reasonable time."  Fed. R. Civ. P. 60(c)(1); *see also Shine-Johnson v. Warden, Belmont Corr. Inst.*, No. 2:20-cv-1873, 2023 WL 7128678, at *4 (S.D. Ohio Oct. 30, 2023) ("Motions under 60(b)(6) . . . must be brought within a 'reasonable' time which, according to the circumstances, could be more or less than a year.") (citing Rule 60(c)(1); *Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009)).  What is reasonable "'depends on the facts of a given case including the length

---

[9]  Barbara Adams ($2,480.63), Neko Figley ($25,000), Deborah Stanley ($16,875), Bryon Buhecker ($18,750), Ian Baker ($9,375), Karen Baker ($8,437.50), Alan Dean Cope ($31,007.81), Larry Baker ($10,125), Breana Nalesnik ($25,000), and Patricia Micco ($1,800).  *See* Checks (ECF No. 1003-2).

[10]  Lindsay Kuzemchak ($22,500), Nicholaus Kuzemchak ($22,500), and Kristy Munyon ($18,750).

[11]  A year after the entry of the judgment or order in the present case was September 27, 2025, which was a Saturday.  When the last day of a period stated in days falls on a Saturday, Sunday, or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1)(c).  Therefore, the cutoff for filing a Rule 60(b)(3) motion was extended to Monday, September 29, 2025.

13

(4:23CV0242)

and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief.'" *Thompson*, 580 F.3d at 443 (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). "[T]his time bar does not apply to Rule 60(d), which imposes no time limit on a court to 'set aside a judgment for fraud on the court.'" *Evans v. City of Ann Arbor, Mich.*, No. 22-1774, 2023 WL 5146731, at *7 (6th Cir. Aug. 10, 2023) (quoting Rule 60(d)).

"'[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (quoting *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir.2001)). Finality considerations are "even more pressing in the class action context" because of the number of people the final judgment affects. *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 647 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981) (per curiam), *cert. denied*, 454 U.S. 1126 (1981). "The purpose of a Rule 60(b) motion . . . is to permit a district court to reconsider its judgment when that judgment rests on a defective foundation." *Koe v. Univ. Hosps. Health Sys., Inc.*, No. 1:22CV1455, 2023 WL 10352931, at *1 (N.D. Ohio Oct. 18, 2023). "A proper Rule 60(b) motion 'attacks not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal [ ] proceedings.'" *U.S. ex rel. Oakes v. Cinnaire*, Nos. 20-1911/1938, 2020 U.S. App. LEXIS 38037, at *3 (6th Cir. Dec. 4, 2020) (brackets in original) (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005))). It "'does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by

14

(4:23CV0242)

presenting new explanations, legal theories, or proof.'" *Arsan v. Keller*, 784 Fed.Appx. 900, 917 (6th Cir. 2019) (quoting *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001)).

Under Fed. R. Civ. P. 60(b)(3), a district court may relieve a litigant from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an *opposing party*." (emphasis added)  The moving party must show fraud by clear and convincing evidence.  *See Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).  Under Rule 60(b)(3), "[f]raud is the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Id.* at 456 (citations omitted).  "In both the 60(b)(3) and 60(d) contexts, the Sixth Circuit has explained that allegations that a party fraudulently concealed certain information in settlement negotiations do not rise to the level of fraud required by the rule, absent clear and convincing evidence of either affirmative misrepresentations or a deliberate breach of a duty to disclose." *Hunter v. Sterling Mortg. & Inv. Co.*, No. 21-1496, 2022 WL 633845, at *4 (6th Cir. March 4, 2022).

Fed. R. Civ. P. 60(b)(6), a residual catch-all provision, allows movants to move for "any other reason that justifies relief." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 206 (2025) (quoting Rule 60(b)(6)).  It is well settled that relief under Rule 60(b)(6) is to be granted "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989); *see also Franklin v. Jenkins*, 839 F.3d 465, 472 (6th Cir. 2016) (quoting *Olle*, 910 F.2d at 365) (same).  "'This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved.'" *BLOM Bank*, 605 U.S. at 213 (quoting *Gonzalez v. Crosby*, 545

15

(4:23CV0242)

U.S. 524, 535 (2005) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 873 (1988) (Rehnquist, C. J., dissenting))).  "The principal purpose of Rule 60(b)(6) is to deal with unforeseen contingencies." *In re Durkalec*, 21 B.R. 618, 620 (Bank.E.D. Pa. 1982).

Fed. R. Civ. P. 60(d), like Rule 60(b)(3), allows a district court to set aside a judgment for fraud.  *Hunter v. Sterling Mortg. & Inv. Co.*, No. 19-13814, 2021 WL 1087654 (E.D. Mich. March 22, 2021), *aff'd*, 2022 WL 633845 (6th Cir. March 4, 2022).  "Since attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the court." *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) (citing *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972)).  Allegations of attorney misdeeds, however, are "serious charge[s] and ought not to be recklessly made without substantial support." *Id.* at 1118-19.

Fraud on the court is "conduct:  1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court." *Carter*, 585 F.3d at 1011 (citing *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993)).  Fraud on the court must be proved by clear and convincing evidence. *Id.* (citing *Info-Hold*, 538 F.3d at 454).  Moreover, fraud on the court applies to "only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 Fed.Appx. 65, 71 (6th Cir. 2012) (quoting *Demjanjuk*, 10 F.3d at 352) (quoting 7 Moore's Federal Practice and

16

(4:23CV0242)

Procedure ¶ 60.33))).  Finally, under Fed. R. Civ. P. 60(d), "'the level of fraud or misconduct'

alleged must be 'several notches of severity above that required for a Rule 60(b)(3) motion[.]'"

*Hunter*, 2022 WL 633845, at *4 (brackets in original) (quoting *Giasson Aerospace Sci., Inc. v.

RCO Eng'g, Inc.*, 872 F.3d 336, 340 (6th Cir. 2017) (quoting *Ballew v. U.S. Dep't of Just.*, 244

F.3d 138 (5th Cir. 2000) (unpublished table decision))).

## III.

### A.

Movants raise several related concerns:  (1) EPA testing contains inaccurate information

about the environmental impacts and associated health risks stemming from the derailment; (2)

Dr. Carson provided incorrect information about health risks; (3) expert reports in the litigation

were not disclosed because of the Settlement; and, (4) class members did not have enough

information to make informed decisions about the Settlement.  They, however, do not raise any

new issues in the within motions.  ECF Nos. 993 and 994 rely on materially the same information

that was publicly aired well before the fairness hearing, argued in briefs, and then re-aired at the

fairness hearing in September 2024.  In approving this Settlement, the Court has already

overruled the exact objections to the settlement raised in the within motions.  The factual and

procedural background of the case at bar demonstrates that Movants' arguments fail now, just as

they have before.  The Objections considered and overruled by the Court in approving the

Settlement mirror the allegations now raised by Movants.  The information Movants rely on is

not new to Class Counsel, the Settlement Class or the Court.

Movants, without any basis or support, claim that the conclusions in the Declaration of

Richard J. Schuhmann, Ph.D. (ECF No. 518-10) are completely based on flawed EPA data, not

17

(4:23CV0242)

the testing of Plaintiffs' own experts, and that Dr. Schuhmann ignored Plaintiffs' testing data.

*See* ECF No. 993-1 at PageID #: 68931.  Movants argue that Class Counsel "claimed

independence from EPA data" to the Court "while relying on it."  ECF Nos. 993-1 at PageID #:

68933.

Class Counsel responds that they spent a significant amount of resources and time

conducting the soil sampling program – attorneys from Class Counsel law firms were present for

every sample collected.  *See* ECF No. 518-3 at PageID #: 11062, ¶ 35.  Dr. Schumann reviewed

data from the sampling program in East Palestine; his declaration notes its existence and his

conclusions drawn from it.  *See* ECF No. 518-10 at PageID #: 11188, ¶ 6; PageID #: 11190,¶¶ 14

and 16.  He compared the data collected from the soil sampling program against background

levels of dioxins/furans from the EPA in the East Palestine area.  *See* ECF No. 518-10 at PageID

#: 11190, ¶ 17.  The record, therefore, shows that the results of the dioxins/furans collected by

Class Counsel's program were compared against EPA data.  Neither Class Counsel nor Dr.

Schuhmann ignored Plaintiffs' own sampling program data.

Movants argue Class Counsels' and Defendants' deliberate act to settle the class action

before expert reports were disclosed represents a calculated strategy to prevent class members

from learning the truth about contamination and health effects.  But they do not cite to any case

in support of their contention that failing to provide expert work product amounts to fraud or

misconduct justifying relief from the Settlement.  The record here readily distinguishes the

present case from the handful of cases Movants cite in the second (but not the first) motion that

relief under Fed. R. Civ. P. 60(b)(3) is warranted here.  *See* ECF No. 994-1 at PageID #:

69041-42.  *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978), *MMAR Grp., Inc. v. Dow*

18

(4:23CV0242)

*Jones & Co.*, 187 F.R.D. 282 (S.D. Tex. 1999), and *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354 (5th Cir. 2018), each involved case-dispositive information that was improperly withheld in discovery.

The within motions are nothing more than an improper repetition of the exact objections addressed in *In Re East Palestine Train Derailment, supra*.  The within Motions rely on the same arguments and supporting evidence presented in previous filings in the district court and the Sixth Circuit, which have already been considered and rejected.  According to the Court of Appeals, "[a]mong other problems, [the objectors] hadn't shown that they were likely to succeed on the merits" of their claims.  *In Re East Palestine Train Derailment*, 158 F.4th at 709 (brackets added).  Moreover, the Court of Appeals found "the objectors are unlikely to succeed on the merits of their challenge to . . . the reasonableness of the settlement.  *Id.* at 713.  The Court of Appeals reasoned that

> [t]he likelihood-of-success factor cuts against the objectors.  Settlement was "particularly sensible" because continued litigation would have significantly delayed residents' resettlement payments without any certainty of yielding a larger award.  And the objectors don't raise issues likely to alter that settlement calculus.  The gist of their argument is that the district court and class counsel failed to review, credit, and disseminate expert declarations and soil-sampling data about the long-term hazards from environmental toxins.  But the class members' expert reviewed the environmental data and reached an informed conclusion about the levels of toxicity in the soil.  *See* R. 553, Pg. ID 14486-87 (explaining negotiated soil-sampling protocols); R. 518-10, Pg. ID 11186-91.  The existence of contradictory evidence from the objectors' private report does little to undermine the conclusions of the parties' expert.  At the end of the day, the parties settled precisely because they felt that $600 million adequately compensated injured individuals given the balance of conflicting evidence.  The objectors can't explain why adding more conflicting evidence to a billowing record would move the needle during renewed settlement negotiations.

19

(4:23CV0242)

*Id.* at 713-14 (citations omitted). In their briefing[12], Movants do not articulate how a difference

in opinion held by Scott Smith, Stephen Petty, and Dr. Carson amounts to fraud. They also do

not cite to any case in support of their argument that failing to provide expert work product

amounts to fraud or misconduct justifying relief from settlement. The Court of Appeals opined

that

> . . . the class seems largely satisfied: Just 0.18% of eligible households and 0.31%
> of eligible businesses opted out, while more than 54,000 households—especially
> those closest to the derailment—have already filed claims. The discovery,
> mediation, and settlement process was complex, expensive, and exhaustive, and
> the class's counsel, representatives, and absent members all support the
> agreement.

*Id.* at 714. The Sixth Circuit also concluded "the parties are prejudiced by the delay in

distributing the settlement. . . . *Id.*

> . . . objectors' appeals have delayed disbursement of the settlement funds to about
> 55,000 injured claimants. As of September 2024, close to 80% of households
> within 2 miles of the derailment site and about 28% of those within 20 miles had
> filed claims. By contrast, only 86 of the approximately half million eligible class
> members filed timely objections. Thus, the objections of less than 0.01% of the
> class now delay the disbursement of direct cash payments to many of the
> claimants. And those payments are critically important. They will compensate
> residents near the derailment site for "loss of use and enjoyment, emotional
> distress, inconvenience, relocation, [and] medical monitoring" stemming from
> their exposure to dangerous chemicals and will reimburse businesses for "net
> business loss." R. 553, Pg. ID 14493-95, 14500. The delay therefore poses
> overwhelming prejudice by endangering residents' health and the community's
> financial stability.

*Id.* at 712 (citation omitted).

---

[12] *See* ECF Nos. 993 and 994.

(4:23CV0242)

**B.**

Movants seek relief under Rule 60(b)(3) and (d)(3), alleging Class Counsel[13] misrepresented or fraudulently concealed health impacts to the class members. *See* ECF No. 993-1 at PageID #: 68934. The record, however, decisively supports the fairness of the Settlement. In approving the Settlement, the Court reviewed extensive briefing and conducted a fairness hearing, at which it heard thorough arguments from the parties, posed questions to Class Counsel, and addressed each Objector's arguments. Objectors relied heavily on the claims of Scott Smith and Stephen Petty, purported experts in environmental testing and exposure, as well as George Thompson, Ph.D., a purported toxicology expert. *See, e.g.*, Affidavit of Dr. George Thompson (ECF Nos. 508 at PageID #: 9097-9102; 537, and 551-6). Their views of potential contamination and health risks were aired in public filings between July and September 2024. The Court also considered the Declaration of Judge Phillips (ECF No. 518-5), who served as the mediator and made the recommendation that resulted in the Class Action Settlement. The Court also issued an Order (ECF No. 557), which specifically addressed and overruled the Objections, and approved the Settlement.

**C.**

Objectors to final approval specifically argued, as do Movants now, that Class Counsel "fraudulently" concealed testing results. Movants call upon asserted "concealed expert

---

[13] A Rule 60(b)(3) challenge may not be brought by Movants against Class Counsel, as they are not an "opposing party." *See Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1102 (9th Cir. 2006) (finding no error in the district court's denial of Rule 60(b)(3) relief because the appellant sought Rule 60(b)(3) relief based on fraud by her own former legal counsel, who was "not an adverse party").

21

(4:23CV0242)

conclusions, false health assurances to vulnerable class members, and material

misrepresentations to this Court," arguing that a "pattern" of conduct "warranting relief under

Rule 60(b)(3)" also warrants relief under Rule 60(b)(6). ECF No. 993-1 at PageID# 68935-36.

Movants, however, have not identified any conduct constituting fraud, let alone a "pattern."

Simply asserting that there may be conflicting opinions among professionals about the severity of

the health risks does not result in fraud.  And they must identify "'something more' than one of

the grounds contained in Rule 60(b)'s first five clauses." *Olle*, 910 F.2d at 365 (quoting *Hopper,*

867 F.2d at 294)).  Finally, a party that fails to meet subsection (b)(3) cannot use (b)(6) as a

backup.  *See, e.g.*, *King v. United States*, 143 F.4th 705, 711 (6th Cir. 2025) ("it clearly would be

inappropriate to invoke subsection (b)(6) to grant relief that is foreclosed under subsection

(b)(1)") (quoting *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586,

596 (6th Cir. 2002)).  In *King*, the Sixth Circuit found "[t]he district court properly denied the

[Rule 60(b)] motion . . . because King's asserted basis for reopening amounted to a

straightforward claim of either attorney error or strategic miscalculation, neither of which, the

district court correctly reasoned, is a valid basis for a reopening under Rule 60." 143 F.4th at 707

(brackets and ellipses added; internal quotation marks omitted).

Movants cite *Pearson v. Target Corp.*, 893 F.3d 980 (7th Cir. 2018), for the proposition

that "Rule 60(b)(6) serves as a 'safety valve' for situations where the settlement process has been

compromised . . . [because it] can be invoked 'to protect the interests of the class.'" ECF No.

993-1 at PageID #: 68935-36.  *Pearson*, however, is readily distinguishable from the case at bar.

22

(4:23CV0242)

That appeal "[did] not concern the class settlement itself, but rather what happened after the district court approved the settlement," encompassing claims that certain objectors appealed but then "pocket[ed] a side payment in exchange for voluntarily dismissing the appeal," 893 F.3d at 982 (brackets added), with the court identifying a "real risk that they did so at the expense of the class," *id.* at 985.

### D.

Movants also seek to prohibit enforcement of personal injury opt-ins and releases signed by them under the savings clause established in Fed. R. Civ. P. 60(d)(3) because Class Counsel purportedly committed a fraud on the Court.  They cite *Valerio, supra*, in support of their contention that "[a]ffirmative misrepresentations or omissions by counsel in obtaining settlement approval may constitute fraud on the court, warranting relief." ECF No. 993-1 at PageID #: 68935.  In *Valerio*, class members (who had elected not to opt out) alleged malpractice in an effort to reopen a settlement in which they had participated.  But the district court found no fraud on the court when plaintiffs asserted *inter alia* that the attorney defendants "did not advise the court of their assessment of the merits of the case or of the actual damages sustained" and "[kept] secret from their own clients the facts concerning [the] basis for the settlement." 80 F.R.D. at 641 (brackets added).

Fraud on the court is conduct "on the part of an officer of the court" that "is directed to the judicial machinery itself"; "is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth"; "is a positive averment or a concealment when one is under a duty to disclose"; and "deceives the court." *Carter*, 585 F.3d at 1011 (citing *Demjanjuk*, 10 F.3d at 348).

23

(4:23CV0242)

This mainly includes especially egregious conduct and "such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering." *Gen. Med., 475 Fed.Appx. at 71*. And generally, "[n]ondisclosure by a party or the party's attorney has not been enough" to support a finding of fraud on the court. 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2870; *see also* 49 C.J.S. Judgments § 400 ("[N]ondisclosure to the adverse party or the court of facts pertinent to the matter before it, without more, does not constitute a fraud on the court."); *cf. H.K. Porter Co., 536 F.2d at 1118* ("Allegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court."). "Relief [under Rule 60(d)(3)] generally is reserved for circumstances in which, for example, a judge or a juror has been bribed, a bogus document is inserted in the record, or improper influence has been exerted upon the court or an attorney so that the integrity of the court and its ability to function is directly impinged." *Morawski v. United StatesDep't of Agric.*, No. 09-14568, 2010 WL 2663201, at *7 (E.D. Mich. July 2, 2010) (brackets added). Movants have not and cannot demonstrate by clear and convincing evidence that Class Counsel engaged in conduct sufficient to satisfy the stringent fraud standard of Fed. R. Civ. P. 60(d)(3).

**E.**

Movants' claims regarding Personal Injury Releases fail for additional reasons. Both sets of Movants urge the Court to prohibit enforcement of their releases. They place particular focus on the "Voluntary Exposure Supplement" or "Personal Injury Payment" category of the Settlement, which they agreed to, individually signing Personal Injury Releases. They ask the Court to "[p]rohibit enforcement of Personal Injury opt-ins and releases signed by movants."

(4:23CV0242)

ECF No. 993-1 at PageID #: 68936.  But they can point to no valid basis for that relief.  Movants do not challenge the validity of the release's terms, and the releases are binding.  Movants also do not mention that 13 of them have already received their payments in exchange for their personal injury releases.  *See* n. 9 and 10, *supra*.  These Movants specify that non-enforcement of the Personal Injury Releases is the only relief they seek.  *See* ECF No. 994-1 at PageID #: 69046 (citing *Pearson*, 893 F.3d at 986-87).  Rule 60 is not a tool to rescind a voluntary release signed in exchange for compensation.

Movants have not asserted any wrongdoing on the part of Norfolk Southern – the counterparty to the individually signed Personal Injury Releases.  As discussed above, Movants' allegations focus on Class Counsel, not Norfolk Southern.  But the releases were signed by class members individually with Norfolk Southern as the other entity participating in the transaction.  *See* Sample Personal Injury Release (Exhibit E to Class Action Settlement Agreement) (ECF No. 452-2 at PageID #: 6064-74); Austin Druckenbrod Personal Injury Release (ECF No. 993-3), signed on August 21, 2024 – before the Order (ECF No. 557) granting Plaintiffs' Motion for Final Approval of Settlement was entered in September 2024.  Druckenbrod, like the other Movants, acknowledged and agreed in the release that he was entering into the Personal Injury Release "without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of [Norfolk Southern]."  ECF No. 993-3 at PageID #: 68950.

25

(4:23CV0242)

Claims of purported misconduct by Class Counsel have no bearing on the validity of these contracts between class members and Norfolk Southern. *See, e.g.*, *Integrated Pipe & Supply, LLC v. Critical Path Res., Inc.*, No. 4:23-CV-02006, 2024 WL 554151, at *2-3 (S.D. Tex. Feb. 12, 2024) ("[D]uress or undue influence from a party's own attorney, rather than from another party to a settlement agreement, does not constitute grounds for the Court to set aside the settlement agreement. . . .  [F]raud perpetrated by a third-party will not afford a ground for cancellation or rescission, absent a showing that the other party to the contract participated in the fraud.") (citations omitted); *Regenold v. Baby Fold Inc.*, 369 N.E.2d 858, 867 (Ill. 1977) ("The general rule in contract cases holds that the validity of the contract is not affected by the fact that its execution was induced by duress practiced by a third party. . . .").

In addition, a Rule 60(b) motion is not a supplement to an appeal, *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) (citing *Hopper*, 867 F.2d at 294), which it appears Attorney Jedidiah Bressman has attempted by filing ECF Nos. 993 and 994 in the present case while *In re:  East Palestine Train Derailment*, No. 24-3852 (6th Cir.) and *In re:  East Palestine Train Derailment*, No. 24-3880 (6th Cir.) were still pending in the Court of Appeals. *See* n. 7, *supra*. "'The ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal.'" *Jinks*, 250 F.3d at 386 (quoting *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000)); *see also Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) ("[I]if the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal.") (citations omitted).  Movants "may not use a Rule 60(b) motion . . . as a technique to avoid the consequences of decisions deliberately made

26

(4:23CV0242)

yet later," in their view, "revealed to be unwise." *Hopper*, 867 F.2d at 294 (citing *Fed.'s, Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir.1977)).

Movants had the individual autonomy to decide whether to participate in the Voluntary Exposure Supplement" or "Personal Injury Payment" part of the Settlement – they were not required to release their personal injury claims, and it was up to each individual Movant to decide whether to affirmatively take part. *See* ECF No. 452-2 at PageID #: 6012, ¶ MM ("Personal Injury Claims will be released only if an Eligible Personal Injury Settlement Class Member elects to receive a Personal Injury Payment and executes a separate Personal Injury Release."). Moreover, Class Counsel has been very clear in Notices, town halls, and in all communications with class members and the Court that the personal injury program was completely voluntary, optional, and would not impact direct payments to class members. *See, e.g.*, Statements of Attorney Gomez during the August 1, 2024 town hall meeting. Town Hall Recording at 40:29-45:52.

Rather than claim that the release is invalid, Movants suggest that they now regret their decisions to sign releases without the benefit of additional information (the purportedly concealed information by Class Counsel) about risk of future injury. Rule 60 cannot relieve Movants of those contractual obligations, as "Rule 60 does not provide relief from the consequences of a deliberate choice, even if subsequent events reveal the choice to have been unwise." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 545 (6th Cir. 2012) (citing *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 851 (6th Cir. 2010)); *see also Latshaw*, 452 F.3d at 1099 ("Generally speaking, Rule 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision that a party later comes to regret through second thoughts or

27

(4:23CV0242)

subsequently-gained knowledge that corrects prior erroneous legal advice of counsel.").  It is well

settled that a party's fraud can render a release voidable.  *See, e.g.*, *Kobatake v. E.I. DuPont De*

*Nemours & Co.*, 162 F.3d 619, 625 (11th Cir. 1998) (per curiam) (applying Georgia law); *Ingram*

*Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1314-15 (5th Cir. 1983) (recognizing that

fraudulent inducement or concealment can vitiate a release).  The additional information on

which Movants rely, however, has long been public, not hidden.  Furthermore, the Release

contemplates and rejects these types of post-hoc assertions:

> 6.      Releasor acknowledges and agrees that unknown consequences or
> progression of presently known injuries, diseases or illnesses may arise, develop,
> or be discovered in the future, including disabling conditions not now known to
> Releasor, and that future medical treatment, including surgery, may be necessary.
> Releasor understands that he/she/they may have suffered, or may in the future
> develop, injuries, diseases, illnesses, damages, and/or other harms that are
> presently unknown to Releasor as a result or consequence of the Incident as set
> forth above.

ECF No. 993-3 at PageID #: 68946.

Movants also confirmed and agreed that they were "afforded the opportunity to and if

Releasor so decided did confer with Class Counsel, or an attorney of his/her/their choice,

concerning the terms and conditions of this Release."  ECF No. 993-3 at PageID #: 68952, ¶ 19.

Movants had every opportunity to educate themselves before voluntarily and individually signing

a release.

Finally, to the extent Movants argue that their Personal Injury Payments were

"inadequate," *see* ECF No. 993-1 at PageID #: 68908, Class Counsel's court-approved Plan of

Distribution provides a procedure to address that particular set of circumstances.  *See* Appeals of

(4:23CV0242)

Claim Determinations (ECF No. 525 at PageID #: 11564-67).  That Plan includes specific steps class members could take to challenge their award amount.

## IV.

For the foregoing reasons and those that have been articulated in the memoranda of the points and authorities on which Class Counsel and Norfolk Southern rely, Movants' Motions for Relief From Judgment Pursuant to Fed. R. Civ. P. 60(b)(3), (b)(6), and (d)(3) (ECF Nos. 993 and 994) are denied.


IT IS SO ORDERED.


___May 1, 2026___               ___/s/ Benita Y. Pearson___
Date                             Benita Y. Pearson
                                 United States District Judge

29